# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, a Minnesota Corporation,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION |

## CLASS ACTION COMPLAINT

Plaintiff Nick Pearson ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case, against Defendant Target Corporation ("Target" or "Defendant"), and alleges as follows:

## NATURE OF ACTION

1. Defendant markets, sells and distributes Up & Up Glucosamine, a line of joint health dietary supplements.[1] Through uniform nationwide representations made on the packaging of the Products, Defendant states that its Up & Up Glucosamine products will help promote mobility, renew cartilage, and maintain healthy connective tissue for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments. Thus, on each and every Up & Up Triple Strength product label and/or

---

[1] The Up & Up Glucosamine line of joint health dietary supplements include: (1) Triple Strength Glucosamine Chondroitin plus MSM ("Up & Up Triple Strength"); and (2) Advanced Glucosamine Chondroitin Complex ("Up & Up Advanced") (collectively, "Up & Up Glucosamine" or the "Products").

package, Defendant prominently states that the Product "Supports renewal of cartilage", "Helps maintain the structural integrity of joints", and "Supports mobility and flexibility" and that just "two caplets per day" deliver these benefits (hereafter referred to as the "joint renewal, maintenance and mobility" representations). On each and every Up & Up Advanced product label and/or package, Defendant makes similar joint renewal, maintenance and mobility representations and also promises that the Product helps "protect joints from harmful oxidants."

2. However, the Up & Up Glucosamine products do not provide joint renewal, maintenance or improve mobility and flexibility. Numerous clinical cause and effect studies have shown that the ingredients in the Up & Up Glucosamine products do not work as represented by Defendant and, in particular they do not renew or maintain joints or improve joint mobility or flexibility. In addition, Defendant does not have competent and reliable scientific evidence to support its representations. As a result of either or both of the foregoing, Defendant's representations are false, misleading, and deceptive.

3. Despite the deceptive nature of Defendant's representations, Defendant conveyed and continues to convey its deceptive joint renewal, maintenance and mobility representations through a variety of media (including its website and online promotional materials) and, most important, at the point of purchase on its Product packages and labeling. Further, the only reason that any consumer would purchase the Up & Up Glucosamine products is to obtain joint health benefits, which Up & Up Glucosamine does not provide.

4. As a result of Defendant's deceptive representations, consumers - including Plaintiff and other members of the proposed Class - have purchased a product that does not perform as advertised.

5. Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to

that of Illinois under the facts particular to this case, who purchased the Products, to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created *in the* minds of consumers, and obtain redress for those who have purchased the Up & Up Glucosamine products.[2] Plaintiff alleges violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendant.

7. This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in Illinois. Defendant has marketed, promoted, distributed, and sold the Up & Up Glucosamine products in Illinois, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims

---

[2] While discovery may alter the following, Plaintiff preliminarily avers that the other with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Georgia (GA Code § 10-1-390 *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

9. Plaintiff Nick Pearson resides in Cook County, Illinois. In or around June 2011, Plaintiff Pearson was exposed to and saw Defendant's representations by reading one of the Up & Up glucosamine labels at a Target store in Chicago, Illinois. He paid approximately $20 or more for a bottle of the Product. At the time that he purchased Defendant's Product, Plaintiff was deceived in some manner by Defendant in that he believed (1) that Defendant's Product would provide him some or all of the benefits represented by Defendant on the packaging and (2) was proven to be and was effective for the representations made on the packaging – that the Product would help to renew, maintain or improve joint mobility/flexibility. The Product Plaintiff purchased was not proven to and thus could not provide the represented health benefits Defendant represented it would. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these Products were not effective as represented by Defendant and that Defendant did not possess competent and reliable scientific evidence to support the representations that it made about these Products, Plaintiff would not have purchased the Defendant's Product. As a result, Plaintiff was deceived in some manner into purchasing the Product and suffered injury in fact and lost money.

10. Defendant Target Corporation is incorporated under the laws of the state of Minnesota. Defendant's corporate headquarters is located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant distributes, markets and sells the Up & Up Glucosamine products to tens of thousands of consumers nationwide, including in Illinois.

## FACTUAL ALLEGATIONS

*The Up & Up Glucosamine Products*

11. Since 2009, Defendant has distributed, marketed, and sold the Up & Up Glucosamine line of joint health dietary supplements. These products include: (1) Triple Strength Glucosamine Chondroitin plus MSM; and (2) Advanced Glucosamine Chondroitin Complex.

12. The Up & Up Glucosamine products are sold online and in Target stores nationwide. The Up & Up Advanced product is available in 90 count bottles, retailing for approximately $12. The Up & Up Triple Strength product is available in 120 and 200 count bottles, retailing for approximately $21 and $29, respectively. The following are screen shots of the Up & Up Glucosamine products:

 

13. Since the Products' launch, Target has consistently conveyed the message to consumers throughout Illinois and the United States that the Up & Up Glucosamine products helps to rebuild cartilage, "maintain the structural integrity of joints" and improve joint mobility and flexibility simply by taking the recommended number of tablets each day. Defendant's renewal, maintenance and mobility representations are

false, misleading and deceptive.

14. Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products. The primary active ingredient in both Up & Up Glucosamine products is glucosamine hydrochloride. Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The Up & Up Triple Strength labeling and packaging states the benefits associated with taking glucosamine hydrochloride: "Glucosamine is a major building block of joint cartilage, which helps to maintain the structural integrity of joints and connective tissue." There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that maintains the structural integrity of joints and connective tissue.. In fact, clinical cause and effect studies have found that glucosamine hydrochloride does not work as Defendant represents. These studies show that glucosamine hydrochloride does not provide joint renewal, maintenance or improve mobility.

15. The chondroitin sulfate in the Up & Up Glucosamine products is a complex carbohydrate found in the body's connective tissues. There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that renews or maintains joints or improves mobility and flexibility. In fact, clinical cause and effect studies have found chondroitin sulfate does not work to provide any of these health benefits. These studies show that chondroitin sulfate does not provide joint renewal, maintenance or improve joint mobility.

16. The Up & Up Glucosamine products also contain methylsulfonylmethane ("MSM"), an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Up & Up Advanced labeling and packaging, Defendant claims that MSM "provides sulfar which is important for the structural integrity of joint cartilage and connective tissue." There is no competent and reliable scientific evidence that taking

MSM—let alone through oral administration—results in the body metabolizing it into something that improves joint the structural integrity of joint cartilage or connective tissue. In fact, clinical cause and effect studies have found MSM does not work to provide any of these health benefits. These studies show that MSM does not provide the benefits represented by Defendant.

17. The Up & Up Glucosamine products also contain lesser amounts of other ingredients. Thus, Up & Up Advanced contains hyaluronic acid, a component of synovial fluid found in the fluids of the eyes and joints and an antioxidant proprietary extract of Chinese skullcap and black catechu. Up & Up Triple Strength also contains *Boswellia Serrata*, gum resin extracted from an herb. There is no competent and reliable scientific evidence that taking any of these ingredients—let alone through oral administration—results in the body metabolizing it into something that renews or maintains joints or improves mobility and flexibility. In fact, clinical cause and effect studies have found these ingredients do not work to provide any of these health benefits. These studies show that these ingredients do not provide the benefits represented by Defendant.

18. In fact, numerous clinical cause and effect studies have found no causative link between any of the ingredients in the Up & Up Glucosamine products alone, or in combination, and joint renewal, maintenance or mobility. Nevertheless, Defendant, in the face of these negative studies and without any scientifically valid confirmation that Up & Up Glucosamine is an effective joint treatment—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages and *all* manner and stages of joint related ailments—prominently claims on the Products' packaging and labeling, *inter alia*, that Up & Up Glucosamine helps to "rebuild cartilage," "lubricate joints", "maintain the structural integrity of the joint" and improve joint "mobility and flexibility". Front and side shots of the two Up & Up Glucosamine product labels appear as follows:

FRONT   RIGHT SIDE



FRONT    RIGHT SIDE



19.     Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Up & Up Glucosamine products taken alone or in combination benefit, improve or promote joint renewal, maintenance or mobility. Furthermore, numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Up & Up Glucosamine products and the prevention or improvement of joint degeneration or other joint related ailments. Thus, Defendant's representations are false, misleading and deceptive.

*The impact of Defendant's wrongful conduct*

20.     Despite the existence of numerous clinical studies that have found no causative link between the ingredients in Defendant's Products and joint renewal, maintenance or mobility, and the lack of competent scientific evidence supporting such

representations, Defendant continues to unequivocally claim that its Up & Up Glucosamine products are an effective treatment for joint renewal, mobility and rejuvenation in all adults.

21. As the distributor of the Up & Up Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Up & Up Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects, or lack thereof—its Products have on consumers.

22. Specifically, Defendant affirmatively misrepresented that the Up & Up Glucosamine products help "rebuild cartilage," "lubricate joints", "maintain the structural integrity of the joint" and improve joint "mobility and flexibility". Having made these affirmative misrepresentations, Defendant failed to disclose that clinical cause-and-effect studies have found shown that these ingredients do not provide the health benefits represented by Defendant and, in addition, that Defendant has no competent and reliable scientific evidence that its Up & Up Glucosamine products are effective in helping provide joint renewal, maintenance or mobility as represented by Defendant. Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey a uniform message: Up & Up Glucosamine help "rebuild cartilage", "lubricate joints", "maintain the structural integrity of the joints" and improve "mobility and flexibility" for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments.

23. Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive representations. The Products' sole purported purpose is to provide joint renewal and rejuvenation, joint maintenance and improve joint function and mobility. Thus, the only purpose behind purchasing said Products would be to obtain some or all of the represented joint health benefits. There is no other reason for Plaintiff or the class to have purchased the Products and Plaintiff and the Class would

not have purchased the Products had they known Defendant's claims were false and misleading and, in addition, that Defendant did not possess competent and reliable scientific evidence to support its joint renewal, maintenance or mobility claims. Thus, Defendant's representations and omissions necessarily deceived Plaintiff and the Class in some manner and said deception was a proximate cause of Plaintiff and the Class' injuries.

24. As a result, Plaintiff and the Class members have been damaged in their purchases of these Products in that they were deceived in some manner into purchasing Defendant's Products.

25. Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS ALLEGATIONS

26. Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Multi-State Class Action**

> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[3] purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.
>
> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine products for the purpose of resale.

27. In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the

---

[3] See footnote 3 for the preliminary listing of said states.

Federal Rules of Civil Procedure and seeks certification of the following Class:

**<u>Illinois Class Action</u>**

> All Illinois residents who, within the applicable statute of limitations, purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.
>
> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine products for the purpose of resale.

28. Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

29. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

- Whether the representations discussed herein that Defendant made about its Products were or are misleading, or likely to deceive;

- Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

- Whether the alleged conduct constitutes violations of the laws asserted herein;

- Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries; and

- Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages.

30. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff and Class members suffered injury and damages caused by their purchase of the Up & Up Glucosamine products marketed, distributed and sold by Defendant.

31. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

33. In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

34. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to

enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

35. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

36. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendant's Up & Up Glucosamine products.

37. Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

38. Defendant does business in Illinois, sells and distributes its Up & Up Glucosamine products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Up & Up Glucosamine products in Illinois and elsewhere in the United States.

39. Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

40. Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Up & Up Glucosamine products which has caused damage and injury to Plaintiff and the Class.

41. Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

42. Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

43. Defendant intended Plaintiff and all Class members to rely on its deceptive acts.

44. The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a. That the Court enter an order certifying this action as a class action―either as a multi-state class or, in the alternative, as an Illinois class;

b. That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c. That the Court enter an order granting declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d. Attorneys' fees, expert fees and costs; and

e. Such other and further relief as the Court deems just and proper.

DATED: November 9, 2011

          By:  s/Stewart Weltman
          FUTTERMAN HOWARD ASHLEY
          & WELTMAN, P.C.
          STEWART WELTMAN
          DANA PESHA
          RAFAEL VARGAS
          122 South Michigan Avenue, Suite 1850
          Chicago, Illinois 60603
          Telephone:  312-427-3600

Of Counsel:

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 756-6978


Attorneys for Plaintiff