# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NICK PEARSON, On Behalf of Himself
and All Others Similarly Situated,

        Plaintiff,

    v.

TARGET CORPORATION, a Minnesota
Corporation,

        Defendant.

Case No.:   11 CV 07972

<u>CLASS ACTION</u>

**Judge James B. Zagel**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Nick Pearson ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant Target Corporation ("Target" or "Defendant"), and alleges as follows:

### NATURE OF ACTION

1.    Defendant markets, sells and distributes Up & Up Glucosamine, a line of two joint health dietary supplements ("the Products").[1] Each of the Products bear the name Glucosamine Chondroitin in bold, large letters, prominently at the top front of each label. The primary purported active ingredients in both of Target's Up & Up Glucosamine Products are glucosamine hydrochloride and chondroitin sulfate.  On the front of each package/label, Target makes essentially the same representations about each Product  - that they will "help rebuild cartilage"[2] or "support renewal of cartilage", help "maintain the structural integrity of joints"[3],

---

[1]The Up & Up Glucosamine line of joint health dietary supplements include: (1) Triple Strength Glucosamine Chondroitin plus MSM ("Up & Up Triple Strength") (the Product purchased by Plaintiff); and (2) Advanced Glucosamine Chondroitin Complex ("Up & Up Advanced") (collectively, "Up & Up Glucosamine" or the "Products").

[2] Up & Up Advanced.

[3] This representation is made on the front of the Up & Up Triple Strength package/label and on the side of the Up & Up Advanced package/label.  This representation is really an analogue to the "renew" and "rebuild" cartilage representations.

"lubricate joints"[4] or "supports mobility and flexibility."[5] On the front of each box of Defendant's Products, where consumers cannot miss it, Defendant claims that the Products will help to "rebuild" or "renew" cartilage and "lubricate joints" or support "joint mobility and flexibility". Defendant primarily markets these products to and they are purchased primarily by persons suffering from osteoarthritis. Persons who experience joint ailments and persons who seek to prevent joint ailments constitute the remainder of consumers who purchase these products.

2.    Thus, prominently displayed on the Products' labels are the deceptive taglines: "rebuild cartilage/renew cartilage", help "maintain the structural integrity of joints", and "lubricate joints/supports joint mobility and flexibility" (collectively referred to as "the joint health benefit representations"). No limitations accompany these taglines such that the take-away is that the Products will provide these specific joint related benefits for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments.

3.    In truth, the Products do not rebuild or renew cartilage, lubricate joints or improve joint mobility or flexibility. Clinical cause and effect studies have found that the primary active ingredients in the Products, glucosamine and chondroitin, are ineffective, taken alone or in combination, with regard to the purported joint health benefits represented on the Products' packaging and labeling. As a study sponsored by the National Institute of Health ("NIH") concluded: "The analysis of the primary outcome measure did not show that either [glucosamine or chondroitin], alone or in combination, was efficacious. . . ." Clegg, D., et al., Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis, 354 New England J. of Med. 795, 806 (2006) ("2006 GAIT Study"). As a result, in addition to affirmatively misrepresenting the joint health benefits of its Products, the failure of Target to disclose the facts regarding these studies also constitutes deception by omission or concealment. Thus, Target's joint health benefit representations and omissions are false, misleading and

---

[4] Up & Up Advanced.
[5] Up & Up Triple Strength.

reasonably likely to deceive the public.

4.     Despite the deceptive nature of Defendant's representations, Defendant conveyed and continues to convey its uniform joint health benefit representations at the point of purchase on the front of its Products' packages and labeling. The only reason that any consumer would purchase the Up & Up Glucosamine Products is to obtain joint health benefits, which Up & Up Glucosamine does not provide.

5.     As a result of Defendant's deceptive representations, consumers - including Plaintiff and other members of the proposed Class - have purchased a Product that does not perform as advertised.

6.     Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case, who purchased the Products, to (1) halt the dissemination of these false and misleading representations, (2) correct the false and misleading perception it has created *in the* minds of consumers, and (3) obtain redress for those who have purchased the Up & Up Glucosamine Products.[6]   Plaintiff alleges violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).   The

---

[6]While discovery may alter the following, Plaintiff preliminarily avers that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010,  *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendant.

8.     This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in Illinois.  Defendant has marketed, promoted, distributed, and sold the Up & Up Glucosamine Products in Illinois, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

10.     Plaintiff Nick Pearson resides in Cook County, Illinois. In or around June 2011, Plaintiff Pearson was exposed to and saw Defendant's joint health benefit representations (i.e.. that the Product supported renewal of cartilage, helped maintain the structural integrity of joints and supported mobility and flexibility)  by reading the package/label of Defendant's Up & Up Triple Strength Product at a Target store in Chicago, Illinois.  He paid approximately $20 or more for a bottle of the Product.  At the time that he purchased Defendant's Product, Plaintiff was deceived in some manner by Defendant in that he believed (1) that Defendant's Product would provide him some or all of the benefits represented by Defendant on the packaging and (2) that it was proven to be and was effective for the representations made on the packaging – that the Product would help to renew cartilage, help maintain the structural integrity of joints, and support joint mobility and flexibility.  Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these

Products were not effective as represented by Defendant, Plaintiff would not have purchased Defendant's Product. Plaintiff used the Product as directed and, consistent with the scientific evidence that the Product was not effective, the Product did not work. As a result, Plaintiff was deceived in some manner into purchasing the Product and suffered injury in fact and lost money.

11.     Defendant Target Corporation is incorporated under the laws of the state of Minnesota. Defendant's corporate headquarters is located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant distributes markets and sells the Up & Up Glucosamine Products to tens of thousands of consumers nationwide, including in Illinois.

## FACTUAL ALLEGATIONS

### The Up & Up Glucosamine Products

12.     Since 2009, Defendant has distributed, marketed, and sold the Up & Up Glucosamine line of joint health dietary supplements. These Products include: (1) Triple Strength Glucosamine Chondroitin plus MSM; and (2) Advanced Glucosamine Chondroitin Complex.

13.     The Up & Up Glucosamine Products are sold online and in Target stores nationwide. The Up & Up Advanced Product is available in 90 count bottles, retailing for approximately $12. The Up & Up Triple Strength Product is available in 120 and 200 count bottles, retailing for approximately $21 and $29, respectively. The following are screen shots of the Up & Up Glucosamine Products:

 

14.     Since the Products' launch, Target has consistently conveyed the message to consumers throughout Illinois and the United States that the Products help to rebuild or renew cartilage, and improve joint mobility and flexibility or lubricate joints simply by taking the recommended number of tablets each day.  They do not.  Defendant's joint health benefit representations and omissions are false, misleading and deceptive.

15.     The first identified primary active ingredient in both of the Products is glucosamine hydrochloride.  As more fully set forth below, the scientific evidence is that glucosamine, taken alone or in combination with chondroitin sulfate, does not provide the joint health benefits represented by Defendant.

16.     The second primary active ingredient in Defendant's Products is chondroitin sulfate. As more fully set forth below, the scientific evidence is that chondroitin sulfate, alone or in combination with glucosamine, does not provide the joint health benefits represented by Defendant.

17.     In addition to these two primary active ingredients that Defendant prominently promotes as being the primary active ingredients that provide the purported joint health benefits, Defendant's Products also contain methylsulfonylmethane ("MSM"). As more fully discussed below, MSM is also not effective in providing the joint health benefits represented by

Defendant, but in any event the focus of this action is on the uniform false and deceptive representations and omissions that Defendant makes about glucosamine and chondroitin on the package labeling of each of its Up & Up Glucosamine Chondroitin Products.

18. Defendant's Products also contain other ingredients such as Hyuralonic Acid (Up & Up Advanced and Triple Strength), an "Antioxidant proprietary extract" ( Chinese Skullcap (root) and Black Catechu (wood)) (Up & Up Advanced), Boswellia Serrata (Indian Frankincense) (Up & Up Triple Strength), but Defendant makes none of the joint health benefit representations for these ingredients. For example, on the Up & Up Advanced side panel, Defendant states that its "Antioxident proprietary extract" helps protect joints from harmful oxidants" – whatever that might mean. Likewise, on the Up & Up Advanced side panel, Defendant represents that Hyaluronic Acid is a "key tissue and joint component". While literally true, taking Hyaluronic Acid orally cannot provide any joint health benefits because the high molecular weight of this ingredient is too large for the body to digest and put into the bloodstream, let alone provide joint health benefits.

19. In contrast, on the front of both Products' package/label, Defendant makes the joint health benefit representations underneath the words "glucosamine chondroitin". Thus, it is clear from the Products' packaging/labels, despite the inclusion of these other ingredients, Defendant is representing that glucosamine and chondroitin are the primary active ingredients that purport to provide the joint health benefits represented for both Products.

20. Even though numerous clinical studies have found that the two primary ingredients in Defendant's Products, glucosamine and chondroitin, alone or in combination, are ineffective, Target continues to represent on the Products' packaging and labeling that they provide the joint health benefits for adults of *all* ages, without any limitation on which joints or what joint related ailments the Products provide these joint health benefits. Front and side shots of the two Up & Up  Glucosamine Product labels appear as follows:

FRONT                                             RIGHT SIDE



**triple strength glucosamine chondroitin plus MSM**
dietary supplement

**Compare to Osteo Bi-Flex® Triple Strength\*\***

Supports renewal of cartilage\*
Helps maintain the structural integrity of joints\*
Supports mobility and flexibility\*

**up&up**

**200** COATED CAPLETS

200 COATED CAPLETS

**TRIPLE STRENGTH GLUCOSAMINE CHONDROITIN PLUS MSM** combines the top ingredients found in popular joint products. Glucosamine is a major building block of joint cartilage, which helps to maintain the structural integrity of joints and connective tissue.\* This triple strength product provides you with joint support in just two caplets per day.\*

**Directions:** For adults, take two (2) caplets daily, preferably with a meal. As a reminder, discuss the supplements and medications you take with your health care providers.

No yeast, wheat, gluten, milk or milk derivatives, lactose, sugar, preservatives, soy, artificial flavor.

**WARNING:** If you are pregnant, nursing or taking any medications, consult your doctor before use. Discontinue use and consult your doctor if any adverse reactions occur. Not intended for use by persons under the age of 18.

**KEEP OUT OF REACH OF CHILDREN. STORE IN A DRY PLACE AND AVOID EXCESSIVE HEAT. TAMPER RESISTANT: DO NOT USE IF SEAL UNDER CAP IS BROKEN OR MISSING.**

Laboratory tested to meet strict quality control standards for potency, purity and disintegration.

PROD. NO. 18893
B31728        03C

FRONT                                RIGHT SIDE



***Scientific Studies Confirm That Up & Up Glucosamine Products Are Not Effective.***

21.    Independent studies published at least as early as 2004, have found that glucosamine and chondroitin, alone or in combination, are not effective in providing the represented joint health benefits.[7]

22.    For example, a 2004 study by McAlindon et al., entitled Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From and Internet-Based Randomized Double-Blind Controlled Trial, 117(9) Am. J. Med. 649-9 (Nov. 2004), concluded that glucosamine was no more effective than placebo in treating the symptoms of knee

---

[7] Many of these studies focus on patients with osteoarthritis and osteoarthritis of the knee, because the vast majority of purchasers of glucosamine chondroitin Products buy these Products for relief of the symptoms of osteoarthritis and osteoarthritis of the knee is the most common arthritic condition.  Moreover, studies involving patients with osteoarthritis and patients with osteoarthritis of the knee are deemed, by experts in the field, to be a proxy for whether these products provide any of the represented joint health benefits, regardless of whether or not a consumer may have osteoarthritis.

osteoarthritis – in short, it was ineffective.

23.     Also as early as 2004, studies confirmed there is a significant "placebo" effect with respect to glucosamine consumption. A 2004 study by Cibere et al, entitled Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004), studied users of glucosamine who claimed to have experienced at least moderate improvement after starting glucosamine. These patients were divided into two groups – one that continued using glucosamine and one that was given a placebo. For six months, the primary outcome observed was the proportion of disease flares in the glucosamine and placebo groups. A secondary outcome was the time to disease flare. The study results reflected that there were no differences in either the primary or secondary outcomes for glucosamine and placebo. The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine – in other words, any prior perceived benefits were due to the placebo effect and not glucosamine.

24.     In the 2006 Gait Study, the study authors rigorously evaluated the effectiveness of glucosamine hydrochloride and chondroitin, alone and in combination, on osteoarthritis for six months. According to the study's authors, "The analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious. . ." 2006 GAIT Study at 806.[8] Subsequent GAIT studies in 2008 and 2010 reported that glucosamine and chondroitin did not rebuild cartilage[9] and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 reported results were inconclusive. *See* Sawitzke, A.D., et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, 58(10) J. Arthritis Rheum. 3183–91 (Oct. 2008);

---

[8] The 2006 Gait Study was funded by the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases, two components of NIH.

[9] To a similar effect a study by Kwok, et al., entitled The Joints On Glucosamine (JOG) Study: A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritis Based On 3T MRI, 60 Arthritis Rheum 725 (2009) concluded that glucosamine was not effective in preventing the worsening of cartilage damage.

Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).

25.    The GAIT studies are consistent with the reported results of prior and subsequent studies.   For example, the National Collaborating Centre for Chronic Conditions ("NCCCC") reported "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing." NCCCC, Osteoarthritis National Clinical Guideline for Care and Management of Adults, Royal College of Physicians, London 2008.   Consistent with its lack of efficacy findings, the NCCCC Guideline did not recommend the use of glucosamine or chondroitin for treating osteoarthritis. *Id.* at 33.

26.    A study by Rozendaal et al., entitled Effect of Glucosamine Sulfate on Hip Osteoarthritis, 148 Ann. of Intern. Med. 268-77 (2008) assessing the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis during 2 years of treatment, concluded that glucosamine was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

27.    A 2010 meta-analysis by Wandel et al. entitled Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Of Hip Or Knee: Network Meta-Analysis, BMJ 341:c4675 (2010) examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip.   The study authors reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain or have an impact on the narrowing of joint space:   "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo." *Id.* at 8.   The authors went as far to say, "We believe it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations." *Id.*

28.    In July 7, 2010, Wilkens et al., reported that there was no difference between

placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability. The researchers also stated that, ōBased on our results, it seems unwise to recommend glucosamine to all patientsö with low back pain and lumbar osteoarthritis. Wilkens et al., Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis, 304(1) JAMA 45-52 (July 7, 2010).

29.    Scientific studies also confirm that MSM is ineffective. *See, e.g.*, S. Brien, *et. al.*, Systematic Review of the Nutritional Supplements (DMSO) and methylsulfonylmethane (MSM) in the treatment of osteoarthritis (Apr. 17, 2008) (concluding that there is no ōdefinitive evidence that MSM is superior to placebo in the treatment of mild to moderate OA of the kneeö)**.**

*The impact of Defendant's wrongful conduct*

30.    Despite the existence of numerous clinical studies that have found the ingredients in Defendantøs Products to be ineffective for the joint health benefits that it represents on the Productsø package/labels, Defendant continues to unequivocally claim that its Up & Up Glucosamine Products are effective and provide these joint health benefits ówithout limitation and thus for adults of all ages and for all manner and stages of joint related ailments. As the distributor of the Up & Up Glucosamine Products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Up & Up Glucosamine Products and is in a superior position to learn of the effectsô and has learned of the effects, or lack thereofô its Products have on consumers.

31.    Specifically, at least as early as 2009 when it began selling its Up & Up Glucosamine Chondroitin Products, Defendant knew, but failed to disclose, that the Products do not provide the joint health benefits represented and that well-conducted, clinical studies have found the ingredients in its Up & Up Glucosamine Chondroitin Products to be ineffective in providing the joint health benefits represented by Target. Plaintiff and Class members have been and will continue to be deceived or misled by Targetøs deceptive joint health benefit

representations. Plaintiff purchased and consumed one of Defendant's Products during the Class period and in doing so, read and considered the Product's label and based his decision to purchase the Product on the joint health benefit representations on the Product packaging. Target's joint health benefit representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the Product.

32.     The only purpose behind purchasing one of Defendant's Products is to obtain some or all of the represented joint health benefits. There is no other reason for Plaintiff and the Class to have purchased the Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

.

33.     Plaintiff and the Class members have been injured in fact in their purchases of these Products in that they were deceived into purchasing Products that do not perform for the only reason that they would have purchased these Products – joint health benefits. As a resultt, Plaintiff and the Class members have suffered economic damage in their purchases of these Products.

34.     Defendant, by contrast, reaped profits from its false marketing and sale of these Products.

<u>**CLASS ALLEGATIONS**</u>

35.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

<u>**Multi-State Class Action**</u>

        All persons who, within the applicable statute of limitations under

their respective state's consumer fraud act,[10] purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.

Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine Products for the purpose of resale.

36.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Illinois Class Action**

All Illinois residents who, within the applicable statute of limitations, purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.

Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine Products for the purpose of resale.

37.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.

38.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  The common legal and factual questions include, but are not limited to, the following:

•     Whether the representations or omissions discussed herein that Defendant made about its Products were or are misleading, or likely to deceive;

•     Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

•     Whether the alleged conduct constitutes violations of the laws asserted

---

[10] See footnote 6 for the preliminary listing of said states.

herein;

- Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries;

- Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages; and

- Whether Plaintiff and the Class are entitled to injunctive, declaratory or other equitable relief.

39.     Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, including being subject to Defendant's deceptive joint health benefit representations, which accompanied each and every box of Defendant's Products. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

40.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

42.     In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

43.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members. Unless a Class is certified, Defendant will retain

monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the Class.

46.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such Products as Defendant's Up & Up Glucosamine Products.

47.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

48.     Defendant does business in Illinois, sells and distributes its Up & Up Glucosamine Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Up & Up Glucosamine Products in Illinois and elsewhere in the United States.

49.     Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

40.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Up & Up Glucosamine Products which has caused damage and injury to Plaintiff and the Class.

41.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

42.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

43.     Defendant intended Plaintiff and all Class members to rely on its representations regarding the joint health benefits of its Products.

44.     The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a.  That the Court enter an order certifying this action as a class action   either as a multi-state class or, in the alternative, as an Illinois class;

b.  That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c.  That the Court enter an order granting  declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d.  Attorneys' fees, expert fees and costs; and

e.  Such other and further relief as the Court deems just and proper.


DATED: June 14, 2012

By:   s/Stewart Weltman
LEVIN FISHBEIN SEDRAN & BERMAN
STEWART WELTMAN Of Counsel
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600

Of Counsel:

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:      (619) 756-6978


Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 14th day of June, 2012, a copy of the foregoing First Amended Class Action Complaint was filed with the Clerk of Court using the CMM/ECF system which will send notification of such filing to the following:

David B. Sudzus
Bradley J. Andreozzi
Benjamin Todd Vinson
Justin O∂Neill Kay
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606

<u>s/Stewart M. Weltman</u>