# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NICK PEARSON, On Behalf of Himself and All
Others Similarly Situated,

        Plaintiff,

    vs.

TARGET CORPORATION, a Minnesota
Corporation,

        Defendant.

Case No. 11cv07972

Honorable James B. Zagel

Magistrate Judge Jeffrey T. Gilbert

---

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

---

Bradley J. Andreozzi
Justin O. Kay
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:    (312) 569-3000

Kara L. McCall
Shelby K. Feuerbach
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Tel:    (312) 853-7000
Fax:    (312) 853-7036

*Counsel for Defendant Target Corporation*

July 20, 2012

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................... 1

SUMMARY OF THE COMPLAINT........................................................................... 2

ARGUMENT .............................................................................................................. 6

I.     PLAINTIFF FAILS TO ALLEGE FACTS ESTABLISHING HIS STANDING
TO CHALLENGE THE PRODUCT HE DID NOT PURCHASE .................................. 6

II.    PLAINTIFF'S CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM
UNDER RULE 8, RULE 9(b), OR RULE 12(b)(6) ......................................................... 9

    A.    Plaintiff's Claim Is Facially Implausible ............................................. 10

    B.    Plaintiff Fails To Specify The Representations He Read And Attributes
Representations To Target That It Never Made. .................................. 12

    C.    Plaintiff Fails To State A Claim Under ICFA .................................... 13

CONCLUSION........................................................................................................... 17

# TABLE OF AUHORITIES

**Page**

## Cases

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) ............................................................... 9, 10, 12

*BASF Corp.* v. *Old World Trading Co.*, 41 F.3d 1081 (7th Cir. 1994) ....................................... 13

*Bell Atlantic* v. *Twombly*, 550 U.S. 544 (2007) .......................................................... 9, 10

*Bober* v. *Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) ................................... 11, 13, 14, 15

*Cooney* v. *Rossiter*, 583 F.3d 967 (7th Cir. 2009) ...................................................... 12

*Cosmetique, Inc.* v. *Valuecheck, Inc.*, 753 F. Supp. 2d 716 (N.D. Ill. 2010) ............................. 12

*Gredell* v. *Wyeth Labs., Inc.*, 367 Ill. App. 3d 287 (1st Dist. 2006) ..................................... 13, 14

*Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994) ................................................ 3

*In re: Potash Antitrust Litig.*, 667 F. Supp. 2d 907 (N.D. Ill. 2009),
  *aff'd on reh'g en banc sub nom. Minn-Chem, Inc. v. Agrium Inc.*,
  2012 U.S. App. LEXIS 13131 (7th Cir. June 27, 2012) ................................................... 8

*Lewis* v. *Casey*, 518 U.S. 343 (1996) .................................................................. 8

*Menominee Indian Tribe* v. *Thompson*, 161 F.3d 449 (7th Cir. 1998) ....................................... 4

*Mintz* v. *Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972) ............................................. 8

*Oliveira* v. *Amoco Oil Co.*, 201 Ill. 2d 134 (2002) .................................................... 6

*Ong* v. *Sears, Roebuck & Co.*, 388 F. Supp. 2d 871 (N.D. Ill. 2004)....................................... 8

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................ 8

*Padilla v. Costco Wholesale Corp.*, 11cv7686, 2012 U.S. Dist. LEXIS 87222
  (N.D. Ill. June 21, 2012) .......................................................................... 7, 9, 13

*Philips Med. Sys. Int'l B.V. v. Bruetman*, 982 F.2d 211 (7th Cir. 1992)...................................... 3

*Raines v. Byrd*, 521 U.S. 811 (1997) ................................................................... 7

*Scott* v. *GlaxoSmithKline Consumer Healthcare, L.P.*, 05cv3004,
  2006 U.S. Dist. LEXIS 18630 (N.D. Ill. Apr. 12, 2006) ............................................... 10

*7-Eleven, Inc.* v. *Spear*, 10cv6697,
  2011 U.S. Dist. LEXIS 67415 (N.D. Ill. Jun. 23, 2011)............................................... 11

*Steel Co.* v. *Citizens For A Better Env't*, 523 U.S. 83 (1998)........................................... 7

## TABLE OF AUHORITIES

**Page**

*United States ex rel. Gross* v. *Aids Research Alliance-Chicago*, 415 F.3d 601 (7th Cir 2005) ... 12

**Statutes**

815 ILCS 505/1(e) (2012)................................................................................................................. 6

815 ILCS 505/10a (2012) ................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 8............................................................................................................................... 9

Defendant Target Corporation ("Target") submits this memorandum in support of its motion to dismiss with prejudice Plaintiff's First Amended Class Action Complaint ("the Complaint" or "Cmplt.") pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

## PRELIMINARY STATEMENT

In response to Target's motion to dismiss the prior complaint, Plaintiff's counsel elected to withdraw that pleading and file a new complaint. Although the Complaint now identifies the single product Plaintiff purchased and the scientific studies purportedly supporting his claims, it does not change the untenable theory on which this suit is based. Plaintiff still is not challenging any representation unique to Target's products. Rather his theory remains that joint supplements in general—*i.e.*, the ingredients glucosamine and chondroitin, among others—are not clinically proven to be effective. Plaintiff makes no attempt to explain how or why Target's statements about *its* products are false, apart from citing some clinical studies testing *other* formulations of glucosamine and/or chondroitin for effectiveness in treating osteoarthritis. Put another way, Plaintiff alleges that Target's claims are false because the product's ingredients are not effective at treating osteoarthritis. The problem with this argument is that Target has never claimed that its products are effective for the treatment of osteoarthritis. On the contrary, Target clearly states on the labels that its products are not intended to be used to treat *any* disease.

Apart from conclusory allegations of falsity premised merely on tests of other formulations for a purpose Target never claimed its products serve, Plaintiff offers no allegations that any of the product representations are false. What we are left with, then, is Plaintiff's theory that Target lacks clinical substantiation for the statements on the product label. Illinois law is clear, however, that a private plaintiff cannot attack the promotion of a supplement as being insufficiently substantiated where, as here, there is no representation that the supplement is

clinically or scientifically proven to be effective. A private plaintiff must plead sufficient facts—with the specificity required by Rule 9(b)—showing that the statements are *actually false*, and cannot shift that burden to the defendant by merely alleging that the statements are "unsubstantiated." Plaintiff has not met this pleading standard.

If this case were to proceed to trial, Target would show that there is indeed strong scientific support for the claims made for its products, including studies Plaintiff has elected to ignore. But this suit should not survive beyond the pleading stage because Plaintiff cannot turn conclusory allegations of lack of substantiation, based on nothing more than studies of other products for other purposes, into a consumer fraud claim.

### SUMMARY OF THE COMPLAINT

Plaintiff Pearson is a Cook County resident who claims to have purchased Up & Up Triple Strength Glucosamine Chondroitin Plus MSM Dietary Supplement ("Up & Up Triple Strength"), one of two different Up & Up glucosamine products identified in the Complaint (each, a "Product," and together, "the Products")[1], at a Chicago-area Target store "in or around June 2011." Cmplt. ¶¶ 1 n.1, 10. Plaintiff made this purchase approximately one month *after* purchasing a different glucosamine and chondroitin dietary supplement—Move Free® Advanced Triple Strength—which is the subject of a *different* lawsuit by Pearson in federal court in California in which he alleges not only that the Move Free® Advanced glucosamine and chondroitin product is ineffective, but also that it caused him physical injuries (such as headache and nausea). *See Lerma v. Schiff Nutritional, Inc.*, 11-CV-1056 (S.D. Cal. Mar. 12, 2012), Third

---

[1]     The Product plaintiff did not purchase, but for which he nevertheless purports to assert a claim, is Up & Up Advanced Glucosamine Chondroitin Complex Dietary Supplement ("Up & Up Advanced"). Cmplt. ¶¶ 1 n.1, 10.

Amended Class Action Complaint [Docket No. 33] at ¶¶ 19, 72, 86 (attached as Ex. A).[2]

Despite evidently already believing that glucosamine and chondroitin were not only ineffective

but also dangerous, Plaintiff nevertheless claims he was deceived into purchasing Up & Up

Triple Strength after he "was exposed to and saw . . . the package/label of [Up & Up Triple

Strength]," believing that it would "help to renew cartilage, help maintain the structural integrity

of joints, and support joint mobility and flexibility."  Cmplt. ¶ 10.  Plaintiff does not claim in this

case that the Products are unsafe and does not claim any personal injury, but rather challenges

only the Products' efficacy.

The Products identified in the Complaint are two different dietary supplements, which are

sold in different formulations, in different amounts, at different prices, with different labeling

statements.  *Id.* ¶ 13.  The primary active ingredients in both Products are glucosamine

hydrochloride and chondroitin sulfate, but each Product otherwise contains different ingredients

in different amounts:  Only Up & Up Triple Strength contains *Boswellia Seratta*, and only Up &

Up Advanced contains an "antioxidant proprietary extract" comprised of Chinese skullcap and

black catechu.  *Id.* ¶ 18.

While alleging that Target conveys "uniform joint health benefit representations at the

point of purchase on the front of its Products' packages and labeling" (*id.* ¶ 4), and broadly

asserting that the front labels are "essentially the same" (*id.* ¶ 1), Plaintiff concedes that the front

labels of the Products are in fact *not* the same: only the front label of Up & Up Advanced

---

[2]     Because Pearson's allegations in *Lerma* "have a direct relation to matters at issue," this Court may take judicial notice of them under Federal Rule of Evidence 201(b) without converting this motion to dismiss into a motion for summary judgment.  *Philips Med. Sys. Int'l B.V. v. Bruetman*, 982 F.2d 211, 215 n. 2 (7th Cir. 1992); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

includes the representation "help[s] rebuild cartilage and lubricate joints," and only the front label of Up & Up Triple Strength includes the representations "supports renewal of cartilage," "helps maintain the structural integrity of joints," and "supports mobility and flexibility." *Id.* ¶ 1 & nn. 2-5.

Other representations on the Products' packaging also differ.[3] For example, Up & Up Triple Strength states that "[g]lucosamine is a major building block of joint cartilage, which helps to maintain the structural integrity of joints and connective tissue." *See* Ex. B. The packaging for Up & Up Advanced does not contain those statements. *See* Ex. C. Only Up & Up Advanced includes the representation that methylsulfonylmethane ("MSM") "provides sulfur which is important for the structural integrity of joint cartilage and connective tissue." *See id.* The Up & Up Advanced label also contains descriptions of hyaluronic acid, antioxidant extract, and MSM, none of which are found anywhere on the Up & Up Triple Strength label. *See* Exs. B and C. As a final example, Up & Up Triple Strength includes a picture of a leg, knee, and running shoe, while no such photo appears on Up & Up Advanced. *See id.*

Having conceded that the Products' labels differ, Plaintiff nevertheless lumps all the alleged representations together, defines them as "the joint health benefit representations," and concocts a "take-away" representation found nowhere on the Products that they "will provide

---

[3] Because the statements on the Product packaging are central to the Complaint (which alleges that Plaintiff was deceived by the representations "on the packaging" (Cmplt. ¶ 10), quotes *some* of the language, and includes pictures of *some* of the packaging), the Court can consider the actual contents of the packaging in ruling on this motion to dismiss. *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."). Color copies of the Products' packaging are submitted as Exhibits B and C.

these specific joint related benefits for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments." *Id.* ¶ 2.

Plaintiff bases his allegation that he was deceived into purchasing Up & Up Triple Strength on the assertion that "scientific evidence [demonstrates] that the Product[] [was] not effective." *Id.* ¶ 10. The "scientific evidence" cited is a handful of what he calls "clinical cause and effect studies" which (1) test *other* product formulations and (2) examine their effectiveness not in simply supporting joint health but rather in treating osteoarthritis. *Id.* ¶¶ 3, 21-29. The Complaint does not allege that any of these studies tested the actual Products or formulations at issue or that Target ever claimed that its Products could be used to treat osteoarthritis. On the contrary, the Complaint fails even to mention the one representation that actually *is* uniform to both Products—that the Products are "not intended to diagnose, treat, cure, or prevent any disease." Exs. B and C. And while the Complaint attacks Target for supposedly lacking clinical proof of the efficacy of the Products, Plaintiff can point to no representation by Target claiming to have any particular type of scientific or clinical evidence for the Products' efficacy (although it does have such evidence).

While the Plaintiff does allege in conclusory fashion that he "used the Product as directed and, consistent with the scientific evidence that the Product was not effective, the Product did not work" (*id.* ¶ 10), he does not allege any facts regarding his physical condition, the reason why he needed the Product, which specific benefits he expected to experience, how he knows that he did not experience them, or why.

Based on the foregoing, Plaintiff asserts a claim under the Illinois Consumer Fraud Act ("ICFA") on behalf of himself and a putative multi-state class from states with Consumer Fraud Laws that he asserts to be similar to that of Illinois, or, alternatively, an Illinois-only class, of

consumers who purchased *either* of the Products during the applicable (but unspecified) limitations periods. Cmplt. ¶¶ 6 n.6, 35-36.

## ARGUMENT

**I.  PLAINTIFF FAILS TO ALLEGE FACTS ESTABLISHING HIS STANDING TO CHALLENGE THE PRODUCT HE DID NOT PURCHASE.**

In his original complaint, Plaintiff challenged both Up & Up Advanced and Up & Up Triple Strength (two distinct Products with different formulations and representations), but *conceded* that he only purchased one (which one, he did not say).  Plaintiff now identifies Up & Up Triple Strength as the sole Product he purchased.  Cmplt. ¶ 1 n.1.  While Plaintiff still purports to assert claims challenging Up & Up Advanced, he lacks both statutory standing and constitutional standing to do so because he did not purchase Up & Up Advanced or read any of its representations.

**ICFA Standing:**  To have statutory standing under ICFA, a plaintiff must show that he was a "consumer" as defined by the statute and that he suffered an injury that was caused by the challenged practice.  815 ILCS 505/1(e) ("The term 'consumer' means any person who *purchases* or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household.") (emphasis added); 815 ILCS 505/10a ("Any person who suffers actual damages *as a result of* a violation of this Act committed by another person may bring an action against such person.") (emphasis added).  *See also Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 140 (2002) (plaintiff under ICFA must "demonstrate that the fraud complained of proximately caused" actual damages to him).  Plaintiff alleges that he purchased *only* Up & Up Triple Strength after reading *only* "the package/label of Defendant's Up & Up Triple Strength Product."  Cmplt. ¶¶ 1 n.1, 10.  Plaintiff therefore cannot pursue a claim under ICFA for Up & Up Advanced because he was neither a "consumer" of Up

& Up Advanced nor were the representations on Up & Up Advanced (which he never read) the cause of any injury to him.

The recent decision in *Padilla v. Costco Wholesale Corp.* is directly on point. No. 11cv7686, 2012 U.S. Dist. LEXIS 87222 (N.D. Ill. June 21, 2012). In that case, the plaintiff (represented by the same counsel representing Plaintiff in this case) sought to assert claims against Costco related to Costco's Kirkland Signature™ line of glucosamine and chondroitin products. *Id.* at *1-2. As in this case, the plaintiff in *Padilla* purchased only one product in the line, but sought to pursue claims for another product in the line that he did not purchase. In holding that the plaintiff could not pursue a claim for the product he did not purchase, the court noted that the definition of "consumer" under ICFA requires a plaintiff to "purchase" the product, and because "he has not alleged that he *purchased* [the product] . . . . [he] has not sustained any actual damage." *Id.* at *6-7.

**Article III Standing:** The Plaintiff also lacks Article III standing to pursue claims for products he did not purchase. Article III limits federal jurisdiction to cases and controversies in which the plaintiff has standing, and the "irreducible constitutional minimum of standing" consists of: (i) a concrete and actual or imminent injury-in-fact, (ii) that is "fairly traceable" to the challenged conduct, and (iii) a likelihood that the requested relief will redress the alleged injury. *Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 102-03 (1998) (citations omitted). This inquiry "focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized to him." *Id.* at

819. This is a threshold inquiry, and "ordinarily . . . [an] Article III court must be sure of its own jurisdiction before getting to the merits." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).[4]

In this case, Plaintiff's "personal stake" can apply only to the single Product he allegedly purchased (Up & Up Triple Strength), and the "alleged injury" that is "particularized to him" can only be the money allegedly lost as a result of the purchase of that single Product. Plaintiff cannot credibly allege that he was injured by representations he did not read on a Product he did not buy. Indeed, Plaintiff would plainly not have Article III standing to proceed on an individual basis seeking damages for products he did not buy. Purporting to represent a class does not change that lack of standing: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class . . . .'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (emphasis added); *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 499 (7th Cir. 1972) ("What [a plaintiff] may not achieve himself, he may not accomplish as a representative of a class."); *Ong v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 891-92 (N.D. Ill. 2004) ("The fact that [plaintiffs] have filed a class action lawsuit that includes putative class members who did purchase the relevant securities does not confer the

---

[4]     The Court in *Ortiz* noted that courts "ordinarily" resolve Article III standing at the outset of the litigation before deciding class certification. 527 U.S. at 831. It recognized an exception only where "class certification issues are . . . 'logically antecedent' to Article III concerns and themselves pertain to statutory standing, which may properly be treated before Article III standing." *Id.* As subsequent courts have recognized, that statement, "does not *require* district courts to postpone the threshold inquiry into Article III standing until after class certification. Rather, *Amchem* and *Ortiz* are examples of the Supreme Court's unwillingness to decide constitutional questions when other grounds of disposition are available." *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 921 (N.D. Ill. 2009), *aff'd on reh'g en banc sub nom. Minn-Chem, Inc. v. Agrium Inc.*, 2012 U.S. App. LEXIS 13131 (7th Cir. June 27, 2012). There is nothing unique or peculiar about this case or the class certification issues that would require the Court to wait to consider the threshold issue of standing.

necessary standing in this case because none of those putative class members is a named plaintiff."). The decision in *Padilla* is again directly on point. Noting that the plaintiff's ICFA claim "relates to two different products that have different product formulations and labels, one of which was never purchased," the court dismissed the claim for the product not purchased, holding that the plaintiff "cannot use the class-action device to 'predicate standing on injury which he does not share . . . .'" 2012 U.S. Dist. LEXIS 87222 at *8. Accordingly, Plaintiff's purported claim as to the Up & Up Advanced product should be dismissed.

## II.  PLAINTIFF'S CONCLUSORY ALLEGATIONS FAIL TO STATE A CLAIM UNDER RULE 8, RULE 9(b), OR RULE 12(b)(6).

Plaintiff's Complaint also fails because his allegations do not meet the pleading requirements of Rule 8, Rule 9(b), or Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 8 requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court has explained that Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). Accordingly, Rule 8 requires that a complaint allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires a plaintiff to plead "*factual content* that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added). A complaint must contain sufficient factual allegations to "show that the pleader is entitled to relief," lest a plaintiff "with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 557-58 (alteration and internal quotations omitted). What will *not* suffice are "unadorned, the defendant-unlawfully-harmed-me-accusation[s]," "labels and conclusions," "formulaic

9

recitation[s] of the elements of a cause of action," and "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The heightened pleading standards of Rule 9(b) also apply to Plaintiff's Complaint. "A claim under the ICFA is a fraud claim that must be pled with particularity under Fed. R. Civ. P. 9(b)." *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05cv3004, 2006 U.S. Dist. LEXIS 18630, at *11 (N.D. Ill. Apr. 12, 2006) (Zagel, J.). As such, a plaintiff must plead "all the circumstances of the fraud in detail," including "the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* The purpose is to "force the plaintiff to do more than the usual investigation before filing his complaint" to ensure that the claim is "responsible and supported, rather than defamatory and extortionate." *Id.* at *12 (internal quotations omitted).

### A.      Plaintiff's Claim Is Facially Implausible.

Plaintiff's claim is fundamentally defective because it is facially implausible. As noted above, the core of Plaintiff's claim is that the representations on the Products are deceptive because studies of different formulations containing some of the ingredients in the Products supposedly suggest that the ingredients are ineffective in treating or curing osteoarthritis. Cmplt. ¶¶ 3, 21-29. These allegations are the basis of both his affirmative misrepresentation and his non-disclosure claims. *Id.* ¶ 3.

Plaintiff does not (and cannot) point to any studies evaluating the effectiveness of the actual Products, much less the effectiveness of the Products in providing the joint support benefits actually represented by Target. Rather, Plaintiff's theory requires an unwarranted inferential leap that alleged proof of other products' ineffectiveness in treating or curing

osteoarthritis renders the representations on the Products false or misleading despite the fact that the Products' packaging plainly disclaims use of the Products to treat or cure any disease. Such a theory, however, defies common sense: even if Plaintiff were able to prove that the cited studies say what he asserts that they say,[5] the findings of those studies would have no bearing on showing the falsity of the actual representations on the Products, which not only do not purport to treat or cure osteoarthritis, but also include the disclaimer that the Products are "not intended to diagnose, treat, cure, or prevent any disease." Exs. B and C.

While Plaintiff attempts to artfully plead around this disclaimer with the conclusory and unsupported allegation that Target "primarily markets these products to and they are purchased primarily by persons suffering from osteoarthritis. . . . [and] [p]ersons who experience . . . and seek to prevent joint ailments" (Cmplt. ¶ 1), the disclaimer that the Products are "not intended to diagnose, treat, cure, or prevent any disease" renders Plaintiff's unfounded insinuations unreasonable as a matter of law. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (holding that "to the extent that anyone could imply from the statements at issue [the interpretation of the representation alleged by the plaintiff], the information available to [consumers] and in [plaintiff's] possession, would dispel any such implication"); *7-Eleven, Inc. v. Spear*, No. 10cv6697, 2011 U.S. Dist. LEXIS 67415, at *20 (N.D. Ill. June 23, 2011) ("[The representations] were only 'misleading' if Defendants ignored the express terms of the earnings claim and made projections based on their own assumptions . . . . Because they could not have

---

[5]     For example, Plaintiff quotes a study by Daniel O. Clegg for the proposition that "[t]he analysis of the primary outcome measure did not show that either [glucosamine or chondroitin], alone or in combination, was efficacious . . . ." Cmplt. ¶ 3. Plaintiff's quotation is selective and misleading—the very next sentence of the study states that glucosamine and chondroitin together "significantly decreased knee pain related to osteoarthritis, as measured by the primary outcome" for patients with "moderate-to-severe pain." Clegg, *et al.*, *Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis*, 354:8 New Eng. J. Med. 795, 806 (Feb. 23, 2006) (attached as Ex. D).

done so consistent with the disclaimers . . . Defendant Spear cannot claim that she . . . was misled by 7-Eleven[] . . . .").

The Complaint pleads facts that are, at most, "merely consistent with" liability, and therefore "stop[] short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Ultimately the Complaint is "bereft of any suggestion, beyond a bare conclusion," that the cited studies render the representations on the Products unsupported (let alone fraudulent), and consequently the Complaint fails to satisfy Rule 8. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

### B. Plaintiff Fails To Specify The Representations He Read And Attributes Representations To Target That It Never Made.

Rather than identify which statements he read, Plaintiff summarizes *some* of the statements that appear on one or another of the labels, adds other statements that were never contained on either of the labels, dubs this stew the "the joint health benefit representations," and ascribes the same representations to both Products as if the ingredients and statements were identical even though the Complaint concedes they are not. *See* Cmplt. ¶¶ 1-2, 14-20, 30-33.

Not only does Plaintiff cryptically allege that the Product labeling includes a "take – away" representation it indisputably does not actually include (none of the labels state that the Products are effective "for all joints in the human body, for adults of all ages, and for all manner and stages of joint related ailments" (*see supra* at pp. 3-5), but it cannot be determined from the Complaint whether Plaintiff's allegations extend to other statements that appear on the labels. A plaintiff's failure to specify which representations he saw is the most fundamental violation of Rule 9(b), and fatal to the Complaint. *U.S. ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 604-05 (7th Cir. 2005); *Cosmetique, Inc. v. Valuecheck, Inc.*, 753 F. Supp. 2d 716, 721 (N.D. Ill. 2010) ("Rule 9(b) does not require plaintiffs to give some *examples* of fraud to give the

defendant a *flavor* of what the case is about.  Rule 9(b) requires a plaintiff to *specifically identify the alleged fraudulent or deceptive statements . . . .*") (emphasis added).  Rule 9(b) does not allow a plaintiff to base a fraud claim on conclusory allegations of falsity based on vague allegations regarding representations that the plaintiff *may* have seen, much less representations that the defendant *never made*.  *See also Padilla*, 2012 U.S. Dist. LEXIS 87222 at *11 ("Padilla repeatedly alleges that 'numerous' clinical studies do not show that Kirkland Glucosamine products help '*joint renewal and rejuvenation*.'  However, Padilla does not allege that the Glucosamine with MSM label contains any reference to 'joint renewal or rejuvenation.'  Padilla fails to allege the precise wording of Glucosamine with MSM's label . . . . Thus, Padilla's fraud allegations fail to satisfy the level of particularity required by Rule 9(b)."

### C.  Plaintiff Fails To State A Claim Under ICFA.

Finally, to state a claim for false advertising or marketing under ICFA, a plaintiff must plead facts that show that the representations are actually deceptive and that this deception proximately caused the plaintiff actual injury.  *Gredell v. Wyeth Labs., Inc.*, 367 Ill. App. 3d 287, 290-91 (1st Dist. 2006).  Here, there is no statement on the label that the representations at issue *are* substantiated by certain types of studies.  Accordingly, Plaintiff cannot shift the burden to Target merely by claiming that the representations at issue are *un*substantiated—or false or misleading *because* they are unsubstantiated—but must affirmatively plead and establish actual falsity:  "Lack of substantiation is deceptive only where the claim at issue implies there is substantiation for the claim . . . .  Merely because a fact is unsupported by clinical tests does not make it untrue."  *Id.* at 291; *Bober*, 246 F.3d at 939 n.2 (same); *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1088-91 (7th Cir. 1994) (for statements that do not reference tests or surveys (so-called "non-establishment claims"), "proof that the advertiser has no support for its

13

statement would not necessarily prove falsity. . . . [T]he plaintiff must offer affirmative proof that the advertisement is false.").

The original Complaint in this case was replete with direct assertions (now removed) that Target lacks substantiation for the statements on the Products. *See, e.g.*, Original Cmplt. [Dkt. 1] ¶ 2 ("Defendant does not have competent and reliable scientific evidence to support its representations."); *id.* at ¶ 20 ("Despite the existence of numerous clinical studies that have found no causative link between the ingredients in Defendant's Products and joint renewal, maintenance or mobility, and the lack of competent scientific evidence supporting such representations . . . ."). Courts interpreting ICFA have dismissed similar attempts as non-cognizable claims for lack of substantiation. *Bober*, 246 F.3d at 939 n.2 (affirming dismissal of ICFA claim and rejecting plaintiff's argument that "a lack of substantiation can be deceptive," because "the statements at issue do not imply that there is substantiation for the claim about the relative effectiveness of [the products]"); *Gredell*, 367 Ill. App. 3d at 291 (affirming dismissal of ICFA claim as non-cognizable claim for lack of substantiation where plaintiff alleged that representations on cough medicine were made "without a reasonable basis or valid scientific evidence," because defendants did not represent that the representations were scientifically supported).

Removing the Complaint's stripes, however, does not make the it any less of a zebra, and while the First Amended Complaint excises these explicit assertions that Target lacks substantiation for its claims, the core of Plaintiff's theory remains unchanged. The Complaint still does not (and could not) allege that Target falsely represents that the Products are proven to be effective by "clinical cause and effect studies," because there is no such representation on the Products. Nor can Plaintiff claim that Target represents that the Products should be used to treat

14

osteoarthritis, because Target states the opposite:  "This product is not intended to diagnose, treat, cure, or prevent any disease."  Exs. B and C.

Instead, Plaintiff alleges that clinical studies have failed to find evidence that some of the ingredients in the Products are effective in general.  In purported support, Plaintiff cites a series of studies (none of which tested the actual Products) evaluating whether different formulations containing some of the Products' ingredients are effective for treating osteoarthritis.[6]  Cmplt. ¶¶ 21-29.  But even the inconclusive studies Plaintiff points to (while ignoring others) show at *most* a lack of substantiation, not actual falsity.  *See, e.g.*, Cibere, *et al*., *Randomized, Double Blind, Placebo Controlled Glucosamine Discontinuation Trial in Knee Osteoarthritis*, 51:5 Arthritis & Rheumatism 738, 739 (Oct. 15, 2004) ("[T]he evidence for the efficacy of glucosamine in knee OA is *inconclusive*.") (emphasis added) (attached as Ex. E); McAlindon, *et al*., *Effectiveness of Glucosamine for Symptoms of Knee Osteoarthritis: Results from an Internet-Based Randomized Double-Blind Controlled Trial*, 117 Am. J. Med. 643, 648 (Nov. 1, 2004) ("[M]ethodologic issues and sample differences among these trials indicate that further studies will be needed to resolve the issue of the effectiveness of glucosamine products.") (attached as Ex. F).  This is just a lack of substantiation allegation—that a representation is false *because* it is unsubstantiated—which the Seventh Circuit has already rejected.  *See Bober*, 246 F.3d at 939 n.2

---

[6]      *See, e.g.*, Cmplt. ¶ 22 (citing 2004 study of use of glucosamine "in treating the symptoms of knee osteoarthritis"); ¶ 23 (citing 2004 study of use of glucosamine to treat "disease flares" among patients with knee osteoarthritis); ¶ 24 (citing 2006 study of effectiveness of glucosamine and chondroitin "on osteoarthritis"); *id.* (citing 2008 study examining the effectiveness of glucosamine and chondroitin "on the Progression [of] Knee Osteoarthritis"); ¶ 25 (citing 2008 guideline regarding "use of glucosamine or chondroitin for treating osteoarthritis"); ¶ 26 (citing 2008 study "assessing the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis");  ¶ 27 (citing 2010 meta-analysis of studies on use of glucosamine and chondroitin for treatment of "arthritis of the knee or hip"); ¶ 28 (citing 2010

(Continued)

15

("[P]laintiff also asserts that because there is no substantiation for the [the representation], the statements at issue violate the CFA by implying that that proposition is correct. . . . Here, the statements at issue do not imply that there is substantiation [for the representation] . . . .").

Indeed, the Complaint's only specific allegations of actual falsity (as opposed to either direct or indirect allegations of lack of substantiation) are premised on a fictional "joint health benefit representation" concocted by Plaintiff that the Product will "'rebuild cartilage/renew cartilage,' help 'maintain the structural integrity of joints,' and 'lubricate joints/supports joint mobility and flexibility' . . . . 'for all joints in the human body, for adults of all ages and *for all manner and stages of joint related ailments*.'" Cmplt. ¶ 2 (emphasis added). Neither label for either Product makes such a representation.

Ultimately, the osteoarthritis studies cited by Plaintiff do not support the falsity of the actual representations on the Products or Plaintiff's straw-man representations. Even if Plaintiff's interpretations of the cited clinical studies of other products or formulations could be taken at face value, such allegations cannot show that any of Target's representations are false. Plaintiff cannot bring a consumer fraud claim based on a few inconclusive studies examining whether different formulations are effective for treating osteoarthritis (a disease the Products were never represented to treat), rather than studies examining the effectiveness of the actual Product in providing the benefits actually represented. Because Plaintiff alleges no facts showing actual falsity and his only challenge to the representations on the Products is that they supposedly lack substantiation, Plaintiff's claims should be dismissed.

---

(Continued)

study on use of glucosamine for treatment of "low back pain and lumbar osteoarthritis"); ¶ 29 (citing 2008 study on use of MSM for "treatment of osteoarthritis" of the knee).

## <u>CONCLUSION</u>

For all of the foregoing reasons, the First Amended Class Action Complaint should be dismissed with prejudice in its entirety.

Dated: July 20, 2012                            Respectfully submitted,

                                          /s/ Bradley J. Andreozzi
                                          Bradley J. Andreozzi (ARDC No. 6257334)
                                          bradley.andreozzi@dbr.com
                                          Justin O. Kay (ARDC No.6286557)
                                          justin.kay@dbr.com
                                          **DRINKER BIDDLE & REATH LLP**
                                          191 North Wacker Drive, Suite 3700
                                          Chicago, IL 60606-1698
                                          Tel:     (312) 569-1000
                                          Fax:     (312) 569-3000

                                          Kara L. McCall (ARDC No. 6272681)
                                          kmccall@sidley.com
                                          Shelby K. Feuerbach (ARDC No. 6296364)
                                          sfeuerbach@sidley.com
                                          **SIDLEY AUSTIN LLP**
                                          One South Dearborn Street
                                          Chicago, IL 60603
                                          Tel:     (312) 853-7000
                                          Fax:     (312) 853-7036

                                          *Counsel for Defendant Target Corporation*