# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, On Behalf of Himself and All Others Similarly Situated, | Case No.:        11-CV-07972 |
| Plaintiff, | CLASS ACTION |
| v. | **Judge James B. Zagel** |
| TARGET CORPORATION, a Minnesota Corporation, | |
| Defendant. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................1

RESPONSE TO DEFENDANT'S SUMMARY OF COMPLAINT ..............................................1

ARGUMENT ...........................................................................................................5

    I.   TARGET'S STANDING ARGUMENT IS WITHOUT MERIT. .....................................5

   II.  PLAINTIFF MORE THAN ADEQUATELY STATES A CLAIM UNDER RULE 8, RULE 9(b), AND RULE 12(b)(6). ...................................................................9

      A.  Plaintiff's Consumer Fraud Claims Satisfy the Plausibility Test. ................................9

      B.    Plaintiff Specifically Identifies the Representations That he Read And Was Deceived By............................................................................................13

      C.    Plaintiff States A Claim Under the ICFA. .............................................................14

CONCLUSION .......................................................................................................17

# TABLE OF AUTHORITIES

*188 LLC v. Trinity Indus. Inc.*
   300 F.3d 730 (7th Cir .2002) ........................................................................................16

*Anderson v. Jamba Juice Co.*,
   4:12-cv-01213 (N.D. Cal. August 25, 2012) ..................................................................7

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009)........................................................................................................9

*Askin v. Quaker Oats, Co.*
   No. 11 CV 111, 2011 WL 5008524 (N.D. Ill. October 12, 2011) ..................................4, 5

*Atkins v. City of Chicago*
   631 F.3d 823 (7th Cir. 2011) ........................................................................................11

*BASF Corp. v. Old World Trading Co.*
   41 F. 3d 1081 (7th Cir. 1994) ......................................................................................15

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007)........................................................................................................9

*Bober v.Glaxo Wellcome PLC*
   246 F.3d 934 (7th Cir. 2001) ..........................................................................14, 15, 16

*Brazil v. Dell, Inc.*
   No. C-07-01700, 2008 WL 4912050 (N.D. Cal. 2008) .....................................................8

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011)..................................................................................7, 8

*Cardenas v. NBTY, Inc.*
   CIV. S-11-1615, 2012 WL 1593196 (E.D. Cal. May 4, 2012).......................................7, 8

*Carideo v. Dell, Inc.*
   706 F. Supp. 2d 1122 (W.D. Wash. 2010).......................................................................8

*Chacana v. Quaker Oats Co.*
   No. 10-0502, 2010 U.S. Dist. LEXIS 111891 (N.D. Cal. Oct. 14, 2010) .........................4

*Chavez v. Blue Sky Natural Beverage Co.*
   268 F.R.D. 365 (N.D. Cal. 2010).....................................................................................6

*Clark v. McDonald's Corp.*
    213 F.R.D. 198 (D.N.J. 2003) .................................................................8

*De La Fuente v. Stokely–Van Camp, Inc.*
    713 F. 2d 225 (7th Cir. 1977) ...............................................................6

*Delahunt v. Cytodyne Techs.*
    241 F. Supp. 2d 827 (S.D. Ohio 2003) .................................................5

*Donahue v. Apple Inc.*
    11-cv-05337, 2012 WL 1657119 (N.D. Cal. May 10, 2012) ............................8

*Edwards v. 21st Century Ins. Co.*
    No. 09-4364, 2010 WL 2652247 (D.N.J. June 23, 2010)..................................8

*Elias v. Ungar's Food Prods., Inc.*
    252 F.R.D. 233 (D.N.J. 2008)...............................................................8

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) ...............................................................6

*Fallick v. Nationwide Mutual Ins. Co.*
    162 F.3d 410 (6th Cir. 1998) ...............................................................6

*Forcellati v. Hyland's, Inc.*
    CV 12-1983, 2012 WL 2513481 (C.D. Cal. June 1, 2012) ................................8

*FTC v. Direct Marketing Concepts, Inc.*
    624 F.3d 1 (1st Cir. 2010)....................................................................12

*Gredell v.Wyeth Labs., Inc.*
    367 Ill. App. 3d 287 (1st Dist. 2006) ...........................................................15

*In re Aqua Dot Prods. Liab. Litig.*
    654 F.3d 748 (7th Cir. 2011) ...............................................................5

*In re Hydroxycut Mktg. and Sales Practices Litig.*
    801 F. Supp. 2d 993 (S.D. Cal. 2011)...........................................................4

*In re Leapfrog Enters., Inc. Sec. Litig.*
    No. C-03-05421, 2005 WL 3801587 (N.D. Cal. Nov. 23, 2005) ........................6

*In re Potash Antitrust Litig.*
    667 F. Supp. 2d 907 (N.D. Ill. 2009) ..........................................................7

*In re Rhythms Secs. Litig.*
    300 F. Supp. 2d 1081 (D. Colo. 2004)...............................................................8

*In re VeriSign, Inc.*
    No. C 02-02270, 2005 WL 88969 (N.D. Cal. Jan. 2005) ...................................8

*Johns v. Bayer Corp.*
    No. 09cv1935, 2010 WL 2573493 (S.D. Cal. June 24, 2010) .........................12

*Kwikset Corp. v. Super. Ct.*
    51 Cal.4th 310 (2011)........................................................................................4

*Lerma v. Schiff Nutritional, Inc.*
    11-CV-1056 (S.D. Cal. Mar. 12, 2012) .............................................................2

*Lujan v. Defenders of Wildlife*
    50 U.S. 555 (1992)............................................................................................5

*Medrazo v. Honda of N. Hollywood*
    166 Cal. App. 4th 89 (2008) .............................................................................6

*Minn-Chem, Inc. v. Agrium, Inc.*
    683 F.3d 845 (7th Cir. 2012) .............................................................................7

*Mintz v. Mathers Fund, Inc.*
    463 F.2d 495 (7th Cir. 1972) .............................................................................9

*Nelson v. Mead Johnson Nutrition Co.*
    270 F.R.D. 689 (S.D. Fla. 2010) ......................................................................6

*Ong v. Sears Roebuck & Co.*
    388 F. Supp. 2d 871 (N.D. Ill. 2004) ................................................................8

*Padilla v. Costco Wholesale Corp.*
    11-CV-7686, 2012 WL 2397012 (N.D. Ill. June 21, 2012 ...........................8, 13

*Payton v. County of Kane*
    308 F.3d 673 (7th Cir. 2002) ...............................................................5, 6, 7, 8

*Raltson v. Mortg. Investors Group, Inc.*
    No. 5:08-cv-00536, 2011 WL 4081696, (N.D. Cal. Sept. 12, 2011) .................6

*Rosario v. Livaditis*
    963 F.2d 1013 (7th Cir. 1992) ...........................................................................6

*Salazar Martinez v. Fowler Bros., Inc.*
  781 F. Supp. 2d 183 (W.D.N.Y. 2011) ...........................................................................6

*Saltzman v. Pella Corp.*
  257 F.RD. 471 (N.D. Ill. 2009)........................................................................................7

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*
  No. 05-cv-3004, 2006 WL 952032 (N.D. Ill. Apr. 12, 2006)........................................6, 8

*Simonian v. Weber-Stephen Prod. Co.*
  272 F.R.D. 218 (N.D. Ill. 2011) ...................................................................................11

*Simpson v. Fireman's Fund Ins. Co.*
  231 F.R.D. 391 (N.D. Cal. 2005) ....................................................................................6

*Sinclair v. United Healthcare of Georgia, Inc.*
  No.1:96-CV-3421, 1998 WL 34080882 (N.D. Ga. Aug. 31, 1998) ..................................6

*Thacker v. Menard*
  105 F.3d 382 (7th Cir. 1997) ........................................................................................12

## INTRODUCTION

Plaintiff's First Amended Class Action Complaint ("FAC") asserts claims for violations of the Illinois "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 505/2, *et seq.* (the "ICFA"). Defendant attempts to recast this consumer protection action as something it is not - a lack of scientific substantiation case - and then argues, in a variety of contexts, that because there is no private right of action for unsubstantiated claims, Plaintiff's FAC should be dismissed in its entirety.

To the contrary, the FAC alleges false and deceptive advertising, namely that Defendant represented a uniform message on the front labels of both of its glucosamine chondroitin products [1] that these products provide specific joint health benefits, when, in fact, they do not. Plaintiff supports and lends plausibility to his allegations that Defendant's joint health benefit representations are false, misleading and likely to deceive the public by alleging that clinical studies have proven that the ingredients in Defendant's Products do not provide the represented joint health benefits.

Defendant also contends that Plaintiff lacks "standing" to represent a class comprised of purchasers of the Up & Up Advanced product that he did not purchase. Defendant's contention in this regard confuses standing – which Plaintiff clearly has – with Rule 23 considerations. Moreover, it is a contention that has been rejected by numerous courts, including this Court.

For these and other reasons set forth below, Defendant's Motion to Dismiss should be denied.

## RESPONSE TO DEFENDANT'S SUMMARY OF COMPLAINT

Defendant initially notes that Plaintiff Pearson purchased Defendant's Up & Up Triple Strength approximately one month after he had purchased another glucosamine product

---

[1] The two products include: (1) Up & Up Triple Strength Glucosamine Chondroitin Plus MSM Dietary Supplement ("Up & Up Triple Strength"); and (2) Up & Up Advanced Glucosamine Chondroitin Complex Dietary Supplement ("Up & Up Advanced") (collectively "the Products").

manufactured and sold by Schiff Nutritional, Inc. (Def. Mem. 2).[2]  Defendant then argues that Plaintiff "evidently believing that glucosamine and chondroitin were not only ineffective but also dangerous,[3] Plaintiff nevertheless claims he was deceived into purchasing Up & Up Triple Strength . . ." (Def. Mem. 3).  Of course this is pure speculation on Defendant's part as to what Plaintiff believed at the time of his purchase of Defendant's product and is completely outside of the complaint.  Plaintiff alleges that he was deceived by Defendant's misrepresentations on the packaging of Up & Up glucosamine product (FAC ¶ 10).  That he previously purchased another glucosamine product and it did not work for him, does not require the conclusion that Defendant has speculated – that at the time that he purchased Defendant's Up & Up glucosamine product, he believed that all glucosamine chondroitin products were ineffective and dangerous – any more than the actual facts – the Schiff product having not worked for him, he decided to see if another product would work and purchased Defendant's Up & Up glucosamine product in reliance upon the representations that Defendant made on the packaging of its Product.[4]  In fact, his purchasing another product after the first one did not work is entirely consistent with someone who was seeking the joint health benefits represented on the packaging of both products.

Defendant contends that each product contains different ingredients in different amounts. (Def. Mem. 3).   Yet, Defendant admits, consistent with what Plaintiff alleges (FAC ¶¶ 1,3, 15,16,19 and 30), that the two primary active ingredients in both the Products are glucosamine and chondroitin. (Def. Mem. 3).

Defendant elevates form over substance by contending that the representations made on the packaging of Defendant's two glucosamine products are different because the exact wording

---

[2] Citing to his being one of two plaintiffs in another glucosamine case (*Lerma v. Schiff Nutritional, Inc.*, 11-CV-1056 (S.D. Cal. Mar. 12, 2012) involving Schiff's Move Free Advanced glucosamine products

[3] In *Lerma*, Plaintiff alleged that the Schiff Glucosamine product he purchased and used gave him headaches and nausea.

[4] While Plaintiff does not believe that in order to state a consumer fraud claim he is required to explain why he purchased the Up & Up Triple Strength product after having first purchased another glucosamine product, if the Court deems otherwise, Plaintiff seeks leave to amend to plead that after having purchased and used this other product and it not having provided him with any joint health benefits, he decided to try Up & Up Triple Strength to see if it would work as represented on the Product's packaging.

is not the same. (Def. Mem. 3-4). While the wording may not be exact, as alleged in the FAC, the same substantive message is conveyed for each product – (1) on the front of the packaging one says it will help "rebuild cartilage" and the other states that it "supports the renewal of cartilage", (2) both state that they will "help maintain the structural integrity of joints,"[5] and (3) on the front of the packaging one says that it will "lubricate joints" while the other states the analogue and says that it "supports mobility and flexibility." (FAC ¶ 1). Regardless of the wording not being exact, the substance of these joint health benefit representations are essentially identical – both products will help restore cartilage and will provide joint lubrication/mobility. Moreover, contrary to Defendant's contentions otherwise (Def. Mem. 4-5), because these uniform representations are made without limitation, the only, and thus necessarily reasonable, take-away that can be drawn by a consumer reading the front of the packaging is that these products are effective for all joints, for adults of all ages and all manner and stages of joint related ailments. (FAC ¶ 2).

Defendant attempts to conjure up other differences in the labeling by pointing out that there are differing statements made on the side panels of each package. (Def. Mem. 4). While the side panels may contain slightly different deceptive representations, they are repetitious of the representations made on the front of the packaging.[6]

Defendant also contends that Plaintiff cites clinical studies that purportedly have nothing to do with Defendant's products, asserting that the studies test "other product formulations" and examine their "effectiveness not in simply supporting joint health but rather in treating osteoarthritis"– that the complaint "does not allege that any of these studies tested the actual

---

[5] While this representation is made on the front of the Up & Up Triple Strength product and on the side panel of the Up & Up Advanced product (FAC ¶ 1), as alleged in the FAC (*Id.* n. 3), this representation is really an analogue to the joint rebuilding/renewal representations on the front of the two products' packaging and labeling.

[6] For example to assert, as does Defendant, that only Up & Up Triple Strength states on the side of its box that glucosamine is a major building block of joint cartilage that "helps maintain the structural integrity of joints and connective tissue" is a distinction without merit because this is merely redundant of the message on the front of the packaging of both Products.

Products or formulations at issue or that Target ever claimed that its Products could be used to treat osteoarthritis." (Def. Mem. 5).

Nothing could be further from the truth. The FAC cites to studies that test the **same** ingredients – glucosamine and chondroitin – that Defendant admits are the primary ingredients in its Products, in the **same** amounts that are contained in Defendant's products. Furthermore, the FAC alleges that the cited studies, while addressing patients with osteoarthritis, are deemed by the scientific community to be proxies for whether these products provide joint health benefits for persons not suffering from osteoarthritis (FAC ¶ 21 n. 7).

Defendant also notes in its factual statement that Plaintiff has not alleged for what condition he purchased Up & Up Triple Strength, which benefits he did not experience, and how he knew that the product did not work for him (Def. Mem. 5-6). Defendant does not address these contentions in its argument section. And rightly so – they are irrelevant. Plaintiff's consumer fraud injury occurred at the time of his purchase of Up & Up Triple Strength when he was induced to purchase a product that, if the truth had been known by him, he would not have purchased. What transpired after his purchase is of no matter with respect to his consumer fraud injury. *See, e.g.*, *Askin v. Quaker Oats, Co.*, No. 11 CV 111, 2011 WL 5008524, at *5 (N.D. Ill. October 12, 2011) (injury occurs under ICFA when plaintiff would not have purchased product absent misleading statements); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 334 (2011) ("[I]n the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the *moment of purchase…*" (emphasis added); *In re Hydroxycut Mktg. and Sales Practices Litig.*, 801 F. Supp. 2d 993, 1002 (S.D. Cal. 2011) ("[T]he injury to Plaintiffs occurred at the time they purchased the Hydroxycut products and did not receive the benefit of their bargain."); *Chacana v. Quaker Oats Co.*, No. 10-0502, 2010 U.S. Dist. LEXIS 111891, at *34-35 (N.D. Cal. Oct. 14, 2010) ("The injury alleged here is the ***purchase*** of food products that contain an ingredient the plaintiffs find objectionable. Had they known about the trans fat content, they insist, they would not have purchased the product. Defendant's health-based harm argument misses the mark, as plaintiffs have

adequately alleged an injury directly related to the redress they seek.") (emphasis in original); *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 835 (S.D. Ohio 2003) ("Unlike a common law fraud claim where a plaintiff must allege harm above and beyond the misrepresentation and reliance thereon, a cause of action accrues under the Consumer Sales Practices Act as soon as the allegedly unfair or deceptive transaction occurs" – that it is "the financial harm resulting from the unfair or deceptive transaction that the statute was intended to redress.").

## ARGUMENT

### I. TARGET'S STANDING ARGUMENT IS WITHOUT MERIT.

Target contends that Plaintiff lacks both Article III and ICFA standing to bring claims regarding Up & Up Advanced because he only purchased the Up & Up Triple Strength product. (Def. Mem. 6). This contention conflates the concept of standing with Rule 23, and is contrary to the weight of authority in the Seventh Circuit, including a decision rendered by this Court.

Standing is a question solely addressed to the named plaintiff and is met where, as here, Plaintiff alleges injury, causation and redressability. *See Lujan v. Defenders of Wildlife*, 50 U.S. 555, 560 (1992). Specifically, Plaintiff has alleged that he purchased Target's Up & Up Triple Strength product, was deceived in this purchase as a result of Target's false and deceptive representations, and if he had known the truth about the product he would not have purchased it (FAC ¶¶10, 31). This satisfies Article III, as well as, ICFA standing requirements. *See, e.g.*, *Askin*, 2011 WL 5008524, at *5; *see also In re Aqua Dot Prods. Liab. Litig.*, 654 F.3d 748, 749 (7th Cir. 2011) (financial injury, even if slight, creates standing under ICFA). Thus, there can be no doubt that Plaintiff has standing to bring his claims against Target.

As to whether Plaintiff may seek to represent Class members who purchased Up & Up Advanced, which contains the same primary active ingredients (glucosamine and chondroitin) and makes virtually identical representations as Up & Up Triple Strength, the majority of courts have answered this in the affirmative. For the few that have not, those cases are outliers based upon faulty reasoning. In *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), for example, the Seventh Circuit rejected a lack of standing argument where the two named plaintiffs had

claims against only two of the nineteen defendants, holding that this was not a standing question, but rather, a Rule 23 question. *Id.* at 678-81. As the Seventh Circuit noted in *Payton*, a plaintiff has standing to challenge a *practice* where "the injury is of a sort shared by a large class of possible litigants." *Id.* at 679 (quoting *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)). If, as the Seventh Circuit held in *Payton*, the named plaintiffs could, if they met the requirements of Rule 23, proceed with a class action against defendants against whom they had no claims, *a fortiori*, Plaintiff's complaint here should not be dismissed. Instead, Plaintiff should be allowed to seek a class action against Target, a defendant against whom he has a claim, on behalf of purchasers of a similar glucosamine based product to the one that Plaintiff purchased and for which Defendant has made similar false representations.[7]

A similar lack of standing argument was rejected as premature by this Court in *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.,* No. 05-cv-3004, 2006 WL 952032 at *1 (N.D. Ill. Apr. 12, 2006). In *Scott*, the defendant, like Target here, argued that because the plaintiff had only purchased one of defendant's products (Abreva) she lacked standing to pursue claims regarding the other product (Valtrex). The court in *Scott*, relying upon *Payton*, stated, "[a]lthough GSK is raising the issue of Scott's standing to pursue the Valtrex claims now, it has

---

[7]. *See, e.g.*, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("[W]e look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)."); *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F. 2d 225, 232 (7th Cir. 1977) (a plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011) (finding that the defendant's challenge to plaintiff's standing was really a typicality argument); *Raltson v. Mortgage Investors Group, Inc.*, No. 5:08-cv-00536, 2011 WL 4081696, at *3 (N.D. Cal. Sept. 12, 2011) (Rule 23 question and not standing question); *Salazar Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183, 188 (W.D.N.Y. 2011) (same); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (finding that the plaintiff satisfied the typicality requirement even though he did not purchase each product because the product line "bore substantially the same misrepresentation" and the class claims arose from the same facts and legal theory); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 695 (S.D. Fla. 2010) (finding that plaintiff's claims were typical of the class even though class members viewed different Enfamil labels); *Simpson v. Fireman's Fund Ins.* Co., 231 F.R.D. 391, 396 (N.D. Cal. 2005) (relying on the Seventh Circuit's holding in *Rosario*, the court rejected defendant's standing argument); *In re Leapfrog Enters., Inc. Sec. Litig.*, No. C-03-05421, 2005 WL 3801587, at *3 (N.D. Cal. Nov. 23, 2005) (rejecting standing and lack of typicality arguments); *Sinclair v. United Healthcare of Georgia, Inc.*, No.1:96-CV-3421, 1998 WL 34080882, at *2 (N.D. Ga. Aug. 31, 1998) (same); *Medrazo v. Honda of North Hollywood*, 166 Cal. App. 4th 89, 98-99 (2008) (same).

been clearly established that in the context of class action, class certification issues must be dealt with before the trial judge decides standing." *Id.; see also Saltzman v. Pella Corp.*, 257 F.RD. 471, 480 (N.D. Ill. 2009) (citing *Payton* for the proposition "that class certification should normally precede Article III standing challenges").[8]

Likewise, in *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530-31 (C.D. Cal. 2011), the plaintiff sought to represent a class that included purchasers of both a gelcap and liquid form of a dietary supplement – the liquid representing to have a six times better absorption rate and the gelcap making a substantially different representation – a three times better absorption rate. The plaintiff had only purchased the liquid form, yet the court rejected defendant's contention that the plaintiff lacked standing as to both products, holding that whether plaintiff could represent a class of those with similar but not identical claims was not a standing issue but one that was to be determined based upon typicality and commonality under Rule 23. *Id.*[9]

Similarly, in a case involving eight Osteo Bi-Flex glucosamine products, only one of which the plaintiff had purchased, the court rejected the very same standing arguments raised by Target here, stating that the reasoning of *Bruno* was more "persuasive and that the court would analyze "solely under Rule 23 whether plaintiff may be allowed to present claims on behalf of purchasers of the remaining Osteo Bi-Flex products." *Cardenas v. NBTY, Inc.*, CIV. S-11-1615, -- F. Supp. 2d. --, 2012 WL 1593196, at *7 (E.D. Cal. May 4, 2012). This position has been adopted by numerous other courts. *See, e.g.*, *Anderson v. Jamba Juice Co.*, 4:12-cv-01213 (N.D.

---

[8] For these reasons Plaintiff respectfully submits that *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009) *aff'd sub nom. Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) is contrary to Seventh Circuit precedent on the question of standing. As long as a plaintiff has standing in her own right to bring a claim against a defendant, whether she can bring claims on behalf of similarly injured persons as a class action is solely a determination under Rule 23.

[9] It is of interest to note that upon analyzing this issue under the lens of Rule 23, the court concluded that because the representations of six times versus three times the absorption rate were so different and that one might be true and the other not, that the plaintiff lacked typicality. *Id.* at 534. In contrast, here, both of Defendant's Products contain the same primary ingredients and the Products' labels make essentially the same representations. Moreover, the question of whether the similar, if not identical, representations are false and deceptive will turn on an analysis of the same scientific evidence.

Cal. August 25, 2012) (attached as Exhibit A) (finding that the plaintiff had standing to bring claims on behalf of purchasers of smoothie kit flavors he did not buy because the products were substantially similar (same alleged misrepresentations and same non-natural ingredients)); *Forcellati v. Hyland's, Inc*., CV 12-1983, 2012 WL 2513481 (C.D. Cal. June 1, 2012) (rejecting same lack of standing argument, citing to *Cardenas* and *Bruno*); *Donahue v. Apple Inc.,* 11-cv-05337, 2012 WL 1657119, at *5-6 (N.D. Cal. May 10, 2012) (finding plaintiff had standing to bring claims on behalf of purchasers of the Iphone 4 and other models the plaintiff never owned); *Carideo v. Dell, Inc.,* 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (court rejected argument that plaintiffs' class claims for products that they did not purchase should be dismissed, because plaintiffs, like Plaintiff here, made the same core allegations regarding all of the products); *Elias v. Ungar's Food Prods., Inc*., 252 F.R.D. 233, 244 (D.N.J. 2008) (holding that plaintiff's claims are typical even though plaintiff did not purchase all five of defendant's products).[10]

Target's reliance on *Padilla v. Costco Wholesale Corp.*, 11-CV-7686, 2012 WL 2397012 (N.D. Ill. June 21, 2012) is misplaced. As an initial matter, the court's standing determination in *Padilla* was not made with prejudice. Rather, the court found that the complaint did not adequately allege the similarities between the Costco glucosamine products; a problem the plaintiff recently remedied in an amended pleading. Moreover, to the extent that *Padilla* holds that a plaintiff has to purchase all products at issue to have standing – which it does not – such holding runs counter to the well-reasoned analysis by the Seventh Circuit in *Payton*, as well as the reasoning of this Court in *Scott* and the other cases discussed above.[11]

---

[10] *See also Edwards v. 21st Century Ins. Co.*, No. 09-4364, 2010 WL 2652247, at *4 (D.N.J. June 23, 2010) ("[A] class representative's lack of standing to assert claims with slightly different factual bases is not grounds for dismissal of those claims if the representative otherwise has standing to sue the defendant against whom these claims are asserted. . . "); *Brazil v. Dell, Inc.*, No. C-07-01700, 2008 WL 4912050, at *5 (N.D. Cal. 2008) (finding that the plaintiffs had standing and whether the plaintiffs could represent class members whose claims differed in certain ways is a Rule 23 issue); *In re VeriSign, Inc.*, No. C 02-02270, 2005 WL 88969, at *5 (N.D. Cal. Jan. 2005) (same); *In re Rhythms Secs. Litig.*, 300 F. Supp. 2d 1081, 1085-86 (D. Colo. 2004) (same); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204-5 (D.N.J. 2003) (same).

[11] *Ong v. Sears Roebuck & Co.*, 388 F. Supp. 2d 871 (N.D. Ill. 2004) (Def. Mem. 8), is also inapposite. The holding in *Ong* was predicated upon a special statutory standing rule applicable only under Sections 11 and 12 of the federal securities laws that specifically limits a plaintiff's standing to only those

## II. PLAINTIFF MORE THAN ADEQUATELY STATES A CLAIM UNDER RULE 8, RULE 9(b), AND RULE 12(b)(6).

Plaintiff concurs with Defendant that the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) require that the FAC contain sufficient factual matter that make the claim "plausible" - that the plaintiff plead factual content that allows a court to draw the "reasonable inference" that the defendant is liable for the misconduct alleged. (Def. Mem. 9-10).[12] Plaintiff also concurs that Rule 9(b)'s heightened pleading standards require that Plaintiff plead his consumer fraud claim with particularity. (Def. Mem. 10). As discussed below, Plaintiff has pled facts that make his consumer fraud claims against Defendant plausible and has also plead his claims with sufficient particularity under Rule 9(b).

### A. Plaintiff's Consumer Fraud Claims Satisfy the Plausibility Test.

Defendant contends that Plaintiff's claims are "facially implausible" because the clinical studies cited by Plaintiff in the FAC (¶¶ 21-29) purportedly do not test the effectiveness of Defendant's actual Products, but instead involve studies of "different formulations" that only contain "some of the ingredients" in Defendant's Products. (Def. Mem. 10). Nothing could be further from the truth. Plus, even if there were a grain of truth to the argument, which there is not, it is an inappropriate merits argument.

The studies cited in the FAC tested the two primary active ingredients contained in both of Defendant's Products – glucosamine and chondroitin – and found them to be ineffective. Thus, for purposes of stating a plausible claim of inefficacy, Plaintiff need not also plead that there were studies performed specifically on Defendant's Products, as the pivotal issue is the efficacy of the specific ingredients. As to Defendant's contention that the studies referred to in the FAC involved different ingredients and different amounts of glucosamine

---

securities offerings which a plaintiff purchased. *Id.* at 890. *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972) is also distinguishable. In that case, the Seventh Circuit dismissed the plaintiffs' class allegations because the plaintiffs had "no cause of action" against the defendants and, therefore, did not have standing to represent a class. *Id.* at 499.

[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

and chondroitin, not only is this contention improper on a motion to dismiss, as being outside of the complaint and merits based, but Defendant is wrong. The studies, all of which are in the public domain, involve glucosamine in the industry-wide standard amounts – 1500 mg of glucosamine daily – the same amount recommended on each of Defendant's Products. Further, most of the studies also involved chondroitin and one studied MSM. [13] As alleged in the complaint, these studies all reached the same conclusion. Glucosamine and chondroitin – the ingredients that Defendant admits are the primary ingredients in its Products – alone or in combination, do not rebuild or renew joints or cartilage and they do not provide joint mobility, flexibility or lubricate joints. These are not tests on "other products" as Defendant contends – these are tests on the exact same ingredients in the same amounts contained in Defendant's products. Under any formulation of the *Twombly/Iqbal* test, the allegations made regarding these clinical studies clearly lend plausibility to Plaintiff's claims that the joint health benefit representations made by Defendant on each and every Product package and/or label are false, deceptive or misleading.

Defendant, nonetheless, contends that even if Plaintiff's allegations regarding these studies are true, that the studies have no bearing on the falsity of the representations made by Defendant about its Product, because the studies involved patients with osteoarthritis and Defendant's packaging does not make any representations about treating osteoarthritis (Def. Mem. 11). In this vein, Defendant also notes that its packaging states, albeit in much smaller print, that the products are not intended to "diagnose, treat, cure, or prevent any disease." *Id.*

As a threshold matter, whether or not these osteoarthritis studies support Plaintiff's allegations that these products are ineffective for all users of the Products, regardless of whether they are suffering from osteoarthritis, is a question of fact. At a minimum, Plaintiff's

---

[13] Unlike the representations made by Defendant regarding the specific joint health benefits provided by the primary ingredients – glucosamine and chondroitin - the other ingredients such as hyaluronic acid and the antioxidant blend are not represented to provide any specific joint health benefits and thus are currently not the subject of Plaintiff's claims in this lawsuit.

allegations regarding these studies lends plausibility to the allegations that the Products are ineffective for the benefits represented on the front of the labeling of these two products.

Defendant also ignores that the FAC alleges that experts in the field deem these arthritis studies to be proxies "for whether these products provide any of the represented joint health benefits, regardless of whether or not a consumer may have osteoarthritis." (FAC ¶ 21 n. 7). [14] Moreover, the FAC specifically alleges that Target "primarily markets these products to and they are purchased primarily by persons suffering osteoarthritis." (FAC ¶ 1). Thus, the studies cited by Plaintiff lend direct plausibility to the inefficacy of Defendant's Products for those who are primary purchasers of these Products – persons suffering from the symptoms of osteoarthritis.

Thus, at a minimum, the allegations regarding these studies establish a non-negligible probability that Defendant's representations are false. The representations apply to all persons who might take the Products for the joint health benefits represented on the front of the labels and most certainly does so for Defendant's primary target market – persons with symptoms of osteoarthritis. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (though the probability "need not be so great a probability as such terms as 'preponderance of the evidence" connote.") In short, the studies cited in the FAC provide sufficient "plausibility" that Defendant's Products are ineffective for all those who purchased them. *See Simonian v. Weber-Stephen Prod. Co.*, 272 F.R.D. 218, 220 (N.D. Ill. 2011). [15]

---

[14] In fact, Defendant consciously ignores this proxy allegation throughout much of its argument, making numerous strawman arguments based upon the premise that studies involving osteoarthritis are not germane to the representations it makes about its products. (*See, e.g.*, Def. Mem. 13-16).

[15] Defendant takes issue with Plaintiff's quotation from the Clegg study (FAC ¶¶ 3, 24), contending that the Plaintiff's quotation was selective and misleading because the study purportedly concluded that glucosamine and chondroitin significantly decreased knee pain in patients with moderate to severe pain. (Def. Mem. 11, n. 5). Notably, Defendant does not contest that the overall conclusion of the study was as alleged by Plaintiff. Moreover, what and whether the study actually says what Defendant contends is a question of fact – in fact the observation noted by Defendant in the Clegg study specifically stated that this observation required further study. And what Defendant fails to note is that, as alleged in the FAC, Clegg, et al., and the NIH., did conduct a further study on the question of whether glucosamine or chondroitin provided pain relief for persons who suffered from moderate to severe knee pain and concluded that they did not (FAC ¶ 24).

Defendant's next contention that the small print "disclaimer" on the labels gives it a "get out of consumer fraud claim free" card (Def. Mem. 14-15), is a merits issue not properly at issue in this motion. This is particularly so, given the fact that the Products' labeling, in far bolder lettering, states that the products will provide relief for what are commonly known to be the primary symptoms of arthritis. It is a question of fact whether a reasonable consumer would believe Defendant's large, bold, joint health benefit representations, or would read and understand that the small disclaimer language actually meant that they could not obtain any relief for their symptoms – particularly when the labeling states that the Products will provide relief of these symptoms.

As noted in *Johns v. Bayer Corp.*, No. 09cv1935, 2010 WL 2573493 (S.D. Cal. June 24, 2010) with regard to the very same "not intended to treat disease language" the Court held that on a motion to dismiss, "[w]hile there are disclaimers and qualifying language, determining whether a reasonable consumer would be deceived is inappropriate at this stage of the litigation." *Id.* at *4. In this regard, as the Court in *FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) noted, claiming that a product provides health benefits and then stating in small print that it is not intended to cure or treat a disease, "leaves an overall impression of nonsense, not clarity." *Id.* At 12 n.9.

Likewise, while also a question of fact, it is absurd for Defendant to contend that the joint health benefit representations it makes on the front of its Products' labels are not directed, at least in part, to persons who suffer from arthritis (Def. Mem. 10-11). The FAC alleges that these Products are primarily marketed to and primarily purchased by persons who suffer from arthritis. (FAC ¶ 1). Moreover, while the labels may not say the words arthritis, the joint health benefits Defendant represents the Products provide are conditions caused by arthritis and thus it is reasonable to infer that persons suffering from arthritis would purchase these products for the represented relief. [16] *See also Thacker v. Menard*, 105 F.3d 382, 386

---

[16] For example, the University of Chicago Medicine web site describes the symptoms of osteoarthritis as a breakdown of joint cartilage, which in turn interferes with joint mobility and causes joint pain and

(7th Cir. 1997) (interpretation of what defendant's representations mean to consumer is a question of fact).

### B. Plaintiff Specifically Identifies the Representations That he Read And Was Deceived By.

Defendant asserts that Plaintiff does not identify "which statements" he read and then contends that Plaintiff merely provides a general summary of what he saw (Def. Mem. 12). This is flatly wrong. Plaintiff alleges that before he purchased Defendant's Up & Up Triple Strength product he was exposed to and saw the following on the label of the product's packaging – that it "supported renewal of cartilage, helped maintain the structural integrity of joints and supported mobility and flexibility", and that if he had known the truth about these representations - that the ingredients in Defendant's Products did not work as represented - he would not have purchased them (FAC ¶ 10). Far from a summary, the language he was exposed to and saw prior to making his purchase, are verbatim what the representations on the front label of Defendant's Up & Up Triple Strength product state (See Exhibit B attached to Defendant's Mem.). For this reason, Defendant's citation to and reliance upon *Padilla v. Costco Corp.* is misplaced. Unlike the plaintiff in *Padilla*, Plaintiff here has alleged with specificity the representations upon which he saw and read in making his purchase decision and thus has satisfied Rule 9(b).

Moreover, Defendant makes much ado about Plaintiff's allegation that because there are no limitations accompanying the joint health benefit representations, the general take-away from the Products' labeling is that these products "will provide these specific joint related benefits for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments." (FAC ¶ 2) (Def. Mem. 12). Defendant wrongly claims that these "take-away" allegations are too general.

---

stiffness. *See*, http://www.uchospitals.edu/online-library/content=P00061. These are the conditions for which Defendant's Products represent that they provide relief.

As a threshold matter, the allegations contained in paragraph 2 of the FAC are not general – they quote directly from the representations made on the front of both Products' labels[17] and then, merely for convenience's sake for the remainder of the FAC, collectively refer to the claims Defendant's "joint health benefit representations." (FAC ¶ 2). Moreover, the take-away meaning alleged in paragraph 2 of the FAC, is the plain meaning to be derived from the statements that are in large, bold print on the front of each of Defendant's products.

Furthermore, the Products' packaging offers no qualifications or limitations as to who may gain the represented joint health benefits. Thus, it is reasonable and fair to conclude that Defendant's representations mean that any person buying its Products will obtain these joint health benefits for any joint condition or ailment they may seek to aid. But in any event, regardless of the allegations regarding the general "take-away" made in paragraph 2 of the FAC, the fact is that Plaintiff has alleged that he read and saw the specific representations made on the front label of Defendant's Triple Strength Up & Up product and, as plead in the FAC, these representations specifically state that the Product will "support renewal of cartilage, help maintain the structural integrity of joints and support mobility and flexibility." (FAC ¶ 10).

### C.    Plaintiff States A Claim Under the ICFA.

Defendant contends that because it does not state on its labels that the representations it makes about its Products are "substantiated" that it cannot be held liable for these representations. (Def. Mem. 13). This argument is absurd on its face and is wrong as a matter of law. Making false statements about the attributes of a product is at the core of the ICFA. *See e.g.*, *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) ("Under the CFA, a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive."). There is no requirement that, in addition, a defendant must also state that the attributes have been substantiated by scientific proof and Defendant noticeably fails to cite a case for this novel

---

[17] Compare the allegations in paragraph 2 of the FAC and the representations made on the front labels of Exhibits B and C attached to Defendant's Memorandum.

position. If a defendant, as Defendant here, makes affirmative statements that a product has attributes and, as here, the evidence (in this case scientific studies) shows that the Products do not have those attributes, that is consumer fraud in its purest form because the statements are false.

Moreover, Plaintiff's claims are not lack of substantiation claims, as Defendant disingenuously and repeatedly misconstrues. (Def. Mem. 13-16). Plaintiff's claims are lack of efficacy claims – the scientific evidence, as alleged in the FAC, demonstrates that the primary ingredients in Defendant's Products are not effective for the purposes represented by Defendant. Under controlling Illinois authority, lack of efficacy claims state a claim under the ICFA. *See e.g.*, *Gredell v.Wyeth Labs.*, Inc., 367 Ill. App. 3d 287, 291 (1st Dist. 2006) (Plaintiff failed to prove an ICFA claim because he did not claim and did not prove that the product was ineffective and, instead, as the sole basis of his claim contended that the defendant lacked substantiation for its health benefit representations).

For these reasons, Defendant's citation to *Bober* is misplaced, in that in the passage cited by Defendant the court was discussing the plaintiff's lack of substantiation claim. Moreover, in *Bober*, the defendant did not make any affirmative representations that the two versions of Zantac were different. *Bober*, 246 F.3d at 939. Here, by contrast, the Defendant has made affirmative statements about the specific joint health benefits its Products provide, which as alleged in the FAC, the scientific evidence demonstrates are false because the ingredients in the products have been proven to be ineffective for these purposes. Likewise, Defendant's reliance upon *BASF Corp. v. Old World Trading Co.*, 41 F. 3d 1081 (7th Cir. 1994) is also inapposite. *BASF* merely stands for the proposition that under the Lanham Act in order to prove "literal falsity", a claim of a lack of substantiation is not adequate in that it is the plaintiff's burden to prove that the defendant's product does not work as represented. Here, as is made clear in the FAC, Plaintiff is alleging that Defendant's Products do not work as represented and

that based upon scientific evidence the representations that Defendant makes on the front of the labels are literally false.

As such, Defendant's contention that it should not be liable because it does expressly not represent that it has clinical proof on its labels, is without merit. (Def. Mem. 14-15). While falsely asserting that it had such clinical proof would have also been actionable, it is not required. Defendant makes false affirmative representations about the health benefits that its products purportedly provide – that is all that is needed to state a claim under the ICFA. *Bober,* 246 F.3d at 938.

Moreover, Defendant's noting that the original complaint filed in this action, in addition to alleging a lack of efficacy/literal falsity, also alleged that Defendant lacked substantiation is curious at best (Def. Mem. 14). Allegations made in a prior complaint are superseded by an amended complaint and thus are irrelevant for purposes of evaluating a subsequent complaint. *See 188 LLC v. Trinity Indus. Inc.,* 300 F.3d 730, 736 (7th Cir. 2002) (prior pleading withdrawn as to all matters not restated in amended pleading and becomes "functus officio"). Moreover, Defendant fails to point out that in this prior pleading, the lack of substantiation allegations followed, and were corroboration of, the primary allegations that the scientific evidence had proven that Defendant's Products were ineffective. (*See, e.g.,* Docket No.1, ¶ 2 ). In either event, there can be no doubt that the FAC alleges that the primary ingredients in Defendant's Products are ineffective and do not provide the joint health benefits that Defendant represents on the front labels of its Products.

Defendant's argument that the studies cited by Plaintiff merely show a lack of substantiation and do not establish that the ingredients in Defendant's products are ineffective (Def. Mem. 15-16), is not only wrong but is a question of fact not appropriately raised on a motion to dismiss. Defendant mischaracterizes Plaintiff's allegations when it contends that all Plaintiff has alleged is that these "clinical studies have failed to find evidence that some of the ingredients in the Products are effective in general." (Def. Mem. 15). Plaintiff has cited to and

16

quoted from studies that expressly conclude that the primary ingredients in Defendant's Products were found to be "ineffective" for the purposes represented on Defendant's labeling – to-wit rebuilding or renewing joints or cartilage or providing joint mobility/flexibility or joint lubrication.[18]  Defendant's attempt to cherry pick passages from some of these studies and then argue that these studies merely prove a lack of substantiation (Def. Mem. 16) is, at best, a factual argument.

At this stage, Plaintiff has alleged that Defendant's representations on the front of its labels are false and has cited studies that he contends support his allegations of falsity.  These allegations satisfy Rule 8 and Rule 9(b) in that they put Defendant on notice of Plaintiff's claims and, at a minimum, provide the required plausibility to Plaintiff's claims of falsity.  Whether Defendant's representations are actually false and whether the studies, as Plaintiff contends, prove this falsity are pure questions of fact.  For Defendant to request the Court to engage in an interpretation of what the studies actually say, unaided by expert testimony, is entirely improper at the motion to dismiss stage.

Further, for Defendant to contend that Plaintiff's claims are based upon a "few inconclusive" studies (Def. Mem. 16) is not only improper factual argument but is also preposterous.  For example, the GAIT studies sponsored by the National Institute of Health are considered the most comprehensive studies of glucosamine and chondroitin to date – involving thousands of patients and conducted over a period of several years.  As alleged in the FAC (n. 24) these three studies concluded that glucosamine and chondroitin were ineffective in providing the benefits that Defendant represents on the front of its labeling for its Products.  If these were only studies that Plaintiff cited in support of his claims of inefficacy and falsity of Defendant's representations, the FAC would clearly meet the *Twombly/Iqbal* plausibility test.  That Plaintiff has quoted from and cited to other studies further lends plausibility to Plaintiff's claims of falsity.

---

[18] *See e.g*. FAC ¶¶ 3, 24 (citing to NIH sponsored GAIT studies).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss the FAC.

Respectfully submitted,

By: s/Stewart Weltman

STEWART M. WELTMAN LLC
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312)-427-3600
(OF COUNSEL LEVIN, FISHBEIN, SEDRAN & BERMAN)

Of Counsel:

LEVIN, FISHBEIN, SEDRAN & BERMAN
Howard J. Sedran
Charles S. Sweedler
510 Walnut Street
Philadelphia, Pennsylvania 19106
Telephone: (215)-592-1500

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ-GRAY
2325 E. Camelback Road, Ste. 300
Phoenix, Arizona 85016
Telephone:    (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 756-6978

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 31ST day of August, 2012, a copy of the foregoing Plaintiff's Response to Defendant's Motion to Dismiss First Amended Class Action Complaint was filed with the Clerk of Court using the CMM/ECF system which will send notification of such filing to the following:

David B. Sudzus
Bradley J. Andreozzi
Benjamin Todd Vinson
Justin O'Neill Kay
DRINKER BIDDLE & REATH, LLP
191 N. Wacker Drive, Ste. 3700
Chicago, IL  60606

Kara L. McCall
Shelby K. Feuerbach
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, IL  60603

*Counsel for Defendant Target Corporation*

s/*Stewart M. Weltman*