# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEVIN ANDERSON**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**JAMBA JUICE COMPANY**,<br><br>Defendant. | **Case No.: 12-CV-01213 YGR**<br><br>**ORDER GRANTING IN PART MOTION OF DEFENDANT JAMBA JUICE COMPANY WITH LEAVE TO AMEND** |

Plaintiff filed this putative class action against Defendant Jamba Juice Company ("Jamba Juice"), alleging that it falsely represented that its smoothie kits are "All Natural," when they are not. Plaintiff brings four claims, alleging violations of: (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"); (2) California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"); (3) the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"); and (4) the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA").

Jamba Juice has filed a Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. No. 22 ("FAC")), on two grounds: First, Plaintiff's Fourth Cause of Action, under the MMWA, fails because the "All Natural" statement on the smoothie kits did not establish a written warranty. Second, Plaintiff only purchased the smoothie kits in two of the five flavors, and therefore, he lacks standing to bring claims based on products he never purchased.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART** the Motion to Dismiss, and

**DISMISSES** Plaintiff's Fourth Cause of Action **WITH LEAVE TO AMEND**.[1]

## I. BACKGROUND

Jamba Juice is a leading health food and beverage retailer. (FAC ¶ 2). It has retail locations that offer fruit smoothies, fresh squeezed juices, teas/lattes, and snacks. (*Id*. ¶¶ 2, 13.) Jamba Juice also offers consumer at-home products, including frozen novelty bars and at-home smoothie kits ("smoothie kits"). (*Id*. ¶¶ 2, 14.) Defendant's smoothie kits are at issue in this case. (*Id*. ¶ 2.)

Jamba Juice's smoothie kits are prominently labeled as "All Natural," and are available in five flavors: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz. (*Id*. ¶ 12.) By labeling its smoothie kits as "All Natural," Jamba Juice has been able to charge a price premium for its smoothie kits, which cost about $4.39 each. (*Id*. ¶ 5.) Plaintiff alleges that the smoothie kits are not "All Natural," and contain the following unnaturally processed, synthetic and/or non-natural ingredients: ascorbic acid, steviol glycosides, xanthan gum, and citric acid. (*Id*. ¶¶ 12, 21-24.)

In December 2011, Plaintiff Kevin Anderson purchased Jamba Juice's Mango-a-go-go and Razzmatazz smoothie kits. (*Id*. ¶ 12.) Plaintiff relied on the representations that the smoothie kits were "All Natural" when he made his purchase. The "All Natural" representation was material to Plaintiff's decision to buy the smoothie kits, and he paid a price premium for the Jamba Juice smoothie kits that he would not have paid had the true facts been disclosed to him. (*Id*.) Plaintiff filed this action on behalf of himself and a class of consumers who purchased one or more of Defendant's smoothie kits, which Plaintiff alleges were falsely labeled as "All Natural" despite the inclusion of the unnaturally processed, synthetic substances, or substances created via chemical processing.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for August 28, 2012.

cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Review is generally limited to the contents of the complaint and documents attached thereto. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). The Court may also consider a matter that is properly the subject of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Evidence 201, a court may take judicial notice of a fact not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

The parties have requested the Court take judicial notice of the First Amended Complaint filed in this lawsuit, (Dkt. No. 22); the First Amended Complaint filed in *Hairston v. South Beach Beverage Co., Inc.*, CV 12-1429-JFW (C.D. Cal. May 1, 2012), (*see* Dkt. Nos. 23-2 & 39); an exemplar of the Jamba Juice smoothie kits' packaging at issue in this case; and a guidance document from the U.S. Food and Drug Administration's ("FDA") website, titled "FDA Basics- Did you know that a store can sell food past the expiration date?" (*see* Dkt. Nos. 36-1 & 36-2). The Court will take judicial notice of the court filings and the FDA Guidance Document. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record."). Additionally, because neither party contests the authenticity of the pictures of the Jamba Juice smoothie kits' packaging, and because these food product labels form the basis for Plaintiff's allegations in the FAC, the Court takes judicial notice of these materials. *See Wright v. Gen'l Mills, Inc.*, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009).

## III. DISCUSSION

### A. WHETHER "ALL NATURAL" LANGUAGE ON PRODUCT PACKAGING CONSTITUTES A WRITTEN WARRANTY UNDER THE MAGNUSON MOSS WARRANTY ACT?

Plaintiff's Fourth Cause of Action alleges that Jamba Juice's representations that its smoothie kits are "All Natural" violates the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, which provides a consumer remedy for breach of a written warranty made in connection with the sale of a consumer product. According to the FAC, labeling the smoothie kits as "All Natural" created a written warranty that the ingredients in the smoothie kits were free of a particular type of defect (*i.e.*, that they were not synthetic, artificial and/or otherwise non-natural). FAC ¶ 64. In Plaintiff's view, by failing to provide smoothie kits that contained only "All Natural" ingredients, Jamba Juice breached this written warranty (*i.e.*, the smoothie kits contained unnaturally processed, synthetic and/or non-natural ingredients, and therefore, were not defect free). *Id*. ¶ 65.

Jamba Juice argues that Plaintiff's MMWA claim must be dismissed because the phrase "All Natural" does not fit within the statute's definition of a "written warranty." The MMWA defines a written warranty as follows:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A).

Plaintiff maintains that the language "All Natural" on the smoothie kits' labels "relates to the nature of the material" and is a written affirmation of fact or promise as to the quality and contents of the product–that the smoothie kits are "defect free."[2] Relying upon court decisions interpreting the California Commercial Code, Plaintiff argues that courts have found that the language "All Natural" can create a warranty. *See* Pl's Opp'n 6-7 (citing *Vicuna v. Alexia Foods, Inc.*, Case No. C-11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011)). As Jamba Juice points out, these cases are

---

[2] The Court agrees with Plaintiff that "defect free" and "specified level of performance over a specified period of time" are separate bases to establish a written warranty under the MMWA. Because Plaintiff's claim is under the "defect free" theory, the representation does not need a temporal element to establish a written warranty.

4

inapposite because Plaintiff's warranty claim is under the MMWA, which defines written warranty differently than does California state law.[3] Jamba Juice argues that the language "All Natural" on the smoothie kits' labels does not constitute a written warranty within the meaning of the MMWA. The Court agrees.

District Courts have held consistently that labeling a product "All Natural" is not a "written warranty" under the MMWA. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. Jul. 20, 2012) (claim that food product is "natural" describes product but does not give assurance that product is defect free and therefore does not create warranty); *Littlehale v. Trader Joe's Co.*, C-11-6342 PJH, Dkt. No. 48, (N.D. Cal. Jul. 2, 2012) (statements "Pure Natural" and "All Natural" are "mere product descriptions," not "affirmations or promises that the products are defect free"); *Larsen v. Nonni's Foods, LLC*, C-11-05188 SI, Dkt. No. 41 (N.D. Cal. Jun. 14, 2012) ("All Natural" and "100% Natural" are not written warranties promising that food products are defect free because "this Court is not persuaded that being 'synthetic' or 'artificial' is a 'defect.'"); *Hairston v. South Beach Beverage Co., Inc.*, 2012 WL 1893818 (C.D. Cal. May 18, 2012) (representations that beverage was "all natural with vitamins" "are product descriptions rather than promises that Lifewater is defect-free or guarantees of specific performance levels."). The Court finds the reasoning in these cases persuasive.

The statement "All Natural" is a general product description rather than a promise that the product is defect free. *See Larsen, supra*, C-11-05188 SI, Dkt. No. 41 (N.D. Cal. Jun. 14, 2012) (rejecting claim that the use of synthetic ingredients in food labeled "all natural" rendered that food defective, reasoning the "deliberate use of [synthetic] ingredients does not comport with the plain meaning of the word 'defect.'"). A product description does not constitute a written warranty under the MMWA. *See Littlehale, supra*, C-11-6342 PJH, Dkt. No. 48, (N.D. Cal. Jul. 2, 2012) ("To accept plaintiffs' argument [that the statement "All Natural" promises the product is defect free] would be to transform most, if not all, product descriptions into warranties against a defect, and

---

[3] Plaintiff also cites *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007), which did involve a breach of written warranty claim under the MMWA. That case, however, addressed only whether privity of contract is required for a warranty claim under the MMWA. The district court did not address whether advertising french fries as safe for consumption by individuals with food allergies created a warranty.

5

plaintiffs have not articulated any limiting principle to convince the court otherwise."). Therefore, the language "All Natural" on the smoothie kits' labels did not create a written warranty within the meaning of the MMWA.

Based on the foregoing analysis, the Court **GRANTS** the motion to dismiss Plaintiff's claim for breach of written warranty under the Magnuson Moss Warranty Act **WITH LEAVE TO AMEND** to the extent some other basis may exist for this claim.

### B. WHETHER PLAINTIFF HAS STANDING TO BRING CLAIMS ON BEHALF OF PURCHASERS OF FLAVORS PLAINTIFF DID NOT BUY?

Standing under Article III and the UCL, FAL, and CLRA requires that a plaintiff has suffered an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554-56 (Cal. Ct. App. 2011).[4] In addition to the injury-in-fact requirement, standing under the UCL, FAL and CLRA, requires that a plaintiff "has lost money or property" as a result of the defendant's alleged conduct. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a).

Jamba Juice argues that Plaintiff does not have standing to bring claims on behalf of purchasers of smoothie kit flavors he did not buy: Strawberries Wild, Caribbean Passion, and Orange Dream Machine. (FAC ¶ 28.) Plaintiff only alleges that he purchased Mango-a-go-go and Razzmatazz smoothie kits. (*Id*. ¶ 12.) Thus, Jamba Juice argues that Plaintiff's claims as to the Strawberries Wild, Caribbean Passion, and Orange Dream Machine smoothie kits should be dismissed for lack of jurisdiction and for failure to state a claim because Plaintiff has failed to allege that he purchased those three smoothie kit products, let alone that he suffered any injury from them.

The parties recognize that district courts in this circuit have diverged on the issue of whether a plaintiff has standing to bring claims on behalf of consumers who purchased similar, but not identical products. *See Donohue v. Apple, Inc.*, — F. Supp. 2d —, 11-CV-05337 RMW, 2012 WL 1657119, at *6 (N.D. Cal. May 10, 2012) (noting divergence and collecting cases). Plaintiff argues

---

[4] To establish Article III standing, a plaintiff must satisfy three elements: (1) injury-in-fact; (2) causation; and (3) redressability. *Lujan*, *supra*, 504 U.S. at 560-61.

6

that he has standing to represent a class of consumers with regard to a product he did not purchase so long as his claims are based on the "'same core factual allegations and causes of action.'" Pl's Opp'n 10.[5] Defendant argues that this case is more similar to the *Johns v. Bayer Corp.*, No. 09-1935 DMS, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) (purchaser of One A Day Men's Health Formula vitamin product lacks standing to sue on behalf of purchasers of One A Day Men's 50+ Advantage vitamin product), which held that a plaintiff "cannot expand the scope of his claims to include a product he did not purchase."

The "critical inquiry [in these cases] seems to be whether there is sufficient similarity between the products purchased and not purchased." *Astiana*, *supra*, C-11-2910 EMC, 2012 WL 2990766, at *11 (different flavors of ice cream carried under different brand names, Edy's/Dreyer's and Haagen-Daz, sufficiently similar where same wrongful conduct applied).[6] If there is a sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage. *Id.*; *Donohue*, *supra*, 2012 WL 1657119, at *6 (allowing plaintiff to represent a class of persons who purchased different but similar products reasoning that "questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, [are] issues that are better resolved at the class certification stage.").

Here, Plaintiff is challenging the "All Natural" labeling of Jamba Juice at-home smoothie kits, which comes in a variety of flavors―Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz. There is sufficient similarity between the products

---

[5] Plaintiff cites *Wang v. OCZ Techn. Group, Inc.*, 276 F.R.D. 618, 632-33 (N.D. Cal. 2011) (denying motion to strike claims with respect to computer models plaintiffs did not purchase; more appropriate to resolve issue on Rule 12(b) motion or on class certification motion); *Carideo v. Dell Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (standing under Washington state law for products not purchased where causes of action and factual allegations were the same); and *Hewlett-Packard v. Super. Ct.*, 167 Cal. App. 4th 87, 89-91 (Cal. Ct. App. 2008) (denying writ to vacate order certifying class of computer purchasers for lack of community of interest where class included models of computers plaintiff had not purchased).

[6] *Compare with Carrea v. Dreyer's Grand Ice Cream, Inc.*, C-10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), *aff'd*, 2012 WL 1131526 (9th Cir. Apr. 5, 2012) (plaintiff had standing to bring claim as to Defendant's Original Vanilla Drumstick ice cream product he purchased but not as to the Dibs products because he did not allege that he purchased Dibs or otherwise suffered any injury or lost money or property with respect to those products); *Larsen*, *supra*, C-11-05188 SI, Dkt. No. 41 (purchasers of cookies, juices, cinnamon rolls, and biscuits did not have standing to bring claims as to crescent rolls they did not purchase).

purchased (Mango-a-go-go and Razzmatazz smoothie kits) and the products not purchased (Strawberries Wild, Caribbean Passion, and Orange Dream Machine smoothie kits) because the same alleged misrepresentation was on all of the smoothie kit regardless of flavor; all smoothie kits are labeled "All Natural," and all smoothie kits contain allegedly non-natural ingredients (xanthan gum, ascorbic acid and steviol gycosides). Therefore, the Court finds that Plaintiff has standing, to bring claims on behalf of purchasers of smoothie kit flavors he did not buy, and the Court has subject matter jurisdiction over such claims.

Based on the foregoing analysis, the Court **DENIES** the Motion to Dismiss for lack of standing.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** the Motion to Dismiss.

Plaintiff's Fourth Cause of Action for breach of warranty under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, is **DISMISSED WITH LEAVE TO AMEND**.

No later than **September 14, 2012**, Plaintiff shall file either (i) a second amended complaint or (ii) a notice that he intends to proceed on the First Amended Complaint.

Within 21 days of the filing of the above, Defendant shall file a response.

**IT IS SO ORDERED**.

**Date: August 24, 2012**

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

8