**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NICK PEARSON, On Behalf of Himself and All
Others Similarly Situated,

                Plaintiff,

        vs.

TARGET CORPORATION, a Minnesota
Corporation,

                Defendant.

Case No. 11cv07972

Honorable James B. Zagel

Magistrate Judge Jeffrey T. Gilbert

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

---

Bradley J. Andreozzi
Justin O. Kay
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:   (312) 569-3000

Kara L. McCall
Shelby K. Feuerbach
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Tel:    (312) 853-7000
Fax:   (312) 853-7036

*Counsel for Defendant Target Corporation*

October 18, 2012

## TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................... 1

I.   PLAINTIFF CANNOT ALLEGE A PLAUSIBLE CLAIM BY ASKING THE
     COURT TO DRAW IMPLAUSIBLE INFERENCES. ...................................................... 1

     A.   Plaintiff Does Not State A Plausible Claim By Relying On Irrelevant
          Osteoarthritis Studies. ............................................................................................ 2

     B.   Rule 8 Requires That The Complaint Allege A Claim That Is Plausible,
          Not Merely Give Defendant "Fair Notice" Of An Implausible Claim. ................. 8

II.  THE COMPLAINT FAILS TO SATISFY RULE 9(b) ..................................................... 8

III. PLAINTIFF'S CLAIMS OF "FALSITY" ARE NON-COGNIZABLE CLAIMS
     FOR LACK OF SUBSTANTIATION. ........................................................................... 11

IV.  PLAINTIFF LACKS STANDING TO SUE OVER PRODUCTS HE DID NOT
     PURCHASE. ................................................................................................................. 12

CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. Jamba Juice Co.*, No. 12-CV-01213 (N.D. Cal. Aug. 24, 2012) ............................ 12

*Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081 (N.D. Ill. 2011) ................................ 17

*Atkins v. Chicago*, 631 F.3d 823 (7th Cir. 2011),
*cert. denied* 132 S.Ct. 1569 (2012) ........................................................................ 8

*Barrera v. Pharmavite, LLC*, No. CV 2:11-04153 (C.D. Cal. Sept. 19, 2011) ............................ 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 8

*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) ................................... 2-3

*Cosmetique, Inc. v. Valueclick, Inc.*, 753 F. Supp. 2d 716 (N.D. Ill. 2010) ................................. 9

*FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) ............................................ 4

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir 2011) ................................ 17

*Johns v. Bayer Corp.*, No. 09-CV-1935, 2010 U.S. Dist. LEXIS 10926
(S.D. Cal. Feb. 9, 2010) ......................................................................... 13-14

*Johns v. Bayer Corp.*, No. 09-CV-1935, 2010 U.S. Dist. LEXIS 62804
(S.D. Cal. June 24, 2010) .............................................................................. 4

*Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972) ...................................................... 15

*N. Trust Co. v. Peters*, 69 F.3d 123 (7th Cir. 1995) ......................................................... 8

*Padilla v. Costco Wholesale Corp.*, No. 11-CV-7686,
2012 U.S. Dist. LEXIS 87222 (N.D. Ill. June 21, 2012) .............................. 9, 14, 16-17

*Payton v. Cnty of Kane,* 308 F.3d 673 (7th Cir. 2002) ......................................................... 15-16

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05cv3004,
2006 U.S. Dist. LEXIS 18630 (N.D. Ill. Apr. 12, 2006) ........................................ 14-15

*Stanley v. Bayer Healthcare LLC*, No. 11-CV-862,
2012 U.S. Dist. LEXIS 47895 (S.D. Cal. Apr. 3, 2012) ................................................ 10

*Thomason v. Nachtrieb*, 888 F.2d 1202 (7th Cir. 1989) ...................................................... 5

## TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

815 ILCS 505/10a (2012) ............................................................................................................ 14

Defendant Target Corporation ("Target") submits this Reply brief in further support of its motion to dismiss Plaintiff's First Amended Class Action Complaint ("the Complaint" or "Cmplt.") [D.E. 21] with prejudice pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). [D.E. 28-30].

## ARGUMENT

### I.     PLAINTIFF CANNOT ALLEGE A PLAUSIBLE CLAIM BY ASKING THE COURT TO DRAW IMPLAUSIBLE INFERENCES.

The original complaint in this action alleged that "numerous" but unidentified studies showed that the ingredients in the two Products did not work as represented. *See, e.g.*, Cmplt. [D.E. 1] ¶¶ 18-19. Target moved to dismiss on the basis (among others) that Plaintiff could not state a plausible claim, as required by Rule 8(a), much less plead fraud with particularity, as required by Rule 9(b), by hiding behind vague allegations regarding unidentified studies. Plaintiff then filed a First Amended Complaint identifying the studies that allegedly show that Target's Products are "proven" to be ineffective. Pl. Br. at 1. Now that Plaintiff has been forced to identify the studies, it is clear why he was reluctant to do so.

First, the studies, "all of which are in the public domain" (Pl. Br. at 10), evaluate the efficacy of different formulations, containing only some of the Products' ingredients, for treating osteoarthritis.[1] Target, however, does not represent that the Products are effective for treating

---

[1] Plaintiff contends that Target is "wrong" in stating that the studies referenced by Plaintiff examined different ingredients in different amounts than those contained in the Products. Pl. Br. at 9. It is undisputed, however, that the Products contain additional ingredients not tested in the studies. Cmplt. ¶ 18 (identifying some of the "other ingredients" contained in the Products), Exs. B-C. It is also undisputed that the Products contain both glucosamine *and* chondroitin (among other ingredients) (Cmplt. ¶ 1), but several of the studies cited by the Plaintiff tested only one ingredient alone, rather than the two in combination. *See, e.g.*, Cibere, *et al*., *Randomized, Double Blind, Placebo Controlled Glucosamine Discontinuation Trial in Knee Osteoarthritis*, 51:5 Arthritis & Rheumatism 738, 739 (Oct. 15, 2004) (testing glucosamine alone) (cited at Cmplt. ¶ 23 and attached as Ex. E to Def. Br.).

osteoarthritis. Not only do the labels not mention osteoarthritis, Target clearly states on the packaging that "[t]his product is not intended to diagnose, treat, cure or prevent any disease." Exs. B-C (attached to Def. Br.).[2] Second, the findings of the cited studies are "inconclusive" regarding the efficacy of glucosamine and/or chondroitin *as a treatment for osteoarthritis* and the researchers have concluded that "further studies will be needed." *See* Part I.A., *infra* at p 7. The studies are therefore doubly deficient: (1) the studies are inconclusive in investigating the use of some of the Products' ingredients for treatment of osteoarthritis and (2) the Products were never represented to be effective for treatment of osteoarthritis, or any disease, in any event. *See* Part I.A., *infra* at pp. 2-4.

> **A.** **Plaintiff Does Not State A Plausible Claim By Relying On Irrelevant Osteoarthritis Studies.**

Plaintiff's theory is that alleged proof of other formulations' ineffectiveness in treating a disease (osteoarthritis) renders the representations on the Products false or misleading, despite the fact that the Products' packaging does not mention osteoarthritis and, on the contrary, plainly states that the Products are "not intended to diagnose, treat, cure, or prevent any disease." Exs. B-C. This Court is entitled to, and should, consider the content of the labels in assessing the plausibility of Plaintiff's theory. As the Seventh Circuit stated in *Bober v. Glaxo Wellcome PLC*, a statement cannot be deceptive "as a matter of law" if "information available to [a product's] users, and in [plaintiff's] possession, would dispel any such implication." 246 F.3d 934, 938-40

---

[2]Plaintiff does not dispute that the Court is entitled to take judicial notice of the labels for the Products, which are identified and quoted (in part) in the Complaint. *See, e.g.*, Pl. Br. at 13 (citing to Def. Ex. B).

(7th Cir. 2001) (assessing full content of defendant's statements in affirming this Court's dismissal of ICFA claim under Rule 12(b)(6)).[3]

The Seventh Circuit's decision in *Bober* is directly on point. 246 F.3d at 940, 943. In that case, the plaintiff argued that the defendant provided false and misleading information about whether Zantac 75 could be substituted for the more expensive Zantac 150 by supposedly implying that the two products contained different ingredients. *Id.* at 937. In affirming this Court's dismissal, the Seventh Circuit noted that "[n]one of the [defendant's] statements, however, expressly makes such a claim." *Id.* at 938. In fact, the defendant's statement that the two drugs were different medications was "completely true" because the drugs were approved for different maladies and sold in different ways. *Id.* at 938-39. The court refused to allow a claim by the plaintiff that consumers "could *imply* from the statements at issue that the drugs contain different medicine." *Id.* at 938 (emphasis added). Because the defendant's statements made clear that Zantac 75 and Zantac 150 contained the same active ingredient, the court ruled that "[a]s a matter of law, none of the three statements on which [plaintiff] based his ICFA claims is deceptive," *Id.* at 940.

Here, none of the Products expressly claims to be a treatment for osteoarthritis. Moreover, the Products expressly disclaim use as a treatment for any disease. As in *Bober*, the reading of the Product labels urged here by the Plaintiff is simply unreasonable as a matter of law.

---

[3] Plaintiff attempts to characterize the disclaimer as "small print" or otherwise inconspicuous (Pl. Br. at 10-11), but the labels are before the Court and the disclaimer is hardly hidden. The representations that Plaintiff attacks are accompanied by an asterisk directing the consumer to the disclaimer, and the disclaimer language is displayed prominently and conspicuously. *See* Exs. B-C.

Plaintiff relies on *FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1 (1st Cir. 2010) for the proposition that the disclaimer on the Products' labels that the Products are "not intended to diagnose, treat, cure, or prevent any disease" should be ignored because it "'leaves an overall impression of nonsense, not clarity.'" Pl. Br. at 12 (quoting *Direct Mktg.*, 624 F.3d at 12 n.9). But in *Direct Marketing,* the defendants expressly represented that their products were "panaceas, products that they claimed cured literally every disease" and made "specific and measurable health claims," which included express statements that their products "cure cancer, multiple sclerosis, and other degenerative diseases." *Direct Mktg.*, 624 F.3d at 4, 9, 12. The Products here make no such claims contrary to the labels' disclaimer. For similar reasons, Plaintiff's citation to *Johns v. Bayer Corp.*, No. 09-CV-1935, 2010 U.S. Dist. LEXIS 62804 (S.D. Cal. June 24, 2010) (Pl. Br. at 12) is also misplaced. In *Johns,* the disclaimer that the product was not intended to prevent any disease arguably contradicted the statement on the package that "Selenium may reduce the risk of certain cancers." 2010 U.S. Dist. LEXIS 62804 at *12. Under those circumstances, the effect of the disclaimer presented an issue of fact, but here the Products contain no statements even arguably inconsistent with the disclaimer.

When considered in light of the actual Product labels, Plaintiff's theory—that Target committed fraud because a few studies supposedly show that its Products do not do something that Target never said they were intended to do in the first place—is implausible. In an effort to make his theory sound reasonable, Plaintiff asks this Court to indulge in several unwarranted inferences:

*First*, Plaintiff alleges that "the vast majority of purchasers of glucosamine chondroitin Products buy these Products for relief of the symptoms of osteoarthritis . . . ." Cmplt. ¶ 21 n.7. Plaintiff also asserts that "Defendant primarily markets these products to and they are purchased

primarily by persons suffering from osteoarthritis." *Id.* ¶ 1. Plaintiff concedes in his Opposition that he has no factual support for these statements by arguing merely that it is "reasonable to infer" them because "[w]hile the labels may not say the words arthritis, the joint health benefits that Defendant represents the Products provide are conditions caused by arthritis." Pl. Br. at 12. Plaintiff asks the Court to accept this inference based on a citation (which nowhere appears in the Complaint)[4] to a medical website that states that the symptoms of osteoarthritis include "'a breakdown of joint cartilage, which in turn interferes with joint mobility and causes joint pain and stiffness.'" *Id.* at 12-13 n.16. Of course Plaintiff fails to note that this website also states that "[t]he symptoms of osteoarthritis may resemble other medical conditions or problems." Osteoarthritis – The University of Chicago Medicine, http://www.uchospitals.edu/online-library/content=P00061 (last visited October 18, 2012).

Obviously, many conditions other than osteoarthritis cause deterioration of joint cartilage and joint pain and stiffness, including everyday wear and tear. In effect, Plaintiff asks the Court to infer that any product sold to alleviate any condition or discomfort that might be similar to symptoms of osteoarthritis is sold as a treatment *for* osteoarthritis. By Plaintiff's logic, because many conditions can cause headaches, from tension to a brain tumor, an aspirin sold to alleviate headaches would also be "directed to" (Pl. Br. at 12) patients with brain tumors. Absurd inferences that ignore the actual language of Target's labels do not create a plausible claim for relief.

*Second*, Plaintiff argues that the Products *implicitly* promise relief to osteoarthritis patients because "the Products' packaging offers no qualifications or limitations as to who may

---

[4] "It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (citing *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

gain the represented joint health benefits." *Id.* at 14. But, the packaging offers a clear limitation: the Products are "not intended to diagnose, treat, cure, or prevent any disease." Exs. B-C. Plaintiff turns logic on its head by suggesting that the Court disregard what the labels actually say, and focus on what they do *not* say, and that the Products should be deemed to offer a treatment for a specific *unnamed* disease despite the general disclaimer that the Products are not intended to treat *any* disease. If that were the law, product labels would have to list by name every disease the product does *not* treat.

*Third*, Plaintiff shifts gears and alleges that the cited osteoarthritis studies are relevant even if the Products are not intended to treat osteoarthritis because unnamed "experts in the field" believe that osteoarthritis studies are "proxies for whether these products provide any of the represented joint health benefits, regardless of whether or not a consumer may have osteoarthritis." Cmplt.¶ 21 n.7. Plaintiff cannot salvage his claim (which he concedes is subject to Rule 9(b)) by vague and conclusory allegations referring to unnamed experts. Having originally relied on unidentified studies, Plaintiff now seeks to rely on unnamed experts.

Plaintiff's "proxy" theory is also facially implausible. Plaintiff argues that the studies are "deemed" by unnamed individuals in "the scientific community" "to be proxies for whether these products provide joint health benefits for persons not suffering from osteoarthritis." Pl. Br. at 4. Not only is Plaintiff wrong in asserting that the ingredients are proven not to work even for arthritis patients (as discussed below), Plaintiff has it backwards. Even if certain of the ingredients in the Products had not been proven to cure or treat osteoarthritis, that would not support an inference that those ingredients could not provide relief for everyday joint discomfort. To illustrate, the fact that an over-the-counter pain reliever such as aspirin might be unable to

relieve a severe migraine would not support a logical inference that aspirin is ineffective in alleviating ordinary headaches.

*Fourth*, the studies cited in the Complaint do not even say what Plaintiff alleges they say. Plaintiff broadly claims that "the studies tested the two primary active ingredients . . . and found them to be ineffective." *Id.* at 9. Even for osteoarthritis patients, however, the cherry-picked studies Plaintiff cites actually found that, while the evidence for the efficacy of some of the ingredients for treating osteoarthritis is "inconclusive" and "further studies will be needed to resolve the issue of the effectiveness," some of the ingredients "significantly decreased knee pain related to osteoarthritis" for patients with "moderate-to-severe pain."[5] Consequently, even putting aside the fact that the osteoarthritis studies do not address any of the statements Target actually made on the Products' labels, the studies do not reach any definitive conclusions, and thus at *most* would support a claim for lack of substantiation, a claim that a private plaintiff cannot assert as a matter of Illinois law. *See* Part III, *infra* and Def. Br. at 13-16.

---

[5]Cibere, *et al.*, *Randomized, Double Blind, Placebo Controlled Glucosamine Discontinuation Trial in Knee Osteoarthritis*, 51:5 Arthritis & Rheumatism 738, 739 (Oct. 15, 2004) ("[T]he evidence for the efficacy of glucosamine in knee OA is *inconclusive*.") (emphasis added) (cited at Cmplt. ¶ 23) (Ex. E); McAlindon, *et al*., *Effectiveness of Glucosamine for Symptoms of Knee Osteoarthritis: Results from an Internet-Based Randomized Double-Blind Controlled Trial*, 117 Am. J. Med. 643, 648 (Nov. 1, 2004) ("[M]ethodologic issues and sample differences among these trials indicate that further studies will be needed to resolve the issue of the effectiveness of glucosamine products.") (cited at Cmplt. ¶ 22 and attached as Ex. F to Def. Br.); Clegg, *et al.*, *Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis*, 354:8 New Eng. J. Med. 795, 806 (Feb. 23, 2006) (concluding that glucosamine and chondroitin together "significantly decreased knee pain related to osteoarthritis, as measured by the primary outcome" for patients with "moderate-to-severe pain") (cited at Cmplt. ¶¶ 3, 24 and attached as Ex. D to Def. Br.).

**B.**    **Rule 8 Requires That The Complaint Allege A Claim That Is Plausible, Not Merely Give Defendant "Fair Notice" Of An Implausible Claim.**

While Plaintiff need not plead all of the evidence supporting his claim, he must plead *facts* that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Court should disregard "mere unsupported conclusions of fact or mixed fact and law" and "their unwarranted inferences." *N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). As the Seventh Circuit has explained, after *Twombly* and *Iqbal*, "the fact that the allegations undergirding a plaintiff's claim *could* be true is no longer enough to save it." *Atkins v. Chicago*, 631 F.3d 823, 831 (7th Cir. 2011), *cert denied* 132 S. Ct. 1569 (2012) (emphasis added). Rather, "the complaint taken as a whole must establish a non- negligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." *Id.* at 832. Moreover, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Id.* In ruling on a motion to dismiss under Rule 8, the district court should consider whether the complaint "has enough substance to warrant putting the defendant to the expense of discovery." *Id.*

Here, the Plaintiff has "pled himself out of court" by relying on studies testing certain ingredients in other formulations for treatment of osteoarthritis, a disease the Products were never intended to treat. The tortured logic, implausible assertions, and unwarranted inferences on which the Plaintiff is forced to rely clearly demonstrate that the Complaint lacks "enough substance to warrant putting the defendant to the expense of discovery." *Id.*

## II.    **THE COMPLAINT FAILS TO SATISFY RULE 9(b).**

Plaintiff concedes that Rule 9(b) applies to his claims, and that it requires that he specify the "who, what, when, where and how of the misconduct charged." Pl. Br. at 9. Here, Plaintiff has failed to specify the representations on which he relied and how those representations are

fraudulent, and cannot salvage his pleading by relying on more vague and conclusory allegations referring to unnamed "experts."

While Plaintiff identifies in his Opposition the representations on which he claims he relied in purchasing Up & Up Triple Strength (Pl. Br. at 13), he fails to do so in the Complaint, asserting merely that he purchased Up & Up Triple Strength after "reading the package/label" of Up & Up Triple Strength. Cmplt. ¶ 10. And while Plaintiff also alleges that he "based his decision to purchase" Up & Up Triple Strength on what he dubs the "joint health benefit representations," those representations are an amalgam of different representations on different products. *See* Pl. Br. at 3; Cmplt. ¶1 & nn. 3-5. Plaintiff also adds other statements that were never contained on the labels for any Product: none of the labels states that the Products are effective "for all joints in the human body, for adults of all ages, and for all manner and stages of joint related ailments." Compare Cmplt. ¶ 2 and Exs. B-C. Plaintiff's failure to allege specifically the representations on which he relied is fatal to his complaint. *Cosmetique, Inc. v. Valueclick, Inc.*, 753 F. Supp. 2d 716, 721 (N.D. Ill. 2010) ("Rule 9(b) requires a plaintiff to *specifically identify the alleged fraudulent or deceptive statements*") (emphasis added).

The recent decision in *Padilla v. Costco Wholesale Corp.*, No. 11-CV-7686, 2012 U.S. Dist. LEXIS 87222 (N.D. Ill. June 21, 2012), is directly on point. In that case, the plaintiff (represented by the same counsel as Plaintiff here) similarly summarized the representations of the labels of different products as "joint renewal and rejuvenation" representations. *Id.* at *10-11. The Court dismissed Padilla's claims, holding that "Padilla fails to allege the precise wording of Glucosamine with MSM's label but alleges that it is 'similar' to the labeling of [the other product] . . . . Thus, Padilla's fraud allegations fail to satisfy the level of particularity required by Rule 9(b)." *Id.* at *11.

Plaintiff also fails to specify how he knows the Product he purchased did not work for him, alleging only in conclusory fashion that it did not. But allegations that the Product did not work for him, along with allegations of *how* Plaintiff knows it did not work, go directly to the heart of the plausibility of Plaintiff's claim of fraud, and therefore must be particularized.[6]

The decision in *Stanley v. Bayer Healthcare LLC*, No. 11-CV-862, 2012 U.S. Dist. LEXIS 47895 (S.D. Cal. Apr. 3, 2012) is instructive. In *Stanley*, the claim was faulty because the plaintiff bought the product to relieve her then-existing bout of diarrhea when the Defendant made no representation about relieving (as opposed to preventing) diarrhea. Thus, the plaintiff in *Stanley* bought the product for a purpose that the product was not represented to provide. Here, the Products were not offered to treat osteoarthritis or any disease. Therefore, if Plaintiff was seeking treatment for osteoarthritis or another disease, he bought the Product for a purpose the Product was not represented to provide. Plaintiff, however, has not pled anything about his physical condition or why he purchased the Product, leaving the Court and Target to speculate.

The "how" of Plaintiff's theory of fraud depends entirely on linking the cited studies examining treatments for osteoarthritis to the Products. But the Products not only do not even *mention* osteoarthritis, they actively disclaim their use to treat, cure, or prevent *any* disease. Bereft of any plausible link between the studies and the Products, Plaintiff introduces a *deus ex*

---

[6]Plaintiff's argument that economic injury can provide standing and occurs at the time of purchase (Pl. Br. at 4-5) misses the point. The issue is not whether economic injury can provide standing (for the one Product Plaintiff purchased). The issue is whether Plaintiff has pled facts with the requisite particularity showing that he incurred an economic injury because he did not receive the benefit of his bargain. In arguing about when an injury occurs, Plaintiff puts the cart before the horse—the first issue for the Court is whether there was any injury at all. For it to be plausible that Plaintiff did not receive the benefit of the bargain, Plaintiff is required to allege specific facts about why he purchased the Product, what benefit he expected to receive, and how he did not receive that benefit. Conclusory allegations that merely track—or, as here, mischaracterize—the product label are insufficient.

*machina*—unidentified "experts" who will provide Plaintiff with the link he requires. Cmplt. ¶ 21 n.7. Such allegations are hardly consistent with Rule 9(b)'s requirement that the circumstances of the fraud be pled with particularity. Allegations as to unnamed "experts" are even less specific than the prior pleading's reliance on unnamed studies. Having amended once already to specify the studies he alleges support his claim, Plaintiff was surely on notice that it would be insufficient to vaguely allege that unnamed experts will show that those studies are relevant.

### III.  PLAINTIFF'S CLAIMS OF "FALSITY" ARE NON-COGNIZABLE CLAIMS FOR LACK OF SUBSTANTIATION.

Plaintiff appears to agree that lack of substantiation claims are not cognizable under Illinois law—indeed, Plaintiff argues at length that his claims are not for lack of substantiation, but rather for "lack of efficacy." *See* Pl. Br. at 14-17. Plaintiff repeatedly points out that the Complaint contains allegations that Target's statements are "false" and that the Products are "ineffective" (*id.* at 16-17), as if merely using the buzzwords "false" and "ineffective" is enough to plead a consumer fraud claim. It is not. *See, e.g., Barrera v. Pharmavite, LLC*, No. CV 2:11-04153 (C.D. Cal. Sept. 19, 2011) (attached as Ex. G) ("The Court finds that while some of the claims in the complaint conclusorily state that Pharmavite's product labels make false and misleading statements, when considered as a whole, as it must be for purposes of a 12(b)(6) motion, the complaint primarily alleges that the claims on defendant's labels lack substantiation.") (internal citation omitted). Here, as shown above, the only support alleged in the Complaint for the conclusory allegations that the Products are ineffective (and that the representations on the Product labels are therefore false) are irrelevant and inconclusive osteoarthritis studies, none of which found that any representation actually made by Target was false or that the actual Products were ineffective for the purposes for which they were intended.

Part I.A., *supra* at pp. 2-7. At best for Plaintiff, the handful of osteoarthritis studies selected by Plaintiff (while ignoring others) merely were unable to substantiate the existence of a statistically significant benefit for treatment of osteoarthritis patients over and above the control group. *See* Part I.A., *supra* at p. 7. Thus, even if studies testing some ingredients for treatment of osteoarthritis were relevant in the first place (and they are not), the studies at most suggest that further research is necessary. That is a lack of substantiation claim, and nothing more.

## IV.    PLAINTIFF LACKS STANDING TO SUE OVER PRODUCTS HE DID NOT PURCHASE.

The two Products in this case are different: Plaintiff concedes that the labels contain different representations (Pl. Br. at 3; Cmplt. ¶1 & nn. 3-5), and the Products contain different ingredients in different amounts. Def. Br. at 3. Nevertheless, Plaintiff argues that Defendant "elevates form over substance" and that "[w]hile the wording may not be exact" and "regardless of the wording not being exact," the "substance" of the representations is "essentially identical." Pl. Br. at 2-3. Plaintiff's repeated assertion that the representations on the Products are "uniform" (Pl. Br. at 3) is belied by the labels themselves,[7] and Plaintiff cannot claim the labels are uniform by simply ignoring what the labels actually say.

As an example, Plaintiff asserts that "both [Products] state that they will 'help maintain the structural integrity of joints.'" Pl. Br. at 3. While the label for Up & Up Triple Strength states that it "helps maintain the structural integrity of joints" and that "*Glucosamine* is a major

---

[7] For that reason (among others) Plaintiff's reliance on *Anderson v. Jamba Juice Co.* (attached as Ex. A. to Pl. Br.), a decision from the Northern District of California applying California consumer fraud statutes, is unavailing. In that case, plaintiffs alleged that the products were not "all natural" as represented. Unlike here, the "same alleged misrepresentation [("all natural")] was on all of the [products] regardless of flavor" and all of the products contained the same "allegedly non-natural ingredients." *Id*. at 8. The only difference between the products was the flavor. *Id.* In contrast, here, the Plaintiff seeks to sue over two different products containing different ingredients and different product labels.

building block of joint cartilage, which helps to maintain the structural integrity of joints,"[8] the label for Up & Up Advanced contains no such representations. *See* Exs. B-C (emphasis added). Rather, in reference *solely* to Methylsulfonylmethane (MSM), the label for Up & Up Advanced states that MSM "[p]rovides sulfur which is important for the structural integrity of joint cartilage and connective tissue."[9] *See* Ex. C. Plaintiff's example of the purported uniformity of the representations proves the fallacy of his argument—not only is the wording on the Products different, but the substance is different: the different representations refer to *different ingredients*. Equally mistaken is Plaintiff's assertion that all of the differing statements on the labels referring to ingredients other than glucosamine or chondroitin can be ignored because these "other ingredients" "are not represented to provide any specific joint health benefits." Pl. Br. at 10 n. 13.[10] These are but examples of key differences between the labels of the two Products (*see* Def. Br. at 3-4) that Plaintiff elects to ignore in the hope of suing over a Product he never purchased.

In support for his argument, Plaintiff cites to decisions from federal district courts in other states, this Court, and the Seventh Circuit. The decisions from out-of-state courts interpreting other states' statutes are actually split on this issue, however, with the better reasoned cases supporting Target's arguments. *See, e.g.*, *Johns v. Bayer Corp.*, No. 09-CV-1935, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (under California law, plaintiff could not "expand the scope of his claims to include a product he did not purchase or

---

[8] Both statements are followed by an asterisk directing the consumer to the disclaimer stating that "[t]his product is not intended to diagnose, treat, cure or prevent any disease." Ex. B.

[9] This statement, too, is followed by an asterisk directing the consumer to the disclaimer stating that "[t]his product is not intended to diagnose, treat, cure, or prevent any disease." Ex. C.

[10] For example, it is with reference solely to the "Antioxidant proprietary extract" that the label on Up & Up Advanced states that "[a] dual antioxidant system . . . helps protect joints from harmful oxidants." Ex. C.

advertisements relating to a product he did not rely upon"). But in any event, the decisions cited by Plaintiff neither address ICFA's standing requirements nor are they binding on this Court.

**ICFA Standing.** As discussed in Defendant's opening brief, because Plaintiff did not purchase Up & Up Advanced, he did not suffer injury in fact and lose money as a result of any representation on that Product. Def. Br. at 6-7. As a result, he has no ICFA standing to pursue a challenge to the Up & Up Advanced product. 815 ILCS 505/10a. Plaintiff has not really disputed this and the recent decision in *Padilla v. Costco* is again directly on point. Because Padilla did not purchase one of the products for which he purported to assert a claim, the court held that he could not have "sustained any actual damage" from that product, and therefore lacked statutory standing to challenge that product. 2012 U.S. Dist. LEXIS 87222 at *6-7. And while the court did dismiss without prejudice, it appears it did so in order to provide the plaintiff the opportunity to plead that he *did* purchase the product "if he c[ould] do so consistent with the requirements of [Rule] 11." *Id.* at *9, 11-12.[11]

Plaintiff's reliance on this Court's decision in *Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 05cv3004, 2006 U.S. Dist. LEXIS 18630 (N.D. Ill. Apr. 12, 2006) is misplaced. In *Scott*, this Court expressly recognized the ICFA requirement that a plaintiff have suffered actual injury from the alleged practice: "[T]he simple fact that [the plaintiff] may not be a consumer, by itself, would not disqualify her from filing suit against [defendant], *so long as*

---

[11]The court in *Padilla* nowhere held that the dismissal was based on a failure to adequately allege the similarities between the products. Pl. Br. at 8. Rather, in refuting Plaintiff's reliance on *Payton*, the court in *Padilla* noted that "[i]n this case, by contrast, Padilla's ICFA misrepresentation claim relates to two different products that have different formulations and labels, one of which he never purchased." 2012 U.S. Dist. LEXIS 87222 at *8. Far from an invitation to re-plead any alleged similarities between the products, this statement asserted an alternative but independent ground for dismissal: not only did Plaintiff lack statutory standing under ICFA, but he also lacked Article III standing (as discussed below).

*she has actual damages that resulted from a violation of the ICFA*." *Scott*, 2006 U.S. Dist. LEXIS 18630, at *5-6 (emphasis added).

**Article III Standing**.  Additionally, Plaintiff has failed to deal with the Seventh Circuit case law on Article III standing, which makes clear that Plaintiff has no standing to make claims for the Product he did not purchase, and that this is a threshold issue to be resolved now, not a Rule 23 issue to be resolved at the class certification stage.  Def. Br. at 7-9.  Plaintiff admits in his Opposition, as he must, that Article III "[s]tanding is a question solely addressed to the named plaintiff" and not the absent members of the purported class.  Pl. Br. at 5; *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 499 (7th Cir. 1972).  Here, there is no dispute that Plaintiff has pled an injury to himself regarding the Product he did purchase—the loss of the purchase price.  As for the Product he did not purchase, however, Plaintiff cannot have suffered any loss, and therefore could not assert any claim related to that Product were he proceeding solely in an individual capacity.  The fact that he is purporting to represent a class in no way alters this result. *Id.* at 499 ("What [a plaintiff] may not achieve himself, he may not accomplish as a representative of a class.").

Plaintiff's reliance on *Payton v. County of Kane,* 308 F.3d 673 (7th Cir. 2002) (Pl. Br. at 5-8) is entirely misplaced because *Payton* supports Target's arguments.  In *Payton*, the plaintiffs challenged a statute used by every county to impose a "bail fee" above the bail amount.  *Id.* at 675.  Although the named plaintiffs had individual claims against only two counties, they sought to represent a class with the identical claim against nineteen counties.  *Id.* at 677-78.  Other than the amount paid and to whom, the claims of the class members were identical.  *Id.* at 680-82. The court, after conducting something akin to a "juridical link" analysis, allowed the putative plaintiff class to sue all nineteen defendants, reasoning that "the constitutionality of a bond fee

(whether it is $1 or $45) should not differ from one county to the next, when such a fee is imposed pursuant to the same statute." *Id.* at 679-80.

In *Payton*, that different counties were joined as defendants did not alter in any way the adjudication of the uniform issue—the constitutionality of the bail fee. That is not the case here, where the alleged falsity—and any injuries relating thereto—of the different formulations and representations necessarily have to be adjudicated and evaluated separately. Indeed, the facts of the present case are distinct from those in *Payton*, and more closely resemble the situation cautioned against by the Seventh Circuit in that case:

> This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. *That, of course, would be impermissible,* in light of the fact that "*a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs*; . . . a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."

*Payton*, 308 F.3d at 682 (emphasis added) (internal citations omitted). Piggy-backing on the claims of individuals who purchased Up & Up Advanced is precisely what Plaintiff impermissibly attempts here.

*Padilla* is again directly on point. In *Padilla*, the plaintiff similarly invited the court to construe *Payton* as supporting his right to assert claims regarding glucosamine chondroitin products he had not purchased but that were in the same "line" of products. 2012 U.S. Dist. LEXIS 87222, at *7-9. The court in *Padilla* noted that the Seventh Circuit in *Payton* itself specifically cautioned against the plaintiff's proposed construction of the decision because, as the court in *Payton* stated, "'Standing cannot be acquired through the back door of a class action.'" *Id.* at *8 (quoting *Payton*). Noting that the plaintiff's claim "relates to two different products that have different product formulations and labels, one of which was never purchased," the *Padilla*

court dismissed the claim for the product not purchased, holding that the plaintiff "cannot use the class-action device to 'predicate standing on injury which he does not share . . . .'" *Id.* (quoting *Payton*). As in *Padilla*, Plaintiff here lacks Article III standing to pursue claims for the Product he did not purchase.[12]

## **CONCLUSION**

For all of the foregoing reasons, the First Amended Class Action Complaint should be dismissed with prejudice in its entirety.

Dated: October 18, 2012                    Respectfully submitted,

                                           /s/ Bradley J. Andreozzi
Kara L. McCall (ARDC No. 6272681)          Bradley J. Andreozzi (ARDC No. 6257334)
kmccall@sidley.com                         bradley.andreozzi@dbr.com
Shelby K. Feuerbach (ARDC No. 6296364)     Justin O. Kay (ARDC No. 6286557)
sfeuerbach@sidley.com                      justin.kay@dbr.com
**SIDLEY AUSTIN LLP**                      **DRINKER BIDDLE & REATH LLP**
One South Dearborn Street                  191 North Wacker Drive, Suite 3700
Chicago, IL 60603                          Chicago, IL 60606-1698
Tel:   (312) 853-7000                      Tel:   (312) 569-1000
Fax:   (312) 853-7036                      Fax:   (312) 569-3000


*Counsel for Defendant Target Corporation*

---

[12] Other authority from this Circuit cited by Plaintiff is not to the contrary. *In re Aqua Dots Prods. Liab. Litig.* merely stands for the proposition that Article III does not require a plaintiff to allege a physical injury to create standing—economic injury is enough. 654 F.3d 748, 750-51 (7th Cir. 2011). Indeed, the plaintiffs in that case sought a refund of their purchase price. In contrast, Plaintiff here could not seek a refund of his purchase price for Up & Up Advanced because he did not buy it. *See also Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1084 (N.D. Ill. 2011) (rejecting argument that lack of physical injury deprives plaintiff of standing to sue for economic loss).