**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICK PEARSON, On Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Case No. 11cv07972 |
| vs. | Honorable James B. Zagel |
| TARGET CORPORATION, a Minnesota Corporation, | |
| Defendant. | |

**DEFENDANT'S ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Target Corporation ("Target" or "Defendant"), for its Answer and Separate or

Affirmative Defenses to Plaintiff's First Amended Complaint ("Complaint"), states as follows:

**General Response**

The allegations in the First Amended Complaint as to the Target Up & Up Advanced

Glucosamine Chondroitin Complex product ("the Advanced product") were dismissed by Order

of this Court dated November 9, 2012, and therefore no response is required as to those

allegations.  To the extent that the allegations refer to the Target Up & Up Triple Strength

Glucosamine Chondroitin Plus MSM product ("the Triple Strength product") and the Advanced

product collectively, Defendant answers only as to the Triple Strength product.

**NATURE OF ACTION**

1.      Defendant markets, sells and distributes Up & Up Glucosamine, a line of two
joint health dietary supplements ("the Products"). Each of the Products bear the name
Glucosamine Chondroitin in bold, large letters, prominently at the top front of each label. The
primary purported active ingredients in both of Target's Up & Up Glucosamine Products are
glucosamine hydrochloride and chondroitin sulfate.  On the front of each package/label, Target
makes essentially the same representations about each Product – that they will "help rebuild
cartilage" or "support renewal of cartilage", help "maintain the structural integrity of joints"

"lubricate joints" or "supports mobility and flexibility." On the front of each box of Defendant's Products, where consumers cannot miss it, Defendant claims that the Products will help to "rebuild" or "renew" cartilage and "lubricate joints" or support "joint mobility and flexibility". Defendant primarily markets these products to and they are purchased primarily by persons suffering from osteoarthritis. Persons who experience joint ailments and persons who seek to prevent joint ailments constitute the remainder of consumers who purchase these products.

**ANSWER**: Defendant admits that Target markets, sells, and distributes the Target Up & Up Glucosamine product line, which is a line of joint health dietary supplements, and includes the products reference in footnote 1. Defendant further admits that the Target Up & Up Glucosamine products contain, among other ingredients, glucosamine hydrochloride and chondroitin sulfate. Defendant also admits that the packages for the Target Up & Up Glucosamine products state "Glucosamine Chondroitin" on the front label. With respect to the Triple Strength product Plaintiff alleges to have purchased and used, Defendant also admits that the package has, at certain times, contained the statements "supports renewal of cartilage," "helps maintain the structural integrity of joints," and "supports mobility and flexibility," but otherwise denies Plaintiff's characterization of such statements. The allegations as to the Advanced Product were previously dismissed by Order of this Court dated November 9, 2012, and therefore no response is required as to those allegations. Defendant denies any and all remaining allegations contained in Paragraph 1 of the Complaint.

2. Thus, prominently displayed on the Products' labels are the deceptive taglines: "rebuild cartilage/renew cartilage", help "maintain the structural integrity of joints", and "lubricate joints/supports joint mobility and flexibility" (collectively referred to as "the joint health benefit representations"). No limitations accompany these taglines such that the take-away is that the Products will provide these specific joint related benefits for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments.

**ANSWER**: Defendant admits that the package for the Triple Strength product has, at certain times, contained the statements "supports renewal of cartilage," "helps maintain the structural integrity of joints," and "supports mobility and flexibility," but otherwise denies Plaintiff's characterization of such statements. The allegations as to the Advanced Product were

2

previously dismissed by Order of this Court dated November 9, 2012, and therefore no response is required as to those allegations. Defendant denies any and all remaining allegations contained in Paragraph 2 of the Complaint.

3. In truth, the products do not rebuild or renew cartilage, lubricate joints or improve joint mobility or flexibility. Clinical cause and effect studies have found that the primary active ingredients in the Products, glucosamine and chondroitin, are ineffective, taken alone or in combination, with regard to the purported joint health benefits represented on the Products' packaging and labeling. As a study sponsored by the National Institute of Health ("NIH") concluded: "The analysis of the primary outcome measure did not show that either [glucosamine or chondroitin], alone or in combination, was efficacious. . . ." Clegg, D., et al., Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis, 354 New England J. of Med. 795, 806 (2006) ("2006 GAIT Study"). As a result, in addition to affirmatively misrepresenting the joint health benefits of its Products, the failure of Target to disclose the facts regarding these studies also constitutes deception by omission or concealment. Thus, Target's joint health benefit representations and omissions are false, misleading and reasonably likely to deceive the public.

**ANSWER**: Defendant admits that Clegg, et al., *Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis*, was published in NEW ENGLAND JOURNAL OF MEDICINE in 2006; the article speaks for itself and Defendant respectfully refers the Court to the entire article for the complete contents and context thereof. Defendant denies that Plaintiff's characterization of this study is complete or accurate. Defendant denies any and all remaining allegations contained in Paragraph 3 of the Complaint.

4. Despite the deceptive nature of Defendant's representations, Defendant conveyed and continues to convey its uniform joint health benefit representations at the point of purchase on the front of its Products' packages and labeling. The only reason that any consumer would purchase the Up & Up Glucosamine Products is to obtain joint health benefits, which Up & Up Glucosamine does not provide.

**ANSWER**: Defendant denies the allegations contained in Paragraph 4 of the Complaint.

5. As a result of Defendant's deceptive representations, consumers - including Plaintiff and other members of the proposed Class - have purchased a Product that does not perform as advertised.

**ANSWER**:  Defendant lacks knowledge or information sufficient to form a belief as to

Plaintiff's alleged purchase or use of the Products, and therefore denies the same.  Defendant

denies any and all remaining allegations contained in Paragraph 5 of the Complaint.

6.     Plaintiff brings this action on behalf of himself and all other similarly situated
Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois
under the facts particular to this case, who purchased the Products, to (1) halt the dissemination
of these false and misleading representations, (2) correct the false and misleading perception it
has created *in the* minds of consumers, and (3) obtain redress for those who have purchased the
Up & Up Glucosamine Products.   Plaintiff alleges violations of the Illinois Consumer Fraud
Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

**ANSWER**:  Defendant admits that Plaintiff purports to bring this action on behalf of

himself and other similarly situated Illinois residents and residents of states with "Consumer

Fraud Laws similar to that of Illinois" for alleged violations of the Illinois Consumer Fraud and

Deceptive Business Practices Act, but denies that the states identified in footnote 6 have "similar

consumer fraud laws under the facts of this case."  Defendant further denies that Plaintiff is

entitled to any relief, denies that certification of a class would be appropriate, and denies that the

proposed class definition is appropriate.  Defendant also denies that the Illinois Consumer Fraud

and Deceptive Business Practices Act is codified at 815 ILL. COMP. STAT. 502/1, *et seq.*

Defendant denies any and all remaining allegations contained in Paragraph 6 of the Complaint.

**JURISDICTION AND VENUE**

7.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The
matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000
and is a class action in which there are in excess of 100 class members and the members of the
Class are citizens of a state different from Defendant.

**ANSWER**:  Defendant admits that, based on the allegations contained in the Complaint,

this Court has jurisdiction over this action.  Defendant denies any and all remaining allegations

contained in Paragraph 7 of the Complaint.

8.     This Court  has personal jurisdiction over Defendant because Defendant is
authorized to do and does conduct business in Illinois.  Defendant has marketed, promoted,
distributed, and sold the Up & Up Glucosamine  Products in Illinois, and Defendant has

4

sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

**ANSWER**:  Defendant admits that it is authorized to conduct business in this district and that Target has marketed, promoted, advertised, and sold products in this district.  Defendant further admits that, based on the allegations in the Complaint, this Court has personal jurisdiction over Defendant.  Defendant denies any and all remaining allegations contained in Paragraph 8 of the Complaint.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

**ANSWER**:  Defendant admits that, based on the allegations contained in the Complaint, venue in this judicial district appears to be proper.  Defendant denies any and all remaining allegations contained in Paragraph 9 of the Complaint.

## PARTIES

10.      Plaintiff Nick Pearson resides in Cook County, Illinois.  In or around June 2011, Plaintiff Pearson was exposed to and saw Defendant's joint health benefit representations (i.e.. that the Product supported renewal of cartilage, helped maintain the structural integrity of joints and supported mobility and flexibility) by reading the package/label of Defendant's Up & Up Triple Strength Product at a Target store in Chicago, Illinois.  He paid approximately $20 or more for a bottle of the Product.  At the time that he purchased Defendant's Product, Plaintiff was deceived in some manner by Defendant in that he believed (1) that Defendant's Product would provide him some or all of the benefits represented by Defendant on the packaging and (2) that it was proven to be and was effective for the representations made on the packaging – that the Product would help to renew cartilage, help maintain the structural integrity of joints, and support joint mobility and flexibility.  Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these Products were not effective as represented by Defendant, Plaintiff would not have purchased Defendant's Product.  Plaintiff used the Product as directed and, consistent with the scientific evidence that the Product was not effective, the Product did not work.  As a result, Plaintiff was deceived in some manner into purchasing the Product and suffered injury in fact and lost money.

**ANSWER**:  Defendant admits that the box for the Triple Strength product has, at certain times, contained the statements "supports renewal of cartilage," "helps maintain the structural

5

integrity of joints," and "supports mobility and flexibility," but otherwise denies Plaintiff's

characterization of such statements. Defendant lacks knowledge or information sufficient to

form a belief as to Plaintiff's purchase or use of the product, and denies any and all remaining

allegations contained in Paragraph 10 of the Complaint.

11. Defendant Target Corporation is incorporated under the laws of the state of Minnesota. Defendant's corporate headquarters is located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant distributes markets and sells the Up & Up Glucosamine Products to tens of thousands of consumers nationwide, including in Illinois.

**ANSWER**: Defendant admits that Target Corporation is incorporated under the laws of

the state of Minnesota, and that its corporate headquarters is located in Minneapolis, Minnesota.

Defendant further admits that the Target Up & Up Glucosamine products are available for

purchase to Target consumers in Illinois and nationwide. Defendant denies any and all

remaining allegations contained in Paragraph 11 of the Complaint.

## FACTUAL ALLEGATIONS

12. Since 2009, Defendant has distributed, marketed, and sold the Up & Up Glucosamine line of joint health dietary supplements. These Products include: (1) Triple Strength Glucosamine Chondroitin plus MSM; and (2) Advanced Glucosamine Chondroitin Complex.

**ANSWER**: Defendant admits that the Target Up & Up Glucosamine product line

currently includes the products listed in Paragraph 12 of the Complaint, and has been on the

market since 2009.

13. The Up & Up Glucosamine Products are sold online and in Target stores nationwide. The Up & Up Advanced Product is available in 90 count bottles, retailing for approximately $12. The Up & Up Triple Strength Product is available in 120 and 200 count bottles, retailing for approximately $21 and $29, respectively.

**ANSWER**: Defendant admits that it sells the Target Up & Up Glucosamine products

online and in Target stores nationwide. Defendant further admits that both products have been

available in various count bottles, selling at various price points during the time period.

14.    Since the Products' launch, Target has consistently conveyed the message to consumers throughout Illinois and the United States that the Products help to rebuild or renew cartilage, and improve joint mobility and flexibility or lubricate joints simply by taking the recommended number of tablets each day.   They do not.   Defendant's joint health benefit representations and omissions are false, misleading and deceptive.

**ANSWER**:  Defendant admits that the package for the Triple Strength product has, at

certain times, contained the statements "supports renewal of cartilage" and "supports mobility

and flexibility," but otherwise denies Plaintiff's characterization of such statements.  The

allegations as to the Advanced Product were previously dismissed by Order of this Court dated

November 9, 2012, and therefore no response is required as to those allegations.  Defendant

denies any and all remaining allegations contained in Paragraph 14 of the Complaint, including

that Defendant made any false, misleading, or deceptive representations.

15.    The first identified primary active ingredient in both of the Products is glucosamine hydrochloride.   As more fully set forth below, the scientific evidence is that glucosamine, taken alone or in combination with chondroitin sulfate, does not provide the joint health benefits represented by Defendant.

**ANSWER**:  Defendant admits that the Triple Strength product contains, among other

ingredients, glucosamine hydrochloride.  Defendant denies any and all remaining allegations

contained in Paragraph 15 of the Complaint.

16.    The second primary active ingredient in Defendant's Products is chondroitin sulfate.  As more fully set forth below, the scientific evidence is that chondroitin sulfate, alone or in combination with glucosamine, does not provide the joint health benefits represented by Defendant.

**ANSWER**:  Defendant admits that the Triple Strength product contains, among other

ingredients, chondroitin sulfate.  Defendant denies any and all remaining allegations contained

in Paragraph 16 of the Complaint.

17.    In addition to these two primary active ingredients that Defendant prominently promotes as being the primary active ingredients that provide the purported joint health benefits, Defendant's Products also contain methylsulfonylmethane ("MSM"). As more fully discussed below, MSM is also not effective in providing the joint health benefits represented by Defendant, but in any event the focus of this action is on the uniform false and deceptive

representations and omissions that Defendant makes about glucosamine and chondroitin on the package labeling of each of its Up & Up Glucosamine Chondroitin Products.

**ANSWER**: Defendant admits that the Triple Strength product contains, among other ingredients, methylsulfonylmethane ("MSM"). Defendant denies any and all remaining allegations contained in Paragraph 17 of the Complaint.

18. Defendant's Products also contain other ingredients such as Hyuralonic Acid (Up & Up Advanced and Triple Strength), an "Antioxidant proprietary extract" (Chinese Skullcap (root) and Black Catechu (wood)) (Up & Up Advanced), Boswellia Serrata (Indian Frankincense) (Up & Up Triple Strength), but Defendant makes none of the joint health benefit representations for these ingredients. For example, on the Up & Up Advanced side panel, Defendant states that its "Antioxident proprietary extract" helps protect joints from harmful oxidants" – whatever that might mean. Likewise, on the Up & Up Advanced side panel, Defendant represents that Hyaluronic Acid is a "key tissue and joint component". While literally true, taking Hyaluronic Acid orally cannot provide any joint health benefits because the high molecular weight of this ingredient is too large for the body to digest and put into the bloodstream, let alone provide joint health benefits.

**ANSWER**: Defendant admits that the Triple Strength product contains, among other ingredients, Hyaluronic Acid and Boswellia Serrata Extract. Defendant denies that the Triple Strength product contains the Antioxidant Proprietary Extract, or contains the statements "helps protect joints from harmful oxidants" or "a key tissue and joint component." The allegations as to the Advanced Product were previously dismissed by Order of this Court dated November 9, 2012, and therefore no response is required as to those allegations. Defendant denies any and all remaining allegations contained in Paragraph 18 of the Complaint.

19. In contrast, on the front of both Products' package/label, Defendant makes the joint health benefit representations underneath the words "glucosamine chondroitin". Thus, it is clear from the Products' packaging/labels, despite the inclusion of these other ingredients, Defendant is representing that glucosamine and chondroitin are the primary active ingredients that purport to provide the joint health benefits represented for both Products.

**ANSWER**: Defendant admits that the package for the Triple Strength product references "glucosamine chondroitin" on the front panel. The allegations as to the Advanced Product were previously dismissed by Order of this Court dated November 9, 2012, and

therefore no response is required as to those allegations. Defendant denies any and all

remaining allegations contained in Paragraph 19 of the Complaint.

20.     Even though numerous clinical studies have found that the two primary ingredients in Defendant's Products, glucosamine and chondroitin, alone or in combination, are ineffective, Target continues to represent on the Products' packaging and labeling that they provide the joint health benefits for adults of *all* ages, without any limitation on which joints or what joint related ailments the Products provide these joint health benefits.

**ANSWER**: Defendant denies the allegations contained in Paragraph 20 of the

Complaint.

21.     Independent studies published at least as early as 2004, have found that glucosamine and chondroitin, alone or in combination, are not effective in providing the represented joint health benefits.

**ANSWER**: Defendant denies the allegations contained in Paragraph 21 of the

Complaint, including allegations contained in footnote 7.

22.     For example, a 2004 study by McAlindon et al., entitled Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From and Internet-Based Randomized Double-Blind Controlled Trial, 117(9) Am. J. Med. 649-9 (Nov. 2004), concluded that glucosamine was no more effective than placebo in treating the symptoms of knee osteoarthritis – in short, it was ineffective.

**ANSWER**: Defendant admits that McAlindon, et al., *Effectiveness of Glucosamine for*

*Symptoms of Knee Osteoarthritis: Results from an Internet-Based Randomized Double-Blind*

*Controlled Trial*, was published in THE AMERICAN JOURNAL OF MEDICINE in 2004; the article

speaks for itself and Defendant respectfully refers the Court to the entire article for the complete

contents and context thereof. Defendant denies that Plaintiff's characterization of this study is

complete or accurate. Defendant denies any and all remaining allegations contained in

Paragraph 22 of the Complaint.

23.     Also as early as 2004, studies confirmed there is a significant "placebo" effect with respect to glucosamine consumption. A 2004 study by Cibere et al, entitled Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004), studied users of glucosamine who claimed to have experienced at least moderate improvement after starting glucosamine. These patients were divided into two groups – one that continued using glucosamine and one that was

given a placebo. For six months, the primary outcome observed was the proportion of disease flares in the glucosamine and placebo groups. A secondary outcome was the time to disease flare. The study results reflected that there were no differences in either the primary or secondary outcomes for glucosamine and placebo. The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine – in other words, any prior perceived benefits were due to the placebo effect and not glucosamine.

**ANSWER**: Defendant admits that Cibere, et al., *Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial in Knee Osteoarthritis*, was published in ARTHRITIS & RHEUMATISM in 2004; the article speaks for itself and Defendant respectfully refers the Court to the entire article for the complete contents and context thereof. Defendant denies that Plaintiff's characterization of this study is complete or accurate. Defendant denies any and all remaining allegations contained in Paragraph 23 of the Complaint.

24.     In the 2006 Gait Study, the study authors rigorously evaluated the effectiveness of glucosamine hydrochloride and chondroitin, alone and in combination, on osteoarthritis for six months. According to the study's authors, "The analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious. . ." 2006 GAIT Study at 806. Subsequent GAIT studies in 2008 and 2010 reported that glucosamine and chondroitin did not rebuild cartilage and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 reported results were inconclusive. *See* Sawitzke, A.D., et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, 58(10) J. Arthritis Rheum. 3183–91 (Oct. 2008); Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).

**ANSWER**: Defendant admits that Clegg, et al., *Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis*, was published in NEW ENGLAND JOURNAL OF MEDICINE in 2006; the article speaks for itself and Defendant respectfully refers the Court to the entire article for the complete contents and context thereof. Defendant denies that Plaintiff's characterization of this study is complete or accurate. Upon information and belief, Defendant admits that the referenced 2006 study was funded by the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases. Defendant further admits that Sawitzke, et al., *The Effect of*

*Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis*, was

published in ARTHRITIS & RHEUMATISM in 2008, and that Sawitzke, et al., *Clinical Efficacy and*

*Safety of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib or Placebo Taken*

*to Treat Osteoarthritis of the Knee: 2-Year Results from GAIT*, was published in ANNALS OF THE

RHEUMATIC DISEASES in 2010; the articles speak for themselves and Defendant respectfully

refers the Court to the entire articles for the complete contents and context thereof. However,

Defendant denies that Plaintiff's characterization of these studies is complete or accurate.

Defendant also admits that Kwoh, et al., *The Joints on Glucosamine (JOG) Study: A*

*Randomized, Double-Blind, Placebo-Controlled Trial to Assess the Structural Benefit of*

*Glucosamine in Knee Osteoarthritis Based on 3T MRI*, referenced in footnote 9, was published

in ARTHRITIS & RHEUMATISM in 2009; the publication speaks for itself and Defendant

respectfully refers the Court to the entire publication for the complete contents and context

thereof. Defendant denies that Plaintiff's characterization of this study is complete or accurate.

Defendant denies any and all remaining allegations contained in Paragraph 24 of the Complaint.

     25.    The GAIT studies are consistent with the reported results of prior and subsequent studies. For example, the National Collaborating Centre for Chronic Conditions ("NCCCC") reported "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing." NCCCC, Osteoarthritis National Clinical Guideline for Care and Management of Adults, Royal College of Physicians, London 2008. Consistent with its lack of efficacy findings, the NCCCC Guideline did not recommend the use of glucosamine or chondroitin for treating osteoarthritis. *Id.* at 33.

     **ANSWER**: Defendant admits that OSTEOARTHRITIS: NATIONAL CLINICAL GUIDELINE

FOR CARE AND MANAGEMENT OF ADULTS, by the National Collaborating Centre for Chronic

Conditions, was published by the Royal College of Physicians in 2008; the article speaks for

itself and Defendant respectfully refers the Court to the entire article for the complete contents

and context thereof. Defendant denies that Plaintiff's characterization of this publication is

complete or accurate.  Defendant denies any and all remaining allegations contained in Paragraph 25 of the Complaint.

26.    A study by Rozendaal et al., entitled Effect of Glucosamine Sulfate on Hip Osteoarthritis, 148 Ann. of Intern. Med. 268-77 (2008) assessing the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis during 2 years of treatment, concluded that glucosamine was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

**ANSWER**:  Defendant admits that Rozendaal, et al., *Effect of Glucosamine Sulfate on Hip Osteoarthritis*, was published in ANNALS OF INTERNAL MEDICINE in 2008; the article speaks for itself and Defendant respectfully refers the Court to the entire article for the complete contents and context thereof.  Defendant denies that Plaintiff's characterization of this study is complete or accurate.  Defendant denies any and all remaining allegations contained in Paragraph 26 of the Complaint.

27.    A 2010 meta-analysis by Wandel et al. entitled Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Of Hip Or Knee: Network Meta-Analysis, BMJ 341:c4675 (2010) examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip.  The study authors reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain or have an impact on the narrowing of joint space: "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo."  *Id.* at 8.  The authors went as far to say, "We believe it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations."  *Id.*

**ANSWER**:  Defendant admits that Wandel, et al., *Effects of Glucosamine, Chondroitin, or Placebo in Patients With Osteoarthritis of Hip or Knee: Network Meta-Analysis*, was published in BMJ in 2010; the article speaks for itself and Defendant respectfully refers the Court to the entire article for the complete contents and context thereof.  Defendant denies that Plaintiff's characterization of this study is complete or accurate.  Defendant denies any and all remaining allegations contained in Paragraph 27 of the Complaint.

28.    In July 7, 2010, Wilkens et al., reported that there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability.  The

researchers also stated that, "Based on our results, it seems unwise to recommend glucosamine to all patients" with low back pain and lumbar osteoarthritis. Wilkens et al., Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis, 304(1) JAMA 45-52 (July 7, 2010).

**ANSWER**: Defendant admits that Wilkens, et al., *Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis*, was published in the JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION in 2010; the article speaks for itself and Defendant respectfully refers the Court to the entire article for the complete contents and context thereof. Defendant denies that Plaintiff's characterization of this study is complete or accurate. Defendant denies any and all remaining allegations contained in Paragraph 28 of the Complaint.

29.    Scientific studies also confirm that MSM is ineffective. *See, e.g.*, S. Brien, *et. al.*, Systematic Review of the Nutritional Supplements (DMSO) and methylsulfonylmethane (MSM) in the treatment of osteoarthritis (Apr. 17, 2008) (concluding that there is no "definitive evidence that MSM is superior to placebo in the treatment of mild to moderate OA of the knee").

**ANSWER**: Defendant admits that Brien, et al., *Systematic Review of the Nutritional Supplements Dimethyl Sulfoxide (DMSO) and Methylsulfonylmethane (MSM) in the Treatment of Osteoarthritis*, was published in OSTEOARTHRITIS & CARTILAGE in 2008; the article speaks for itself and Defendant respectfully refers the Court to the entire article for the complete contents and context thereof. Defendant denies that Plaintiff's characterization of this study is complete or accurate. Defendant denies any and all remaining allegations contained in Paragraph 29 of the Complaint.

30.    Despite the existence of numerous clinical studies that have found the ingredients in Defendant's Products to be ineffective for the joint health benefits that it represents on the Products' package/labels, Defendant continues to unequivocally claim that its Up & Up Glucosamine Products are effective and provide these joint health benefits – without limitation and thus for adults of all ages and for all manner and stages of joint related ailments. As the distributor of the Up & Up Glucosamine Products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Up & Up Glucosamine Products and is in a superior position to learn of the effects—and has learned of the effects, or lack thereof—its Products have on consumers.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 30 of the

Complaint.

31.     Specifically, at least as early as 2009 when it began selling its Up & Up Glucosamine Chondroitin Products, Defendant knew, but failed to disclose, that the Products do not provide the joint health benefits represented and that well-conducted, clinical studies have found the ingredients in its Up & Up Glucosamine Chondroitin Products to be ineffective in providing the joint health benefits represented by Target.  Plaintiff and Class members have been and will continue to be deceived or misled by Target's deceptive joint health benefit representations.  Plaintiff purchased and consumed one of Defendant's Products during the Class period and in doing so, read and considered the Product's label and based his decision to purchase the Product on the joint health benefit representations on the Product packaging. Target's joint health benefit representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the Product.

**ANSWER**:  Defendant lacks knowledge or information sufficient to form a belief as to

Plaintiff's alleged purchase and use of the Triple Strength product, and therefore denies the

same.  Defendant denies any and all remaining allegations contained in Paragraph 31 of the

Complaint.

32.     The only purpose behind purchasing one of Defendant's Products is to obtain some or all of the represented joint health benefits.  There is no other reason for Plaintiff and the Class to have purchased the Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

**ANSWER**:  Defendant lacks knowledge or information sufficient to form a belief as to

the purchase decisions made by Plaintiff and the proposed Class members, and therefore denies

the same.  Defendant denies any and all remaining allegations contained in Paragraph 32 of the

Complaint.

33.     Plaintiff and the Class members have been injured in fact in their purchases of these Products in that they were deceived into purchasing Products that do not perform for the only reason that they would have purchased these Products – joint health benefits.  As a result, Plaintiff and the Class members have suffered economic damage in their purchases of these Products.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 33 of the

Complaint.

14

34. Defendant, by contrast, reaped profits from its false marketing and sale of these Products.

**ANSWER**: Defendant denies the allegations contained in Paragraph 34 of the

Complaint.

## CLASS ALLEGATIONS

35. Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Multi-State Class Action**

All persons who, within the applicable statute of limitations under their respective state's consumer fraud act, purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.

Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine Products for the purpose of resale.

**ANSWER**: Defendant admits that Plaintiff seeks to be appointed as class representative

and purports to define the proposed class in Paragraph 35 of the Complaint. Defendant denies

that certification of the purported class is appropriate. Defendant further denies that the

proposed class definition is appropriate. Defendant denies any and all remaining allegations

contained in Paragraph 35 of the Complaint.

36. In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Illinois Class Action**

All Illinois residents who, within the applicable statute of limitations, purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.

Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine Products for the purpose of resale.

**ANSWER**: Defendant admits that Plaintiff seeks to be appointed as class representative and purports to define an alternative proposed class in Paragraph 36 of the Complaint. Defendant denies that certification of the purported alternative class is appropriate. Defendant further denies that the proposed alternative class definition is appropriate. Defendant denies any and all remaining allegations contained in Paragraph 36 of the Complaint.

37.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

**ANSWER**: Defendant denies the allegations contained in Paragraph 37 of the Complaint, and further denies that class certification is appropriate.

38.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

- Whether the representations or omissions discussed herein that Defendant made about its Products were or are misleading, or likely to deceive;

- Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

- Whether the alleged conduct constitutes violations of the laws asserted herein;

- Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries;

- Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages; and

- Whether Plaintiff and the Class are entitled to injunctive, declaratory or other equitable relief.

**ANSWER**: Defendant denies the allegations contained in Paragraph 38 of the complaint, including all subparts, and further denies that class certification is appropriate.

39.     Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, including being subject to Defendant's deceptive joint health benefit representations, which

16

accompanied each and every box of Defendant's Products. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

**ANSWER**: Defendant denies the allegations contained in Paragraph 39 of the

Complaint, and further denies that class certification is appropriate.

40.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to

whether "Plaintiff will fairly and adequately represent and protect the interests of the members

of the Class," and whether "Plaintiff has retained counsel competent and experienced in both

consumer protection and class litigation," and therefore denies the same. Defendant further

denies that class certification is appropriate and denies any and all remaining allegations

contained in Paragraph 40 of the Complaint.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**ANSWER**: Defendant denies the allegations contained in Paragraph 41 of the

complaint, including all subparts, and further denies that class certification is appropriate.

42.     In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

**ANSWER**: Defendant denies the allegations contained in Paragraph 42 of the

complaint, including all subparts, and further denies that class certification is appropriate.

43.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.  Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**ANSWER**:  Defendant denies any liability for any injury alleged in the Complaint,

further denies that class certification is appropriate, and denies that Plaintiff is entitled to the

relief or judgment sought in Paragraph 43 of the Complaint.

## COUNT I

## Violation of the Illinois Consumer Fraud Act

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

**ANSWER**:  Defendant fully incorporates by reference herein its responses to Paragraphs

1 through 43 of the Complaint.

45.     Plaintiff brings this claim individually and on behalf of the Class.

**ANSWER**:  Defendant admits that Plaintiff purports to bring this action on behalf of

himself and the proposed classes, but denies that Plaintiff (or the classes he seeks to represent) is

entitled to any relief, denies that certification of a class would be appropriate, denies that

Plaintiff is an appropriate class representative, and denies that the proposed class definition is

appropriate.

46.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such Products as Defendant's Up & Up  Glucosamine Products.

**ANSWER**:  Paragraph 46 states legal conclusions to which no response is required.  To

the extent a response is required, Defendant denies the allegations contained in Paragraph 46 to

the extent they allege that Defendant engaged in deceptive acts and practices in the sale of the

Triple Strength product, and further denies that the Illinois Consumer Fraud and Deceptive

Business Practices Act is codified at 815 COMP. STAT. 502/1, *et seq.*, or is "like the consumer

fraud acts of numerous other states across the nation."

47.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 47 of the

Complaint.

48.     Defendant does business in Illinois, sells and distributes its Up & Up Glucosamine Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Up & Up Glucosamine Products in Illinois and elsewhere in the United States.

**ANSWER**:  Defendant admits that Target has sold products in Illinois, but denies that it

engaged in deceptive acts and practices in the sale of the Triple Strength product.  Defendant

denies any and all remaining allegations contained in Paragraph 48 of the Complaint.

49.     Defendant's Products purchased by Plaintiff and  the Class were "consumer items" as that term is defined under the Act.

**ANSWER**:  Paragraph 49 states legal conclusions to which no response is required.  To

the extent a response is required, Defendant lacks knowledge or information sufficient to form a

belief as to whether Plaintiff purchased the product alleged in the Complaint, and denies that the

phrase "consumer items" is defined in the Act.  Defendant denies any and all remaining

allegations contained in Paragraph 49 of the Complaint.

50.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Up & Up Glucosamine Products which has caused damage and injury to Plaintiff and the Class.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 50 of the

Complaint.

51.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 51 of the

Complaint.

52.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 52 of the

Complaint.

53.     Defendant intended Plaintiff and all Class members to rely on its representations regarding the joint health benefits of its Products.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 53 of the

Complaint.

54.     The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**ANSWER**:  Defendant denies the allegations contained in Paragraph 54 of the

Complaint.

WHEREFORE, Plaintiff and the Class pray as follows:

a.      That the Court enter an order certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

b.      That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c.      That the Court enter an order granting declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d.      Attorneys' fees, expert fees and costs; and

e.      Such other and further relief as the Court deems just and proper.

**ANSWER**:  Defendant denies any liability for any injury alleged in the Complaint and

denies that Plaintiff is entitled to the relief requested in the "Wherefore" clause following

Paragraph 54 of the Complaint, including all subparts thereof.

## SEPARATE OR ADDITIONAL DEFENSES

1.      Defendant specifically reserves all separate or affirmative defenses that it may have against each putative class member.  It is not necessary at this time for Defendant to delineate such defenses against the putative class members because no class has been certified and the putative class members are not parties to the litigation.

2.      Plaintiff's Complaint, in whole or part, fails to state a claim upon which relief can be granted.

3.      Defendant denies that Plaintiff, any member of the purported class, and/or any member of the general public, has suffered any injury or damage whatsoever, and further denies that Defendant is liable to any such persons for any injury or damage claimed or for any injury or damage whatsoever.

4.      Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, because Defendant's conduct is protected commercial speech and/or to the extent that the relief sought would violate the First Amendment's protection thereof.

5.      Defendant's business practices are not "unfair" or "deceptive" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1, *et seq.*

6.      The conduct alleged by Plaintiff and the members of the purported classes was not, and is not, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1, *et seq.*

7.      The matters challenged by the Complaint were neither known to Defendant to be, nor in the exercise of reasonable care should have been known to Defendant to be, untrue or misleading.

8.      Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, because neither state nor federal law provides for a private right of action based upon a purported "lack of substantiation."

9. Defendant alleges on information and belief that Plaintiff and the members of the purported classes have not sustained the required injury in fact and/or lost the requisite money or property necessary to confer standing pursuant to 815 ILL. COMP. STAT. 505/10a.

10. Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, because the state law safe harbors in Illinois shield Defendant from liability for undertaking actions specifically authorized by federal or state regulatory bodies.

11. Plaintiff and some or all putative class members do not have standing to bring the claims asserted in the Complaint.

12. Some putative class members do not have standing and their claims are therefore barred, to the extent they are asserting claims based upon alleged misrepresentations to third persons, including others who purchased Defendant's products, or retailers or distributors.

13. Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, because they were not in privity with Defendant.

14. Plaintiff's causes of action are barred, in whole or in part, because the representations complained of, if any such representations were made, were not material and did not induce Plaintiff to enter into the transaction.

15. Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, because Plaintiff and/or the members of the purported classes did not rely or reasonably rely on the alleged statements or conduct of Defendant.  To the extent Plaintiff fails to demonstrate that every putative class member relied on Defendant's representations, any finding of liability on a class-wide basis would violate Defendant's rights under the due process clause of the Illinois Constitution, the U.S. Constitution, and any other applicable state constitutions.

16. Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, by the voluntary payment doctrine because Plaintiff and putative class members voluntarily paid for Defendant's products about which they now complain with full knowledge of the facts and circumstances pursuant to which such amounts were paid.

17.     Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, by the doctrine of accord and satisfaction to the extent that they sought and received a refund of their purchase price.

18.     Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, by their failure to mitigate their damages.

19.     Any liability found on the part of Defendant, and any damages awarded in favor of Plaintiff and putative class members, are subject to the common law comparative fault rules of Illinois and any other applicable state law, and Defendant cannot be liable for more than its proportionate share of any damages awarded.  Further, pursuant to any applicable state law, any damages awarded to Plaintiff and putative class members are subject to apportionment by the jury of the total fault of all participants in the incidents, including Plaintiff and non-parties.

20.     Defendant is entitled to any set-offs or reductions in liability from collateral sources available to Plaintiff and putative class members,  the value of refunds already provided, or a credit for previous payments.

21.     Plaintiff is not entitled to equitable relief because there is an adequate remedy at law.

22.     Plaintiff is not entitled to recovery because his damages, if any, are too speculative.

23.     Plaintiff's claims, and those of the purported classes, are barred, in whole or in part, by the applicable statutes of limitations or the doctrine of laches.

24.     Defendant expressly reserves the right to amend this answer.  In doing so, Defendant specifically reserves its Federal Rule of Civil Procedure 12(b) defenses.

25.     By asserting these defenses, Defendant does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters. Defendant specifically reserves all separate or additional defenses that it may have against the named Plaintiff or putative class members.  It is not necessary at this time for Defendant to

delineate such defenses against the putative class members because no class has been certified and the putative class members are not parties to the litigation.

## JURY DEMAND

Defendant demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

1.      This case no longer continue as a purported class action;

2.      That Plaintiff take nothing by way of the Complaint;

3.      That Judgment be entered in favor of Defendant and against Plaintiff and that the Complaint be dismissed with prejudice;

4.      That Defendant be awarded its costs of suit incurred in the defense of this action;

5.      That Defendant be awarded, as allowed by law, its attorneys' fees incurred in the defense of this action;

6.      For a jury trial on all issues so triable; and

7.      For such other relief as this Court deems proper.

Dated: December 7, 2012

Respectfully submitted,

/s/Kara L. McCall

Kara L. McCall (ARDC No. 6272681)
kmccall@sidley.com
Shelby K. Feuerbach (ARDC No. 6296364)
sfeuerbach@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Tel:    (312) 853-7000
Fax:    (312) 853-7036

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Shelby K. Feuerbach, one of the attorneys for Defendant Target Corporation, certify that on the 7th of December, 2012 , I caused a copy of the foregoing **DEFENDANT'S ANSWER AND SEPARATE OR AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT** to be filed electronically with the Clerk of Court, to be served by operation of the Court's electronic filing system to all counsel of record.


*/s/ Shelby K. Feuerbach* _____
Shelby K. Feuerbach (Ill. Bar No. 6296364)