**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No.:    11 CV 07972 |
| Plaintiffs, | CLASS ACTION |
| v. | **Judge James B. Zagel** |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; and TARGET CORPORATION, a Minnesota Corporation, | |
| Defendants. | |

MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    PROCEDURAL HISTORY ........................................................................2

III.   THE PROPOSED SETTLEMENT .............................................................4

     A.    Certification of the Proposed Settlement Class ...............................4

     B.    Class Relief .....................................................................................4

          1.    Monetary Relief - Claims Paid To Class Members ..............4

          2.    Injunctive Relief ..................................................................5

     C.    Incentive Awards to Class Representatives ......................................6

     D.    Attorneys' Fees and Expenses .........................................................7

IV.   THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED; THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED; THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED; AND A HEARING REGARDING FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED. ..........................................................................................7

     A.    The Settlement Class Should Be Provisionally Certified. .................7

          1.    Numerosity – Federal Rule of Civil Procedure 23(a). ........8

          2.    Commonality – Federal Rule of Civil Procedure 23(a)(2).................9

          3.    Typicality – Federal Rule of Civil Procedure 23(a)(3). ....................10

          4.    Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)..............................................................11

          5.    The Proposed Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3). ...................................12

     B.    The Settlement Should Be Preliminarily Approved........................14

     C.    The Notice Plan..............................................................................19

V.    CONCLUSION .......................................................................................21

Cases

Allen v. City of Chicago,
   828 F. Supp. 543 (N.D. Ill. 1993) ...............................................................9

Amchem Prods. Inc. v. Windsor,
   521 U.S. 591 (1997)...................................................................... 7, 8, 13

Armstrong v. Board of School Directors of the City of Milwaukee,
   616 F. 2d 305 (7th Cir. 1980), .......................................................... 14, 15

Butler v. Sears, Roebuck & Co.,
   2012 WL 5476831 (7th Cir. Nov. 13, 2012).........................................13

Cohen v. Chilcott,
   522 F. Supp. 2d 105 (D.D.C. 2007).......................................................19

Cotton v. Hinton,
   559 F. 2d 1326 (5th Cir. 1977) .............................................................14

De La Fuente v. Stokely-Van Camp., Inc.,
   713 F.2d 225 (7th Cir. 1983) ................................................................11

Duhl v. Nash Realty Inc.,
   102 Ill. App. 3d 483, 429 N.E.2d 1267 (Ill. App.  1981)...........................17

E.E.O.C. v. Hiram Walker & Sons, Inc.,
   768 F. 2d 884 (1985)...........................................................................14

Fournigault v. Independence One Mortgage Corp.,
   234 F.R.D. 641 (N.D. Ill. 2006) ...........................................................13

Freeman v. Berge,
   68 Fed. App'x 738 (7th Cir. 2003).........................................................14

Gaspar v. Linvatec Corp.,
   167 F.R.D. 51 (N.D. Ill. 1996) .............................................................11

Hinman v. M and M Rental Ctr., Inc.,
   545 F. Supp. 2d 802 (N.D. Ill. 2008) ....................................................11

In re AT&T Mobility Wireless Data Services Sales Litigation,
   270 F.R.D. 330 (N.D. Ill. 2010) ............................................... 12, 13, 16

In re Checking Account Overdraft Litig.,
   275 F.R.D. 654 (N.D. Fla. 2011)...........................................................18

In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.,
   55 F.3d 768 (3d Cir.), cert. denied, 516 U.S. 824 (1995)..........................18

In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation,
    280 F.R.D. 364 (N.D. Ill. 2011) ...............................................................................19

In Re Mexico Money Transfer Litigation (Western Union and Valuta),
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) ......................................................................14

In re Neopharm, Inc. Securities Litigation,
    225 F.R.D. 563 (N.D. Ill. 2004) ...............................................................................11

Isby v. Bayh,
    75 F. 3d 1191 (7th Cir. 1996)............................................................................ 14, 16

Kattar v. Demoulas,
    433 Mass. 1, 739 N.E.2d 246 (Mass. 2000)....................................................... 17, 18

Kaufman v. Am. Exp. Travel Related Services Co., Inc.,
    264 F.R.D. 438 (N.D. Ill. 2009) ........................................................................ 18, 19

Keele v. Wexler,
    149 F.3d 589 (7th Cir. 1998).......................................................................................9

Kwikset Corp. v. Super. Ct.,
    51 Cal. 4th 310 (2011) ..............................................................................................17

Levitan v. McCoy,
    No. 00-C5096, 2003 WL 1720047 ..............................................................................8

Maxwell v. Arrow Fin. Servs., LLC,
    2004 WL 719278 (N.D. Ill. March 31, 2004) ...........................................................8

Mirfasihi v. Fleet Mortg. Corp.,
    356 F.3d 781 (7th Cir. 2004)............................................................................... 19, 20

Ortiz v. Fibreboard Corp.,
    527 U.S. 815 (1999)....................................................................................................7

Pope v. Harvard Banchares, Inc.,
    240 F.R.D. 383 (N.D. Ill. 2006) ................................................................................8

Radmanovich v. Combined Ins. Co. of Am.,
    216 F.R.D. 424 (N.D. Ill. 2003) ...............................................................................11

Rosario v. Livaditis,
    963 F.3d 1013 (7th Cir. 1992).....................................................................................9

Saltzman v. Pella Corp.,
    257 F.R.D. 471 ........................................................................................... 9, 11, 13

Smith v. Nike Retail Servs., Inc.,
    234 F.R.D. 648 (N.D. Ill. 2006) ...................................................................................8

Smith v. Sprint Communications Co., L.P.,
    387 F. 3d 612 (7th Cir. 2004)...................................................................................13

Synfuel Techs., Inc. v. DHL Express (USA), Inc.,
    463 F.3d 646 (7th Cir. 2006)...................................................................................16

Tylka v. Gerber Prods. Co.,
    178 F.R.D. 493 (N.D. Ill. 1998) ................................................................................9

Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541 (2011)...............................................................................................9

Whitten v. ARS Nat. Services, Inc.,
    No. 00C6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001).....................................9

Rules

Fed. R. Civ. P. 23 .............................................................................................. 1, 9, 10

Fed. R. Civ. P. 23(a).................................................................................................PASSIM

Rule 23(b) ....................................................................................................... 7, 8, 12,13

Rule 23(e) ...............................................................................................................15

Rules 23(a) and (b)(3) .................................................................................................8

Other Authorities

3 Alba Conte & Herbert B. Newberg, Newberg On Class Actions § 7.20
    (4th ed. 2001) ...........................................................................................................8

4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions § 11.44 (2002) ...............18

Federal Practice and Procedure § 1762, at 159 (2d ed. 1986) .................................8

Manual For Complex Litigation, Fourth § 21.632, at 320 .................................7,18

Manual for Complex Litigation, Third § 30.41, at 237 (1995)...............................15

Newberg On Class Actions § 3:5, at 243-46 (4th ed. 2002)....................................9

CH1 7671290v.1

Pursuant to Fed. R. Civ. P. 23, Plaintiffs Augustina Blanco, Abel Gonzalez, Cecilia Linares, Francisco Padilla, and Nick Pearson, by their counsel Bonnett, Fairbourn, Friedman & Balint, P.C., Stewart M. Weltman LLC (Of Counsel Levin Fishbein Sedran & Berman), and Levin Fishbein Sedran & Berman, and Plaintiff Richard Jennings, by his counsel Denlea & Carton LLP, respectfully submit the following Memorandum in Support of their Unopposed Motion for Preliminary Approval of Class Settlement and move for an Order: (1) preliminarily approving the Settlement Agreement as being fair, reasonable, and adequate; (2) approving the Notice Plan attached to the Settlement Agreement; (3) setting the date and time of the Fairness Hearing; (4) provisionally certifying the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only ("Settlement Class"); (5) provisionally appointing Plaintiffs as representatives of the Settlement Class; and (6) provisionally appointing Stewart M. Weltman (Stewart M. Weltman, LLC, Of Counsel Levin Fishbein Sedran & Berman), Elaine A. Ryan (Bonnett, Fairbourn, Friedman & Balint, P.C.), and Jeffrey I. Carton and Peter N. Freiberg (Denlea & Carton LLP), as Class Counsel.

## I. INTRODUCTION

Plaintiffs and Defendants NBTY, Inc., Rexall Sundown, Inc., and their affiliates (collectively, "Defendants" and, with Plaintiffs, the "Parties") have entered into a Settlement Agreement in the above-referenced matter. (Exhibit 1 hereto.) Although both sides believe their respective positions in the action are meritorious, Plaintiffs have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of Plaintiffs, and the best interests of the putative settlement Class, to resolve this action on the terms provided in the Settlement Agreement attached hereto.

## II.    PROCEDURAL HISTORY

This action is one of several currently pending actions involving various glucosamine and chondroitin products manufactured by NBTY, Inc., its subsidiary Rexall Sundown, Inc., or one of their affiliates.  The first of these actions was filed on June 14, 2011, *Cardenas, et al. v. NBTY, Inc. et al.*, 2:11-cv-01615-TLN-CKD (E.D. Cal), against NBTY, Inc. and Rexall Sundown, Inc. arising out of the manufacture and sale of their Osteo Bi-Flex line of glucosamine and chondroitin joint health dietary supplement products.  It originally sought a California-only class but was amended to seek a multi-state class.  *Jennings v. Rexall Sundown, Inc.,* 1:11-cv-11488-WGY (D. Mass.), was filed on August 22, 2011, arising out of the manufacture and sale of the Osteo Bi-Flex line of glucosamine and chondroitin joint health dietary supplement products, and seeking a Massachusetts-only class.  *Linares, et al. v. Costco Wholesale, Inc.*, 3:11-cv-02547-MMA-BGS (S.D. Cal.), was filed on November 2, 2011, arising out of Costco's sale of the Kirkland Signature Brand line of glucosamine and chondroitin joint health dietary supplement products and seeking a California-only class.[1]  *Pearson v. Target Corporation*, 1:11-cv-07972 (N.D. Ill.), was filed on October 28, 2011, arising out of Target's sale of its Up & Up line of glucosamine and chondroitin joint health dietary supplement products and seeking a multi-state class.  *Blanco v. CVS Pharmacy, Inc.,* 5:13-cv-00406-JGB-SP (C.D. Cal.), was filed on March 4, 2013, arising out of CVS Pharmacy's sale of certain CVS-brand glucosamine chondroitin dietary supplement products and seeking a California and multi-state class.  Defendants and their affiliates manufacture other glucosamine joint health dietary supplements sold under the brand

---

[1] *Padilla v. Costco Wholesale Corporation*, 1:11-cv-07686 (N.D. Ill.), a companion case to *Linares*, was filed on October 28, 2011 and recently dismissed.  After the Court dismissed the complaint but granted leave to amend, Plaintiff elected not to amend his complaint because it was essentially duplicative of *Linares* and because settlement negotiations were nearing a final agreement.

CH1 7671290v.1

names of Rexall Sundown, Inc., NBTY, Inc., or their affiliates (including but not limited to Flex-a-min), and private label brands of glucosamine and chondroitin joint health dietary supplement products, including the Costco products purchased by the named plaintiffs in the *Linares* action and the Target glucosamine and chondroitin dietary supplement product for which the Court sustained the Amended Complaint in the *Pearson* action.[2] The core issues in all of the cases are similar, in that they contest the veracity of similar joint health benefit representations made about the products, all of which are covered by the Settlement Agreement.

At the time of execution of the Settlement Agreement, *Linares,* after having survived two rounds of motions to dismiss, was in the midst of class and merits discovery. *Pearson*, after having survived two rounds of motions to dismiss, was also in the midst of class and merits discovery. *Cardenas* was in the midst of the class certification process with the Plaintiffs having filed their opening class certification brief and expert reports, and the Defendants having completed the depositions of Plaintiffs' experts. *Jennings* was on the eve of a pre-class certification "exemplar trial" of the merits of the individual plaintiff's claims, with expert reports, expert depositions, and all discovery completed for both sides. Discovery in both the *Cardenas* and *Jennings* cases, along with the filing of expert reports and expert depositions in those cases, has provided the plaintiffs and their counsel a fulsome record upon which to base their settlement negotiations.

As a trial date was set for the *Jennings* exemplar trial and class certification papers were filed in *Cardenas,* negotiations commenced on two fronts – one between Defendants and Jennings' counsel and the other between Defendants and counsel for Cardenas/Padilla, Linares,

---

[2] The full listing of products and the applicable time periods for which class members may make claims and for which releases will be provided pursuant to the Settlement Agreement are set forth in Exhibit A to the Settlement Agreement.

Gonzalez, Blanco, and Pearson. After several months of arm's-length negotiations between the Parties, a definitive written settlement was executed by all Parties in mid-April 2013. In the interests of achieving a global resolution of all of these similar cases pending across the United States, the Parties agreed to centralize settlement in this Court.

## III. THE PROPOSED SETTLEMENT

The proposed settlement provides the following:

### A. Certification of the Proposed Settlement Class

Plaintiffs request that the Court, for the purposes of settlement only, certify a Settlement Class defined as:

> All persons in the United States who, during particular times and in certain U.S. locations, purchased one or more of the Covered Products.[3]
>
> Excluded from the Class are (i) Defendants; (ii) retailers of the Covered Products; (iii) the parents, subsidiaries, affiliates, officers, and directors of (i) and (ii); (iv) those who purchased the Covered Products for the purpose of resale or distribution; and (v) those persons who submit valid requests for exclusion from the Settlement Class.

### B. Class Relief

#### 1. Monetary Relief - Claims Paid To Class Members

Each Class member shall be entitled to seek monetary compensation.[4] Class members who have adequate proof of purchase (*e.g.*, receipts, intact boxes or bottles that display a readable UPC code and readable lot number, or similar documentation that identifies the Covered Product and date and location of purchase) shall be entitled to reimbursement of $5 for each purchased bottle of the Covered Products up to ten (10) bottles. Class members who do not have any adequate proof of purchase will be entitled to reimbursement of $3 per bottle of the

---

[3] The full listing of Covered Products, including their dates of distribution and locations of sale, is set forth in Exhibit A to the Settlement Agreement.

[4] As discussed below, the Class is estimated to be in excess of 12 million households.

Covered Products purchased up to a maximum of four (4) bottles upon submitting their claim form, which will require a sworn declaration that identifies the Covered Product(s) purchased, the approximate date of purchase, and the location of the purchase.[5] There is no ceiling on the amount of monies that Defendants may have to pay for valid claims. Defendants have agreed to pay all valid claims.

The Settlement Agreement also provides for a minimum payment/floor of at least $2 million to be paid out by Defendants to consumers who make valid claims. If the total dollar value of valid claims is less that $2 million, the payment to each Settlement Class member who submits a valid claim with adequate proof of purchase shall be increased *pro rata* up to a maximum of triple what he or she was entitled until the payments reach $2 million. If these increases do not exhaust the minimum $2 million payout, then the payment to each Settlement Class member who submits a valid claim without proof of purchase shall be increased *pro rata* up to a maximum of double what he or she was entitled until the total payments reach $2 million. If, after these payments, the total payments do not reach $2 million, the residual amount will be paid to the Orthopaedic Research and Education Foundation (OREF),[6] subject to Court approval.

## 2. <u>Injunctive Relief</u>

During settlement negotiations, the parties reviewed the various label claims being made by Defendants and agreed to the removal of certain labeling claims from all of the Covered Products currently being manufactured or sold by Defendants.[7] There are dozens of different products that will be impacted by these label changes. The Settlement Agreement provides that

---

[5] The claim form will not require notarization.

[6] Attached as Ex. 5 hereto is an affidavit from Defendants that they do not currently contribute any money to OREF (Collins Aff. at ¶ 4).

[7] Some of the Covered Products are no longer manufactured by Defendants. As to those products, monetary relief will be the only remedy provided by the proposed settlement.

CH1 7671290v.1

for a period of 30 months from the date of the Final Approval, Defendants will not use any representations that the products will rebuild, build, or renew cartilage (õrebuilding cartilage representationsö) on the labeling and packaging for any Covered Products that they manufacture, sell, or supply to other retailers.[8] For the same 30-month period, and as part of the negotiations related to the other types of claims made by Defendants (e.g., claims related to joint comfort or pain, flare-ups, soothing, cushioning, nourishing, mobility, lubrication, or support) (õpalliation representationsö), Defendants will be required to place on the packaging and labeling of the same products a statement that õindividual results may vary.ö Defendants will have a period of six months from the date of Final Approval to begin shipping Covered Products with the label changes. Defendants also have an incentive to keep these labeling changes in place after the 30-month period expires, in that the Settlement Agreement provides that, to the extent that and for as long as the label changes are kept in place after the 30-month period, no Settlement Class member who purchases such product after the thirty-month period can sue Defendants on any claim that was or could have been asserted in the litigation.

## C.   Incentive Awards to Class Representatives

The Settlement agreement provides that, subject to Court approval, Defendants agree to pay and will not object to the Court awarding each of the six (6) Class representatives an incentive award of $5,000. The payment of these incentive awards will be separate and apart from, and will not diminish or erode, the payment of claims to Settlement Class members as set forth above.

---

[8] The Defendants have the authority to implement (for branded products) or require the implementation of (for private label products manufactured or supplied by the Defendants) the label changes identified on Exhibit B to the Settlement Agreement, for the products listed on Exhibit A to the Settlement Agreement. (Collins Aff. (Ex. 5 hereto) at ¶ 3.)

### D. Attorneys' Fees and Expenses

The Settlement Agreement provides that the Defendants agree to pay and will not object to the Court awarding the firm of Denlea & Carton LLP (counsel in *Jennings*) an aggregate fees and expenses award of $2.5 million, and that Defendants agree to pay and will not object to the Court awarding the firms of Bonnett, Fairbourn, Friedman & Balint, P.C., Stewart M. Weltman LLC (Of Counsel Levin Fishbein Sedran & Berman), and Levin Fishbein Sedran & Berman aggregate fees and expenses award of $2 million. All attorneys' fees and expenses are to be paid separate and apart from, and will not diminish or erode, the payment of claims to Settlement Class members as set forth above.

## IV. THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED; THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED; THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED; AND A HEARING REGARDING FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED.

### A. The Settlement Class Should Be Provisionally Certified.

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.632, at 320–21 (2004). *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 828 n.6 (1999). Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. Since,

CH1 7671290v.1

however, the case is not to be tried, the manageability requirement of Rule 23(b)(3) does not come into play in the context of a settlement class. *Id.* at 620.

In this case, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3). As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b)(3), and therefore, certification is appropriate.

### 1.   <u>Numerosity — Federal Rule of Civil Procedure 23(a).</u>

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). *See also* 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, at 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006). The requirement that joinder be impracticable does not mean that joinder is impossible. Rather, it need only be "extremely difficult or inconvenient to join all members of the class." *Levitan v. McCoy*, No. 00-C5096, 2003 WL 1720047, at *3 (quoting C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE § 1762, at 159 (2d ed. 1986)).

Here, Defendants sold the Covered Products throughout the United States. As reflected in the Notice Plan Submitted by Heffler Claims Group, the Settlement Class of purchasers of the Covered Products is reasonably estimated to be in excess of 12 million households (Ex. C to

Settlement Agreement at p. 1). Accordingly, the Class satisfies the numerosity requirement ó particularly since class members are geographically dispersed. *See* NEWBERG ON CLASS ACTIONS § 3:5, at 243-46 (4th ed. 2002) (ōClass actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.ö). For the foregoing reasons, the proposed Settlement Class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

## 2.     Commonality — Federal Rule of Civil Procedure 23(a)(2).

The commonality element requires that ōthere are questions of law or fact common to the class.ö Fed. R. Civ. P. 23(a)(2). In this case, commonality is inherent in the nature of the Second Amended Class Action Complaint and the alleged violations, which focus almost exclusively on Defendantsø conduct, and questions of Defendantsø liability ó questions that are common across the entire Class.

Commonality exists if a common nucleus of operative fact exists. *Rosario v. Livaditis*, 963 F.3d 1013, 1017 (7th Cir. 1992); *Saltzman v. Pella Corp.,* 257 F.R.D. 471, 47 (N.D. Ill. 2009). ōThe fact that there is some factual variation among the class grievances will not defeat a class action.ö *Rosario*, 963 F.3d at 1017. ōIf ʽat least one question of law or fact [is] common to the class,ʼ then commonality is typically found.ö *Tylka v. Gerber Prods. Co.,* 178 F.R.D. 493, 496 (N.D. Ill. 1998) (quoting *Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993)). Commonality is often found where ōdefendants have engaged in standardized conduct toward the members of the proposed class.ö *Whitten v. ARS Nat. Services, Inc.*, No. 00C6080, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)); *Tylka,* 178 F.R.D. at 496-97. *See also Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541,

2551 (2011) (stating that "commonality requires that the claims of the class simply depend upon a common contention . . . of such a nature that it is capable of class-wide resolution" which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

As alleged in Plaintiffs' Second Amended Class Action Complaint, all Settlement Class members share common questions of fact and law that predominate over issues affecting only individual Settlement Class members. The common factual and legal issues include:

- Whether the representations or omissions discussed herein that Defendants made about the Covered Products were or are misleading, or likely to deceive;

- Whether Plaintiffs and the Class members were deceived in some manner by Defendants' representations;

- Whether the alleged conduct constitutes violations of the laws asserted herein;

- Whether Plaintiffs and Class members have been injured and the proper measure of their losses as a result of those injuries;

- Whether Plaintiffs and Class members are entitled to an award of compensatory/actual damages; and

- Whether Plaintiffs and the Class are entitled to injunctive, declaratory or other equitable relief.

For the foregoing reasons, the proposed Settlement Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### 3. <u>Typicality — Federal Rule of Civil Procedure 23(a)(3).</u>

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). "The issue of typicality is closely related to the commonality and

should be liberally construed." *Pella, supra* at 257 F.R.D. at 479 (citing *De La Fuente v. Stokely-Van Camp., Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Typicality is satisfied if the plaintiff's claims arise from "the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory." *Id. See also Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id. See also De La Fuente,* 713 F.2d at 232; *In re Neopharm, Inc. Securities Litigation*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) ("Typicality does not mean identical ... .") (citing *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D. Ill. 1996)).

Here, Plaintiffs and the other Settlement Class members were all consumers of at least one of the Covered Products, and have alleged that Defendants' common misrepresentations caused them consumer injury and damage under state consumer protection laws. Moreover, none of the Class representatives is subject to a unique defense or claim that would differentiate them from the rest of the proposed Class. Accordingly, Plaintiffs' claims are typical of the other Settlement Class members' claims.

4. **Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).**

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the class representative(s) "(1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Pella,* 257 F.R.D. at 480. *See also Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

CH1 7671290v.1

Here, Plaintiffs' interests are completely aligned with the interests of the other Settlement Class members – all have been injured by Defendants' conduct. Furthermore, Plaintiffs have no interests antagonistic to the interests of the other Settlement Class members. Plaintiffs' counsel and their firms have decades of experience acting as lead class counsel in numerous consumer fraud class actions and other class actions. See Exhibits 2, 3 and 4 attached hereto. Moreover, Courts find counsel adequate where "they have invested substantial time and resources in [a] case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Wireless Data Services Sales Litigation*, 270 F.R.D. 330, 344 (N.D. Ill. 2010). Here proposed class counsel engaged in substantial and detailed pre-filing investigation, including research and review of the scientific research regarding glucosamine and chondroitin as well as the other ingredients contained in some of the Covered Products. Moreover, at their own expense, counsel for Plaintiffs Pearson, Padilla, Linares, Gonzalez, and Blanco have engaged a nationally and internationally regarded expert in the field of osteoarthritis, musculoskeletal pain, and glucosamine and chondroitin, Dr. Thomas J. Schnitzer M.D., Ph.D., of the Northwestern University Feinberg School of Medicine. (Weltman Declaration at    ).[9] Likewise, at their own expense, counsel for Plaintiff Jennings have retained Jeremiah Silbert, M.D., a renowned physician retired from Harvard Medical School who has been studying glucosamine for several decades. (Carton Declaration at    ). Accordingly, both Plaintiffs and their counsel satisfy the adequacy requirement of Rule 23(a)(4).

5.    **The Proposed Class Meets the Requirements of Federal Rule of Civil Procedure 23(b)(3).**

---

[9] Dr. Schnitzer was one of the co-authors and site investigators for the NIH-sponsored GAIT study.

In addition to the four requirements of Fed. R. Civ. P. 23(a), Plaintiffs must also satisfy one of the three requirements of Rule 23(b). Here, Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3), and thus must show "that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)). The predominance requirement "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

Here, "Plaintiffs claim that Defendants engaged in standardized conduct that violated laws that are common [to the class], and the class and subclasses will therefore be cohesive." *In re AT&T Mobility*, 270 F.R.D. at 345 (citing *Amchem Prods.*, 521 U.S. at 623). Further, because a settlement class is sought here, the Court need not inquire whether the case, if tried, would present manageability problems. *Smith v. Sprint Communications Co., L.P.*, 387 F. 3d 612, 614 (7th Cir. 2004) (quoting *Amchem Prods.*, 521 U.S. at 591. "Predominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 2012 WL 5476831, at *2 (7th Cir. Nov. 13, 2012). "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.*

In this case, common questions predominate because Defendants' alleged unlawful conduct is *identical* with regard to all members of the proposed Settlement Class. Thus, the predominance requirement and the superiority requirements are satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence and Plaintiffs and the Settlement Class share a common grievance against Defendants. *In Re Mexico Money Transfer Litigation (Western Union and Valuta),* 164 F. Supp. 2d 1002, 1013 (N.D. Ill. 2000).

**B.    The Settlement Should Be Preliminarily Approved.**

The Seventh Circuit has repeatedly recognized the overriding public interest in settling litigation. *See, e.g.*, *Freeman v. Berge*, 68 Fed. Appx. 738, 741 (7th Cir. 2003). This is particularly true in class action litigation. *Isby v. Bayh*, 75 F. 3d 1191, 1196 (7th Cir. 1996). ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F. 2d 884, 888-89 (1985), *cert. denied*, 48 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F. 2d 305, 312 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F. 3d 873 (7th Cir. 1998) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F. 2d at 313 (citing *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977)).

The Seventh Circuit has held:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then

proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong*, 616 F. 2d at 314 (internal citation and footnote omitted).

Thus, the central issue facing the Court at this stage is whether the proposed settlement falls within the range of what ultimately might be approved as fair, reasonable, and adequate, so as to justify providing notice to the Class and scheduling a final hearing. *Id*. The Court is not required at this juncture to make a final determination that the Settlement is fair, reasonable, and adequate, nor will any Class members' substantive rights be prejudiced by preliminary approval. "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies – and appears to fall within the range of possible approval," the Court should grant preliminary approval and direct notice and schedule a final approval hearing. Manual for Complex Litigation, Third § 30.41, at 237 (1995).[10]

When deciding whether to preliminarily approve a settlement, district courts in this Circuit consider five factors: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5)

---

[10] The Manual For Complex Litigation sets forth the procedures for preliminary approval of settlements:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual*, § 21.632.

CH1 7671290v.1

the stage of the proceedings and the amount of discovery completed." *In re AT&T Mobility*, 270 F.R.D. at 346 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). [11]

The Seventh Circuit has often stated that the first factor (*i.e.*, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement) "is the most important consideration." *Isby*, 75 F.3d at 1199 (citation omitted). Here, the Settlement Agreement strikes a compromise that affords fair recompense to class members who submit a claim, and meaningful injunctive relief to all class members— even those who submit no claim. The proposed settlement provides for consumers who have some form of proof of purchase to obtain compensation for approximately 20% of their purchase price per bottle for up to ten (10) purchases and consumers who have no such documentation to obtain compensation for approximately 12% of their purchase price for up to four (4) purchases. There is no cap to the amount of monies or claims that Defendants will pay to Class Members with valid claims. The notice plan is robust, involving the payment by Defendants of at least $1.5 million dollars for notice and administration costs and having an anticipated reach of close to 80% of the class members. (Notice Plan, Ex. C to Settlement Agreement, at Summary.)

Furthermore, the settlement provides for meaningful and significant injunctive relief in the form of labeling changes for dozens of different products. All representations regarding the Products' ability to rebuild cartilage – representations which currently are prominently featured on the labels - have been entirely eliminated in any form from the Covered Products' labels. The

---

[11] *See also* Newberg, at §11.41 (The initial presumption of fairness of a class settlement may be established by showing: (1) that the settlement has been arrived at by arm's length bargaining; (2) that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (3) that the proponents of the settlement are counsel experienced in similar litigation.).

remaining representations made about the Covered Products primarily regard palliation – e.g., joint comfort – and with regard to these claims, the Settlement Agreement requires that the labels be modified to state that "individual results may vary," language which takes into account and incorporates the placebo effect potential of these types of products. In short, the injunctive/labeling relief will require an industry leader in the manufacture and sale of glucosamine and chondroitin products to refrain from claiming that the products will rebuild or renew cartilage and to provide important consumer disclosures about the variability of the products' purported benefits.

Moreover, the labeling relief will provide an important consumer benefit both for current Class members in connection with any future purchases they may make and future new purchasers. Since consumer protection is the touchstone of all consumer fraud laws (*see, e.g., Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267, 1277 (Ill. App. 1981) (The IFCA sections "clearly expand the consumers' rights beyond those of the common law, and provide broader consumer protection than does the common law action of fraud. There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties.") (citations omitted); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 344 (2011) (California's UCL's "purpose ⋯is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services" and "[i]n service of that purpose, the Legislature framed the UCL's substantive provisions in "broad, sweeping language") (citations omitted); and *Kattar v. Demoulas*, 433 Mass. 1, 12-13, 739 N.E.2d 246, 257 (Mass. 2000) (Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." It mak[es]

conduct unlawful which was not unlawful under the common law or any prior statute.í  Thus, a

cause of action under c. 93A is not dependent on traditional tort or contract law concepts for its

definition.ö) (citations and internal quotations omitted), the injunctive/labeling relief provided in

the Settlement Agreement is a significant and meaningful part of this settlement.

There is an initial presumption of fairness because the settlement is the product of arm¢s

length negotiations conducted by experienced counsel who are fully familiar with all aspects of class

action litigation.  *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785

(3d Cir.), *cert. denied*, 516 U.S. 824 (1995) (öThis preliminary determination establishes an initial

presumption of fairness when the court finds that:  (1)  the negotiations occurred at arm¢s length….

[and] (3) the proponents of the settlement are experienced in similar litigation. . . .ö); *see also* 4 Alba

Conte & Herbert Newberg, *Newberg on Class Actions* § 11.4§§1 at 90 (2002); *Manual for Complex

Litigation* (Third) § 30.42 (1995); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662

(N.D. Fla. 2011).

Here, settlement was achieved after months of arm¢s-length discussions.  At the same time as

the Parties were preparing for the exemplar trial in *Jennings*, conducting class and merits discovery

in *Cardenas*, *Linares* and *Pearson*, and proceeding with class certification in *Cardenas*,  there were

numerous meetings and conference calls among counsel for all sides, which ultimately resulted in the

execution of the Settlement Agreement.  The process began with discussions regarding the general

constructs of a settlement, and concluded with the definitive agreement that resolved all of the

pending glucosamine and chondroitin cases involving Rexall and NBTY.   The attorneys¢ involved

in the negotiations are all experienced in prosecuting and defending consumer fraud and other types

of class action lawsuits.  NBTY and Rexall Sundown are represented by Sidley Austin LLP, a

national firm well-versed in defending complex class action lawsuits.  Counsel for Plaintiffs are

experienced complex class action and consumer fraud litigation firms, as demonstrated  in the firm

-18-

biographies of Class Counsel attached as Exhibits 3, 4 and 5. It is their opinion, that the settlement is in the best interest of the Class.

Based upon the foregoing, Plaintiffs respectfully submit that the proposed settlement "falls within the range of what ultimately might be approved as fair, reasonable, and adequate" and that preliminary approval should be granted.

### C. The Notice Plan

The notice is fully compliant with due process in that it informs Class members of their right to opt-out or exclude themselves from the settlement, appear through their own counsel, object to the terms of the settlement along with the form that the objection must take, the deadlines for opt-out/exclusion or objection, the date of the final approval hearing, the scope of the claims released if a Class member does not opt-out and remains in the Class, and the amount of potential plaintiffs' incentive awards and fees and expense awards. (Exhibit D attached to Settlement Agreement). *See, e.g.*, *Kaufman v. Am. Exp. Travel Related Services Co., Inc.*, 264 F.R.D. 438, 445-46 (N.D. Ill. 2009).

The proposed settlement class is comprised of approximately 12 million consumer households. ("Rexall Glucosamine Notice Plan Overview April 2013," attached as Exhibit C to the Settlement Agreement). Heffler Claims Group ("Heffler")[12] has been identified as the third-party Settlement Administrator. The media part of the notice plan was based upon an analysis of "print publication and the potential internet usage by consumers who may have purchased a glucosamine product." *Id.* at p. 1. Based upon Heffler's analysis of publications likely to reach the target audience, five national magazines were chosen for publication notice: *Arthritis Today*, *People Magazine*, *Prevention*, *First for Women*, and *Woman's World*. *Id.* at Part 1. In addition

---

[12] http://www.heffler.com/services/classaction/.

to print notice, notices will be placed in four of the largest groups of Internet sites: Yahoo, Google Text, Google Content Network, and MSN Network. *Id.* at Part 3. The Notice Plan also will use social media through the use of Facebook. *Id.* at Part 4.

Finally and significantly, in cases involving labeling consumer fraud classes, the identity of individual class members typically cannot readily be ascertained and publication notice is the only means of informing settlement class members of the existence of the settlement and its terms. But this is not the case here for more than one-third of the estimated Class. Approximately 4.84 million class member households will receive direct communication of the notice. *Id.* at Part 2. Based on historical data, if 6% are undeliverable, this direct communication would account for 37.91% of the Class being reached by direct notice. *Id.*

In *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004), the Seventh Circuit approved a publication notice for a nationwide class that consisted of publication in one publication of national circulation and the posting of the notice on a website set up by a settlement administrator. *See also*, *Kaufman,* 264 F.R.D. at 446 (Publication of notice in "a national newspaper of wide circulation, plus an online publication, constitutes sufficient notice by publication.") (citing *Misfasihi*); *Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007) (approving notice plan consisting of publication in USA Today and an Internet campaign targeted to the demographics of the class members); *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 364 (N.D. Ill. 2011) (approving of notice plan consisting of publication in Parade, internet advertising, the maintenance of a website containing the notice, and targeted on-line advertising and sponsored key-word search advertisements).

CH1 7671290v.1

Here, the notice plan goes far beyond these threshold requirements. Persons capable of being readily identified and receiving direct notice will receive such notice,[13] and for those who are not capable of being identified, the plan provides for multiple publications in several national magazines, several of the largest internet sites, and the largest social media tool. Finally, the amount of money set aside (and to be paid by Defendants) for notice and settlement administration is significant, with a floor of $1.5 million and a ceiling of $2.5 million (Settlement Agreement at ¶ 15), and will not erode or diminish the benefits available to the Class.

## V. CONCLUSION

Based upon the foregoing, and because the proposed settlement is fair, reasonable, and sufficient to warrant that notice and a final approval hearing be held, Plaintiffs respectfully request that the Court enter the preliminary approval order that accompanies this motion and memorandum.

DATED: May 7, 2013

Respectfully submitted,


By: /s/Stewart M. Weltman
STEWART M. WELTMAN, LLC
53 W. Jackson, Suite 364
Chicago, Illinois 60604
Telephone: 312-588-5033
(Of Counsel: Levin Fishbein Sedran & Berman)

Of Counsel:
Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Rd., Suite 300
Phoenix, Arizona 85016
Telephone: 602-274-1100

---

[13] *See Mirfasihi*, 356 F. 3d at 786 (direct notice preferred where it is possible).

CH1 7671290v.1

Attorneys for Plaintiffs Nick Pearson, Francisco Padilla, Cecilia Linares, Augustina Blanco, and Abel Gonzalez

By: /s/ Peter N. Freiberg

Peter N. Freiberg (admitted pro hac vice)
Jeffrey I. Carton  (admitted pro hac vice)
DENLEA & CARTON LLP
One North Broadway, Suite 509
White Plains, New York 10601
Telephone:   (914) 920-7400

Attorneys for Plaintiff Richard Jennings

CH1 7671290v.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of May, 2013, a copy of the foregoing Memorandum In Support of Motion For Preliminary Approval of Class Settlement was filed with the Clerk of Court using the CMM/ECF system which will send notification of such filing to the following:

Kara L. McCall
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Defendant Target Corporation*


 /s/Stewart M. Weltman

CH1 7671290v.1