# EXHIBIT 1

Execution Copy

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Settlement Agreement" or "Agreement" or "Settlement") is entered into on April 15, 2013 between plaintiffs Augustina Blanco, Abel Gonzalez, Richard Jennings, Cecilia Linares, Francisco Padilla, and Nick Pearson ("Plaintiffs") and defendants Rexall Sundown, Inc. and NBTY, Inc. ("Rexall") (collectively, the "Parties").

### Recitals

A.      Rexall, along with affiliated entities, manufactures and sells dietary supplements containing glucosamine and/or chondroitin, which are sold both under the brand names of Rexall or its affiliates and under the brand names of companies not affiliated with Rexall (collectively, "the Glucosamine Products").

B.      Starting in 2011, six putative class actions involving the Glucosamine Products were filed: *Jennings v. Rexall Sundown*, No. 1:11-cv-11488-WGY (D. Mass); *Liliana Cardenas and Francisco Padilla v. NBTY, Inc. and Rexall Sundown, Inc.*, No. 2:11-CV-01615-LKK-CKD (E.D. Cal.); *Cecilia Linares and Abel Gonzalez v. Costco Wholesale, Inc.*, No. 3:11-cv-02547-MMA-RBB (S.D. Cal.); *Nick Pearson v. Target Corp.*, No. 1:11-cv-07972 (N.D. Ill.); *Ray Padilla v. Costco Wholesale Corp.*, No. 1:11-cv-07686 (N.D. Ill.); and *Augustina Blanco v. CVS Pharmacy, Inc.*, No. 5:13-cv-00406-JGB-SP (C.D. Cal.) (collectively, the "Litigation").

C.      Plaintiffs in the Litigation have alleged that certain claims made on the labeling and packaging of the Glucosamine Products are false, deceptive, and

misleading. These claims are brought under various state consumer protection acts. No allegations related to safety or physical injury have been made.

D.     Rexall denies the allegations raised in the Litigation, and denies any wrongdoing and any liability in connection with the claims asserted in the Litigation.

E.     Plaintiffs and their counsel have conducted an extensive examination of the facts and documents relating to the Litigation, including documents produced by Rexall, responses to written discovery requests, and depositions of Rexall employees. The parties have also engaged in expert discovery and have disclosed written reports of, and, in some cases, deposed, experts related to the veracity of the claims and damages.

F.     This Settlement Agreement was reached after protracted, arm's-length negotiations over several months.

G.     The Litigation, if it were to continue, would likely result in expensive and protracted litigation, appeals, and continued uncertainty as to outcome.

H.     Plaintiffs and their counsel have concluded that this Settlement Agreement provides substantial benefits to Plaintiffs and to members of the Settlement Class (as defined below), and resolves all issues that were or could have been raised in the Litigation without prolonged litigation and the risks and uncertainties inherent in litigation.

I.     Plaintiffs and their counsel have concluded that this Settlement Agreement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

J.     Rexall consents to the Settlement Agreement solely to avoid the expense, inconvenience, and inherent risk of litigation, as well as the concomitant disruption of its business operations.

K.     Nothing in this Settlement Agreement shall be construed as an admission or concession by Rexall of the truth of any allegations raised in the Litigation, or of any fault, wrongdoing, or liability of any kind.

L.     This Settlement Agreement, its terms, documents related to it, and the negotiations or proceedings connected with it shall not be offered or received into evidence in the Litigation, or any other action or proceeding, to establish any liability or admission by Rexall.

**NOW, THEREFORE**, in consideration of the foregoing, and the mutual covenants, promises, and general releases set forth below, the Parties hereby agree as follows:

<u>**Proposed Class for Settlement Purposes**</u>

1.     **Settlement Class.**  Pursuant to Fed. R. Civ. P. 23, the Parties hereto agree to certification, for settlement purposes only, of a settlement class that shall consist of all consumers who, during particular time periods and in certain U.S. locations, purchased for personal use and not resale or distribution certain joint health dietary supplements (a) sold by Rexall or any of its affiliates under the brand names of Rexall or its affiliates; or (b) sold under another brand name by a company not affiliated with Rexall manufactured by (i) Rexall, (ii) any of Rexall's affiliates, or (iii) any entities that

manufactured or sold the Covered Products from which Rexall acquired assets or contracts, (collectively, "Covered Products"). The Covered Products and their time periods and locations of sale during which they are deemed Covered Products and therefore covered by this Settlement are identified in Exhibit A to this Agreement.

2.    **Settlement Class Counsel.**  Subject to approval by the Court, Settlement Class Counsel are:

> Jeffrey I. Carton
> Peter N. Freiberg
> DENLEA & CARTON LLP
> One North Broadway, Suite 509
> White Plains, New York 10601
>
> Elaine A. Ryan
> BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
> 2325 E. Camelback Road, Suite 300
> Phoenix, Arizona 85016
>
> Stewart M. Weltman
> STEWART M. WELTMAN, LLC
> 53 W. Jackson Suite 364
> Chicago, Illinois 60604
> (Of Counsel Levin Fishbein Sedran & Berman)

3.    **Settlement Purposes Only.**  Rexall does not agree to certification of the Settlement Class for any purpose other than to effectuate the Settlement Agreement.

4.    **Vacating Settlement Certification.**  The certification of the Settlement Class shall be binding only with respect to the settlement of the Litigation.  In the event that the Settlement Agreement is terminated pursuant to its terms or is not approved in all material respects by the Court, or such approval is reversed, vacated, or modified in any material respect by this or any other court, the certification of the Settlement Class

shall be deemed vacated, the Litigation shall proceed as if the Settlement Class had never been certified, and no reference to the Settlement Class, this Settlement Agreement, or any documents, communications, or negotiations related in any way thereto shall be made for any purpose in this Litigation or any other action or proceeding.

   5.   **Stay**. Upon execution of this Settlement Agreement, the Parties shall immediately and jointly move for a complete stay of *Jennings v. Rexall Sundown*, No. 1:11-cv-11488-WGY (D. Mass); *Liliana Cardenas and Francisco Padilla v. NBTY, Inc. and Rexall Sundown, Inc.*, No. 2:11-CV-01615-LKK-CKD (E.D. Cal.); *Nick Pearson v. Target Corp.*, No. 1:11-cv-07972 (N.D. Ill.); and *Augustina Blanco v. CVS Pharmacy, Inc.*, No. 5:13-cv-00406-JGB-SP (C.D. Cal.). Upon execution of this Settlement Agreement, the Parties shall also immediately and jointly move for a stay of all claims related to Covered Products made in *Cecilia Linares and Abel Gonzalez v. Costco Wholesale, Inc.*, No. 3:11-cv-02547-MMA-RBB (S.D. Cal.). The Parties will take any and all additional actions necessary to obtain the stays of proceedings as set forth above.

   6.   **Filing of Second Amended Complaint.** In connection with and solely in furtherance of the Settlement, the plaintiffs in the *Jennings*, *Linares*, *Cardenas*, *Pearson*, and *Blanco* cases will file a Second Amended Class Action complaint in the *Pearson* case on behalf of a nationwide class of all persons in the United States who purchased the Covered Products as set forth in Exhibit A. The filing of this Second Amended Class Action Complaint is purely for settlement purposes. If the Settlement is terminated for

Execution Copy

any reason, the Parties agree that the Second Amended Class Action Complaint will be withdrawn and that the separate complaints in *Jennings, Linares, Cardenas, Pearson*, and *Blanco* will again be the operative complaints in those cases.

### Benefits to the Class

7.     **Payment of Claims.**  Pursuant to Paragraph 17 below, members of the Settlement Class who submit timely and valid claims shall be entitled to receive cash compensation as follows:

     a.     Claimants who submit proof of purchase shall receive $5.00 per bottle of Covered Product, up to a maximum of ten (10) bottles per household.

     b.     Claimants who do not have proof of purchase but complete a sworn declaration (notarization not required) identifying the name of the Covered Product, the approximate date of purchase of the Covered Product, the place of purchase of the Covered Product, and other required information shall receive $3.00 per bottle of Covered Product, up to a maximum of four (4) bottles per household.

     c.     The details, requirements, terms, and limits of the claims process are defined in Paragraph 17 below.

8.     **Labeling Changes.**

     a.     Without admitting liability and solely to avoid the cost and disruption of further litigation, Rexall agrees that, (i) for a period of 30 months running from the date that the Court enters its Final Judgment and Order approving this

settlement ("Date of Final Approval"), and (ii) to the extent that Rexall during that time

period manufactures and supplies the Covered Products, the labeling and packaging

for the Covered Products will (a) not use the language identified in Column 1 of Exhibit

B ("Removed Language"); and (b) use the language "individual results may vary."

      b.      The labeling changes described in this Paragraph are not an

admission by Rexall regarding Plaintiffs' claims or by Plaintiffs of the propriety of

statements used on prior packaging of the Covered Products.

      c.      The Parties agree that Rexall may – but is not required to – use the

language identified in Column 2 of Exhibit B in place of the Removed Language on the

Covered Products.

      d.      Rexall shall have six (6) months from the Date of Final Approval to

begin shipping Covered Products covered by the Settlement with labels and/or

packaging that conform to the terms of the Settlement.

      e.      Neither Rexall nor any of the retailers of the Covered Products shall

be required to recall, remove from shelves, or pull from distribution or inventory any

Covered Products that have already been shipped by Rexall.

9.      **Attorneys' Fees and Costs.**

      a.      The firm of DENLEA AND CARTON LLP will apply to the Court

for an aggregate award of attorneys' fees and actual expenses (including their court

costs) in an amount not to exceed $ 2,500,000.  Neither Rexall nor any other Settlement

Class Counsel will oppose DENLEA AND CARTON LLP'S application for an aggregate

award of attorneys' fees and expenses up to $ 2,500,000, to be paid by Rexall separate

and apart from, and without diminishing or eroding, the payment of claims referenced

in Paragraph 7.

      b.     The law firms of BONNETT, FAIRBOURN, FRIEDMAN &

BALINT, P.C.; STEWART M. WELTMAN, LLC (Of Counsel Levin Fishbein Sedran &

Berman); LEVIN FISHBEIN SEDRAN & BERMAN; and SIPRUT PC will jointly apply to

the Court for an aggregate award of attorneys' fees and actual expenses (including their

court costs) in an amount not to exceed $ 2,000,000.  Neither Rexall nor any other

Settlement Class Counsel will oppose this application for an aggregate award of

attorneys' fees and expenses up to $ 2,000,000, to be paid by Rexall separate and apart

from, and without diminishing or eroding, the payment of claims referenced in

Paragraph 7.

      c.     Collectively, these separate awards will be referred to in this

Agreement as "Attorneys' Fee Awards."

    10.    **Incentive Awards for Plaintiffs.**  Plaintiffs agree that any incentive

awards shall not exceed $5,000 for each Plaintiff, subject to Court approval.  Rexall

agrees not to object to these incentive awards and to pay any such awards, separate and

apart from, and without diminishing or eroding, the payment of claims referenced in

Paragraph 7.

## Releases

11.     **Release by Plaintiffs and the Settlement Class.** Upon final approval, Plaintiffs, the Settlement Class members, and their related individuals and entities (including but not limited to Plaintiffs' and Settlement Class members' spouses and former spouses, and their present, former, and future respective administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest, and successors) (collectively, the "Releasing Parties"), shall forever release

a.     NBTY, Inc. and Rexall Sundown, Inc.;

b.     Any person or entity in the chain of distribution of the Covered Products, including but not limited to raw material suppliers, distributors, and retailers (including but not limited to Costco, Target, and CVS Pharmacy, Inc., to the extent that they are in the chain of distribution of the Covered Products);

c.     Entities and persons related to 11.a. and 11.b., including but not limited to their present, former, and future direct and indirect parent companies, affiliates, agents, divisions, predecessors-in-interest, subsidiaries, successors, and any entities that manufactured or sold the Covered Products from which Rexall acquired assets or contracts; and,

d.     Entities and persons related to 11.a., 11.b., and 11.c., including but not limited to their respective present, former, and future officers, directors, employees, independent contractors, shareholders, agents, assigns, and attorneys (collectively, the

Execution Copy

entities and persons identified in 11.a., 11.b., 11.c., and 11.d shall be referred to as "Released Parties"),

from any and all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that arise out of or relate in any way to:

      i.     Allegations, claims, or contentions that were or could have been asserted in the Litigation;

      ii.     The Covered Products, including, but not limited to, their efficacy or performance, and any and all advertising, labeling, packaging, marketing, claims, or representations of any type whatsoever made in connection with the Covered Products; or

      iii.     All labels or packaging for the Covered Products that conform to the terms of the Settlement (collectively, the "Released Claims").

For the avoidance of doubt, the Released Claims include but are not limited to any claims that arise out of or are related in any way to the labels and packaging used during the time periods of sale of the Covered Products identified on Exhibit A. For the further avoidance of any doubt, the Released Claims do not encompass any claim for personal injuries or safety-related concerns.

12.     **Release of Unknown Claims.**  The Releasing Parties acknowledge that they may have claims that are currently unknown and that the release in Paragraph 11 is intended to and will fully, finally, and forever discharge all Released Claims, whether now asserted or unasserted, known or unknown, suspected or unsuspected, which now exist, or heretofore existed or may hereafter exist, which if known, might have affected their decision to enter into this Release.  Each Releasing Party shall be deemed to waive any and all provisions, rights, and benefits conferred by any law of the United States, any state or territory of the United States, or any state or territory of any other country, or principle of common law or equity, which governs or limits a person's release of unknown claims.  In making this waiver, the Releasing Parties understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of the Released Claims, but agree that they have taken that possibility into account in reaching this Settlement Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasing Parties expressly assume the risk, they fully, finally, and forever settle and release any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.  The foregoing waiver includes, without limitation, an express waiver, to the fullest extent not prohibited by law, by Plaintiffs, the Settlement Class members, and all Releasing Parties, of any and all rights under California Civil Code Section 1542, which provides:

11

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT KNOW
> OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE
> DEBTOR.

In addition, all Releasing Parties also expressly waive any and all provisions, rights, and benefits conferred by any law or principle of common law or equity, that are similar, comparable, or equivalent, in whole or in part, to California Civil Code Section 1542.

13. **Continuation of Label Changes.** Rexall may elect, in its sole and unilateral discretion, to continue the label changes identified in Paragraph 8 and Exhibit B beyond the thirty-month required period. For as long as a product identified on Exhibit A continues to be sold and complies with the terms of Paragraph 8 beyond the thirty-month required period, no Releasing Party who purchases such product after the thirty-month period may sue any Released Party based on any claim that was or could have been asserted in the Litigation.

14. **Additional Releases.** Except as to the rights and obligations provided for under this Agreement, NBTY, Inc. and Rexall Sundown, Inc. hereby release and forever discharge Plaintiffs, Settlement Class, and Settlement Class Counsel from any and all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, which the

Released Parties may now have, own or hold or which the Released Parties at any time

may have, own, or hold, against Plaintiffs, Settlement Class, or Settlement Class

Counsel by reason of any matter, cause or thing whatsoever occurred, done, omitted, or

suffered from the beginning of time to the date of the Settlement Agreement, related to

the subject matter of the Litigation.

### SETTLEMENT ADMINISTRATION

15.     **Settlement Administrator.** The Parties agree that a third party, Heffler

Claims Group, shall serve as the settlement administrator to administer the settlement

and advise the Parties on a notice plan (the "Settlement Administrator"). The

Settlement Administrator will work under the direction of Settlement Class Counsel

and Rexall's counsel. Rexall shall pay the Settlement Administrator and any third

parties providing notice for the reasonable costs associated with the individual and

publication notice and administration services reflected in the Notice Plan attached as

Exhibit C, provided, however, such costs will be, at a minimum, $1,500,000, and will not

exceed $2,500,000. Such payments to the Settlement Administrator shall be separate

and apart from, and without diminishing or eroding, the payments of claims referenced

in Paragraph 7.

16.     **Class Notice.** As soon as practicable after receiving preliminary Court

approval of this Settlement Agreement and a form of notice ("Notice"), individual

notice shall be provided to known consumers. At or around the same time, the

Settlement Administrator shall cause to be published a summary notice of the

Execution Copy

settlement, and post on the settlement website a long form notice, according to the notice plan approved by the Court. A copy of the notice plan and the proposed forms of notice are attached as Exhibits C (notice plan), D (long form notice), and E (summary notice) hereto.

17.    **Claims Process.** Each Settlement Class member shall be entitled to submit a claim as described below.

a.    *Notice and Submission of Claims.* The Notice shall provide information regarding the filing of claims. Claim forms shall be available from the Settlement Administrator and on the settlement website after the notice process is implemented. A claim must: (i) be post-marked or submitted online no later than 90 days after the date of the Fairness Hearing scheduled by the Court in its Preliminary Approval Order; (ii) contain all of the information and documentation required by the Settlement Agreement and Notice; (iii) be signed by the Settlement Class member submitting the claim; and (iv) satisfy the terms of Subparagraphs 17.b. or c. ("Valid Claim"). Only Settlement Class members who submit Valid Claims as set forth in Paragraph 17.b. and 17.c. shall be entitled to a payment.

b.    *With Proof of Purchase.* Settlement Class members who submit a Valid Claim with Adequate Proof of Purchase of a Covered Product shall be entitled to receive $5.00 per purchased bottle of Covered Products, up to a maximum of ten (10) bottles of Covered Products purchased per household. "Adequate Proof of Purchase" shall mean (i) cash register receipts; (ii) an intact box or bottle for a Covered Product

14

that displays a readable UPC code and readable lot number; or (iii) similar documentation that identifies the Covered Product and date and location of purchase.

    c.    ***Without Proof of Purchase.*** Settlement Class members who submit a Valid Claim containing a sworn declaration that identifies the (i) Covered Product(s) purchased; (ii) approximate date of purchase(s); and (iii) location(s) of the purchase(s), shall be entitled to receive $3.00 per purchased bottle of Covered Product, up to a maximum of four (4) bottles of Covered Products purchased per household.

    d.    ***Minimum Total Payment and Cy Pres Provision.*** If the total dollar value of valid claims submitted pursuant to Paragraph 17.b. and c. is less than $2 million:

    i.    The payment to each Settlement Class member who submits a Valid Claim under Paragraph 17.b. shall be increased *pro rata* up to a maximum of triple what he or she was entitled to under Paragraph 17.b. until the payments reach $2 million.

    ii.    If, after the increases identified in 17.d.i. are made, the total payments do not reach $2 million, then the payment to each Settlement Class member who submits a Valid Claim under Paragraph 17.c shall be increased *pro rata* up to a maximum of double what he or she was entitled to under Paragraph 17.c. until the payments provided for in subparagraphs 17.d.i and 17.d.ii., in total, reach $2 million.

       iii.     If, after these payments identified in subparagraphs 17.d.i and 17.d.ii. are made, the total payments do not reach $ 2 million, any residual amounts up to $2 million are to be paid to the Orthopaedic Research and Education Foundation (OREF), subject to Court approval.

      e.    ***Determination of Validity***.  The Settlement Administrator shall be responsible for reviewing all claims to determine their validity.

       i.     Any claim that is not substantially in compliance with the instructions on the claim form or the terms of this Paragraph, or is post-marked or submitted online later than the close of the claim period set by the Court in the Preliminary Approval Order, shall be rejected.

       ii.     The Settlement Administrator shall provide a report of any rejected claims to Rexall's counsel and Settlement Class Counsel.  If Settlement Class Counsel do not agree with the rejection of a claim, they shall bring it to the attention of counsel for Rexall, and the Parties shall attempt, in good faith, to resolve any disputed rejected claims.   The Settlement Administrator, after considering the positions of the Parties, will make the final decision.

      f.    ***Fraudulent Filings***.  At any time during the claims process, if the Settlement Administrator has a reasonable suspicion of fraud, the Settlement Administrator shall immediately notify both  Settlement Class Counsel and Rexall's counsel of that fact, and the basis for its suspicion.  Settlement Class Counsel and

Rexall's counsel shall endeavor to reach an agreed appropriate solution to any suspected fraud and, if necessary, Rexall may suspend the claim process, and then the Parties will promptly seek assistance from the Court.

### SETTLEMENT APPROVAL PROCESS

18.    **Preliminary Approval Order.** The Parties agree to petition the Court presiding in *Nick Pearson v. Target Corp.*, No. 1:11-cv-07972 (N.D. Ill.) promptly after execution of this Settlement Agreement for an order preliminarily approving the Settlement Agreement (the "Preliminary Approval Order"). A copy of the form of the proposed Preliminary Approval Order agreed to by the Parties is attached as Exhibit F hereto. The Preliminary Approval Order shall provide, *inter alia*, that:

a.    The settlement proposed in the Agreement has been negotiated at arm's length and its adequacy is such that the settlement falls within the range of possible final approval;

b.    Subject to the Court's consideration of additional evidence at the Fairness Hearing, and based on the documents submitted to the Court in connection with preliminary approval, the Notice and the proposed plan for giving notice fully complies with the requirements of Fed. R. Civ. P. 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of this Settlement;

c.    The Settlement Class is conditionally certified, with Plaintiffs serving as class representatives, and the attorneys and law firms listed above serving as

Execution Copy

Settlement Class Counsel, on the condition that the certification and designations shall be automatically vacated if the Settlement is terminated or is disapproved in whole or in part by the Court, any appellate court, or any of the Parties;

        d.    A final hearing on the settlement proposed in this Agreement shall be held before the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be approved by the Court ("Fairness Hearing");

        e.    In further aid of the Court's jurisdiction to implement and enforce the proposed settlement, Plaintiff and all Settlement Class members shall be preliminarily enjoined and barred from commencing or prosecuting any action asserting any of the Released Claims, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located. Any person or entity who knowingly violates such injunction shall pay the attorneys' fees and costs incurred by Rexall or any other Released Party as a result of the violation.

        f.    In accordance with 28 U.S.C. § 1715(d), the final approval hearing shall take place not less than 100 days after the Motion for Preliminary Approval is filed.

19.    **Rights of Exclusion**. All Settlement Class members who properly deliver to the Settlement Administrator a timely written request to opt-out of the Settlement shall be excluded from the Settlement Class, shall have no rights as members of the Settlement Class pursuant to this Settlement Agreement, and shall receive no payments as provided herein. A request for exclusion from the Settlement Class must be (a) in writing; (b) state the name, address, and phone number of the Settlement Class member(s) seeking exclusion; (c) contain a signed statement that: "I/We hereby request to be excluded from the proposed Settlement Class in the Glucosamine Products Litigation"; (d) be mailed to the Settlement Administrator at the address provided in the Notice; and (e) post-marked no later than forty-five (45) days after the Notice is first published. A request for exclusion that does not include all of the foregoing information, that is sent to an address other than the one designated in the Notice, or that is not post-marked within the time specified, shall be invalid and the person(s) serving such a request shall be deemed member(s) of the Settlement Class, and shall be bound as class member(s) by the Settlement. The Settlement Administrator shall promptly forward copies of all requests for exclusion to Settlement Class Counsel and counsel for Rexall.

20.    **Right to Comment or Object**. Any member of the Settlement Class may comment in support of or in opposition to the Settlement and may do so in writing, in person, or through counsel, at his or her own expense, at the Fairness Hearing. Except as the Court may order otherwise, no Settlement Class member objecting to the

19

Settlement shall be heard and no papers, briefs, pleadings, or other documents

submitted by any such class member shall be received and considered by the Court

unless such class member shall both file with the Court and mail to Settlement Class

Counsel and counsel for Rexall a written objection with the caption *Pearson, et al. v.*

*NBTY, Inc., et al.*, Case No. 1:11-cv-07972, that includes: (a) the Settlement Class

member's name, address, and telephone number; (b) a signed declaration that he or she

is a member of the Settlement Class that identifies the Covered Product(s) purchased as

well as the approximate date and location of the purchase(s); (c) the specific grounds for

the objection; (d) all documents, writings, or witnesses that such Settlement Class

member desires the Court to consider; and (e) a notice of intention to appear (if any)

that lists the name, address, and telephone number of the attorney, if any, who will

appear. All written objections shall be filed and post-marked no later than forty-five

(45) days after the first Notice is published. Any member of the Settlement Class who

fails to object in the manner prescribed herein shall be deemed to have waived his or

her objections and forever be barred from making any such objections in this action or

in any other action or proceeding. While the statement described above is *prima facie*

evidence that the objector is a member of the Settlement Class, Plaintiffs or Rexall or

both may take discovery regarding the matter.

21. **Final Judgment and Order**. If this Settlement Agreement is preliminarily

approved by the Court, the Parties shall jointly request at the Fairness Hearing that the

Court enter final judgment (the "Final Judgment and Order"). The Fairness Hearing

shall be held no earlier than twenty-one (21) days after the deadline for all Settlement

Class members to opt-out or object under Paragraphs 19 and 20 of this Agreement, and

no earlier than 100 days after the Motion for Preliminary Approval is filed. A copy of

the form of the proposed Final Judgment and Order agreed to by the Parties is attached

hereto as Exhibit G. The Final Judgment and Order shall provide, *inter alia*, that:

a. The Notice fully complied with the requirements of Fed. R. Civ. P.

23 and due process, constituted the best notice practicable under the circumstances, and

was due and sufficient notice to all persons entitled to notice of this Settlement;

b. The Settlement Agreement is fair, reasonable, adequate, and in the

best interests of the Settlement Class;

c. The Released Claims are dismissed with prejudice as to all Released

Parties, without fees or costs except as provided in this Settlement Agreement;

d. All Plaintiffs and Settlement Class members are permanently

enjoined and barred from commencing or prosecuting any action asserting any of the

Released Claims, either directly, representatively, derivatively, or in any other capacity,

whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or

federal court, or in any agency, or other authority or forum wherever located. Any

person or entity who knowingly violates such injunction shall pay the attorneys' fees

and costs incurred by Rexall or any other Released Party as a result of the violation; and

e.      The Court shall retain exclusive jurisdiction over this action, the

Parties, and all Settlement Class members to determine all matters relating in any way

to the Final Judgment and Order, the Preliminary Approval Order, or the Settlement

Agreement, including but not limited to the administration, implementation,

interpretation, or enforcement of such orders or Agreement.

22.      **Finality of Judgment.**  The Final Judgment and Order shall be deemed

final on the later of:  (a) the expiration of the time to appeal the Final Judgment and

Order with no appeal having been filed; or (b) if any such appeal is filed, the

termination of such appeal on terms that affirm the Final Judgment and Order or

dismiss the appeal with no material modification of the Final Judgment and Order; and

(c) the expiration of the time to obtain any further appellate review of the Final

Judgment and Order ("Effective Final Judgment Date").

23.      **Dismissal.**  Within five (5) days of the Effective Final Judgment Date,

Plaintiffs shall voluntarily dismiss with prejudice *Jennings v. Rexall Sundown*, No. 1:11-

cv-11488-WGY (D. Mass); *Liliana Cardenas and Francisco Padilla v. NBTY, Inc. and Rexall

Sundown, Inc.*, No. 2:11-CV-01615-LKK-CKD (E.D. Cal.); *Nick Pearson v. Target Corp.*, No.

1:11-cv-07972 (N.D. Ill.); and *Augustina Blanco v. CVS Pharmacy, Inc.*, No. 5:13-cv-00406-

JGB-SP (C.D. Cal.).  Within five (5) days of the Effective Final Judgment Date, Plaintiffs

shall voluntarily dismiss with prejudice any and all claims related to Covered Products

made in *Cecilia Linares and Abel Gonzalez v. Costco Wholesale, Inc.*, No. 3:11-cv-02547-

MMA-RBB (S.D. Cal.).

22

24.     **Dates of Payment Obligations**.  Rexall shall have no obligation to make any payments under this Settlement Agreement until the Court enters a Preliminary Approval Order.  Once the Preliminary Approval Order is entered and before the Effective Final Judgment Date, Rexall shall pay reasonable notice costs and any administrative costs arising under Paragraphs 15 and 16 that must be incurred prior to the Effective Final Judgment Date.  Except as otherwise provided herein, all payments to Settlement Class Members who submit Valid Claims will be made as expeditiously as possible but in no event any later than 120 days after the Effective Final Judgment Date. Rexall shall make any *cy pres* donations within 180 days after the Effective Final Judgment Date.  Rexall shall pay any Attorneys' Fee Awards and Incentive Awards awarded by the Court, up to the maximums specified in Paragraphs 9 and 10, within 14 days after the Effective Final Judgment Date.

25.     **Option to Withdraw**.  Either Rexall or Settlement Class Counsel, on behalf of the Settlement Class, shall have the option to withdraw from the Settlement Agreement, and thereby render this Settlement null and void, if (a) a Party breaches any material provision of the Settlement Agreement or the Preliminary Approval Order, or fails to fulfill any material obligation hereunder or thereunder; (b) the Court fails to give final approval to any portion of the Settlement Agreement or any aspect of the Settlement;  or (c) upon such other grounds as may be agreed to by the Parties or permitted by the Court.  In addition, Rexall has the option to withdraw from the Settlement Agreement if more than 75 members of the Settlement Class opt out of the

Settlement Class. Any election made by a Party to terminate this Agreement pursuant to this Paragraph shall be made in writing no later than seven (7) days prior to the Fairness Hearing.

26. **Effect of Withdrawal/Rejection**. In the event that (a) either Party withdraws from the Settlement Agreement pursuant to Paragraph 25; (b) the Settlement Agreement, Preliminary Approval Order, and Final Judgment and Order are not approved in all material respects by the Court; or (c) the Settlement Agreement, Preliminary Approval Order, or Final Judgment and Order are reversed, vacated, or modified in any material respect by this or any other Court, then: (i) the Settlement Agreement shall become null and void; (ii) Rexall shall cease to have any obligation to pay any of the amounts set forth in this Agreement, except for all notice and administrative costs incurred as of the date the Settlement Administrator is notified that the Settlement Agreement has become null and void; (iii) the Litigation may continue; and (iv) any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated, including, without limitation, any order certifying or approving certification of the Settlement Class; provided, however, that if the Parties hereto agree to appeal jointly any ruling and the Settlement Agreement and Final Judgment and Order are upheld on appeal, then the Settlement Agreement and Final Judgment and Order shall be given full force and effect according to their terms. The Parties reserve all rights regarding class certification in the event of withdrawal or rejection, including

Rexall's right to oppose any motion for class certification on any and all factual and legal grounds in this or any other action.

**MISCELLANEOUS PROVISIONS**

27.     **Interpretation**. This Settlement Agreement contains the entire agreement among the Parties hereto and supersedes any prior discussions, agreements, or understandings among them.  All terms are contractual.  For the purpose of construing or interpreting this Settlement Agreement, the Parties agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

28.     **Binding Effect**.  The terms are and shall be binding upon each of the Parties hereto, their administrators, agents, assigns, attorneys, executors, heirs, partners, representatives, predecessors-in-interest, and successors, and upon all other persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Settlement Class members.

29.     **Headings**.  The headings contained in this Settlement Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Settlement Agreement.

30.     **No Rescission on Grounds of Mistake**.  The Parties acknowledge that they have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.  Therefore, the Parties

25

agree that they will not seek to set aside any part of the Settlement Agreement on the grounds of mistake. Moreover, the Parties understand, agree, and expressly assume the risk that any fact not recited, contained, or embodied in the Settlement Agreement may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that the Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

31. **Amendment.** This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties or their counsel. Amendments and modifications may be made without notice to the Settlement Class unless notice is required by law or by the Court. The Parties acknowledge that additional changes may be made to Exhibit A, namely, (a) the addition of approximately nine private label products sold by two retailers; and (b) minor revisions to the brand/product names and the period of sale dates, except the no period of sale dates will extend beyond the date the Preliminary Approval Order is entered. Therefore, the Parties agree that Rexall may attach to this Agreement an amended Exhibit A to make these changes no later than the date of the preliminary approval hearing.

32. **Integration of Exhibits.** The exhibits to this Settlement Agreement are an integral and material part of the Settlement and are hereby incorporated and made a part of this Settlement Agreement.

Execution Copy

33. **Jurisdiction**. The United States District Court for the Northern District of Illinois has jurisdiction over the Parties to this Settlement Agreement and the Settlement Class.

34. **No Admission**. Neither this Settlement Agreement, nor any of its provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, the Preliminary Approval Order, or the Final Judgment and Order), negotiations, or proceedings relating in any way to the Settlement, shall be construed as or deemed to be evidence of an admission or concession by any person, including Rexall, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce its terms or except as may be required by law or Court order. The provisions of this Paragraph shall become effective when this Settlement Agreement has been signed by the Parties and shall be binding on the Parties and their counsel regardless of whether the Settlement Agreement is approved by this Court or any other court and regardless of whether the Settlement Agreement is otherwise rendered null and void pursuant to Paragraphs 25 and 26.

35. **Governing Law**. This Settlement Agreement shall be governed by and construed in accordance with the internal laws (as opposed to the conflicts of law provisions) of the State of Illinois.

27

36.     **Counterparts**.  This Settlement Agreement may be executed in

counterparts, and may be executed by facsimile, and as so executed shall constitute one

agreement.

37.     **No Media Statements**.  Subject to the preliminary approval order issued

by the Court, neither the Parties nor their counsel shall issue any press release, or make

any statement to any media or press of any sort, regarding this Settlement, including

any references on websites maintained by Plaintiffs or their counsel, other than to state

that the Litigation has been resolved on terms satisfactory to the Parties and contained

in this Agreement.  Class counsel will be permitted to provide a link to the settlement

website on their website with accompanying language to be reviewed and approved by

Rexall, such approval not to be unreasonably withheld, before posting of the same.

**ON BEHALF OF REXALL**

_Kara L. McCall_                           Date: **4/15/13**

Kara L. McCall
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603

**ON BEHALF OF PLAINTIFFS IN THE
LITIGATION (*Jennings v. Rexall
Sundown, Inc.*)**

_____                    Date: _____

Jeffrey I. Carton
Peter N. Freiberg
DENLEA & CARTON LLP
One North Broadway, Suite 509
White Plains, New York 10601

Execution Copy

36. **Counterparts**. This Settlement Agreement may be executed in counterparts, and may be executed by facsimile, and as so executed shall constitute one agreement.

37. **No Media Statements.** Subject to the preliminary approval order issued by the Court, neither the Parties nor their counsel shall issue any press release, or make any statement to any media or press of any sort, regarding this Settlement, including any references on websites maintained by Plaintiffs or their counsel, other than to state that the Litigation has been resolved on terms satisfactory to the Parties and contained in this Agreement. Class counsel will be permitted to provide a link to the settlement website on their website with accompanying language to be reviewed and approved by Rexall, such approval not to be unreasonably withheld, before posting of the same.

**ON BEHALF OF REXALL**

_____     Date: _____
Kara L. McCall
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603

**ON BEHALF OF PLAINTIFFS IN THE
LITIGATION (*Jennings v. Rexall
Sundown, Inc.*)**

_Peter N Freiberg_____     Date: April 15, 2013
Jeffrey I. Carton
Peter N. Freiberg
DENLEA & CARTON LLP
One North Broadway, Suite 509
White Plains, New York 10601

Execution Copy

**ON BEHALF OF PLAINTIFFS IN THE
LITIGATION (***Cardenas v. NBTY, Inc.,
Pearson v. Target Corp, Linares v. Costco
Wholesale, Inc.; Blanco v. CVS Pharmacy,
Inc.***)**

Date: 4/15/13

Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016

Date: _____

Stewart M. Weltman
STEWART M. WELTMAN, LLC
53 W. Jackson Suite 364
Chicago, Ill 60604
(Of Counsel Levin Fishbein Sedran &
Berman)

Date: _____

Howard J. Sedran
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street
Philadelphia, Pennsylvania 19106

**ON BEHALF OF PLAINTIFFS LINARES
AND PADILLA ONLY**

Date: _____

Joseph Siprut
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL 60602

29

**ON BEHALF OF PLAINTIFFS IN THE LITIGATION (*Cardenas v. NBTY, Inc., Pearson v. Target Corp., Linares v. Costco Wholesale, Inc.; Blanco v. CVS Pharmacy, Inc.*)**

_____     Date: _____
Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016

_____     Date: 4/15/13
Stewart M. Weltman
STEWART M. WELTMAN, LLC
53 W. Jackson Suite 364
Chicago, Ill 60604
(Of Counsel Levin Fishbein Sedran &
Berman)


_____     Date: _____
Howard J. Sedran
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street
Philadelphia, Pennsylvania 19106


**ON BEHALF OF PLAINTIFFS LINARES
AND PADILLA ONLY**

_____     Date: _____
Joseph Siprut
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL 60602

Execution Copy

**ON BEHALF OF PLAINTIFFS IN THE LITIGATION (*Cardenas v. NBTY, Inc., Pearson v. Target Corp., Linares v. Costco Wholesale, Inc.; Blanco v. CVS Pharmacy, Inc.*)**

_____     Date: _____

Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016

_____     Date: _____

Stewart M. Weltman
STEWART M. WELTMAN, LLC
53 W. Jackson Suite 364
Chicago, Ill 60604
(Of Counsel Levin Fishbein Sedran &
Berman)

_____     Date: 4/15/13

Howard J. Sedran
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street
Philadelphia, Pennsylvania 19106

**ON BEHALF OF PLAINTIFFS LINARES AND PADILLA ONLY**

_____     Date: _____

Joseph Siprut
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL 60602

29

Execution Copy

**ON BEHALF OF PLAINTIFFS IN THE
LITIGATION (***Cardenas v. NBTY, Inc.,
Pearson v. Target Corp., Linares v. Costco
Wholesale, Inc.; Blanco v. CVS Pharmacy,
Inc.***)**

_____    Date: _____

Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016

_____    Date: _____

Stewart M. Weltman
STEWART M. WELTMAN, LLC
53 W. Jackson Suite 364
Chicago, Ill 60604
(Of Counsel Levin Fishbein Sedran &
Berman)

_____    Date: _____

Howard J. Sedran
LEVIN FISHBEIN SEDRAN & BERMAN
510 Walnut Street
Philadelphia, Pennsylvania 19106

**ON BEHALF OF PLAINTIFFS LINARES
AND PADILLA ONLY**

_____    Date: 4/15/2013

Joseph Siprut
SIPRUT PC
17 North State Street
Suite 1600
Chicago, IL 60602

29

**Plaintiffs in the Litigation**

_Agustino Blanco_     Date: _4/21/2013_

_____     Date: _____
Abel Gonzalez

_____     Date: _____
Richard Jennings

_____     Date: _____
Cecilia Linares

_____     Date: _____
Francisco Padilla

_____     Date: _____
Nick Pearson

30

Execution Copy

**Plaintiffs in the Litigation**

_____     Date: _____
Augustino Blanco

_____     Date: 4-17-13
Abel Gonzalez

_____     Date: _____
Richard Jennings

_____     Date: _____
Cecilia Linares

_____     Date: _____
Francisco Padilla

_____     Date: _____
Nick Pearson

30

Execution Copy

**Plaintiffs in the Litigation**

_____     Date: _____
Augustino Blanco

_____     Date: _____
Abel Gonzalez

_____     Date: _04/12/2013_
Richard Jennings

_____     Date: _____
Cecilia Linares

_____     Date: _____
Francisco Padilla

_____     Date: _____
Nick Pearson

30

Execution Copy

**Plaintiffs in the Litigation**

_____     Date: _____
Augustino Blanco

_____     Date: _____
Abel Gonzalez

_____     Date: _____
Richard Jennings

*Cecilia Linares* _____     Date: 4 - 19 -13
Cecilia Linares

_____     Date: _____
Francisco Padilla

_____     Date: _____
Nick Pearson

30

**Plaintiffs in the Litigation**

_____     Date: _____
Augustino Blanco

_____     Date: _____
Abel Gonzalez

_____     Date: _____
Richard Jennings

_____     Date: _____
Cecilia Linares

_____     Date: 4/14/2013
Francisco Padilla

_____     Date: _____
Nick Pearson

Execution Copy

**Plaintiffs in the Litigation**

_____     Date: _____
Augustino Blanco

_____     Date: _____
Abel Gonzalez

_____     Date: _____
Richard Jennings

_____     Date: _____
Cecilia Linares

_____     Date: _____
Francisco Padilla

_____     Date: 4-12-13
Nick Pearson

Execution Copy

## ATTACHMENTS

EXHIBIT A – LIST OF COVERED PRODUCTS
EXHIBIT B – LABEL MODIFICATIONS
EXHIBIT C – NOTICE PLAN
EXHIBIT D- LONG FORM NOTICE
EXHIBIT E – SUMMARY NOTICE
EXHIBIT F – PRELIMINARY APPROVAL ORDER
EXHIBIT G – FINAL JUDGMENT AND ORDER

| EXHIBIT A - COVERED PRODUCTS | | | |
|---|---|---|---|
| **Brand** | **Product** | **Dates of Sale** | **Geographic Location** |
| American Health | All Glucosamine Products | 2005-PA date | U.S. |
| CVS | Double Strength Glucosamine Chondroitin | 2005-2006 | U.S. |
| CVS | Regular Strength Glucosamine Chondroitin | 2005-PA date | U.S. |
| CVS | Cosaflex | 2007 | U.S. |
| CVS | Double Strength Glucosamine Chondroitin with MSM | 2008-PA date | U.S. |
| CVS | Triple Strength Glucosamine Chondroitin with MSM | 2008-PA date | U.S. |
| CVS | Advanced Formula Triple Strength Glucosamine Chondroitin with Univestin | 2010-PA date | U.S. |
| CVS | Advanced Formula Double Strength Glucosamine Chondroitin with Univestin and MSM | 2010-PA date | U.S. |
| CVS | Triple Strength Glucosamine Chondroitin | 2005-PA date | U.S. |
| CVS | Glucosamine Chondroitin Plus MSM and Hyaluronic Acid | 2008-PA date | U.S. |
| CVS | Glucosamine HCl plus Boswellia Serrata and Vitamin D3 | 2012-PA date | U.S. |
| CVS | Glucosamine Sulfate MSM | 2007-PA date | U.S. |
| CVS | Triple Strength Glucosamine Chondroitin and Vitamin D3 | 2010-PA date | U.S. |
| CVS | Glucosamine Chondroitin MSM | 2005-PA date | U.S. |
| CVS | Glucosamine 2KC1 (sulfate) | 2005-PA date | U.S. |
| Duane Reade | Double Strength Glucosamine Chondroitin | 2005-2009 | U.S. |
| Duane Reade | Double Strength Glucosamine Chondroitin with MSM | 2009-2011 | U.S. |
| Duane Reade | Triple Strength Glucosamine Chondroitin | 2007-2009 | U.S. |
| Duane Reade | Triple Strength Glucosamine Chondroitin with MSM | 2009-2011 | U.S. |
| Duane Reade | Glucosamine Chondroitin plus MSM and Hyaluronic Acid | 2009-2011 | U.S. |
| Duane Reade | Glucosamine Chondroitin plus MSM | 2007-2009 | U.S. |
| Equate | Advanced Triple Strength Glucosamine Chondroitin MSM (160-count) | 2008-1/31/13 | U.S. |
| Equate | Advanced Triple Strength glucosamine Chondroitin MSM (80-count) | 2008-2010 | U.S. |
| Equaline | Glucosamine Chondroitin MSM with Hyaluronic Acid | 2007-PA date | U.S. |
| Finest Naturals | Double Strength Glucosamine Chondroitin | 2011-PA date | U.S. |
| Finest Naturals | Triple Strength Glucosamine Chondroitin | 2010-PA date | U.S. |
| Finest Naturals | Glucosamine Sulfate | 2011-PA date | U.S. |
| Finest/Finest Naturals | Double Strength Glucosamine MSM | 2011-PA date | U.S. |
| Flex-a-Min | All Glucosamine Products | 2005-PA date | U.S. |
| Good N Natural | All Glucosamine Products | 2005-PA date | U.S. |
| Hannaford | Glucosamine Chondroitin MSM | 2008-2011 | U.S. |
| Hannaford | Double Strength Glucosamine Chondroitin | 2008-PA date | U.S. |
| Hannaford | Triple Strength Glucosamine Chondroitin | 2008-2011 | U.S. |
| Healthy Accents | Glucosamine Chondroitin MSM | 2011-PA date | U.S. |
| Healthy Accents | Double Strength Glucosamine Chondroitin with MSM | 2012-PA date | U.S. |
| Healthy Accents | Triple Strength Glucosamine Chondroitin with MSM | 2012-PA date | U.S. |
| Kirkland | Glucosamine HCl 500 mg Chondroitin Sulfate 400 mg | 2005-2006 | U.S. |
| Kirkland | Extra Strength Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg | 2006-2010 | US, EXCEPT for NE region |
| Kirkland | Extra Strength Glucosamine HCl 1500 mg With MSM 1500 mg | 2006-2010 | U.S. |
| Kirkland | Extra Strength Glucosamine HCl 1500 mg With MSM 1500 mg | 2011-PA date | San Diego, Texas, Midwest, Southeast, and Northeast regions of U.S. |
| Knox | All Glucosamine Products | 2005-PA date | U.S. |
| Kroger | Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg | 2009-PA date | U.S. |
| Kroger | Glucosamine Chondroitin MSM Complex | 2009-PA date | U.S. |
| Kroger | Extra Strength Glucosamine HCl 1500 mg Chondroitin Sulfate 1200 mg | 2009-PA date | U.S. |
| Kroger | Glucosamine Chondroitin and Joint Lubricant Two-Per-Day | 2008-2011 | U.S. |
| Kroger | Glucosamine Chondroitin with MSM | 2008-PA date | U.S. |
| Kroger | Glucosamine Chondroitin with MSM and Vitamin D | 2005-PA date | U.S. |
| Kroger | Joint Support Glucosamine Chondroitin with MSM and Univestin | 2010-2011 | U.S. |
| Kroger | Joint Support Glucosamine Chondroitin B88with Univestin | 2010-2011 | U.S. |
| Kroger | Glucosamine Chondroitin Plus MSM with Vitamin D and Univestin | 2010-2011 | U.S. |
| Kroger | Glucosamine HCl | 2008-PA date | U.S. |
| Kroger | Glucosamine HCl with MSM | 2009-PA date | U.S. |
| Life Fitness | Double Strength Glucosamine Chondroitin | 2005-PA date | U.S. |
| Life Fitness | Glucosamine Sulfate | 2005-PA date | U.S. |
| Life Fitness | Triple Strength Glucosamine Chondroitin | 2005-PA date | U.S. |
| Life Fitness | Glucosamine Chondroitin MSM | 2005-PA date | U.S. |
| MET-Rx | All Glucosamine Products | 2005-PA date | U.S. |

| Brand | Product | Dates of Sale | Geographic Location |
|---|---|---|---|
| Member's Mark | Triple Strength Glucosamine Chondroitin | 2008-PA date | U.S. |
| Member's Mark | Glucosamine | 2008-PA date | U.S. |
| Member's Mark | Glucosamine and MSM | 2008-PA date | U.S. |
| Member's Mark | Triple Strength Glucosamine and MSM | 2008-PA date | U.S. |
| Natural Wealth | All Glucosamine Products | 2005-PA date | U.S. |
| Nature's Bounty | All Glucosamine Products | 2005-PA date | U.S. |
| Origin | Triple Strength Glucosamine | 2007-2009 | U.S. |
| Origin | Glucosamine Sulfate | 2009-PA date | U.S. |
| Osteo Bi-Flex | All Glucosamine Products | 2005-PA date | U.S. |
| Physiologics | All Glucosamine Products | 2005-PA date | U.S. |
| Rexall | All Glucosamine Products | 2005-PA date | U.S. |
| Safeway | Triple Strength Glucosamine HCl and Chondroitin Sulfate | 2008-PA date | U.S. |
| Safeway | Glucosamine HCl | 2008-PA date | U.S. |
| Safeway | Glucosamine Chondroitin MSM | 2008-PA date | U.S. |
| Safeway | Triple Strength Glucosamine HCl MSM | 2010-PA date | U.S. |
| Safeway | Advanced Triple Strength Glucosamine Chondroitin MSM | 2008-PA date | U.S. |
| Safeway | Double Strength Glucosamine Chondroitin MSM | 2008-PA date | U.S. |
| Safeway | Triple Strength Glucosamine HCl Chondroitin Sulfate | 2008-PA date | U.S. |
| Safeway | Glucosamine Chondroitin MSM with Hyaluronic Acid | 2008-PA date | U.S. |
| Safeway | Triple Strength Glucosamine MSM | 2008-2010 | U.S. |
| Safeway | Advanced Double Strength Glucosamine Chondroitin MSM | 2008-PA date | U.S. |
| ShopRite | Double Strength Glucosamine Chondroitin | 2006-PA date | U.S. |
| ShopRite | Triple Strength Glucosamine Chondroitin | 2009-PA date | U.S. |
| ShopRite | Triple Strength Glucosamine Chondroitin with MSM | 2012-PA date | U.S. |
| Solgar | All Glucosamine Products | 2005-PA date | U.S. |
| Spring Valley | Double Strength Glucosamine Chondroitin | 2005-PA date | U.S. |
| Spring Valley | Triple Strength Glucosamine Chondroitin | 2011-PA date | U.S. |
| Spring Valley | Glucosamine Chondroitin | 2008-PA date | U.S. |
| Spring Valley | Glucosamine Chondroitin Plus MSM | 2005-PA date | U.S. |
| Sundown/Sundown Naturals | All Glucosamine Products | 2005-PA date | U.S. |
| SunMark | Glucosamine Chondroitin MSM Advanced Double Strength | 2008-PA date | U.S. |
| SunMark | Glucosamine Chondroitin MSM with Joint Lubricant | 2008-PA date | U.S. |
| SunMark | Glucosamine HCl | 2007-2011 | U.S. |
| SunMark | Triple Strength Glucosamine HCl and MSM | 2007-PA date | U.S. |
| SunMark | Glucosamine with Calcium and D | 2007-2010 | U.S. |
| SunMark | Triple Strength Glucosamine Chondroitin  MSM | 2008-2011 | U.S. |
| Target | Triple Strength Glucosamine Chondroitin with MSM | 2009-PA date | U.S. |
| Target | Glucosamine Chondroitin plus MSM and Hyaluronic Acid | 2009-PA date | U.S. |
| Up and Up | Triple Strength Glucosamine Chondroitin plus MSM | 2009-PA date | U.S. |
| Vitamin World | All Glucosamine Products | 2005-PA date | U.S. |
| Walgreens | Glucosamine Chondroitin | 2007 | U.S. |
| Walgreens | Glucosamine Chondroitin MSM | 2007 | U.S. |
| | | | |
| PA Date = Date of Preliminary Approval of Settlement; will be amended once preliminary approval order is entered. | | | |

**EXHIBIT B**

| Column 1 | Column 2 |
|---|---|
| "Renew[s] cartilage" or "Help[s] renew cartilage" | |
| "Repair[s] cartilage" or "Help[s] repair cartilage" | |
| "Rebuild[s] cartilage" or "Help[s] rebuild cartilage" | |
| "Build[s] cartilage" or "Help[s] Build Cartilage" | "Contains a key building block of cartilage" (in describing glucosamine) |
| "Osteo Bi-Flex works by providing the nourishment your body needs to build cartilage, lubricate, and strengthen your joints" | "Osteo Bi-Flex works by providing the nourishment your body needs to support cartilage, lubricate, and strengthen your joints" |
| "helps protect cartilage and helps with annoying flare-ups while helping to renew the cellular components within joints" | "helps protect [or support] cartilage and helps with annoying flare-ups" |
| "Chondroitin is a naturally occurring nutrient found in connective tissue that helps lubricate and cushion joints while supporting the renewal of cartilage" | "Chondroitin is a naturally occurring nutrient found in connective tissue that helps lubricate and cushion joints while supporting healthy connective tissue [or healthy cartilage]" |
| "Just 'one' Osteo Bi-Flex ONE PER DAY caplet is all you need to help protect cartilage, revitalize connective tissue, and help ease occasional joint stress" | "Just 'one' Osteo Bi-Flex ONE PER DAY caplet is all you need to help protect cartilage and help ease occasional joint stress" |

## Rexall Glucosamine Notice Plan Overview
## April 2013

**The Audience "The Class":** The Class is defined as all persons in the United States who purchased a Rexall glucosamine product. The class size is estimated at 12 million consumers in the United States. In building the targeted media campaign, GfK MRI data[1] was used to further define the class as "supplement users aged 35 years and older." Where available, GfK MRI data was used to identify adults who used glucosamine, specifically.

**Objective of Print and Internet Notice Program:** Create, execute, and manage a Print and Internet notice program in a targeted, consumer friendly manner. The program will have extensive reach to potential Class participants. The media will be run in a timely manner that is consistent with the settlement agreement and the orders of the court.

**Rexall Glucosamine Marketing Analysis:** This media plan to inform the public of both the long form and summary notices is the result of a campaign analysis which included a thorough analysis of print publication and the potential Internet usage by consumers who may have purchased a glucosamine product, as well as industry cross-references. An analysis of the product categories in which the product falls, using proprietary historical data trends and reach indexing from over 400 Direct to Consumer products, was performed. Furthermore, industry standard information from GfK MRI was used to validate the analysis of the media's reach.

---

1 Based upon GfK MRI Fall 2012 data. GfK MRI is the leading provider of media and consumer research in the country. They are the primary source for audience data for the magazine industry in the United States.

# Part 1: Print Advertising / Magazine Ads

To develop the print notice plan, both proprietary data and GfK MRI data was used to evaluate the reach to the class. As noted earlier, the goal of the campaign is to reach a substantial portion of adults, aged 35 and older, who are also supplement users. In addition to raw data, an extensive marketing analysis was performed to ensure publications used by people with joint problems would be represented. Where available, GfK MRI data was utilized to specifically target adult glucosamine users.

The magazine selection includes:

"Arthritis Today" which, according to GfK MRI, reaches 2,609,000 adults over age 35 who use supplements (or 2.7% of the defined class). Considering the content of this publication and the mindset of a glucosamine user, our proprietary research indicates the reach is even higher than the MRI data would suggest. However, for the sake of calculating overall reach of the print campaign, the more conservative MRI data is used.

"People Magazine" which, according to GfK MRI, has 42.5 million readers, 17.64 million of which are adults over 35 who use supplements. According to the Alliance for Audited Media, People Magazine is the ninth largest publication in the United States, based on circulation numbers. Again, using GfK MRI data, People Magazine alone reaches 18% of all adults over 35 who use supplements.

"Prevention" is the 16th most circulated magazine in the United States. Its readership represents 5,944,000 adults over 35 who use supplements or 6.2% of the defined class. Using available data (also through MRI), we can further quantify that this publication alone reaches 8.3% of adult glucosamine users. This publication has an index of 171 for the defined class, with 70.4% of its readership being in this demographic.

"First For Women" has a readership of 2,511,000 supplement users over 35. This publication also has an index of 152 for the defined class, with 62.7% of its readership being in this demographic. Using MRI data, it reaches 2.6% of all adult supplement users over 35, while specifically reaching 3.4% of all glucosamine users.

"Woman's World" reaches 4,133,000 readers who are supplement users over 35 years old. Like "First For Women", it also indexes high (151) with the demographic, with 62% of its readership in the defined class. This represents a reach of 4.3% of adults over 35 who use supplements and 5.1% of all glucosamine users.

These magazines were selected for their excellent targeting and wide reach of adults in the United States. GfK MRI data suggests the print campaign has an overall

audience reach of 32.837 million adults over age 35 who use supplements. Combined, the magazines have a reach of 34.2% of the defined class members of 35+ supplement users and an aggregate reach of 37.5% of glucosamine users, where available[2].

Taking this a step further, we used additional GfK MRI reporting (along with Reach and Frequency calculations based upon the Metheringham Formula) to calculate the duplication of readership in the above magazines.

This additional analysis suggests that the overall magazine portion of the notice plan will reach 18.18% of glucosamine users one time, 5.92% of glucosamine users two times, and 2.3% of glucosamine users three or more times. This results in a reach of 26.4% of glucosamine users seeing the settlement notice at least one time.

(Note: Further overlap of duplicated readers across the various media categories will also be calculated and applied on the overall campaign.)

Glucosamine User Research

GfK MRI data tells us that there is a population of 95.6 million supplement users over the age of 35. The subset of actual glucosamine users is estimated at 8.19 million in the past 6 months.

Where data is available specifically for glucosamine users, the reach to this group is larger than the broader group of adults 35+ who are supplement users. In a health-related magazine, like "Prevention", the reach increases by 33.8% (from 6.2% to 8.3%) when targeting glucosamine users. The smallest increase in reach was a more general magazine, "Women's World", where reach to actual glucosamine users increased by 18.6% (from 4.3% to 5.1%) over the more broadly defined adults over 35 who use supplements.

To this point, this notice plan is calculating reach on a much larger group when glucosamine data isn't available. However, data suggests that the reach would be—at a minimum—18% higher. For example, "People" magazine reaches 18% of all adults 35+ who use supplements, but no specific glucosamine data is available. If we assumed that the reach to actual glucosamine users increased by a conservative 18%, the reach increases to over 21% of the class.

---

2    When researching this notice plan, GfK MRI Fall 2012 data was available for glucosamine users (as opposed to only supplement users) with respect to specific publications. These included "Women's World", "First For Women", and "Prevention" magazines.

## Part 2: Direct Mailing To Known Customers

4.84 million unique Rexall glucosamine customers will be notified through retail and loyalty program information.

With a class size of 12 million, a direct mailing to 4.84 million unique customers represents 40.33% of the class. Based on historical data, if 6% are undeliverable, this direct mailing would account for <u>37.91% of the class being reached</u>.

## Part 3: Demographic Website Relevant & Online Portal Ads

The Internet is an extremely powerful tool for reaching potential class members and driving them to the settlement website. Past experience with Internet Notice Plans has been used to design the most effective plan.

**Demographic Website Relevant and Information Ads:** 500 of the top online information websites have been analyzed, along with Affinity Indexes of pertinent demographic sites as they pertain to glucosamine users. Furthermore, marketing plans of over 100 related media campaigns have been studied in an effort to reach potential buyers in our target categories. The sites below are the top properties, which will offer the deepest reach and fastest execution time to inform the public of the class action settlement. Further refinement of targeting adults aged 35 and over will be included. These advertisements will instruct people of the class action and direct them to the settlement website to participate.

| Media Placement | Estimated Targeted Impressions |
|---|---|
| Yahoo RMX | 16,521,450 |
| Google Text | 412,300 |
| Google Content Network | 20,652,050 |
| MSN Network | 6,194,950 |
| **Subtotal** | **43,780,750** |

"Yahoo" (and its partner sites) reach 90.2% of adults over the age of 35 in the United States who use the Internet[3], with a potential target of 107 million. This notice plan will deliver an estimated 16.5 million impressions with a frequency of 1.5 or less to ensure widespread reach. Yahoo Sites are the third most popular on the United States Internet, based upon comScore (September 2012) data.

"Google" (and its partner sites) reach 87.9% of Internet-using adults over 35 in the United States. This notice plan will display an estimated 21 million impressions with a frequency cap of 1.5 to ensure a large percentage of class members are reached. According to comScore (September 2012), Google Sites are the most popular on the United States Internet. This portion of the campaign will also target specific "search terms" for the highest possible targeting of potential class members.

"Microsoft" (and its partner sites) reach an estimated 82.8% of Internet-using adults over 35. This notice plan will deliver 6.1 million impressions to the 35+ adult demographic with a frequency of 1.5 or less. Microsoft Sites are the second most

---

3   Data Source: comScore, September 2012. comScore is a global leader in online business analytics, providing industry standard Internet audience measurement and demographics.

popular on the United States Internet, based upon comScore (September 2012) data.

Based upon the potential reach to the class and the specific number of impressions (with a frequency cap of 1.5), the online advertising portion of the notice plan will reach an estimated 35.5% of  the class (when combined with social media in Part 4 of this notice plan).

**TARGETED DEMOGRAPHIC INTERNET IMPRESSIONS IN REXALL CAMPAIGN: 43,780,750**

## Part 4: Facebook and Social Media

**Facebook's Reach:** Facebook has a total U.S. reach of 170 million consumers online, making it the largest proactive social engine in the country. This media vehicle has proven over the last 24 months to be the most effective way to quickly execute and engage a targeted audience with the ability to drive them to an independent website, such as a class action settlement notice site. The ability for one class member to pass along the information to others utilizing social media can have the potential to triple the reach index. For the online media plan, the most widely used social media sites were researched

Independent data from Quantcast and comScore, two of the industry standards in Affinity and Reach analysis for consumer behaviors, were utilized. Our research indicates a total social media reach of over 140 million unique users per month in the United States.

Below is the strategy to get the proper notifications out to the public with social media via the Facebook platform:

**Facebook Creative Unit:** A banner with clear text informing the public of Rexall Settlement will be displayed with a hyper link directing consumers to the proposed website in which they will have all the necessary information related to the case.

**Facebook Targeting:** Facebook has proprietary banner advertising targeting capabilities. Ads will be segmented to target potential class members in order to more effectively target these consumers with proper notice in a timely manner.

**Facebook Settlement Page:** A dedicated settlement page will be posted and used to educate people on the class action and direct those who wish to participate to the main settlement website.

Based upon the total reach of Facebook, the number of impressions delivered, and the frequency cap of 1.5, the social networking portion of the notice plan will <u>reach an estimated 35.5% of the class</u> (when combined with targeted Internet advertising in part 3 of this notice plan).

TOTAL REACH OF SOCIAL MEDIA: Estimated 140,000,000
**TARGETED SOCIAL MEDIA IMPRESSIONS IN REXALL CAMPAIGN:123,912,300**

## Rexall Glucosamine Notice Summary

Media placements will be adjusted in order to maximize the number of claims filed. A reporting system will allow optimization of placements that are producing the greatest numbers of claims. Summary of the media impressions is segmented as follows:

| Media Category | Type | Targeted Impressions |
| --- | --- | --- |
| Print Magazines | Graphic and Text | 32,837,000 |
| Direct Mail | Graphic and Text | 4,840,000 |
| Online Banners & Ads | Graphic and Text | 43,780,750 |
| Social Media/Facebook | Graphic and Text | 123,912,300 |

**Ad Units and Copy for Notices:** All ad units and the notices that are presented will be submitted for prior approval before the online media program is to begin. All creative will be done in a straightforward manner that is consistent with all applicable laws and is consistent with the wishes of the court and the spirit of the settlement.

**Summary:** The Notice Plan designed for this settlement is based on the tools and techniques that companies use to develop marketing programs for similar products and audiences. Wherever available, data is verified using industry-standard data from GfK MRI and comScore.

This plan will provide for the execution of the notices to go out to the target audience in an efficient and timely manner, and to meet the legal requirements as set forth by the court as well as in the Class Action Settlement agreement. The plan will be specifically designed to target the settlement class and notify a substantial number of them of the settlement.

While duplication has already been calculated for magazine, direct mail, and Internet individually, this notice plan allows for a further 23.5% duplication of audience across the various notice methods. In other words, we expect 23.5% of people who see a notice in a magazine to also receive a direct mail piece.

Taking into account a 23.5% duplication and *without* factoring in spread of the message through social media and word of mouth, we estimate the campaign will <u>reach 76.35% of the defined class</u>.

EXHIBIT D

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation,<br><br>        Defendants. | Case No.:  11 CV 07972<br><br>CLASS ACTION<br><br>**Judge James B. Zagel** |

## NOTICE OF CLASS ACTION SETTLEMENT

**If you have purchased certain joint health dietary supplements containing glucosamine that were manufactured or sold by Rexall Sundown, Inc. or NBTY, Inc. or their affiliates, you could get a payment from a class action settlement.**

(A federal court authorized this notice. This is not a solicitation from a lawyer.)

Your legal rights are affected whether or not you act.  Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM POSTMARKED OR COMPLETED ONLINE BY _____, 2013 | The only way to receive a payment. |
| EXCLUDE YOURSELF FROM THE CLASS BY\_\_\_\_\_, 2013 | Receive no payment. This is the only option that allows you to pursue claims by filing your own lawsuit at your own expense. |
| COMMENT BY _____, 2013 | Write to the Court about why you do, or do not, like the settlement. You must remain in the Settlement Class to comment in support of or in opposition to the settlement. |
| ATTEND A HEARING ON _____, 2013 | Ask to speak to the Court about the fairness of the settlement. |
| DO NOTHING | Receive no payment, and give up rights to sue. |

● These rights and options, and the deadlines to exercise them, are explained in this notice.

● The Court still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved.

## 1. Why should I read this notice?

This notice is to inform you that on _____, 2013, this Court preliminarily approved a settlement of this case (the "Litigation"), brought on behalf of the Settlement Class. This notice describes the settlement. Please read this notice carefully to determine whether you wish to participate in the settlement. Your rights and options— **and the deadlines to exercise them**—are explained in this notice. Your legal rights are affected regardless of whether you act or not.

## 2. What is the Litigation about?

Rexall Sundown, Inc. and NBTY, Inc. (and their affiliated companies) (collectively, "Rexall") manufacture and sell joint health dietary supplements containing the ingredients glucosamine and chondroitin, among other ingredients ("the Glucosamine Products"). Since 2011, class actions have been filed in which the plaintiffs, on behalf of themselves and other purchasers, allege that certain claims made on the labeling of certain Rexall Glucosamine Products are false, deceptive, and misleading. These claims have been brought under various state consumer protection acts. No allegations related to safety or physical injury have been made.

## 3. Why is there a settlement?

The Court has not decided in favor of either side in the case. Rexall denies all allegations of wrongdoing or liability against it and contends that its conduct was lawful. Rexall stands by the Glucosamine Products and their efficacy. Rexall is settling to avoid the expense, inconvenience, and inherent risk of litigation, as well as the concomitant disruption of its business operations. Plaintiffs and their attorneys assert that the settlement is in the best interests of the Settlement Class, because it provides a fair and reasonable recovery now while avoiding the risk, expense, and delay of pursuing the case through trial and any appeals.

## 4. Who is included in the settlement?

The Settlement Class is defined as all consumers who, during particular time periods and in certain U.S. locations, purchased for personal use and not resale or distribution certain joint health dietary supplements (a) sold by Rexall or any of its affiliates under the brand names of Rexall or its affiliates; or, (b) manufactured by Rexall or any of its affiliates but sold under another brand name by a company not affiliated with Rexall (collectively, "Covered Products"). The Covered Products and their geographic locations and time periods of sale covered by this Settlement are identified in Attachment A to this Notice.

Excluded from the Settlement Class are all persons who submit valid requests for exclusion from the Settlement Class (see Question #7).

## 5. What does the settlement provide?

**a.      Monetary Recovery.** If you submit a claim post-marked or submitted online by _____ __, 2013, you may be eligible to receive a check. If you submit a claim with Adequate Proof of Purchase of a Covered Product, you shall be entitled to

receive $5.00 per bottle of Covered Product purchased, up to a maximum of ten (10) bottles of Covered Products purchased per household. "Adequate Proof of Purchase" shall mean (i) cash register receipts; (ii) an intact box or bottle for a Covered product that clearly displays a readable UPC code and readable lot number; or (iii) similar documentation that identifies the Covered Product and date and location of purchase. If you <u>cannot</u> provide Adequate Proof of Purchase, but submit a claim confirming certain facts regarding your purchase(s) of Covered Products, you may be entitled to receive $3.00 per bottle of Covered Product purchased, up to a maximum of four (4) bottles of Covered Products purchased per household.

   b.     **Minimum Total Payment.**  If the total dollar value of valid claims submitted is less than $2 million, then the payment to each Settlement Class member who submitted a valid claim with Adequate Proof of Purchase shall be increased *pro rata* up to a maximum of triple what he or she was otherwise entitled to until the total payments reach $2 million.  If, after increasing the payment for valid claims with Adequate Proof of Purchase, the total payments is still less than $2 million, then the payment to each Settlement Class member who submitted a valid claim without Adequate Proof of Purchase shall be increased *pro rata* up to a maximum of double what what he or she was otherwise entitled to until the total payments reach $2 million, with any residual amounts up to $2 million paid to the Orthopaedic Research and Education Foundation (OREF), subject to Court approval.

   c.     **Notice and Administration Costs.**  A third-party, Heffler Claims Group , shall serve as the settlement administrator to administer the settlement (the "Settlement Administrator").  Rexall shall pay for all notice and administration costs.  This payment is separate and apart from the $2 million minimum payment for claims and charitable donations.

   d.     **Labeling Changes.**  Rexall has also agreed to make certain modifications to the labeling of Covered Products, which are described in Paragraph 7 and Exhibit B to the Settlement Agreement.

## 6.   Who represents the Settlement Class?

   a.     **Class Representatives.**  For purposes of the settlement, the Court has appointed the following plaintiffs named in the Litigation to serve as the class representatives:  Richard Jennings, Francisco Padilla, Cecilia Linares, Abel Gonzalez, Nick Pearson, and Augustino Blanco.  Settlement Class Counsel will request incentive awards up to the amount of $5,000 for each class representative, to be paid separately by Rexall, without diminishing or eroding the payments available to Settlement Class members.

**b. Settlement Class Counsel.** The Court has appointed the following attorneys and law firms to represent the Settlement Class as legal counsel: Jeffrey I. Carton and Peter N. Freiberg, DENLEA & CARTON, LLP, One North Broadway, Suite 509, White Plains, New York 10601; Elaine A. Ryan, BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C., 2325 E. Camelback Road, Suite 300, Phoenix, Arizona 85016; and Stewart M. Weltman, STEWART M. WELTMAN, LLC (Of Counsel Levin Fishbein Sedran & Berman), 53 W. Jackson Suite 364, Chicago, Illinois 60604. From the inception of the litigation in 2011 to the present, Settlement Class Counsel have not received any payment for their services in prosecuting the case or obtaining the settlement, nor have they been reimbursed for any out-of-pocket expenses they have incurred. When they ask the Court to approve the settlement, Settlement Class Counsel will also make motions to the Court for awards of attorneys' fees and reimbursement of expenses, in a total amount not to exceed $ 4.5 million. Rexall has agreed not to oppose these attorneys' fee requests. If the Court approves the attorneys' fee applications, they will be paid separately by Rexall, without diminishing or eroding the payments available to Settlement Class members. The Settlement Class members will not have to pay anything toward the fees or expenses of Settlement Class Counsel. Settlement Class Counsel will seek final approval of the settlement on behalf of all Settlement Class members.

## 7. How can I exclude myself from the Settlement Class?

To exclude yourself from the Settlement Class, you must send a letter saying that you want to be excluded from the class in the Glucosamine Products Litigation. Your written exclusion request must include your name, address, telephone number, and signature, and a statement to the effect that: "I/We hereby request to be excluded from the proposed Settlement Class in the Glucosamine Products Litigation." Your exclusion request must be post-marked and send to the following address no later than _____, 2013:

> Glucosamine Settlement
> c/o Heffler Claims Group
> P.O. Box 170
> Philadelphia, PA 19105-0170

If you elect to opt-out, you will (i) <u>not</u> be able to submit a claim to receive any monetary payment, (ii) <u>not</u> be bound by any further orders or judgments in this case, and (iii) remain able to pursue claims alleged in the Litigation against Rexall by filing your own lawsuit at your own expense. If you proceed on an individual basis, you may receive nothing at all, or more, or less, of a benefit than you would otherwise receive under this settlement.

## 8. How can I tell the Court what I think about the settlement?

If you do not exclude yourself from the Settlement Class, you can comment in support of or in opposition to the settlement. Your objection or comment must be submitted in writing to all four (4) of the following addresses below and must be post-marked by _____, 2013:

Court:

Clerk of Court, United States District Court, Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604

Settlement Class Counsel:

Peter N. Freiberg, DENLEA & CARTON, LLP, One North Broadway, Suite 509, White Plains, New York 10601

Stewart M. Weltman, STEWART M. WELTMAN, LLC (Of Counsel Levin Fishbein Sedran & Berman), 53 W. Jackson Suite 364, Chicago, Illinois 60604

Rexall's Counsel:

Kara L. McCall, SIDLEY AUSTIN LLP, One S. Dearborn Street, Chicago, Illinois 60603

The objection or comment must include the case name and number *Pearson, et al. v. NBTY, Inc., et al.*, No. 1:11-cv-07972, and also include: (a) your full name, address, and telephone number; (b) a signed declaration that states that you are a member of the Settlement Class and that identifies the Covered Product(s) purchased as well as the approximate date and location of the purchase(s); (c) the specific grounds for the objection; (d) all documents, writings, or testimony of witnesses that you desire the Court to consider; and (e) notice of your intention to appear at the Fairness Hearing, if any, that lists the name, address, and telephone number of the attorney, if any, who will appear.

The Court will consider all comments from Settlement Class members. If you intend to appear at the Fairness Hearing through counsel, your comment must also state the identity of all attorneys representing you who will appear at the Fairness Hearing. To appeal from any provision of the order approving the Settlement as fair, reasonable, and adequate, the award of incentive payments, or the award of reasonable attorneys' fees and expenses paid by Rexall and awarded to Settlement Class Counsel, you must appear in person or through your counsel, or as otherwise may be permitted by the

Court at the Fairness Hearing. (You may, however, ask the Court in your objection to excuse such appearance prior to the Fairness Hearing.)

## 9. What is the effect of final settlement approval?

If the Court grants final approval to the settlement, all members of the Settlement Class will release all claims or causes of action arising from or relating to (i) claims that were or could have been asserted in the Litigation; (ii) the Covered Products, including their efficacy or performance and any and all advertising, labeling, packaging, marketing, claims, or representations of any type whatsoever regarding the Covered Products; and (iii) all labels or packaging for the Covered Products that conform to the terms of the Settlement. The Released Claims do not include claims for personal injury. All members of the Settlement Class who do not exclude themselves from the Settlement Class will release any claims they may have against Rexall or other persons and entities that are described in and covered by the release. Please refer to Paragraphs 10 and 11 of the Settlement Agreement for a full description of the claims and persons that will be released upon final approval of the settlement. You can obtain a copy of the Settlement Agreement (i) from the Clerk of the Court, (ii) online at www.GlucosamineSettlement.com, (iii) by writing to the Settlement Administrator at Glucosamine Settlement, c/o Heffler Claims Group, P.O. Box 170, Philadelphia, PA 19105-0170, or (iv) calling the toll-free number ((888)972-6583). If you do not wish to be a Settlement Class member, you must exclude yourself from the Settlement Class (see Question No. 7, above).

**If the settlement is not approved, the case will proceed as if no settlement had been attempted. There can be no assurance that if the settlement is not approved and litigation resumes, the Settlement Class will recover more than is provided for under the settlement, or will recover anything.**

## 10. When and where will the Court hold a hearing on the fairness of the settlement?

A Fairness Hearing has been set for _____, 2013, at ___ a.m./p.m., before Judge Zagel in the Northern District of Illinois. At the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed settlement, including the amount requested by Settlement Class Counsel for attorneys' fees and expenses, and incentive awards for the Plaintiffs. You do not need to attend the Fairness Hearing to remain a class member or obtain a settlement payment.

## 11. How do I receive my share of the settlement?

If you do not exclude yourself from the Settlement Class, and would like to receive money, you must submit a timely and valid claim form as set forth in Question # 5 above. Claim forms must be submitted online or post-marked by _____ __, 2013. You can download a copy of the appropriate claim form online at www.GlucosamineSettlement.com, or by writing to the Settlement Administrator at Glucosamine Settlement, c/o Heffler Claims Group, P.O. Box 170, Philadelphia, PA 19105-0170, or by calling the toll-free number ((888)972-6583).

### 12. What happens if I do nothing at all?

If you do nothing, you will receive no payment from the settlement. You will still be part of the Settlement Class, however, and, subject to the release described in Paragraphs 11 and 12 of the Settlement Agreement. Please refer to Paragraphs 11 and 12 of the Settlement Agreement for a full description of the claims and persons that will be released upon final approval of the settlement.

### 13. Where do I get additional information?

This notice provides only a summary of the matters relating to the settlement. For more detailed information, you may wish to review the Settlement Agreement dated _____. You can view the Settlement Agreement and get more information at www.GlucosamineSettlement.com. You can also get more information by writing to Settlement Class Counsel at the addresses listed in Question # 8 or calling toll-free ((888)972-5583). The Settlement Agreement and all other pleadings and papers filed in connection with the Settlement are available for inspection and copying during regular business hours at the office of the Clerk of the United States District Court, Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

**PLEASE DO NOT CONTACT THE COURT OR REXALL WITH QUESTIONS ABOUT THE SETTLEMENT.**

EXHIBIT E

### If You Purchased Certain Joint Health Dietary Supplements, You May Be Part of a Class Action Settlement

If you purchased certain joint health dietary supplements containing glucosamine that were manufactured or sold by Rexall Sundown, Inc. or NBTY, Inc. or their affiliates ("Rexall"), during certain periods of time and in certain geographic locations, you may be part of a class action settlement. As part of the settlement, you may be able to file a claim for cash. <u>This notice is only a summary</u>. For more complete information, and a list of all products covered by this settlement, please read the full notice by visiting the website www.GlucosamineSettlement.com, by writing to the address at the bottom of the notice, or by calling toll-free (888)972-6583.

### What Are My Legal Rights?

- **If you wish to remain a member of the settlement class**, you do not have to do anything. To receive money, you must file a claim. If the Court approves the proposed settlement, you will be bound by all of the Court's orders. This means you will not be able to make any claims against Rexall that are covered by the settlement.

- **If you wish to submit a claim, visit** www.GlucosamineSettlement.com., and follow the instructions, or call toll-free (888) 972-6583 to obtain a claim form. All claims must be submitted or post-marked by _____, 2013.

- **If you do not wish to be a member of the settlement class**, you must submit a letter to the Settlement Administrator at the address below postmarked by _____, 2013. If you request to be excluded from the settlement class you cannot submit a claim form.

Glucosamine Settlement c/o Heffler Claims Group
P.O. Box 170
Philadelphia, PA 19105-0170
(888) 972-6583

EXHIBIT F

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No.: 11 CV 07972 |
| Plaintiffs, | CLASS ACTION |
| v. | **Judge James B. Zagel** |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation, | |
| Defendants. | |

## PRELIMINARY APPROVAL ORDER

This matter came before the Court on Plaintiffs' motion for preliminary approval of the proposed class action settlement with Rexall Sundown, Inc., NBTY, Inc., and their affiliated parties (collectively "Rexall"), set forth in the Settlement Agreement dated _____, 2013 between Plaintiffs and Rexall Sundown, Inc. and NBTY, Inc. ("Settlement Agreement"). The Settlement Agreement, together with the exhibits attached thereto, sets forth the terms and conditions for the proposed settlement of the case, and provides for the dismissal of Plaintiffs' individual and class claims against Rexall with prejudice upon the Effective Final Judgment Date.

The Court having duly considered the papers and arguments of counsel hereby finds and orders as follows:

1.    **Defined Terms.**  Unless defined herein, all defined terms in this Order shall have the respective meanings as the same terms in the Settlement Agreement.

2.    **Settlement Agreement.**  Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Agreement, is preliminarily approved for purposes of notice being issued.  Movants have established that, for purposes of preliminary approval, this settlement appears to be  a fair, reasonable, and adequate settlement of the Litigation and is in the best interests of the Class in light of the factual, legal, practical, and procedural considerations raised by the Litigation.

3.    **Conditional Certification of the Settlement Class.**  <u>For settlement purposes only</u>, the Court conditionally certifies the proposed Settlement Class, consisting of all consumers who, during particular time periods and in certain U.S. locations, purchased for personal use and not resale or distribution certain joint health dietary supplements (a) sold by Rexall or any of its affiliates under the brand names of Rexall or its affiliates; or, (b) manufactured by Rexall or any of its affiliates but sold under another brand name by a company not affiliated with Rexall (collectively, "Covered Products").  The Covered Products and their geographic areas and time periods of sale during which they are deemed Covered Products and therefore covered by this Settlement are identified in Exhibit A to the Settlement Agreement.  The Settlement Class does not include persons who submit valid requests for exclusion from the Settlement Class.

4.    **Designation of the Class Representatives.**  <u>For settlement purposes only</u>, the Court hereby preliminarily appoints Plaintiffs Richard Jennings, Francisco Padilla, Cecilia

2

Linares, Abel Gonzalez, Nick Pearson, and Augustina Blanco as representatives of the Settlement Class.

5. **Designation of Class Counsel.** For settlement purposes only, the Court hereby preliminarily designates Jeffrey I. Carton and Peter N. Freiberg (Denlea & Carton LLP); Elaine A. Ryan (Bonnett, Fairbourn, Friedman & Balint, P.C.); and Stewart M. Weltman (Stewart M. Weltman, LLC, Of Counsel Levin Fishbein Sedran & Berman) as Settlement Class Counsel.

6. **Notice Plan.** The Court finds that the notice plan specified in and attached to the Settlement Agreement (the "Notice Plan") is the best notice practicable under the circumstances, that it satisfies the requirements of due process and Rule 23(e)(1) of the Federal Rules of Civil Procedure, and that it fairly apprises the Settlement Class members of the terms of the Settlement and the options available to them in connection with this proceeding. The Notice Plan is approved and the Parties are to issue notice of the proposed settlement to the Class in accordance with the terms of the Settlement Agreement and the Notice Plan. Costs of issuing notice shall be paid in accordance with the terms of the Settlement Agreement. Heffler Claims Group is designated as the Settlement Administrator, as defined in the Settlement Agreement, and the Parties are to ensure that the Settlement Administrator performs the functions specified in the Settlement Agreement.

7. **Fairness Hearing.** On _____, 2013, at _____ a.m./p.m. [no earlier than 60 days after entrance of this Preliminary Approval Order, and no earlier than 100 days after the motion for preliminary approval is filed], this Court will hold a Fairness Hearing on the fairness, adequacy, and reasonableness of the Settlement Agreement and proposed settlement, and determine whether (a) final approval of the settlement should be granted; (b) Settlement Class

3

Counsel's applications for attorneys' fees and expenses should be granted, and in what amount; and (c) the request for incentive awards for the Plaintiffs should be granted, and in what amount. The Court will also hear from any objectors during the Fairness Hearing.

      a.      No later than twenty-one (21) calendar days before the Fairness Hearing, Plaintiffs must file their papers in support of final settlement approval and in response to any objections filed to date.

      b.      Rexall may (but is not required to) file papers in support of final settlement approval, so long as it does so no later than twenty-one (21) calendar days before the Fairness Hearing.

      c.      Plaintiffs and Rexall may file supplemental briefing in response to any objections no later than seven (7) calendar days before the Fairness Hearing.

      d.      Settlement Class Counsel must file their applications for attorneys' fees, expenses, and incentive awards for the Plaintiffs no later than twenty-one (21) calendar days before the Fairness Hearing.

      8.      **Exclusions.** All persons who meet the definition of the Settlement Class and who wish to exclude themselves from the Settlement Class and the settlement must submit an exclusion request post-marked by _____ \_\_, 2013.

      a.      The request for exclusion must be in writing and include the name, address, and phone number of the Settlement Class member(s) seeking exclusion. Each request must also contain a signed statement that: "I/We hereby request to be excluded from the proposed Settlement Class in the Glucosamine Products Litigation."

4

b.     The request must be mailed to the Settlement Administrator at the address provided in the notice, and post-marked no later than _____ ___, 2013 [45 days after notice is published].

c.     A request for exclusion that does not include all of the foregoing information, that is sent to an address other than the one designated in the notice, or that is not post-marked within the time specified, shall be invalid and the person(s) serving such a request shall be deemed member(s) of the Settlement Class, and shall be bound as class member(s) by the Settlement.

d.     The Settlement Administrator must promptly forward copies of all requests for exclusion to Settlement Class Counsel and counsel for Rexall.

e.     Any exclusion must be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims, brokers, claims filing services, claims consultants, or third-party claims organizations; except that such exclusion may be submitted by a Settlement Class Member's attorney on an individual basis.

9.     **Comments and Objections.** Any member of the Settlement Class may comment in support of or in opposition to the Settlement; *provided, however,* that all comments and objections must be filed with the Court and mailed to both Settlement Class Counsel and Rexall's counsel prior to the Fairness Hearing in accordance with the notices.

a.     A Settlement Class member who objects to the settlement need not appear at the Fairness Hearing for his or her comment to be considered by the Court; however, all

5

arguments, papers, briefs, and any evidence that any objector would like the Court to consider, including the names and anticipated testimony of any witnesses ("Objections"), must be filed with the Court, with a copy mailed to Settlement Class Counsel and Rexall's counsel, such that it is post-marked by _____, 2013 [45 days after notice is published].

      b.     All Objections shall include (i) the caption *Pearson, et al. v. NBTY, Inc., et al.*, No. 1:11-cv-07972; (ii) the Settlement Class member's full name, address, and telephone number; (iii) a signed statement that he or she is a member of the Settlement Class, including evidence of Adequate Proof of Purchase or, if none is available, a declaration under oath that the consumer has no Adequate Proof of Purchase and that he or she purchased a Covered Product (including an identification of the particular product purchased and the date and location of the purchase(s)); (iv) the specific grounds for the objection; (v) identification and description of all documents, writings, or other evidence the Settlement Class member desires the Court to consider, including but not limited to the names and expected testimony of any witnesses; and (vi) a notice of intention to appear (if any), that lists the name, address, and telephone number of the attorney, if any, who will appear.

      c.     Any Settlement Class member who fails to object in the manner prescribed in this Paragraph shall be deemed to have waived his or her objections and forever be barred from making any such objections in this action or in any other action or proceeding. To appeal from any provision of an order approving the settlement as fair, reasonable, and adequate; any incentive awards to the named Plaintiffs; or any award of attorneys' fees and expenses to Settlement Class Counsel, the Settlement Class member must appear in person, or through his or her counsel, or seek leave of Court excusing such appearance prior to the Fairness Hearing, or as otherwise may be permitted by the Court at the Fairness Hearing.

d.    Any Settlement Class Members who object shall make themselves available to be deposed by Class Counsel and counsel for Rexall in the county of the objector's residence within 21 days of service of his or her timely written objection.

e.    Any objections by a Settlement Class Member must be exercised individually by a Settlement Class Member, not as or on behalf of a group, class, or subclass, not by any appointees, assignees, claims, brokers, claims filing services, claims consultants, or third-party claims organizations; except that such objections or requests may be submitted by a Settlement Class Member's attorney on an individual basis.

10.    **Declaration of Compliance.** Defendants shall file with the Court a declaration of compliance with the notice requirements, including the CAFA notice requirements, after Class Notice has been given following the terms of the Agreement and this Order.

11.    **Claim Deadline.** All Claim Forms must be postmarked on or before the Claim Deadline set by the Court. The Claim Deadline is _____.

12.    **Preliminary Injunction.**  In further aid of the Court's jurisdiction to implement and enforce the Settlement, Plaintiffs and members of the Settlement Class are preliminarily enjoined and barred from commencing or prosecuting any action or proceeding asserting any of the Released Claims either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located.  Any person or entity who knowingly violates such injunction shall pay the costs and attorneys' fees incurred by Rexall or any other Released Party as a result of such violation.

7

13.    **No Admissions.** The Settlement Agreement and the proceedings taken and statements made pursuant to the Settlement Agreement or papers filed seeking approval of the Settlement Agreement, and this Order, are not and shall not in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or an admission of any kind by any of the Parties of (i) the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in the Litigation, or any other litigation, court of law or equity, proceeding, arbitration, tribunal, investigation, government action, administrative proceeding, or other forum, or (ii) any liability, responsibility, fault, wrongdoing, or otherwise of Rexall. Rexall has denied and continues to deny the claims asserted by Plaintiffs. Nothing contained herein shall be construed to prevent a party from offering the Settlement Agreement into evidence for the purposes of enforcement of the Settlement Agreement.

14.    **Vacation of Certification.** The preliminary certification of the Settlement Class shall be binding only with respect to the settlement of the Litigation. In the event that the Settlement Agreement is terminated pursuant to its terms or is not approved in all material respects by the Court, or such approval is reversed, vacated, or modified in any material respect by this or any other Court, the certification of the Settlement Class shall be deemed vacated, the Litigation shall proceed as if the Settlement Class had never been certified, and no reference to the Settlement Class, the Settlement Agreement, or any documents, communications, or negotiations related in any way thereto shall be made for any purpose in this Litigation or any other action or proceeding.

15.    **Second Amended Class Action Complaint.** In connection with and solely in furtherance of the Settlement, a Second Amended Class Action complaint was filed on behalf of

8

a nationwide class of all persons in the United States who purchased the Covered Products. The filing of this Second Amended Class Action Complaint was purely for settlement purposes. If the Settlement is terminated for any reason, the Second Amended Class Action Complaint will be withdrawn.

16.     **Schedule.** Based on the foregoing, the Court has established the following schedules and deadlines in this matter:

| Date | Deadline/Event |
|------|----------------|
|      | Deadline for Settlement Administrator to mail Class Notice and post settlement information to website |
|      | Deadline for filing Application(s) for Attorneys' Fees; Deadline for filing memoranda in support of final approval |
|      | Deadline for filing of statements by objectors; Deadline for filing notice of intent to appear at final approval hearing; Deadline for class members to file requests for exclusion |
|      | Deadline for filing Responses to Objections or Motions to Intervene |
|      | Final Approval Hearing |
|      | Claim Deadline |

**IT IS SO ORDERED.**

Dated: _____, 2013

_____
JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT JUDGE

EXHIBIT G

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No.:   11 CV 07972 |
|  | CLASS ACTION |
| Plaintiffs, | Judge James B. Zagel |
| v. |  |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation; |  |
| Defendants. |  |

## FINAL JUDGMENT AND ORDER

The matter came before the Court on Plaintiffs' motion for final approval of the proposed

class action settlement with Rexall Sundown, Inc. and NBTY, Inc. and their affiliated parties

("Rexall"), set forth in the Settlement Agreement dated _____, 2013 between Plaintiffs and

Rexall Sundown, Inc., and NBTY, Inc. ("Settlement Agreement"), and preliminarily approved in

this Court's order of [date] [Dkt. No. ___]. The Settlement Agreement, together with the

exhibits attached thereto, sets forth the terms and conditions for the proposed settlement of the

case, and provides for the dismissal of Plaintiffs' individual and class claims against Rexall with

prejudice upon the Effective Final Judgment Date.

The Court having held a Fairness Hearing on the fairness, adequacy, and reasonableness of the settlement and considered all of the written submissions and oral arguments made in connection with final settlement approval, hereby finds and orders as follows:

1.     Unless defined herein, all defined terms in this Final Judgment and Order shall have the respective meanings as the same terms in the Settlement Agreement.

2.     Notice to the Settlement Class has been provided in accordance with the Court's Preliminary Approval Order. The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement.

3.     The settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class. The Settlement Agreement was arrived at through good-faith bargaining at arm's-length, without collusion, conducted by counsel with substantial experience in prosecuting and resolving consumer class actions. The settlement consideration provided under the Settlement Agreement constitutes fair value given in exchange for the release of the Released Claims against the Released Parties. The consideration to be paid to members of the Settlement Class is reasonable, considering the facts and circumstances of the numerous types of claims and affirmative defenses asserted in the Litigation, and in light of the complexity, expense, and duration of litigation and the risks involved in establishing liability and damages and in maintaining the class action through trial and appeal.

4.     The persons listed on Exhibit 1 hereto are found to have validly excluded themselves from the Settlement Class and the settlement in accordance with the provisions of the Preliminary Approval Order.

5.     All Settlement Class members who failed to submit an objection to the settlement in accordance with the deadline and procedure set forth in the Preliminary Approval Order are deemed to have waived and are forever foreclosed from raising the objection.

6.     The Parties, the Released Parties, and each Settlement Class member have irrevocably submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute relating in any way to, or arising out of, the Released Claims, the Settlement Agreement, or this Final Judgment and Order.

7.     The Parties are directed to consummate the Settlement Agreement in accordance with its terms. The Parties and any and all Settlement Class members who did not timely exclude themselves from the Settlement Class are bound by the terms and conditions of the Settlement Agreement.

8.     Under Rule 23(b)(3), the Court makes final its previous conditional certification of the Settlement Class, defined as all consumers who, during particular time periods and in certain U.S. locations, purchased for personal use and not resale or distribution certain joint health dietary supplements (a) sold by Rexall or any of its affiliates under the brand names of Rexall or its affiliates; or, (b) manufactured by Rexall or any of its affiliates but sold under another brand name by a company not affiliated with Rexall (collectively, "Covered Products"). The Covered Products and their geographic areas and time periods of sale covered by this Settlement are identified in Exhibit A to the Settlement Agreement. The Settlement Class

3

does not include persons who submitted valid requests for exclusion from the Settlement Class, as listed in Exhibit 1 to this Order.

9.      The requirements of Rule 23(a) and (b)(3) have been satisfied for purposes of settlement. The Settlement Class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the Settlement Class; the claims of the Plaintiffs are typical of the claims of the Settlement Class; the Plaintiffs will fairly and adequately protect the interests of the Settlement Class; and the questions of law or fact common to Settlement Class members predominate over any questions affecting only individual members.

10.      The preliminary appointment of Jeffrey I. Carton and Peter N. Freiberg (Denlea & Carton LLP); Elaine A. Ryan (Bonnett, Fairbourn, Friedman & Balint, P.C.); and Stewart M. Weltman (Stewart M. Weltman, LLC, Of Counsel Levin Fishbein Sedran & Berman) as Settlement Class Counsel is hereby made final. Settlement Class Counsel are experienced in class litigation, including litigation of similar claims in other cases, and have fairly and adequately protected the interests of the Settlement Class.

11.      Subject to the terms and conditions of the Settlement Agreement, this Court hereby dismisses the Litigation without prejudice and without costs, except as provided in the Settlement Agreement. This dismissal without prejudice shall not allow the Parties or any members of the Class to litigate or otherwise reopen issues resolved by this judgment, or included within the Released Claims, but is "without prejudice" so as to allow the Court to supervise the implementation and administration of the Settlement.

12.      By operation of this Final Judgment and Order, the Releasing Parties release and forever discharge the Released Parties from the Released Claims, and the Released Parties

release and forever discharge Plaintiffs and Settlement Class Counsel, as set forth in Paragraphs 11, 12, and 14 of the Settlement Agreement.

      a.    As used in this Order, the Releasing Parties are Plaintiffs and each Settlement Class member (except a person who has obtained proper and timely exclusion from the Settlement Class), on their own behalf and on behalf of their spouses and former spouses, as well as the present, former, and future respective administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest, and successors of any of the foregoing.

      b.    As used in this Order, the Released Parties are (i) NBTY, Inc. and Rexall Sundown, Inc.; (ii) Any person or entity in the chain of distribution of the Covered Products, including but not limited to raw material suppliers, distributors, and retailers (including but not limited to Costco, Target, and CVS Pharmacy, Inc., to the extent that they are in the chain of distribution of the Covered Products); (iii) Entities and persons related to (i) and (ii), including but not limited to their present, former, and future direct and indirect parent companies, affiliates, agents, divisions, predecessors-in-interest, subsidiaries, successors, and any entities that manufactured or sold the Covered Products from which Rexall acquired assets or contracts; and (iv) Entities and persons related to (i), (ii), and (iii), including but not limited to their respective present, former, and future officers, directors, employees, independent contractors, shareholders, agents, assigns, and attorneys.

      c.    The Released Claims include any and all rights, duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that, as of the date that this Order is entered, arise out of or relate in any way to:

(i) allegations, claims, or contentions that were or could have been asserted in the Litigation;

(ii) the Covered Products, including, but not limited to, their efficacy or performance, and any

and all advertising, labeling, packaging, marketing, claims, or representations of any type

whatsoever made in connection with the Covered Products; or (iii) all labels or packaging for the

Covered Products that conform to the terms of the Settlement. The Released Claims do not

include any claims for personal injury or safety-related concerns.

13.     The Release includes claims that are currently unknown to the Releasing Parties.

The Release in this Order and the Settlement Agreement fully, finally, and forever discharges all

Released Claims, whether now asserted or unasserted, known or unknown, suspected or

unsuspected, which now exist, or heretofore existed or may hereafter exist, which if known,

might have affected their decision to enter into this release. Each Releasing Party shall be

deemed to waive any and all provisions, rights, and benefits conferred by any law of the United

States, any state or territory of the United States, or any state or territory of any other country, or

principle of common law or equity, which governs or limits a person's release of unknown

claims. The Releasing Parties understand and acknowledge that they may hereafter discover

facts in addition to or different from those that are currently known or believed to be true with

respect to the subject matter of this release, but have agreed that they have taken that possibility

into account in reaching this Settlement Agreement and that, notwithstanding the discovery or

existence of any such additional or different facts, as to which the Releasing Parties expressly

assume the risk, they fully, finally, and forever settle and release any and all Released Claims,

known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may

hereafter exist, and without regard to the subsequent discovery or existence of such additional or

different facts. The foregoing waiver includes, without limitation, an express waiver, to the

fullest extent not prohibited by law, by Plaintiffs, the Settlement Class members, and all other

Releasing Parties of any and all rights under California Civil Code Section 1542, which

provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR.**

In addition, Plaintiffs, Settlement Class members, and all other Releasing Parties also

expressly waive any and all provisions, rights, and benefits conferred by any law or principle of

common law or equity, that are similar, comparable, or equivalent, in whole or in part, to

California Civil Code Section 1542.

14. Rexall may elect, in its sole and unilateral discretion, to continue the label

changes identified in Paragraph 8 and Exhibit B of the Settlement Agreement beyond the thirty-

month required period. For as long as a product identified in Exhibit A continues to be sold and

complies with the terms of Pargraph 8 beyond the thirty-month required period, no Releasing

Party who puchases such product after the thirty-month period may sue any Released Party based

on any claim that was or could have been asserted in the Litigation.

15. Except as to the rights and obligations provided for under the Agreement, by

operation of this Order, NBTY, Inc. and Rexall Sundown, Inc. hereby release and forever

discharge Plaintiffs, the Settlement Class, and Settlement Class Counsel from any and all rights,

duties, obligations, claims, actions, causes of action, or liabilities, whether arising under local,

state, or federal law, whether by statute, contract, common law, or equity, whether known or

unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or

contingent, liquidated or unliquidated, which the Released Parties may now have, own or hold or

which the Released Parties at any time may have, own, or hold, against Plaintiffs, the Settlement Class, or Settlement Class Counsel by reason of any matter, cause, or thing whatsoever occurred, done, omitted, or suffered from the beginning of time to the date of the Settlement Agreement, related to the subject matter of the Litigation.

16.    Plaintiffs, Settlement Class members, and the Releasing Parties are permanently enjoined and barred from commencing or prosecuting any action or proceeding asserting any of the Released Claims, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency, or other authority or forum wherever located. Any person or entity who knowingly violates such injunction shall pay the attorneys' fees and costs incurred by the Rexall or any other Released Party as a result of such violation.

17.    The Court makes the following awards to Plaintiffs and Settlement Class Counsel:

a.    $_____ as attorneys' fees and costs to Denlea & Carton, LLP;

b.    $_____ as attorneys' fees and costs to Bonnett, Fairbourn, Friedman & Balint, P.C.; Levin Fishbein Sedran & Berman; Stewart M. Weltman, LLC (Of Counsel Levin Fishbein Sedran & Berman); and Siprut PC; jointly, and

c.    $_____ as an incentive award to each Class Representative.

18.    Without affecting the finality of this Final Judgment and Order, the Court retains exclusive jurisdiction over this action, the Parties, and all Settlement Class members to determine all matters relating in any way to the Final Judgment and Order, the Preliminary Approval Order, or the Settlement Agreement, including but not limited to the administration, implementation, interpretation, or enforcement of such orders or Agreement.

19.     The Settlement Agreement and the proceedings taken and statements made

pursuant to the Settlement Agreement or papers filed seeking approval of the Settlement

Agreement, and this Order, are not and shall not in any event be construed as, offered in

evidence as, received in evidence as, and/or deemed to be evidence of a presumption,

concession, or an admission of any kind by any of the Parties of (a) the truth of any fact alleged

or the validity of any claim or defense that has been, could have been, or in the future might be

asserted in the Litigation, or any other  litigation, court of law or equity, proceeding, arbitration,

tribunal, investigation, government action, administrative proceeding or other forum, or (b) any

liability, responsibility, fault, wrongdoing or otherwise of Rexall.  Rexall has denied and

continues to deny the claims asserted by Plaintiffs.  Nothing contained herein shall be construed

to prevent a party from offering the Settlement Agreement into evidence for the purposes of

enforcement of the Settlement Agreement.The certification of the Settlement Class shall be

binding only with respect to the settlement of the Litigation.  In the event that the Court's

approval of the settlement is reversed, vacated, or modified in any material respect by this or any

other Court, the certification of the Settlement Class shall be deemed vacated, the Litigation shall

proceed as if the Settlement Class had never been certified, and no reference to the Settlement

Class, the Settlement Agreement, or any documents, communications, or negotiations related in

any way thereto shall be made for any purpose in this Litigation, the Underlying Actions, or any

other action or proceeding.

20.     Without further order of the Court, the Parties may agree to reasonable extensions

of time to carry out any of the provisions of the Settlement Agreement.

21.     Neither Settlement Class Counsel's applications for incentive awards, attorneys'

fees, and reimbursement of expenses, nor any order or proceedings relating to such applications,

nor any appeal from any order relating thereto or reversal or modification thereof, shall in any way affect or delay the finality of this Judgment, and all such matters shall be considered separate from this Final Judgment and Order.

22.     Based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Order notwithstanding the Court's retention of jurisdiction to oversee implementation and enforcement of the Settlement Agreement, the Court directs the Clerk to enter final judgment.

**IT IS SO ORDERED.**

Dated: _____, 2013

        _____
        JUDGE JAMES B. ZAGEL
        UNITED STATES DISTRICT JUDGE

10

5148055v.2