UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated,<br><br>         Plaintiffs,<br><br>v.<br><br>NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation<br><br>         Defendants.<br><br>THEODORE H. FRANK,<br><br>         Objector. | Case No. 11-CV-07972<br><br><u>CLASS ACTION</u><br><br>Hon. James B. Zagel |

**DECLARATION OF THEODORE H. FRANK
IN SUPPORT OF OBJECTION**

I, Theodore H. Frank, declare as follows:

    1.    I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

    2.    My home address until October is 11307 Bulova Lane, Fairfax, Virginia 22030. My business address is 1718 M Street NW, No. 236, Washington, DC 20036. My telephone number is (703) 203-3848. My email address is tedfrank@gmail.com.

**I Am A Member Of The Settlement Class.**

3. I am a member of the settlement class in this case. On July 28, 2013, I filed a claim (using my office address), with a claim number of 23964. When I filed the claim, I provided a stated date of September 2010 based on the best of my recollection; a review of my records to refresh my recollection suggests that I misremembered, and I probably did not purchase glucosamine until 2011.

4. I received a notice from the claims administrator. A true and correct copy of that notice is attached as Exhibit 1.

5. On information and belief, the claims administrator got my name and address from either Costco or Harris Teeter Supermarket's records of my purchasing a glucosamine product within the class definition, as described in Exhibit C of the Settlement Agreement. Like most sane people, I did not save a two-year-old receipt for a purchase of pills, nor empty pill bottles, and thus do not have what is called an "Adequate Proof of Purchase."

6. To the best of my recollection, I started using glucosamine regularly in 2011 on my doctor's recommendation after I started realizing joint pain from regular use of a treadmill desk that I purchased that year. I take 1500 mg of glucosamine about four to seven times a week.

7. My first purchase would have been a small bottle of glucosamine from Harris Teeter in the spring or summer of 2011. After that, I would buy whichever brand Costco offered at the lowest price available.

8. On information and belief, I purchased the Covered Product Kirkland-brand Extra Strength Glucosamine HCl 1500 mg with MSM 1500 mg one or two times from the Arlington, Virginia, outpost of Costco during the class period in 2011 and/or 2012. I believe this because I buy the vast majority of my supplements from Costco or Amazon.com; because a search of my Amazon.com records shows that I have not purchased glucosamine from them; because Costco sells Kirkland-branded products; because I frequently buy products with the Kirkland brand because of an irrational nostalgia of my year as a summer associate with a similarly-named but unrelated law firm in Chicago; and because pictures of the bottle look familiar in a way that other class products

and other brands do not. But it is also possible that my class membership is based on a smaller bottle of Nature's Bounty or another Covered Product purchased at Harris Teeter. The purchase was no later than 2012, because my two most recent glucosamine purchases from Costco were of a different brand, Schiff, from a different manufacturer, and I still have those bottles. If there is any dispute over whether I am a class member, I ask the Court to rely upon the loyalty program records that were used to send me individualized notice.

9. I note that the claims process was very intimidating. If I were not familiar with the use of loyalty programs to provide individualized notice to class members, I might have been insufficiently confident enough in my memory to be willing to file a claim under oath. As it was, the claim form made me guess what month I purchased a product in, and I now know that I guessed incorrectly.

10. The specific grounds of my objection are identified in my attorney's filing in this case.

### I Have Previously Successfully Objected in Cases

11. I am a graduate of University of Chicago Law School, a member of the Illinois bar, a former clerk for a judge on the U.S. Court of Appeals on the Seventh Circuit, a member of the American Law Institute, and the founder of the non-profit public interest law firm Center for Class Action Fairness.

12. A "professional objector" is one who brings objections in the hopes of extracting a *quid quo pro* payment to withdraw the objection or appeal of the objection's denial. By that legal definition, I am not a "professional objector," as I have never settled an objection. I bring this objection in good faith. If this Court has any skepticism, I am happy to stipulate to an injunction forbidding me from seeking compensation for settling my objection at any stage without court approval.

13. I have indeed brought multiple objections and represented clients *pro bono* in multiple cases where they objected to unfair class action settlements. But I have won the majority of those

objections, and the majority of appeals that I have argued that have been decided, including the Seventh Circuit case of *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (2012).

14. The difference between a "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as myself has to triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a meritless objection. The Center for Class Action Fairness objects to only a small fraction of the number of unfair class action settlements it sees.

15. In my experience, class counsel frequently try to detract from the legal merits of my objections by accusing me of only bringing objections to seek fees. It is unclear why this is meant to discredit my objections any more than it discredits plaintiffs' case that their attorneys seek fees. In any event, the claim is false. The Center has only made federal fee requests when we have achieved a material pecuniary improvement in the class's position with our objections, and we have never been denied fees when we asked for them. Moreover, though non-profits are permitted to request attorneys' fees, all of our fee requests are constrained by federal tax law, which caps the amount of fees we can receive in any tax year to a fraction of our total expenses. We will not seek fees in this case unless our objection results in new money coming to the class in a new settlement, and then our fee request, if any, will be a single-digit percentage of that money. On more than one occasion, we have declined to seek fees when other objectors have or have donated our fees to the class. *E.g.*, *In re Classmates.com*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012).

16. In my experience, class counsel frequently try to detract from the legal merits of my objections by falsely accusing me or my organization of a goal to "end class actions, not improve them." The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. I have been writing about class actions publicly for nearly a

decade, and I have never asked for an end to the class action, just proposed reforms for ending the *abuse* of class actions and class-action settlements; I have frequently confirmed my support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches. That I oppose class action abuse no more means that I oppose class actions than someone who opposes food poisoning opposes food.

17. In my experience, class counsel frequently try to detract from the legal merits of my objections by misquoting half of a single sentence in *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 773, 785 (N.D. Ohio 2010) that alleged that an argument I made against "kicker" clauses was "long on ideology and short on law." It is worth noting that *Lonardo* was criticizing only one particular argument as "ideolog[ical]"; it otherwise held that "Frank's policy arguments contribute to the legal discussion regarding this important area of law," and awarded fees to me based on the $2 million benefit to the class caused by the objection. Most importantly, I ultimately won the argument: the Ninth Circuit agreed with me and disagreed with *Lonardo* on the question of whether "kicker" arrangements where fees from a separate fund revert to the defendant are improper. *Contrast In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) *with Lonardo*, 706 F. Supp. 2d at 785. Even if it were true in 2010 that my argument in *Lonardo* against the kicker was "short on law," it is not true now that that same argument has persuaded the Ninth Circuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 28, 2013, in Fairfax, Virginia.

*[signature]*
Theodore H. Frank