

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No. 11-CV-07972 <br><br> <u>CLASS ACTION</u> <br><br> Hon. James B. Zagel |
| Plaintiffs, | |
| v. | |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation | |
| Defendants. | |
| ——————————————— | |
| THEODORE H. FRANK, | |
| Objector. | |

---

## THEODORE H. FRANK'S OBJECTION TO SETTLEMENT

---

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorney for Objector Theodore H. Frank*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. I

TABLE OF AUTHORITIES ......................................................................................... II

INTRODUCTION ............................................................................................................ 1

PRELIMINARY STATEMENT ..................................................................................... 2

I.  Objector Frank Is a Member of the Class, and Intends to Appear Through Counsel at the Fairness Hearing. ................................................................................................................ 3

II.  A Court Owes a Fiduciary Duty to Unnamed Class Members. .................................... 4

III.  The Settlement's Motion Schedule Violates Rule 23(h). ............................................... 5

IV.  The Settlement Contains Numerous Signs of Self-Dealing. ......................................... 6

    A.  Class Counsel's Request for a Disproportionate Award Reflects Self-Dealing. ........... 9

        1.  Class counsel's $4.5 million request will likely consume 70% of the constructive common fund. ....................................................................................... 9

        2.  Notice and administration costs are not a class benefit. ........................... 12

    B.  The Settlement's "Clear Sailing" Provision Shows Self-Dealing. ................... 15

    C.  The Segregated Fee Fund Reflects Self-Dealing. ........................................... 16

    D.  Setting the Claims Deadline Several Months After the Fairness Hearing is Further Evidence of Self-Dealing. .................................................................... 17

V.  The Distended Incentive Awards Are Improper. ......................................................... 19

VI.  The Parties Have Artificially Burdened the Right of Objection; No Positive Inference Should Be Drawn from Few Objections. ...................................................... 20

CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abrams v. Van Kampen Funds, Inc.,*
    No. 01 C 7538, 2006 WL 163023, 2006 U.S. Dist. LEXIS 2129 (N.D. Ill. Jan. 18,
    2006) ................................................................................................................................... 9

*Besinga v. United States,*
    923 F.2d 133 (9th Cir. 1991) ........................................................................................... 13

*Brown v. Stackler,*

    612 F.2d 1057 (7th Cir. 1980) ......................................................................................... 24

*Burden v. Selectquote Ins. Servs.,*
    No C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977 (N.D. Cal. Feb. 5, 2013) ....................... 10

*Childs v. United Life Ins. Co.,*
    No 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113 (N.D. Okla. May 21, 2012) ..................... 15

*Clark v. Universal Builders, Inc.,*
    501 F.2d 324 (7th Cir. 1974) ........................................................................................... 23

*Crawford v. Equifax Payment Servs.,*
    201 F.3d 877 (7th Cir. 2000) ..............................................................................8, 11, 20, 23

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
    662 F.3d 913 (7th Cir. 2011) ...................................................................................7, 17

*De Leon v. Bank of Am.,*
    No. 6:09-cv-1251, 2012 U.S. Dist. LEXIS 91124 (M.D. Fla. Apr. 20, 2012) ..................... 10

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) ................................................................................ 12, 17, 18

*Devlin v. Scardelletti,*
    536 U.S. 1 (2002) ........................................................................................................... 22

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................................................... 12

*Felix v. Northstar Location Servs..*,
　　No. 11-CV-00166(JJM),
　　2013 U.S. Dist. LEXIS 74717 (W.D.N.Y. May 28, 2013) ........................................................ 11

*Ferrington v. McAfee, Inc..*,
　　No. 10-cv-1455-LHK,
　　2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012) ........................................................ 18

*Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal.) ........................................................ 22

*Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA,
　　2013 U.S. Dist. LEXIS 97760 (N.D. Cal. Jul. 11, 2013) ........................................................ 20

*Freebird, Inc. v. Merit Energy Co.,*
　　No. 10-1154-KHV,
　　2012 U.S. Dist. LEXIS 173075 (D. Kan. Dec. 6, 2012) ........................................................ 22, 23

*Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK,
　　2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ........................................................ 10, 21, 23

*Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK,
　　2013 U.S. Dist. LEXIS 92650 (W.D. Mo. Jul. 12, 2013) ........................................................ 10

*Hecht v. United Collection Bureau,*
　　691 F.3d 218 (2d Cir. 2012) ........................................................ 13

*Hensley v. Eckerhart,*
　　461 U.S. 424 (1983) ........................................................ 8

*Hanlon v. Chrysler Corp.,*
　　150 F.3d 1011 (9th Cir. 1998) ........................................................ 6, 9

*In re TD Ameritrade Accountholder Litig.,*
　　266 F.R.D. 418 (N.D. Cal. 2009) ........................................................ 13

*In re Aqua Dots Prods. Liab. Litig.,*
　　654 F.3d 748 (7th Cir. 2011) ........................................................ 13, 17

*In re Baby Prods. Antitrust Litig.,*
　　708 F.3d 163 (3d Cir. 2013) ........................................................ 1, 9, 11, 12, 14, 18

*In re Bluetooth Headset Prods. Liab. Litig.,*
　　654 F.3d 935 (9th Cir. 2011) ........................................................ *passim*

*In re Classmates.com Consol. Litig.*,  No. 09-cv-0045-RAJ
2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) .......................................................2

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*,
418 F.3d 277 (3d Cir. 2005) ...................................................................................................8

*In re Continental Illinois Secs. Litig.*,
962 F.2d 566 (7th Cir. 1992) ........................................................................................20-21

*In re GMC Engine Interchange Litig.*,
594 F.2d 1106 (7th Cir. 1979) .................................................................................4, 19, 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ..............................................................7, 8, 12, 16, 18, 21

*In re Heartland Payment Sys.*,
851 F. Supp. 2d 1040 (S.D Tex. 2012) ...............................................................................12

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013) ............................................................................................19

*In re Lawnmower Engine Horsepower Mktg & Sales Practices Litig.*,
733 F. Supp. 2d 997, 1014 (E.D. Wis. 2010) ...................................................................9

*In re LivingSocial Mktg. & Sales Practices Litig.*,
MDL 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059 (D.D.C. Mar. 22,
2013) .............................................................................................................................. 11, 12

*In re Mercury Interactive Corp. Secs. Litig.*,
618 F.3d 988 (9th Cir. 2010) ..........................................................................................1, 5

*In re Motor Fuel Temperature Sales Practices Litig.*,
No 07-md-01840-KHV-JPO
Order (Dkt. No. 3019) (D. Kan. Nov. 10, 2011).............................................................21

*In re Motor Fuel Temperature Sales Practices Litig.*,
No 07-md-01840-KHV-JPO
2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012).....................................22

*In re Wells Fargo Secs. Litig.*,
157 F.R.D. 467 (N.D. Cal. 1994).........................................................................................14

*Int'l Precious Metals Corp. v. Waters,*
    530 U.S. 1223 (2000) ...................................................................................................15

*Johnson v. Comerica.,*
    83 F.3d 241 (8th Cir. 1996) ..........................................................................................12

*Kamilewicz v. Bank of Boston,*
    100 F.3d 1348 (7th Cir. 1996) ......................................................................................15

*Kaufman v. Am. Express Travel Related Servs.,*
    283 F.R.D. 404 (N.D. Ill. 2012) ...................................................................................18

*Kirchoff v. Flynn,*
    786 F.2d 320 (7th Cir. 1986) ................................................................................ 14, 19

*Klier v. Elf Atochem N. Am. Inc.,*
    658 F.3d 468 (5th Cir. 2011) ........................................................................................12

*Lagarde v. Support.com, Inc.,*
    No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ............11

*Lemus v. H&R Block Enters. LLC, No. C 09-3179-SI, 2012 U.S. Dist. LEXIS 119026, a(N.D.*
    Cal. Aug. 22, 2012), *modified on other grounds on reconsideration* 2012 U.S. Dist. LEXIS
    128514 (Sept. 10, 2012) ...............................................................................................18

*Lobatz v. U.S. West Cellular of Cal. Inc.,*
    222 F.3d 1142 (9th Cir. 2000).......................................................................................17

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,*
    834 F.2d 677 (7th Cir. 1987) .................................................................................... 4, 21

*Mayer v. Spanel Int'l Ltd.,*
    51 F.3d 670 (7th Cir. 1995) ............................................................................................6

*McClintic v. Lithia Motors,*
    No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846 (W.D. Wash. Jan. 12, 2012) ...........23

*Mirfasihi v. Fleet Mortg. Corp.,*
    356 F.3d 781 (7th Cir. 2004) ........................................................................ 4, 7, 8, 12

*Mirfasihi v. Fleet Mortg. Corp.,*
    450 F.3d 745 (7th Cir. 2006) ..........................................................................................4

*Mifasihi v. Fleet Mortg. Corp.*,
    551 F.3d 682 (7th Cir. 2008) ........................................................................................6

*Montgomery v. Aetna Plywood, Inc.*, 1999 WL 172313, 1999 U.S. Dist. LEXIS 4432,
    (N.D. Ill. March 18, 1999) .........................................................................................9

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ..........................................................................8, 11, 19

*Radcliffe v. Experian Info Solutions*,
    715 F.3d 1157 (9th Cir. 2013)...................................................................................20

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ................................................................................4, 5

*Robert F. Booth Trust v. Crowley*,
    687 F.3d 314 (7th Cir. 2012) ....................................................................................2

*Smith v. Levine Leichtman Capital*,
    No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) .......... 10, 21

*Sobel v. Hertz Corp.*,
    No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984
    (D. Nev. Jun. 27, 2011).............................................................................................16

*Spillman v. RPM Pizza, LLC*,
    No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013).....................11

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................................6, 7, 8

*Strong v. BellSouth Telcoms. Inc.*,
    173 F.R.D. 167 (W.D. La. 1997), *aff'd* 137 F.3d 844 (5th Cir. 1998) .........................................16

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) *(en banc)* ........................................................................11

*Swedish Hosp. Corp v. Shalala*,
    1 F.3d 1261(D.C. Cir. 1993).....................................................................................14

*Synfuel Technologies v. DHL Express (USA)*,
    463 F.3d 646 (7th Cir. 2006) ........................................................................4, 10, 18

*Thorogood v. Sears Roebuck & Co.,*
    547 F.3d 742 (7th Cir. 2008) ............................................................................................7

*Trombley v. Bank of Am. Corp.,*
    No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072 (D. R.I. May 3, 2012) ..................18

*True v. Am. Honda Motor Co.,*
    749 F. Supp. 2d (C.D. Cal. 2010) ..................................................................................11

*Twigg v. Sears, Roebuck & Co.,*
    153 F.3d 1222 (11th Cir. 1998)......................................................................................13

*Vassalle v. Midland Funding LLC,*
    708 F.3d 747 (6th Cir. 2013) ..........................................................................................11

*Vought v. Bank of Am.,*
    901 F. Supp. 2d 1071 (C.D. Ill. 2012).....................................................4, 5, 15, 16, 18, 20, 21, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A.,*
    396 F.3d 96 (2d Cir. 2005) .............................................................................................14

*Weinberger v. Great Northern Nekoosa Corp.,*
    925 F.2d 518 (1st Cir. 1991).........................................................................................15

## Rules and Statutes

28 U.S.C. § 1713..................................................................................................................15

Fed. R. Civ. Proc. 23 ..........................................................................................................23

Fed. R. Civ. Proc. 23(a)(4) ...........................................................................................17, 19

Fed. R. Civ. Proc. 23(e) ...........................................................................................5, 6, 7, 13

Fed. R. Civ. Proc. 23(h)................................................................................................1, 5-6

**Other Authorities**

American Law Institute,
   *Principles of the Law of Aggregate Litigation* § 3.05 (2010) .................................................. 8

Brickman, Lester,
   *Lawyer Barons* (2011) ............................................................................................... 17

Brunet, Edward,
   *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. L.
   FORUM. 403 (2003) ............................................................................................... 2-3

Coffee, Jr., John C., *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in
   the Large Class Action*, 54 U. Chi. L. Rev. 877, 883 (1987) ........................................ 6-7

Eisenberg, Theodore & Geoffrey Miller,
   *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal
   Stud. 248, 262 (2010) ............................................................................................... 9

Eisenberg, Theodore & Geoffrey Miller,
   *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*,
   57 VAND. L. REV. 1529 (2004) ............................................................................... 21

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language
   Guide* (2010), *available at*
   http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf ............... 10

Federal Judicial Center, *Manual for Complex Litigation* § 21.71 (4th ed. 2008) ................................. 12, 19

Fitzpatrick, Brian T.,
   *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) ...................................... 3

Henderson, William D.,
   *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 TUL. L.
   REV. 813 (2003) ............................................................................................... 16

Jones, Ashby,
   *A Litigator Fights Class-Action Suits*, Wall St. J. (Oct. 31, 2011) ...................................... 2

Karlsgodt, Paul & Raj Chohan
  *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA:
  CLASS ACTION LITIG. REPORT (Aug. 12, 2011) ............................................................................. 3

Klonoff, Robert H.,
  *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. PITT. L. REV. 727
  (2008) ................................................................................................................................. 22

Leslie, Christopher R.,
  *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L.
  REV. 71 (2007) ................................................................................................................ 20, 22

Notes of Advisory Committee to 2003 Amendments to Rule 23 ............................................. 5

Silver Charles., *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000) ................................. 17

Zabcik, Brian, *Conscientious Objector*
  Litigation 11 (Spring 2013), *available at* http://is.gd/alm_frank2013 .......................................... 2

## INTRODUCTION

This class settlement reimburses class members who submit a claim form for their purchase of certain dietary supplements containing glucosamine. The settlement as structured, however, omits key pieces to the puzzle necessary to analyze the fairness of the settlement. *First*, while the objection deadline is set for August 1, 2013, class counsel's fee application has not been filed and is not due until August 14, 2013. This schedule violates Rule 23(h) because "[t]he plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). While the settlement allows class counsel to seek an attorney award of $4.5 million, without the fee application, class members have no information as to the actual amount of the fee request, class counsel's lodestar and the basis for such request. The settlement must be rejected for this reason alone.

*Second*, the class has no information as to the actual amount of class benefit. Class members who submit a claim form will be reimbursed $3 per bottle up to $12 (with no proof of purchase) or $5 per bottle up to $50 (with proof of purchase). But the settling parties have presented no information as to the amount of claims received. And because the claims period deadline (December 3, 2013) is three months after the fairness hearing (September 4, 2013), the settlement as structured deprives class members and this Court of such information. Understanding the actual class benefit, however, is crucial in analyzing the settlement. *See, e.g., In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 170 (3d Cir. 2013) ("[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees."). This is not a trivial concern: even a generous estimate of a 1% claims rate reveals that the class benefit will not likely exceed $2 million. As such, a class counsel award of $4.5 million would consume 70% of the constructive common fund ($6.5M constructive common fund = $4.5M class counsel award + $2M class benefit). Under any circumstances, the disproportion is unfair

A 70% disproportionate class counsel award is just one of the many "warning signs" of self-

dealing that caused the Ninth Circuit to strike down a similarly structured settlement in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Like *Bluetooth*, this settlement contains multiple indicia of self-dealing including a separate fee award combined with a clear-sailing agreement precluding the defendant from challenging the fee. *Id.* For these and other reasons outlined below, the settlement should be rejected.

## PRELIMINARY STATEMENT

Melissa A. Holyoak is an attorney with the public interest law firm Center for Class Action Fairness ("CCAF") and is representing *pro bono* Objector Frank, who is the non-profit's founder and president. CCAF's mission is to litigate on behalf of class members against unfair class action procedures and settlements, and it is has won millions of dollars for class members. *See, e.g.*, Brian Zabcik, *Conscientious Objector*, LITIGATION 11 (Spring 2013), *available at* http://is.gd/alm_frank2013 (redirect); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011); *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel (and a *cy pres* charity) at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because experience has shown that class action attorneys often employ *ad hominem* attacks in attempt to discredit objections, it is perhaps relevant to distinguish this objector's intentions from the agenda of those who are often styled "professional objectors." While CCAF attorneys have represented multiple objectors (including those who successfully appealed in several federal cases in the past two years, *e.g.*, *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012)), CCAF is not a "professional objector." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness*

*Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not the Center's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing the Center from professional objectors). While Frank has brought several objections to unfair class action settlements on behalf of himself and other clients, the majority of which have been successful, he refuses to engage in *quid pro quo* settlements and does not extort attorneys; he has never withdrawn an objection in exchange for payment.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Frank is willing to stipulate to an injunction prohibiting himself and his attorneys from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem).

## I.     Objector Frank Is a Member of the Class, and Intends to Appear Through Counsel at the Fairness Hearing.

As avowed in his accompanying Declaration ("Frank Decl."), Theodore Harold Frank is a member of the class. Frank Decl. ¶¶ 3-8. Frank's home address is 11307 Bulova Lane, Fairfax, VA, 22030. Frank Decl. ¶ 2. His phone number is (703) 203-3848, and his email address is tedfrank@gmail.com. *Id.*

Frank is a consumer with no proof of purchase (Frank Decl. ¶ 5), but received individual notice from the claims administrator (Frank Decl. ¶ 4), and attests on information and belief that he purchased the Covered Product Kirkland-brand Extra Strength Glucosamine HCl 1500 mg with MSM 1500 mg from the Arlington, VA Costco store in 2011 and/or 2012. Frank Decl. ¶ 8. Frank thus qualifies as a class member, with standing to object to the settlement and fee request.

Objector Frank intends to appear through his attorney Melissa A. Holyoak at the final approval hearing, in the above-captioned matter, scheduled for September 4, 2013 at 11:00 a.m. Ms. Holyoak a member of the bar of this district; her contact information is listed on the cover page of

this Objection. Frank wishes to discuss matters raised in this Objection. Frank does not intend to call any witnesses, but reserves the right to make use of all documents entered on to the docket by any settling party or objector. Frank also reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval. He joins any objections not inconsistent with the objections he makes below.

## II.    A Court Owes a Fiduciary Duty to Unnamed Class Members.

A district court must act as a "fiduciary of the class," for the rights and interests of absent class members. *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) ("*Mirfasihi II*") (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)). As fiduciaries, courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions" prior to approval. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

There should be no presumption in favor of settlement approval: "the proponents of any class settlement always bear the burden of proof on the issue of fairness." *In re GMC Engine Interchange Litig.*, 594 F.2d 1106, 1126 n.30 (7th Cir. 1979). Because the settlement here is pre-certification, an even higher degree of careful scrutiny is required. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

An arm's length negotiation, likewise, is necessary but not itself sufficient for approval. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). As the Seventh Circuit has described it, "[b]ecause class actions are rife with potential conflicts of interest between class counsel and class members … district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) ("*Mirfasihi I*"). This settlement presents one such instantiation of the conflict because the settlement's structure will inevitably result in a class counsel award that will drastically exceed the actual aggregate class recovery. *Bluetooth*, 654 F.3d at 945; *Vought v. Bank of Am.*, 901 F. Supp. 2d

1071, 1100 (C.D. Ill. Oct. 4, 2012) ("There must be some point at which the recovery to the class is so outweighed by attorneys' fees that … the allocation is not fair.").

### III.    The Settlement's Motion Schedule Violates Rule 23(h).

Under the plain language of Fed. R. Civ. P. 23(h), notice of a motion for class counsel attorneys' fees must be "directed to class members in a reasonable manner." Thus, class counsel is required to submit their basis for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). Under the Preliminary Approval Order, objections must be postmarked by August 1, 2013, but the legal basis and evidence in support of the fee request (i.e., the fee application) has not yet been filed and is not due until August 14, 2013, two weeks after the objection deadline. Preliminary Approval Order (Dkt. 89) at 9. The settling parties prompted this schedule with their proposed order for preliminary approval. *See* Exhibit F to Settlement Agreement (Dkt. 73-1) at 65, 67 (¶¶ 7(d), 9(a)) (requesting fee application deadline 21 days before fairness hearing, and objection deadline 45 days after notice).

As a matter of law, this is insufficient notice in violation of Rule 23(h).[1] "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *Mercury Interactive*, 618 F.3d at 993. Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." *Id.* at 993-94. *See also* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("For motion by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at

---

[1] It's worth noting that even before the adoption of 23(h) in 2003, the Seventh Circuit recognized that objectors should not be deprived of the fee application. *See Reynolds*, 288 F.3d at 284, 286 ("To conceal the application and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge.").

least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e).").[2]

This lack of notice was actually prejudicial. "A proper attorneys' fee award is based on success obtained *and* expense (including opportunity cost of time) incurred." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008) ("*Mirfasihi II*"). The failure to file a timely fee motion deprives class members of a chance to analyze any lodestar data that will be presented for crosscheck purposes. *See, e.g., Bluetooth*, 654 F.3d at 945 (noting that lodestar cross-check can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate."). Moreover, the clear sailing clause that class counsel negotiated for themselves, *see* Settlement ¶ 9, means that no one—neither defendants nor objectors—will be able to scrutinize or challenge class counsel's fee request. The breach of Rule 23(h) unfairly shrouds class counsel's fee request from scrutiny and is independent reason to reject the settlement.

## IV.    The Settlement Contains Numerous Signs of Self-Dealing.

The concerns about the potential conflict of interest between class counsel and their clients "warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement…" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *accord Bluetooth*, 654 F.3d at 947. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton*, 327 F.3d 938, 964 (9th Cir. 2003); *accord Bluetooth*, 654 F.3d at 947; John C. Coffee, Jr., *The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action*, 54 U. Chi. L. Rev. 877, 883 (1987) ("The classic agency

---

[2] Although the Seventh Circuit has not weighed in on the question, a circuit split should not be created "without strong cause." *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 754 (7th Cir. 1995) (Easterbrook, J.), *cert denied*, 516 U.S. 1008 (1995).

cost problem in class actions involves the 'sweetheart' settlement, in which the plaintiff's attorney trades a high fee award for a low recovery.").

It is not enough that the settlement happened to be at "arm's length" without explicit collusion; the settlement must be objectively reasonable as well and avoid self-dealing by the class counsel. Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Bluetooth*, 654 F.3d at 947 (citing *Staton*, 327 F.3d at 960). Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Staton*, 327 F.3d at 964 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995)); *accord Bluetooth*, 654 F.3d at 949.

The Seventh Circuit also recognizes the concerns of self-dealing. *Mirfasihi I*, 356 F.3d at 785. Indeed, these concerns are yet heightened "when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC,* 662 F.3d 913, 917 (7th Cir. 2011). Class counsel must demonstrate that "they would prosecute the case in the interest of the class…rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Id.* (citations omitted).

Class counsel wrongly argue that a negotiated fee is presumptively reasonable (Dkt. 389 at 22). Yet two parties cannot legitimately agree to shortchange absent parties to the negotiation. *See Thorogood v. Sears Roebuck & Co.*, 547 F.3d 742, 745 (7th Cir. 2008) (observing that the court's 23(e) "responsibility [is] difficult to discharge when the judge confronts a phalanx of colluding counsel. The defendant wants to minimize outflow of expenditures and the class counsel wants to increase inflow of attorneys' fees. Both can achieve their goals if they collude to sacrifice the interests of the

class."). *Hensley*, cited by plaintiffs, is inapposite: there, plaintiffs had successfully litigated a § 1983 action, and the only remaining dispute was the additional amount of fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 428-29 (1983). Here, every dollar going to the attorneys will be at the expense of the class.[3]

Thus, a settlement can be unfair even when negotiated at arms' length: class counsel can achieve an impermissible self-dealing settlement simply through a defendant's and a mediator's indifference to the allocation. *Staton*, 327 F.3d at 964. The relevant inquiry is whether the attorneys are unfairly attuned to their self-interest at the expense of the class. *Mirfasihi I*, 356 F.3d at 785; *Bluetooth*, 654 F.3d at 947; *cf. also* ALI Principles § 3.05, comment b at 208 (2010). *Bluetooth* suggests a nonexclusive list of three possible signs of self-dealing. *Bluetooth*, 654 F.3d at 947 (listing warning signs to include (1) disproportionate distribution to counsel; (2) clear sailing agreement; and (3) reversion of excess fees to the defendant) (citing, *inter alia*, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000); *Mirfasihi I*, 356 F.3d at 785). The same self-dealing warning signs that caused the Ninth Circuit to strike down *Bluetooth* are present here.

---

[3] This is true regardless of whether fees were negotiated or discussed after agreement was reached between the parties on all other terms of the settlement. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 308 (3d Cir. 2005) ("Furthermore, 'even if counsel did not discuss fees until after they reached a settlement agreement, [such a fact] would not allay our concern since the Task Force recommended that fee negotiations be postponed until the settlement was judicially approved, not merely until the date the parties allege to have reached an agreement.'") (quoting *In re GMC Pick-Up Litig.* 55 F.3d at 804.)

More generally, the settling parties are rational economic actors: even when the negotiations over fees are severed, the parties know in advance that those negotiations are coming, that the defendants have a reservation price based on their internal valuation of the litigation, and that every dollar negotiated for the class reduces the amount the defendants are willing to pay class counsel. Because these future fee negotiations are not an unexpected surprise, the overhang of the future fee negotiations necessarily infects the earlier settlement negotiations. This is invariably at the expense of the class when there is a separate fund for fees, because both class counsel and the defendants have an incentive to leave extra "space" for that future negotiation in a bifurcated negotiation that the parties do not need to have when it is simply negotiating for a single pot of money to go into a common fund. *Cf. Bluetooth*, 654 F.3d at 948-49 (neither presence of neutral mediator nor separation of fee negotiations from other settlement negotiations demonstrates that a settlement is fair). "In other words, the negotiation of class counsel's attorneys' fees is not exempt from the truism that there is no such things a free lunch." *Staton*, 327 F.3d at 964.

A.      **Class Counsel's Request for a Disproportionate Award Reflects Self-Dealing.**

The first sign of self-dealing is class counsel's request for a "disproportionate distribution of the settlement." *Bluetooth*, 654 F.3d at 947 (quoting *Hanlon*, 150 F.3d at 1021). Courts in this Circuit have recognized that "25% is the median fee award in cases involving recoveries of $ 5-15 million." *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 163023, 2006 U.S. Dist. LEXIS 2129, at *19 (N.D. Ill. Jan. 18, 2006) (rejecting request for 30% of gross fund); *Montgomery v. Aetna Plywood, Inc.*, 1999 WL 172313, 1999 U.S. Dist. LEXIS 4432, at *16 (N.D. Ill. March 18, 1999), *aff'd in part, rev'd in part on other grounds*, 231 F.3d 399 (7th Cir. 2000); *see also In re Lawnmower Engine Horsepower Mktg & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1014 (E.D. Wis. 2010) (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees & Expenses in Class Action Litigation: 1993-2008*, 7 J. of Empirical Legal Stud. 248, 262 (2010)) ("[T]he mean fee in 'consumer' cases is 25%."); *cf. Bluetooth*, 654 F.3d at 942 (noting that benchmark for reasonable award in a case alleging economic injury is 25% of the class benefit). In performing the disproportionality analysis, courts should compare the fees and the value of the funds *actually available*, rather than the amount potentially available. "[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013).

1.      **Class counsel's $4.5 million request will likely consume 70% of the constructive common fund.**

Here, while class counsel has not yet submitted their fee application, the settlement permits class counsel to request up to $4,500,000 in fees and expenses. *See* Settlement ¶¶ 9(a)-9(b). Because the settling parties set the claims deadline three months after the final fairness hearing, *see* Preliminary Approval Order (Dkt. 89) at 3, 7, class members and this Court are unnecessarily deprived of crucial information for analyzing the actual class benefit compared to a $4.5 million fee request. The absence of the actual class benefit (total amount of claims) is particularly egregious because claims rates in settlements with low value relief are notoriously low.

The settling parties have designed a claims-made[4] settlement which requires the estimated 12 million class member households[5] to submit claim forms in order to receive settlement payments. Those class members without proof of purchase are entitled to $3 per product, up to a maximum of 4 bottles or $12. Settlement Agreement ¶ 17(c). Those class members with proof of purchase are entitled to $5 per product, up to a maximum of 10 bottles or $50. Settlement ¶ 17(b). If claims do not reach $2 million, claims will be doubled (for claimants with no proof of purchase) or tripled (for claimants with proof of purchase). Settlement ¶ 17(d)(i) & (d)(ii). If payments still remain less than $2 million, defendants will remit the difference to the third-party Orthopaedic Research and Education Foundation, bringing total payments to $2 million. Settlement ¶ 17(d)(iii).[6]

---

[4] When a claims-made process is employed—in lieu of direct payment mechanisms—the court should assure itself that there is a valid reason for its use. "In too many cases, the parties may negotiate a claims process which serves as a choke on the total amount paid to class members. When the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ("FJC Guide"), at 6 (2010), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

If it is employed for no ostensible reason other than to depress class recovery, the settlement should be rejected as unreasonable. Courts across the country are beginning to awake to this abuse. *See, e.g.*, *Burden v. Selectquote Ins. Servs.*, No. C 10-05966 SBA, 2013 U.S. Dist. LEXIS 16977, at *3 (N.D. Cal. Feb. 5, 2013) (where defendant can already "ascertain the identity and location of the class member" there is no apparent reason for a claims process); *Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8 (N.D. Cal. Nov. 15, 2012) (questioning use of claims submission process when it was not necessary to identify most absent class members); *Galloway v. Kan. City Landsmen, LLC*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *10 (W.D. Mo. Oct. 12, 2012) (denying preliminary approval of small value claims made settlement), *later renegotiated as a direct payment* s*ettlement*, 2013 U.S. Dist. LEXIS 92650 (W.D. Mo. Jul. 2, 2013); *De Leon v. Bank of Am.*, No. 6:09-cv-1251, 2012 U.S. Dist. LEXIS 91124, at *62 (M.D. Fla. Apr. 20, 2012) (finding that a low-value claims-made settlement would "surely result in a low claims rate" and rejecting the claims procedure as "not reasonable").

Here, the fact that the parties have properly disseminated direct notice to 4.84 million households—more than one third of the class (*see* Mem. in Support of Preliminary Approval (Dkt. 73) at 20)—means that certain purchases can be accounted for without the need for self-identification. The parties need to justify why they are not remitting relief on those purchases directly, but instead are forcing class members to jump through the taxing hoop of a claim form.

[5] *See* Mem. in Support of Preliminary Approval at 8.

[6] The settlement also provides prospective non-class injunctive relief in the form of temporary labeling changes. Settlement ¶ 8(a)-(e). Seventh Circuit law makes clear that such relief is not a compensable benefit that justifies attorneys' fees: "It is future customers who are not plaintiffs in this suit who will reap most of the benefit from these changes. The class complaint sought [money damages]. The fairness of the settlement

---

Based on the low value relief available, the claims rate will likely be well under 1%. *See Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (.27% claims rate for $15 max claim); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) ("[A] mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total number of class members who received notice."); *Livingsocial*, 2013 U.S. Dist. LEXIS 40059, at *52 (.25% claims rate); *see also Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (noting evidence that "consumer claim filing rates rarely exceed seven percent, even with the most extensive notice campaigns."). These rates accord with intuition. *See Murray*, 434 F.3d at 952 ("Given the tiny sum per person, who would bother to mail a claim.").

Even utilizing a generous 1% claims rate, the total class payout would not likely exceed $1.6 million with $400,000 left over for *cy pres*.[7] Class counsel would receive nearly ***three times more*** than the class. Indeed, if the claims rate is closer to the .25% rate in *Spillman*, *Lagarde* or *LivingSocial*, the class would receive only $400,000 and $1.6 million would shift to *cy pres*. The difference in allocation is material. "Class members are not indifferent to whether funds are distributed to them

---

must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654; *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (defendant's injunctive agreement not to use abusive debt collection letter is a "gain" of "nothing" for class members); *accord Vassalle v. Midland Funding LLC*, 708 F.3d 747, 756 (6th Cir. 2013) (illusory, temporary and prospective relief is of no benefit); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) ("No changes to future advertising by [the defendant] will benefit those who already were misled by [the defendant]'s representations."). The class is composed of people who have done business with the defendants *in the past*; while the prospective injunctive relief can only benefit those who do business with defendants *in the future*. *See Felix v. Northstar Location Servs.*,11-CV-00166(JJM), 2013 U.S. Dist. LEXIS 74717, at *32-*33 (W.D.N.Y. May 28, 2013) (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transaction).

[7] Utilizing 1% of the eligible 12,000,000 households, claims would total 120,000. The vast majority of those will likely involve no proof of purchase. *See e.g., Baby Prods.*, 708 F.3d at 175 (explaining that "the vast majority of claimants have not submitted documentary proof entitling them to a greater award, casting doubt on [the] assumption [that documentary proof is a low bar]" and suggesting instead that "[o]ther means of preventing fraud could have been explored."). Of the 120,000 claims, estimating 96,000 non-proof of purchase claims ($3 x 4 bottle maximum x 96,000 = $1,152,000) and 24,000 proof of purchase claims ($5 x 4 bottles x 24,000 = $480,000), the total class payout would be just over $1.6 million with $400,000 left over for *cy pres*.

or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178; *id.* at 178-79 (counsel has "responsibility to seek an award that adequately prioritizes direct benefit to the class" and fees should reflect that).

Based on either estimate, class counsel's $4.5 million request totals 70% of the $6.5 million constructive common fund[8] ($4.5 million fees + $1.6 million class benefit + $400,000 *cy pres*[9]). By any measure, 70% to counsel and 30% to the class and *cy pres* is grossly disproportionate. *See, e.g., Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (noting that a 38.9% fee award would be "clearly excessive" in light of 25% benchmark). This disproportion is beyond the pale and would reify the lamentable proverb that "[a] lawsuit is a fruit tree planted in a lawyer's garden." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974) (quotation omitted). This Court should deny final approval until class counsel are no longer "the foremost beneficiaries of the settlement." *Baby Prods.*, 708 F.3d at 179.

### 2. Notice and administration costs are not a class benefit.

It is not clear whether the plaintiffs are attempting to credit notice and administration costs toward their accounting of the class benefit. *Compare* Long-Form Class Notice ¶ 5(c) (appearing to

---

[8] A severable fee structure "is, for practical purposes, a constructive common fund." *In re GMC Trucks*, 55 F.3d at 820; *id.* at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *Johnson v. Comerica*, 83 F.3d 241 (8th Cir. 1996) ("[I]n essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal."). "If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees" then "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel." *Manual for Complex Litigation* § 21.71 (4th ed. 2008).

[9] The calculation also generously presumes that a dollar to *cy pres* should be treated as a dollar to the class. But as Judge Posner explained, "[t]here is no indirect benefit to the class from the defendant's giving the money to someone else." *Mirfasihi*, 356 F.3d at 784. Simply, direct payment matters. A dollar to the *cy pres* is not worth a dollar to the class. *See, e.g., In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (citing *Mirfasihi* and deciding to discount *cy pres* relief by half for purposes of fee award); *Livingsocial*, MDL No. 2254, 2013 U.S. Dist. LEXIS 40059, at *52-*53 (D.D.C. Mar. 22, 2013) (considering the proportion of *cy pres* to direct benefit and cutting fees to 18%). "Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Baby Prods.*, 708 F.3d at 174. Even in a claims-made settlement, "[t]he settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to class members" not to class counsel or third-party *cy pres* beneficiaries. *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011).

---

designate costs as a benefit) *and* Mem. in Support of Prelim. Approval at 16 (noting the $1.5 million notice plan in accounting of benefits) *with* Settlement ¶¶ 7-10 (describing class benefits; omitting notice costs). Either way, the notion that class counsel is entitled to count the costs of claim administration as a benefit to the class is fundamentally mistaken, poor public policy, and contrary to binding law. Awarding fees regardless of whether settlement money is paid to settlement administrators, to the postal service, or to the class members—who are the attorneys' actual clients—creates poor incentives that contradict the purposes behind this Circuit's "percentage of the recovery" fee approach.

   *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) is informative. It recognizes that items such as notice and class administration expenses are a social cost that present an argument against class certification, rather than a benefit to the class. 654 F.3d 751.[10] Every dollar the settlement administrator receives is a dollar that is not available to the class in settlement. If attorney fees are paid only on what the class receives, class counsel will have appropriate incentive to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given a commission based on the size of administrative expenses, it would have no financial incentive to oversee the efforts of the administrator.

---

[10] This is so even where the costs are being footed by the defendant. The defendant has every incentive to fund notice, because constitutionally adequate notice is a prerequisite for the defendant to obtain the only consideration it receives from a settlement: the waiver and release of class members' claims. *See e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action) (citing cases); *Hecht v. United Collection Bureau*, 691 F.3d 218 (2d. Cir. 2012) (permitting relitigation of class action because of inadequacy of class notice in previous settlement); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-29 (11th Cir. 1998) (same). Notice enables class members to make claims, but those amounts claimed are already included in the final tabulation of settlement value, there is no need for double-counting by including the costs of the notice in addition to its yield. As such, the expense of class notice should not be counted as a benefit on the class's side of the ledger. Refusing to count notice costs is just one instantiation of the general principle that costs imposed on the defendant—divorced from class benefits—are not the measure of compensable class value. *See Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

These principles are not solely a matter of common-sense economics; Judge Vaughn Walker made precisely this point in a case where he was evaluating competing bids for lead class counsel. "First, an attorney generally has no incentive to minimize litigation expenses unless his fee award is inversely related to such expenses. Second, when an attorney treats a resource devoted to litigation as a reimbursable expense, the attorney has a clear incentive to substitute that resource for those paid out of the attorney fee, even if it increases the overall cost of litigation to the client." *In re Wells Fargo Secs. Litig.*, 157 F.R.D. 467, 470 (N.D. Cal. 1994). Conversely: "If an attorney risks losing some portion of his fee award for each additional dollar in expenses he incurs, the attorney is sure to minimize expenses." *Id.* at 471. This echoes the alignment of interests principles that undergirds the "percentage-of-the-fund" approach in calculating fee awards. *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265-71 (D.C. Cir. 1993). *See also Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (attorney fee calculations should use methods that align the interests of attorney and client).

Just as class members are not indifferent between receiving money and having a third-party beneficiary receive money, *see Baby Prods.*, *supra*, they are not indifferent between a settlement that spends $19 million in administrative costs to distribute $2 million to the class and a settlement that incurs $1 million in administrative costs to distribute $20 million to the class. The latter settlement is worth ten times as much to the class, but, if administrative costs are counted, the two settlements should be treated as identical victories. This is wrong.

To award class counsel a commission on administrative expenses would produce absurd results that contradict federal law. Imagine a hypothetical settlement under the Class Action Fairness Act. The imaginary class action *Potter v. Bailey Building & Loan* settles: the defendant bank will spend $20 million in administrative expenses to precisely redistribute $1 million to the class of Bailey accountholders. Class counsel for Potter, using plaintiffs' argument here, claim that they have produced a $21 million settlement and are entitled to $7 million in fees, to be deducted from the class members' bank accounts. Such a settlement—where class members pay $7 million to attorneys

but receive $1 million in cash—would transgress the language and intent of 28 U.S.C. § 1713, which prohibits settlements where class members lose money. *Cf. Kamilewicz v. Bank of Boston*, 100 F.3d 1348 (7th Cir. 1996) (Easterbrook, J., dissenting from denial of rehearing *en banc*) (discussing similarly abusive settlement). But if this Court permits administrative expenses to be counted as a class benefit, the hypothetical Bailey Building & Loan settlement would pass § 1713 muster at the expense of the class members whom § 1713 is meant to protect.

Even if one accepted the $1.5 million notice costs as a "benefit to the class," a $4.5 million class award would still constitute over 56% of the constructive common fund ($8M fund = $4.5M class award + $2M class/*cy pres* + $1.5M notice costs) and is clearly excessive.

## B. The Settlement's "Clear Sailing" Provision Shows Self-Dealing.

The settlement has a "clear sailing" provision (Settlement ¶¶ 9(a) & 9(b)) providing that Rexall will not oppose class counsel awards of $4.5 million. *Bluetooth*, 654 F.3d at 948. A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). The clause "suggests, strongly," that its associated fee request should go "under the microscope of judicial scrutiny." *Id.* at 518, 525; *Childs v. United Life Ins. Co.*, No. 10-CV-23-PJC, 2012 U.S. Dist. LEXIS 70113, at *13-*14 & n.6 (N.D. Okla. May 21, 2012). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Weinberger*, 925 F.2d at 524; *accord Bluetooth*, 654 F.3d at 948.

"Provisions for clear sailing clauses 'decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class." *Vought*, 901 F. Supp. 2d at 1100 (quoting *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., *respecting the denial of the petition for a writ of certiorari*);

*accord* William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul. L. Rev. 813, 816 (2003) (urging courts to "adopt a per se rule that rejects all settlements that include clear sailing provisions."). "[W]hile the present case does not utilize a classic reversionary fund in which attorneys' fees are paid from a common pool that directly reduces the class's recovery, it undoubtedly did not escape either party's attention that every dollar not claimed from the fund was one dollar that [defendant] could use to pay class counsel's fees." *Vought*, 901 F. Supp. 2d at 1101. Clear sailing also undermines any conceivable benefit of separate negotiation of fees and terms. *Sobel*, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011). Here, class counsel put its own fees ahead of the interests of the class by negotiating a provision that insulated those fees from challenge by defendants.

### C. The Segregated Fee Fund Reflects Self-Dealing.

Per the settlement agreement, fees, costs and incentive awards will all be paid "separate and apart from" class relief. Settlement ¶¶ 9-10.[11] Thus, the "parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F.3d at 947. A "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Id.* at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel— when it does so, the class will benefit from the surplus.

Under the proposed settlement, however, if the Court awards less than the $4.5 million fee that defendants have already agreed to pay to class counsel, the defendant will be the only beneficiary. The settlement is therefore worse for the class than a traditional common fund, yet

---

[11] Despite purportedly not "diminishing or eroding" class relief, in "economic reality" (*In re GMC Trucks*, 55 F.3d at 820; *Strong v. BellSouth Telcoms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998), the defendant will cut every check and is concerned only with its total liability. The interrelation between fees and class relief cannot be undone with the fiat of a single sentence.

plaintiffs have done nothing to rectify this inferior settlement structure. In effect, they have prevented the Court from returning the fees and class relief to natural equilibrium.

A "kicker" will likely have the additional self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award, because the kicker combined with the clear sailing agreement means that any reversion will only go to the defendant that had already agreed to pay that amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, *Lawyer Barons* 522-25 (2011) (same; further arguing that reversionary kicker should be considered *per se* unethical).

Moreover, if "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.,* 222 F.3d 1142, 1147 (9th Cir. 2000). When class counsel bring class litigation to benefit themselves, rather than their putative class clients, they cannot meet the adequacy requirements of Rule 23(a)(4), and the class should not be certified. *Aqua Dots*, 654 F.3d 748; *Creative Montessori*, 662 F.3d 913. A $4.5 million class award should be considered part of a constructive common fund, and the fact that it is shielded from the class reflects self-dealing.

### D. Setting the Claims Deadline Several Months After the Fairness Hearing is Further Evidence of Self-Dealing.

The settling parties' decision to set the claims deadline well after the fairness hearing can and should be considered another *Bluetooth* warning sign of an unfair settlement, for it is designed to insulate the fee requests from a comparison with the actual amounts paid to class members. Without information regarding the actual value of the settlement, class counsel could more readily disguise how excessive their fee request is. *Cf. Dennis*, 697 F.3d at 869 (rejecting a similar "Just trust us. Uphold the settlement now, and we'll tell you what it is later" argument). Here, the claims deadline (December 3, 2013) is three months after the final fairness hearing (September 4, 2013). *See* Preliminary Approval Order (Dkt. 89) at 9. As explained above, because the claims deadline is after the fairness hearing, the court and class members cannot know the total amount of claims paid or

the actual class benefit. *See* Section IV.A.1.

The amount the class actually receives under the settlement, however, is a critical component in performing the *Bluetooth* disproportionality analysis. *Bluetooth*, 654 F.3d at 943 (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *In re GMC Pick-Up*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees."); *cf. Dennis*, 697 F.3d at 868 (instructing that settlement valuation "must be examined with great care to eliminate the possibility that it serves only the 'self interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious"). A consensus of district courts post-*Bluetooth* have applied disproportionality analysis in this manner. *E.g. Lemus v. H&R Block Enters. LLC*, No. C 09-3179-SI, 2012 U.S. Dist. LEXIS 119026, at *21-22 (N.D. Cal. Aug. 22, 2012), *modified on other grounds on reconsideration* 2012 U.S. Dist. LEXIS 128514 (Sept. 10, 2012); *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *8-9 (D.R.I. May 3, 2012); *Ferrington v. McAfee, Inc.*, No. 10-cv-1455-LHK, 2012 U.S. Dist. LEXIS 49160, at *36-37 (N.D. Cal. Apr. 6, 2012). Courts in this district are in accord. *Vought v. Bank of Am.*, N.A., 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) (emphasizing the "scant" 4.5% claims rate and result that $38,000 of $500,000 available would be paid out, ultimately denying approval of settlement); *Kaufman v. Am. Express Travel Related Servs.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) (finding a vast disparity between attorneys' fees and class claims' values to be "troubling and ultimately unacceptable."). The claims process was unnecessarily structured to prevent valuation of the actual class recovery and further reflects self-dealing.

If the Court does not reject the settlement out of hand for its unfairness, Frank formally requests that the Court abstain from ruling on fees or settlement approval until it can make findings on how much the class has actually received. Failing to do so would constitute reversible error. *In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013); *Synfuel*, 463 F.3d at 654 (reversing approval where "the court did not attempt to quantify the value of plaintiffs' case or even the overall value of

the settlement offer to class members"). "If the parties have not on their own initiative supplied the information needed to make the necessary findings, the court should affirmatively seek out such information. Making these findings may also require a court to withhold final approval until the actual distribution of funds can be estimated with reasonable accuracy." *Baby Prods.*, 708 F.3d at 174. Likewise, "[i]n evaluating a fee award, [the district court] should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process. This may require it 'to delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete.'") *Id.* at 179. (quoting Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed. 2008)). To approve the settlement and fee award *ex ante* would improperly shift the burden of proof from proponents of the settlement to opponents. *See GM Engine Interchange*, 594 F.2d at 1126 n.30 ("[P]roponents of any class settlement always bear the burden of proof on the issue of fairness…"). This allows the court to conduct the necessary disproportionality analysis vis-à-vis the actual amounts claimed rather than overinflated estimates of the settling parties.

"This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff*, 786 F.2d at 325. "For although class counsel's hard work on an action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition. Plaintiffs attorneys don't get paid simply for working they get paid for obtaining results." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182 (9th Cir. 2013). Deferring judgment will ensure the beneficial results have in fact been obtained.

In short, this case has many of the indicia of self-dealing present in *Bluetooth* and more. The improper self-dealing requires rejection of the settlement.

## V.   The Distended Incentive Awards Are Improper.

The incentive awards of $5,000 for each of the six class representatives are excessive and cast doubt on whether 23(a)(4)'s requirement of adequacy of representation is satisfied. In *Murray v. GMAC Mortg. Corp.*, the court found the disproportionate incentive award of $3,000 proof that "the

class device had been used to obtain leverage for one person's benefit." 434 F.3d 948, 952 (7th Cir. 2006). The Seventh Circuit contrasted the negligible monetary relief per absent class member with the $3,000 class representative award. *Id; see also Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000) (contrasting $2,000 named plaintiff award with failure to provide absent class members with monetary relief). *Accord Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) ("There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards."); *Fraser v. Asus Computer Int'l*, No. C 12-00652 WHA, 2013 U.S. Dist. LEXIS 97760, at *7-*8 (N.D. Cal. Jul. 11, 2013) (reducing $500 lead plaintiff request to $100 to be proportional with class claim amounts of $17).

This case is no different. The requested $5,000 incentive awards are 1600 times more than the $3 base award available to class members without proof of purchase. The requested incentive awards should be rejected and counsel against the fairness of the settlement.

## VI. The Parties Have Artificially Burdened the Right of Objection; No Positive Inference Should Be Drawn from Few Objections.

Any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought*, 901 F. Supp. 2d at 1093 (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Silence is simply *not* consent. *GM Engine Interchange*, 594 F.2d at 1137 ("Acquiescence to a bad deal is something quite different than affirmative support."). "[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. *See In re Continental Illinois Secs. Litig.*, 962 F.2d 566, 573

(7th Cir. 1992) ("No class member objected either--but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule"). Here, of course, there would be no gain from fee reduction because they are segregated. Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp.*, 834 F.2d at 680-81.

As such, the response from class members cannot be seen as something akin to an election or a public opinion poll. *See In re GMC Pick-Up*, 55 F.3d at 813; Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1561 (2004) ("Common sense dictates that apathy, not decision, is the basis for inaction."). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *Vought*, 901 F. Supp. 2d. at 1093.

Yet more conducive to apathetic inaction, the parties have elected a process of objecting and opting out which is "unnecessarily onerous". *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone). The requirement that objectors print and post multiple copies of their objection/exclusion is both expensive and outdated in 2012. *See Smith v. Levine Leichtman Capital*, No. C 10-00010 JSW, 2012 U.S. Dist. LEXIS 163672, at *8-*9 (N.D. Cal. Nov. 15, 2012) ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require … the objectors to mail their objections to three different locations."). Other courts permit the relatively efficient (indeed, close to costless) method of transmitting objections by a single electronic submission. *See e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically").

Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out electronically than by mail); *Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal. Jun. 7, 2013), Declaration of Jennifer M. Keough Regarding Settlement Administration (Dkt. 341) at ¶12 (6,884 of 6,946 opt-out requests (99.1%) were submitted electronically via the settlement website when that option was available).

Preferring a more costly, inefficient alternative over seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members. It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. PITT. L. REV. 727, 766 n. 251 (2008); Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. at 128-29. Indeed, notice was distributed in large part via internet, yet absent class members' responses cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.

Additional, the settling parties have saddled objectors with two further gratuitous burdens by (1) conditioning the right to appeal on attendance at the fairness hearing, *see* Proposed Preliminary Approval Order ¶ 9(c); and (2) making untoward threats of depositions*, see* Proposed Preliminary Approval Order ¶ 9(d).

*First*, as to the requirement of personal physical appearance at the fairness hearing, it is "unnecessarily burdensome and seem[s] to be designed to discourage class members from filing objections." *Freebird, Inc., v. Merit Energy Co.*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *18-*19 (D. Kan. Dec. 6, 2012). In *Devlin v. Scardelletti*, 536 U.S. 1 (2002), the Supreme Court described what class members must do to undergird a right to appeal: file a timely objection, nothing more. *Id.* at 14. Attempting to require fairness hearing attendance is even more outrageous in a

nationwide class settlement. Flying into town, or finding an attorney willing to do so, in order to attend the fairness hearing is a "not insignificant" sacrifice. *Vought*, 901 F. Supp. 2d. at 1093. Moreover, legitimate appeals are a good thing for class members; they ought not to be discouraged. *Crawford*, 201 F.3d at 881.

*Second*, the threat of blanketing objecting class members with depositions is likewise improper. *Freebird*, 2012 U.S. Dist. LEXIS 173075, at *18-*19 (striking proposed requirement that objectors list dates when they are available for deposition). "The taking of depositions of absent class members is—as is true of written interrogatories—appropriate in special circumstances. And, not unlike the use of interrogatories, the party seeking the depositions has the burden of showing necessity and absence of any motive to take undue advantage of the class members." *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974). There can be no showing of general *ex ante* necessity here, since the objection process already requires a sworn declaration attesting that one is a class member.

"One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing equivalent opt-out and objection process and ultimately rejecting settlement). Together, all these hurdles create doubt as to whether the settlement appropriately respects class members' Fed. R. Civ. P. 23 rights to object to the settlement and opt-out from the class certification. Not only do they constitute a reason to reject the settlement in this case, *see e.g., Galloway*, 2012 U.S. Dist. LEXIS 147148, at *16, they provide an added reason to discredit any argument that the lack of objectors signals the class members' approval of the settlement.

## CONCLUSION

The Court should deny approval. At the very least, it should defer approval and awarding of fees until the actual number and value of claims is known. For at least two reasons it is not enough to just reduce fees to 25% of the actual recovery. First, the settlement's kicker deprives the class of

that overage. Second, "[i]f…the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

Dated: August 1, 2013.

/s/ Melissa A. Holyoak
Melissa A. Holyoak, (DC Bar No. 487759)
Center for Class Action Fairness
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorney for Theodore H. Frank*

**Certificate of Service**

The undersigned certifies she electronically filed the foregoing Objection of Theodore H. Frank via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via First-Class mail a copy of this Objection of Theodore H. Frank upon the following:

| | |
|---|---|
| Peter N. Freiberg<br>Denlea & Carton LLP<br>One North Broadway<br>Suite 509<br>White Plains, NY 10601 | Stewart M. Weltman<br>Stewart M. Weltman, LLC<br>53 W. Jackson<br>Suite 364<br>Chicago, IL 60604 |
| Hon. James B. Zagel<br>United States District Court for the Northern District of Illinois<br>Everett McKinley Dirksen United States Courthouse<br>Chambers 2588<br>219 South Dearborn Street<br>Chicago, IL 60604 | Kara L. McCall<br>Sidley Austin LLP<br>One S. Dearborn Street<br>Chicago, IL 60603 |

Dated: August 1, 2013.

/s/ Melissa A. Holyoak