







**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, PC**

JERRY C. BONNETT
FRANCIS J. BALINT, JR.
C. KEVIN DYKSTRA
ANDREW Q. EVERROAD
JONATHAN S. WALLACK
CHRISTINA L. BANNON
WILLIAM F. KING
ANDREW M. EVANS
KEVIN R. HANGER

WILLIAM G. FAIRBOURN
VAN BUNCH
ELAINE A. RYAN
KATHRYN A. HONECKER
GUY A. HANSON
MANFRED P. MUECKE[1]
TONNA K. FARRAR[2]
TY D. FRANKEL
ERIC D. ZARD

ANDREW S. FRIEDMAN
ROBERT J. SPURLOCK
WENDY J. HARRISON
PATRICIA N. SYVERSON
KIMBERLY C. PAGE
TODD D. CARPENTER[1]
T. BRENT JORDAN[3]
LINDSEY M. GOMEZ

MICHAEL N. WIDENER, Of Counsel

[1] Admitted Only in California
[2] Admitted Only in California, Missouri and Kansas
[3] Admitted Only in Pennsylvania

June 14, 2011

**VIA CERTIFIED MAIL (RETURN RECEIPT)**
**(RECEIPT NO. 7009-0080-0000-4200-3898)**

Irene Fisher, Esq.
General Counsel
NBTY, Inc.
2100 Smithtown Avenue
Ronkonkoma, NY 11779

Re:    Cardenas v. NBTY, Inc., *et al.*

Dear Ms. Fisher:

Our law firm represents Lilian Cardenas and all other similarly situated California Residents in an action against NBTY, Inc. ("NBTY") and Rexall Sundown, Inc. ("Rexall") (collectively, "Defendants") arising out of, *inter alia*, misrepresentations, either express or implied, by Defendants to consumers that the Osteo Bi-Flex line of joint dietary supplements[1] are effective treatments for arthritis and other joint related ailments.

Ms. Cardenas and other similarly situated California residents purchased the Osteo Bi-Flex products unaware that Defendants' representations found on the Products' labels and packages were not substantiated by competent scientific evidence, including, among others, that Osteo Bi-Flex will increase mobility, renew cartilage, and maintain healthy connective tissue. The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is enclosed and incorporated by this reference.

These representations are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by Defendants with the intent to result in the sale of Osteo Bi-Flex to the consuming public. In fact, these representations do not assist consumers; they simply mislead them.

This practice constitutes a violation of California Civil Code §1770(a) under, *inter alia,*

---

[1] The Osteo Bi-Flex line includes: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced (collectively, "Osteo Bi-Flex" or "the Products").

the following subdivisions:

     (5)     Representing that [Osteo Bi-Flex has] . . . characteristics, . . . uses [or] benefits. . .which [it does] not have.

* * *

     (7)     Representing that [Osteo Bi-Flex is] of a particular standard, quality or grade, . . . if [it is] of another.

* * *

     (9)     Advertising goods . . . with the intent not to sell them as advertised.

* * *

     (16)     Representing that [Osteo Bi-Flex has] been supplied in accordance with a previous representation when [it has] not.

California Civil Code §1770(a)(5)-(16).

Defendants' claims also constitute violations of California Business and Professions Code §17200, *et seq.*, and a breach of express warranties.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our client and all other similarly situated California residents that Defendants immediately correct and rectify this violation of California Civil Code §1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information as described in the enclosed Complaint. In addition, Defendants should offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees.

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code §1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received. These damage claims also would include claims under already asserted theories of unlawful business acts, as well as the claims under the Consumers Legal Remedies Act. Thus, to avoid further litigation, it is in the interest of all parties concerned that Defendants address this problem immediately.

Defendants must undertake all of the following actions to satisfy the requirements of California Civil Code §1782(c):

     1.     Identify or make a reasonable attempt to identify purchasers of the subject

Products who reside in California;

2.     Notify all such purchasers so identified that upon their request, Defendants will offer an appropriate remedy for its wrongful conduct, which can include a full refund of the purchase price paid for such products, plus interest, costs and fees;

3.     Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all Osteo Bi-Flex purchasers who so request; and

4.     Cease from expressly or impliedly representing to consumers that these Products are effective at treating arthritis related symptoms or any other joint ailments when there is no reasonable basis for so claiming, as more fully described in the attached Complaint.

We await your response.

Very truly yours,

Patricia N. Syverson
For the Firm

PNS:lmg
Enclosures

**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, PC**

| | | |
|---|---|---|
| JERRY C. BONNETT | WILLIAM G. FAIRBOURN | ANDREW S. FRIEDMAN |
| FRANCIS J. BALINT, JR. | VAN BUNCH | ROBERT J. SPURLOCK |
| C. KEVIN DYKSTRA | ELAINE A. RYAN | WENDY J. HARRISON |
| ANDREW Q. EVERROAD | KATHRYN A. HONECKER | PATRICIA N. SYVERSON |
| JONATHAN S. WALLACK | GUY A. HANSON | KIMBERLY C. PAGE |
| CHRISTINA L. BANNON | MANFRED P. MUECKE[1] | TODD D. CARPENTER[1] |
| WILLIAM F. KING | TONNA K. FARRAR[2] | T. BRENT JORDAN[3] |
| ANDREW M. EVANS | TY D. FRANKEL | LINDSEY M. GOMEZ |
| KEVIN R. HANGER | ERIC D. ZARD | |

MICHAEL N. WIDENER, Of Counsel

[1] Admitted Only in California
[2] Admitted Only in California, Missouri
and Kansas
[3] Admitted Only in Pennsylvania

June 14, 2011

<u>**VIA CERTIFIED MAIL (RETURN RECEIPT)**</u>
**(RECEIPT NO. 7009-0080-0000-4081-5424)**

Rexall Sundown, Inc.,
General Counsel
2100 Smithtown Ave.,
Ronkonkoma, New York 11779

     Re:    Cardenas v. NBTY, Inc., *et al.*

Dear Sir or Madam:

     Our law firm represents Lilian Cardenas and all other similarly situated California Residents in an action against NBTY, Inc. ("NBTY") and Rexall Sundown, Inc. ("Rexall") (collectively, "Defendants") arising out of, *inter alia*, misrepresentations, either express or implied, by Defendants to consumers that the Osteo Bi-Flex line of joint dietary supplements[1] are effective treatments for arthritis and other joint related ailments.

     Ms. Cardenas and other similarly situated California residents purchased the Osteo Bi-Flex products unaware that Defendants' representations found on the Products' labels and packages were not substantiated by competent scientific evidence, including, among others, that Osteo Bi-Flex will increase mobility, renew cartilage, and maintain healthy connective tissue. The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is enclosed and incorporated by this reference.

     These representations are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by Defendants with the intent to result in the sale of Osteo Bi-Flex to the consuming public. In fact, these representations do not assist consumers; they simply mislead them.

     This practice constitutes a violation of California Civil Code §1770(a) under, *inter alia,* the following subdivisions:

---

[1] The Osteo Bi-Flex line includes: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced (collectively, "Osteo Bi-Flex" or "the Products").

    (5)    Representing that [Osteo Bi-Flex has] . . . characteristics, . . . uses [or] benefits. . .which [it does] not have.

* * *

    (7)    Representing that [Osteo Bi-Flex is] of a particular standard, quality or grade, . . . if [it is] of another.

* * *

    (9)    Advertising goods . . . with the intent not to sell them as advertised.

* * *

    (16)    Representing that [Osteo Bi-Flex has] been supplied in accordance with a previous representation when [it has] not.

California Civil Code §1770(a)(5)-(16).

Defendants' claims also constitute violations of California Business and Professions Code §17200, *et seq.*, and a breach of express warranties.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our client and all other similarly situated California residents that Defendants immediately correct and rectify this violation of California Civil Code §1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information as described in the enclosed Complaint. In addition, Defendants should offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees.

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code §1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received. These damage claims also would include claims under already asserted theories of unlawful business acts, as well as the claims under the Consumers Legal Remedies Act. Thus, to avoid further litigation, it is in the interest of all parties concerned that Defendants address this problem immediately.

Defendants must undertake all of the following actions to satisfy the requirements of California Civil Code §1782(c):

1.    Identify or make a reasonable attempt to identify purchasers of the subject Products who reside in California;

2.      Notify all such purchasers so identified that upon their request, Defendants will offer an appropriate remedy for its wrongful conduct, which can include a full refund of the purchase price paid for such products, plus interest, costs and fees;

3.      Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all Osteo Bi-Flex purchasers who so request; and

4.      Cease from expressly or impliedly representing to consumers that these Products are effective at treating arthritis related symptoms or any other joint ailments when there is no reasonable basis for so claiming, as more fully described in the attached Complaint.

We await your response.

Very truly yours,

Patricia N. Syverson
For the Firm

PNS:lmg
Enclosures

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
ELAINE A. RYAN (*admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
2901 N. Central Ave., Suite 1000
Phoenix, AZ 85012
eryan@bffb.com
psyverson@bffb.com
Telephone:   (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone: (619) 756-6978

FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN (*To be admitted Pro Hac Vice*)
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
sweltman@futtermanhoward.com
Telephone: (312) 427-3600

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIANA CARDENAS, On Behalf of Herself and All Other Similarly Situated California Residents,<br><br>Plaintiff,<br><br>v.<br><br>NBTY, INC., a Delaware corporation and REXALL SUNDOWN, INC., a Florida corporation,<br><br>Defendants. | Case No.: 2:11-CV-01615-LKK-CKD<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1.  VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br>2.  VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and<br>3.  BREACH OF EXPRESS WARRANTY.<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Liliana Cardenas ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants NBTY, Inc. and Rexall Sundown, Inc. (collectively "Defendants"), and alleges as follows:

## NATURE OF ACTION

1.      Defendants manufacture, market, sell and distribute Osteo Bi-Flex, a line of joint health dietary supplements.[1] Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendants claim that their Osteo Bi-Flex products will help promote mobility, renew cartilage, maintain healthy connective tissue and improve joint comfort for all joints in the human body, for adults of all ages and for all stages or variations of joint disease or ailments. For example, on each and every Osteo Bi-Flex product label and/or package, Defendants prominently state that Osteo Bi-Flex helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improves joint comfort (hereafter referred to as the "joint renewal and rejuvenation" representations). However, the Osteo Bi-Flex products do not support joint renewal and rejuvenation. Clinical cause and effect studies have found no causative link between the ingredients in the Osteo Bi-Flex products and the prevention or lessening of joint degeneration or relief from joint discomfort. Defendants also do not have competent and reliable scientific evidence to support their representations. Defendants' representations are false, misleading, and reasonably likely to deceive the public.

2.      Despite the deceptive nature of Defendants' representations, Defendants conveyed and continue to convey their deceptive joint renewal and rejuvenation representations through a variety of media, including in their print, radio and television advertisements, as well as on their Product packages and labeling, website and online promotional materials. The only reason a consumer would purchase the Osteo Bi-Flex

---

[1] The Osteo Bi-Flex line includes: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced (collectively, "Osteo Bi-Flex" or "the Products").

- 2 -

products is to obtain the advertised joint health benefits, which Osteo Bi-Flex does not provide.

3.      Defendants' marketing and advertising campaign is designed to cause consumers to buy Osteo Bi-Flex. Defendants' deceptive marketing and advertising campaign has succeeded. Estimated sales of joint dietary supplements including Osteo Bi-Flex, approached $820 million in 2006.[2]

4.      Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased the Products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Osteo Bi-Flex products.  Plaintiff alleges violations of the Unfair Competition Law, the Consumers Legal Remedies Act, and Breach of Express Warranty created by Defendants' advertising, including false labeling.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from Defendants.

6.      This Court has personal jurisdiction over Defendants because Defendants are authorized to do and do business in California.  Defendants have marketed, promoted, distributed, and sold the Osteo Bi-Flex products in California and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b)

---

[2] 2007 Nutrition Industry Overview, Nutrition Business J., *available at* http://newhope360.com/managing-your-business/2007-nutrition-industry-overview (last visited Apr. 4, 2011).

because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

## PARTIES

8.      Plaintiff Liliana Cardenas resides in Roseville, California. Within the last year and a half, Plaintiff Cardenas was exposed to and saw Defendants' representations by reading the front, back and sides of the Osteo Bi-Flex Regular Strength label at a Rite Aid store in Roseville, California. After reading the label, Plaintiff Cardenas purchased the Osteo Bi-Flex product to relieve her joint pain and in so doing relied on every single one of Defendants' renewal and rejuvenation representations. The Osteo Bi-Flex Regular Strength Plaintiff purchased and took as directed did not help "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort as represented. As a result, Plaintiff suffered injury in fact and lost money. She would not have purchased the Product had she known it did not provide the advertised joint health benefits.

9.      Defendant NBTY, Inc. ("NBTY") is a corporation organized and existing under the laws of the state of Delaware. Defendant NBTY's headquarters is at 2100 Smithtown Ave., Ronkonkoma, New York 11779.

10.     Defendant Rexall Sundown, Inc. ("Rexall") is a corporation organized and existing under the laws of the state of Florida. Defendant Rexall's headquarters is at 2100 Smithtown Ave., Ronkonkoma, New York 11779.

11.     Defendant NBTY together with Defendant Rexall Sundown, have manufactured, advertised, marketed, distributed, or sold the Osteo Bi-Flex products to tens of thousands of consumers in California and throughout the United States.

12.     Plaintiff is informed and believes, and thus alleges, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged

- 4 -

herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant.

## FACTUAL ALLEGATIONS

### *The Osteo Bi-Flex Products*

13. Since 1996, Defendants have developed, manufactured, marketed, distributed and sold a line of joint supplements under the Osteo Bi-Flex brand name. These Products include: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced.

14. The Osteo Bi-Flex products are sold in virtually every major food, drug, and mass retail outlet store in California, including, but not limited to: Wal-Mart, Costco Wholesale, Sam's Club, Rite-Aid, Target, and Walgreens. The Osteo Bi-Flex products are available in 30, 75, 80, 120 and 150 count bottles, retailing for approximately $19.99 to $44.99. The following are screen shots of the Products:

   

   

15.     Since the Products' launch, Defendants have consistently conveyed the message to consumers throughout California that Osteo Bi-Flex will help to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort simply by taking the recommended number of tablets each day.  Defendants' renewal and rejuvenation representations are false, misleading and deceptive.

16.     Defendants represent that the claimed health benefits are achieved through the combination of ingredients in the Products.   The primary active ingredient - glucosamine hydrochloride – is in all the Osteo Bi-Flex products.  Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue.  There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that helps to promote mobility, renew cartilage, maintain healthy connective tissue or improve joint comfort.  In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation.

17.     The Osteo Bi-Flex products also contain Defendants' 5-LOXIN Advanced, which consists of a concentrated extract of *Boswellia Serrata* ("AKBA").[3]  AKBA is a gum resin extracted from an herb.  Defendants' claim that the AKBA results in "improvement in joint comfort within 7 days."  There is no competent and reliable scientific evidence that taking AKBA—let alone through oral administration—helps to

---

[3] Osteo Bi-Flex Regular Strength is the only product without AKBA.

"promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort. Clinical cause and effect studies have been unable to confirm a cause and effect relationship between AKBA supplementation and joint renewal or rejuvenation.

18.     The Osteo Bi-Flex products also contain lesser amounts of other ingredients. Chondroitin sulfate is in all but one of the Products.[4] Chondroitin sulfate is a complex carbohydrate found in the body's connective tissues. There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal or rejuvenation.

19.     Some of the Osteo Bi-Flex products also contain methylsulfonylmethane ("MSM"), an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk.[5] There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal or rejuvenation.

20.     Some of the Osteo Bi-Flex products also contain hyaluronic acid, a component of synovial fluid found in the fluids of the eyes and joints.[6] There is no competent and reliable scientific evidence that taking hyaluronic acid—let alone through oral administration—helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort. Clinical cause and effect studies have found no causative link between hyaluronic acid supplementation and joint renewal or

---

[4] Osteo Bi-Flex One Per Day is the only product without chondroitin sulfate.
[5] Osteo Bi-Flex One Per Day and Osteo Bi-Flex Regular Strength are the only products without MSM.
[6] Osteo Bi-Flex Advanced , Osteo Bi-Flex One Per Day and Osteo Bi-Flex Regular Strength are the only products without hyaluronic acid.

rejuvenation.

21.    Some of the Osteo Bi-Flex products also contain other ingredients such as vitamin D; vitamin C, manganese, boron and collagen.  There is no competent and reliable scientific evidence that taking any of these ingredients—let alone through oral administration—results in the body metabolizing it into something that helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort.  Clinical cause and effect studies have found no causative link between supplementation and joint renewal or rejuvenation.

22.    The Product packages reference two studies purportedly supporting Defendants' "shows improvement in joint comfort" representation.  No identifying information is included to enable consumers to locate and review the studies.  Based on the limited descriptive information provided, the studies are not competent and reliable scientific support for Defendants' representations.  In fact, clinical cause and effect studies have found no causative link between the ingredients in the Osteo Bi-Flex products and the prevention of joint degeneration or relief from joint discomfort.  Thus, Defendants' citation to these studies as support for Defendants' joint comfort representations constitutes further deceptive and misleading conduct, in as much as the studies are not competent and reliable evidence of efficacy.

23.    Even though several clinical cause and effect studies have found no causative link between any of the ingredients in the Osteo Bi-Flex products alone, or in combination, and without any scientifically valid confirmation that Osteo Bi-Flex is an effective joint treatment—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages and for *all* stages of joint disease—Defendants continue to state on the Products' packaging and labeling that Osteo Bi-Flex helps to, *inter alia*: "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort.  Front, back, and side shots of a representative Osteo Bi-Flex Regular Strength product label appear as follows:

TOP



LEFT SIDE



RIGHT SIDE



BACK



Copies of all the Osteo Bi-Flex product labels are attached hereto as Exhibit A.

24.     Defendants did not and do not have competent and reliable scientific evidence that any of the ingredients in their Osteo Bi-Flex products taken alone or in combination are effective at helping provide joint renewal or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Osteo Bi-Flex products and the prevention of joint degeneration or relief from joint discomfort. Defendants' renewal and rejuvenation representations are false and misleading and reasonably likely to deceive the average consumer.

***The Impact of Defendants' Wrongful Conduct***

25.     Despite inadequate and inapposite testing and the presence of several clinical studies that have found no causative like between the ingredients in the Osteo Bi-Flex products and joint renewal or rejuvenation, Defendants continue to unequivocally represent that the Osteo Bi-Flex products provide joint health benefits to all persons.

26.     As the manufacturer and distributor of Osteo Bi-Flex, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in their products and are in a superior position to learn of the effects - and have learned of the effects - their products have on consumers.

27.     Specifically, Defendants affirmatively misrepresented that the Osteo Bi-Flex products help to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort.    Having made these affirmative misrepresentations, Defendants failed to disclose that well-conducted, clinical cause-and-effect studies have found no causative relationship between the active ingredients and the prevention of joint degeneration or relief from joint discomfort and Defendants have no competent and reliable scientific evidence that their Osteo Bi-Flex products are effective in helping provide joint renewal or rejuvenation as represented.

28.     Notwithstanding these deceptive representations and material omissions, Defendants conveyed and continue to convey one uniform message: Osteo Bi-Flex will

help "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort for all joints in the human body, for adults of all ages and for all stages of joint disease.

29.    Plaintiff and Class members have been and will continue to be deceived or misled by Defendants' deceptive joint renewal and rejuvenation representations. Plaintiff purchased and consumed the Product during the Class period and in doing so, read and considered the product labels and based her decision to buy the Products on the joint renewal and rejuvenation representations. Defendants' deceptive representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the Product. Plaintiff would not have purchased the Product had she known that Defendants' representations were false and misleading, that Defendants did not possess competent and reliable scientific evidence to support their joint renewal and rejuvenation representations, and that clinical cause-and-effect studies have found no causative link between the ingredients in Osteo Bi-Flex and joint renewal or rejuvenation.

30.    As a result, Plaintiff and the Class members have been damaged in their purchases of these Products in that they were deceived into purchasing Products that they believed, based on Defendants' representations, were proven effective in improving joint mobility, renewing cartilage, maintaining healthy connective tissue and improving joint comfort when, in fact, they are not.

31.    Defendants, by contrast, reaped enormous profits from their false marketing and sale of these Products.

## CLASS ALLEGATIONS

32.    Plaintiff brings this action on behalf of herself and all other similarly situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

All California residents who, within the applicable statute of limitations, purchased the Osteo Bi-Flex products.[7]

Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased the Osteo Bi-Flex products for the purpose of resale.

33.     *Numerosity*.  The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Osteo Bi-Flex products who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

34.     *Existence and Predominance of Common Questions of Law and Fact*. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

●     whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

●     whether Defendants' alleged conduct violates public policy;

●     whether the alleged conduct constitutes violations of the laws asserted;

●     whether Defendants engaged in false or misleading advertising;

●     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

●     whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

35.     *Typicality*.  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform

---

[7]The Osteo Bi-Flex products include: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced.

misconduct described above, were subject to Defendants' deceptive joint renewal and rejuvenation representations accompanying each and every box of the Osteo Bi-Flex products which include the same primary active ingredient – glucosamine hydrochloride – and several other common ingredients. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

36. ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

37. ***Superiority.*** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

38. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiff and Class members.

39.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

40.     Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## COUNT I

### Violation of Business & Professions Code §17200, *et seq.*

41.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

42.     Plaintiff Liliana Cardenas brings this claim individually and on behalf of the Class.

43.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct because she purchased Osteo Bi-Flex in reliance on Defendants' joint renewal and rejuvenation representations detailed above, but did not receive a product that supports joint renewal or rejuvenation.

44.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.   In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

45.     Plaintiff and the Class reserve the right to allege other violations of law,

which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

46.     Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented and omitted material facts regarding their Osteo Bi-Flex product labels and packaging, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

47.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

48.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

49.     Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

50.     Defendants' actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

51.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased Defendants' Osteo Bi-Flex products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

52.     As a result of their deception, Defendants have been able to reap unjust revenue and profit.

53.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

54.     Plaintiff, on behalf of herself and all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II

**Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.***

55.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

56.     Plaintiff Liliana Cardenas brings this claim individually and on behalf of the Class.

57.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act"). Plaintiff is a consumer as defined by California Civil Code §1761(d). Osteo Bi-Flex is a "good" within the meaning of the Act.

58.     Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Osteo Bi-Flex products:

(5)     Representing that [Osteo Bi-Flex has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*       \*       \*

- 16 -

(7)     Representing that [Osteo Bi-Flex is] of a particular standard, quality or grade . . . if [it is] of another.

*       *       *

(9)     Advertising goods . . . with intent not to sell them as advertised.

*       *       *

(16)    Representing that [Osteo Bi-Flex has] been supplied in accordance with a previous representation when [it has] not.

59.     Defendants violated the Act by representing and failing to disclose material facts on the Osteo Bi-Flex product labels and packaging, as described above, when they knew, or should have known, that the representations were unsubstantiated, were contrary to several clinical cause and effect studies finding the ingredients in all Osteo Bi-Flex products to be inefficacious, were false and misleading and that the omissions were of material facts they were obligated to disclose.

60.     Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

61.     Pursuant to §1782 of the Act, by letters dated June 14, 2011, Plaintiff notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.

62.     Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiff further seeks claims for actual, punitive and statutory damages, as appropriate.

63.     Defendants' conduct is malicious, fraudulent and wanton.

## COUNT III

### Breach of Express Warranty

64.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

65.     Plaintiff Liliana Cardenas brings this claim individually and on behalf of the Class.

66.     Defendants expressly warranted on each and every box of Osteo Bi-Flex that the Products help to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort. These joint renewal and rejuvenation statements made by Defendants are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises.   Plaintiff read and placed importance on Defendants' joint renewal and rejuvenation representations.

67.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

68.     Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product that would support joint renewal and rejuvenation as represented.

69.     As a result of Defendants' breach of their contract, Plaintiff and the Class have been damaged in the amount of the price of the Products they purchased.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and the proposed Class members' damages;

C.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

D.     Awarding injunctive relief as permitted by law or equity, including:

enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

      E.      Awarding statutory and punitive damages, as appropriate;

      F.      Ordering Defendants to engage in a corrective advertising campaign;

      G.      Awarding attorneys' fees and costs; and

      H.      Providing such further relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: October 24, 2011

        BONNETT, FAIRBOURN, FRIEDMAN
        & BALINT, P.C.


        _s/ Patricia N. Syverson_____
        Elaine A. Ryan (*admitted Pro Hac Vice*)
        Patricia N. Syverson (203111)
        2901 N. Central Ave., Suite 1000
        Phoenix, AZ 85012
        eryan@bffb.com
        psyverson@bffb.com
        Telephone:  (602) 274-1100

        BONNETT, FAIRBOURN, FRIEDMAN
        & BALINT, P.C.
        Todd D. Carpenter (234464)
        600 W. Broadway, Suite 900
        San Diego, California 92101
        tcarpenter@bffb.com
        Telephone:  (619) 756-6978

        FUTTERMAN HOWARD ASHLEY
        & WELTMAN, P.C.
        Stewart Weltman (*To be admitted Pro Hac Vice*)

- 19 -

122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
sweltman@futtermanhoward.com
Telephone: (312) 427-3600

Attorneys for Plaintiff

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
ELAINE A. RYAN (*Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
LINDSEY M. GOMEZ-GRAY (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, #300
Phoenix, AZ 85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:   (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone: (619) 756-6978

[Additional Counsel Located on Signature Page]

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIANA CARDENAS, an Individual, and FRANCISCO PADILLA, an Individual, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NBTY, INC., a Delaware corporation and REXALL SUNDOWN, INC., a Florida corporation, <br><br> Defendants. | Case No.: 2:11-CV-01615-LKK-CKD <br><br> **CLASS ACTION** <br><br> **THIRD AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; <br> 2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; <br> 3. VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT, 502/1 *et seq.*; and <br> 4. BREACH OF EXPRESS WARRANTY. <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs Liliana Cardenas and Francisco Padilla ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants NBTY, Inc. and Rexall Sundown, Inc. (collectively "Defendants"), and allege as follows:

## NATURE OF ACTION

1.      Defendants manufacture, market, sell and distribute Osteo Bi-Flex, a line of joint health dietary supplements.[1]  Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendants claim that their Osteo Bi-Flex products will help promote mobility, renew cartilage, maintain healthy connective tissue and improve joint comfort for all joints in the human body, for adults of all ages and for all stages or variations of joint disease or ailments.  For example, on each and every Osteo Bi-Flex product label and/or package, Defendants prominently state that Osteo Bi-Flex helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improves joint comfort (hereafter referred to as the "joint renewal and rejuvenation" representations).  However, the Osteo Bi-Flex products do not support joint renewal and rejuvenation.  Clinical cause and effect studies have found no causative link between the ingredients in the Osteo Bi-Flex products and the prevention or lessening of joint degeneration or relief from joint discomfort.  Defendants also do not have competent and reliable scientific evidence to support their representations.  Defendants' representations are false, misleading, and reasonably likely to deceive the public.

2.      Despite the deceptive nature of Defendants' representations, Defendants conveyed and continue to convey their deceptive joint renewal and rejuvenation representations through a variety of media, including in their print, radio and television advertisements, as well as on their Product packages and labeling, website and online

---

[1] The Osteo Bi-Flex line includes: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced (collectively, "Osteo Bi-Flex" or "the Products").

2

promotional materials. The only reason a consumer would purchase the Osteo Bi-Flex products is to obtain the advertised joint health benefits, which Osteo Bi-Flex does not provide.

3.     Defendants' marketing and advertising campaign is designed to cause consumers to buy Osteo Bi-Flex. Defendants' deceptive marketing and advertising campaign has succeeded. Estimated sales of joint dietary supplements including Osteo Bi-Flex, approached $820 million in 2006.[2]

4.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased the Products to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Osteo Bi-Flex products.   Based on violations of state unfair competition laws (described below) and breach of express warranties, Plaintiffs seek injunctive and monetary relief for consumers who purchased the Osteo Bi-Flex products.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the Class are citizens of states different from Defendants.

6.     This Court has personal jurisdiction over Defendants because Defendants are authorized to do and do business in California. Defendants have marketed, promoted, distributed, and sold the Osteo Bi-Flex products in California and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

---

[2] 2007 Nutrition Industry Overview, Nutrition Business J., *available at* http://newhope360.com/managing-your-business/2007-nutrition-industry-overview (last visited Apr. 4, 2011).

3

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred while Plaintiff Cardenas resided in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

## PARTIES

8.      Plaintiff Liliana Cardenas resides in Roseville, California.  Within the last year and a half, Plaintiff Cardenas was exposed to and saw Defendants' representations by reading the front, back and sides of the Osteo Bi-Flex Regular Strength label at a Rite Aid store in Roseville, California.  After reading the label, Plaintiff Cardenas purchased the Osteo Bi-Flex product and in so doing relied on every single one of Defendants' renewal and rejuvenation representations. The Osteo Bi-Flex Regular Strength Plaintiff Cardenas purchased and took as directed did not help "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort as represented. As a result, Plaintiff Cardenas suffered injury in fact and lost money.  She would not have purchased the Product had she known it did not provide the advertised joint health benefits.

9.      Plaintiff Francisco Padilla resides in Cook County, Illinois.  In late 2010, Plaintiff Padilla was exposed to and saw Defendants' representations by reading the front, back and sides of the Osteo Bi-Flex Triple Strength Product at a Walgreens store in Chicago, Illinois.  After reading the label, Plaintiff Padilla purchased the Osteo Bi-Flex product and relied on every single one of Defendants' renewal and rejuvenation representations. The Osteo Bi-Flex Triple Strength Product Plaintiff Padilla purchased and took as directed did not help "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort as represented. As a result, Plaintiff Padilla was deceived in some manner into purchasing the Product and suffered injury in fact and lost money.

4

10.     Defendant NBTY, Inc. ("NBTY") is a corporation organized and existing under the laws of the state of Delaware.   Defendant NBTY's headquarters is at 2100 Smithtown Ave., Ronkonkoma, New York 11779.

11.     Defendant Rexall Sundown, Inc. ("Rexall") is a corporation organized and existing under the laws of the state of Florida.   Defendant Rexall's headquarters is at 2100 Smithtown Ave., Ronkonkoma, New York 11779.

12.     Defendant NBTY together with Defendant Rexall Sundown, have manufactured, advertised, marketed, distributed, or sold the Osteo Bi-Flex products to tens of thousands of consumers in California and throughout the United States.

13.     Plaintiffs are informed and believe, and thus allege, that at all times herein mentioned, each of the Defendants was the agent, employee, representative, partner, joint venturer, and/or alter ego of the other Defendant and, in doing the things alleged herein, was acting within the course and scope of such agency, employment, representation, on behalf of such partnership or joint venture, and/or as such alter ego, with the authority, permission, consent, and/or ratification of the other Defendant.

## FACTUAL ALLEGATIONS

### The Osteo Bi-Flex Products

14.     Since 1996, Defendants have developed, manufactured, marketed, distributed and sold a line of joint supplements under the Osteo Bi-Flex brand name. These Products include: (1) Osteo Bi-Flex One Per Day; (2) Osteo Bi-Flex Triple Strength; (3) Osteo Bi-Flex Double Strength; (4) Osteo Bi-Flex Triple Strength with Vitamin D; (5) Osteo Bi-Flex MSM; (6) Osteo Bi-Flex Energy Formula; (7) Osteo Bi-Flex Regular Strength; and (8) Osteo Bi-Flex Advanced.

15.     The Osteo Bi-Flex products are sold in virtually every major food, drug, and mass retail outlet store in California, including, but not limited to: Wal-Mart, Costco Wholesale, Sam's Club, Rite-Aid, Target, and Walgreens.   The Osteo Bi-Flex products

are available in 30, 75, 80, 120 and 150 count bottles, retailing for approximately $19.99 to $44.99. The following are screen shots of the Products:

  

  

16.    Since the Products' launch, Defendants have consistently conveyed the message to consumers throughout California that Osteo Bi-Flex will help to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort simply by taking the recommended number of tablets each day.   Defendants' renewal and rejuvenation representations are false, misleading and deceptive.

17.    Defendants represent that the claimed health benefits are achieved through the combination of ingredients in the Products.   The primary active ingredient - glucosamine hydrochloride – is in all the Osteo Bi-Flex products.   Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue.  There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it

into something that helps to promote mobility, renew cartilage, maintain healthy connective tissue or improve joint comfort.  In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation.

18.    The Osteo Bi-Flex products also contain Defendants' 5-LOXIN Advanced, which consists of a concentrated extract of *Boswellia Serrata* ("AKBA").[3]  AKBA is a gum resin extracted from an herb.  Defendants' claim that the AKBA results in "improvement in joint comfort within 7 days."  There is no competent and reliable scientific evidence that taking AKBA—let alone through oral administration—helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort.  Clinical cause and effect studies have been unable to confirm a cause and effect relationship between AKBA supplementation and joint renewal or rejuvenation.

19.    The Osteo Bi-Flex products also contain lesser amounts of other ingredients. Chondroitin sulfate is in all but one of the Products.[4]  Chondroitin sulfate is a complex carbohydrate found in the body's connective tissues. There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort.  Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal or rejuvenation.

20.    Some of the Osteo Bi-Flex products also contain methylsulfonylmethane ("MSM"), an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk.[5]  There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—helps to "promote mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint comfort.  Clinical cause and effect studies

---

[3] Osteo Bi-Flex Regular Strength is the only product without AKBA.
[4] Osteo Bi-Flex One Per Day is the only product without chondroitin sulfate.
[5] Osteo Bi-Flex One Per Day and Osteo Bi-Flex Regular Strength are the only products without MSM.

1  have found no causative link between MSM supplementation and joint renewal or

2  rejuvenation.

3      21.    Some of the Osteo Bi-Flex products also contain hyaluronic acid, a

4  component of synovial fluid found in the fluids of the eyes and joints.[6]   There is no

5  competent and reliable scientific evidence that taking hyaluronic acid—let alone through

6  oral administration—helps to "promote mobility", "renew cartilage", "maintain healthy

7  connective tissue" or improve joint comfort.   Clinical cause and effect studies have found

8  no causative link between hyaluronic acid supplementation and joint renewal or

9  rejuvenation.

10      22.    Some of the Osteo Bi-Flex products also contain other ingredients such as

11  vitamin D; vitamin C, manganese, boron and collagen.   There is no competent and

12  reliable scientific evidence that taking any of these ingredients—let alone through oral

13  administration—results in the body metabolizing it into something that helps to "promote

14  mobility", "renew cartilage", "maintain healthy connective tissue" or improve joint

15  comfort.   Clinical cause and effect studies have found no causative link between

16  supplementation and joint renewal or rejuvenation.

17      23.    The Product packages reference two studies purportedly supporting

18  Defendants' "shows improvement in joint comfort" representation.   No identifying

19  information is included to enable consumers to locate and review the studies.   Based on

20  the limited descriptive information provided, the studies are not competent and reliable

21  scientific support for Defendants' representations.   In fact, clinical cause and effect

22  studies have found no causative link between the ingredients in the Osteo Bi-Flex

23  products and the prevention of joint degeneration or relief from joint discomfort.   Thus,

24  Defendants' citation to these studies as support for Defendants' joint comfort

25  representations constitutes further deceptive and misleading conduct, in as much as the

26  

27  [6] Osteo Bi-Flex Advanced, Osteo Bi-Flex One Per Day and Osteo Bi-Flex Regular Strength are the only products without hyaluronic acid.

28

studies are not competent and reliable evidence of efficacy.

24.   Even though several clinical cause and effect studies have found no causative link between any of the ingredients in the Osteo Bi-Flex products alone, or in combination, and without any scientifically valid confirmation that Osteo Bi-Flex is an effective joint treatment—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages and for *all* stages of joint disease—Defendants continue to state on the Products' packaging and labeling that Osteo Bi-Flex helps to, *inter alia*: "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort.   Front, back, and side shots of a representative Osteo Bi-Flex Regular Strength product label appear as follows:

TOP                                                                    LEFT SIDE





Copies of all the Osteo Bi-Flex product labels are attached hereto as Exhibit A.

25.     Defendants did not and do not have competent and reliable scientific evidence that any of the ingredients in their Osteo Bi-Flex products taken alone or in combination are effective at helping provide joint renewal or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Osteo Bi-Flex products and the prevention of joint degeneration or relief from joint discomfort. Defendants' renewal and rejuvenation representations are false and misleading and reasonably likely to deceive the average consumer.

**The Impact of Defendants' Wrongful Conduct**

26.     Despite inadequate and inapposite testing and the presence of several clinical studies that have found no causative link between the ingredients in the Osteo Bi-Flex products and joint renewal or rejuvenation, Defendants continue to unequivocally

represent that the Osteo Bi-Flex products provide joint health benefits to all persons.

27.     As the manufacturer and distributor of Osteo Bi-Flex, Defendants possess specialized knowledge regarding the content and effects of the ingredients contained in their products and are in a superior position to learn of the effects - and have learned of the effects - their products have on consumers.

28.     Specifically, Defendants affirmatively misrepresented that the Osteo Bi-Flex products help to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort.    Having made these affirmative misrepresentations, Defendants failed to disclose that well-conducted, clinical cause-and-effect studies have found no causative relationship between the active ingredients and the prevention of joint degeneration or relief from joint discomfort and Defendants have no competent and reliable scientific evidence that their Osteo Bi-Flex products are effective in helping provide joint renewal or rejuvenation as represented.

29.     Notwithstanding these deceptive representations and material omissions, Defendants conveyed and continue to convey one uniform message: Osteo Bi-Flex will help "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort for all joints in the human body, for adults of all ages and for all stages of joint disease.

30.     Plaintiffs and Class members have been and will continue to be deceived or misled by Defendants' deceptive joint renewal and rejuvenation representations. Plaintiffs purchased and consumed the Products during the Class period and in doing so, read and considered the product labels and based their decision to buy the Products on the joint renewal and rejuvenation representations. Defendants' deceptive representations and omissions were a material factor in influencing Plaintiffs' decision to purchase and consume the Products. Plaintiffs would not have purchased the Products had they known that Defendants' representations were false and misleading, that Defendants did not possess competent and reliable scientific evidence to support their joint renewal and

rejuvenation representations, and that clinical cause-and-effect studies have found no causative link between the ingredients in Osteo Bi-Flex and joint renewal or rejuvenation.

31.    As a result, Plaintiffs and the Class members have been damaged in their purchases of these Products in that they were deceived into purchasing Products that they believed, based on Defendants' representations, were proven effective in improving joint mobility, renewing cartilage, maintaining healthy connective tissue and improving joint comfort when, in fact, they are not.

32.    Defendants, by contrast, reaped enormous profits from their false marketing and sale of these Products.

## CLASS ALLEGATIONS

33.    Plaintiffs bring this action on behalf of themselves and all other similarly situated residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class against Defendants for violations of California and Illinois laws and similar laws in other states:

> **Multi-State Class Action**
> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act, purchased the Osteo Bi-Flex products.
>
> Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who purchased the Osteo Bi-Flex products for the purpose of resale.

34.    In the alternative, Plaintiff Cardenas brings this action on behalf of herself and all other similarly situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **California-Only Class**
> All California residents who, within the applicable statute of limitations, purchased the Osteo Bi-Flex products.

12

1   Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who
2   purchased the Osteo Bi-Flex products for the purpose of resale.

3   35.   In the alternative, Plaintiff Padilla brings this action on behalf of himself
4   and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3)
5   of the Federal Rules of Civil Procedure and seeks certification of the following Class:

6   **Illinois-Only Class**
7   All Illinois residents who, within the applicable statute of limitations, purchased the Osteo Bi-Flex products.
8

9   Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and those who
10   purchased the Osteo Bi-Flex products for the purpose of resale.

11   36.   ***Numerosity***.  The members of the Class are so numerous that joinder of all
12   members of the Class is impracticable. Plaintiffs are informed and believe that the
13   proposed Class contains thousands of purchasers of the Osteo Bi-Flex products who have
14   been damaged by Defendants' conduct as alleged herein. The precise number of Class
15   members is unknown to Plaintiffs.

16   37.   ***Existence and Predominance of Common Questions of Law and Fact***.
17   This action involves common questions of law and fact, which predominate over any
18   questions affecting individual Class members. These common legal and factual questions
19   include, but are not limited to, the following:

20   •   whether the claims discussed above are true, or are misleading, or
21   objectively reasonably likely to deceive;

22   •   whether Defendants' alleged conduct violates public policy;

23   •   whether the alleged conduct constitutes violations of the laws
24   asserted;

25   •   whether Defendants engaged in false or misleading advertising;

26   •   whether Plaintiffs and Class members have sustained monetary loss
27   and the proper measure of that loss; and

28

13

• whether Plaintiffs and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

38. *Typicality*. Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Defendants' deceptive joint renewal and rejuvenation representations accompanying each and every box of the Osteo Bi-Flex products which include the same primary active ingredient – glucosamine hydrochloride – and several other common ingredients. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

39. *Adequacy of Representation*. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class.

40. *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

14

41.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described, and requiring Defendants to provide full restitution to Plaintiffs and Class members.

42.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiffs and Class members.  Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

43.     Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Business & Professions Code §17200, *et seq.***
**(Applicable to a Multi-State or California-Only Class)**

44.     Plaintiff Cardenas repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

45.     Plaintiff Cardenas brings this claim individually and on behalf of the Class.

46.     As alleged herein, Plaintiff Cardenas has suffered injury in fact and lost money or property as a result of Defendants' conduct because she purchased Osteo Bi-Flex in reliance on Defendants' joint renewal and rejuvenation representations detailed above, but did not receive a product that supports joint renewal or rejuvenation.

47.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL") and similar laws in other states, prohibit any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating

15

Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

48.    Plaintiff Cardenas and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.   Such conduct is ongoing and continues to this date.

49.    Defendants' actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engaged in false advertising, misrepresented and omitted material facts regarding their Osteo Bi-Flex product labels and packaging, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

50.    As stated in this Complaint, Plaintiff Cardenas alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers.   Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.   This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

51.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

52.    Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

53.    Defendants' actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

54.    Plaintiff Cardenas and other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff

16

Cardenas and other members of the Class who each purchased Defendants' Osteo Bi-Flex products. Plaintiff Cardenas and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

55.    As a result of their deception, Defendants have been able to reap unjust revenue and profit.

56.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

57.    Plaintiff Cardenas, on behalf of herself and all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff Cardenas and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**COUNT II**
**Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.***
**(Applicable to a Multi-State or California-Only Class)**

58.    Plaintiff Cardenas repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

59.    Plaintiff Cardenas brings this claim individually and on behalf of the Class.

60.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act"), and similar laws in other states. Plaintiff Cardenas is a consumer as defined by California Civil Code §1761(d).   Osteo Bi-Flex is a "good" within the meaning of the Act.

61.    Defendants violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff Cardenas and the Class which were intended to result in, and did result in, the sale of the Osteo Bi-Flex products:

17

(5)   Representing that [Osteo Bi-Flex has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

\*      \*      \*

(7)   Representing that [Osteo Bi-Flex is] of a particular standard, quality or grade . . . if [it is] of another.

\*      \*      \*

(9)   Advertising goods . . . with intent not to sell them as advertised.

\*      \*      \*

(16)   Representing that [Osteo Bi-Flex has] been supplied in accordance with a previous representation when [it has] not.

62.   Defendants violated the Act by representing and failing to disclose material facts on the Osteo Bi-Flex product labels and packaging, as described above, when they knew, or should have known, that the representations were unsubstantiated, were contrary to several clinical cause and effect studies finding the ingredients in all Osteo Bi-Flex products to be inefficacious, were false and misleading and that the omissions were of material facts they were obligated to disclose.

63.   Pursuant to §1782(d) of the Act, Plaintiff Cardenas and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

64.   Pursuant to §1782 of the Act, by letters dated June 14, 2011, Plaintiff Cardenas notified Defendants in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.

65.   Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiff Cardenas further

18

seeks claims for actual, punitive and statutory damages, as appropriate.

66.     Defendants' conduct is malicious, fraudulent and wanton.

**COUNT III**
**Violation of the Illinois Consumer Fraud Act**
**(Applicable to a Multi-State or Illinois-Only Class)**

67.     Plaintiff Padilla re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

68.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendants' Osteo Bi-Flex products.

69.     Plaintiff Padilla and the Class were injured by Defendants' deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff Padilla and the Class.

70.     Defendants do business in Illinois, sell and distribute their Osteo Bi-Flex products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the same both in Illinois and elsewhere in the United States.

71.     Defendants' Products purchased by Plaintiff Padilla and the Class were "consumer items" as that term is defined under the Act.

72.     Defendants misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendants as set forth above concerning their Osteo Bi-Flex products which has caused damage and injury to Plaintiff Padilla and the Class.

73.     Defendants' deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

74.     Defendants' deceptive acts proximately caused actual injury and damage to Plaintiff Padilla and the Class.

75.     Defendants intended Plaintiff Padilla and all Class members to rely on their

19

representations.

76.     The conduct of the Defendants constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**COUNT IV**
**Breach of Express Warranty**
**(Applicable to a Multi-State, California-Only or Illinois-Only Class)**

77.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

78.     Plaintiffs Liliana Cardenas and Francisco Padilla bring this claim individually and on behalf of the Class.

79.     Defendants expressly warranted on each and every box of Osteo Bi-Flex that the Products help to "promote mobility", "renew cartilage", "maintain healthy connective tissue" and improve joint comfort. These joint renewal and rejuvenation statements made by Defendants are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises.  Plaintiffs read and placed importance on Defendants' joint renewal and rejuvenation representations.

80.     All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class.

81.     Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing a product that would support joint renewal and rejuvenation as represented.

82.     As a result of Defendants' breach of their contract, Plaintiffs and the Class have been damaged in the amount of the price of the Products they purchased.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment:

A.     Certifying the Class as requested herein;

B.      Awarding Plaintiffs and the proposed Class members' damages;

C.      Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed Class members;

D.      Awarding injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

E.      Awarding statutory and punitive damages, as appropriate;

F.      Ordering Defendants to engage in a corrective advertising campaign;

G.      Awarding attorneys' fees and costs; and

H.      Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of their claims by jury to the extent authorized by law.

Dated: October 30, 2012

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.

 s/ Patricia N. Syverson
Elaine A. Ryan (*Admitted Pro Hac Vice*)
Patricia N. Syverson (203111)
Lindsey M. Gomez-Gray (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, #300
Phoenix, AZ  85016
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:  (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Todd D. Carpenter (234464)
600 W. Broadway, Suite 900
San Diego, California 92101

21

tcarpenter@bffb.com
Telephone:  (619) 756-6978

Stewart M. Weltman (*Admitted Pro Hac Vice*)
122 S. Michigan Ave.  Suite 1850
Chicago, Illinois 60613
(312) 427-3600
sweltman@weltmanlawfirm.com
(OF COUNSEL LEVIN FISHBEIN SEDRAN &
BERMAN)

LEVIN FISHBEIN SEDRAN & BERMAN
Howard J. Sedran  (*Admitted Pro Hac Vice*)
510 Walnut Street
Philadelphia, Pennsylvania 19106
(215) 592-1500
HSedran@lfsblaw.com

Attorneys for Plaintiffs

22

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have served the foregoing document via Electronic Mail to:

> Alycia A. Degen
> adegen@sidley.com
> David R. Carpenter
> drcarpenter@sidley.com
> SIDLEY AUSTIN LLP
> 555 West Fifth Street, Suite 4000
> Los Angeles, California 90013
>
> Kara L. McCall
> kmccall@sidley.com
> SIDLEY AUSTIN LLP
> One South Dearborn Street
> Chicago, IL 60603
>
> *Attorneys for Defendants NBTY, Inc. and Rexall Sundown, Inc.*

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 30, 2012.

> By: s/*Patricia N. Syverson*
> BONNETT, FAIRBOURN, FRIEDMAN
> & BALINT, P.C.
> 2325 E. Camelback Road, #300
> Phoenix, AZ  85016
> psyverson@bffb.com
> Telephone: (602) 274-1100

23

# EXHIBIT A

















UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

RICHARD JENNINGS, on behalf of himself
And all others similarly situated,

                                 Plaintiff,

        -against-

REXALL SUNDOWN, Inc.

                                 Defendant.

Civil Action No.

Class Action Complaint

Jury Trial Demanded

---

       Plaintiff, by and through his counsel, Meiselman, Denlea, Packman, Carton & Eberz P.C.,

brings this class action lawsuit on behalf of himself and a class of similarly-situated individuals

who have purchased an "Osteo Bi-Flex" product manufactured by Defendant from August 10,

2007 through the present.

## PARTIES

       1.    Plaintiff Richard Jennings ("Jennings") is a natural person of full age of majority

who is domiciled and residing in  Oak Bluffs, Massachusetts.

       2.    Defendant Rexall Sundown, Inc. ("Rexall") is a corporation organized and

existing under the laws of the State of Florida, with its principal place of business in Bohemia,

New York.

## JURISDICTION AND VENUE

       3.    This Court has jurisdiction over this action pursuant to the Class Action Fairness

Act of 2005, 28 U.S.C. § 1332(d).  Jurisdiction is proper because (1) the matter in controversy

exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and (2) the named

Plaintiff and the Defendant are citizens of different states.  28 U.S.C. §1332(d)(2)(A).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a

substantial part of the events giving rise to the claim occurred within this judicial district, and

because defendant has marketed and sold the products at issue in this action within this judicial

district and has done business within this judicial district.

## GENERAL ALLEGATIONS

5.      Rexall is the manufacturer and seller of a wide variety of vitamin, nutritional and

dietary supplement products.

6.      One of Rexall's most successful products is a line of dietary supplements sold

under the trademarked name Osteo Bi-Flex.  The Osteo Bi-Flex product line is a line of products

that contain, among other contents, glucosamine and chondroitin.  The annual sales of the Osteo

Bi-Flex products are in excess of $100 million.  The Osteo Bi-Flex products are sold nationwide

in drug stores, supermarkets, warehouse clubs and mass merchandisers, including Wal-Mart,

Sam's Club, CVS, Duane Reade and Target.  Rexall extensively advertises its Osteo Bi-Flex

product line in consumer and trade media with national distribution, and also maintains a website

devoted exclusively to its Osteo Bi-Flex line of products (http://www.osteobiflex.com).

7.      All of Rexall's products in its Osteo Bi-Flex product line contain glucosamine,

chondroitin and/or a methylsulfonylmethane.

8.      The Osteo Bi-Flex product line currently includes the following:

Osteo Bi-Flex One Per Day Glucosamine HCl & Vitamin D3 with 5-Loxin
Advanced;

Osteo Bi-Flex Triple Strength Glucosamine Chondroitin MSM with 5-Loxin
Advanced;

2

Osteo Bi-Flex Double Strength Glucosamine Chondroitin MSM with 5-Loxin Advanced;

Osteo Bi-Flex Triple Strength  Glucosamine Chondroitin MSM with 5-Loxin Advanced with Vitamin D3 2000 IU;

Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid;

Osteo Bi-Flex Glucosamine Chondroitin Energy Formula with 5-Loxin Advanced;

Osteo Bi-Flex Regular Strength Glucosamine Chondroitin Complex; and

Osteo Bi-Flex Advanced Glucosamine Chondroitin MSM with 5-Loxin Advanced.

9.      Millions of adults in the United States live with arthritis, a disease involving the breakdown of cartilage in joints, or other orthopedic disorders in which cartilage in joints is broken down over time and causes bones in those joints to grind against each other.  Cartilage normally protects a joint, allowing it to move smoothly, and also absorbs shock when pressure is placed on the joint.  Without normal amounts of cartilage, the bones in the joint rub together, causing pain, swelling and stiffness.  These conditions are often extremely painful and result in limitations on motion, and most often impact elderly persons.

10.      In response to the desperation of consumers suffering from painful and debilitating arthritic and other orthopedic conditions, dietary supplement manufacturers have rolled out a variety of products promising relief from chronic pain.  Manufacturers pushing for more market share have not been content to advertise pain relief, and have been making more and more outlandish promises to consumers, including promises that supplements can promote joint health and mobility through structural changes to joints.

11.     Defendant Rexall is one such manufacturer. Rexall manufactures, markets, and sells the Osteo Bi-Flex products, which contain glucosamine hydrochloride, chondroitin and/or a methylsulfonylmethane.

12.     Glucosamine is an amino sugar that the body distributes in cartilage. It is produced commercially from crustacean exoskeletons, and is one of the most common, non-vitamin dietary supplements sold in the United States.

13.     Chondroitin is a sulfated glycosaminoglygan composed of a chain of alternating sugars. Chondroitin sulfate is a structural component of cartilage and provides resistance to compression.

14.     Methylsulfonylmethane is an organic compound containing sulfur, and is considered to be a relatively inert chemical compound.

15.     None of these ingredients will help build or renew cartilage or repair damage to joints.

16.     Nonetheless, Rexall promotes that its Osteo Bi-Flex products will help "renew cartilage." The packages that the Osteo Bi-Flex products come in contain, in a boxed section of the packaging and also in a textual section of the packaging, the statement that the products help "renew cartilage." In fact, the package that Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid comes in actually claims that the product "helps build cartilage." The website that advertises the Osteo Bi-Flex line of products, which is sponsored by Rexall, states, as part of the advertising for several of the products contained in the product line, that "glucosamine helps rejuvenate joint cartilage."

17.     The statement that the Osteo Bi-Flex products help "renew cartilage" is false and misleading. There is no scientifically sound study demonstrating that the Rexall Osteo Bi-Flex

4

products can help renew cartilage. The statement that the Osteo Bi-Flex products help "renew cartilage" is not substantiated.

18.    There is no study or literature substantiating, or even suggesting, that glucosamine, chondroitin, or methylsulfonylmethane can help renew or rejuvenate cartilage, as studies on the topic have confirmed:

      a.    In February 2006, the New England Journal of Medicine published a report on a double blind study addressing in part the efficacy of ingesting glucosamine hydrochloride 1500mg. Clegg, et al. Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis. New Eng. J. Med. 354:795-808 (Feb. 2006). The study concluded that there was no showing that the supplement was effective in treating osteoarthritis.

      b.    In February 2008, the Annals of Internal Medicine published a study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis: a Randomized Trial." Annals of Internal Medicine 2008 Feb 19;148(4): 268-277. The article published the results of a study which examined whether glucosamine sulfate has an effect on the symptoms and structural progression of hip osteoarthritis during two years of treatment; the conclusion reached from the study was that glucosamine sulfate was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

      c.    In October 2008, the American College of Rheumatology's Journal, Arthritis & Rheumatism, published a report on a double blind

5

study conducted at multiple centers in the United States examining joint

space width loss with radiograph films in patients who were treated with

glucosamine hydrochloride. The authors concluded that after two years of

treatment with this supplement, the treatment did not demonstrate a

clinically important difference in joint space width loss. Sawitzke et al.,

Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?,

Artritis Rheum. 58:3183-3191 (2008).

    d.    In March 2009, Harvard Medical School published a study

conclusively proving that the ingestion of glucosamine could not affect the

growth of cartilage. The study took note of the foregoing 2006 and 2008

studies, which "cast considerable doubt" upon the value of glucosamine.

The authors went on to conduct an independent study of subjects ingesting

1500 mg of glucosamine, and proved that only trace amounts of

glucosamine entered the human serum, far below any amount that could

possibly affect cartilage. Moreover, even those trace amounts were

present only for a few hours after ingestion. The authors noted that a 1986

study had found no glucosamine in human plasma after ingestion of four

times the usual 1500 mg of glucosamine chloride or sulphate. Silbert,

Dietary Glucosamine Under Question, Glycobiology 19(6):564-567

(2009).

    e.    In April 2009, the Journal of Orthopaedic Surgery published an

article entitled, "Review Article: Glucosamine." The article's authors

concluded that, based on their literature review, there was "little or no

evidence" to suggest that glucosamine was superior to a placebo even in

slowing down cartilage deterioration, much less rebuilding it. Kirkham, et

al., Review Article: Glucosamine, Journal of Orthopaedic Surgery, 17(1):

72-6 (2009).

19.    To date, there are only two studies purporting to claim that the ingestion of

glucosamine can affect the growth or deterioration of cartilage, both sponsored by a glucosamine

supplement manufacturer: Pavelka et. al. Glucosamine Sulfate Use and Delay of Progression of

Knee Osteoarthritis, Arch. Intern. Med., 162: 2113-2123 (2002); Reginster et. al. Long-term

Effects of Glucosamine Sulphate On Osteoarthritis Progress: A Randomised, Placebo-Controlled

Clinical Trial, Lancet, 357: 251-6 (2001).  As noted in the April 2009 Journal of Orthopaedic

Surgery article, the methodologies in those studies had "inherently poor reproducibility," and

even minor changes in posture by the subjects during scans could cause false apparent changes in

cartilage. The authors of the Journal of Orthopaedic Surgery article explained the manufacturer-

sponsored studies' findings by noting that "industry-sponsored trials report positive effects more

often than do nonsponsored trials and more find pro-industry results."

20.    There is no study that supports the claim that glucosamine, chondroitin and/or

methylsulfonylmethane, either alone of in combination, will restore, rebuild, renew or rejuvenate

joint cartilage that has broken down or worn away.

21.    Rexall sells its Osteo Bi-Flex line of products in the United States as a dietary

supplement in the United States. The Osteo Bi-Flex products are not regulated as a drug.

22.    Rexall sells its Osteo Bi-Flex line of products without any competent and reliable

scientific evidence that glucosamine, chondroitin and/or and methylsulfonylmethane will help to

"renew cartilage." At no time has Rexall had any competent, reliable or scientific evidence to

7

support its claim that its Osteo Bi-Flex line of products will help "renew cartilage." Rexall lacked a reasonable basis to represent to consumers that its Osteo Bi-Flex products help "renew cartilage," and did not have a reasonable basis to make the express claim that its Osteo Bi-Flex products will help "renew cartilage." It lacks adequate evidence to substantiate its claim that its Osteo Bi-Flex products help "renew cartilage," and therefore lacks any reasonable basis for the claim that the products help "renew cartilage."

23.     Plaintiff has purchased Osteo Bi-Flex products. He purchased most of the Osteo Bi-Flex products from Walmart or BJ's Wholesale Club, and purchased the products for his personal use. The packages containing the Osteo Bi-Flex products that Plaintiff purchased all contained the statement that the product helps "renew cartilage."

24.     Plaintiff purchased the Osteo Bi-Flex products because he believed, based upon the packaging, that the products would help renew or rebuild the cartilage in his knee. When he purchased the Osteo Bi-Flex products, Plaintiff believed that they would help renew and rebuild the cartilage in his knee based upon the statements contained on the packages containing the products. His belief that the products would help "renew cartilage" in his knee was reasonable because Rexall, as a manufacturer and distributor of dietary supplements throughout the United States, has superior knowledge, skill and expertise than Plaintiff to appreciate the truth or falsity of the statement that the products help "renew cartilage." And he reasonably relied upon the statement that the products would "renew cartilage" when he purchased the products.

25.     Plaintiff would not have bought the Osteo Bi-Flex products if he had known that they would not help "renew" his cartilage.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff seeks to be appointed as class representative of a class composed of and

defined as follows:

> All persons who bought any Osteo Bi-Flex product in Massachusetts, and did not
> resell it during the period from August 10, 2007 through the present. Excluded from
> the Class are the Defendant and any Judge presiding over this matter and the
> members of his or her immediate family. Also excluded from this class are the legal
> representatives, heirs, successors and attorneys of any excluded person or entity, and
> any person acting on behalf of any excluded person or entity.

27.    This action is appropriately suited for a class action.  Plaintiff is informed,

believes and thereon alleges that the Class is sufficiently numerous, such that a class action is

superior to other available methods for the fair and efficient adjudication of this controversy

because joinder of all Massachusetts purchasers of the Osteo Bi-Flex products is impractical.

28.    This action involves questions of law and fact common to the Class.  In marketing

the Osteo Bi-Flex products, Defendant engaged in a systematic course of misrepresenting the

products to Massachusetts consumers.  Such common issues of law and fact include but are not

limited to:

> a.    Whether the representation that Osteo Bi-Flex products help
> "renew cartilage" was and is likely to mislead consumers;
>
> b.    Whether failing to disclose that Osteo Bi-Flex products would not
> promote renewal of cartilage was likely to mislead consumers;
>
> c.    Whether Defendant made false or misleading representations
> regarding the effectiveness of the Osteo Bi-Flex products;
>
> d.    Whether Defendant represented that the Osteo Bi-Flex products
> have benefits which they do not have;
>
> e.    Whether Defendant represented that the Osteo Bi-Flex products
> were of a particular standard or quality when they were not;

9

f.      Whether Defendant advertised the Osteo Bi-Flex products with intent not to sell it as advertised;

g.      Whether, as a result of Defendant's misconduct, the Class is entitled to equitable relief, including restitution and injunctive relief;

h.      Whether the Class obtained the benefit of their bargain in purchasing the Osteo Bi-Flex products;

i.      Whether Defendant was unjustly enriched in collecting money from sales of the Osteo Bi-Flex products; and

j.      Whether, as a result of Defendant's misconduct, the Class is entitled to damages.

29.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and available remedies.

30.     Plaintiff's claims are typical of the claims of members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased Osteo Bi-Flex products, and suffered an injury-in-fact as a result of Defendant's conduct, as did all Class members. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is represented by counsel who is competent and experienced in the prosecution of consumer class action litigation.

31.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated purchasers of the Osteo Bi-Flex products to adjudicate simultaneously their common claims in a single forum in an efficient manner, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many members of the Class who could not afford individually to

litigate the claims pleaded in this Complaint. There are no difficulties likely to be encountered in

the management of this class action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### (Violations of Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A)

32.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully

herein, the allegations contained in Paragraphs 1 through 31.

33.     Through their conduct described above, including but not limited to breaching the

express warranty that the Osteo Bi-Flex products help "renew cartilage," Defendant has engaged

in deceptive acts and practices in violation of the Massachusetts Unfair Trade Practices Act,

Mass. Gen. Laws ch. 93A §§ 2 et seq.("MUTPA"), the stated terms and intent of which is to

protect consumers from unfair methods of competition and unfair or deceptive acts or practices

in the conduct of any trade or commerce.

34.     Plaintiff satisfied the demand requirement set forth in Mass. Gen. Law. Ch 93A

§9(3). Plaintiff sent a written demand letter to Defendant on May 12, 2011, which was received

by Defendant, and the claim asserted herein has not been compromised or adjusted.

35.     Representing that the Osteo Bi-Flex products help "renew cartilage" when there is

not competent or reliable scientific evidence substantiating that claim is deceptive, and has the

capacity, tendency and effect of deceiving reasonable consumers who purchase the products.

Reasonable consumers would believe that the Osteo Bi-Flex products help renew cartilage, based

upon Defendant's misrepresentations to that effect.

36.     Defendant knew, or should have known, that the representation that its Osteo Bi-

Flex products help "renew cartilage" was not substantiated by competent and reliable scientific

evidence.

37.     Defendant made, and makes, the representation that its Osteo Bi-Flex products help "renew cartilage" with the intent to induce consumers, and members of the class sought herein, to purchase the products by causing them to rely on the representation that the products will help "renew cartilage."

38.     Defendants' unfair or deceptive practices were a willing and knowing violation of MUTPA.

39.     Plaintiff and the Class have suffered an ascertainable loss of money or property as a result of Defendant's actions.

40.     By reason of the foregoing, Defendant has violated MUTPA and is liable to Plaintiff and the Class, pursuant to Mass. Gen. Laws ch. 93A §§ 2 et seq., for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial but not less than $25.00 per consumer purchase, plus trebling and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

41.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

42.     Plaintiff and the Class have conferred benefits on Defendant by paying money for the Osteo Bi-Flex products.

43.     Defendant knowingly and willingly accepted monetary benefits from Plaintiff and the Class, but Defendant did not honor its obligations. Rather, Defendant benefited from the sales of the Osteo Bi-Flex products without providing the value promised.

44.     Under the circumstances described herein, it is inequitable for Defendant to retain the full monetary benefit at the expenses of Plaintiff and the Class.

45.     By engaging in the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and the Class, and is required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of its actions.

46.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendant of the benefit conferred by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
### (Breach of Express Warranty)

47.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

48.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Osteo Bi-Flex products. The terms of that contract include the promises and affirmations of fact made by Defendant on its product labels. The product labeling constitutes an express warranty which became part of the basis of the bargain. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

49.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product which could provide the promised benefits as described above.

50.     As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Osteo Bi-Flex products.

13

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment against Defendants as follows:

1.      Certifying this action as a class action as soon as practicable, with a class as defined above;

2.      On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, trebled;

3.      On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

4.      On Plaintiff's Third Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

5.      Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

6.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

DATED:  August 22, 2011

Respectfully submitted,

**MEISELMAN, DENLEA,
PACKMAN,  CARTON & EBERZ
P.C.**

By: _____
D. Greg Blankinship (BBO No. 655430)
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
gblankinship@mdpcelaw.com

Attorneys for Plaintiff Richard Jennings,
individually and on behalf of himself and
all others similarly situated

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Richard Jennings, on behalf of himself and all others similarly situated

**DEFENDANTS**

Rexall, Sundown, Inc.

**(b)** County of Residence of First Listed Plaintiff   Dukes (MA)
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Suffolk (NY)
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Meiselman, Denlea, Packman, Carton & Eberz P.C., 1311 Mamaroneck Avenue, White Plains, NY 10605 (914) 517-5000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      (U.S. Government Not a Party)

☒ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | | | Under Equal Access |
| | Employment | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

| PERSONAL INJURY |
|---|
| ☐ 362 Personal Injury - Med. Malpractice |
| ☐ 365 Personal Injury - Product Liability |
| ☐ 368 Asbestos Personal Injury Product Liability |
| **PERSONAL PROPERTY** |
| ☐ 370 Other Fraud |
| ☐ 371 Truth in Lending |
| ☐ 380 Other Personal Property Damage |
| ☐ 385 Property Damage Product Liability |

| PRISONER PETITIONS |
|---|
| ☐ 510 Motions to Vacate Sentence |
| **Habeas Corpus:** |
| ☐ 530 General |
| ☐ 535 Death Penalty |
| ☐ 540 Mandamus & Other |
| ☐ 550 Civil Rights |
| ☐ 555 Prison Condition |

| IMMIGRATION |
|---|
| ☐ 462 Naturalization Application |
| ☐ 463 Habeas Corpus - Alien Detainee |
| ☐ 465 Other Immigration Actions |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):   28 U.S.C. § 1332(d)

Brief description of cause:   False and misleading advertising

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                           DOCKET NUMBER

DATE   08/22/2011

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _____Richard Jennings v. Rexall Sundown, Inc._____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

☐   I.   410, 441, 470, 535, 830*, 891, 893, 894, 895, R.23, REGARDLESS OF NATURE OF SUIT.

☐   II.  110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442-448, 710, 720, 730, 740, 790, 820*, 840*, 850, 870, 871.

☑   III. 120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315, 330, 340, 345, 350, 355, 360, 365, 368, 385, 400, 422, 423, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555, 610, 620, 625, 630, 640, 650, 660, 690, 791, 810, 861-865, 875, 890, 892, 900, 950.

*Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

        YES ☐    NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

        YES ☐    NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

        YES ☐    NO ☑

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

        YES ☐    NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

        YES ☐    NO ☑

    A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☐    Central Division ☐    Western Division ☐

    B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☑    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

        YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _D. Greg Blankinship, Meiselman, Denlea, Packman, Carton & Eberz P.C._

ADDRESS _1311 Mamaroneck Avenue, White Plains, NY 10605_

TELEPHONE NO. _(914) 517-5000_

(CategoryForm4-4-11.wpd - 4/4/11)

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | | |
|---|---|---|
| RICHARD JENNINGS, on behalf of himself and all others similarly situated, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| REXALL SUNDOWN, Inc. | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Rexall Sundown, Inc.
90 Orville Drive
Bohemia, New York 11716

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   D. Greg Blankinship
Meiselman, Denlea, Packman, Carton & Eberz P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

RICHARD JENNINGS, on behalf of himself
And all others similarly situated,

                                    Plaintiff,

        -against-

REXALL SUNDOWN, INC.

                                    Defendant.

---

Civil Action No.: 1:11-cv-11488-WGY

**FIRST AMENDED CLASS
ACTION COMPLAINT**

**LEAVE TO FILE GRANTED
ON DECEMBER 19, 2011**

Jury Trial Demanded

Plaintiff, by and through his counsel, Meiselman, Denlea, Packman, Carton & Eberz P.C.,

respectfully files this First Amended Class Action Complaint on behalf of himself and a class of

similarly-situated individuals who have purchased an "Osteo Bi-Flex" product manufactured by

Defendant from August 10, 2007 through the present.

## PARTIES

1.      Plaintiff Richard Jennings ("Jennings") is a natural person of full age of majority

who is domiciled and residing in  Oak Bluffs, Massachusetts.

2.      Defendant Rexall Sundown, Inc. ("Rexall") is a corporation organized and

existing under the laws of the State of Florida, with its principal place of business in Bohemia,

New York.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to the Class Action Fairness

Act of 2005, 28 U.S.C. § 1332(d).  Jurisdiction is proper because (1) the matter in controversy

1

exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and (2) the named

Plaintiff and the Defendant are citizens of different states.  28 U.S.C. §1332(d)(2)(A).

4.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a

substantial part of the events giving rise to the claim occurred within this judicial district, and

because defendant has marketed and sold the products at issue in this action within this judicial

district and has done business within this judicial district.

## GENERAL ALLEGATIONS

5.    Rexall is the manufacturer and seller of a wide variety of vitamin, nutritional and

dietary supplement products.

6.    One of Rexall's most successful products is a line of dietary supplements sold

under the trademarked name Osteo Bi-Flex.  The Osteo Bi-Flex product line is a line of products

that contain, among other contents, glucosamine and chondroitin.  The annual sales of the Osteo

Bi-Flex products are in excess of $100 million.  The Osteo Bi-Flex products are sold nationwide

in drug stores, supermarkets, warehouse clubs and mass merchandisers, including Wal-Mart,

Sam's Club, CVS, Duane Reade and Target.  Rexall extensively advertises its Osteo Bi-Flex

product line in consumer and trade media with national distribution, and also maintains a website

devoted exclusively to its Osteo Bi-Flex line of products (http://www.osteobiflex.com).

7.    All of Rexall's products in its Osteo Bi-Flex product line contain glucosamine,

chondroitin and/or a methylsulfonylmethane.

8.    The Osteo Bi-Flex product line currently includes the following:

Osteo Bi-Flex One Per Day Glucosamine HCI & Vitamin D3 with 5-Loxin
Advanced;

Osteo Bi-Flex Triple Strength Glucosamine Chondroitin MSM with 5-Loxin
Advanced;

2

Osteo Bi-Flex Double Strength Glucosamine Chondroitin MSM with 5-Loxin Advanced;

Osteo Bi-Flex Triple Strength  Glucosamine Chondroitin MSM with 5-Loxin Advanced with Vitamin D3 2000 IU;

Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid;

Osteo Bi-Flex Glucosamine Chondroitin Energy Formula with 5-Loxin Advanced;

Osteo Bi-Flex Regular Strength Glucosamine Chondroitin Complex; and

Osteo Bi-Flex Advanced Glucosamine Chondroitin MSM with 5-Loxin Advanced.

9.      Millions of adults in the United States live with arthritis, a disease involving the breakdown of cartilage in joints, or other orthopedic disorders in which cartilage in joints is broken down over time and causes bones in those joints to grind against each other.  Cartilage normally protects a joint, allowing it to move smoothly, and also absorbs shock when pressure is placed on the joint.  Without normal amounts of cartilage, the bones in the joint rub together, causing pain, swelling and stiffness.  These conditions are often extremely painful and result in limitations on motion, and most often impact elderly persons.

10.      In response to the desperation of consumers suffering from painful and debilitating arthritic and other orthopedic conditions, dietary supplement manufacturers have rolled out a variety of products promising relief from chronic pain.  Manufacturers pushing for more market share have not been content to advertise pain relief, and have been making more and more outlandish promises to consumers, including promises that supplements can promote joint health and mobility through structural changes to joints.

3

11.     Defendant Rexall is one such manufacturer.  Rexall manufactures, markets, and sells the Osteo Bi-Flex products, which contain glucosamine hydrochloride, chondroitin and/or a methylsulfonylmethane.

12.     Glucosamine is an amino sugar that the body distributes in cartilage.  It is produced commercially from crustacean exoskeletons, and is one of the most common, non-vitamin dietary supplements sold in the United States.

13.     Chondroitin is a sulfated glycosaminoglygan composed of a chain of alternating sugars.  Chondroitin sulfate is a structural component of cartilage and provides resistance to compression.

14.     Methylsulfonylmethane is an organic compound containing sulfur, and is considered to be a relatively inert chemical compound.

15.     None of these ingredients will help build or renew cartilage or repair damage to joints.

16.     Nonetheless, Rexall promotes that its Osteo Bi-Flex products will help "renew cartilage."  The packages that the Osteo Bi-Flex products come in contain, in a boxed section of the packaging and also in a textual section of the packaging, the statement that the products help "renew cartilage."  In fact, the package that Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid comes in actually claims that the product "helps build cartilage."  The website that advertises the Osteo Bi-Flex line of products, which is sponsored by Rexall, states, as part of the advertising for several of the products contained in the product line, that "glucosamine helps rejuvenate joint cartilage."

17.     The statement that the Osteo Bi-Flex products help "renew cartilage" is false and misleading.  There is no scientifically sound study demonstrating that the Rexall Osteo Bi-Flex

4

products can help renew cartilage. The statement that the Osteo Bi-Flex products help "renew

cartilage" is not substantiated.

18.     There is no study or literature substantiating, or even suggesting, that

glucosamine, chondroitin, or methylsulfonylmethane can help renew or rejuvenate cartilage, as

studies on the topic have confirmed:

      a.     In February 2006, the New England Journal of Medicine published

a report on a double blind study addressing in part the efficacy of ingesting

glucosamine hydrochloride 1500mg. Clegg, et al. Glucosamine,

Chondroitin Sulfate, and the Two in Combination for Painful Knee

Osteoarthritis. New Eng. J. Med. 354:795-808 (Feb. 2006). The study

concluded that there was no showing that the supplement was effective in

treating osteoarthritis.

      b.     In February 2008, the Annals of Internal Medicine published a

study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis: a

Randomized Trial." Annals of Internal Medicine 2008 Feb 19;148(4):

268-277. The article published the results of a study which examined

whether glucosamine sulfate has an effect on the symptoms and structural

progression of hip osteoarthritis during two years of treatment; the

conclusion reached from the study was that glucosamine sulfate was no

better than placebo in reducing symptoms and progression of hip

osteoarthritis.

      c.     In October 2008, the American College of Rheumatology's

Journal, Arthritis & Rheumatism, published a report on a double blind

5

study conducted at multiple centers in the United States examining joint

space width loss with radiograph films in patients who were treated with

glucosamine hydrochloride.  The authors concluded that after two years of

treatment with this supplement, the treatment did not demonstrate a

clinically important difference in joint space width loss.  Sawitzke et al.,

Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?,

Artritis Rheum. 58:3183-3191 (2008).

d.      In March 2009, Harvard Medical School published a study

conclusively proving that the ingestion of glucosamine could not affect the

growth of cartilage.  The study took note of the foregoing 2006 and 2008

studies, which "cast considerable doubt" upon the value of glucosamine.

The authors went on to conduct an independent study of subjects ingesting

1500 mg of glucosamine, and proved that only trace amounts of

glucosamine entered the human serum, far below any amount that could

possibly affect cartilage.  Moreover, even those trace amounts were

present only for a few hours after ingestion.  The authors noted that a 1986

study had found no glucosamine in human plasma after ingestion of four

times the usual 1500 mg of glucosamine chloride or sulphate.  Silbert,

Dietary Glucosamine Under Question, Glycobiology 19(6):564-567

(2009).

e.      In April 2009, the Journal of Orthopaedic Surgery published an

article entitled, "Review Article: Glucosamine."  The article's authors

concluded that, based on their literature review, there was "little or no

6

evidence" to suggest that glucosamine was superior to a placebo even in slowing down cartilage deterioration, much less rebuilding it. Kirkham, et al., Review Article: Glucosamine, Journal of Orthopaedic Surgery, 17(1): 72-6 (2009).

19.     To date, there are only two studies purporting to claim that the ingestion of glucosamine can affect the growth or deterioration of cartilage, both sponsored by a glucosamine supplement manufacturer: Pavelka et. al. Glucosamine Sulfate Use and Delay of Progression of Knee Osteoarthritis, Arch. Intern. Med., 162: 2113-2123 (2002); Reginster et. al. Long-term Effects of Glucosamine Sulphate On Osteoarthritis Progress: A Randomised, Placebo-Controlled Clinical Trial, Lancet, 357: 251-6 (2001). As noted in the April 2009 Journal of Orthopaedic Surgery article, the methodologies in those studies had "inherently poor reproducibility," and even minor changes in posture by the subjects during scans could cause false apparent changes in cartilage. The authors of the Journal of Orthopaedic Surgery article explained the manufacturer-sponsored studies' findings by noting that "industry-sponsored trials report positive effects more often than do nonsponsored trials and more find pro-industry results."

20.     There is no study that supports the claim that glucosamine, chondroitin and/or methylsulfonylmethane, either alone of in combination, will restore, rebuild, renew or rejuvenate joint cartilage that has broken down or worn away.

21.     Rexall sells its Osteo Bi-Flex line of products in the United States as a dietary supplement in the United States. The Osteo Bi-Flex products are not regulated as a drug.

22.     Rexall sells its Osteo Bi-Flex line of products without any competent and reliable scientific evidence that glucosamine, chondroitin and/or and methylsulfonylmethane will help to "renew cartilage." At no time has Rexall had any competent, reliable or scientific evidence to

7

support its claim that its Osteo Bi-Flex line of products will help "renew cartilage." Rexall

lacked a reasonable basis to represent to consumers that its Osteo Bi-Flex products help "renew

cartilage," and did not have a reasonable basis to make the express claim that its Osteo Bi-Flex

products will help "renew cartilage." It lacks adequate evidence to substantiate its claim that its

Osteo Bi-Flex products help "renew cartilage," and therefore lacks any reasonable basis for the

claim that the products help "renew cartilage."

   23. Plaintiff has purchased Osteo Bi-Flex products. In April 2011, he purchased

"Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin with MSM Hyaluronic Acid 'Easy to

Swallow Smooth Cap™,'" 144 coated caplets from BJ's Wholesale Club. Prior to this purchase,

he purchased "Osteo Bi-Flex Triple Strength 2 Per Day" approximately every thirty (30) days

during the class period. He purchased most of the Osteo Bi-Flex products from Walmart or BJ's

Wholesale Club, and purchased the products for his personal use. The packages containing the

Osteo Bi-Flex products that Plaintiff purchased all contained the statement that the product helps

"renew cartilage."

   24. Plaintiff purchased the Osteo Bi-Flex products because he believed, based upon

the packaging, that the products would help renew or rebuild the cartilage in his knee. When he

purchased the Osteo Bi-Flex products, Plaintiff believed that they would help renew and rebuild

the cartilage in his knee based upon the statements contained on the packages containing the

products. His belief that the products would help "renew cartilage" in his knee was reasonable

because Rexall, as a manufacturer and distributor of dietary supplements throughout the United

States, has superior knowledge, skill and expertise than Plaintiff to appreciate the truth or falsity

of the statement that the products help "renew cartilage." And he reasonably relied upon the

statement that the products would "renew cartilage" when he purchased the products.

25.     Plaintiff would not have bought the Osteo Bi-Flex products if he had known that

they would not help "renew" his cartilage.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff seeks to be appointed as class representative of a class composed of and

defined as follows:

> All persons who bought any Osteo Bi-Flex product in Massachusetts, and did not
> resell it during the period from August 10, 2007 through the present. Excluded from
> the Class are the Defendant and any Judge presiding over this matter and the
> members of his or her immediate family. Also excluded from this class are the legal
> representatives, heirs, successors and attorneys of any excluded person or entity, and
> any person acting on behalf of any excluded person or entity.

27.     This action is appropriately suited for a class action. Plaintiff is informed,

believes and thereon alleges that the Class is sufficiently numerous, such that a class action is

superior to other available methods for the fair and efficient adjudication of this controversy

because joinder of all Massachusetts purchasers of the Osteo Bi-Flex products is impractical.

28.     This action involves questions of law and fact common to the Class. In marketing

the Osteo Bi-Flex products, Defendant engaged in a systematic course of misrepresenting the

products to Massachusetts consumers. Such common issues of law and fact include but are not

limited to:

> a.     Whether the representation that Osteo Bi-Flex products help
> "renew cartilage" was and is likely to mislead consumers;
>
> b.     Whether failing to disclose that Osteo Bi-Flex products would not
> promote renewal of cartilage was likely to mislead consumers;
>
> c.     Whether Defendant made false or misleading representations
> regarding the effectiveness of the Osteo Bi-Flex products;
>
> d.     Whether Defendant represented that the Osteo Bi-Flex products
> have benefits which they do not have;

e.      Whether Defendant represented that the Osteo Bi-Flex products were of a particular standard or quality when they were not;

f.      Whether Defendant advertised the Osteo Bi-Flex products with intent not to sell it as advertised;

g.      Whether, as a result of Defendant's misconduct, the Class is entitled to equitable relief, including restitution and injunctive relief;

h.      Whether the Class obtained the benefit of their bargain in purchasing the Osteo Bi-Flex products;

i.      Whether Defendant was unjustly enriched in collecting money from sales of the Osteo Bi-Flex products; and

j.      Whether, as a result of Defendant's misconduct, the Class is entitled to damages.

29.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and available remedies.

30.     Plaintiff's claims are typical of the claims of members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased Osteo Bi-Flex products, and suffered an injury-in-fact as a result of Defendant's conduct, as did all Class members. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is represented by counsel who is competent and experienced in the prosecution of consumer class action litigation.

31.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated purchasers of the Osteo Bi-Flex products to adjudicate simultaneously their common claims in a single forum in an efficient manner, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication

10

of relatively small claims by many members of the Class who could not afford individually to litigate the claims pleaded in this Complaint.  There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### (Violations of Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A)

32.    Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

33.    Through their conduct described above, including but not limited to breaching the express warranty that the Osteo Bi-Flex products help "renew cartilage," Defendant has engaged in deceptive acts and practices in violation of the Massachusetts Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A §§ 2 et seq.("MUTPA"), the stated terms and intent of which is to protect consumers from unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

34.    Plaintiff satisfied the demand requirement set forth in Mass. Gen. Law. Ch 93A §9(3).  Plaintiff sent a written demand letter to Defendant on May 12, 2011, which was received by Defendant, and the claim asserted herein has not been compromised or adjusted.

35.    Representing that the Osteo Bi-Flex products help "renew cartilage" when there is not competent or reliable scientific evidence substantiating that claim is deceptive, and has the capacity, tendency and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that the Osteo Bi-Flex products help renew cartilage, based upon Defendant's misrepresentations to that effect.

36.     Defendant knew, or should have known, that the representation that its Osteo Bi-Flex products help "renew cartilage" was not substantiated by competent and reliable scientific evidence.

37.     Defendant made, and makes, the representation that its Osteo Bi-Flex products help "renew cartilage" with the intent to induce consumers, and members of the class sought herein, to purchase the products by causing them to rely on the representation that the products will help "renew cartilage."

38.     Defendants' unfair or deceptive practices were a willing and knowing violation of MUTPA.

39.     Plaintiff and the Class have suffered an ascertainable loss of money or property as a result of Defendant's actions.

40.     By reason of the foregoing, Defendant has violated MUTPA and is liable to Plaintiff and the Class, pursuant to Mass. Gen. Laws ch. 93A §§ 2 et seq., for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial but not less than $25.00 per consumer purchase, plus trebling and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

41.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

42.     Plaintiff and the Class have conferred benefits on Defendant by paying money for the Osteo Bi-Flex products.

12

43.     Defendant knowingly and willingly accepted monetary benefits from Plaintiff and the Class, but Defendant did not honor its obligations.  Rather, Defendant benefited from the sales of the Osteo Bi-Flex products without providing the value promised.

44.     Under the circumstances described herein, it is inequitable for Defendant to retain the full monetary benefit at the expenses of Plaintiff and the Class.

45.     By engaging in the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and the Class, and is required, in equity and good conscience, to compensate Plaintiff and the Class for harm suffered as a result of its actions.

46.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendant of the benefit conferred by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
### (Breach of Express Warranty)

47.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 31.

48.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Osteo Bi-Flex products.  The terms of that contract include the promises and affirmations of fact made by Defendant on its product labels.  The product labeling constitutes an express warranty which became part of the basis of the bargain.  All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

49.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product which could provide the promised benefits as described above.

50.     As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Osteo Bi-Flex products.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment against Defendants as follows:

1.     Certifying this action as a class action as soon as practicable, with a class as defined above;

2.     On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, trebled;

3.     On Plaintiff's Second Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

4.     On Plaintiff's Third Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

5.     Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

6.     Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by

jury.

Dated: White Plains, New York
      December 19, 2011

                          Respectfully Submitted,

                          /s/ Peter N. Freiberg
                          D. Gregory Blankinship, BBO No. 655430
                          Jeffrey I. Carton (Admitted *Pro Hac Vice*)
                          Peter N. Freiberg (Admitted *Pro Hac Vice*)
                          MEISELMAN, DENLEA, PACKMAN,
                          CARTON & EBERZ P.C.
                          1311 Mamaroneck Avenue
                          White Plains, New York 10605
                          Telephone:    (914) 517-5000
                          Facsimile:    (914) 517-5055
                          gblankinship@mdpcelaw.com
                          jcarton@mdpcelaw.com
                          pfreiberg@mdpcelaw.com

                          Attorneys for Plaintiff

245428.docx

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on today's date.


/s/ Peter N. Freiberg

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

RICHARD JENNINGS, on behalf of himself
And all others similarly situated,

                             Plaintiff,

  -against-

REXALL SUNDOWN, INC.

                           Defendant.

Civil Action No.: 1:11-cv-11488-WGY

**SECOND AMENDED CLASS
ACTION COMPLAINT**

**LEAVE TO FILE GRANTED
ON JANUARY 18, 2012**

Jury Trial Demanded

---

      Plaintiff, by and through his counsel, Meiselman, Denlea, Packman, Carton & Eberz P.C.,

respectfully files this Second Amended Class Action Complaint on behalf of himself and a class

of similarly-situated individuals who have purchased an "Osteo Bi-Flex" product manufactured

by Defendant from August 10, 2007 through the present.

## PARTIES

      1.     Plaintiff Richard Jennings ("Jennings") is a natural person of full age of majority

who is domiciled and residing in  Oak Bluffs, Massachusetts.

      2.     Defendant Rexall Sundown, Inc. ("Rexall") is a corporation organized and

existing under the laws of the State of Florida, with its principal place of business in Bohemia,

New York.

## JURISDICTION AND VENUE

      3.     This Court has jurisdiction over this action pursuant to the Class Action Fairness

Act of 2005, 28 U.S.C. § 1332(d).  Jurisdiction is proper because (1) the matter in controversy

exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and (2) the named

Plaintiff and the Defendant are citizens of different states.  28 U.S.C. §1332(d)(2)(A).

4.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a

substantial part of the events giving rise to the claim occurred within this judicial district, and

because defendant has marketed and sold the products at issue in this action within this judicial

district and has done business within this judicial district.

## GENERAL ALLEGATIONS

5.     Rexall is the manufacturer and seller of a wide variety of vitamin, nutritional and

dietary supplement products.

6.     One of Rexall's most successful products is a line of dietary supplements sold

under the trademarked name Osteo Bi-Flex.  The Osteo Bi-Flex product line is a line of products

that contain, among other contents, glucosamine and chondroitin.  The annual sales of the Osteo

Bi-Flex products are in excess of $100 million.  The Osteo Bi-Flex products are sold nationwide

in drug stores, supermarkets, warehouse clubs and mass merchandisers, including Wal-Mart,

Sam's Club, CVS, Duane Reade and Target.  Rexall extensively advertises its Osteo Bi-Flex

product line in consumer and trade media with national distribution, and also maintains a website

devoted exclusively to its Osteo Bi-Flex line of products (http://www.osteobiflex.com).

7.     All of Rexall's products in its Osteo Bi-Flex product line contain glucosamine,

chondroitin and/or a methylsulfonylmethane.

8.     The Osteo Bi-Flex product line currently includes the following:

Osteo Bi-Flex One Per Day Glucosamine HCI & Vitamin D3 with 5-Loxin
Advanced;

Osteo Bi-Flex Triple Strength Glucosamine Chondroitin MSM with 5-Loxin
Advanced;

2

Osteo Bi-Flex Double Strength Glucosamine Chondroitin MSM with 5-Loxin Advanced;

Osteo Bi-Flex Triple Strength  Glucosamine Chondroitin MSM with 5-Loxin Advanced with Vitamin D3 2000 IU;

Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid;

Osteo Bi-Flex Glucosamine Chondroitin Energy Formula with 5-Loxin Advanced;

Osteo Bi-Flex Regular Strength Glucosamine Chondroitin Complex; and

Osteo Bi-Flex Advanced Glucosamine Chondroitin MSM with 5-Loxin Advanced.

9.      Millions of adults in the United States live with arthritis, a disease involving the breakdown of cartilage in joints, or other orthopedic disorders in which cartilage in joints is broken down over time and causes bones in those joints to grind against each other.  Cartilage normally protects a joint, allowing it to move smoothly, and also absorbs shock when pressure is placed on the joint.  Without normal amounts of cartilage, the bones in the joint rub together, causing pain, swelling and stiffness.  These conditions are often extremely painful and result in limitations on motion, and most often impact elderly persons.

10.      In response to the desperation of consumers suffering from painful and debilitating arthritic and other orthopedic conditions, dietary supplement manufacturers have rolled out a variety of products promising relief from chronic pain.  Manufacturers pushing for more market share have not been content to advertise pain relief, and have been making more and more outlandish promises to consumers, including promises that supplements can promote joint health and mobility through structural changes to joints.

3

11.     Defendant Rexall is one such manufacturer.  Rexall manufactures, markets, and sells the Osteo Bi-Flex products, which contain glucosamine hydrochloride, chondroitin and/or a methylsulfonylmethane.

12.     Glucosamine is an amino sugar that the body distributes in cartilage.  It is produced commercially from crustacean exoskeletons, and is one of the most common, non-vitamin dietary supplements sold in the United States.

13.     Chondroitin is a sulfated glycosaminoglygan composed of a chain of alternating sugars.  Chondroitin sulfate is a structural component of cartilage and provides resistance to compression.

14.     Methylsulfonylmethane is an organic compound containing sulfur, and is considered to be a relatively inert chemical compound.

15.     None of these ingredients will help build or renew cartilage or repair damage to joints.

16.     Nonetheless, Rexall promotes that its Osteo Bi-Flex products will help "renew cartilage."  The packages that the Osteo Bi-Flex products come in contain, in a boxed section of the packaging and also in a textual section of the packaging, the statement that the products help "renew cartilage."  In fact, the package that Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin Advanced MSM with Hyaluronic Acid comes in actually claims that the product "helps build cartilage."  The website that advertises the Osteo Bi-Flex line of products, which is sponsored by Rexall, states, as part of the advertising for several of the products contained in the product line, that "glucosamine helps rejuvenate joint cartilage."

17.     The statement that the Osteo Bi-Flex products help "renew cartilage" is false and misleading.  There is no scientifically sound study demonstrating that the Rexall Osteo Bi-Flex

4

products can help renew cartilage.  The statement that the Osteo Bi-Flex products help "renew
cartilage" is not substantiated.

18.    There is no study or literature substantiating, or even suggesting, that
glucosamine, chondroitin, or methylsulfonylmethane can help renew or rejuvenate cartilage, as
studies on the topic have confirmed:

a.     In February 2006, the New England Journal of Medicine published
a report on a double blind study addressing in part the efficacy of ingesting
glucosamine hydrochloride 1500mg.  Clegg, et al.  Glucosamine,
Chondroitin Sulfate, and the Two in Combination for Painful Knee
Osteoarthritis.  New Eng. J. Med. 354:795-808 (Feb. 2006).  The study
concluded that there was no showing that the supplement was effective in
treating osteoarthritis.

b.     In February 2008, the Annals of Internal Medicine published a
study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis:  a
Randomized Trial."  Annals of Internal Medicine 2008 Feb 19;148(4):
268-277.  The article published the results of a study which examined
whether glucosamine sulfate has an effect on the symptoms and structural
progression of hip osteoarthritis during two years of treatment; the
conclusion reached from the study was that glucosamine sulfate was no
better than placebo in reducing symptoms and progression of hip
osteoarthritis.

c.     In October 2008, the American College of Rheumatology's
Journal, Arthritis & Rheumatism, published a report on a double blind