study conducted at multiple centers in the United States examining joint space width loss with radiograph films in patients who were treated with glucosamine hydrochloride. The authors concluded that after two years of treatment with this supplement, the treatment did not demonstrate a clinically important difference in joint space width loss. Sawitzke et al., Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?, Artritis Rheum. 58:3183-3191 (2008).

d. In March 2009, Harvard Medical School published a study conclusively proving that the ingestion of glucosamine could not affect the growth of cartilage. The study took note of the foregoing 2006 and 2008 studies, which "cast considerable doubt" upon the value of glucosamine. The authors went on to conduct an independent study of subjects ingesting 1500 mg of glucosamine, and proved that only trace amounts of glucosamine entered the human serum, far below any amount that could possibly affect cartilage. Moreover, even those trace amounts were present only for a few hours after ingestion. The authors noted that a 1986 study had found no glucosamine in human plasma after ingestion of four times the usual 1500 mg of glucosamine chloride or sulphate. Silbert, Dietary Glucosamine Under Question, Glycobiology 19(6):564-567 (2009).

e. In April 2009, the Journal of Orthopaedic Surgery published an article entitled, "Review Article: Glucosamine." The article's authors concluded that, based on their literature review, there was "little or no

evidence" to suggest that glucosamine was superior to a placebo even in slowing down cartilage deterioration, much less rebuilding it.  Kirkham, et al., Review Article: Glucosamine, Journal of Orthopaedic Surgery, 17(1): 72-6 (2009).

19.     To date, there are only two studies purporting to claim that the ingestion of glucosamine can affect the growth or deterioration of cartilage, both sponsored by a glucosamine supplement manufacturer: Pavelka et. al. Glucosamine Sulfate Use and Delay of Progression of Knee Osteoarthritis, Arch. Intern. Med., 162: 2113-2123 (2002); Reginster et. al. Long-term Effects of Glucosamine Sulphate On Osteoarthritis Progress: A Randomised, Placebo-Controlled Clinical Trial, Lancet, 357: 251-6 (2001).  As noted in the April 2009 Journal of Orthopaedic Surgery article, the methodologies in those studies had "inherently poor reproducibility," and even minor changes in posture by the subjects during scans could cause false apparent changes in cartilage.  The authors of the Journal of Orthopaedic Surgery article explained the manufacturer-sponsored studies' findings by noting that "industry-sponsored trials report positive effects more often than do nonsponsored trials and more find pro-industry results."

20.     There is no study that supports the claim that glucosamine, chondroitin and/or methylsulfonylmethane, either alone of in combination, will restore, rebuild, renew or rejuvenate joint cartilage that has broken down or worn away.

21.     Rexall sells its Osteo Bi-Flex line of products in the United States as a dietary supplement in the United States. The Osteo Bi-Flex products are not regulated as a drug.

22.     Rexall sells its Osteo Bi-Flex line of products without any competent and reliable scientific evidence that glucosamine, chondroitin and/or and methylsulfonylmethane will help to "renew cartilage."  At no time has Rexall had any competent, reliable or scientific evidence to

7

support its claim that its Osteo Bi-Flex line of products will help "renew cartilage." Rexall

lacked a reasonable basis to represent to consumers that its Osteo Bi-Flex products help "renew

cartilage," and did not have a reasonable basis to make the express claim that its Osteo Bi-Flex

products will help "renew cartilage." It lacks adequate evidence to substantiate its claim that its

Osteo Bi-Flex products help "renew cartilage," and therefore lacks any reasonable basis for the

claim that the products help "renew cartilage."

23.     Plaintiff has purchased Osteo Bi-Flex products. In April 2011, he purchased

"Osteo Bi-Flex Glucosamine Chondroitin with 5-Loxin with MSM Hyaluronic Acid 'Easy to

Swallow Smooth Cap™,'" 144 coated caplets from BJ's Wholesale Club. Prior to this purchase,

he purchased "Osteo Bi-Flex Triple Strength 2 Per Day" approximately every thirty (30) days

during the class period. He purchased most of the Osteo Bi-Flex products from Walmart or BJ's

Wholesale Club, and purchased the products for his personal use. The packages containing the

Osteo Bi-Flex products that Plaintiff purchased all contained the statement that the product helps

"renew cartilage."

24.     Plaintiff purchased the Osteo Bi-Flex products because he believed, based upon

the packaging, that the products would help renew or rebuild the cartilage in his knee. When he

purchased the Osteo Bi-Flex products, Plaintiff believed that they would help renew and rebuild

the cartilage in his knee based upon the statements contained on the packages containing the

products. His belief that the products would help "renew cartilage" in his knee was reasonable

because Rexall, as a manufacturer and distributor of dietary supplements throughout the United

States, has superior knowledge, skill and expertise than Plaintiff to appreciate the truth or falsity

of the statement that the products help "renew cartilage." And he reasonably relied upon the

statement that the products would "renew cartilage" when he purchased the products.

25.     Plaintiff would not have bought the Osteo Bi-Flex products if he had known that they would not help "renew" his cartilage.

26.     The Osteo Bi-Flex products that Plaintiff purchased did not help renew his cartilage. Plaintiff's cartilage did not renew as a result of his taking the Osteo Bi-Flex products.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff seeks to be appointed as class representative of a class composed of and defined as follows:

> All persons who bought any Osteo Bi-Flex product in Massachusetts, and did not resell it during the period from August 10, 2007 through the present. Excluded from the Class are the Defendant and any Judge presiding over this matter and the members of his or her immediate family. Also excluded from this class are the legal representatives, heirs, successors and attorneys of any excluded person or entity, and any person acting on behalf of any excluded person or entity.

28.     This action is appropriately suited for a class action. Plaintiff is informed, believes and thereon alleges that the Class is sufficiently numerous, such that a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Massachusetts purchasers of the Osteo Bi-Flex products is impractical.

29.     This action involves questions of law and fact common to the Class. In marketing the Osteo Bi-Flex products, Defendant engaged in a systematic course of misrepresenting the products to Massachusetts consumers. Such common issues of law and fact include but are not limited to:

> a.      Whether the representation that Osteo Bi-Flex products help "renew cartilage" was and is likely to mislead consumers;
>
> b.      Whether failing to disclose that Osteo Bi-Flex products would not promote renewal of cartilage was likely to mislead consumers;
>
> c.      Whether Defendant made false or misleading representations regarding the effectiveness of the Osteo Bi-Flex products;

9

    d.     Whether Defendant represented that the Osteo Bi-Flex products have benefits which they do not have;

    e.     Whether Defendant represented that the Osteo Bi-Flex products were of a particular standard or quality when they were not;

    f.     Whether Defendant advertised the Osteo Bi-Flex products with intent not to sell it as advertised;

    g.     Whether, as a result of Defendant's misconduct, the Class is entitled to equitable relief, including restitution and injunctive relief;

    h.     Whether the Class obtained the benefit of their bargain in purchasing the Osteo Bi-Flex products;

    i.     Whether Defendant was unjustly enriched in collecting money from sales of the Osteo Bi-Flex products; and

    j.     Whether, as a result of Defendant's misconduct, the Class is entitled to damages.

30.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and available remedies.

31.    Plaintiff's claims are typical of the claims of members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff purchased Osteo Bi-Flex products, and suffered an injury-in-fact as a result of Defendant's conduct, as did all Class members. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Class. Plaintiff is represented by counsel who is competent and experienced in the prosecution of consumer class action litigation.

32.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated purchasers of the Osteo Bi-Flex products to adjudicate simultaneously their common claims in a

single forum in an efficient manner, and without the duplication of effort and expense that

numerous individual actions would engender.  Class treatment also will permit the adjudication

of relatively small claims by many members of the Class who could not afford individually to

litigate the claims pleaded in this Complaint.  There are no difficulties likely to be encountered in

the management of this class action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### (Violations of Unfair Trade Practices Act, Mass. Gen. Laws ch. 93A)

33.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully

herein, the allegations contained in Paragraphs 1 through 32.

34.     Through their conduct described above, including but not limited to breaching the

express warranty that the Osteo Bi-Flex products help "renew cartilage," Defendant has engaged

in deceptive acts and practices in violation of the Massachusetts Unfair Trade Practices Act,

Mass. Gen. Laws ch. 93A §§ 2 et seq.("MUTPA"), the stated terms and intent of which is to

protect consumers from unfair methods of competition and unfair or deceptive acts or practices

in the conduct of any trade or commerce.

35.     Plaintiff satisfied the demand requirement set forth in Mass. Gen. Law. Ch 93A

§9(3).  Plaintiff sent a written demand letter to Defendant on May 12, 2011, which was received

by Defendant, and the claim asserted herein has not been compromised or adjusted.

36.     Representing that the Osteo Bi-Flex products help "renew cartilage" when there is

not competent or reliable scientific evidence substantiating that claim is deceptive, and has the

capacity, tendency and effect of deceiving reasonable consumers who purchase the products.

Reasonable consumers would believe that the Osteo Bi-Flex products help renew cartilage, based

upon Defendant's misrepresentations to that effect.

11

37.     Defendant knew, or should have known, that the representation that its Osteo Bi-Flex products help "renew cartilage" was not substantiated by competent and reliable scientific evidence.

38.     Defendant made, and makes, the representation that its Osteo Bi-Flex products help "renew cartilage" with the intent to induce consumers, and members of the class sought herein, to purchase the products by causing them to rely on the representation that the products will help "renew cartilage."

39.     Defendants' unfair or deceptive practices were a willing and knowing violation of MUTPA.

40.     Plaintiff and the Class have suffered an ascertainable loss of money or property as a result of Defendant's actions.  Plaintiff and the Class have been damaged in the amount of the purchase prices for the Osteo Bi-Flex products that they paid, or, in the alternative, have been damaged by paying more for the Osteo Bi-Flex products that they purchased than for other products containing the same or similar ingredients that do not represent or promote that they will help "renew cartilage."

41.     By reason of the foregoing, Defendant has violated MUTPA and is liable to Plaintiff and the Class, pursuant to Mass. Gen. Laws ch. 93A §§ 2 et seq., for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial but not less than $25.00 per consumer purchase, plus trebling and attorneys' fees.

## SECOND CAUSE OF ACTION
### (Breach of Express Warranty)

42.     Plaintiff hereby realleges, and incorporates by reference as though set forth fully herein, the allegations contained in Paragraphs 1 through 41.

43.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Osteo Bi-Flex products.  The terms of that contract include the promises and affirmations of fact made by Defendant on its product labels.  The product labeling constitutes an express warranty which became part of the basis of the bargain.  All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

44.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product which could provide the promised benefits as described above.

45.     As a result of Defendant's breach of its contract and warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of the Osteo Bi-Flex products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court enter judgment against Defendant as follows:

1.     Certifying this action as a class action as soon as practicable, with a class as defined above;

2.     On Plaintiff's First Cause of Action, awarding against Defendant the damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, trebled;

13

3.      On Plaintiff's Second Cause of Action, awarding against Defendant the damages

that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions,

the amount of such damages to be determined at trial;

4.      Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

5.      Awarding Plaintiff and the Class such other and further relief as this Court deems

just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by

jury.

Dated: White Plains, New York
       January 25, 2012

Respectfully Submitted,

/s/ Peter N. Freiberg
D. Gregory Blankinship, BBO No. 655430
Jeffrey I. Carton (Admitted *Pro Hac Vice*)
Peter N. Freiberg (Admitted *Pro Hac Vice*)
MEISELMAN, DENLEA, PACKMAN,
CARTON & EBERZ P.C.
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone:     (914) 517-5000
Facsimile:     (914) 517-5055
gblankinship@mdpcelaw.com
jcarton@mdpcelaw.com
pfreiberg@mdpcelaw.com

Attorneys for Plaintiff

246022.DOCX

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on today's date.


/s/ Peter N. Freiberg

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
2901 N. Central Ave., Suite 1000
Phoenix, AZ 85012
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:   (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone: 619-756-6978

FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN (*To be admitted Pro Hac Vice*)
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
SWELTMAN@FUTTERMANHOWARD.COM
Telephone: 312-427-3600

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA LINARES, On Behalf of Herself and All Other Similarly Situated California Residents,<br><br>              Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE, INC., a Washington corporation,<br><br>            Defendant. | Case No.: **'11 CV 2547 MMA RBB**<br><br>**CLASS ACTION**<br><br>1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and<br>2.   BREACH OF EXPRESS WARRANTY.<br><br>DEMAND FOR JURY TRIAL |

1          Plaintiff Cecilia Linares ("Plaintiff"), by and through her attorneys, brings this

2   action on behalf of herself and all others similarly situated against Defendant Costco

3   Wholesale Inc. ("Costco" or "Defendant"), and alleges as follows:

4                            **NATURE OF ACTION**

5          1.   Defendant markets, sells and distributes the Kirkland Signature[TM][1]

6   Glucosamine line of joint health dietary supplements.[2]  Through an extensive,

7   widespread, comprehensive and uniform nationwide marketing campaign, Defendant

8   claims that its Kirkland Glucosamine products help improve joint mobility, rebuild

9   cartilage and improve joint function for all joints in the human body, for adults of all ages

10   and for all manner and stages of joint related ailments.  For example, on each and every

11   Kirkland Glucosamine Chondroitin product label and/or package, Defendant prominently

12   states that Kirkland Glucosamine is "Clinically Proven Effective" for "optimum

13   mobility" and "as a building block for healthy cartilage" and that "two tablets per day

14   deliver" these benefits, as well as "nourishes JOINT and CONNECTIVE TISSUE" and

15   "supports JOINT CUSHIONING" (hereafter referred to as the "joint renewal, mobility

16   and rejuvenation" representations).  On each and every Kirkland Glucosamine and MSM

17   product label and/or package, Defendant makes similar joint renewal, mobility and

18   rejuvenation claims and also promises that "noticeable improvement in flexibility and

19   range of motion should be expected after taking this supplement as directed on a

20   consistent basis."  However, the Kirkland Glucosamine products do not benefit or

21   promote joint renewal, mobility and rejuvenation.  Clinical cause and effect studies have

22   found no causative link between the ingredients in the Kirkland Glucosamine products

23

---

[1] Kirkland Signature[TM] is Costco's store brand, also known as its "own-brand", "house brand", or "private label".  It is available exclusively at Costco's website and Costco warehouses and is trademarked by the company.  Kirkland Signature[TM] is one of the most successful brands in the country.

[2] The Kirkland Signature[TM] Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature[TM] Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland Glucosamine Chondroitin"); and (2) Kirkland Signature[TM] Extra Strength Glucosamine HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland Glucosamine" or the "Products").

and joint renewal, mobility and rejuvenation.  Defendant also does not have competent and reliable scientific evidence to support its representations. Defendant's representations are false, misleading, and reasonably likely to deceive the public.

2.    Despite the deceptive nature of Defendant's representations, Defendant conveyed and continues to convey its deceptive joint renewal, mobility and rejuvenation representations through a variety of media, including in its print advertisements, as well as on its Product packages and labeling, website and online promotional materials. The only reason a consumer would purchase the Kirkland Glucosamine products is to obtain the advertised joint health benefits, which Kirkland Glucosamine does not provide.

3.    Defendant's marketing and advertising campaign is designed to cause consumers to buy Kirkland Glucosamine. Defendant's deceptive marketing and advertising campaign has succeeded. Estimated sales of joint dietary supplements including Kirkland Glucosamine approached $820 million in 2006.[3]

4.    Plaintiff brings this action on behalf of herself and other similarly situated California consumers who have purchased the Products to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Kirkland Glucosamine products.  Plaintiff alleges violations of the Consumers Legal Remedies Act, the Unfair Competition Law, and Breach of Express Warranty created by Defendant's advertising, including false labeling.

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendant.

---

[3]  2007 Nutrition Industry Overview, Nutrition Business J., *available at* http://newhope360.com/managing-your-business/2007-nutrition-industry-overview (last visited Oct. 3, 2011).

6.     This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in California.  Defendant has marketed, promoted, distributed, and sold the Kirkland Glucosamine products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

8.     Plaintiff Cecilia Linares resides in Imperial, California. Towards the end of 2010, Plaintiff Linares was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine Chondroitin label at a Costco store in El Centro, California.  After reading the label, Plaintiff Linares purchased the Kirkland Glucosamine Chondroitin product to relieve her joint pain and in so doing relied on every single one of Defendant's renewal, mobility and rejuvenation representations. The Kirkland Glucosamine Chondroitin Plaintiff purchased and took as directed did not help improve joint mobility, rebuild cartilage or improve joint function as represented.  As a result, Plaintiff suffered injury in fact and lost money.  She would not have purchased the product had she known it did not provide the advertised joint health benefits.

9.     Defendant Costco Wholesale Inc., is a public corporation incorporated under the laws of the state of Washington.  Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027.  Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in California.

/ /

/ /

- 4 -

# FACTUAL ALLEGATIONS

*The Kirkland Glucosamine Products*

10.    Since 2001, Costco has distributed, marketed, and sold the Kirkland Signature™ line of joint dietary supplements. These products include: (1) Kirkland Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM.

11.    The Kirkland Glucosamine products are sold online and in Costco stores statewide. The Kirkland Glucosamine and MSM product is available in 375 count bottles, retailing for approximately $18. The Kirkland Glucosamine Chondroitin product is available in 220 count bottles, retailing for approximately $25. The following are screen shots of the Kirkland Glucosamine products:

 

12.    Since the Products' launch, Costco has consistently conveyed the message to consumers throughout California that the Kirkland Glucosamine products, with their "extra strength" formulas are clinically proven to deliver "optimum mobility" and will protect and build cartilage. Defendant's renewal, mobility and rejuvenation representations are false, misleading and deceptive.

13.    Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products. The primary active ingredient in both Kirkland Glucosamine products is glucosamine hydrochloride. Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The

Products' labeling and packaging states the benefits associated with taking glucosamine hydrochloride: "Glucosamine is a basic building block for cartilage, synovial fluid and other connective tissues, which are needed for healthy structure and function of joints." There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function. In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal, mobility or rejuvenation.

14.     The chondroitin sulfate in Kirkland Glucosamine Chondroitin, is a complex carbohydrate found in the body's connective tissues. On the Product's labeling and packaging, Defendant represents that chondroitin sulfate "protects existing cartilage and serves as a building block for healthy new cartilage." There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that assists in building joint cartilage. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal, mobility or rejuvenation.

15.     The Methylsulfonylmethane ("MSM") found in Kirkland Glucosamine and MSM products is an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Product's labeling and packaging, Defendant claims that MSM "is a necessary component that works in conjunction with Glucosamine to provide the building blocks of collagen, an important component of healthy joints and connective tissue. Clinical research shows MSM increases glucosamine's effectiveness." There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function, or makes glucosamine work more effectively. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal, mobility or rejuvenation.

- 6 -

16.     The Kirkland Glucosamine Chondroitin bottle references one study purportedly supporting Defendant's "Clinically Proven Effective" representation.  Other than referencing the study sponsor, no other identifying information is included.  The referenced NIH study is not competent and reliable scientific support for Defendant's representations.  The NIH sponsored study did not examine, let alone find, that glucosamine and chondroitin rebuild cartilage, nourish joint and connective tissue or support joint cushioning.  Defendant's citation to this study as support for its joint renewal, mobility and rejuvenation representations constitutes further deceptive and misleading conduct, in as much as the study is not competent and reliable evidence of efficacy.

17.     In fact, numerous clinical cause and effect studies have found no causative link between any of the primary active ingredients in the Kirkland Glucosamine products alone, or in combination, and joint renewal, mobility and rejuvenation.  Nevertheless, Defendant without any scientifically valid confirmation that Kirkland Glucosamine is an effective joint treatment—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages and for *all* manner and stages of joint related ailments — prominently claims on the Products' packaging and labeling that Kirkland Glucosamine, with its "extra strength" formula, will "deliver" "optimum joint mobility", rebuild cartilage and improve joint function.  Front, back and side shots of the two Kirkland Glucosamine product labels appear as follows:

FRONT

LEFT SIDE



FRONT

LEFT SIDE



18.     Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, improve or promote joint renewal, mobility or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the prevention or improvement of joint

- 8 -

degeneration or other joint ailments. Defendant's renewal and rejuvenation representations are false and misleading and reasonably likely to deceive the average consumer.

***The impact of Defendant's wrongful conduct***

19. Despite the lack of competent and reliable scientific evidence and numerous clinical studies that have found no causative like between the ingredients in the Kirkland Glucosamine products and joint renewal, mobility or rejuvenation, Defendant continues to unequivocally claim that its Kirkland Glucosamine products are an effective treatment for improving joint renewal, mobility and rejuvenation in all adults.

20. As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects—its Products have on consumers.

21. Specifically, Defendant affirmatively misrepresented that the Kirkland Glucosamine products, with their "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". Having made these affirmative misrepresentations, Defendant failed to disclose that well-conducted, clinical cause-and-effect studies have found no causative relationship between the product ingredients and the prevention or improvement of joint degeneration or other related ailments and Defendant has no competent and reliable scientific evidence that its Kirkland Glucosamine products are effective in helping provide joint renewal, mobility or rejuvenation as represented.

22. Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey one uniform message: Kirkland Glucosamine, with its "extra strength formula", is clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and

CONNECTIVE tissue" and "Support[] JOINT CUSHIONING" for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments..

23.    Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive joint renewal, mobility and rejuvenation representations.   Plaintiff purchased and consumed the Product during the Class period and in doing so, read and considered the Product label and based her decision to buy the Product on the joint renewal, mobility and rejuvenation representations. Defendant's deceptive representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the Product.  Plaintiff would not have purchased the Product had she known that Defendant's representations were false and misleading, that Defendant did not possess competent and reliable scientific evidence to support its joint renewal, mobility and rejuvenation representations, and that clinical cause-and-effect studies have found no causative link between the ingredients in Kirkland Glucosamine and joint renewal, mobility or rejuvenation.

24.    As a result, Plaintiff and the Class members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Defendant's representations, were proven to be effective in improving joint mobility, rebuilding cartilage and improving joint function when, in fact, they are not.

25.    Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS DEFINITION AND ALLEGATIONS

26.    Plaintiff brings this action on behalf of herself and all other similarly situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All California residents who, within the applicable statute of limitations, purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™

- 10 -

Extra Strength Glucosamine with MSM.

Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

27.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

28.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

•       Whether the claims discussed herein that Defendant made about the Products were or are misleading, or reasonably likely to deceive;

•       Whether Defendant's alleged conduct violates public policy;

•       Whether the alleged conduct constitutes violations of the laws asserted herein;

•       Whether Defendant engaged in false and misleading advertising;

•       Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

•       Whether Plaintiff and Class members are entitled to restitution, disgorgement of Defendant's profits, declaratory and/or injunctive relief; and

•       Whether Plaintiff and Class members are entitled to an award of compensatory damages.

29.     Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Defendant's deceptive joint renewal, mobility and rejuvenation representations accompanying each and every bottle of the Kirkland

Glucosamine products which include the same primary active ingredient – glucosamine hydrochloride. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

30. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

31. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

32. In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

33. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

- 12 -

34.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

<u>COUNT I</u>
**Violation of Business & Professions Code §17200, *et seq.***

35.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

36.     Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

37.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased Kirkland Glucosamine in reliance on Defendant's joint renewal, mobility and rejuvenation representations detailed above, but did not receive a product that provides joint renewal, mobility or rejuvenation.

38.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

39.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

40.     Defendant's actions also constitute "unfair" business acts or practices

- 13 -

because, as alleged above, *inter alia*, Defendant engaged in false advertising, misrepresented and omitted material facts regarding its Kirkland Glucosamine labels and packaging, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

41.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

42.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

43.     Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

44.     Defendant's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

45.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased Defendant's Kirkland Glucosamine products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

46.     As a result of its deception, Defendant has been able to reap unjust revenue and profit.

47.     Unless restrained and enjoined, Defendant will continue to engage in the

- 14 -

above-described conduct. Accordingly, injunctive relief is appropriate.

48.     Plaintiff, on behalf of herself and all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

<div align="center">

**COUNT II**
**Violation of the Consumers Legal Remedies Act –Civil Code §1750 *et seq.***

</div>

49.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

50.     Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

51.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act"). Plaintiff is a consumer as defined by California Civil Code §1761(d). Defendant's Kirkland Glucosamine products are goods within the meaning of the Act.

52.     Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's Kirkland Glucosamine products:

(5)     Representing that [the Kirkland Glucosamine products have] . . . characteristics, . . . uses [or] benefits . . . which [they] do not have.

<div align="center">

*     *     *

</div>

(7)     Representing that [the Kirkland Glucosamine products are] of a particular standard, quality or grade, . . . if [they are] of another.

<div align="center">

*     *     *

</div>

(9)     Advertising goods . . . with the intent not to sell them as advertised.

- 15 -

\*       \*       \*

(16)   Representing that [the Kirkland Glucosamine products have] been supplied in accordance with a previous representation when [they have] not.

53.     Defendant violated the Act by representing and failing to disclose material facts on the Kirkland Glucosamine product labels and packaging, as described above, when it knew, or should have known, that the representations were unsubstantiated, were contrary to several clinical cause and effect studies finding the ingredients in all Kirkland Glucosamine products to be inefficacious, were false and misleading and that the omissions were of material facts they were obligated to disclose.

54.     Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

55.     Pursuant to §1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit A.

56.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

57.     Defendant's conduct is malicious, fraudulent and wanton, and provides misleading information.

58.     Pursuant to   §1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

## COUNT III
### Breach of Express Warranty

59.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

60.     Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

61.     Defendant expressly warranted on each and every box of Kirkland Glucosamine that the Products help to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". These joint renewal, mobility and rejuvenation statements made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises.  Plaintiff read and placed importance on Defendant's joint renewal, mobility and rejuvenation representations.

62.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

63.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing Products that could provide the benefits described above which was the only reason Plaintiff and Class members purchased the Kirkland Glucosamine products.

64.     As a result of Defendant's breach of its warranty, Plaintiff and Class members have been damaged in the amount of the purchase price of the Kirkland Glucosamine products they purchased.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the class as requested herein;

B.     Awarding Plaintiff and the proposed Class members damages;

- 17 -

C.   Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D.   Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E.   Ordering Defendant to engage in a corrective advertising campaign;

F.   Awarding attorneys' fees and costs; and

G.   Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 2, 2011              BONNETT FAIRBOURN FRIEDMAN
                                     & BALINT, PC


                                     By:   s/ Patricia N. Syverson
                                     ELAINE A. RYAN
                                     PATRICIA N. SYVERSON
                                     LINDSEY M. GOMEZ-GRAY
                                     2901 North Central Avenue, Suite 1000
                                     Phoenix, Arizona 85012
                                     Telephone: 602-274-1100

                                     BONNETT, FAIRBOURN, FRIEDMAN
                                     & BALINT, P.C.
                                     TODD D. CARPENTER
                                     600 West Broadway, Suite 900
                                     San Diego, California 92101
                                     Telephone:   (619) 756-6978

                                     FUTTERMAN HOWARD ASHLEY
                                     & WELTMAN, P.C.
                                     STEWART WELTMAN
                                     122 South Michigan Avenue, Suite 1850
                                     Chicago, Illinois 60603
                                     Telephone: 312-427-3600

                                     Attorneys for Plaintiff

- 18 -

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

11CV2547 MMA RBB

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Cecilia Linares

## DEFENDANTS
Costco Wholesale, Inc.

**(b)** County of Residence of First Listed Plaintiff   Imperial
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   King Co.
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Patricia N. Syverson/Bonnett, Fairbourn, Friedman & Balint
2901 N. Central Ave., Ste. 1000, Phoenix, AZ  85012

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332(d)(2)

Brief description of cause:
Violation of Civil Code 1720, Business & Professional Code 1720, Breach of Express Warranty

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
11/02/2011

SIGNATURE OF ATTORNEY OF RECORD
s/ Patricia N. Syverson

FOR OFFICE USE ONLY

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

| Print | Save As... | Export as FDF | Retrieve FDF File | Reset |

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.        **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.        **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.        **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.        **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.        **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.        **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: <u>47 USC 553</u>
                                                        Brief Description: <u>Unauthorized reception of cable service</u>

VII.        **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.        **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

1   BONNETT, FAIRBOURN, FRIEDMAN
      & BALINT, P.C.
2   ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
    PATRICIA N. SYVERSON (203111)
3   LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
    2901 N. Central Avenue, Suite 1000
4   Phoenix, AZ 85012
    Telephone: 602-274-1100
5   Facsimile: 602-274-1199

6
    BONNETT, FAIRBOURN, FRIEDMAN
7     & BALINT, P.C.
    TODD D. CARPENTER (234464)
8   600 W. Broadway, Suite 900
    San Diego, California 92101
9   Telephone: 619-756-6978
    Facsimile: 602-798-5860
10

11  FUTTERMAN HOWARD ASHLEY
      WATKINS & WELTMAN, P.C.
12  STEWART WELTMAN (*To be admitted Pro Hac Vice*)
    122 S. Michigan Avenue, Suite 1850
13  Chicago, Illinois 6060
    Telephone: 312-427-3600
14  Fax: 312-427-1850

15
    Attorneys for Plaintiff
16

17              UNITED STATES DISTRICT COURT
18              SOUTHERN DISTRICT OF CALIFORNIA

19  CECILIA LINARES, On Behalf of Herself    Case No.:   **'11 CV 2547 MMA RBB**
    and All Other Similarly Situated California
20  Residents,                               CLASS ACTION

21              Plaintiff,

22         v.                                DECLARATION OF PATRICIA N.
                                             SYVERSON PURSUANT TO CALIFORNIA
23                                           CIVIL CODE §1780(d)
    COSTCO WHOLESALE, INC., a
24  Washington corporation,

25              Defendant.

26  //

27  //

28

I, Patricia N. Syverson, declare as follows:

1.      I am an attorney duly licensed to practice before all of the courts of the State of California. I am a shareholder of the law firm of Bonnett, Fairbourn, Friedman & Balint, P.C., the counsel of record for plaintiff in the above-entitled action

2.      Defendant Costco Wholesale, Inc., has done and is doing business in the Southern District of California. Such business includes the marketing, distributing and sale of its Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and Kirkland Signature™ Extra Strength Glucosamine HCL and MSM joint supplements (collectively, the "Kirkland Glucosamine Products"). Furthermore, Plaintiff Linares purchased the Kirkland products in El Centro, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 2nd day of Novemeber 2011, at Phoenix, Arizona.

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN
PATRICIA N. SYVERSON (203111)
LINDSEY M. GOMEZ-GRAY

 s/ Patricia N. Syverson
Patricia N. Syverson

2901 N. Central Avenue, Suite 1000
Phoenix, Arizona  85012
Telephone:     (602) 274-1100
Facsimile:     (602) 798-5860
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER (234464)
600 West Broadway Suite 900
San Diego, California 92101
Telephone:     (619) 756-6978

1

1

Facsimile:     (602) 798-5860
tcarpenter@bffb.com

2

3

FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN

4

122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603

5

Telephone:  312-427-3600
Fax:     312-427-1850

6

sweltman@futtermanhoward.com

7

Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2



**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, PC**

| | | |
|---|---|---|
| JERRY C. BONNETT | WILLIAM G. FAIRBOURN | ANDREW S. FRIEDMAN |
| FRANCIS J. BALINT, JR. | VAN BUNCH | ROBERT J. SPURLOCK |
| C. KEVIN DYKSTRA | ELAINE A. RYAN | WENDY J. HARRISON |
| ANDREW Q. EVERROAD | KATHRYN A. HONECKER | PATRICIA N. SYVERSON |
| JONATHAN S. WALLACK | GUY A. HANSON | KIMBERLY C. PAGE |
| CHRISTINA L. BANNON | MANFRED P. MUECKE[1] | TODD D. CARPENTER[1] |
| WILLIAM F. KING | TONNA K. FARRAR[2] | T. BRENT JORDAN[3] |
| ANDREW M. EVANS | TY D. FRANKEL | LINDSEY M. GOMEZ |
| KEVIN R. HANGER | ERIC D. ZARD | |

MICHAEL N. WIDENER, Of Counsel

[1] Admitted Only in California
[2] Admitted Only in California, Missouri and Kansas
[3] Admitted Only in Pennsylvania

November 2, 2011

<u>**VIA CERTIFIED MAIL (RETURN RECEIPT)**</u>
**(RECEIPT NO.  7011-0470-0002-5152-4850)**

James D. Sinegal
Chief Executive Officer
Costco Wholesale, Inc.
999 Lake Drive
Issaquah, WA 98027

     Re:    Linares v. Costco Wholesale, Inc.

Dear Mr. Sinegal:

    Our law firm and the Futterman, Howard, Ashley & Weltman firm represent Cecilia Linares and all other similarly situated California Residents in an action against Costco Wholesale, Inc. ("Costco"), arising out of, *inter alia*, misrepresentations, either express or implied, by Costco to consumers that its Kirkland Signature™ Glucosamine line of joint dietary supplements[1] improve joint mobility, rebuild cartilage and improve joint function.

    Ms. Linares and others similarly situated purchased the Kirkland Glucosamine products unaware that Costco's representations found on the Products' labels and packages that Kirkland Glucosamine is clinically proven to provide "Optimum Joint Health & Mobility", "Help[] Build Cartilage", "Nourish[] Joint And Connective Tissue" and "Support[] Joint Cushioning" are false. Several clinical studies have found no causative link between the ingredients in the Kirkland Glucosamine products and joint renewal, mobility and rejuvenation. The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is enclosed and incorporated by this reference.

    Costco's representations are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by Costco with the intent to result in the sale of the Kirkland Glucosamine products to the consuming public. The joint renewal, mobility and rejuvenation representations do not assist consumers; they simply mislead them.

---

[1] The Kirkland Signature™ Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature™ Extra Strength Glucosamine/Chondroitin Sulfate and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM (collectively, the "Kirkland Glucosamine").

This practice constitutes a violation of California Civil Code §1770(a) under, *inter alia,* the following subdivisions:

(5)     Representing that [Kirkland Glucosamine has] . . . characteristics, . . . uses [or] benefits. . . which [it does] not have.

\* \* \*

(7)     Representing that [Kirkland Glucosamine is] of a particular standard, quality or grade, . . . if [it is] of another.

\* \* \*

(9)     Advertising goods . . . with the intent not to sell them as advertised.

\* \* \*

(16)    Representing that [Kirkland Glucosamine has] been supplied in accordance with a previous representation when [it has] not.

California Civil Code §1770(a)(5)-(16).

Costco's representations also constitute violations of California Business and Professions Code §17200, *et seq.,* and a breach of express warranties.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our client and all other similarly situated California Residents that Costco immediately correct and rectify this violation of California Civil Code §1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information as described in the enclosed Complaint. In addition, Costco should offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees.

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code §1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received. These damage claims also would include claims under already asserted theories of unlawful business acts, as well as the claims under the Consumers Legal Remedies Act. Thus, to avoid further litigation, it is in the interest of all parties concerned that Costco address this problem immediately.

Costco must undertake all of the following actions to satisfy the requirements of California Civil Code §1782(c):

1.     Identify or make a reasonable attempt to identify purchasers of the subject Products who reside in California;

2.     Notify all such purchasers so identified that upon their request, Costco will offer an appropriate correction, replacement, or other remedy for its wrongful conduct, which can include a full refund of the purchase price paid for such products, plus interest, costs and fees;

3.     Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all Kirkland Glucosamine purchasers who so request; and

4.     Cease from expressly or impliedly representing to consumers that these products are effective at improving joint mobility, rebuilding cartilage or improving joint function when there is no reasonable basis for so claiming, as more fully described in the attached Complaint.

We await your response.

Very truly yours,

Patricia N. Syverson
For the Firm

PNS:lmg
Enclosure

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ELAINE A. RYAN (*To be admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
2901 N. Central Ave., Suite 1000
Phoenix, AZ 85012
eryan@bffb.com
psyverson@bffb.com
lgomez-gray@bffb.com
Telephone:   (602) 274-1100

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone: 619-756-6978

FUTTERMAN HOWARD ASHLEY
  & WELTMAN, P.C.
STEWART WELTMAN (*To be admitted Pro Hac Vice*)
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
SWELTMAN@FUTTERMANHOWARD.COM
Telephone: 312-427-3600

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA LINARES, On Behalf of Herself and All Other Similarly Situated California Residents, <br><br> Plaintiff, <br><br> v. <br><br> COSTCO WHOLESALE, INC., a Washington corporation, <br><br> Defendant. | Case No.: 3:11-cv-02547-MMA-RBB <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> 1.  VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; <br><br> 2.  VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and <br><br> 3.  BREACH OF EXPRESS WARRANTY. <br><br> DEMAND FOR JURY TRIAL |

1    Plaintiff Cecilia Linares ("Plaintiff"), by and through her attorneys, brings this

2    action on behalf of herself and all others similarly situated against Defendant Costco

3    Wholesale Inc. ("Costco" or "Defendant"), and alleges as follows:

4                                    **NATURE OF ACTION**

5        1.   Defendant markets, sells and distributes the Kirkland Signature[TM][1]

6    Glucosamine line of joint health dietary supplements.[2]   Through an extensive,

7    widespread, comprehensive and uniform nationwide marketing campaign, Defendant

8    claims that its Kirkland Glucosamine products help improve joint mobility, rebuild

9    cartilage and improve joint function for all joints in the human body, for adults of all ages

10   and for all manner and stages of joint related ailments.  For example, on each and every

11   Kirkland Glucosamine Chondroitin product label and/or package, Defendant prominently

12   states that Kirkland Glucosamine is "Clinically Proven Effective" for "optimum

13   mobility" and "as a building block for healthy cartilage" and that "two tablets per day

14   deliver" these benefits, as well as "nourishes JOINT and CONNECTIVE TISSUE" and

15   "supports JOINT CUSHIONING" (hereafter referred to as the "joint renewal, mobility

16   and rejuvenation" representations).  On each and every Kirkland Glucosamine and MSM

17   product label and/or package, Defendant makes similar joint renewal, mobility and

18   rejuvenation claims and also promises that "noticeable improvement in flexibility and

19   range of motion should be expected after taking this supplement as directed on a

20   consistent basis."   However, the Kirkland Glucosamine products do not benefit or

21   promote joint renewal, mobility and rejuvenation.  Clinical cause and effect studies have

22   found no causative link between the ingredients in the Kirkland Glucosamine products

23

24   [1] Kirkland Signature[TM] is Costco's store brand, also known as its "own-brand", "house
     brand", or "private label".  It is available exclusively at Costco's website and Costco
25   warehouses and is trademarked by the company.  Kirkland Signature[TM] is one of the most
     successful brands in the country.
26   [2] The Kirkland Signature[TM] Glucosamine line of joint health dietary supplements include:
     (1) Kirkland Signature[TM] Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland
27   Glucosamine Chondroitin"); and (2) Kirkland Signature[TM] Extra Strength Glucosamine
     HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland
28   Glucosamine" or the "Products").

                                            2

1   and joint renewal, mobility and rejuvenation.  Defendant also does not have competent

2   and reliable scientific evidence to support its representations. Defendant's representations

3   are false, misleading, and reasonably likely to deceive the public.

4        2.     Despite the deceptive nature of Defendant's representations, Defendant

5   conveyed and continues to convey its deceptive joint renewal, mobility and rejuvenation

6   representations through a variety of media, including in its print advertisements, as well

7   as on its Product packages and labeling, website and online promotional materials. The

8   only reason a consumer would purchase the Kirkland Glucosamine products is to obtain

9   the advertised joint health benefits, which Kirkland Glucosamine does not provide.

10        3.     Defendant's marketing and advertising campaign is designed to cause

11   consumers to buy Kirkland Glucosamine. Defendant's deceptive marketing and

12   advertising campaign has succeeded. Estimated sales of joint dietary supplements

13   including Kirkland Glucosamine approached $820 million in 2006.[3]

14        4.     Plaintiff brings this action on behalf of herself and other similarly situated

15   California consumers who have purchased the Products to halt the dissemination of this

16   false and misleading advertising message, correct the false and misleading perception it

17   has created in the minds of consumers, and obtain redress for those who have purchased

18   the Kirkland Glucosamine products.  Plaintiff alleges violations of the Consumers Legal

19   Remedies Act, the Unfair Competition Law, and Breach of Express Warranty created by

20   Defendant's advertising, including false labeling.

21   **JURISDICTION AND VENUE**

22        5.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The

23   matter in controversy, exclusive of interest and costs, exceeds the sum or value of

24   $5,000,000 and is a class action in which there are in excess of 100 class members and

25   the members of the Class are citizens of a state different from Defendant.

26

27   [3]   2007   Nutrition   Industry   Overview,   Nutrition   Business   J.,   *available   at*
28   http://newhope360.com/managing-your-business/2007-nutrition-industry-overview   (last
    visited Oct. 3, 2011).

6.    This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in California.  Defendant has marketed, promoted, distributed, and sold the Kirkland Glucosamine products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

### PARTIES

8.    Plaintiff Cecilia Linares resides in Imperial, California. Towards the end of 2010, Plaintiff Linares was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine Chondroitin label at a Costco store in El Centro, California.  After reading the label, Plaintiff Linares purchased the Kirkland Glucosamine Chondroitin product to relieve her joint pain and in so doing relied on every single one of Defendant's renewal, mobility and rejuvenation representations. The Kirkland Glucosamine Chondroitin Plaintiff purchased and took as directed did not help improve joint mobility, rebuild cartilage or improve joint function as represented.  As a result, Plaintiff suffered injury in fact and lost money.  She would not have purchased the product had she known it did not provide the advertised joint health benefits.

9.    Defendant Costco Wholesale Inc., is a public corporation incorporated under the laws of the state of Washington.  Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027.  Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in California.

/ /

/ /

4

## FACTUAL ALLEGATIONS

*The Kirkland Glucosamine Products*

10.    Since 2001, Costco has distributed, marketed, and sold the Kirkland Signature™ line of joint dietary supplements. These products include: (1) Kirkland Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM.

11.    The Kirkland Glucosamine products are sold online and in Costco stores statewide. The Kirkland Glucosamine and MSM product is available in 375 count bottles, retailing for approximately $18. The Kirkland Glucosamine Chondroitin product is available in 220 count bottles, retailing for approximately $25. The following are screen shots of the Kirkland Glucosamine products:

 

12.    Since the Products' launch, Costco has consistently conveyed the message to consumers throughout California that the Kirkland Glucosamine products, with their "extra strength" formulas are clinically proven to deliver "optimum mobility" and will protect and build cartilage. Defendant's renewal, mobility and rejuvenation representations are false, misleading and deceptive.

13.    Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products. The primary active ingredient in both Kirkland Glucosamine products is glucosamine hydrochloride. Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The

Products' labeling and packaging states the benefits associated with taking glucosamine hydrochloride: "Glucosamine is a basic building block for cartilage, synovial fluid and other connective tissues, which are needed for healthy structure and function of joints." There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function. In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal, mobility or rejuvenation.

14. The chondroitin sulfate in Kirkland Glucosamine Chondroitin, is a complex carbohydrate found in the body's connective tissues. On the Product's labeling and packaging, Defendant represents that chondroitin sulfate "protects existing cartilage and serves as a building block for healthy new cartilage." There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that assists in building joint cartilage. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal, mobility or rejuvenation.

15. The Methylsulfonylmethane ("MSM") found in Kirkland Glucosamine and MSM products is an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Product's labeling and packaging, Defendant claims that MSM "is a necessary component that works in conjunction with Glucosamine to provide the building blocks of collagen, an important component of healthy joints and connective tissue. Clinical research shows MSM increases glucosamine's effectiveness." There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function, or makes glucosamine work more effectively. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal, mobility or rejuvenation.

16.    The Kirkland Glucosamine Chondroitin bottle references one study purportedly supporting Defendant's "Clinically Proven Effective" representation.  Other than referencing the study sponsor, no other identifying information is included.  The referenced NIH study is not competent and reliable scientific support for Defendant's representations.   The NIH sponsored study did not examine, let alone find, that glucosamine and chondroitin rebuild cartilage, nourish joint and connective tissue or support joint cushioning.   Defendant's citation to this study as support for its joint renewal, mobility and rejuvenation representations constitutes further deceptive and misleading conduct, in as much as the study is not competent and reliable evidence of efficacy.

17.    In fact, numerous clinical cause and effect studies have found no causative link between any of the primary active ingredients in the Kirkland Glucosamine products alone, or in combination, and joint renewal, mobility and rejuvenation.   Nevertheless, Defendant without any scientifically valid confirmation that Kirkland Glucosamine is an effective joint treatment—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages and for *all* manner and stages of joint related ailments — prominently claims on the Products' packaging and labeling that Kirkland Glucosamine, with its "extra strength" formula, will "deliver" "optimum joint mobility", rebuild cartilage and improve joint function.  Front, back and side shots of the two Kirkland Glucosamine product labels appear as follows:

FRONT                                                LEFT SIDE



FRONT                                                LEFT SIDE



18.     Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, improve or promote joint renewal, mobility or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the prevention or improvement of joint

degeneration or other joint ailments. Defendant's renewal and rejuvenation representations are false and misleading and reasonably likely to deceive the average consumer.

***The impact of Defendant's wrongful conduct***

19. Despite the lack of competent and reliable scientific evidence and numerous clinical studies that have found no causative like between the ingredients in the Kirkland Glucosamine products and joint renewal, mobility or rejuvenation, Defendant continues to unequivocally claim that its Kirkland Glucosamine products are an effective treatment for improving joint renewal, mobility and rejuvenation in all adults.

20. As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects—its Products have on consumers.

21. Specifically, Defendant affirmatively misrepresented that the Kirkland Glucosamine products, with their "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". Having made these affirmative misrepresentations, Defendant failed to disclose that well-conducted, clinical cause-and-effect studies have found no causative relationship between the product ingredients and the prevention or improvement of joint degeneration or other related ailments and Defendant has no competent and reliable scientific evidence that its Kirkland Glucosamine products are effective in helping provide joint renewal, mobility or rejuvenation as represented.

22. Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey one uniform message: Kirkland Glucosamine, with its "extra strength formula", is clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and

9

CONNECTIVE tissue" and "Support[] JOINT CUSHIONING" for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments..

23.    Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive joint renewal, mobility and rejuvenation representations.   Plaintiff purchased and consumed the Product during the Class period and in doing so, read and considered the Product label and based her decision to buy the Product on the joint renewal, mobility and rejuvenation representations. Defendant's deceptive representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the Product.  Plaintiff would not have purchased the Product had she known that Defendant's representations were false and misleading, that Defendant did not possess competent and reliable scientific evidence to support its joint renewal, mobility and rejuvenation representations, and that clinical cause-and-effect studies have found no causative link between the ingredients in Kirkland Glucosamine and joint renewal, mobility or rejuvenation.

24.    As a result, Plaintiff and the Class members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Defendant's representations, were proven to be effective in improving joint mobility, rebuilding cartilage and improving joint function when, in fact, they are not.

25.    Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS DEFINITION AND ALLEGATIONS

26.    Plaintiff brings this action on behalf of herself and all other similarly situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All California residents who, within the applicable statute of limitations, purchased Kirkland Signature[TM] Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature[TM]

10

Extra Strength Glucosamine with MSM.

Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

27.   Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

28.   Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

•      Whether the claims discussed herein that Defendant made about the Products were or are misleading, or reasonably likely to deceive;

•      Whether Defendant's alleged conduct violates public policy;

•      Whether the alleged conduct constitutes violations of the laws asserted herein;

•      Whether Defendant engaged in false and misleading advertising;

•      Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

•      Whether Plaintiff and Class members are entitled to restitution, disgorgement of Defendant's profits, declaratory and/or injunctive relief; and

•      Whether Plaintiff and Class members are entitled to an award of compensatory and/or punitive damages.

29.   Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Defendant's deceptive joint renewal, mobility and rejuvenation representations accompanying each and every bottle of the Kirkland

Glucosamine products which include the same primary active ingredient – glucosamine hydrochloride. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

30. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

31. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

32. In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

33. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

34.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

<u>COUNT I</u>
**Violation of Business & Professions Code §17200, *et seq.***

35.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

36.     Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

37.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased Kirkland Glucosamine in reliance on Defendant's joint renewal, mobility and rejuvenation representations detailed above, but did not receive a product that provides joint renewal, mobility or rejuvenation.

38.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

39.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

40.     Defendant's actions also constitute "unfair" business acts or practices

13

because, as alleged above, *inter alia*, Defendant engaged in false advertising, misrepresented and omitted material facts regarding its Kirkland Glucosamine labels and packaging, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

41.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

42.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

43.     Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

44.     Defendant's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

45.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above.  This reliance has caused harm to Plaintiff and other members of the Class who each purchased Defendant's Kirkland Glucosamine products.  Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

46.     As a result of its deception, Defendant has been able to reap unjust revenue and profit.

47.     Unless restrained and enjoined, Defendant will continue to engage in the

14

above-described conduct. Accordingly, injunctive relief is appropriate.

48.     Plaintiff, on behalf of herself and all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT II
### Violation of the Consumers Legal Remedies Act –Civil Code §1750 *et seq.*

49.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

50.     Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

51.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act"). Plaintiff is a consumer as defined by California Civil Code §1761(d). Defendant's Kirkland Glucosamine products are goods within the meaning of the Act.

52.     Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's Kirkland Glucosamine products:

(5)     Representing that [the Kirkland Glucosamine products have] . . . characteristics, . . . uses [or] benefits . . . which [they] do not have.

\*     \*     \*

(7)     Representing that [the Kirkland Glucosamine products are] of a particular standard, quality or grade, . . . if [they are] of another.

\*     \*     \*

(9)     Advertising goods . . . with the intent not to sell them as advertised.

15

*    *    *

(16)   Representing that [the Kirkland Glucosamine products have] been supplied in accordance with a previous representation when [they have] not.

53.    Defendant violated the Act by representing and failing to disclose material facts on the Kirkland Glucosamine product labels and packaging, as described above, when it knew, or should have known, that the representations were unsubstantiated, were contrary to several clinical cause and effect studies finding the ingredients in all Kirkland Glucosamine products to be inefficacious, were false and misleading and that the omissions were of material facts they were obligated to disclose.

54.    Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

55.    Pursuant to §1782 of the Act, by letter dated November 2, 2011, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.

56.    Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiff further seeks claims for actual, punitive and statutory damages, as appropriate.

57.    Defendant's conduct is malicious, fraudulent and wanton.

## COUNT III
### Breach of Express Warranty

58.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

59.    Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

60.    Defendant expressly warranted on each and every box of Kirkland

16

Glucosamine that the Products help to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". These joint renewal, mobility and rejuvenation statements made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises. Plaintiff read and placed importance on Defendant's joint renewal, mobility and rejuvenation representations.

61.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

62.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing Products that could provide the benefits described above which was the only reason Plaintiff and Class members purchased the Kirkland Glucosamine products.

63.     As a result of Defendant's breach of its warranty, Plaintiff and Class members have been damaged in the amount of the purchase price of the Kirkland Glucosamine products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the class as requested herein;

B.     Awarding Plaintiff and the proposed Class members damages;

C.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D.     Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with court supervision, victims of its conduct and pay them restitution and disgorgement of all

17

monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E.   Ordering Defendant to engage in a corrective advertising campaign;

F.   Awarding attorneys' fees and costs; and

G.   Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 29, 2011

BONNETT FAIRBOURN FRIEDMAN
& BALINT, PC


By:   s/ Patricia N. Syverson
ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ-GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:   (619) 756-6978

FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: 312-427-3600

Attorneys for Plaintiff

18

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record denoted on the Court's Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 29, 2011.


By:  s/ Patricia N. Syverson

BONNETT FAIRBOURN FRIEDMAN
    & BALINT, PC
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
602-274-1100
602-274-1199 facsimile
Email: psyverson@bffb.com

1  BONNETT, FAIRBOURN, FRIEDMAN
     & BALINT, P.C.
2  ELAINE A. RYAN (*Admitted Pro Hac Vice*)
PATRICIA N. SYVERSON (203111)
3  LINDSEY M. GOMEZ-GRAY
2901 N. Central Ave., Suite 1000
4  Phoenix, AZ 85012
eryan@bffb.com
5  psyverson@bffb.com
lgomez-gray@bffb.com
6  Telephone:   (602) 274-1100

7  BONNETT, FAIRBOURN, FRIEDMAN
     & BALINT, P.C.
8  TODD D. CARPENTER (234464)
600 W. Broadway, Suite 900
9  San Diego, California 92101
tcarpenter@bffb.com
10  Telephone: 619-756-6978

11  LEVIN, FISHBEIN, SEDRAN & BERMAN
STEWART WELTMAN, OF COUNSEL (*Admitted Pro Hac Vice*)
12  122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603
13  Sweltman@futtermanhoward.com
Telephone: 312-427-3600
14
15  LEVIN, FISHBEIN, SEDRAN & BERMAN
HOWARD J. SEDRAN (*Admitted Pro Hac Vice*)
16  510 Walnut Street
Philadelphia, Pennsylvania 19106
Telephone: 215-592-1500
17  Attorneys for Plaintiffs

18  **UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
19

20  CECILIA LINARES, an Individual and | Case No.: 3:11-cv-02547-MMA-RBB
ABEL GONZALEZ, an Individual, On
Behalf of Themselves and All Other Similarly
21  Situated California Residents,

| **CLASS ACTION**

22      Plaintiff, | **SECOND AMENDED CLASS ACTION COMPLAINT FOR:**

23      v.

24  COSTCO WHOLESALE, INC., a | 1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;
Washington corporation,

25      Defendant. | 2.   VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and
26

27  | 3.   BREACH OF EXPRESS WARRANTY.

28  | DEMAND FOR JURY TRIAL

Plaintiffs Cecilia Linares and Abel Gonzalez, by and through their attorneys, brings this action on behalf of themselves and all others similarly situated against Defendant Costco Wholesale Inc., and allege as follows:

## NATURE OF ACTION

1. Defendant markets, sells and distributes the Kirkland Signature™[1] Glucosamine line of joint health dietary supplements.[2] Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendant claims that its Kirkland Glucosamine products help improve joint mobility, rebuild cartilage and improve joint function for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments. For example, on each and every Kirkland Glucosamine Chondroitin product label and/or package, Defendant prominently states that Kirkland Glucosamine is "Clinically Proven Effective" for "optimum mobility" and "as a building block for healthy cartilage" and that "two tablets per day deliver" these benefits, as well as "nourishes JOINT and CONNECTIVE TISSUE" and "supports JOINT CUSHIONING" (hereafter referred to as the "joint renewal, mobility and rejuvenation" representations). On each and every Kirkland Glucosamine and MSM product label and/or package, Defendant makes similar joint renewal, mobility and rejuvenation claims and also promises that "noticeable improvement in flexibility and range of motion should be expected after taking this supplement as directed on a consistent basis." However, the Kirkland Glucosamine products do not benefit or promote joint renewal, mobility and rejuvenation. Clinical cause and effect studies have found no causative link between the ingredients in the Kirkland Glucosamine products

---

[1] Kirkland Signature™ is Costco's store brand, also known as its "own-brand", "house brand", or "private label". It is available exclusively at Costco's website and Costco warehouses and is trademarked by the company. Kirkland Signature™ is one of the most successful brands in the country.
[2] The Kirkland Signature™ Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland Glucosamine Chondroitin"); and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland Glucosamine" or the "Products").

1  and joint renewal, mobility and rejuvenation. Defendant also does not have competent

2  and reliable scientific evidence to support its representations. Defendant's representations

3  are false, misleading, and reasonably likely to deceive the public.

4        2.     Despite the deceptive nature of Defendant's representations, Defendant

5  conveyed and continues to convey its deceptive joint renewal, mobility and rejuvenation

6  representations through a variety of media, including in its print advertisements, as well

7  as on its Product packages and labeling, website and online promotional materials. The

8  only reason a consumer would purchase the Kirkland Glucosamine products is to obtain

9  the advertised joint health benefits, which Kirkland Glucosamine does not provide.

10        3.     Defendant's marketing and advertising campaign is designed to cause

11  consumers to buy Kirkland Glucosamine. Defendant's deceptive marketing and

12  advertising campaign has succeeded. Estimated sales of joint dietary supplements

13  including Kirkland Glucosamine approached $820 million in 2006.[3]

14        4.     Plaintiffs bring this action on behalf of themselves and other similarly

15  situated California consumers who have purchased the Products to halt the dissemination

16  of this false and misleading advertising message, correct the false and misleading

17  perception it has created in the minds of consumers, and obtain redress for those who

18  have purchased the Kirkland Glucosamine products. Plaintiffs allege violations of the

19  Consumers Legal Remedies Act, the Unfair Competition Law, and Breach of Express

20  Warranty created by Defendant's advertising, including false labeling.

21                        **JURISDICTION AND VENUE**

22        5.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The

23  matter in controversy, exclusive of interest and costs, exceeds the sum or value of

24  $5,000,000 and is a class action in which there are in excess of 100 class members and

25  the members of the Class are citizens of a state different from Defendant.

26

27  [3]  2007 Nutrition Industry Overview, Nutrition Business J., *available at*
28  http://newhope360.com/managing-your-business/2007-nutrition-industry-overview (last
visited Oct. 3, 2011).

6.     This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in California.  Defendant has marketed, promoted, distributed, and sold the Kirkland Glucosamine products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred while they resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

**PARTIES**

8.     Plaintiff Cecilia Linares resides in Imperial, California. Towards the end of 2010, Plaintiff Linares was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine Chondroitin label at a Costco store in El Centro, California.  After reading the label, Plaintiff Linares purchased the Kirkland Glucosamine Chondroitin product to relieve her joint pain and in so doing relied on every single one of Defendant's renewal, mobility and rejuvenation representations. The Kirkland Glucosamine Chondroitin that Plaintiff purchased and took as directed did not help improve joint mobility, rebuild cartilage or improve joint function as represented. As a result, Plaintiff Linares suffered injury in fact and lost money.  She would not have purchased Kirkland Glucosamine Chondroitin had she known it did not provide the advertised joint health benefits.

9.     Plaintiff Abel Gonzalez resides in Canyon Lake, California.  On or around January 2012, Plaintiff Gonzalez was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine and MSM label at a Costco store in southern California.  After reading the label, Plaintiff Gonzalez purchased the Kirkland Glucosamine and MSM product to improve the joint function and reduce

- 4 -

the joint pain in his shoulders and in so doing relied on every single one of Defendant's renewal, mobility and rejuvenation representations. The Kirkland Glucosamine and MSM that Plaintiff Gonzalez purchased and took as directed did not help improve joint mobility, rebuild cartilage or improve joint function as represented. As a result, Plaintiff Gonzalez suffered injury in fact and lost money. He would not have purchased Kirkland Glucosamine and MSM had he known it did not provide the advertised joint health benefits.

10. Defendant Costco Wholesale Inc., is a public corporation incorporated under the laws of the state of Washington. Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027. Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in California.

## FACTUAL ALLEGATIONS

***The Kirkland Glucosamine Products***

11. Since 2001, Costco has distributed, marketed, and sold the Kirkland Signature™ line of joint dietary supplements. These products include: (1) Kirkland Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM.

12. The Kirkland Glucosamine products are sold online and in Costco stores statewide. The Kirkland Glucosamine and MSM product is available in 375 count bottles, retailing for approximately $18. The Kirkland Glucosamine Chondroitin product is available in 220 count bottles, retailing for approximately $25. The following are screen shots of the Kirkland Glucosamine products:

- 5 -

 

13.     Since the Products' launch, Costco has consistently conveyed the message to consumers throughout California that the Kirkland Glucosamine products, with their "extra strength" formulas are clinically proven to deliver "optimum mobility" and will protect and build cartilage. Defendant's renewal, mobility and rejuvenation representations are false, misleading and deceptive.

14.     Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products. The primary active ingredient in both Kirkland Glucosamine products is glucosamine hydrochloride. Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The Products' labeling and packaging states the benefits associated with taking glucosamine hydrochloride: "Glucosamine is a basic building block for cartilage, synovial fluid and other connective tissues, which are needed for healthy structure and function of joints." There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function. In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal, mobility or rejuvenation.

15.     The chondroitin sulfate in Kirkland Glucosamine Chondroitin, is a complex carbohydrate found in the body's connective tissues. On the Product's labeling and packaging, Defendant represents that chondroitin sulfate "protects existing cartilage and

- 6 -

serves as a building block for healthy new cartilage." There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that assists in building joint cartilage. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal, mobility or rejuvenation.

16.     The Methylsulfonylmethane ("MSM") found in Kirkland Glucosamine and MSM products is an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Product's labeling and packaging, Defendant claims that MSM "is a necessary component that works in conjunction with Glucosamine to provide the building blocks of collagen, an important component of healthy joints and connective tissue. Clinical research shows MSM increases glucosamine's effectiveness." There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function, or makes glucosamine work more effectively. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal, mobility or rejuvenation.

17.     The Kirkland Glucosamine Chondroitin bottle references one study purportedly supporting Defendant's "Clinically Proven Effective" representation. Other than referencing the study sponsor, no other identifying information is included. The referenced NIH study is not competent and reliable scientific support for Defendant's representations. The NIH sponsored study did not examine, let alone find, that glucosamine and chondroitin rebuild cartilage, nourish joint and connective tissue or support joint cushioning. Defendant's citation to this study as support for its joint renewal, mobility and rejuvenation representations constitutes further deceptive and misleading conduct, in as much as the study is not competent and reliable evidence of efficacy.

18.     In fact, numerous clinical cause and effect studies have found no causative

- 7 -

1  link between any of the primary active ingredients in the Kirkland Glucosamine products

2  alone, or in combination, and joint renewal, mobility and rejuvenation.   Nevertheless,

3  Defendant without any scientifically valid confirmation that Kirkland Glucosamine is an

4  effective joint treatment—let alone an effective treatment for *all* joints in the human

5  body, for adults of *all* ages and for *all* manner and stages of joint related ailments —

6  prominently claims on the Products' packaging and labeling that Kirkland Glucosamine,

7  with its "extra strength" formula, will "deliver" "optimum joint mobility", rebuild

8  cartilage and improve joint function.   Front, back and side shots of the two Kirkland

9  Glucosamine product labels appear as follows:

10              FRONT                              LEFT SIDE





FRONT                                          LEFT SIDE




19. Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, improve or promote joint renewal, mobility or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the prevention or improvement of joint degeneration or other joint ailments. Defendant's renewal and rejuvenation representations are false and misleading and reasonably likely to deceive the average consumer.

***The impact of Defendant's wrongful conduct***

20. Despite the lack of competent and reliable scientific evidence and numerous clinical studies that have found no causative like between the ingredients in the Kirkland Glucosamine products and joint renewal, mobility or rejuvenation, Defendant continues to unequivocally claim that its Kirkland Glucosamine products are an effective treatment for improving joint renewal, mobility and rejuvenation in all adults.

21. As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of

- 9 -

1    the effects—and has learned of the effects—its Products have on consumers.

2         22.    Specifically, Defendant affirmatively misrepresented that the Kirkland

3    Glucosamine products, with their "extra strength formula", are clinically proven to

4    provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE",

5    "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING".

6    Having made these affirmative misrepresentations, Defendant failed to disclose that well-

7    conducted, clinical cause-and-effect studies have found no causative relationship between

8    the product ingredients and the prevention or improvement of joint degeneration or other

9    related ailments and Defendant has no competent and reliable scientific evidence that its

10   Kirkland Glucosamine products are effective in helping provide joint renewal, mobility

11   or rejuvenation as represented.

12        23.    Notwithstanding these deceptive representations and material omissions,

13   Defendant conveyed and continues to convey one uniform message:    Kirkland

14   Glucosamine, with its "extra strength formula", is clinically proven to provide "Optimum

15   JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and

16   CONNECTIVE tissue" and "Support[] JOINT CUSHIONING" for all joints in the

17   human body, for adults of all ages and for all manner and stages of joint related ailments..

18        24.    Plaintiffs and Class members have been and will continue to be deceived or

19   misled by Defendant's deceptive joint renewal, mobility and rejuvenation

20   representations.  Plaintiffs purchased and consumed the Products during the Class period

21   and in doing so, read and considered the Products' label and based their decision to buy

22   the Products on the joint renewal, mobility and rejuvenation representations.

23   Defendant's deceptive representations and omissions were a material factor in

24   influencing Plaintiffs' decision to purchase and consume the Products.  Plaintiffs would

25   not have purchased the Products had they known that Defendant's representations were

26   false and misleading, that Defendant did not possess competent and reliable scientific

27   evidence to support its joint renewal, mobility and rejuvenation representations, and that

28

- 10 -

clinical cause-and-effect studies have found no causative link between the ingredients in Kirkland Glucosamine and joint renewal, mobility or rejuvenation.

25.     As a result, Plaintiffs and the Class members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Defendant's representations, were proven to be effective in improving joint mobility, rebuilding cartilage and improving joint function when, in fact, they are not.

26.     Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS DEFINITION AND ALLEGATIONS

27.     Plaintiffs bring this action on behalf of themselves and all other similarly situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class:

> All California residents who, within the applicable statute of limitations, purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

28.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiffs.

29.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  The common legal and factual questions include, but are not limited to, the following:

•     Whether the claims discussed herein that Defendant made about the

- 11 -

Products were or are misleading, or reasonably likely to deceive;

      •    Whether Defendant's alleged conduct violates public policy;

      •    Whether the alleged conduct constitutes violations of the laws asserted herein;

      •    Whether Defendant engaged in false and misleading advertising;

      •    Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

      •    Whether Plaintiff and Class members are entitled to restitution, disgorgement of Defendant's profits, declaratory and/or injunctive relief; and

      •    Whether Plaintiff and Class members are entitled to an award of compensatory and/or punitive damages.

      30.    Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Defendant's deceptive joint renewal, mobility and rejuvenation representations accompanying each and every bottle of the Kirkland Glucosamine products which include the same primary active ingredient – glucosamine hydrochloride. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

      31.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

      32.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court

system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

33.    In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

34.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

35.    Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.  Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I
### Violation of Business & Professions Code §17200, *et seq.*

36.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

37.    Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

38.    As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased Kirkland Glucosamine

- 13 -

1  in reliance on Defendant's joint renewal, mobility and rejuvenation representations

2  detailed above, but did not receive a product that provides joint renewal, mobility or

3  rejuvenation.

4       39.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.*

5  ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and

6  any false or misleading advertising.  In the course of conducting business, Defendant

7  committed unlawful business practices by, *inter alia*, making the representations (which

8  also constitutes advertising within the meaning of §17200) and omissions of material

9  facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711,

10  1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common

11  law.

12       40.     Plaintiff and the Class reserve the right to allege other violations of law,

13  which constitute other unlawful business acts or practices.  Such conduct is ongoing and

14  continues to this date.

15       41.     Defendant's actions also constitute "unfair" business acts or practices

16  because, as alleged above, *inter alia*, Defendant engaged in false advertising,

17  misrepresented and omitted material facts regarding its Kirkland Glucosamine labels and

18  packaging, and thereby offended an established public policy, and engaged in immoral,

19  unethical, oppressive, and unscrupulous activities that are substantially injurious to

20  consumers.

21       42.     As stated in this Complaint, Plaintiff alleges violations of consumer

22  protection, unfair competition and truth in advertising laws, resulting in harm to

23  consumers.  Defendant's acts and omissions also violate and offend the public policy

24  against engaging in false and misleading advertising, unfair competition and deceptive

25  conduct towards consumers.  This conduct constitutes violations of the unfair prong of

26  Business & Professions Code §17200, *et seq.*

27       43.     There were reasonably available alternatives to further Defendant's

28

1    legitimate business interests, other than the conduct described herein.

2        44.    Business & Professions Code §17200, *et seq.*, also prohibits any
3    "fraudulent business act or practice."

4        45.    Defendant's actions, claims, nondisclosures and misleading statements, as
5    more fully set forth above, were also false, misleading and/or likely to deceive the
6    consuming public within the meaning of Business & Professions Code §17200, *et seq.*

7        46.    Plaintiff and other members of the Class have in fact been deceived as a
8    result of their reliance on Defendant's material representations and omissions, which are
9    described above.  This reliance has caused harm to Plaintiff and other members of the
10   Class who each purchased Defendant's Kirkland Glucosamine products.  Plaintiff and the
11   other Class members have suffered injury in fact and lost money as a result of these
12   unlawful, unfair, and fraudulent practices.

13       47.    As a result of its deception, Defendant has been able to reap unjust revenue
14   and profit.

15       48.    Unless restrained and enjoined, Defendant will continue to engage in the
16   above-described conduct. Accordingly, injunctive relief is appropriate.

17       49.    Plaintiff, on behalf of herself and all others similarly situated, and the
18   general public, seeks restitution and disgorgement of all money obtained from Plaintiff
19   and the members of the Class collected as a result of unfair competition, an injunction
20   prohibiting Defendant from continuing such practices, corrective advertising and all other
21   relief this Court deems appropriate, consistent with Business & Professions Code
22   §17203.

### COUNT II
### Violation of the Consumers Legal Remedies Act –Civil Code §1750 *et seq.*

23

24       50.    Plaintiff re-alleges and incorporates by reference the allegations contained
25   in the paragraphs above as if fully set forth herein.

26       51.    Plaintiff Cecilia Linares brings this claim individually and on behalf of the
27   Class.

28

52.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act").  Plaintiff is a consumer as defined by California Civil Code §1761(d).  Defendant's Kirkland Glucosamine products are goods within the meaning of the Act.

53.     Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant's Kirkland Glucosamine products:

(5)     Representing that [the Kirkland Glucosamine products have] . . . characteristics, . . . uses [or] benefits . . . which [they] do not have.

*     *     *

(7)     Representing that [the Kirkland Glucosamine products are] of a particular standard, quality or grade, . . . if [they are] of another.

*     *     *

(9)     Advertising goods . . . with the intent not to sell them as advertised.

*     *     *

(16)   Representing that [the Kirkland Glucosamine products have] been supplied in accordance with a previous representation when [they have] not.

54.     Defendant violated the Act by representing and failing to disclose material facts on the Kirkland Glucosamine product labels and packaging, as described above, when it knew, or should have known, that the representations were unsubstantiated, were contrary to several clinical cause and effect studies finding the ingredients in all Kirkland Glucosamine products to be inefficacious, were false and misleading and that the omissions were of material facts they were obligated to disclose.

55.     Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

- 16 -

56.     Pursuant to §1782 of the Act, by letter dated November 2, 2011, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.

57.     Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.   Therefore, Plaintiff further seeks claims for actual, punitive and statutory damages, as appropriate.

58.     Defendant's conduct is malicious, fraudulent and wanton.

## COUNT III
### Breach of Express Warranty

59.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

60.     Plaintiff Cecilia Linares brings this claim individually and on behalf of the Class.

61.     Defendant expressly warranted on each and every box of Kirkland Glucosamine that the Products help to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". These joint renewal, mobility and rejuvenation statements made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises.   Plaintiff read and placed importance on Defendant's joint renewal, mobility and rejuvenation representations.

62.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

63.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing Products that could provide the

benefits described above which was the only reason Plaintiff and Class members purchased the Kirkland Glucosamine products.

64.    As a result of Defendant's breach of its warranty, Plaintiff and Class members have been damaged in the amount of the purchase price of the Kirkland Glucosamine products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.    Certifying the class as requested herein;

B.    Awarding Plaintiff and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E.    Ordering Defendant to engage in a corrective advertising campaign;

F.    Awarding attorneys' fees and costs; and

G.    Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: April 25, 2012                    BONNETT FAIRBOURN FRIEDMAN
                                          & BALINT, PC


                                         By:  s/ Todd D. Carpenter
                                         TODD D. CARPENTER
                                         600 West Broadway, Suite 900
                                         San Diego, California 92101
                                         Telephone:   (619) 756-6978

- 18 -

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ-GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

LEVIN, FISHBEIN, SEDRAN & BERMAN
STEWART WELTMAN, Of Counsel
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600

LEVIN, FISHBEIN, SEDRAN & BERMAN
HOWARD J. SEDRAN
510 Walnut Street
Philadelphia, Pennsylvania 19106
Telephone: 215-592-1500

Attorneys for Plaintiffs

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record denoted on the Court's Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 25, 2012.

By:_ s/ Todd D. Carpenter_____

BONNETT FAIRBOURN FRIEDMAN
    & BALINT, PC
TODD D. CARPENTER
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone: 619-756-6978

- 20 -

1  BONNETT, FAIRBOURN, FRIEDMAN
     & BALINT, P.C.
2  ELAINE A. RYAN (*Admitted Pro Hac Vice*)
   PATRICIA N. SYVERSON (203111)
3  LINDSEY M. GOMEZ-GRAY
   2901 N. Central Ave., Suite 1000
4  Phoenix, AZ 85012
   eryan@bffb.com
5  psyverson@bffb.com
   lgomez-gray@bffb.com
6  Telephone:   (602) 274-1100

7  BONNETT, FAIRBOURN, FRIEDMAN
     & BALINT, P.C.
8  TODD D. CARPENTER (234464)
   600 W. Broadway, Suite 900
9  San Diego, California 92101
   tcarpenter@bffb.com
10 Telephone: 619-756-6978

11 LEVIN, FISHBEIN, SEDRAN & BERMAN
   STEWART WELTMAN, OF COUNSEL (*Admitted Pro Hac Vice*)
12 122 S. Michigan Avenue, Suite 1850
   Chicago, Illinois 60603
13 Sweltman@futtermanhoward.com
   Telephone: 312-427-3600
14
15 LEVIN, FISHBEIN, SEDRAN & BERMAN
   HOWARD J. SEDRAN (*Admitted Pro Hac Vice*)
16 510 Walnut Street
   Philadelphia, Pennsylvania 19106
   Telephone: 215-592-1500
17 Attorneys for Plaintiffs

18              **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
19

| | |
|---|---|
| 20 CECILIA LINARES, an Individual and ABEL GONZALEZ, an Individual, On Behalf of Themselves and All Other Similarly Situated California Residents, | Case No.: 3:11-cv-02547-MMA-RBB |
| 21 | **CLASS ACTION** |
| 22 Plaintiffs, | **THIRD AMENDED CLASS ACTION COMPLAINT FOR:** |
| 23 v. | 1.   VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*; |
| 24 COSTCO WHOLESALE, INC., a Washington corporation, | |
| 25 Defendant. | 2.   VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and |
| 26 | |
| 27 | 3.   BREACH OF EXPRESS WARRANTY. |
| 28 | DEMAND FOR JURY TRIAL |

1       Plaintiffs Cecilia Linares and Abel Gonzalez, by and through their attorneys, bring

2  this action on behalf of themselves and all others similarly situated against Defendant

3  Costco Wholesale Inc., and allege as follows:

4                      **NATURE OF ACTION**

5       1.  Defendant markets, sells and distributes the Kirkland Signature[TM][1]

6  Glucosamine line of joint health dietary supplements.[2]  Through an extensive,

7  widespread, comprehensive and uniform nationwide marketing campaign, Defendant

8  claims that its Kirkland Glucosamine products help improve joint mobility, rebuild

9  cartilage and improve joint function for all joints in the human body, for adults of all ages

10  and for all manner and stages of joint related ailments.  For example, on each and every

11  Kirkland Glucosamine Chondroitin product label and/or package, Defendant prominently

12  states that Kirkland Glucosamine is "Clinically Proven Effective" for "optimum

13  mobility" and "as a building block for healthy cartilage" and that "two tablets per day

14  deliver" these benefits, as well as "nourishes JOINT and CONNECTIVE TISSUE" and

15  "supports JOINT CUSHIONING" (hereafter referred to as the "joint renewal, mobility

16  and rejuvenation" representations).  On each and every Kirkland Glucosamine and MSM

17  product label and/or package, Defendant makes similar joint renewal, mobility and

18  rejuvenation claims and also promises that "noticeable improvement in flexibility and

19  range of motion should be expected after taking this supplement as directed on a

20  consistent basis."  However, the Kirkland Glucosamine products do not benefit or

21  promote joint renewal, mobility and rejuvenation.  Clinical cause and effect studies have

22  found no causative link between the ingredients in the Kirkland Glucosamine products

23

24  [1] Kirkland Signature[TM] is Costco's store brand, also known as its "own-brand", "house brand", or "private label".  It is available exclusively at Costco's website and Costco

25  warehouses and is trademarked by the company. Kirkland Signature[TM] is one of the most successful brands in the country.

26  [2] The Kirkland Signature[TM] Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature[TM] Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland

27  Glucosamine Chondroitin"); and (2) Kirkland Signature[TM] Extra Strength Glucosamine HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland

28  Glucosamine" or the "Products").

1   and joint renewal, mobility and rejuvenation.  Defendant also does not have competent

2   and reliable scientific evidence to support its representations. Defendant's representations

3   are false, misleading, and reasonably likely to deceive the public.

4         2.     Despite the deceptive nature of Defendant's representations, Defendant

5   conveyed and continues to convey its deceptive joint renewal, mobility and rejuvenation

6   representations through a variety of media, including in its print advertisements, as well

7   as on its Product packages and labeling, website and online promotional materials. The

8   only reason a consumer would purchase the Kirkland Glucosamine products is to obtain

9   the advertised joint health benefits, which Kirkland Glucosamine does not provide.

10         3.     Defendant's marketing and advertising campaign is designed to cause

11   consumers to buy Kirkland Glucosamine. Defendant's deceptive marketing and

12   advertising campaign has succeeded. Estimated sales of joint dietary supplements

13   including Kirkland Glucosamine approached $820 million in 2006.[3]

14         4.     Plaintiffs bring this action on behalf of themselves and other similarly

15   situated California consumers who have purchased the Products to halt the dissemination

16   of this false and misleading advertising message, correct the false and misleading

17   perception it has created in the minds of consumers, and obtain redress for those who

18   have purchased the Kirkland Glucosamine products.  Plaintiffs allege violations of the

19   Consumers Legal Remedies Act, the Unfair Competition Law, and Breach of Express

20   Warranty created by Defendant's advertising, including false labeling.

21   <center>**JURISDICTION AND VENUE**</center>

22         5.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The

23   matter in controversy, exclusive of interest and costs, exceeds the sum or value of

24   $5,000,000 and is a class action in which there are in excess of 100 class members and

25   the members of the Class are citizens of a state different from Defendant.

26

27   [3]  2007 Nutrition Industry Overview, Nutrition Business J., *available at*
28   http://newhope360.com/managing-your-business/2007-nutrition-industry-overview   (last
     visited Oct. 3, 2011).

<center>- 3 -</center>

6.      This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in California.  Defendant has marketed, promoted, distributed, and sold the Kirkland Glucosamine products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred while they resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

8.      Plaintiff Cecilia Linares resides in Imperial, California. Towards the end of 2010, Plaintiff Linares was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine Chondroitin label at a Costco store in El Centro, California.  After reading the label, Plaintiff Linares purchased the Kirkland Glucosamine Chondroitin product to relieve her joint pain and in so doing relied on every single one of Defendant's renewal, mobility and rejuvenation representations. The Kirkland Glucosamine Chondroitin that Plaintiff purchased and took as directed did not help improve joint mobility, rebuild cartilage or improve joint function as represented. As a result, Plaintiff Linares suffered injury in fact and lost money.  She would not have purchased Kirkland Glucosamine Chondroitin had she known it did not provide the advertised joint health benefits.

9.      Plaintiff Abel Gonzalez resides in Canyon Lake, California.  On or around January 2012, Plaintiff Gonzalez was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine and MSM label at a Costco store in southern California.  After reading the label, Plaintiff Gonzalez purchased the Kirkland Glucosamine and MSM product to improve the joint function and reduce

-4-

the joint pain in his shoulders and in so doing relied on every single one of Defendant's renewal, mobility and rejuvenation representations. The Kirkland Glucosamine and MSM that Plaintiff Gonzalez purchased and took as directed did not help improve joint mobility, rebuild cartilage or improve joint function as represented. As a result, Plaintiff Gonzalez suffered injury in fact and lost money. He would not have purchased Kirkland Glucosamine and MSM had he known it did not provide the advertised joint health benefits.

10.    Defendant Costco Wholesale Inc. is a public corporation incorporated under the laws of the state of Washington. Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, Washington 98027. Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in California.

## FACTUAL ALLEGATIONS

### The Kirkland Glucosamine Products

11.    Since 2001, Costco has distributed, marketed, and sold the Kirkland Signature™ line of joint dietary supplements. These products include: (1) Kirkland Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM.

12.    The Kirkland Glucosamine products are sold online and in Costco stores statewide. The Kirkland Glucosamine and MSM product is available in 375 count bottles, retailing for approximately $18. The Kirkland Glucosamine Chondroitin product is available in 220 count bottles, retailing for approximately $25. The following are screen shots of the Kirkland Glucosamine products:

 

13.     Since the Products' launch, Costco has consistently conveyed the message to consumers throughout California that the Kirkland Glucosamine products, with their "extra strength" formulas are clinically proven to deliver "optimum mobility" and will protect and build cartilage. Defendant's renewal, mobility and rejuvenation representations are false, misleading and deceptive.

14.     Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products.  The primary active ingredient in both Kirkland Glucosamine products is glucosamine hydrochloride.  Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue.  The Products' labeling and packaging states the benefits associated with taking glucosamine hydrochloride:  "Glucosamine is a basic building block for cartilage, synovial fluid and other connective tissues, which are needed for healthy structure and function of joints."  There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function.  In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal, mobility or rejuvenation.

15.     The chondroitin sulfate in Kirkland Glucosamine Chondroitin, is a complex carbohydrate found in the body's connective tissues.  On the Product's labeling and packaging, Defendant represents that chondroitin sulfate "protects existing cartilage and

serves as a building block for healthy new cartilage." There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that assists in building joint cartilage. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal, mobility or rejuvenation.

16. The Methylsulfonylmethane ("MSM") found in Kirkland Glucosamine and MSM products is an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Product's labeling and packaging, Defendant claims that MSM "is a necessary component that works in conjunction with Glucosamine to provide the building blocks of collagen, an important component of healthy joints and connective tissue. Clinical research shows MSM increases glucosamine's effectiveness." There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function, or makes glucosamine work more effectively. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal, mobility or rejuvenation.

17. The Kirkland Glucosamine Chondroitin bottle references one study purportedly supporting Defendant's "Clinically Proven Effective" representation. Other than referencing the study sponsor, no other identifying information is included. The referenced NIH study is not competent and reliable scientific support for Defendant's representations. The NIH sponsored study did not examine, let alone find, that glucosamine and chondroitin rebuild cartilage, nourish joint and connective tissue or support joint cushioning. Defendant's citation to this study as support for its joint renewal, mobility and rejuvenation representations constitutes further deceptive and misleading conduct, in as much as the study is not competent and reliable evidence of efficacy.

18. In fact, numerous clinical cause and effect studies have found no causative

- 7 -

link between any of the primary active ingredients in the Kirkland Glucosamine products alone, or in combination, and joint renewal, mobility and rejuvenation. Nevertheless, Defendant without any scientifically valid confirmation that Kirkland Glucosamine is an effective joint treatment—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages and for *all* manner and stages of joint related ailments— prominently claims on the Products' packaging and labeling that Kirkland Glucosamine, with its "extra strength" formula, will "deliver" "optimum joint mobility", rebuild cartilage and improve joint function. Front, back and side shots of the two Kirkland Glucosamine product labels appear as follows:

FRONT                                          LEFT SIDE



FRONT                                              LEFT SIDE



19. Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, improve or promote joint renewal, mobility or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the prevention or improvement of joint degeneration or other joint ailments. Defendant's renewal and rejuvenation representations are false and misleading and reasonably likely to deceive the average consumer.

***The impact of Defendant's wrongful conduct***

20. Despite the lack of competent and reliable scientific evidence and numerous clinical studies that have found no causative like between the ingredients in the Kirkland Glucosamine products and joint renewal, mobility or rejuvenation, Defendant continues to unequivocally claim that its Kirkland Glucosamine products are an effective treatment for improving joint renewal, mobility and rejuvenation in all adults.

21. As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of

1    the effects—and has learned of the effects—its Products have on consumers.

2        22.    Specifically, Defendant affirmatively misrepresented that the Kirkland

3    Glucosamine products, with their "extra strength formula", are clinically proven to

4    provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE",

5    "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING".

6    Having made these affirmative misrepresentations, Defendant failed to disclose that well-

7    conducted, clinical cause-and-effect studies have found no causative relationship between

8    the product ingredients and the prevention or improvement of joint degeneration or other

9    related ailments and Defendant has no competent and reliable scientific evidence that its

10   Kirkland Glucosamine products are effective in helping provide joint renewal, mobility

11   or rejuvenation as represented.

12       23.    Notwithstanding these deceptive representations and material omissions,

13   Defendant conveyed and continues to convey one uniform message:     Kirkland

14   Glucosamine, with its "extra strength formula", is clinically proven to provide "Optimum

15   JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and

16   CONNECTIVE tissue" and "Support[] JOINT CUSHIONING" for all joints in the

17   human body, for adults of all ages and for all manner and stages of joint related ailments.

18       24.    Plaintiffs and Class members have been and will continue to be deceived or

19   misled by Defendant's deceptive joint renewal, mobility and rejuvenation

20   representations.  Plaintiffs purchased and consumed the Products during the Class period

21   and in doing so, read and considered the Products' label and based their decision to buy

22   the Products on the joint renewal, mobility and rejuvenation representations.

23   Defendant's deceptive representations and omissions were a material factor in

24   influencing Plaintiffs' decision to purchase and consume the Products.  Plaintiffs would

25   not have purchased the Products had they known that Defendant's representations were

26   false and misleading, that Defendant did not possess competent and reliable scientific

27   evidence to support its joint renewal, mobility and rejuvenation representations, and that

28

- 10 -

1   clinical cause-and-effect studies have found no causative link between the ingredients in

2   Kirkland Glucosamine and joint renewal, mobility or rejuvenation.

3       25.     As a result, Plaintiffs and the Class members have been damaged in their

4   purchases of these Products and have been deceived into purchasing Products that they

5   believed, based on Defendant's representations, were proven to be effective in improving

6   joint mobility, rebuilding cartilage and improving joint function when, in fact, they are

7   not.

8       26.     Defendant, by contrast, reaped enormous profits from its false marketing

9   and sale of these Products.

10                    **CLASS DEFINITION AND ALLEGATIONS**

11      27.     Plaintiffs bring this action on behalf of themselves and all other similarly

12  situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal

13  Rules of Civil Procedure and seek certification of the following Class:

14
            All California residents who, within the applicable statute of
15          limitations, purchased Kirkland Signature™ Extra Strength
            Glucosamine Chondroitin Sulfate and/or Kirkland Signature™
16          Extra Strength Glucosamine with MSM.

17
            Excluded from the Class are Defendant, its parents,
18          subsidiaries, affiliates, officers and directors, and those who
            purchased the Kirkland Glucosamine products for the purpose
19          of resale.

20
        28.     Members of the Class are so numerous and geographically dispersed that
21
    joinder of all Class members is impracticable.  Plaintiffs are informed and believe, and
22
    on that basis allege, that the proposed Class contains many thousands of members.  The
23
    precise number of Class members is unknown to Plaintiffs.
24
        29.     Common questions of law and fact exist as to all members of the Class and
25
    predominate over questions affecting only individual Class members.  The common legal
26
    and factual questions include, but are not limited to, the following:
27

28                  •     Whether the claims discussed herein that Defendant made about the

                                        - 11 -

Products were or are misleading, or reasonably likely to deceive;

   •   Whether Defendant's alleged conduct violates public policy;

   •   Whether the alleged conduct constitutes violations of the laws asserted herein;

   •   Whether Defendant engaged in false and misleading advertising;

   •   Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

   •   Whether Plaintiffs and Class members are entitled to restitution, disgorgement of Defendant's profits, declaratory and/or injunctive relief; and

   •   Whether Plaintiffs and Class members are entitled to an award of compensatory and/or punitive damages.

  30. Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, were subject to Defendant's deceptive joint renewal, mobility and rejuvenation representations accompanying each and every bottle of the Kirkland Glucosamine products which include the same primary active ingredient – glucosamine hydrochloride. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

  31. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel competent and experienced in both consumer protection and class litigation.

  32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court

system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

33.     In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

34.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiffs and Class members.

35.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

<div align="center">

**COUNT I**
**Violation of Business & Professions Code §17200, *et seq.***

</div>

36.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

37.     Plaintiffs bring this claim individually and on behalf of the Class.

38.     As alleged herein, Plaintiffs have suffered injury in fact and lost money or property as a result of Defendant's conduct because they purchased Kirkland Glucosamine in reliance on Defendant's joint renewal, mobility and rejuvenation

<div align="center">

- 13 -

</div>

1  representations detailed above, but did not receive a product that provides joint renewal,

2  mobility or rejuvenation.

3      39.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.*

4  ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and

5  any false or misleading advertising.   In the course of conducting business, Defendant

6  committed unlawful business practices by, *inter alia*, making the representations (which

7  also constitutes advertising within the meaning of §17200) and omissions of material

8  facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711,

9  1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common

10 law.

11     40.     Plaintiffs and the Class reserve the right to allege other violations of law,

12 which constitute other unlawful business acts or practices.   Such conduct is ongoing and

13 continues to this date.

14     41.     Defendant's actions also constitute "unfair" business acts or practices

15 because, as alleged above, *inter alia*, Defendant engaged in false advertising,

16 misrepresented and omitted material facts regarding its Kirkland Glucosamine labels and

17 packaging, and thereby offended an established public policy, and engaged in immoral,

18 unethical, oppressive, and unscrupulous activities that are substantially injurious to

19 consumers.

20     42.     As stated in this Complaint, Plaintiffs allege violations of consumer

21 protection, unfair competition and truth in advertising laws, resulting in harm to

22 consumers.   Defendant's acts and omissions also violate and offend the public policy

23 against engaging in false and misleading advertising, unfair competition and deceptive

24 conduct towards consumers.   This conduct constitutes violations of the unfair prong of

25 Business & Professions Code §17200, *et seq.*

26     43.     There were reasonably available alternatives to further Defendant's

27 legitimate business interests, other than the conduct described herein.

28
                                        - 14 -

44.     Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

45.     Defendant's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

46.     Plaintiffs and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above.  This reliance has caused harm to Plaintiffs and other members of the Class who each purchased Defendant's Kirkland Glucosamine products.  Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

47.     As a result of its deception, Defendant has been able to reap unjust revenue and profit.

48.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

49.     Plaintiffs, on behalf of themselves and all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

<u>COUNT II</u>
**Violation of the Consumers Legal Remedies Act – Civil Code §1750 *et seq.***

50.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

51.     Plaintiffs brings this claim individually and on behalf of the Class.

52.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act").  Plaintiffs are consumers as defined by

- 15 -

California Civil Code §1761(d).  Defendant's Kirkland Glucosamine products are goods within the meaning of the Act.

53.    Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of Defendant's Kirkland Glucosamine products:

(5)    Representing that [the Kirkland Glucosamine products have] . . . characteristics, . . . uses [or] benefits . . . which [they] do not have.

\*       \*       \*

(7)    Representing that [the Kirkland Glucosamine products are] of a particular standard, quality or grade, . . . if [they are] of another.

\*       \*       \*

(9)    Advertising goods . . . with the intent not to sell them as advertised.

\*       \*       \*

(16)  Representing that [the Kirkland Glucosamine products have] been supplied in accordance with a previous representation when [they have] not.

54.    Defendant violated the Act by representing and failing to disclose material facts on the Kirkland Glucosamine product labels and packaging, as described above, when it knew, or should have known, that the representations were unsubstantiated, were contrary to several clinical cause and effect studies finding the ingredients in all Kirkland Glucosamine products to be inefficacious, were false and misleading and that the omissions were of material facts they were obligated to disclose.

55.    Pursuant to §1782(d) of the Act, Plaintiffs and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

56.    Pursuant to §1782 of the Act, by letter dated November 2, 2011, Plaintiff Linares notified Defendant in writing by certified mail of the particular violations of

§1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.

57.     Defendant failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.   Therefore, Plaintiffs further seek claims for actual, punitive and statutory damages, as appropriate.

58.     Defendant's conduct is malicious, fraudulent and wanton.

**COUNT III**
**Breach of Express Warranty**

59.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

60.     Plaintiffs bring this claim individually and on behalf of the Class.

61.     Defendant expressly warranted on each and every box of Kirkland Glucosamine that the Products help to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". These joint renewal, mobility and rejuvenation statements made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises.   Plaintiffs read and placed importance on Defendant's joint renewal, mobility and rejuvenation representations.

62.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

63.     Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products that could provide the benefits described above which was the only reason Plaintiffs and Class members purchased the Kirkland Glucosamine products.

- 17 -

64.    As a result of Defendant's breach of its warranty, Plaintiffs and Class members have been damaged in the amount of the purchase price of the Kirkland Glucosamine products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for a judgment:

A.    Certifying the class as requested herein;

B.    Awarding Plaintiffs and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the proposed Class members;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E.    Ordering Defendant to engage in a corrective advertising campaign;

F.    Awarding attorneys' fees and costs; and

G.    Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: June 1, 2012                      BONNETT FAIRBOURN FRIEDMAN
                                         & BALINT, PC


                                         By:   s/ Todd D. Carpenter
                                         TODD D. CARPENTER
                                         600 West Broadway, Suite 900
                                         San Diego, California 92101
                                         Telephone:   (619) 756-6978

                                         BONNETT, FAIRBOURN, FRIEDMAN
                                         & BALINT, P.C.
                                         ELAINE A. RYAN
                                         PATRICIA N. SYVERSON

- 18 -

1

2

LINDSEY M. GOMEZ-GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

3

4

5

LEVIN, FISHBEIN, SEDRAN & BERMAN
STEWART WELTMAN, Of Counsel
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: 312-427-3600

6

7

8

LEVIN, FISHBEIN, SEDRAN & BERMAN
HOWARD J. SEDRAN
510 Walnut Street
Philadelphia, Pennsylvania 19106
Telephone: 215-592-1500

9

Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record denoted on the Court's Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 1, 2012.


By: _s/ Todd D. Carpenter_____

BONNETT FAIRBOURN FRIEDMAN
    & BALINT, PC
TODD D. CARPENTER
600 W. Broadway, Suite 900
San Diego, California 92101
tcarpenter@bffb.com
Telephone: 619-756-6978

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RAY PADILLA, On Behalf of Himself and All Other Similarly Situated Residents,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE, INC., a Washington corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff Ray Padilla ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case against Defendant Costco Wholesale Inc. ("Costco" or "Defendant"), and alleges as follows:

### NATURE OF ACTION

1. Forty-six million Americans suffer from arthritis. Osteoarthritis, also called degenerative joint tissue disease, is the most prevalent and disabling form of arthritis. Osteoarthritis is caused by the breakdown of cartilage, which is the connective tissue that cushions the ends of bones within the joint. Osteoarthritis is characterized by, among other things, cartilage damage and limited motion (hereafter referred to as the "two primary symptoms of arthritis"). The disease generally occurs late in life, and most commonly affects the hands and large weight bearing joints, such as the knees, hips and back. There is no cure for arthritis and certainly no proven remedy that can regenerate joint/cartilage damage and improve joint mobility. Yet, Defendant promises relief for each of the two primary symptoms of arthritis in the form of a pill which it

markets, sells and distributes as the Kirkland Signature[TM][1] Glucosamine line of joint health dietary supplements.[2]

2.    Joint degeneration also is a concern of many other people including active individuals, such as runners, weight lifters and those who participate in various joint intensive sports.  There is no proven medication or dietary supplement that can prevent joint degeneration, such as renewing cartilage or maintaining healthy connective tissue.  Yet, Defendant promises that Kirkland Glucosamine will increase joint mobility and flexibility and build cartilage.

3.    For example, on each and every Kirkland Glucosamine Chondroitin product label and/or package, Defendant prominently states that Kirkland Glucosamine is "Clinically Proven Effective" for "optimum mobility" and "as a building block for healthy cartilage" and that "two tablets per day deliver" these benefits, as well as "nourishes JOINT and CONNECTIVE TISSUE" and "supports JOINT CUSHIONING" (hereafter referred to as the "joint renewal and rejuvenation" representations).  On each and every Kirkland Glucosamine and MSM product label and/or package, Defendant makes similar joint renewal and rejuvenation claims and also promises that "noticeable improvement in flexibility and range of motion should be expected after taking this supplement as directed on a consistent basis."

4.    In making these affirmative representations, Defendant represents to each purchaser of Kirkland Glucosamine that it has competent and reliable scientific evidence that these Products are effective in relieving and reducing the two primary symptoms of arthritis or other joint related ailments or provide joint renewal and rejuvenation.

---

[1]  Kirkland Signature[TM] is Costco's store brand, also known as its "own-brand", "house brand", or "private label".  It is available exclusively at Costco's website and Costco warehouses and is trademarked by the company.  Kirkland Signature[TM] is one of the most successful brands in the country.
[2] The Kirkland Signature[TM] Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature[TM] Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland Glucosamine Chondroitin"); and (2) Kirkland Signature[TM] Extra Strength Glucosamine HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland Glucosamine" or the "Products").

5.    Yet, Defendant does not possess such competent and reliable scientific evidence. In fact, the Kirkland Glucosamine products are not an effective remedy for the two primary symptoms of arthritis or other joint related ailments, nor are they effective in providing joint renewal and rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation. Defendant, however, affirmatively states that these Products provide these benefits when they do not.

6.    As a result, Defendant is guilty of deceptive conduct in its marketing and sales of the Kirkland Glucosamine products.

7.    Defendant is also guilty of deception by omission in that, after affirmatively asserting that these Products are effective remedies against the two primary symptoms of arthritis or other joint related ailments or provide joint renewal or rejuvenation, Defendant had a duty to tell Plaintiff and the Class members that it did not have competent and reliable scientific evidence to support the efficacy representations that it makes about the Kirkland Glucosamine products.

8.    Defendant represented and continues to represent that these Products can provide these benefits when the scientific evidence is that they do not and that such representations are false, misleading, and deceptive.. These were material misrepresentations concerning the only reason that Plaintiff and the Class members would have purchased Defendant's Kirkland Glucosamine products. Other than to use the Kirkland Glucosamine products to relieve the two primary symptoms of arthritis or other joint related ailments or to renew and rejuvenate joints, there is no reason for Plaintiff or the Class members to have purchased these Products. Plaintiff and the Class members would not have purchased a Kirkland Glucosamine product without believing that it provided proven relief from the two primary symptoms of arthritis or other joint related ailments or that it renewed and rejuvenated joints.

9.    Thus, through the act of purchasing one of Defendant's Kirkland

- 3 -

Glucosamine products, Plaintiff and each Class member necessarily was deceived by Defendant's representations that these Products were effective and would provide relief from the two primary symptoms of arthritis or other joint related ailments or would renew and rejuvenate joints.

10.  Plaintiff and the Class members were also deceived by Defendant in that, after affirmatively asserting that these Products would provide relief from the two primary symptoms of arthritis or other joint related ailments or renew and rejuvenate joints, Defendant committed deception by omission in that (1) it failed to inform Plaintiff and the Class members that numerous clinical studies have found no causative relationship between the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation; and (2) that it knew that these Products did not provide the health benefits that Defendant represented they did.

11.  Every purchase of the Kirkland Glucosamine products was tainted with Defendant's deceptions in that just by looking at the package on the shelf or following the directions for use, Plaintiff and the Class members would have seen Defendant's deceptive representations.

12.  Defendant's deceptive marketing and advertising campaign, including the fact that the scientific evidence is that these Products do not work as Defendant represented, as well as the complete lack of any disclosure that no competent and reliable scientific evidence exists to support the representations that Kirkland Glucosamine will "help improve joint mobility, rebuild cartilage and improve joint function are designed to cause consumers to buy Kirkland Glucosamine.  Defendant has succeeded.   Estimated sales of joint dietary supplements, including Kirkland Glucosamine, approached $820 million in 2006.[3]

13.    Plaintiff brings this action on behalf of himself and all other similarly

---

[3] 2007 Nutrition Industry Overview, Nutrition Business J., *available at* http://newhope360.com/managing-your-business/2007-nutrition-industry-overview (last visited Oct. 25, 2011).

situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case, who purchased the Products, to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Kirkland Glucosamine products.[4] Plaintiff alleges violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

## JURISDICTION AND VENUE

14. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendant.

15. This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in Illinois. Defendant has marketed, promoted, distributed, and sold the Kirkland Glucosamine products in Illinois, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)

---

[4]While discovery may alter the following, Plaintiff preliminarily avers that the other with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Georgia (GA Code § 10-1-390 *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

17.     Plaintiff Ray Padilla resides in Cook County, Illinois. In or around March 2011, Plaintiff Padilla was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine and MSM label at a Costco store in Chicago, Illinois. He paid approximately $25 for the bottle of Kirkland Glucosamine and MSM. The Kirkland product Plaintiff purchased was not proven to and thus could not provide the represented health benefits Defendant represented it would. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these products were not effective as represented by Defendant and that Defendant did not possess competent scientific evidence to support the representations that it made about these Products, Plaintiff would not have purchased the Kirkland Glucosamine products.

18.     Defendant Costco Wholesale Inc. is a public corporation incorporated under the laws of the state of Washington. Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027. Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in Illinois and throughout the United States.

## FACTUAL ALLEGATIONS

### The Kirkland Glucosamine Products

19.     Since 2001, Costco has distributed, marketed, and sold the Kirkland Signature™ line of dietary supplements. These products include: (1) Kirkland

- 6 -

Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM.

20.    The Kirkland Glucosamine products are sold online and in Costco stores nationwide.  The following are screen shots of the Kirkland Glucosamine products:

 

21.    Since the Products' launch, Costco has consistently conveyed the message to consumers throughout Illinois that the Kirkland Glucosamine products, with their "extra strength" formulas are clinically proven to deliver "optimum mobility" and will protect and build cartilage. Defendant's renewal and rejuvenation representations are false, misleading and deceptive.

22.    Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products.  The primary active ingredient in both Kirkland Glucosamine products is glucosamine hydrochloride.   Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue.  The Products' labeling and packaging states the benefits associated with taking glucosamine hydrochloride:   "Glucosamine is a basic building block for cartilage, synovial fluid and other connective tissues, which are needed for healthy structure and function of joints."  There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it

- 7 -

into something that builds cartilage or improves joint structure or function. In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

23.     The chondroitin sulfate in Kirkland Glucosamine Chondroitin, is a complex carbohydrate found in the body's connective tissues. On the Product's labeling and packaging, Defendant represents that chondroitin sulfate "protects existing cartilage and serves as a building block for healthy new cartilage." There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that assists in building joint cartilage. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

24.     The Methylsulfonylmethane ("MSM") found in Kirkland Glucosamine and MSM products is an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Product's labeling and packaging, Defendant claims that MSM "is a necessary component that works in conjunction with Glucosamine to provide the building blocks of collagen, an important component of healthy joints and connective tissue. Clinical research shows MSM increases glucosamine's effectiveness." There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function, or makes glucosamine work more effectively. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

25.     In fact, numerous clinical cause and effect studies have found no causative link between any of the primary active ingredients in the Kirkland Glucosamine products

alone, or in combination, and joint renewal and rejuvenation. Nevertheless, Defendant without any scientifically valid confirmation that Kirkland Glucosamine is an effective joint treatmentt—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages—prominently claims on the Products' packaging and labeling that Kirkland Glucosamine, with its "extra strength" formula, will "deliver" "optimum joint mobility", rebuild cartilage and improve joint function. Front and side shots of the two Kirkland Glucosamine product labels appear as follows

| FRONT | LEFT SIDE |
|---|---|



| FRONT | LEFT SIDE |
|---|---|