


26.     Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, improve or promote joint renewal or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the prevention or improvement of joint degeneration or other joint ailments including relief of the two major symptoms of arthritis. Defendant's representations are false, misleading and deceptive.

***The impact of Defendant's wrongful conduct***

27.     Despite the lack of competent scientific evidence and the existence of numerous clinical studies that have found no causative like between the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation, Defendant continues to unequivocally claim that its Kirkland Glucosamine products are an effective treatment for the two primary symptoms of arthritis or other joint related ailments including regenerating joints/cartilage or improving joint mobility. Defendant continues to unequivocally represent that its glucosamine products provide joint health

benefits to all adults.

28.     As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects—its Products have on consumers.

29.     Specifically, Defendant affirmatively misrepresented that the Kirkland Glucosamine products, with their "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". Having made these affirmative misrepresentations, Defendant failed to disclose that well-conducted, clinical cause-and-effect studies have found no causative relationship between the product ingredients and the prevention or improvement of joint degeneration or other related ailments and Defendant has no competent and reliable scientific evidence that its Kirkland Glucosamine products are effective in helping provide joint renewal or rejuvenation as represented or the relief of the two major symptoms of arthritis.

30.     Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey one uniform message:     Kirkland Glucosamine, with its "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING" for all joints in the human body, for adults of all ages and for all stages of joint disease.

31.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive representations touting the effectiveness of the Kirkland Glucosamine products. The Products' sole purpose is to provide joint relief for the two major symptoms of arthritis, other joint related ailments or provide joint renewal or joint mobility. The only purpose behind purchasing said Products would be to obtain

one of these benefits. Thus, Defendant's representations and omissions necessarily deceived Plaintiff and the Class in some manner and said deception was a proximate cause of Plaintiff and the Class' injuries. There is no other reason for Plaintiff and the Class to have purchased the Defendant's Kirkland Glucosamine Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's representations were false and misleading and that Defendant did not possess competent scientific evidence to support the representations that they made about these Products.

32.     Plaintiff and the Class members have been damaged in their purchases of these Products in that they were deceived in some manner into purchasing Defendant's Products.

33.     Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS ALLEGATIONS

34.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

### Multi-State Class Action

> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[5] purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

35.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the

---

[5] See footnote 3 for the preliminary listing of said states.

Federal Rules of Civil Procedure and seeks certification of the following Class:

**Illinois Class Action**

> All Illinois residents who, within the applicable statute of limitations, purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

36.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

37.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

•       Whether the representations discussed herein that Defendant made about its Products were or are misleading, or reasonably likely to deceive;

•       Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

•       Whether the alleged conduct constitutes violations of the laws asserted herein;

•       Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries; and

•       Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages.

38.     The claims asserted by Plaintiff in this action are typical of the claims of

the members of the Class, as the claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff and Class members suffered injury and damages caused by their purchase of the Kirkland Glucosamine products marketed, distributed and sold by Defendant.

39.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

40.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

41.    In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

42.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring

Defendant to provide full restitution to Plaintiff and Class members. Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

43. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

44. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq.* ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendant's Kirkland Glucosamine products.

45. Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

49 Defendant does business in Illinois, sells and distributes its Kirkland Glucosamine products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Kirkland Glucosamine products in Illinois and elsewhere in the United States.

50. Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

51. Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Kirkland Glucosamine products which has caused damage and injury to Plaintiff and the Class.

- 15 -

52. Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

53. Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

54. Defendant intended Plaintiff and all Class members to rely on their deceptive acts.

55. The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a.   That the Court enter an order certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

b.   That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c.   Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d.   Attorneys' fees, expert fees and costs; and

e.   Such other and further relief as the Court deems just and proper.

DATED:   October 28, 2011

By:   s/Stewart Weltman
FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN
DANA PESHA
RAFAEL VARGAS
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600

Of Counsel:

- 16 -

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:    (619) 756-6978

SIPRUT PC
JOSEPH SIPRUT
122 South Michigan Avenue
Suite 1850
Chicago, Illinois  60603
312.588.1440


Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RAY PADILLA, On Behalf of Himself and All Other Similarly Situated Residents,<br><br>        Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation,<br><br>        Defendant. | Case No.: 11-cv-07686<br><br>**CLASS ACTION** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Ray Padilla ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case against Defendant Costco Wholesale Corporation ("Costco" or "Defendant"), and alleges as follows:

### NATURE OF ACTION

1. Forty-six million Americans suffer from arthritis. Osteoarthritis, also called degenerative joint tissue disease, is the most prevalent and disabling form of arthritis. Osteoarthritis is caused by the breakdown of cartilage, which is the connective tissue that cushions the ends of bones within the joint. Osteoarthritis is characterized by, among other things, cartilage damage and limited motion (hereafter referred to as the "two primary symptoms of arthritis"). The disease generally occurs late in life, and most commonly affects the hands and large weight bearing joints, such as the knees, hips and back. There is no cure for arthritis and certainly no proven remedy that can regenerate joint/cartilage damage and improve joint mobility. Yet, Defendant promises relief for each of the two primary symptoms of arthritis in the form of a pill which it

markets, sells and distributes as the Kirkland Signature[™1] Glucosamine line of joint health dietary supplements.[2]

2.    Joint degeneration also is a concern of many other people including active individuals, such as runners, weight lifters and those who participate in various joint intensive sports.  There is no proven medication or dietary supplement that can prevent joint degeneration, such as renewing cartilage or maintaining healthy connective tissue.  Yet, Defendant promises that Kirkland Glucosamine will increase joint mobility and flexibility and build cartilage.

3.    For example, on each and every Kirkland Glucosamine Chondroitin product label and/or package, Defendant prominently states that Kirkland Glucosamine is "Clinically Proven Effective" for "optimum mobility" and "as a building block for healthy cartilage" and that "two tablets per day deliver" these benefits, as well as "nourishes JOINT and CONNECTIVE TISSUE" and "supports JOINT CUSHIONING" (hereafter referred to as the "joint renewal and rejuvenation" representations).  On each and every Kirkland Glucosamine and MSM product label and/or package, Defendant makes similar joint renewal and rejuvenation claims and also promises that "noticeable improvement in flexibility and range of motion should be expected after taking this supplement as directed on a consistent basis."

4.    In making these affirmative representations, Defendant represents to each purchaser of Kirkland Glucosamine that it has competent and reliable scientific evidence that these Products are effective in relieving and reducing the two primary symptoms of arthritis or other joint related ailments or provide joint renewal and rejuvenation.

---

[1] Kirkland Signature™ is Costco's store brand, also known as its "own-brand", "house brand", or "private label".  It is available exclusively at Costco's website and Costco warehouses and is trademarked by the company.  Kirkland Signature™ is one of the most successful brands in the country.
[2]The Kirkland Signature™ Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland Glucosamine Chondroitin"); and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland Glucosamine" or the "Products").

5.     Yet, Defendant does not possess such competent and reliable scientific evidence.  In fact, the Kirkland Glucosamine products are not an effective remedy for the two primary symptoms of arthritis or other joint related ailments, nor are they effective in providing joint renewal and rejuvenation.  Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation.  Defendant, however, affirmatively states that these Products provide these benefits when they do not.

6.     As a result, Defendant is guilty of deceptive conduct in its marketing and sales of the Kirkland Glucosamine products.

7.     Defendant is also guilty of deception by omission in that, after affirmatively asserting that these Products are effective remedies against the two primary symptoms of arthritis or other joint related ailments or provide joint renewal or rejuvenation, Defendant had a duty to tell Plaintiff and the Class members that it did not have competent and reliable scientific evidence to support the efficacy representations that it makes about the Kirkland Glucosamine products.

8.     Defendant represented and continues to represent that these Products can provide these benefits when the scientific evidence is that they do not and that such representations are false, misleading, and deceptive.  These were material misrepresentations concerning the only reason that Plaintiff and the Class members would have purchased Defendant's Kirkland Glucosamine products. Other than to use the Kirkland Glucosamine products to relieve the two primary symptoms of arthritis or other joint related ailments or to renew and rejuvenate joints, there is no reason for Plaintiff or the Class members to have purchased these Products.  Plaintiff and the Class members would not have purchased a Kirkland Glucosamine product without believing that it provided proven relief from the two primary symptoms of arthritis or other joint related ailments or that it renewed and rejuvenated joints.

9.     Thus, through the act of purchasing one of Defendant's Kirkland

- 3 -

Glucosamine products, Plaintiff and each Class member necessarily was deceived by Defendant's representations that these Products were effective and would provide relief from the two primary symptoms of arthritis or other joint related ailments or would renew and rejuvenate joints.

10. Plaintiff and the Class members were also deceived by Defendant in that, after affirmatively asserting that these Products would provide relief from the two primary symptoms of arthritis or other joint related ailments or renew and rejuvenate joints, Defendant committed deception by omission in that (1) it failed to inform Plaintiff and the Class members that numerous clinical studies have found no causative relationship between the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation; and (2) that it knew that these Products did not provide the health benefits that Defendant represented they did.

11. Every purchase of the Kirkland Glucosamine products was tainted with Defendant's deceptions in that just by looking at the package on the shelf or following the directions for use, Plaintiff and the Class members would have seen Defendant's deceptive representations.

12. Defendant's deceptive marketing and advertising campaign, including the fact that the scientific evidence is that these Products do not work as Defendant represented, as well as the complete lack of any disclosure that no competent and reliable scientific evidence exists to support the representations that Kirkland Glucosamine will "help improve joint mobility, rebuild cartilage and improve joint function are designed to cause consumers to buy Kirkland Glucosamine. Defendant has succeeded. Estimated sales of joint dietary supplements, including Kirkland Glucosamine, approached $820 million in 2006.[3]

13. Plaintiff brings this action on behalf of himself and all other similarly

---

[3] 2007 Nutrition Industry Overview, Nutrition Business J., *available at* http://newhope360.com/managing-your-business/2007-nutrition-industry-overview (last visited Oct. 25, 2011).

situated Illinois residents and residents of states with Consumer Fraud Laws similar to
that of Illinois under the facts particular to this case, who purchased the Products, to halt
the dissemination of this false and misleading advertising message, correct the false and
misleading perception it has created in the minds of consumers, and obtain redress for
those who have purchased the Kirkland Glucosamine products.[4]   Plaintiff alleges
violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

## JURISDICTION AND VENUE

14.    This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).
The matter in controversy, exclusive of interest and costs, exceeds the sum or value of
$5,000,000 and is a class action in which there are in excess of 100 class members and
the members of the Class are citizens of a state different from Defendant.

15.    This Court has personal jurisdiction over Defendant because Defendant is
authorized to do and does conduct business in Illinois.   Defendant has marketed,
promoted, distributed, and sold the Kirkland Glucosamine products in Illinois, and
Defendant has sufficient minimum contacts with this State and/or sufficiently avails
itself of the markets in this State through its promotion, sales, and marketing within this
State to render the exercise of jurisdiction by this Court permissible.

16.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)

---

[4]While discovery may alter the following, Plaintiff preliminarily avers that the other with similar consumer fraud
laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado
(Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code
tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*);
Georgia (GA Code § 10-1-390 *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et
seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan
(Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §
407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada
(Nev. Rev. Stat. § 598.0915, *et seq,*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. §
56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North
Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. §
646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et
seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat.
tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-
101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

17.    Plaintiff Ray Padilla resides in Cook County, Illinois. In or around March 2011, Plaintiff Padilla was exposed to and saw Defendant's representations by reading the front, back and sides of the Kirkland Glucosamine and MSM label at a Costco store in Chicago, Illinois. He paid approximately $25 for the bottle of Kirkland Glucosamine and MSM. The Kirkland product Plaintiff purchased was not proven to and thus could not provide the represented health benefits Defendant represented it would. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these products were not effective as represented by Defendant and that Defendant did not possess competent scientific evidence to support the representations that it made about these Products, Plaintiff would not have purchased the Kirkland Glucosamine products.

18.    Defendant Costco Wholesale Corporation is a public corporation incorporated under the laws of the state of Washington. Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027. Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in Illinois and throughout the United States.

## FACTUAL ALLEGATIONS

### The Kirkland Glucosamine Products

19.    Since 2001, Costco has distributed, marketed, and sold the Kirkland Signature™ line of dietary supplements. These products include: (1) Kirkland

- 6 -

Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine HCL and MSM.

20.    The Kirkland Glucosamine products are sold online and in Costco stores nationwide. The following are screen shots of the Kirkland Glucosamine products:

 

21.    Since the Products' launch, Costco has consistently conveyed the message to consumers throughout Illinois that the Kirkland Glucosamine products, with their "extra strength" formulas are clinically proven to deliver "optimum mobility" and will protect and build cartilage. Defendant's renewal and rejuvenation representations are false, misleading and deceptive.

22.    Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products. The primary active ingredient in both Kirkland Glucosamine products is glucosamine hydrochloride.  Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The Products' labeling and packaging states the benefits associated with taking glucosamine hydrochloride:  "Glucosamine is a basic building block for cartilage, synovial fluid and other connective tissues, which are needed for healthy structure and function of joints."  There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it

into something that builds cartilage or improves joint structure or function. In fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

23.     The chondroitin sulfate in Kirkland Glucosamine Chondroitin, is a complex carbohydrate found in the body's connective tissues.  On the Product's labeling and packaging, Defendant represents that chondroitin sulfate "protects existing cartilage and serves as a building block for healthy new cartilage."  There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that assists in building joint cartilage. Clinical cause and effect studies have found no causative link between chondroitin supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

24.     The Methylsulfonylmethane ("MSM") found in Kirkland Glucosamine and MSM products is an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk.  On the Product's labeling and packaging, Defendant claims that MSM "is a necessary component that works in conjunction with Glucosamine to provide the building blocks of collagen, an important component of healthy joints and connective tissue. Clinical research shows MSM increases glucosamine's effectiveness."  There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds cartilage or improves joint structure or function, or makes glucosamine work more effectively. Clinical cause and effect studies have found no causative link between MSM supplementation and joint renewal or rejuvenation or the relief of the two major symptoms of arthritis.

25.     In fact, numerous clinical cause and effect studies have found no causative link between any of the primary active ingredients in the Kirkland Glucosamine products

alone, or in combination, and joint renewal and rejuvenation. Nevertheless, Defendant without any scientifically valid confirmation that Kirkland Glucosamine is an effective joint treatmentt—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages—prominently claims on the Products' packaging and labeling that Kirkland Glucosamine, with its "extra strength" formula, will "deliver" "optimum joint mobility", rebuild cartilage and improve joint function. Front and side shots of the two Kirkland Glucosamine product labels appear as follows

| FRONT | LEFT SIDE |
|---|---|
|  | |

| FRONT | LEFT SIDE |
|---|---|




26.     Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, improve or promote joint renewal or rejuvenation. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the prevention or improvement of joint degeneration or other joint ailments including relief of the two major symptoms of arthritis. Defendant's representations are false, misleading and deceptive.

*The impact of Defendant's wrongful conduct*

27.     Despite the lack of competent scientific evidence and the existence of numerous clinical studies that have found no causative like between the ingredients in the Kirkland Glucosamine products and joint renewal or rejuvenation, Defendant continues to unequivocally claim that its Kirkland Glucosamine products are an effective treatment for the two primary symptoms of arthritis or other joint related ailments including regenerating joints/cartilage or improving joint mobility. Defendant continues to unequivocally represent that its glucosamine products provide joint health

- 10 -

benefits to all adults.

28.     As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects—its Products have on consumers.

29.     Specifically, Defendant affirmatively misrepresented that the Kirkland Glucosamine products, with their "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING". Having made these affirmative misrepresentations, Defendant failed to disclose that well-conducted, clinical cause-and-effect studies have found no causative relationship between the product ingredients and the prevention or improvement of joint degeneration or other related ailments and Defendant has no competent and reliable scientific evidence that its Kirkland Glucosamine products are effective in helping provide joint renewal or rejuvenation as represented or the relief of the two major symptoms of arthritis.

30.     Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey one uniform message:     Kirkland Glucosamine, with its "extra strength formula", are clinically proven to provide "Optimum JOINT HEALTH & MOBILITY", "Help[] Build CARTILAGE", "Nourish[] JOINT and CONNECTIVE tissue" and "Support[] JOINT CUSHIONING" for all joints in the human body, for adults of all ages and for all stages of joint disease.

31.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive representations touting the effectiveness of the Kirkland Glucosamine products.  The Products' sole purpose is to provide joint relief for the two major symptoms of arthritis, other joint related ailments or provide joint renewal or joint mobility. The only purpose behind purchasing said Products would be to obtain

one of these benefits. Thus, Defendant's representations and omissions necessarily deceived Plaintiff and the Class in some manner and said deception was a proximate cause of Plaintiff and the Class' injuries. There is no other reason for Plaintiff and the Class to have purchased the Defendant's Kirkland Glucosamine Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's representations were false and misleading and that Defendant did not possess competent scientific evidence to support the representations that they made about these Products.

32.     Plaintiff and the Class members have been damaged in their purchases of these Products in that they were deceived in some manner into purchasing Defendant's Products.

33.     Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS ALLEGATIONS

34.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

### Multi-State Class Action

> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[5] purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

35.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the

---

[5] See footnote 3 for the preliminary listing of said states.

Federal Rules of Civil Procedure and seeks certification of the following Class:

**Illinois Class Action**

> All Illinois residents who, within the applicable statute of limitations, purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

36.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

37.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

•     Whether the representations discussed herein that Defendant made about its Products were or are misleading, or reasonably likely to deceive;

•     Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

•     Whether the alleged conduct constitutes violations of the laws asserted herein;

•     Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries; and

•     Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages.

38.     The claims asserted by Plaintiff in this action are typical of the claims of

the members of the Class, as the claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff and Class members suffered injury and damages caused by their purchase of the Kirkland Glucosamine products marketed, distributed and sold by Defendant.

39.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

40.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually.  It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

41.     In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

42.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring

Defendant to provide full restitution to Plaintiff and Class members. Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

43.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

44.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq.* ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendant's Kirkland Glucosamine products.

45.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

49      Defendant does business in Illinois, sells and distributes its Kirkland Glucosamine products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Kirkland Glucosamine products in Illinois and elsewhere in the United States.

50.     Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

51.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Kirkland Glucosamine products which has caused damage and injury to Plaintiff and the Class.

52.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

53.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

54.     Defendant intended Plaintiff and all Class members to rely on their deceptive acts.

55.     The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a.   That the Court enter an order  certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

b.   That the Court enter an Order  against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c.   Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d.   Attorneys' fees, expert fees and costs; and

e.   Such other and further relief as the Court deems just and proper.

DATED:     November 10, 2011

By:   s/Stewart Weltman
FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN
DANA PESHA
RAFAEL VARGAS
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600

Of Counsel:

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:    (619) 756-6978

SIPRUT PC
JOSEPH SIPRUT
122 South Michigan Avenue
Suite 1850
Chicago, Illinois  60603
312.588.1440

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RAY PADILLA, On Behalf of Himself and All Other Similarly Situated Residents,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation,<br><br>Defendant. | Case No.:  11-cv-07686<br><br>**CLASS ACTION**<br><br>Judge John W. Darrah |

### SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Ray Padilla ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case against Defendant Costco Wholesale Corporation ("Costco" or "Defendant"), and alleges as follows:

### NATURE OF ACTION

1.     Forty-six million Americans suffer from arthritis.  Osteoarthritis, also called degenerative joint tissue disease, is the most prevalent and disabling form of arthritis. Osteoarthritis is caused by the breakdown of cartilage, which is the connective tissue that cushions the ends of bones within the joint.  Thus, osteoarthritis is characterized by, among other things, cartilage damage and a resultant limited mobility or a lack of joint cushioning (hereafter referred to as the "primary symptoms of arthritis").  The disease generally occurs late in life, and most commonly affects the hands and large weight bearing joints, such as the knees, hips and back.  There is no cure for arthritis and certainly no proven remedy that can regenerate joint/cartilage damage and improve joint mobility/cushioning.    Yet, Defendant promises relief for each of the primary symptoms of arthritis in the form of a pill which it markets, sells and

distributes as the Kirkland Signature[™1] Glucosamine line of joint health dietary supplements.[2]

2.   Joint degeneration also is a concern of many other people including, for example, active individuals, such as runners, weight lifters and those who participate in various joint intensive sports.  There is no proven medication or dietary supplement that can prevent joint degeneration, such as rebuilding or nourishing cartilage (sometimes referred to as "connective tissue").  Yet, Defendant promises that Kirkland Glucosamine will provide joint mobility/ cushioning and help build/nourish cartilage.

3.   For example, the front label of Defendant's Extra Strength Glucosamine with MSM product prominently states that it will provide "Optimum Joint Health & Mobility" and that it "Helps Build Cartilage."  Similar statements are made on Defendant's other Product, Glucosamine with Chondroitin, in that on the front label of the packaging it states that it "Supports Joint Cushioning" and "Nourishes[3] Joint and Connective Tissue."    While the wording may be slightly different on these two products, the same substantive message is communicated on both – both products will provide relief of essentially the same joint symptoms or ailments and provide essentially the same joint health benefits.  As a result, the joint health benefits statements on the packaging of Defendant's Products will be collectively referred to as Defendant's "joint health benefit representations."

4.   The representations made on the front labels of each product - that these products either "help build cartilage" (Glucosamine with MSM) or "nourishes joint and connective tissue")Glucosamine Chondroitin) are similar if not identical in substance,  in that they purport to provide relief of the  core symptom of osteoarthritis – the breakdown of cartilage or joints

---

[1]  Kirkland Signature[™] is Costco's store brand, also known as its "own-brand", "house brand", or "private label".  It is available exclusively at Costco's website and Costco warehouses and is trademarked by the company.  Kirkland Signature[™] is one of the most successful brands in the country.

[2] The Kirkland Signature[™] Glucosamine line of joint health dietary supplements include: (1) Kirkland Signature[™] Extra Strength Glucosamine Chondroitin Sulfate ("Kirkland Glucosamine Chondroitin"); and (2) Kirkland Signature[™] Extra Strength Glucosamine HCL and MSM ("Kirkland Glucosamine and MSM") (collectively, "Kirkland Glucosamine" or the "Products").

[3]  Nourish is defined as something that promotes growth or development, so it is equivalent to the "build cartilage" representation on the Glucosamine with MSM label.

and the resultant loss of mobility or cushioning that occurs due to this breakdown. Persons with arthritis or persons who, for whatever reason, have joint ailments would seek out and purchase a product that is represented to rebuild or nourish joints and cartilage.

5.     Likewise, on each Product's packaging, Defendant makes clinically proven statements. Thus, on the side panel of the Gluscosamine with MSM product, Defendant states that "Clinical research shows MSM increases Glucosamine's effectiveness." This is an express statement that both of the ingredients in this product have been clinically proven to be effective. Similarly, on the side panel of Defendant's Glucosamine Chondroitin product Defendant states that it is "Clinically Proven Effective" and then misleadingly cites to a NIH (National Institute of Health) study that it purports to be evidence of these benefits when, as discussed below, the referenced study, and subsequent follow up NIH studies, actually concluded that Glucosamine and Chondroitin taken in combination or alone are not effective and do not provide any joint health benefits. In making these "clinically proven" affirmative representations, Defendant represents to each purchaser of Kirkland Glucosamine that it has competent and reliable scientific evidence that these Products are effective in providing the relief represented on the front of their labels. Yet, Defendant does not possess such competent and reliable scientific evidence.

6.     In fact, the ingredients in the Kirkland Glucosamine products have been proven to not be effective remedies for the primary symptoms of arthritis or other similar joint related ailments. Numerous clinical studies, discussed below, have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the joint health benefits that Defendant represents that its products provide. Yet, Defendant affirmatively states that these Products provide these benefits when they do not.

7.     Moreover, the representations made on Defendant's product labeling are directed, at least in part, to persons suffering from osteoarthritis. The promised relief on the packaging is relief directed at the primary symptoms of arthritis – in particular the breakdown

of cartilage or joints and connective tissue.[4]

8. As a result, Defendant is guilty of deceptive conduct in its marketing and sales of the Kirkland Glucosamine products.

9. Defendant is also guilty of deception by omission in that, after affirmatively asserting that these Products are effective remedies against the primary symptoms of arthritis or other similar joint ailments, Defendant had a duty to tell Plaintiff and the Class members that it did not have competent and reliable scientific evidence to support the efficacy representations that it makes about the Kirkland Glucosamine products.

10. Defendant represented and continues to represent that these Products can provide these benefits when the scientific evidence is that they do not and that such representations are false, misleading, and deceptive. These were material misrepresentations concerning the only reason that Plaintiff and the Class members would have purchased Defendant's Kirkland Glucosamine products. Other than to use the Kirkland Glucosamine products to relieve the primary symptoms of arthritis or other similar joint ailments, there is no reason for Plaintiff or the Class members to have purchased these Products. Plaintiff and the Class members would not have purchased a Kirkland Glucosamine product without believing that it provided proven relief from the primary symptoms of arthritis or other similar joint related ailments.

11. The joint health benefit representations made on the labeling of Defendant's products are made without any limitations as to who may obtain these benefits. Thus, the joint health benefit representations made on the labeling of these products represents that the products will provide relief to any persons seeking these joint health benefits for any joints.

12. Thus, through the act of purchasing one of Defendant's Kirkland Glucosamine products, Plaintiff and each Class member necessarily were deceived by Defendant's representations that these Products were effective and would provide relief from the primary

---

[4] For example, the University of Chicago Medicine web site describes the symptoms of osteoarthritis as a breakdown of joint cartilage which in turn interferes with joint mobility and causes joint pain and stiffness. *See,* http://www.uchospitals.edu/online-library/content=P00061. These are the conditions for which Defendant's Products represent that they provide relief.

symptoms of arthritis or other similar joint ailments.

13. Plaintiff and the Class members were also deceived by Defendant in that, after affirmatively asserting that these Products would provide relief from the primary symptoms of arthritis or other similar joint related ailments, Defendant committed deception by omission in that (1) it failed to inform Plaintiff and the Class members that numerous clinical studies have found the ingredients in the Kirkland Glucosamine products to be ineffective in building or nourishing joints or cartilage and ineffective in providing joint mobility/ joint cushioning; and (2) that it knew (a) that these Products did not provide the health benefits that Defendant represented they did and (b) that it lacked the scientific evidence to support its representations that the efficacy of these products had been proven by clinical research.

14. Every purchase of the Kirkland Glucosamine products was tainted with Defendant's deceptions in that in order to purchase the Products, one necessarily had to read and look at the front of the package on the shelf, and thus Plaintiff and the Class members would have necessarily seen Defendant's false and deceptive representations.

15. Defendant's deceptive marketing and advertising campaign, including the fact that the scientific evidence is that these Products do not work as Defendant represented, as well as the complete lack of any disclosure that no competent and reliable scientific evidence exists to support the representations that Defendant made about Kirkland are designed to cause consumers to buy Kirkland Glucosamine.

16. Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case, who purchased the Products, to halt the dissemination of these false and misleading advertising messages, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Kirkland Glucosamine products.[5]  Plaintiff alleges violations of the Illinois Consumer Fraud

---

[5]While discovery may alter the following, Plaintiff preliminarily avers that the other similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo.

Act, 815 Ill. Comp. Stat. 502/2, *et seq.*

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The

matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000

and is a class action in which there are in excess of 100 class members and the members of the

Class are citizens of a state different from Defendant.

18.     This Court has personal jurisdiction over Defendant because Defendant is

authorized to do and does conduct business in Illinois.  Defendant has marketed, promoted,

distributed, and sold the Kirkland Glucosamine products in Illinois, and Defendant has

sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this

State through its promotion, sales, and marketing within this State to render the exercise of

jurisdiction by this Court permissible.

19.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he

resided in this judicial district.   Venue is also proper under 18 U.S.C. § 1965(a) because

Defendant transacts substantial business in this District.

## PARTIES

20.     Plaintiff Ray Padilla resides in Cook County, Illinois. In or around March 2011,

Plaintiff Padilla was exposed to and saw Defendant's joint health benefit representations

described above on the Glucosamine with MSM label by reading the front, back and sides of the

---

Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Georgia (GA Code § 10-1-390 *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

label at a Costco store in Chicago, Illinois. He paid approximately $25 for the bottle of Kirkland Glucosamine with MSM. As more fully set forth below, the ingredients in the Kirkland product Plaintiff purchased have been proven to be ineffective in building cartilage or providing joint health or mobility. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these products were not effective as represented by Defendant and that Defendant did not possess competent scientific evidence to support the representations that it made about these Products, Plaintiff would not have purchased the Kirkland Glucosamine products. Thus, Plaintiff's injury and damage occurred at the time of his purchase when he was deceived by Defendant into purchasing a product he believed – and that was represented as having been - scientifically proven to work when, in fact, contrary to Defendant's affirmative representations about clinical research proving the ingredients to be effective, Defendant did not possess competent scientific evidence to support this clinically proven representation. Nevertheless, consistent with the scientific evidence, Defendant's product did not work for Plaintiff in the manner represented on the labeling, in that after taking Defendant's product he did not experience better joint health, mobility or the rebuilding of cartilage.

21.    Defendant Costco Wholesale Corporation is a public corporation incorporated under the laws of the state of Washington. Defendant's corporate headquarters is located at 999 Lake Drive, Issaquah, WA 98027. Defendant distributes, markets, and sells the Kirkland Glucosamine products to tens of thousands of consumers in Illinois and throughout the United States.

## FACTUAL ALLEGATIONS

### The Kirkland Glucosamine Products

22.    Since 2001, Costco has distributed, marketed, and sold the Kirkland

Signature™ line of dietary supplements. These products include: (1) Kirkland Signature™ Extra Strength Glucosamine/Chondroitin Sulfate; and (2) Kirkland Signature™ Extra Strength Glucosamine and MSM.

23.     The Kirkland Glucosamine products are sold online and in Costco stores nationwide. The following are screen shots of the Kirkland Glucosamine products:

   

24.     The primary active ingredient in both Kirkland Glucosamine products is glucosamine.    There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that builds or nourishes cartilage or provides joint mobility or joint cushioning. In fact, clinical cause and effect studies have found glucosamine is not effective and does not provide these joint health benefits.

25.     There is no competent and reliable scientific evidence that taking chondrotin sulfate—let alone through oral administration—results in the body metabolizing it into something that builds or nourishes cartilage or provides joint mobility or joint cushioning. In fact, clinical cause and effect studies have found chondroitin sulfate is not effective and does not provide these joint health benefits.

26.     There is no competent and reliable scientific evidence that taking MSM—let alone through oral administration—results in the body metabolizing it into something that builds

or nourishes cartilage or provides joint mobility or joint cushioning. In fact, clinical cause and effect studies have found MSM is not effective and does not provide these joint health benefits.

27.     Front and side shots of the two Kirkland Glucosamine product labels appear as follows:

| FRONT | LEFT SIDE |
|---|---|
| | |



| FRONT | LEFT SIDE |
|---|---|



Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Kirkland Glucosamine products taken alone or in combination benefit, rebuild cartilage or nourish joints and connective tissues (these being one and the same). Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Kirkland Glucosamine products and the rebuilding/nourishing or even the maintaining of joints or joint cartilage or other joint ailments including relief of the primary symptoms of arthritis. Defendant's representations, therefore, are false, misleading and deceptive.

***Scientific Studies Confirm That Defendant's Glucosamine Products Are Not Effective.***

28.     Independent studies published at least as early as 2004, have found that glucosamine and chondroitin, alone or in combination, are not effective in providing the represented joint health benefits.

29.     As will be seen below, many of these studies focus on patients with osteoarthritis and osteoarthritis of the knee. This is because (1) Defendants products are and have been targeted/marketed at and many users/consumers of glucosamine chondroitin products buy these products for relief of the primary symptoms of osteoarthritis and (2) osteoarthritis of the knee is

the most common arthritic condition. Moreover, studies involving patients with osteoarthritis and patients with osteoarthritis of the knee are deemed, by experts in the field, to be a proxy for whether these products provide any of the represented joint health benefits, regardless of whether or not a consumer may have osteoarthritis and regardless of which joint for which they seek joint health benefits.

30. For example, a 2004 study by McAlindon et al., entitled Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From and Internet-Based Randomized Double-Blind Controlled Trial, 117(9) Am. J. Med. 649-9 (Nov. 2004), concluded that glucosamine was no more effective than placebo in treating the symptoms of knee osteoarthritis – in short, it was ineffective. This study used a daily dose of glucosamine of 1500 mg and the measures used to determine efficacy were pain and joint stiffness. As a result, at a minimum, this study directly relates to the representations made on Defendant's labeling regarding "joint cushioning", "joint mobility" and "joint comfort" and is evidence that these representations are false and misleading.

31. Also as early as 2004, studies confirmed there is a significant "placebo" effect with respect to glucosamine consumption. For example, a 2004 study by Cibere et al, entitled Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004), studied users of glucosamine who subjectively claimed to have experienced at least moderate improvement after starting glucosamine. These patients were divided into two groups – one that continued using glucosamine and one that was given a placebo. For six months, the primary outcome observed was the proportion of disease flares in the glucosamine and placebo groups. A secondary outcome was the time to disease flare. The study results reflected that there were no differences in either the primary or secondary outcomes for glucosamine and placebo. The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine – in other words, any prior perceived benefits were due to the placebo effect and not glucosamine. Numerous other studies, including those discussed herein, have also observed

the existence of anywhere in the neighborhood of a 30% rate of placebo effect for users of glucosamine based products.

32.     Thus, even for those purchasers who may have perceived benefits from products containing the ingredients in Defendant's products have suffered consumer fraud injury and damage because they have been falsely induced into paying a high price for what is for all intents and purposes a sugar pill.[6]

33.     In the 2006 Gait Study, the most comprehensive study to date, involving 1583 patients, the study authors rigorously evaluated the effectiveness of glucosamine and chondroitin, alone and in combination, on osteoarthritis for six months. The patients received a daily dose of glucosamine of 1500mg (the recommended daily dose of glucosamine for both of Defendant's Products) and a daily dose of chondrotin sulfate of 1200mg (the recommended daily dose for Defendant's Glucosmaine Chondroitin product). Measures used to determine efficacy included improvement in joint function/mobility, stiffness and pain (e.g. joint comfort). According to the study's authors, "The analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious. . ." 2006 GAIT Study at 806.[7] As a result, at a minimum, this study directly relates to the representations made on Defendant's labeling regarding "joint cushioning", "joint mobility" and "joint comfort" and is evidence that these representations are false and misleading.

---

[6] "The placebo effect can be defined as an inert or innocuous treatment that works not because of the therapy itself, but because of its suggestive effect." *F.T.C. v. QT Inc.*, 448 F.Supp.2d 908, 939 (N.D.Ill. 2006) *aff'd, F.T.C. v. QT, Inc.*, 512 F.3d 858, 862-63 (7th Cir. 2008)("The placebo effect is well established...Tell the patient that the pill contains nothing but sugar, and there is no pain relief; tell him (falsely) that it contains a powerful analgesic, and the perceived level of pain falls... The placebo effect cannot justify fraud in promoting a product."). *See also, F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994)(where "a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some consumers may experience positive results. In such circumstances, the efficacy claim "'is 'misleading' because the [product] is not *inherently* effective, its results being attributable to the psychosomatic effect produced by the advertising and the marketing of the product."'")(emphasis added by Court).

[7] The 2006 Gait Study was funded by the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases, two components of NIH. It would appear that it is this study that Defendant misleadingly refers to when it states on its Glucosamine Chondroitin label that an NIH study supports its "Clinically Proven" representation.

34.    Noting that the loss of cartilage is central to the development of arthritis (thus further emphasizing that Defendant's "rebuild" or "nourish" cartilage and joints representations is directed, at least in part, to persons with osteoarthritis), a subsequent GAIT study in 2008 (The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, Sawitzke, et al., Arthritis Rheum. 2008 October; 58(10): 3183-3191), using the same daily recommended amounts of glucosamine and chondroitin as Defendant's Products, reported that glucosamine and chondroitin, either alone and in combination, did not rebuild cartilage and, in fact, found that joint/cartilage loss continued with their usage.    Thus, at a minimum, this study is evidence of the false and misleading nature of Defendant's "rebuild" and "nourishes" joint/cartilage representations.

35.    To a similar effect is a study by Kwok, et al., entitled The Joints On Glucosamine (JOG) Study:  A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritis Based On 3T MRI, 60 Arthritis Rheum 725 (2009) that concluded that glucosamine did not rebuild cartilage or nourish cartilage or joints because it was found to not be effective in preventing the worsening of cartilage damage.  Thus, at a minimum, this study is evidence of the false and misleading nature of Defendant's "rebuild" and "nourishes" joint/cartilage representations.

36.    Using the same daily recommended doses as Defendant's Products, a 2010 GAIT study found that Glucosamine and Chondroitin in combination or alone were ineffective in pain relief or joint function, in patients with moderate to severe knee pain, a subset for which the 2006 reported results were inconclusive.  Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010). As a result, at a minimum, this study directly relates to the representations made on Defendant's labeling regarding "joint cushioning", "joint mobility" and "joint comfort" and is evidence that these representations are false and misleading.

37.    A study by Rozendaal et al., entitled Effect of Glucosamine Sulfate on Hip

- 13 -

Osteoarthritis, 148 Ann. of Intern. Med. 268-77 (2008) assessing the effectiveness of glucosamine on the symptoms (relief of pain and joint function/mobility) and structural progression of hip osteoarthritis (e.g. whether it nourished, built or maintained cartilage) during 2 years of treatment, concluded that glucosamine was no better than placebo in reducing symptoms and progression of hip osteoarthritis. Again this study used a daily dose of glucosamine of 1500 mg. As a result, at a minimum, this study directly relates to the representations made on Defendant's labeling regarding "joint cushioning", "joint mobility" and "joint comfort" , "builds cartilage" or nourishes "joints and connective tissue" and is evidence that these representations are false and misleading.

38. A 2010 meta-analysis by Wandel et al. entitled Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Of Hip Or Knee: Network Meta-Analysis, BMJ 341:c4675 (2010) examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip. The study authors reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain or have an impact on the narrowing of joint space: "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo." *Id.* at 8. The authors went as far to say, "We believe it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations." *Id.* All of the studies in this meta-analysis used a daily dose of glucosamine of 1500 mg. As a result, at a minimum, this study directly relates to the representations made on Defendant's labeling regarding "joint cushioning", "joint mobility" and "joint comfort" , "builds cartilage" or nourishes "joints and connective tissue" and is evidence that these representations are false and misleading.

39. In July 7, 2010, Wilkens et al., reported that there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability. The researchers also stated that, "Based on our results, it seems unwise to recommend glucosamine

to all patients" with low back pain and lumbar osteoarthritis. Wilkens et al., Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis, 304(1) JAMA 45-52 (July 7, 2010). Again this study used a daily dose of glucosamine of 1500 mg. As a result, at a minimum, this study directly relates to the representations made on Defendant's labeling regarding "joint cushioning", "joint mobility" and "joint comfort" and is evidence that these representations are false and misleading.

40.    Scientific studies also confirm that MSM is ineffective. *See, e.g.*, S. Brien, *et. al.*, Systematic Review of the Nutritional Supplements (DMSO) and methylsulfonylmethane (MSM) in the treatment of osteoarthritis (Apr. 17, 2008) (concluding that there is no "definitive evidence that MSM is superior to placebo in the treatment of mild to moderate OA of the knee").

*The impact of Defendant's wrongful conduct*

41.    Despite the lack of competent scientific evidence and the existence of numerous clinical studies that have found the ingredients in the Kirkland Glucosamine products to be ineffective in providing the represented joint health benefits, Defendant continues to unequivocally represent that its Kirkland Glucosamine products provide the represented joint health benefits to all adults.

42.    As the distributor of the Kirkland Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Kirkland Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects—its Products have on consumers.

43.    Specifically, Defendant affirmatively misrepresented that the Kirkland Glucosamine products provide the joint health benefits discussed above. Having made these affirmative misrepresentations, Defendant failed to disclose that well-conducted, clinical studies have found ingredients in Defendant's Products to be ineffective for represented joint health benefits and Defendant has no competent and reliable scientific evidence that its Kirkland Glucosamine products are effective in helping providing the represented joint health benefits.

- 15 -

44.     Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey one uniform message – that its Products provide the represented joint health benefits and that these benefits have been clinically proven for all joints in the human body, for adults of all ages.

45.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive representations touting the effectiveness of the Kirkland Glucosamine products. The only purpose behind purchasing said Products would be to obtain one or more of the represented joint health benefits. Thus, Defendant's representations and omissions necessarily deceived Plaintiff and the Class in some manner and said deception was a proximate cause of Plaintiff and the Class' injuries. There is no other reason for Plaintiff and the Class to have purchased the Defendant's Kirkland Glucosamine Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's representations were false and misleading (in that the scientific evidence demonstrated that the ingredients were not effective) and that Defendant did not possess competent scientific evidence to support the representations that it made about these Products.

46.     Plaintiff and the Class members have been damaged in their purchases of these Products in that they were deceived in some manner into purchasing Defendant's Products.

## CLASS ALLEGATIONS

47.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

### Multi-State Class Action

> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[8] purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.

_____

[8] _See_ footnote 3 for the preliminary listing of said states.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

48.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

### Illinois Class Action

> All Illinois residents who, within the applicable statute of limitations, purchased Kirkland Signature™ Extra Strength Glucosamine Chondroitin Sulfate and/or Kirkland Signature™ Extra Strength Glucosamine with MSM.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Kirkland Glucosamine products for the purpose of resale.

49.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

50.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

●     Whether the representations discussed herein that Defendant made about its Products were or are misleading, or reasonably likely to deceive;

●     Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

●     Whether the alleged conduct constitutes violations of the laws asserted herein;

●     Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries;

- Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages; and

- Whether the Plaintiff and Class members are entitled to injunctive or declaratory relief.

51. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff and Class members suffered injury and damages caused by their purchase of the Kirkland Glucosamine products marketed, distributed and sold by Defendant.

52. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

54. In addition, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

55.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members. Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

56.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

57.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/2, *et seq*. ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendant's Kirkland Glucosamine products.

58.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

49     Defendant does business in Illinois, sells and distributes its Kirkland Glucosamine products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Kirkland Glucosamine products in Illinois and elsewhere in the United States.

50.     Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

51.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Kirkland Glucosamine products which has caused damage and injury to Plaintiff and the Class.

52.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

53.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

54.     Defendant intended Plaintiff and all Class members to rely on their deceptive acts.

55.     The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a.    That the Court enter an order certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

b.    That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c.    Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d.    Attorneys' fees, expert fees and costs; and

e.    Such other and further relief as the Court deems just and proper.

DATED:    July 20, 2012

By:  s/Stewart Weltman
LEVIN FISHBEIN SEDRAN & BERMAN (Of Counsel)
STEWART M. WELTMAN
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: 312-427-3600

Of Counsel:

LEVIN, FISHBEIN, SEDRAN & BERMAN
Howard J. Sedran (*Admitted pro hac vice*)
Charles S. Sweedler (*Admitted pro hac vice*)
Keith Verrier (*Admitted pro hac vice*)
510 Walnut Street

Philadelphia, Pennsylvania 19106
Telephone: 215-592-1500

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:      (619) 756-6978

SIPRUT PC
JOSEPH SIPRUT
122 South Michigan Avenue
Suite 1850
Chicago, Illinois  60603
312.588.1440


Attorneys for Plaintiff

Certificate of Service

I, Stewart M. Weltman, hereby certify that Plaintiff's Ray Padilla's Second Amended Class Action Complaint was electronically filed and served using the Court's ECF system on July 20, 2012 upon the following counsel for Defendant:

Kara L. McCall
Shelby K. Feuerbach
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603

James D. Arden
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019

Ian Charles Raul
SIDNEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C 20005

s/Stewart M. Weltman
STEWART M. WELTMAN

- 22 -

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, On Behalf of Himself and All Others Similarly Situated, | Case No.: |
| Plaintiff, | CLASS ACTION |
| v. | |
| TARGET CORPORATION, a Minnesota Corporation, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Nick Pearson ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case, against Defendant Target Corporation ("Target" or "Defendant"), and alleges as follows:

### NATURE OF ACTION

1.   Defendant markets, sells and distributes Up & Up Glucosamine, a line of joint health dietary supplements.[1] Through uniform nationwide representations made on the packaging of the Products, Defendant states that its Up & Up Glucosamine products will help promote mobility, renew cartilage, and maintain healthy connective tissue for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments. Thus, on each and every Up & Up Triple Strength product label and/or

---

[1] The Up & Up Glucosamine line of joint health dietary supplements include: (1) Triple Strength Glucosamine Chondroitin plus MSM ("Up & Up Triple Strength"); and (2) Advanced Glucosamine Chondroitin Complex ("Up & Up Advanced") (collectively, "Up & Up Glucosamine" or the "Products").

package, Defendant prominently states that the Product "Supports renewal of cartilage", "Helps maintain the structural integrity of joints", and "Supports mobility and flexibility" and that just "two caplets per day" deliver these benefits (hereafter referred to as the "joint renewal, maintenance and mobility" representations). On each and every Up & Up Advanced product label and/or package, Defendant makes similar joint renewal, maintenance and mobility representations and also promises that the Product helps "protect joints from harmful oxidants."

2.    However, the Up & Up Glucosamine products do not provide joint renewal, maintenance or improve mobility and flexibility. Numerous clinical cause and effect studies have shown that the ingredients in the Up & Up Glucosamine products do not work as represented by Defendant and, in particular they do not renew or maintain joints or improve joint mobility or flexibility. In addition, Defendant does not have competent and reliable scientific evidence to support its representations. As a result of either or both of the foregoing, Defendant's representations are false, misleading, and deceptive.

3.    Despite the deceptive nature of Defendant's representations, Defendant conveyed and continues to convey its deceptive joint renewal, maintenance and mobility representations through a variety of media (including its website and online promotional materials) and, most important, at the point of purchase on its Product packages and labeling. Further, the only reason that any consumer would purchase the Up & Up Glucosamine products is to obtain joint health benefits, which Up & Up Glucosamine does not provide.

4.    As a result of Defendant's deceptive representations, consumers - including Plaintiff and other members of the proposed Class - have purchased a product that does not perform as advertised.

5.    Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to

that of Illinois under the facts particular to this case, who purchased the Products, to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created *in the* minds of consumers, and obtain redress for those who have purchased the Up & Up Glucosamine products.[2] Plaintiff alleges violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

## JURISDICTION AND VENUE

6.       This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendant.

7.       This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in Illinois. Defendant has marketed, promoted, distributed, and sold the Up & Up Glucosamine products in Illinois, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

8.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims

---

[2]While discovery may alter the following, Plaintiff preliminarily avers that the other with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Georgia (GA Code § 10-1-390 *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*,); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

9.     Plaintiff Nick Pearson resides in Cook County, Illinois. In or around June 2011, Plaintiff Pearson was exposed to and saw Defendant's representations by reading one of the Up & Up glucosamine labels at a Target store in Chicago, Illinois. He paid approximately $20 or more for a bottle of the Product. At the time that he purchased Defendant's Product, Plaintiff was deceived in some manner by Defendant in that he believed (1) that Defendant's Product would provide him some or all of the benefits represented by Defendant on the packaging and (2) was proven to be and was effective for the representations made on the packaging – that the Product would help to renew, maintain or improve joint mobility/flexibility. The Product Plaintiff purchased was not proven to and thus could not provide the represented health benefits Defendant represented it would. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these Products were not effective as represented by Defendant and that Defendant did not possess competent and reliable scientific evidence to support the representations that it made about these Products, Plaintiff would not have purchased the Defendant's Product. As a result, Plaintiff was deceived in some manner into purchasing the Product and suffered injury in fact and lost money.

10.     Defendant Target Corporation is incorporated under the laws of the state of Minnesota. Defendant's corporate headquarters is located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant distributes, markets and sells the Up & Up Glucosamine products to tens of thousands of consumers nationwide, including in Illinois.

- 4 -

## FACTUAL ALLEGATIONS

### *The Up & Up Glucosamine Products*

11.     Since 2009, Defendant has distributed, marketed, and sold the Up & Up Glucosamine line of joint health dietary supplements. These products include: (1) Triple Strength Glucosamine Chondroitin plus MSM; and (2) Advanced Glucosamine Chondroitin Complex.

12.     The Up & Up Glucosamine products are sold online and in Target stores nationwide. The Up & Up Advanced product is available in 90 count bottles, retailing for approximately $12. The Up & Up Triple Strength product is available in 120 and 200 count bottles, retailing for approximately $21 and $29, respectively. The following are screen shots of the Up & Up Glucosamine products:

 

13.     Since the Products' launch, Target has consistently conveyed the message to consumers throughout Illinois and the United States that the Up & Up Glucosamine products helps to rebuild cartilage, "maintain the structural integrity of joints" and improve joint mobility and flexibility simply by taking the recommended number of tablets each day. Defendant's renewal, maintenance and mobility representations are

false, misleading and deceptive.

14.     Defendant represents that the claimed health benefits are achieved through the combination of ingredients in the Products. The primary active ingredient in both Up & Up Glucosamine products is glucosamine hydrochloride. Glucosamine is an amino sugar that the body produces and distributes in cartilage and other connective tissue. The Up & Up Triple Strength labeling and packaging states the benefits associated with taking glucosamine hydrochloride: "Glucosamine is a major building block of joint cartilage, which helps to maintain the structural integrity of joints and connective tissue." There is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that maintains the structural integrity of joints and connective tissue.. In fact, clinical cause and effect studies have found that glucosamine hydrochloride does not work as Defendant represents. These studies show that glucosamine hydrochloride does not provide joint renewal, maintenance or improve mobility.

15.     The chondroitin sulfate in the Up & Up Glucosamine products is a complex carbohydrate found in the body's connective tissues. There is no competent and reliable scientific evidence that taking chondroitin—let alone through oral administration—results in the body metabolizing it into something that renews or maintains joints or improves mobility and flexibility. In fact, clinical cause and effect studies have found chondroitin sulfate does not work to provide any of these health benefits. These studies show that chondroitin sulfate does not provide joint renewal, maintenance or improve joint mobility.

16.     The Up & Up Glucosamine products also contain methylsulfonylmethane ("MSM"), an organic sulfur compound found in fruits, corn, tomatoes, tea, coffee, and milk. On the Up & Up Advanced labeling and packaging, Defendant claims that MSM "provides sulfar which is important for the structural integrity of joint cartilage and connective tissue." There is no competent and reliable scientific evidence that taking

MSM—let alone through oral administration—results in the body metabolizing it into something that improves joint the structural integrity of joint cartilage or connective tissue. In fact, clinical cause and effect studies have found MSM does not work to provide any of these health benefits. These studies show that MSM does not provide the benefits represented by Defendant.

17. The Up & Up Glucosamine products also contain lesser amounts of other ingredients. Thus, Up & Up Advanced contains hyaluronic acid, a component of synovial fluid found in the fluids of the eyes and joints and an antioxidant proprietary extract of Chinese skullcap and black catechu. Up & Up Triple Strength also contains *Boswellia Serrata*, gum resin extracted from an herb. There is no competent and reliable scientific evidence that taking any of these ingredients—let alone through oral administration—results in the body metabolizing it into something that renews or maintains joints or improves mobility and flexibility. In fact, clinical cause and effect studies have found these ingredients do not work to provide any of these health benefits. These studies show that these ingredients do not provide the benefits represented by Defendant.

18. In fact, numerous clinical cause and effect studies have found no causative link between any of the ingredients in the Up & Up Glucosamine products alone, or in combination, and joint renewal, maintenance or mobility. Nevertheless, Defendant, in the face of these negative studies and without any scientifically valid confirmation that Up & Up Glucosamine is an effective joint treatment—let alone an effective treatment for *all* joints in the human body, for adults of *all* ages and *all* manner and stages of joint related ailments—prominently claims on the Products' packaging and labeling, *inter alia*, that Up & Up Glucosamine helps to "rebuild cartilage," "lubricate joints", "maintain the structural integrity of the joint" and improve joint "mobility and flexibility". Front and side shots of the two Up & Up Glucosamine product labels appear as follows:

FRONT                                    RIGHT SIDE



**triple strength**
**glucosamine**
**chondroitin**
**plus MSM**
dietary supplement

**Compare to Osteo Bi-Flex® Triple Strength\*\***

Supports renewal of cartilage\*
Helps maintain the structural
integrity of joints\*
Supports mobility and flexibility\*

**up&up**
™
200 COATED CAPLETS

**200**
COATED
CAPLETS

**TRIPLE STRENGTH GLUCOSAMINE**
**CHONDROITIN PLUS MSM** combines the top
ingredients found in popular joint products.
Glucosamine is a major building block of joint
cartilage, which helps to maintain the structural
integrity of joints and connective tissue.\* This triple
strength product provides you with joint support in
just two caplets per day.\*

**Directions:** For adults, take two (2) caplets daily,
preferably with a meal. As a reminder, discuss the
supplements and medications you take with your
health care providers.

No yeast, wheat, gluten, milk or milk derivatives,
lactose, sugar, preservatives, soy, artificial flavor.

**WARNING:** If you are pregnant, nursing or taking
any medications, consult your doctor before use.
Discontinue use and consult your doctor if any
adverse reactions occur. Not intended for use by
persons under the age of 18.

**KEEP OUT OF REACH OF CHILDREN. STORE IN**
**A DRY PLACE AND AVOID EXCESSIVE HEAT.**
**TAMPER RESISTANT: DO NOT USE IF SEAL**
**UNDER CAP IS BROKEN OR MISSING.**

Laboratory tested to meet strict quality control
standards for potency, purity and disintegration.

PROD. NO. 18893
B31728        03C

FRONT

RIGHT SIDE





19.     Defendant did not and does not have competent and reliable scientific evidence that any of the ingredients in its Up & Up Glucosamine products taken alone or in combination benefit, improve or promote joint renewal, maintenance or mobility. Furthermore, numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Up & Up Glucosamine products and the prevention or improvement of joint degeneration or other joint related ailments. Thus, Defendant's representations are false, misleading and deceptive.

***The impact of Defendant's wrongful conduct***

20.     Despite the existence of numerous clinical studies that have found no causative link between the ingredients in Defendant's Products and joint renewal, maintenance or mobility, and the lack of competent scientific evidence supporting such

representations, Defendant continues to unequivocally claim that its Up & Up Glucosamine products are an effective treatment for joint renewal, mobility and rejuvenation in all adults.

21.     As the distributor of the Up & Up Glucosamine products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Up & Up Glucosamine products and is in a superior position to learn of the effects—and has learned of the effects, or lack thereof—its Products have on consumers.

22.     Specifically, Defendant affirmatively misrepresented that the Up & Up Glucosamine products help "rebuild cartilage," "lubricate joints", "maintain the structural integrity of the joint" and improve joint "mobility and flexibility". Having made these affirmative misrepresentations, Defendant failed to disclose that clinical cause-and-effect studies have found shown that these ingredients do not provide the health benefits represented by Defendant and, in addition, that Defendant has no competent and reliable scientific evidence that its Up & Up  Glucosamine products are effective in helping provide joint renewal, maintenance or mobility  as represented by Defendant. Notwithstanding these deceptive representations and material omissions, Defendant conveyed and continues to convey a uniform message: Up & Up Glucosamine help "rebuild cartilage", "lubricate joints", "maintain the structural integrity of the joints" and improve "mobility and flexibility" for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments.

23.     Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive representations. The Products' sole purported purpose is to provide joint renewal and rejuvenation, joint maintenance and improve joint function and mobility. Thus, the only purpose behind purchasing said Products would be to obtain some or all of the represented joint health benefits. There is no other reason for Plaintiff or the class to have purchased the Products and Plaintiff and the Class would

not have purchased the Products had they known Defendant's claims were false and misleading and, in addition, that Defendant did not possess competent and reliable scientific evidence to support its joint renewal, maintenance or mobility claims. Thus, Defendant's representations and omissions necessarily deceived Plaintiff and the Class in some manner and said deception was a proximate cause of Plaintiff and the Class' injuries.

24.     As a result, Plaintiff and the Class members have been damaged in their purchases of these Products in that they were deceived in some manner into purchasing Defendant's Products.

25.     Defendant, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS ALLEGATIONS

26.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

### Multi-State Class Action

> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[3] purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.
>
> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine products for the purpose of resale.

27.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the

---

[3] See footnote 3 for the preliminary listing of said states.

Federal Rules of Civil Procedure and seeks certification of the following Class:

**Illinois Class Action**

> All Illinois residents who, within the applicable statute of limitations, purchased Up & Up Triple Strength Glucosamine Chondroitin plus MSM and/or Up & Up Advanced Glucosamine Chondroitin Complex.

> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Up & Up Glucosamine products for the purpose of resale.

28. Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members. The precise number of Class members is unknown to Plaintiff.

29. Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. The common legal and factual questions include, but are not limited to, the following:

- Whether the representations discussed herein that Defendant made about its Products were or are misleading, or likely to deceive;

- Whether Plaintiff and the Class members were deceived in some manner by Defendant's representations;

- Whether the alleged conduct constitutes violations of the laws asserted herein;

- Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries; and

- Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages.

30.     The claims asserted by Plaintiff in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by Defendant and the relief sought is common. Plaintiff and Class members suffered injury and damages caused by their purchase of the Up & Up Glucosamine products marketed, distributed and sold by Defendant.

31.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

33.     In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

34.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to

enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

35.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

36.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq.* ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such products as Defendant's Up & Up Glucosamine products.

37.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

38.     Defendant does business in Illinois, sells and distributes its Up & Up Glucosamine products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Up & Up Glucosamine products in Illinois and elsewhere in the United States.

39.     Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

40.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Up & Up Glucosamine products which has caused damage and injury to Plaintiff and the Class.

41.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

42.     Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

43.     Defendant intended Plaintiff and all Class members to rely on its deceptive acts.

44.     The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a.   That the Court enter an order certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

b.   That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c.   That the Court enter an order granting  declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d.   Attorneys' fees, expert fees and costs; and

e.   Such other and further relief as the Court deems just and proper.

DATED: November 9, 2011

By:  s/Stewart Weltman
FUTTERMAN HOWARD ASHLEY
& WELTMAN, P.C.
STEWART WELTMAN
DANA PESHA
RAFAEL VARGAS
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone:  312-427-3600

Of Counsel:

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:    (619) 756-6978


Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, On Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | |
| | Case No.:    11 CV 07972 |
| v. | |
| | CLASS ACTION |
| TARGET CORPORATION, a Minnesota Corporation, | **Judge James B. Zagel** |
| Defendant. | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Nick Pearson ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant Target Corporation ("Target" or "Defendant"), and alleges as follows:

### NATURE OF ACTION

1.    Defendant markets, sells and distributes Up & Up Glucosamine, a line of two joint health dietary supplements ("the Products").[1] Each of the Products bear the name Glucosamine Chondroitin in bold, large letters, prominently at the top front of each label. The primary purported active ingredients in both of Target's Up & Up Glucosamine Products are glucosamine hydrochloride and chondroitin sulfate. On the front of each package/label, Target makes essentially the same representations about each Product  - that they will "help rebuild cartilage"[2] or "support renewal of cartilage", help "maintain the structural integrity of joints"[3],

---

[1] The Up & Up Glucosamine line of joint health dietary supplements include: (1) Triple Strength Glucosamine Chondroitin plus MSM ("Up & Up Triple Strength") (the Product purchased by Plaintiff); and (2) Advanced Glucosamine Chondroitin Complex ("Up & Up Advanced") (collectively, "Up & Up Glucosamine" or the "Products").

[2] Up & Up Advanced.

[3] This representation is made on the front of the Up & Up Triple Strength package/label and on the side of the Up & Up Advanced package/label. This representation is really an analogue to the "renew" and "rebuild" cartilage representations.

"lubricate joints"[4] or "supports mobility and flexibility."[5] On the front of each box of Defendant's Products, where consumers cannot miss it, Defendant claims that the Products will help to "rebuild" or "renew" cartilage and "lubricate joints" or support "joint mobility and flexibility". Defendant primarily markets these products to and they are purchased primarily by persons suffering from osteoarthritis. Persons who experience joint ailments and persons who seek to prevent joint ailments constitute the remainder of consumers who purchase these products.

2.     Thus, prominently displayed on the Products' labels are the deceptive taglines: "rebuild cartilage/renew cartilage", help "maintain the structural integrity of joints", and "lubricate joints/supports joint mobility and flexibility" (collectively referred to as "the joint health benefit representations"). No limitations accompany these taglines such that the take-away is that the Products will provide these specific joint related benefits for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments.

3.     In truth, the Products do not rebuild or renew cartilage, lubricate joints or improve joint mobility or flexibility. Clinical cause and effect studies have found that the primary active ingredients in the Products, glucosamine and chondroitin, are ineffective, taken alone or in combination, with regard to the purported joint health benefits represented on the Products' packaging and labeling. As a study sponsored by the National Institute of Health ("NIH") concluded: "The analysis of the primary outcome measure did not show that either [glucosamine or chondroitin], alone or in combination, was efficacious. . . ." Clegg, D., et al., Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis, 354 New England J. of Med. 795, 806 (2006) ("2006 GAIT Study"). As a result, in addition to affirmatively misrepresenting the joint health benefits of its Products, the failure of Target to disclose the facts regarding these studies also constitutes deception by omission or concealment. Thus, Target's joint health benefit representations and omissions are false, misleading and

---

[4] Up & Up Advanced.
[5] Up & Up Triple Strength.

reasonably likely to deceive the public.

4.     Despite the deceptive nature of Defendant's representations, Defendant conveyed and continues to convey its uniform joint health benefit representations at the point of purchase on the front of its Products' packages and labeling. The only reason that any consumer would purchase the Up & Up Glucosamine Products is to obtain joint health benefits, which Up & Up Glucosamine does not provide.

5.     As a result of Defendant's deceptive representations, consumers - including Plaintiff and other members of the proposed Class - have purchased a Product that does not perform as advertised.

6.     Plaintiff brings this action on behalf of himself and all other similarly situated Illinois residents and residents of states with Consumer Fraud Laws similar to that of Illinois under the facts particular to this case, who purchased the Products, to (1) halt the dissemination of these false and misleading representations, (2) correct the false and misleading perception it has created *in the* minds of consumers, and (3) obtain redress for those who have purchased the Up & Up Glucosamine Products.[6]  Plaintiff alleges violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 502/1, *et seq.*

### JURISDICTION AND VENUE

7.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The

---

[6]While discovery may alter the following, Plaintiff preliminarily avers that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.* ); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendant.

8.    This Court has personal jurisdiction over Defendant because Defendant is authorized to do and does conduct business in Illinois. Defendant has marketed, promoted, distributed, and sold the Up & Up Glucosamine Products in Illinois, and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

9.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while he resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

10.    Plaintiff Nick Pearson resides in Cook County, Illinois. In or around June 2011, Plaintiff Pearson was exposed to and saw Defendant's joint health benefit representations (i.e.. that the Product supported renewal of cartilage, helped maintain the structural integrity of joints and supported mobility and flexibility) by reading the package/label of Defendant's Up & Up Triple Strength Product at a Target store in Chicago, Illinois. He paid approximately $20 or more for a bottle of the Product. At the time that he purchased Defendant's Product, Plaintiff was deceived in some manner by Defendant in that he believed (1) that Defendant's Product would provide him some or all of the benefits represented by Defendant on the packaging and (2) that it was proven to be and was effective for the representations made on the packaging – that the Product would help to renew cartilage, help maintain the structural integrity of joints, and support joint mobility and flexibility. Had Plaintiff known the truth about Defendant's misrepresentations and omissions, including that the scientific evidence demonstrated that these

- 4 -

Products were not effective as represented by Defendant, Plaintiff would not have purchased Defendant's Product. Plaintiff used the Product as directed and, consistent with the scientific evidence that the Product was not effective, the Product did not work. As a result, Plaintiff was deceived in some manner into purchasing the Product and suffered injury in fact and lost money.

11.    Defendant Target Corporation is incorporated under the laws of the state of Minnesota. Defendant's corporate headquarters is located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403. Defendant distributes markets and sells the Up & Up Glucosamine Products to tens of thousands of consumers nationwide, including in Illinois.

## FACTUAL ALLEGATIONS

### The Up & Up Glucosamine Products

12.    Since 2009, Defendant has distributed, marketed, and sold the Up & Up Glucosamine line of joint health dietary supplements. These Products include: (1) Triple Strength Glucosamine Chondroitin plus MSM; and (2) Advanced Glucosamine Chondroitin Complex.

13.    The Up & Up Glucosamine Products are sold online and in Target stores nationwide. The Up & Up Advanced Product is available in 90 count bottles, retailing for approximately $12. The Up & Up Triple Strength Product is available in 120 and 200 count bottles, retailing for approximately $21 and $29, respectively. The following are screen shots of the Up & Up Glucosamine Products:

 

14. Since the Products' launch, Target has consistently conveyed the message to consumers throughout Illinois and the United States that the Products help to rebuild or renew cartilage, and improve joint mobility and flexibility or lubricate joints simply by taking the recommended number of tablets each day. They do not. Defendant's joint health benefit representations and omissions are false, misleading and deceptive.

15. The first identified primary active ingredient in both of the Products is glucosamine hydrochloride. As more fully set forth below, the scientific evidence is that glucosamine, taken alone or in combination with chondroitin sulfate, does not provide the joint health benefits represented by Defendant.

16. The second primary active ingredient in Defendant's Products is chondroitin sulfate. As more fully set forth below, the scientific evidence is that chondroitin sulfate, alone or in combination with glucosamine, does not provide the joint health benefits represented by Defendant.

17. In addition to these two primary active ingredients that Defendant prominently promotes as being the primary active ingredients that provide the purported joint health benefits, Defendant's Products also contain methylsulfonylmethane ("MSM"). As more fully discussed below, MSM is also not effective in providing the joint health benefits represented by

Defendant, but in any event the focus of this action is on the uniform false and deceptive representations and omissions that Defendant makes about glucosamine and chondroitin on the package labeling of each of its Up & Up Glucosamine Chondroitin Products.

18.     Defendant's Products also contain other ingredients such as Hyuralonic Acid (Up & Up Advanced and Triple Strength), an "Antioxidant proprietary extract" ( Chinese Skullcap (root) and Black Catechu (wood)) (Up & Up Advanced), Boswellia Serrata (Indian Frankincense) (Up & Up Triple Strength), but Defendant makes none of the joint health benefit representations for these ingredients.  For example, on the Up & Up Advanced side panel, Defendant states that its "Antioxident proprietary extract" helps protect joints from harmful oxidants" – whatever that might mean.  Likewise, on the Up & Up Advanced side panel, Defendant represents that Hyaluronic Acid is a "key tissue and joint component".  While literally true, taking Hyaluronic Acid orally cannot provide any joint health benefits because the high molecular weight of this ingredient is too large for the body to digest and put into the bloodstream, let alone provide joint health benefits.

19.     In contrast, on the front of both Products' package/label, Defendant makes the joint health benefit representations underneath the words "glucosamine chondroitin".  Thus, it is clear from the Products' packaging/labels, despite the inclusion of these other ingredients, Defendant is representing that glucosamine and chondroitin are the primary active ingredients that purport to provide the joint health benefits represented for both Products.

20.     Even though numerous clinical studies have found that the two primary ingredients in Defendant's Products, glucosamine and chondroitin, alone or in combination, are ineffective, Target continues to represent on the Products' packaging and labeling that they provide the joint health benefits for adults of *all* ages, without any limitation on which joints or what joint related ailments the Products provide these joint health benefits.    Front and side shots of the two Up & Up  Glucosamine Product labels appear as follows:

FRONT                                      RIGHT SIDE



FRONT                    RIGHT SIDE



***Scientific Studies Confirm That Up & Up Glucosamine Products Are Not Effective.***

21.     Independent studies published at least as early as 2004, have found that glucosamine and chondroitin, alone or in combination, are not effective in providing the represented joint health benefits.[7]

22.     For example, a 2004 study by McAlindon et al., entitled Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From and Internet-Based Randomized Double-Blind Controlled Trial, 117(9) Am. J. Med. 649-9 (Nov. 2004), concluded that glucosamine was no more effective than placebo in treating the symptoms of knee

---

[7] Many of these studies focus on patients with osteoarthritis and osteoarthritis of the knee, because the vast majority of purchasers of glucosamine chondroitin Products buy these Products for relief of the symptoms of osteoarthritis and osteoarthritis of the knee is the most common arthritic condition. Moreover, studies involving patients with osteoarthritis and patients with osteoarthritis of the knee are deemed, by experts in the field, to be a proxy for whether these products provide any of the represented joint health benefits, regardless of whether or not a consumer may have osteoarthritis.

osteoarthritis – in short, it was ineffective.

23.     Also as early as 2004, studies confirmed there is a significant "placebo" effect with respect to glucosamine consumption. A 2004 study by Cibere et al, entitled Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004), studied users of glucosamine who claimed to have experienced at least moderate improvement after starting glucosamine. These patients were divided into two groups – one that continued using glucosamine and one that was given a placebo. For six months, the primary outcome observed was the proportion of disease flares in the glucosamine and placebo groups. A secondary outcome was the time to disease flare. The study results reflected that there were no differences in either the primary or secondary outcomes for glucosamine and placebo. The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine – in other words, any prior perceived benefits were due to the placebo effect and not glucosamine.

24.     In the 2006 Gait Study, the study authors rigorously evaluated the effectiveness of glucosamine hydrochloride and chondroitin, alone and in combination, on osteoarthritis for six months. According to the study's authors, "The analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious. . ." 2006 GAIT Study at 806.[8]  Subsequent GAIT studies in 2008 and 2010 reported that glucosamine and chondroitin did not rebuild cartilage[9] and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 reported results were inconclusive. *See* Sawitzke, A.D., et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, 58(10) J. Arthritis Rheum. 3183–91 (Oct. 2008);

---

[8] The 2006 Gait Study was funded by the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases, two components of NIH.

[9] To a similar effect a study by Kwok, et al., entitled The Joints On Glucosamine (JOG) Study:  A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritis Based On 3T MRI, 60 Arthritis Rheum 725 (2009) concluded that glucosamine was not effective in preventing the worsening of cartilage damage.

Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).

25.     The GAIT studies are consistent with the reported results of prior and subsequent studies.   For example, the National Collaborating Centre for Chronic Conditions ("NCCCC") reported "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing."   NCCCC, Osteoarthritis National Clinical Guideline for Care and Management of Adults, Royal College of Physicians, London 2008.   Consistent with its lack of efficacy findings, the NCCCC Guideline did not recommend the use of glucosamine or chondroitin for treating osteoarthritis. *Id.* at 33.

26.     A study by Rozendaal et al., entitled Effect of Glucosamine Sulfate on Hip Osteoarthritis, 148 Ann. of Intern. Med. 268-77 (2008) assessing the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis during 2 years of treatment, concluded that glucosamine was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

27.     A 2010 meta-analysis by Wandel et al. entitled Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Of Hip Or Knee: Network Meta-Analysis, BMJ 341:c4675 (2010) examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip.   The study authors reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain or have an impact on the narrowing of joint space: "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo."   *Id.* at 8.   The authors went as far to say, "We believe it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations."   *Id.*

28.     In July 7, 2010, Wilkens et al., reported that there was no difference between

placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability. The researchers also stated that, "Based on our results, it seems unwise to recommend glucosamine to all patients" with low back pain and lumbar osteoarthritis. Wilkens et al., Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis, 304(1) JAMA 45-52 (July 7, 2010).

29. Scientific studies also confirm that MSM is ineffective. *See, e.g.*, S. Brien, *et. al.*, Systematic Review of the Nutritional Supplements (DMSO) and methylsulfonylmethane (MSM) in the treatment of osteoarthritis (Apr. 17, 2008) (concluding that there is no "definitive evidence that MSM is superior to placebo in the treatment of mild to moderate OA of the knee").

*The impact of Defendant's wrongful conduct*

30. Despite the existence of numerous clinical studies that have found the ingredients in Defendant's Products to be ineffective for the joint health benefits that it represents on the Products' package/labels, Defendant continues to unequivocally claim that its Up & Up Glucosamine Products are effective and provide these joint health benefits –without limitation and thus for adults of all ages and for all manner and stages of joint related ailments. As the distributor of the Up & Up Glucosamine Products, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in its Up & Up Glucosamine Products and is in a superior position to learn of the effects—and has learned of the effects, or lack thereof—its Products have on consumers.

31. Specifically, at least as early as 2009 when it began selling its Up & Up Glucosamine Chondroitin Products, Defendant knew, but failed to disclose, that the Products do not provide the joint health benefits represented and that well-conducted, clinical studies have found the ingredients in its Up & Up Glucosamine Chondroitin Products to be ineffective in providing the joint health benefits represented by Target. Plaintiff and Class members have been and will continue to be deceived or misled by Target's deceptive joint health benefit

- 12 -

representations. Plaintiff purchased and consumed one of Defendant's Products during the Class period and in doing so, read and considered the Product's label and based his decision to purchase the Product on the joint health benefit representations on the Product packaging. Target's joint health benefit representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the Product.

32. The only purpose behind purchasing one of Defendant's Products is to obtain some or all of the represented joint health benefits. There is no other reason for Plaintiff and the Class to have purchased the Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

33. Plaintiff and the Class members have been injured in fact in their purchases of these Products in that they were deceived into purchasing Products that do not perform for the only reason that they would have purchased these Products – joint health benefits. As a resultt, Plaintiff and the Class members have suffered economic damage in their purchases of these Products.

34. Defendant, by contrast, reaped profits from its false marketing and sale of these Products.

## CLASS ALLEGATIONS

35. Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

### Multi-State Class Action

All persons who, within the applicable statute of limitations under

their respective state's consumer fraud act,[10] purchased Up & Up
Triple Strength Glucosamine Chondroitin plus MSM and/or Up &
Up Advanced Glucosamine Chondroitin Complex.

Excluded from the Class are Defendant, its parents, subsidiaries,
affiliates, officers and directors, and those who purchased the Up &
Up Glucosamine Products for the purpose of resale.

36.     In the alternative, Plaintiff brings this action on behalf of himself and all other

similarly situated Illinois residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal

Rules of Civil Procedure and seeks certification of the following Class:

**Illinois Class Action**

All Illinois residents who, within the applicable statute of limitations,
purchased Up & Up Triple Strength Glucosamine Chondroitin plus
MSM and/or Up & Up Advanced Glucosamine Chondroitin
Complex.

Excluded from the Class are Defendant, its parents, subsidiaries,
affiliates, officers and directors, and those who purchased the Up &
Up Glucosamine Products for the purpose of resale.

37.     Members of the Class are so numerous and geographically dispersed that joinder

of all Class members is impracticable. Plaintiff is informed and believes, and on that basis

alleges, that the proposed Class contains many thousands of members. The precise number of

Class members is unknown to Plaintiff.

38.     Common questions of law and fact exist as to all members of the Class and

predominate over questions affecting only individual Class members. The common legal and

factual questions include, but are not limited to, the following:

•       Whether the representations or omissions discussed herein that Defendant

made about its Products were or are misleading, or likely to deceive;

•       Whether Plaintiff and the Class members were deceived in some manner

by Defendant's representations;

•       Whether the alleged conduct constitutes violations of the laws asserted

---

[10] See footnote 6 for the preliminary listing of said states.

- 14 -

herein;

- Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries;

- Whether Plaintiff and Class members are entitled to an award of compensatory/actual damages; and

- Whether Plaintiff and the Class are entitled to injunctive, declaratory or other equitable relief.

39.    Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, including being subject to Defendant's deceptive joint health benefit representations, which accompanied each and every box of Defendant's Products.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

40.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

41.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

42.    In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

43.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.  Unless a Class is certified, Defendant will retain

monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I

### Violation of the Illinois Consumer Fraud Act

44.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the Class.

46.     In Illinois, the "Consumer Fraud and Deceptive Business Practices Act" 815 Ill. Comp. Stat. 502/1, *et seq.* ("the Act"), like the consumer fraud acts of numerous other states across the nation, prohibits deceptive acts and practices in the sale of such Products as Defendant's Up & Up Glucosamine Products.

47.     Plaintiff and the Class were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Class.

48.     Defendant does business in Illinois, sells and distributes its Up & Up Glucosamine Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of its Up & Up Glucosamine Products in Illinois and elsewhere in the United States.

49.     Defendant's Products purchased by Plaintiff and the Class were "consumer items" as that term is defined under the Act.

40.     Defendant misrepresented and deceptively concealed, suppressed and/or omitted the material information known to Defendant as set forth above concerning its Up & Up Glucosamine Products which has caused damage and injury to Plaintiff and the Class.

41.     Defendant's deceptive acts occurred in a course of conduct involving trade and commerce in Illinois and throughout the United States.

42. Defendant's deceptive acts proximately caused actual injury and damage to Plaintiff and the Class.

43. Defendant intended Plaintiff and all Class members to rely on its representations regarding the joint health benefits of its Products.

44. The conduct of the Defendant constituted a consumer fraud under the Illinois Consumer Fraud Act and similar laws in other states.

**WHEREFORE**, Plaintiff and the Class pray as follows:

a. That the Court enter an order certifying this action as a class action—either as a multi-state class or, in the alternative, as an Illinois class;

b. That the Court enter an Order against Defendant awarding to Plaintiff and the Class compensatory/actual damages;

c. That the Court enter an order granting declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

d. Attorneys' fees, expert fees and costs; and

e. Such other and further relief as the Court deems just and proper.

DATED: June 14, 2012

By: s/Stewart Weltman
LEVIN FISHBEIN SEDRAN & BERMAN
STEWART WELTMAN Of Counsel
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: 312-427-3600

Of Counsel:

ELAINE A. RYAN
PATRICIA N. SYVERSON
LINDSEY M. GOMEZ GRAY
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: 602-274-1100

- 18 -

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER
600 West Broadway, Suite 900
San Diego, California 92101
Telephone:     (619) 756-6978


Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 14th day of June, 2012, a copy of the foregoing First Amended Class Action Complaint was filed with the Clerk of Court using the CMM/ECF system which will send notification of such filing to the following:

>David B. Sudzus
>Bradley J. Andreozzi
>Benjamin Todd Vinson
>Justin O'Neill Kay
>Drinker Biddle & Reath LLP
>191 N. Wacker Drive, Suite 3700
>Chicago, IL 60606

s/Stewart M. Weltman

- 20 -