## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, on Behalf of Themselves and All Others Similarly Situated, | |
| Plaintiffs, | Case No.: 11 CV 07972<br><br>CLASS ACTION<br><br>**Judge James B. Zagel** |
| v. | |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation, | |
| Defendants. | |

## PLAINTIFFS' RESPONSE TO OBJECTIONS

Stewart M. Weltman
STEWART M. WELTMAN, LLC
53 W. Jackson, Suite 364
Chicago, Illinois 60604
Telephone: (312) 588-5033
(Of Counsel: Levin Fishbein Sedran & Berman)

Elaine A. Ryan
Patricia N. Syverson
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Rd., Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

*Attorneys for Plaintiffs Nick Pearson, Francisco Padilla, Cecilia Linares, Augustina Blanco, and Abel Gonzalez*

Peter N. Freiberg
Jeffrey I. Carton
DENLEA & CARTON LLP
One North Broadway, Suite 509
White Plains, New York 10601
Telephone:  (914) 920-7400

*Attorneys for Plaintiff Richard Jennings*

## TABLE OF CONTENTS

**PAGE**

The Injunctive Relief Being Provided to the Class Has a Value that Ranges From $46.2 to $21.7 Million ....................................................................................................2

    A.    The Representations Being Removed Were Significant Factors in Class Members' Purchases ...............................................................................................4

    B.    Requiring Label Changes for 30 Months Is Significant .........................................6

    C.    The Injunctive Relief Has Substantial Monetary Value to the Class and Furthers Consumer Protection ...............................................................................7

    D.    *Bluetooth* Is Not Applicable to This Settlement ....................................................9

CONCLUSION    ..........................................................................................................11

i

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980)........................................................................................2

*Colgan v. Leatherman Tool Group, Inc.*
    135 Cal. App. 4th 663 (2006) ......................................................................3

*Crawford v. Equifax Payment Servs.*
    201 F.3d 877 (7th Cir. 2000) ......................................................................9

*Darviris v. Petros*
    442 Mass, 274 (2004) ..................................................................................3

*Dewey v. Volkswagen of Am.*
    909 F.Supp.2d 373 (D.N.J. 2012) ...............................................................3

*Felix v. Northstar Location Servs., LLC*
    290 F.R.D. 397 (W.D.N.Y. 2013) ..............................................................9

*Hanlon v Chrysler Corp.*
    150 F.3d 1011 (9th Cir 1998) ....................................................................10

*Harsch v. Eisenberg*
    956 F.2d 651 (7th Cir. 1992) ....................................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) .............................................................9, 10, 11

*In re Dry Max Pamper Litig.*
    No. 11-4156, 2013 WL 3957060 (6th Cir. Aug. 2, 2013) ...........................8

*In re HP Laser Printer Litig.*
    No. SACV 07–0667, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) .................9

*In the Matter of Nestle Healthcare Nutrition, Inc.*
    No. 092-3087, 2010 WL 2811203 (F.T.C. July 14, 2010) .................6

*In the Matter of POM Wonderful LLC*
    No. 9344, 2013 WL 268926 (F.T.C. Jan. 16, 2013) .........................6

*In re Mexico Transfer Litig*
    267 F.3d 743 (7th Cir. 2001) ......................................................................3

*Kirchoff v. Flynn*
 786 F.2d 320 (7th Cir. 1986) ...........................................................................11

*Linney v. Cellular Alaska P'ship*
 No. C-96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997) ...........................9

*Meyenburg v. Exxon Mobil Corp.*
 No. 3:05-cv-15, 2006 WL 5062697 (S.D. Ill. June 5, 2006) ............................3

*Paulus v. Bob Lynch Ford, Inc.*
 139 Cal. App. 4th 659 (2006) ..........................................................................3

*Siegel v. Shell Oil Co.*
 612 F.3d 932 (7th Cir. 2010) ............................................................................3

*Synfuel Techns, Inc., v. DHL Express (USA), Inc.*
 463 F.3d 646 (7th Cir. 2006) ............................................................................9

*True v. Am. Honda Motor Co.*
 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...........................................................9

*Vasselle v. Midland Funding LLC*
 708 F.3d 747 (6th Cir. 2013) ...........................................................................9

## RULES
Fed. R. Civ. P 23(b)(2)........................................................................................2
Fed. R. Civ. P 23(b)(3)........................................................................................2
Fed. R. Civ. P. 23(h)  2

Plaintiffs Nick Pearson, Francisco Padilla, Cecilia Linares, Augustina Blanco, Abel Gonzalez, and Richard Jennings ("Plaintiffs"), through their counsel, request that the Court overrule the objections of Theodore H. Frank [D.E. 95] ("Frank Obj."), Pamela Easton [D.E. 98] ("Easton Obj."), Peggy Thomas [D.E. 99] ("P. Thomas Obj."), Simone Thomas [D.E. 100] ("S. Thomas Obj."), Kathleen McNeal and Alison Paul [D.E. 104] ("McNeal/Paul Obj."), John Buckley [D.E. 93] ("Buckley Obj."), and C. Jane Radlinski ("Radlinski Obj.") [D.E. 90].[1]

As addressed in the Parties' Joint Response to Objections (being filed herewith) and below, the Objectors do not contend that the monetary benefits available to Class Members are deficient (as they cannot, *see* Plaintiffs' Memorandum of Law in Support of Motion for Final Approval ("Final Approval Br.") §§ II.A.1, III.C.1.a (discussing compensatory relief available to Class Members)). Instead, the focus of the Objectors' arguments is that the amount of the attorneys' fees and expenses ("fees") to which the Settling Defendants have agreed not to object – fees that do not reduce the recovery of any Class Member – is disproportionate in their view to the value of the Settlement. Objectors contend that, at most, the Settlement is worth $8 million (the sum of the $2 million claim payment floor, the minimum $1.5 million in notice and administration costs, and the $4.5 million in attorneys' fees and expenses) (Frank Obj. at 15; Easton Obj. at 3; P. Thomas Obj. at 2; S. Thomas Obj. at 2), or as little as $6.5 million if one ignores the notice and administrative costs (Frank Obj. at 12-15; Eastman Obj. at 3). The Objectors then contend that the agreed-to fees are disproportionate, and argue that there should be an inference that the Settlement is the by-product of collusion or self-dealing (Frank Obj. at 9-12; Easton Obj. at 3-4; P. Thomas Obj. at 2-3; S. Thomas Obj. at 2; McNeal/Paul Obj. at 6-7).

---

[1] Each of the arguments made below are made on behalf of Plaintiffs. The Parties are also submitting herewith the Joint Response to Objections made on behalf of all Parties.

1

The Objectors, however, ignore well-settled law governing how courts are to value the monetary component of a claims-made settlement such as this one. As set forth below, in the Final Approval Brief, and in the Parties' Joint Response to Objectors, the total compensatory benefit available to the Class has a minimum value of between $14.2 million and $27.3 million based upon the valuation methodology set forth in the U.S. Supreme Court's seminal decision in *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980), and its progeny. *See* Joint Response to Objections, at § II.A. The Objectors also ignore that under Seventh Circuit law, the notice and administration costs are also of value to the Class. *Id.* at § II.B. Finally, and importantly, as more fully described below, the Objectors improperly contend that the injunctive relief is of no value when, in fact, the injunctive relief provides significant consumer protection and has a quantifiable monetary value. By so contending, the Objectors have grossly undervalued the components of the Settlement (*see also* Joint Response to Objections, at § II), including the significant value associated with the injunctive relief achieved by the Settlement.

### The Injunctive Relief Being Provided to the Class Has a Value that Ranges From $46.2 to $21.7 Million

Objectors Easton and Frank argue that the injunctive relief provided by the Settlement should not factor into the fairness of the settlement and cannot be used to evaluate the reasonableness of attorneys' fees (Easton Obj. at 4-5; Frank Obj. at 10-11, n. 6). Each of the cases covered by the Settlement, however, originally sought damages classes under Rule 23(b)(3) *and* injunctive relief classes under Rule 23(b)(2). By requiring the removal of a key, yet

false, marketing message, this injunctive relief achieves an important goal of these cases and fosters consumer protection – a primary goal of all consumer fraud laws.[2]

The Seventh Circuit has noted that prospective relief provided in a class action settlement "is not an outcome to be sneered at." *In re Mexico Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). Indeed, in making its fairness determination, the Court should include in its evaluation "any prospective injunctive relief in addition to any tangible benefits . . . conveyed to the class." *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15, 2006 WL 5062697, at *3 (S.D. Ill. June 5, 2006) (citing *Mexico Money*, 267 F.3d at 748-49). In *Meyenburg*, the District Court found there was "substantial benefit to the class" where, *inter alia*, defendant "agreed to modify its business practices for three years," which, like here, involved injunctive relief that "specifically encompasses and addresses the challenged conduct," "insures a benefit to all class members, whether or not they file a claim," and "was initiated solely as a result of the Settlement." *Id.* at *4, *8.[3] The Federal Rules Advisory Committee also recognizes that injunctive relief may

---

[2] *See, e.g., Siegel v. Shell Oil Co.,* 612 F.3d 932, 934 (7th Cir. 2010) (Illinois's IFCA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices") (internal quotes and citation omitted); *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 676-77 (2006) ("The purpose of [California's] UCL is to protect both consumers and competitors by promoting fair competition. . . .") (internal quotes and citation omitted); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 680 (2006) (California's CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection"); *Darviris v. Petros*, 442 Mass, 274, 278 (2004) ("The purpose of [the Massachusetts Unfair Trade Practices Act] is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace.").

[3] Objector Frank recently raised this same argument – that "no value should be assigned to non-monetary terms of the settlement and that the benefit to the class should be measured by the amount of cash class members receive" (*see, e.g.,* Frank Obj. at n.6 and n. 10) – in *Dewey v. Volkswagen of Am.*, 909 F.Supp.2d 373, 396 (D.N.J. 2012). There, the District Court rejected Frank's arguments. *Id.* at 601. The Court should similarly reject this argument here.

properly figure into the reasonableness determination. *See* Advisory Committee Notes to Fed. R. Civ. P. 23(h) (2003 Amendments) ("[I]t is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fee award."); *see also* Final Approval Br. §§ III.C.1.b, V.B.2 (discussing the numerous cases recognizing the value of injunctive relief to Class Members).

Indeed, as discussed below, Plaintiffs have obtained injunctive relief that is as, or more, robust than that which a governmental action, such as one brought by the U.S. Federal Trade Commission ("FTC") or a State Attorney General, could have realized. Thus, the injunctive relief achieved should be given substantial weight by the Court in evaluating the overall fairness and reasonableness of the Settlement and the award of attorneys' fees.

## A. The Representations Being Removed Were Significant Factors in Class Members' Purchases.

As a direct result of this Settlement, the Settling Defendants have agreed not to use any representations that the Covered Products will rebuild, build, or renew cartilage for a period of at least 30 months (Settlement Agreement [D.E. 73-1] ¶ 8). As demonstrated by Rexall's consumer survey documents and Plaintiffs' expert economist, Dr. Keith Reutter, ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] All exhibits referenced herein are submitted as part of the "Master Exhibit List," which is attached to the Joint Response to Objections being filed herewith.

███████████████████████████████████
███████

To better appreciate the significance of this labeling change, attached as Exhibit T to the Master Exhibit List are exemplars of the front of the packages for Rexall Sundown's Osteo Bi-Flex Regular Strength and Osteo Bi-Flex with MSM and Hyaluronic Acid, Costco's Kirkland Glucosamine and MSM, and Target's Up & Up Advanced Glucosamine Chondroitin Complex. The front label language that will no longer be used is stricken in red line. As can be seen, Settling Defendants are removing a key and prominent marketing message made about their Covered Products.

Objector Frank claims that the labeling change from "Help[s] Build Cartilage" to "Contains a key building block of cartilage" does "not provide a valuable alteration" (Notice of Pertinent Authority [D.E. 105] at 2).[2] The statement that glucosamine is a "building block" of cartilage is true. Glucosamine serves as a metabolic precursor in the synthesis of several classes of compounds requiring amino sugars which form the extracellular matrix components of connective tissue such as cartilage. Gouze, J.N., et al., "Exogenuous glucosamine globally protects chondrocytes from the arthitogenic effects of IL-1B," ARTHRITIS RESEARCH & THERAPY 2006, 8:R173 at 2; *see also* Mayo Clinic, Glucosamine, http://www.mayoclinic.com/health/glucosamine/NS_patient-glucosamine ("Glucosamine is a natural compound that is found in healthy cartilage."). However, one of Plaintiffs' main contentions is that the Settling Defendants have gone well beyond this factually true statement

---

[2] The alternative language cited by Frank is not necessarily language that Rexall will use – it is just proposed language that Rexall *may* use. *See* Settlement Agreement [D.E. 73-1] ¶ 8(c) ("The Parties agree that Rexall may – but is not required to – use the language identified in Column 2 of Exhibit B in place of the Removed Language on the Covered Products.").

and falsely represented that the Covered Products actually rebuild or renew cartilage. Correcting those representations so that consumers have accurate information on which to make purchase decisions is a significant and valuable change.[6]

### B.   Requiring Label Changes for 30 Months Is Significant.

Objector Easton contends that the 30-month period during which the Settling Defendants agree to remove the rebuild/renew representations is insufficient (Easton Obj. at 4). In fact, the injunctive relief is stronger than that which the FTC normally obtains when it enters into a consumer fraud consent decree. The FTC generally obtains the settling defendant's agreement to refrain from making a particular representation unless and until the party has adequate scientific substantiation to make the representation.[7] Here, the Settling Defendants will not make the representation for the entire 30-month period, regardless of any scientific support they may or may not obtain in the interim.

---

[6] In a related vein, the current labeling on the Covered Products states or implies, without qualification, that all consumers who purchase these Products will experience the other promised relief relating to joint comfort or pain, flare-ups, soothing, cushioning, nourishing, mobility, lubrication, or support. The Settlement Agreement requires that, for the same 30-month period, Rexall will place on the packaging and labeling of the Covered Products the statement that "individual results may vary" (Settlement Agreement [D.E. 73-1] ¶ 8, Ex. B). While some consumers may assume this already, others do not. This labeling change requires that this caveat be clearly stated on the label – instead of the unqualified statements currently on the label.

[7] See, e.g., In the Matter of POM Wonderful LLC, No. 9344, 2013 WL 268926, at *2 (F.T.C. Jan. 16, 2013) (the company "shall not make any representation, in any manner, expressly or by implication, . . . about the health benefits, performance, or efficacy of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, Respondents possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true."); In the Matter of Nestle Healthcare Nutrition, Inc., No. 092-3087, 2010 WL 2811203, at *7 (F.T.C. July 14, 2010) (same).

6

Moreover, in the absence of adequate scientific substantiation,[1] the Settlement Agreement provides a strong incentive for Settling Defendants to keep this language off their labels after the 30-month period expires. If they continue to act in accordance with the injunctive relief, Defendants cannot be sued by current Class members; if they add the language back in they are immediately subject to suit (Settlement Agreement [D.E. 73-1] ¶ 13). Given the current state of the science and the Settling Defendants' incentive to prevent future claims against them, the "rebuilds cartilage" claims will most likely never again appear on the packaging for the Covered Products.

## A. The Injunctive Relief Has Substantial Monetary Value to the Class and Furthers Consumer Protection.

Even if the Settling Defendants implement the label changes for only 30 months, this injunctive relief is conservatively estimated by Dr. Keith Reutter, an expert economist, to be worth approximately $21.7 million to current Class Members and will provide an overall benefit of $46.2 million to all consumers. *See* Reutter Rep. (Ex. S) at ¶12. As set forth in the Declaration of NBTY's Senior Manager, Market Measurement & Analytics ███████████████ ████████████████████████████████████████ Granja Decl. (Ex. Z) at ¶¶ 3-4. ██████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████

---

[1] As reflected in the report of Dr. Thomas J. Schnitzer, one of Plaintiffs' experts, and a nationally-regarded expert on joint remedies, including glucosamine/chondroitin, the scientific case for the "rebuilding cartilage" claims is essentially closed. *See* Schnitzer Rep. (Ex. U) at ¶¶ 10-13. Likewise, according to the expert retained by Plaintiff Jennings, Dr. Jeremiah E. Silbert, M.D., it is biochemically impossible for the ingredients in the Covered Products to rebuild or renew cartilage. *See* Silbert Rep. (Ex. V) at §§ A.5, B.4 and 5 and C.

[2] *See* Schnitzer Rep. (Ex. U) at ¶21.

7

████████████████ Many current Class members therefore will be the beneficiaries of more truthful packaging in their future purchases. Further, Plaintiffs' expert economist opines that prices for these products will fall with the removal of this key false representation, meaning that all future purchasers of these products, including current Class members who are repeat purchasers, will benefit from these lower prices (Reutter Rep. (Ex. S) at ¶¶ 10-11). Thus, the injunctive relief at issue here has real value to current Class members along with furthering the important goals of consumer protection.

Objector Frank cites to *In re Dry Max Pamper Litig.*, No. 11-4156, 2013 WL 3957060 (6th Cir. Aug. 2, 2013), for the proposition that the injunctive relief here is not valuable (Notice of Authority [D.E. 105]). In *Pampers*, where plaintiffs complained that the diapers caused diaper rash, the defendant agreed to include language on its packaging directing consumers to contact the company for diaper rash information. *Pampers*, 2013 WL 3957060, at \*5. No substantive change was made to the language on the labeling regarding the risk of diaper rash and the court described the agreement to provide a reference to more information on the website as "little more than an advertisement for Pampers." *Id.*[4] Here, unlike in *Pampers*, representations deemed to

---

[3] Even Objector Frank admits to being a repeat consumer of glucosamine products (Frank Decl. [D.E. 95-1] at ¶¶ 6-8). *See also* P. Thomas Obj. at 1 (noting several purchases over an eleven-year period); S. Thomas Obj. at 1 (same).

[4] The other "injunctive relief" in *Pampers* involved changing the Pampers website to provide "rudimentary information" about diaper rashes, including informing consumers to "[s]ee your child's doctor," if certain symptoms develop. *Pampers*, 2013 WL 3957060, at \*5. The court in *Pampers* quite rightly concluded that the website information was of little value because, for example, seeing one's doctor was a common sense recommendation that any parent would consider on their own. *Id.*

be influential to consumers – prominently displayed on the front of the labeling - are going to be removed from the Settling Defendants' packaging.[12]

Thus, contrary to the arguments of Objectors Easton and Frank, because the injunctive relief consists of significant and  labeling modifications that are quantifiable,[13] the injunctive relief is properly considered by the Court in determining whether the settlement is reasonable and fair, and, in turn, whether the agreed to amount of attorneys' fees are reasonable.

**D.**     *Bluetooth* **Is Not Applicable to This Settlement.**

Objector Frank relies upon the Ninth Circuit's holding in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), to support his so-called collusion argument (*see, e.g., Frank Obj. at 7, 8*). The *Bluetooth* case and the proposed settlement there, however, could not be more different from the Settlement in this case.

---

[12] All of the cases on which Objector Frank relies for his contention that the injunctive relief is of no value are distinguishable because, like *Pampers*, and unlike here, the injunctive relief was found to be of little or no actual value. *Compare, e.g., Synfuel Techns, Inc., v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (class members would not benefit because they were unlikely to become future victims of defendant's conduct); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 882 (7th Cir. 2000) (same); *see also Vasselle v. Midland Funding LLC*, 708 F.3d 747, 756 (6th Cir. 2013) (same); *see also Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397 (W.D.N.Y. 2013) (same) (pinpoint presently unavailable); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010) (injunctive relief was already required by new government regulations and even plaintiffs did not claim that the injunctive relief was "a source of significant benefit").

[13] Importantly, the precise value of the injunctive relief need not be determined to support an award of attorneys' fees under the common fund theory. *See In re HP Laser Printer Litig.*, No. SACV 07–0667, 2011 WL 3861703, at *5 (C.D. Cal. Aug. 31, 2011) (while injunctive relief provides a "substantial benefit," the "Court finds it unnecessary to attempt to quantify the value of the injunctive relief where a lodestar calculation provides a reasonable way to determine attorney fees"); *Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997) (awarding attorneys' fees equal to 33% of common fund, while acknowledging a "benefit based upon injunctive relief with a value, although no doubt substantial, that can only be estimated").

*Bluetooth* settled very early in the case, before motions to dismiss were decided and before any discovery had commenced. 654 F.3d at 939. The *Bluetooth* settlement provided no monetary benefit to the class members, *id.* at 939-40, as opposed to the uncapped claims-made process here. The injunctive "benefit" in *Bluetooth* was a toothless prospective remedy in which the settling defendant agreed to put some acoustic safety information on its website and in a user manual to address claims that its headsets posed undisclosed hearing loss risks, *see id.* at 945 – a far cry from the injunctive relief here, which requires the Settling Defendants to remove a key representation prominently made on the front of their labeling.[14]

Based upon this settlement, the *Bluetooth* class counsel sought, the defendant agreed to pay, and the district court awarded $800,000.00 in attorneys' fees. *Id.* The Ninth Circuit reversed, but not because it found that the settlement was collusive or that the fees were excessive. In fact, even though no funds had been made available to the class as a result of the settlement, the Ninth Circuit stated that it still could not "say the disproportion between the fee award and the benefit obtained for the class was *per se* unreasonable" and, instead, reversed and remanded because the district court had not created a sufficient record regarding how it had arrived at its fee award. *Id.* at 945. "With neither a lodestar figure nor a sense of what degree of success this settlement achieved, we have no basis for affirming the fee award as reasonable under the lodestar approach." *Id.* at 944.

Moreover, the court in *Bluetooth* noted that in cases where the relief is "injunctive in nature and thus not easily monetized" a lodestar plus an upward or downward adjustment is appropriate. *Id.* at 941-42; *see also Hanlon v Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir

---

[14] There was also a $100,000 *cy pres* award in *Bluetooth* to be distributed to four non-profit organizations dedicated to the prevention of hearing loss. *Bluetooth*, 654 F.3d at 939.

1998) (noting that in injunctive relief cases, "courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof"); *Harsch v. Eisenberg*, 956 F.2d 651, 663 (7th Cir. 1992) ("the lodestar approach is best in cases with substantial injunctive or precedent-creating components") (quoting *Kirchoff v. Flynn*, 786 F.2d 320, 328 (7th Cir. 1986)). Here, unlike *Bluetooth*, Plaintiffs have submitted the report of an expert economist who has valued the injunctive relief, limited to just the initial 30-month period, at approximately $21.7 million for current class members and $46.2 million for all consumers. (Reutter Rep. (Ex. S) at ¶12). Thus, the injunctive relief alone supports the reasonableness of the settlement and agreed-to fees.

*Bluetooth* is thus easily distinguished from this case, not only because the value of the injunctive relief has been established by Dr. Reutter, but also because Class Counsels' fee applications provide complete information from which the lodestar can be calculated. The district court in *Bluetooth* did not calculate the lodestar, which the Ninth Circuit held to be error because "a defendant's advance agreement not to object cannot relieve the district court of its duty to assess fully the reasonableness of the fee request." *Bluetooth*, 654 F.3d at 943. That is clearly not the case here, where Class Counsel has provided the Court with sufficient information from which it can calculate the lodestar and thereby determine that the requested fee is reasonable.

## CONCLUSION

In conclusion, and based on the foregoing reasons and those set forth in the Parties' Joint Response to Objections, Plaintiffs hereby request that all objections be overruled.

Dated: September 4, 2013

By: /s/ Stewart M. Weltman
Stewart M. Weltman
STEWART M. WELTMAN, LLC

11

53 W. Jackson, Suite 364
Chicago, Illinois 60604
Telephone: (312) 588-5033
(Of Counsel: Levin Fishbein Sedran & Berman)

Of Counsel:
Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Rd., Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100

*Attorneys for Plaintiffs Nick Pearson, Francisco
Padilla, Cecilia Linares, Augustina Blanco, and
Abel Gonzalez*

Peter N. Freiberg (admitted pro hac vice)
Jeffrey I. Carton (admitted pro hac vice)
DENLEA & CARTON LLP
One North Broadway, Suite 509
White Plains, New York 10601
Telephone:  (914) 920-7400

*Attorneys for Plaintiff Richard Jennings*

12

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2013, a true and correct copy of the following document was electronically filed and served on all counsel of record in this action who are deemed to have consented to electronic service via the Court's CM/ECF system: **Plaintiffs' Response to Objections.**

I also certify that the foregoing document is being served by U.S. Mail this day on all counsel of record or *pro se* parties identified below who are not authorized to receive electronically Notices of Electronic Filing.

C. Jane Radlinski
309 E. Church Street
Jacksonville, FL 32202-2725
(904) 633-2699
*Pro se* Objector

John Michael Buckley
370 Canyon Spring Dr.
Rio Vista, CA 94571
(707) 374-3853
*Pro se* Objector

Peggy Thomas
2109 N.W. 12th Avenue
Ft. Lauderdale, FL 33311
(954) 761-1589
*Pro se* Objector

Simone Thomas
2109 N.W. 12th Avenue
Ft. Lauderdale, FL 33311
(305) 903-6935
*Pro se* Objector

Rhonda L. Paulson
13383 E. Marie Creek Road
Couer d'Alene, ID 83814
*Pro se* Objector

Donald Charles Koneval
8314 Manorford Drive
Parma, OH 44129-5309
(440) 842-6232
*Pro se* Objector

Anthony Leardi
1813 Renwick Street
Bethlehem, PA 18017
(610) 865-7821
*Pro se* Objector

Joseph Darrell Palmer
Law Office of Darrell Palmer PC
603 N. Highway 101, Suite A
Solana Beach, CA 92075
(858) 792-5600
Attorney for Objectors Kathleen McNeal and Alison
Paul

13

Melissa A. Holyoak
Center for Class Action
Fairness
1718 M Street NW, No. 236
Washington, DC 20036
(573) 823-5377
Attorney for Objector Ted
Frank

Jonathan E. Fortman #40319
250 Saint Catherine Street
Florissant, Missouri 63031
(314) 522-2312
Attorney for Objector Pamela Easton

Steve A. Miller
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
(303) 892-9933
Attorney for Objector Pamela
Easton

Maureen Connors (0074094OH)
6625 Pearl Road
Parma Heights, OH 44130
(216) 640-9860
Attorney for Objector Pamela Easton

John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd.
St. Louis, MO 63111
(314) 631-3883
Attorney for Objector Pamela
Easton

14