**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No. 11-CV-07972 |
| | CLASS ACTION |
| Plaintiffs, | Hon. James B. Zagel |
| v. | |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation | |
| Defendants. | |
| THEODORE H. FRANK, | |
| Objector. | |

---

**OBJECTOR THEODORE H. FRANK'S MOTION TO UNSEAL AND
MEMORANDUM OF LAW IN SUPPORT**

---

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorneys for Objector Theodore H. Frank*

## INTRODUCTION

On August 1, 2013, Objector Theodore H. Frank filed an objection to the class settlement arguing, *inter alia*, that the proposed injunctive relief of temporary labeling changes did not provide a compensable benefit to the class justifying attorneys' fees. (*See* Dkt. 95 at 10-11 n.6; *see also* Dkt. 105 at 2.) On September 4, 2013, plaintiffs filed their response to objections and their motion for final approval in which they argued that based on estimations of purported expert economist Dr. Keith Reutter, the injunctive relief is valued at "$21.7 million to current Class Members" and "$46.2 million to all consumers", and the potential compensatory benefit is valued at $14.2 to $27.3 million.[1] (*See* Dkt. 120 at 7; Dkt. 121 at 44.) Of course how the purported changes benefit non-class members is wholly irrelevant in analyzing the fairness of the settlement and in awarding attorneys' fees. The settling parties proffer Dr. Reutter's injunctive valuation based on the theory that class members will benefit from a "new lower price and reduced sales volume" in their ***future*** purchases. *See* Dr. Reutter Report (Dkt. 113-20 at 6). Plaintiffs' settlement valuation wrongly assumes that *future*

---

[1] The settling parties argue that the court need only consider *potential* class recovery and not actual recovery under *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). *See* Joint Response (Dkt. 113 at 6). The parties' reliance on *Boeing v. Van Gemert*, 444 U.S. 472 (1980), is inappropriate. *Boeing* was superseded by the 2003 amendments to Federal Rule of Civil Procedure 23, which created Rule 23(h). *See* Samuel Isaacharoff, *The Governance Problem in Aggregate Litigation*, 81 Fordham L. Rev. 3165, 3171-72 (2013) (describing *Boeing* as marking an "older line of cases" that eventually "prompted legislative rejection of compensating lawyers on the face value of the settlement, regardless of the take-up rate of the benefits by class members"). The amendments reflect common-sense intuitions: attorneys' fees should be tied directly to what clients receive, and permitting a class member to fill out a claim form in order to receive a check simply is not equivalent to sending that class member a check directly. It is therefore not appropriate to award fees based on a speculative, maximized estimate of potential claims, but instead, any fee award should be based on what the class *actually* receives. *See In re Baby Products Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013) ("[T]he actual benefit provided to the class is an important consideration when determining attorneys' fees.").

Even before Rule 23(h), *Boeing* never had application where there is no fixed common fund and each member of the class has no "undisputed and mathematically ascertainable claim" to a set piece of the "lumpsum judgment," *Strong v. BellSouth Telcoms.*, 137 F.3d 844, 852 (5th Cir. 1998). Given there is no litigated judgment here, no true common fund with a fixed maximum, no accounting of class members or their claim entitlements, even before Rule 23(h) and the Class Action Fairness Act, *Boeing* would have had no application here.

---

labeling changes can compensate class members for their *past* injuries. *See Synfuel Techs. Inc v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries."); *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (defendant's injunctive agreement not to use abusive debt collection letter is a "gain" of "nothing" for class members).

Still, despite the theoretical irrelevance of the Reutter Report, plaintiffs' introduction of it flies in the face of due process and Rule 23. In his objection, Frank argued that the settlement's motion schedule violated Rule 23(h) because plaintiffs' fee motion was due two weeks after the August 1, 2013 objection deadline. *See* Frank Objection (Dkt. 95 at 5).[2] "The plain text of the rule requires a district court to set the deadline for objections to counsel's fee request on a date after the motion and documents supporting it have been filed." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). The actual value of the class benefit is critical in assessing attorneys' fees and settlement fairness. *E.g., Synfuel*, 463 F.3d at 654 (reversing where district court "did not attempt to quantify…even the overall value of the settlement offer to class members."); *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) (reversing and remanding after district court failed to make comparison between attorney award and value of settlement benefit to class); *In re GMC Pick-Up*, 55 F.3d at 822 ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees."). Plaintiffs' submission of the purported settlement valuation (upon which fees will be based) comes over a month after the objection deadline. While the injunctive relief should be valued at zero in awarding fees because it does not compensate class members' past injuries, *see Synfuel*, 463 F.3d at 654, and while the direct benefit should be valued at what the class members *actually* receive (amount of claims paid), it is a violation of Rule 23(h) and the adversarial norms of constitutional notice for plaintiffs to present such purported valuations after the objection deadline.

---

[2] On August 8, 2013, after the objection deadline, the Court extended the deadline for the fee application to September 4, 2013. *See* Order (Dkt. 102).

The settling parties filed motions to seal portions of their Joint Response to Objections, Plaintiffs' Response to Objections, and Plaintiffs' Memorandum of Law in Support of Final Approval. (*See* Dkts. 109, 118, 122). The motions to seal sought to include redacted versions of several exhibits including a redacted version of Dr. Reutter's Report. *See id.* The motions to seal permitted objectors to review unredacted versions of the sealed information upon execution of a Confidentiality Undertaking. (*See* Dkt. 109 at 2; Dkt. 118 at 2; Dkt. 122 at 2.)[3] The motions to seal deprived absent class members of their due process rights and improperly sought to seal information on which the settlement valuation is based. (*See* Dkt. Nos. 109, 118 and 122.) On September 11, 2013, the Court granted the motions to seal. (*See* Dkt. 129.) As further explained below, the motions to seal failed to satisfy both the heavy burden required by the First Amendment, federal common law and Local Rule 26.2. Therefore, the redacted information should be unsealed.

## ARGUMENT

### Settling Parties Did Not Satisfy their Heavy Burden for Sealing of the Reutter Report and the Other Redacted Information.

There is a well-settled "presumption" of public right of access to judicial proceedings and records. *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). "This right is derived from the common-law principle that courts are public institutions that operate openly—a principle codified at 28 U.S.C. § 452—and judicially imposed limitations on this right are subject to the First Amendment." *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) (citing *Globe Newspaper Co. v. Super. Ct. for Norfolk County*, 457 U.S. 596, 603-06 (1982)). As Judge Easterbrook states in *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2002):

> Even disputes about claims of national security are litigated in the open. Briefs in the Pentagon Papers case, *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), and the hydrogen bomb plans case, *United States v. Progressive, Inc.*, 467 F.Supp. 990, rehearing denied, 486 F.Supp. 5 (W.D.Wis.), appeal dismissed, 610 F.2d 819 (7th Cir.1979), were available to the press. ... When [parties] call on the courts, they must accept the openness that goes with subsidized dispute

---

[3] Objector Frank did not execute a Confidentiality Undertaking in order not to waive any argument regarding the impropriety of the motions to seal.

resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property, *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 27-29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *In re Memorial Hospital of Iowa County, Inc.*, 862 F.2d 1299, 1302-03 (7th Cir.1988), and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.

Local Rule 26.2 provides that "[t]he court may for good cause shown enter an order directing that one or more documents be filed under seal." N.D. Ill. L. R. 26.2(b). Demonstrating good cause to overcome the strong presumption of public access is limited to very few categories of information: "In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret…." *Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002). Indeed, access to the Reutter Report and other redacted information the settling parties sought to seal is particularly important because such information was filed in support of the parties' responses to the objections and motion for final approval of the settlement. *See In re Specht,* 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the ***disposition of federal litigation*** are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality.") (emphasis added). Because the parties did not demonstrate that the sealing of such information overcomes the strong presumptive right to access, the information should be unsealed.

A.    **The Settling Parties Did Not Prove that the Sealed Information Was a Trade Secret or How Disclosure Would Cause Harm Justifying Secrecy.**

To overcome the strong common law presumption of access, the party requesting sealing has the burden of showing cause and must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Baxter Int'l*, 297 F.3d at 548. In *Baxter*, the Seventh Circuit denied a motion to place documents under seal and noted the many questions left unanswered:

So does any of these documents contain a trade secret or something comparable whose economic value depends on its secrecy? The parties' joint motion does not make such an argument. Instead the parties again serve up a bald assertion that confidentiality promotes their business interests. Here is a representative sample; not one word of justification has been omitted:

> Five of the documents include a copy of a confidential licensing agreement between Abbott and Maruishi and/or certain references to that agreement. That licensing agreement is, by its terms, confidential. The terms of that agreement, if made public, could also harm Abbott's competitive position.

> Beyond asserting that the document must be kept confidential because we say so (the "agreement is, by its terms, confidential"), this contends only that disclosure "could ... harm Abbott's competitive position." How? Not explained. Why is this sort of harm (whatever it may be) a legal justification for secrecy in litigation? Not explained. Why is the fact that some other document contains references to a license sufficient to conceal the referring document? Not explained. … So all we have is ukase. Indeed, this joint motion – filed by two of the nation's premier law firms (Sidley Austin Brown & Wood for Baxter, Winston & Strawn for Abbott) – does not cite a single statute, rule, or opinion, although the prior motion's denial stressed the need for detailed analysis.

*Baxter Int'l,* 297 F.3d at 547; *see also Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000) ("[c]alling [the information] confidential does not make it a trade secret").

This case is no different. Like *Baxter*, the motions to seal in this case contain the same vague description and provide no legal support:

> The Parties have redacted portions of the Joint Response to Objections and portions of Exhibits B, J, S, and Z thereto to preserve the confidentiality of sales data and marketing information that belongs to Defendants and/or their business associates. This information is, in some cases, subject to a confidentiality agreement with a third party and, in all cases, information that, if disclosed publicly, would detrimentally affect Defendants' competitive position in the market.

*See* Motion for Leave to File Joint Response to Objections and Exhibits Thereto Under Seal (Dkt. 109) at 1-2; *see also* Plaintiffs' Motion to File Memo in Support of Final Approval Under Seal (Dkt. 122) at 1-2; Motion for Leave to File Plaintiffs' Response to Objections Thereto Under Seal (Dkt. 118) at 1.[4] And like *Baxter*, the motions to seal leave many unanswered questions: Is any of the

---

[4] Although the motions to seal describe the redacted information as "sales data and marketing information," *see* Dkts. 109, 118, 122, the settling parties have also inexplicably redacted the names of the over 1600 class

redacted information a trade secret or something comparable whose economic value depends on its secrecy? How could disclosure harm defendants' competitive position? Why is this harm a legal justification for secrecy in litigation?

Even when both parties jointly move to seal, the court must make an independent determination with specific findings that the parties have met their burden; this duty is akin to the court's fiduciary obligations in reviewing a proposed settlement under Rule 23(e). *Jepson, Inc. v. Makita Elec. Works*, 30 F.3d 854, 858-59 (7th Cir. 1994). The parties did not satisfy the specificity requirements and their heavy burden for sealing.

**B.     Access to the Unredacted Reutter Report is Particularly Important to Protect the Class Members.**

The need for public access is especially important in the class action setting. The Third Circuit explained the importance in *In re Cendant Corp.*:

> The right of public access is particularly compelling here, because many members of the "public" are also plaintiffs in the class action. Accordingly, all the reasons we discussed in *Littlejohn* for the right of access to public records apply with even greater force here. *See* p. 10, *supra*. Protecting the access right in class actions "promotes [class members'] confidence" in the administration of the case. *Littlejohn*, 851 F.2d at 678. Additionally, the right of access diminishes the possibility that "injustice, incompetence, perjury, [or] fraud" will be perpetrated against those class members who have some stake in the case but are not at the forefront of the litigation. *Id.* Finally, openness of class actions provides class members with "a more complete understanding of the [class action process] and a better perception of its fairness." *Id.*

260 F.3d 183, 193 (3d Cir. 2001).

Modern Rule 23 enshrines in various provisions, the sacrosanct and plenary rights of class members to notice and the opportunity to object. *See* Fed. R. Civ. P. 23(c)(2); (d)(1)(B); (e)(1); (e)(5); (h)(1); (h)(2). It also espouses a preference against secrecy. *See* Fed. R. Civ. P. 23(e)(3) (requiring identification of any secret compacts in connection with a settlement). But even before these 2003

---

members who excluded themselves from this action, *see* Affidavit of Michael Hammer (Dkts. 113-2 at Exhibit D).

amendments to Rule 23, the Seventh Circuit recognized the importance of class members' access in connection with class counsel's fee application:

> To begin with, we disapprove the practice (a practice we had never heard of and can find no case law concerning) of encouraging or permitting the submission of fee applications in camera. In the unlikely event that some confidential information is contained in the applications, that information can be whited out. *To conceal the applications and in particular their bottom line paralyzes objectors*, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 192 (3d Cir. 2000); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1803, pp. 510-11 (2d ed. 1986).

*Reynolds v. Benefit National Bank* 288 F.3d 277, 286 (7th Cir. 2002).

Here, the motions to seal deprived class members from fully analyzing the purported value of the injunctive relief, a key disputed issue. The class members cannot fully assess the adequacy and fairness of the settlement, as well as class counsel's fee application, if deprived of such information.

## CONCLUSION

The settling parties' motions to seal (Dkts. 109, 118, 122) did not satisfy the heavy burden of demonstrating that the redacted information should be sealed. Accordingly, Objector Frank respectfully requests the Court to unseal the redacted information filed in the Joint Response to Objections (Dkt. 113); Plaintiffs' Response to Objections (Dkt. 120); and Plaintiffs' Memorandum in Support of Final Approval (Dkt. 121).

In the alternative, the parties can choose to withdraw their pleadings if they feel the cost of the exposure of the information does not justify the litigation benefit. Because this motion is noticed for the same day as the final fairness hearing, if the Court unseals the redacted information, Objector Frank respectfully requests an opportunity after the fairness hearing to respond to such information.

Dated: September 23, 2013.  <u>/s/ Melissa A. Holyoak</u>

          Melissa A. Holyoak, (DC Bar No. 487759)
          CENTER FOR CLASS ACTION FAIRNESS
          1718 M Street NW, No. 236
          Washington, DC 20036
          Phone: (573) 823-5377
          Email: melissaholyoak@gmail.com

          *Attorneys for Theodore H. Frank*

## CERTIFICATE OF SERVICE

The undersigned certifies she electronically filed the foregoing Motion to Unseal and Memo in Support via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via First-Class mail a copy of this Motion to Unseal and Memo in Support upon the following:

| |
|---|
| Peggy Thomas<br>Simone Thomas<br>2109 N.W. 12th Avenue<br>Ft. Lauderdale, FL 33311 |
| Hon. James B. Zagel<br>United States District Court for the Northern District of Illinois<br>Everett McKinley Dirksen United States Courthouse<br>Chambers 2588<br>219 South Dearborn Street<br>Chicago, IL 60604 |

Dated: September 23, 2013.

/s/ Melissa A. Holyoak