**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation <br><br> Defendants. | Case No. 11-CV-07972 <br><br> <u>CLASS ACTION</u> <br><br> Hon. James B. Zagel |
| THEODORE H. FRANK, <br><br> Objector. | |

**OBJECTOR THEODORE H. FRANK'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND EXPENSES, AND INCENTIVE AWARDS**

Melissa A. Holyoak
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorneys for Objector Theodore H. Frank*

## INTRODUCTION

On October 4, 2013, the Court held a fairness hearing regarding the fairness of the settlement and the requested attorneys' fees. At the hearing, defendants' counsel argued that the objections related only to the attorneys' fee request and that the court should proceed to enter final approval. This is not true. Objector Frank objected that the settlement's *structure* was impermissible because it allocated 70% of the constructive common fund to class counsel; such disproportion was merely one of the settlement's numerous signs of self-dealing. *See* Frank Objection (Dkt. 95) at 9-19.

Indeed, Objector Frank emphasized at the fairness hearing the extent of the disproportionate allocation that had been revealed in the Parties' Joint Response to Objections. The Parties' Joint Response reflected that a total of 19,593 claim forms had been received as of August 29, 2013. *See* Affidavit of Michael E. Hamer (Dkt. 113-2). A generous estimate results in *actual* class benefit of $500,000[1], *cy pres* award of $1.5 million and $4.5 million to class counsel. These ratios are *worse* than those found in the settlement rejected in *In re Baby Products Antitrust Lit.*, 708 F.3d 163, 169-70 (3d Cir. 2013). There, class counsel negotiated a settlement structure that ultimately resulted in a potential allocation of $14 million in fees and expenses to class counsel, $18.5 million to *cy pres* (less administrative expenses), and only $3 million to the class. *Id.* at 169-170. The district court failed to consider the disproportion between the $14 million and the $3 million the class received

---

[1] Those class members without proof of purchase are entitled to $3 per product, up to a maximum of 4 bottles or $12. Settlement Agreement ¶ 17(c). Those class members with proof of purchase are entitled to $5 per product, up to a maximum of 10 bottles or $50. Settlement ¶ 17(b). If claims do not reach $2 million, claims will be doubled (for claimants with no proof of purchase) or tripled (for claimants with proof of purchase). Settlement ¶ 17(d)(i) & (d)(ii). As this Court recognized at the fairness hearing, consumers do not typically maintain receipts for such low amounts. The vast majority of such claims will likely include class members without proof of purchase. Assuming 19,000 of the claimants have no proof of purchase and submit the maximum $12 claim ($228,000) and the remaining 1,000 claimants with proof of purchase submit an unlikely $20 claim ($20,000), and those claims are then doubled ($456,000) and tripled ($60,000), respectively, claims would total $516,000. If payments to class members remain less than $2 million, defendants will remit the difference to the third-party Orthopaedic Research and Education Foundation, bringing total payments to $2 million. Settlement ¶ 17(d)(iii). Accordingly, based on claims received, it is likely that the class will *actually* receive $500,000 and $1.5 million will go to *cy pres*.

under the settlement's claims process; the settlement approval was reversed because "class counsel, and not their client, [were] the foremost beneficiaries of the settlement." *Id.* at 179. Here too, the primary beneficiaries are class counsel, who will receive ***nine times*** what the class will actually receive.

To justify the disproportionate fee request, class counsel asserts that the Court should take into account the alleged estimated value of the injunctive relief, i.e., temporary labeling changes. At the fairness hearing, the Court requested additional information regarding the length of time required to determine the *actual* value of such labeling changes. In Plaintiffs' Supplemental Memo, plaintiffs argue that the actual economic impact of the changes cannot be measured and the delay/cost of any such study outweighs the benefit, that the actual value is irrelevant because the injunctive relief satisfies a social goal, and that the injunctive relief need not be valued for an award of attorneys' fees. *See* Pls. Supp. Memo (Dkt. 137) at 1-2, 7. Plaintiffs' arguments are both factually and legally untenable.

As an initial matter, plaintiffs' argument that the economic benefit cannot be measured *after* the labeling changes are actually implemented undermines any possibility that such changes could be accurately estimated *prior* to such implementation. Further, any social value that future labeling changes may provide is not relevant because the court must analyze the benefit to *class members*—the clients of class counsel—and not to future customers for purposes of awarding attorneys' fees. *See Synfuel Techs. Inc v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries.") Finally, courts have rejected the notion that the value of the injunctive relief need not be determined; the value of the class benefit is critical for purposes of awarding attorneys' fees. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943-44 (9th Cir. 2011) (reversing and remanding after district court failed to make comparison between attorney award and value of injunctive relief to class).

# ARGUMENT

**I.     The Injunctive Relief is Not a Class Benefit and Its Purported Value Cannot be Accurately Ascertained.**

The proposed injunctive relief—temporary labeling changes—is not a class benefit because it will only benefit *future* purchasers of the Glucosamine products. Seventh Circuit law makes clear that such relief is not a compensable benefit that justifies attorneys' fees: "It is future customers who are not plaintiffs in this suit who will reap most of the benefit from these changes. The class complaint sought [money damages]. The fairness of the settlement must be evaluated primarily based on how it compensates class members for these past injuries." *Synfuel*, 463 F.3d at 654; *Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880 (7th Cir. 2000) (defendant's injunctive agreement not to use abusive debt collection letter is a "gain" of "nothing" for class members).

Even if the injunctive relief could be considered a class benefit, however, plaintiffs' purported valuation is unsupported and implausible. The practice of inventing fictive valuations of inestimable injunctive relief is a recurring, well-chronicled and particularly pestilent problem of class action settlement proceedings. *E.g., In re Oracle Secs. Litig.*, 132 F.R.D. 538, 544-45 (N.D. Cal. 1990) (opinion of Walker, J.) (referring to injunctive relief "expert valued at some fictitious figure" coupled with "arrangements to pay plaintiffs' lawyers their fees" to be the "classic manifestation" of the class-action agency problem). Recognizing the problem, the Ninth Circuit limited the inclusion of injunctive relief for purposes of awarding fees:

> Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund. We hold, therefore, that only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be ***accurately ascertained*** may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees.

*Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003) (emphasis added). In this case, plaintiffs provided specific valuations of the injunctive relief in support of final approval. *See* Pls. Memo in Support of Final Approval (Dkt. 121) at 20. But when pressed by the Court on how to ascertain the *actual* value

of the labeling changes, Plaintiffs now argue that it would be unfeasible, likely because the actual value would reflect the fallacy of the fictive estimations.

Plaintiffs previously asserted that based on estimations of purported expert economist Dr. Keith Reutter, the injunctive relief is valued at "$21.7 million to current Class Members" and "$46.2 million to all consumers" for a 30-month period. *See* Dkt. 120 at 7; Dkt. 121 at 44. Plaintiffs described the purported expert's methodology:

> Dr. Reutter concluded that consumers who were previously enticed by the rebuilds cartilage message will no longer be misled by those representations and therefore will refrain from buying the Covered Products, resulting in a reduction in the sales volume for the products. Relying upon these contemporaneous documents, it is Dr. Reutter's opinion that the removal of these key marketing messages will result in a drop in demand and also result in consumer savings, both to current Class Members who are repeat purchasers and future consumers, as a result of a 10% reduction in the pricing of Osteo Bi-Flex and the other Covered Products. See generally Reutter Report, ¶¶ 9-12.

Pls. Memo in Support of Final Approval (Dkt. 121) at 20. In their Supplemental Memo, however, plaintiffs explain that the actual economic impact of the label changes cannot be ascertained because it would require assessment of "confounding economic factors" including "data from various third-party sources such as defendants' competitors and retailers (including their sales, advertising and marketing spending)" and it is unlikely that competing manufacturers or retail outlets would provide such information. Pls. Supp. Memo (Dkt. 137) at 1-2.

Plaintiffs' Supplemental Memo demonstrates that the value of the injunctive relief was not— and cannot—be accurately ascertained: if competitor or retailer data (that is unavailable) is required to accurately assess the economic impact *after* implementing the label changes, such unavailable data was necessary but not included in the original estimation. Accordingly, even if the injunctive relief was a class benefit (which it is not), the value of such relief cannot be accurately ascertained and thus should be excluded for purposes of awarding attorneys' fees.

Plaintiffs' reliance on *In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001) is misplaced. *See* Pls. Supp. Memo (Dkt. 137) at 5-6. Plaintiffs argue that in *Mexico Money*, it was sufficient for the Seventh Circuit to "project out" the injunctive relief in evaluating the potential

benefits. *See id.* at 5. In *Mexico Money*, the court determined that the class benefit was valued between $40 million and $60 million (the amount of the $400 million issued coupons estimated to be redeemed). 267 F.3d at 748. The Seventh Circuit concluded that the $40 to $60 million settlement value (plus whatever value the injunctive relief may have added) was not too low because the class's claims had "only nuisance value." *Id.* at 748-49. The Seventh Circuit did not attempt to value the injunctive relief because it was not necessary to reach its conclusion. *Id.*

More important, the Seventh Circuit's holdings in *Synfuel* and *Mexico Money* do not allow what plaintiffs are requesting here: that a district court utilize an *inaccurate* valuation of injunctive relief (that does not compensate class members' past injuries) to justify a low-value settlement where class counsel is paid *nine times* what the class will receive.

## II. Class Counsel Cannot be Compensated for Any Purported Social Value of the Labeling Changes.

Plaintiffs argue that the label changes accomplish a social goal that can be assigned "great value" in determining the fairness of the settlement and awarding attorneys' fees. Pls. Supp. Memo (Dkt. 137) at 4. While plaintiffs devote pages to justifying why labeling changes matter, *id.* at 2-4, noticeably absent from their Memo is any authority suggesting that attorneys' fees should be awarded based on accomplishment of a "social good." That is because class counsel is not an attorney general representing the public at large. Class counsel have clients: they represent the class members. Class counsel should be compensated for results achieved *for their clients*:

> Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results. Because it is the **class relief** that is both a necessary and a sufficient condition to an award of attorney's fees, it follows that an attorney's fees award can only be 'attributable to,' or the consequence of, the class relief, not the attorney's hard work.

*In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1182 (9th Cir. 2013) (emphasis added). Class members are not indifferent to whether their attorneys (class counsel) have achieved results valuable to the class or results that are merely socially valuable. *Cf. Baby Prods.*, 708 F.3d at 178 ("Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and

class counsel should not be either."). Because class counsel is paid for results achieved for *the class*, class counsel cannot justify a $4.5 million fee award that is *nine times* the $500,000 actual class benefit based on purported "social value" of the injunctive relief.

### III. Class Counsel Cannot be Awarded Attorneys' Fees for Injunctive Relief that is Not Valued.

Plaintiffs contend that it is not necessary to determine the value of the injunctive relief because they can merely be awarded their lodestar. *See* Pls. Supp. Memo (Dkt. 137) at 7. Plaintiffs argue that under *In re Bluetooth Headset Products Liab. Litig.*, 654 F. 3d 935, 941 (9th Cir. 2011), lodestar is appropriate in cases where the relief is primarily injunctive. Pls. Supp. Memo (Dkt. 137) at 7. Plaintiffs' argument contradicts the **key holding** of *Bluetooth*. The *Bluetooth* court reversed the settlement approval because the district court had failed to compare the attorney award with the value of settlement benefit to class. 654 F.3d at 943. The value of the class benefit under the settlement is a critical component in analyzing whether the fee award is disproportionate. *Bluetooth*, 654 F.3d at 943; *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) ("At the very least, the district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees."); *cf. Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (instructing that settlement valuation "must be examined with great care to eliminate the possibility that it serves only the 'self interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious").

In awarding attorneys' fees, the Seventh Circuit requires the court to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). If the court opts to apply a lodestar method, the Seventh Circuit has instructed that "[a]fter establishing the lodestar and multiplier, the judge may find it useful to compare the percentage of the fund to contingent arrangements negotiated in other cases of the same type." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). A percentage-of-recovery cross-check ensures that class counsel do

not receive a disproportionate distribution of the settlement. "Just as the lodestar method can 'confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate,' the percentage-of-recovery method can likewise 'be used to assure that counsel's fee does not dwarf class recovery.'" *Bluetooth.*, 654 F.3d at 945 (9th Cir. 2011) (quoting *In re GMC Pick-Up*, 55 F.3d at 821 n.40). *See also Hensley v. Eckerhart*, 461 U.S. 424, 434-37 (1983) (lodestar-based fee awards should be calibrated downward where the degree of success is relatively small).

The degree of success is the *actual* benefit received by the class because of class counsel's efforts, not some hypothetical benefit. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 286 (7th Cir. 2002) ("class counsel's compensation must be proportioned to the *incremental* benefits they confer on the class" (emphasis in original)); *cf. In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011) (holding that class representatives who permit class counsel to bring class litigation to benefit themselves, rather than their putative class clients, cannot meet adequacy requirements). Put simply, "courts need to consider the level of **direct benefit** provided to the class in calculating attorneys' fees." *Baby Prods.*, 708 F.3d at 180 n.14 (emphasis added). The reason for the need for an award proportionate to the *actual* recovery of the class is to appropriately incentivize class counsel. If class counsel's fees are determined simply for working, then class counsel will have no incentive to ensure that they have "adequately prioritize[d] direct benefit to the class" in the settlement. *Id.* at 178-79.

## CONCLUSION

The Court should deny approval of the settlement because the foremost beneficiaries are class counsel who would consume 70% of the constructive common fund. The class counsel fee award cannot be justified by the injunctive relief because the injunctive relief does not provide a benefit to class members and because the injunctive relief cannot be accurately ascertained.

Dated: November 15, 2013.    /s/ Melissa A. Holyoak
                                      Melissa A. Holyoak, (DC Bar No. 487759)
                                      CENTER FOR CLASS ACTION FAIRNESS
                                      1718 M Street NW, No. 236
                                      Washington, DC 20036
                                      Phone: (573) 823-5377
                                      Email: melissaholyoak@gmail.com

                                      *Attorneys for Theodore H. Frank*

## CERTIFICATE OF SERVICE

The undersigned certifies she electronically filed the foregoing Response to Plaintiffs' Supplemental Memo via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally she caused to be served via First-Class mail a copy of this Motion to Unseal and Memo in Support upon the following:

| |
|---|
| Peggy Thomas<br>Simone Thomas<br>2109 N.W. 12th Avenue<br>Ft. Lauderdale, FL 33311 |
| Hon. James B. Zagel<br>United States District Court for the Northern District of Illinois<br>Everett McKinley Dirksen United States Courthouse<br>Chambers 2588<br>219 South Dearborn Street<br>Chicago, IL 60604 |

Dated: November 15, 2013.

/s/ Melissa A. Holyoak