**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No.: 11 CV 07972 |
| Plaintiffs, | <u>CLASS ACTION</u> |
| v. | **Judge James B. Zagel** |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; and TARGET CORPORATION, a Minnesota Corporation, | |
| Defendants. | |

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR**</u>
<u>**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**</u>

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

PROCEDURAL HISTORY ............................................................................................... 3

THE PROPOSED SETTLEMENT .................................................................................... 6

   A.   Certification of the Proposed Settlement Class ...................................................... 6

   B.   Class Relief ............................................................................................................. 7
       1.   Monetary Relief - Claims Paid To Class Members ....................................... 7
       2.   Injunctive Relief ............................................................................................ 8

   C.   Incentive Awards to Plaintiffs/Class Representatives ........................................... 8

   D.   Attorneys' Fees and Expenses ............................................................................... 9

   E.   Notice and Administration Costs ........................................................................... 9

THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED. ........................ 9

   A.   Numerosity — Federal Rule of Civil Procedure 23(a). ...................................... 10

   B.   Commonality — Federal Rule of Civil Procedure 23(a)(2). .............................. 11

   C.   Typicality — Federal Rule of Civil Procedure 23(a)(3). ................................... 13

   D.   Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4)....... 13

   E.   Requirements of Federal Rule of Civil Procedure 23(b)(3)................................ 15

THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, ADEQUATE AND REASONABLE. ........................................................................................................ 16

   A.   Relative Strength of Plaintiffs' Claims ............................................................... 18

   B.   Complexity and Length of Continued Litigation. ............................................... 20

   C.   Stage of Proceedings and Discovery Completed. ............................................... 21

   D.   The Settlement Was Negotiated at Arm's-Length. ............................................. 21

THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED. ....................................................................................................................... 22

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Allen v. City of Chicago*, 828 F. Supp. 543 (N.D. Ill. 1993) ......................................................... 11

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................... 9, 10, 15

*Armstrong v. Board of School Directors of the City of Milwaukee*,
    616 F. 2d 305 (7th Cir. 1980) ............................................................. 16, 17, 18

*Butler v. Sears, Roebuck & Co.*,
    Nos. 11-8029, 12-8030, 2012 WL 5476831 (7th Cir. Nov. 13, 2012) ............................ 16

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2005) ................................................................. 24

*Cotton v. Hinton*, 559 F. 2d 1326 (5th Cir. 1977) ........................................................................ 16

*De La Fuente v. Stokely-Van Camp., Inc.*, 713 F.2d 225 (7th Cir. 1983) .................................... 13

*Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483, 429 N.E.2d 1267 (Ill. App. 1981) ................... 19

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F. 2d 884 (1985) .................................................... 16

*Felzen v. Adreas*, 134 F. 3d 873 (7th Cir. 1998) ......................................................................... 16

*Fournigault v. Independence One Mortgage Corp.,* 234 F.R.D. 641 (N.D. Ill. 2006) ................ 15

*Freeman v. Berge*, 68 Fed. App'x 738 (7th Cir. 2003) ................................................................ 16

*Gaspar v. Linvatec Corp.,* 167 F.R.D. 51 (N.D. Ill. 1996) ......................................................... 13

*Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) .............................. 14

*In re AT&T Mobility Wireless Data Services Sales Litigation*,
    270 F.R.D. 330 (N.D. Ill. 2010) ................................................................... 14, 15, 18

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 (S.D.Fla. 2011) .................................. 22

*In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ........................................................................................... 22

*In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*,
    280 F.R.D. 362 (N.D. Ill. 2011) .................................................................................... 24

*In Re Mexico Money Transfer Litigation (Western Union and Valuta),*
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......................................................................... 16

*In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563 (N.D. Ill. 2004) ............................................. 13

*Isby v. Bayh*, 75 F. 3d 1191 (7th Cir. 1996) ...................................................................... 16, 18, 21

*Kattar v. Demoulas*, 433 Mass. 1, 739 N.E.2d 246 (Mass. 2000) .................................................. 19

*Kaufman v. Am. Exp. Travel Related Services Co., Inc.*, 264 F.R.D. 438 (N.D. Ill. 2009) .... 23, 24

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ............................................................................ 11

*Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) ................................................................... 19

*Levitan v. McCoy*, No. 00-C5096, 2003 WL 1720047 (N.D.Ill. March 28, 2003)....................... 10

*Maxwell v. Arrow Fin. Servs., LLC*,
    No. 03 C 1995, 2004 WL 719278 (N.D. Ill. March 31, 2004) ......................................... 10

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) .............................................. 24, 25

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................... 9

*Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383 (N.D. Ill. 2006)............................................. 10

*Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424 (N.D. Ill. 2003)............................. 13

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014)........................................................ 23

*Rosario v. Livaditis*, 963 F.3d 1013 (7th Cir. 1992) ................................................................... 11

*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009)........................................... 11, 13, 14, 15

*Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648 (N.D. Ill. 2006) ............................................. 10

*Smith v. Sprint Communications Co., L.P.*, 37 F. 3d 612 (7th Cir. 2004) ................................... 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)......................... 18

*Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493 (N.D. Ill. 1998) .................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................ 11

*Whitten v. ARS Nat. Services, Inc.*,
    No. 00C6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001)........................................... 11

## Other Authorities

3 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.5 (4th ed. 2002) .. 11

3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20 (4th ed. 2001) ...... 10

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (2002)...................... 18, 22

C.A. Wright, A. Miller & N. Kane,
 FEDERAL PRACTICE AND PROCEDURE § 1762 (2d ed. 1986) ............................................. 10

Federal Rule of Civil Procedure 23 ............................................... 1, 2, 9, 10, 11, 12, 13, 14, 15, 17

MANUAL FOR COMPLEX LITIGATION, § 21.632 (Third) (1995) ...................................................... 13

MANUAL FOR COMPLEX LITIGATION, § 30.41 (Third) (1995)........................................................21

MANUAL FOR COMPLEX LITIGATION, § 30.42 (Third) (1995)....................................................... 25

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Augustina Blanco, Abel Gonzalez, Cecilia Linares, and Francisco Padilla, by their counsel Bonnett, Fairbourn, Friedman & Balint, P.C. and Boodell & Domanskis, LLC; and Plaintiff Richard Jennings, by his counsel Denlea & Carton LLP, respectfully submit this Memorandum in Support of their Unopposed Motion for Preliminary Approval of Class Settlement, and move for an Order: (1) preliminarily approving the April 10, 2015 Settlement Agreement as being fair, reasonable, and adequate; (2) approving the Notice Plan attached as Exhibit B to the Settlement Agreement; (3) setting the date and time of the Fairness Hearing; (4) provisionally certifying the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only ("Settlement Class"); (5) provisionally appointing Plaintiffs as representatives of the Settlement Class; and (6) provisionally appointing Jeffrey I. Carton and Peter N. Freiberg (Denlea & Carton LLP), Elaine A. Ryan (Bonnett, Fairbourn, Friedman & Balint, P.C.), and Stewart M. Weltman (Boodell & Domanskis, LLC), as Class Counsel.

## INTRODUCTION

Plaintiffs Augustina Blanco, Abel Gonzalez, Cecilia Linares, Francisco Padilla, and Richard Jennings ("Plaintiffs") and Defendants NBTY, Inc., Rexall Sundown, Inc., and their affiliates (collectively, "Rexall" or "Defendants") have significantly overhauled their prior attempt to resolve this litigation through a nationwide class action settlement in an effort to obtain litigation repose. Through the extensive efforts of the Hon. Wayne R. Andersen, retired United States District Court Judge, as mediator, the Parties have negotiated a new settlement that provides significant economic redress to class members and addresses the concerns expressed by the Seventh Circuit when it reversed the approval of the previous settlement. The significant aspects of the new settlement include:

1

i.     The settlement is no longer an uncapped settlement with a minimum pay-out. Rather, the settlement requires a $9 million payment by Rexall: $7.5 million will be paid into a Settlement Fund from which Class Members and Class Counsel will be paid, and an additional $1.5 million will be paid for the costs of notice and administration.

ii.     There is no "clear-sailing" agreement whereby Rexall will not object to an award of attorneys' fees up to a certain amount, and Class Counsel has agreed to file their application for fees 21 days prior to the deadline for objections.

iii.     There is no separate fund for attorneys' fees, and therefore there is no "reversion" of un-awarded class counsel fees to Rexall.  Rather, Class Counsel will petition the Court for an award of fees and costs from the Settlement Fund.

iv.     The claims process has been simplified, and class members are entitled to greater compensation.  All Class Members will be entitled to $8 per bottle, up to a maximum of 13 bottles per household (*i.e.*, $104 per household), with no requirement of proof of purchase.  (The earlier settlement provided two tiers of recovery based on whether a class member had proof of purchase, but that distinction has been eliminated.)  The claim form has been simplified, and, as before, does not need to be notarized.

v.     There will likely be only a small, if any *cy pres* payment.  Although the Settlement Agreement provides that left-over monies in the Settlement Fund will be paid to the Orthopedic Research and Education Foundation, the simpler claim process and the increased payments to class members (including the potential *pro rata* increase in payment up to $200 per household) is anticipated to consume the entire Settlement Fund, leaving none for *cy pres*.

vi.     Rexall has agreed to *permanently* remove from its labels any statements, or statements conveying the message, that its products will fix, mend, recondition, rehabilitate,

2

increase, develop, build, repair, rebuild, renew, regrow, add, increase, regenerate, revitalize, or rejuvenate cartilage. This differs from the previous settlement because it is a permanent prohibition. Rexall may make these claims in the future only if it becomes aware of studies or other scientific support for these claims, and is granted relief by the Court to change the labels accordingly.

vii.     The notice of the settlement will again be by direct mail, to between 4.8 million and 5.55 million households, along with robust publication notice. The earlier notice reached approximately 76% of the class members, and the notice of the new settlement will have a similar reach of approximately 74%.

viii.     The Parties have agreed that the fairness hearing will not take place until _after_ the claims deadline, so that the Court will have full knowledge about the claims made prior to considering final approval.

These are significant modifications to the previous settlement, which directly address the issues raised by the Seventh Circuit. The settlement provides fair and adequate compensation to the Class and has every procedural safeguard in place to ensure that it complies with Rule 23(e).

## PROCEDURAL HISTORY

This action is one of several currently pending actions involving various glucosamine and chondroitin products manufactured by Rexall. Rexall manufactures glucosamine joint health dietary supplements sold under its brand names (the most popular of which is Osteo Bi-Flex), or the brand names of its affiliates (including Flex-a-min), and also manufactures private label brands of glucosamine and chondroitin joint health dietary supplement products for retailers such as Costco and Target.

3

The first of the actions was filed on June 14, 2011, *Cardenas, et al. v. NBTY, Inc. et al.*, 2:11-cv-01615-TLN-CKD (E.D. Cal), against NBTY, Inc. and Rexall Sundown, Inc. arising out of the manufacture and sale of the Osteo Bi-Flex line of glucosamine and chondroitin joint health dietary supplement products. The suit originally sought a California-only class but was amended to seek a multi-state class. *Jennings v. Rexall Sundown, Inc.,* 1:11-cv-11488-WGY (D. Mass.), was filed on August 22, 2011, arising out of the manufacture and sale of the Osteo Bi-Flex line of glucosamine and chondroitin joint health dietary supplement products, and seeking a Massachusetts-only class. *Pearson v. Target Corporation*, 1:11-cv-07972 (N.D. Ill.), was filed on October 28, 2011, arising out of Target's sale of its Up & Up line of glucosamine and chondroitin joint health dietary supplement products (manufactured by Rexall for Target) and seeking a multi-state class. *Linares, et al. v. Costco Wholesale, Inc.*, 3:11-cv-0547-MMA-BGS (S.D. Cal.), was filed on November 2, 2011, arising out of Costco's sale of the Kirkland Signature brand of glucosamine and chondroitin joint health dietary supplement products (manufactured by Rexall for Costco) and seeking a California-only class. *Blanco v. CVS Pharmacy, Inc.,* 5:13-cv-00406-JGB-SP (C.D. Cal.), was filed on March 4, 2013, arising out of CVS Pharmacy's sale of certain CVS-brand glucosamine chondroitin dietary supplement products (manufactured by Rexall for CVS) and seeking a California and multi-state class.

The core issues in all of the cases are similar, in that they contest the veracity of similar joint health benefit representations made about the products, all of which are covered by the Settlement Agreement. The suits allege that representations about the products – including most significantly the claim that glucosamine and chondroitin will rebuild or renew cartilage – are false and misleading.

The Settlement Agreement before the Court is the second one that the Parties have reached. At the time of execution of the first Settlement Agreement in 2013, *Linares,* after having survived two rounds of motions to dismiss, was in the midst of class and merits discovery. *Pearson*, after having survived two rounds of motions to dismiss, was also in the midst of class and merits discovery. *Cardenas* was in the midst of the class certification process with the Plaintiffs having filed their opening class certification brief and expert reports, and the Defendants having completed the depositions of Plaintiffs' experts. *Jennings* was on the eve of a pre-class certification "exemplar trial" of the merits of the individual plaintiff's claims, with expert reports, expert depositions, and all discovery completed for both sides. Discovery in both the *Cardenas* and *Jennings* cases, along with the filing of expert reports and expert depositions in those cases, has provided the Plaintiffs and their counsel a fulsome record upon which to base their settlement negotiations.

As a trial date was set for the *Jennings* exemplar trial and class certification papers were filed in *Cardenas,* settlement negotiations began in earnest. After several months of arm's-length negotiations between the Parties, a definitive written settlement was executed by all Parties in mid-April 2013. In the interests of achieving a global resolution of all of these similar cases pending across the United States, the Parties agreed to centralize settlement in this Court.

This Court granted final approval to the previous settlement in January 2014. Objectors pursued an appeal to the Seventh Circuit. In its opinion dated November 19, 2014, the Seventh Circuit reversed the settlement and remanded this matter for further proceedings consistent with its opinion. Promptly following the Seventh Circuit's decision, Plaintiffs and Rexall proceeded to mediation before Judge Andersen, and following intensive and prolonged negotiations with Judge Andersen, reached a settlement that is memorialized in the written Settlement Agreement

5

dated April 10, 2015 (Exhibit 1 hereto). As noted above, the April 10, 2015 Settlement Agreement ("Settlement Agreement" or "Settlement Agmt.") specifically addresses the issues that led to the Seventh Circuit's reversal, and the Parties are now before the Court seeking preliminary approval of the new settlement, which is consistent with the Seventh Circuit's decision.

## THE PROPOSED SETTLEMENT

The proposed settlement provides the following:

### A. Certification of the Proposed Settlement Class

Plaintiffs request that the Court, for the purposes of settlement only, certify a Settlement Class defined as:

> All persons in the U.S. who, during particular time periods and in certain U.S. locations, purchased for personal use and not resale or distribution certain joint health dietary supplements (a) sold by Rexall or any of its affiliates under the brand names of Rexall or its affiliates; or (b) sold under another brand name by a company not affiliated with Rexall and manufactured by (i) Rexall, (ii) any of Rexall's affiliates, or (iii) any entities that manufactured or sold the Covered Products from which Rexall acquired assets or contracts (collectively, "Covered Products").[1]

> Excluded from the Class are (i) Defendants; (ii) retailers of the Covered Products; (iii) the parents, subsidiaries, affiliates, officers, and directors of (i) and (ii); (iv) those who purchased the Covered Products for the purpose of resale or distribution; and (v) those persons who submit valid requests for exclusion from the Settlement Class.

---

[1] The full listing of Covered Products, including their dates of distribution and locations of sale, is set forth in Exhibit A to the Settlement Agreement.

### B.    Class Relief

#### 1.    Monetary Relief - Claims Paid To Class Members

Each Class member shall be entitled to seek monetary compensation.[2]  Rexall is creating a Settlement Fund of $7.5 million, which will be used to pay cash awards to the Class Members, attorneys' fees as awarded by the Court, incentive awards to the Class Representatives as awarded to the Court, and notice and administration costs (but only if notice and administration costs exceed $1.5 million).    After attorneys' fees, incentive awards, and notice and administration costs (if notice and administration costs exceed the $1.5 million Rexall is paying separately) are paid from the Settlement Fund, the balance will be available to the Class as the Net Settlement Fund.  Settlement Agmt. at ¶ 7.

From the Settlement Fund, Class Members will be entitled to receive $8 dollars per bottle of Covered Product, up to a maximum of 13 bottles per household (*i.e.,* up to $104/household).[3] *Id.* at ¶ 8(a).  If these payments exceed the monies available in the Net Settlement Fund, payments will be reduced *pro rata*; conversely, if there are leftover monies available in the Net Settlement Fund subsequent to calculating these payments, the remaining funds will be distributed *pro rata* to claimants, up to a maximum of $200 per household.  *Id.* at ¶ 8(b), (c). Any remaining monies available in the Net Settlement Fund after the *pro rata* increase to $200 per household will be paid to the Orthopaedic Research and Education Foundation, subject to Court approval.[4]  *Id.* at ¶ 8(d).

---

[2] As discussed below, the Class is estimated to be approximately 15 million households.

[3] In the previous settlement, Class Members received $5 per bottle with proof of purchase, up to a maximum 10 bottles, and $3 per bottle without proof of purchase, up to a maximum of four bottles.

[4] There will likely be only a small, if any *cy pres* award.  In the first settlement, 30,245 claims were filed.  Even assuming that only a few additional claims filed, with the pro rata increase up

The claims process has been simplified. Class Members will not be required to submit proof of purchase, but rather will be required only to submit a very simple claim form, which can be submitted on-line or by mail and which does not require notarization. *Id.* at Ex. E (Claim Form). The claim form no longer requires Class Members to identify their purchases by date and product. *Id.* Class Members who filed a claim in connection with the previous settlement may, but are not required to, submit a new claim: Class Members will be entitled to compensation based upon the highest number of bottles that they claimed in their previous claim or in their new claim. *Id.* at ¶ 17(b).

2. <u>Injunctive Relief</u>

The settlement also requires the *permanent* removal of certain labeling claims from all of the Covered Products currently being manufactured or sold by Rexall. *Id.* at ¶ 9. Dozens of different products will be impacted by these label changes. The injunctive relief required by the Settlement prohibits Rexall from making any of the following statements, or statements conveying the same message, on the labels of any of the Covered Products: fixing, mending, reconditioning, rehabilitating, increasing, developing, building, repairing, rebuilding, renewing, regrowing, adding, regenerating, or rejuvenating cartilage.[5] *Id.* at ¶ 9(a).

C. **Incentive Awards to Plaintiffs/Class Representatives**

Subject to Court approval, Defendants agree to pay and will not object to the Court awarding each of the five (5) Plaintiffs/Class Representatives an incentive award of $5,000, to be paid from the Settlement Fund. *Id.* at ¶ 11.

---

to $200 per household, there will very likely be a full distribution of the Net Settlement Fund to the Class Members.

[5] Subsequent to the approval of the Settlement, if Rexall becomes award of studies or other scientific support for any of the prohibited representations, Rexall may seek relief from the Court to change the labels accordingly. Settlement Agmt. at ¶ 9(e).

### D.    Attorneys' Fees and Expenses

Attorneys' fees that are awarded by the Court will be paid from the Settlement Fund. *Id.* at ¶ 10. Plaintiffs and their counsel will petition the Court for an award of attorneys' fees and costs, not to exceed one-third of the Settlement Fund (or $2.5 million). Unlike the previous settlement, there is no separate fund from which attorneys' fees are to be paid, there is no "clear-sailing" provision, the applications for attorneys' fees will be filed prior to the date for objections, and the applications will be based upon a percentage of the Settlement Fund. Furthermore, because there is no separate fund for attorneys' fees, there is no reversion of un-awarded fees to Rexall.

### E.    Notice and Administration Costs

In addition to the Settlement Fund, Rexall has agreed to pay an additional $1.5 million for the cost of notice and administration of the Settlement. Therefore, the funds available to the Class Members will not be diminished by the cost of notice and administration unless the costs of notice and administration exceed the $1.5 million that Rexall is paying separately.

### THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED.

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION, § 21.632, at 320–21 (2004). *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 828 n.6 (1999). Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P.

23(a). Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. Because the case will not be tried, the manageability requirement of Rule 23(b)(3) does not come into play in the context of a settlement class. *Id.* at 620.

In this case, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3). As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b)(3), and therefore, certification is appropriate.

### A. Numerosity — Federal Rule of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). No specific number is required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). *See also* 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, at 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, at *2 (N.D.Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006). The requirement that joinder be impracticable does not mean that joinder is impossible. Rather, it need only be "extremely difficult or inconvenient to join all members of the class." *Levitan v. McCoy*, No. 00-C5096, 2003 WL 1720047 (N.D. Ill, March 28, 2003), at *3 (quoting C.A. Wright, A. Miller & N. Kane, FEDERAL PRACTICE AND PROCEDURE § 1762, at 159 (2d ed. 1986)).

Here, Defendants sold the Covered Products throughout the United States. As reflected in the Notice Plan Submitted by Heffler Claims Group (which is similar to the robust notice plan

employed for the previous settlement), the Settlement Class of purchasers of the Covered Products is reasonably at approximately 15 million households (Ex. B to Settlement Agreement at ¶16). Accordingly, the Class satisfies the numerosity requirement – particularly since class members are geographically dispersed. *See* NEWBERG ON CLASS ACTIONS § 3.5, at 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

**B.     Commonality — Federal Rule of Civil Procedure 23(a)(2).**

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists if a common nucleus of operative fact exists. *Rosario v. Livaditis*, 963 F.3d 1013, 1017 (7th Cir. 1992); *Saltzman v. Pella Corp.,* 257 F.R.D. 471, 478 (N.D. Ill. 2009). "The fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.3d at 1017. "If 'at least one question of law or fact [is] common to the class,' then commonality is typically found." *Tylka v. Gerber Prods. Co.,* 178 F.R.D. 493, 496 (N.D. Ill. 1998) (quoting *Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993)).

Commonality is often found where "defendants have engaged in standardized conduct toward the members of the proposed class." *Whitten v. ARS Nat. Services, Inc.*, No. 00C6080, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)); *Tylka,* 178 F.R.D. at 496-97. *See also Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (stating that "commonality requires that the claims of the class simply depend upon a common contention . . . of such a nature that it is capable of class-wide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

As alleged in Plaintiffs' Second Amended Class Action Complaint, all Settlement Class members share common questions of fact and law that predominate over issues affecting only individual Settlement Class members. The Second Amended Class Action Complaint focuses almost exclusively on Defendants' conduct and questions of Defendants' liability – questions that are common across the entire Class. The alleged common factual and legal issues include:

- Whether the representations or omissions discussed herein that Defendants made about the Covered Products were or are misleading, or likely to deceive;

- Whether Plaintiffs and the Class members were deceived in some manner by Defendants' representations;

- Whether the alleged conduct constitutes violations of the laws asserted herein;

- Whether Plaintiffs and Class members have been injured and the proper measure of their losses as a result of those injuries;

- Whether Plaintiffs and Class members are entitled to an award of compensatory/actual damages; and

- Whether Plaintiffs and the Class are entitled to injunctive, declaratory, or other equitable relief.

For the foregoing reasons, the proposed Settlement Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### C. Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). "The issue of typicality is closely related to the commonality and should be liberally construed." *Pella, supra* at 257 F.R.D. at 479 (citing *De La Fuente v. Stokely-Van Camp., Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Typicality is satisfied if the plaintiff's claims arise from "the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory." *Id. See also Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id. See also De La Fuente,* 713 F.2d at 232; *In re Neopharm, Inc. Secs. Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) ("Typicality does not mean identical ….") (citing *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D. Ill. 1996)).

Here, Plaintiffs and the other Settlement Class Members were all consumers of at least one of the Covered Products, and have alleged that Defendants' common misrepresentations caused them economic injury and damage under state consumer protection laws. Moreover, none of the Plaintiffs is subject to a unique defense or claim that would differentiate them from the rest of the proposed Class. Accordingly, Plaintiffs' claims are typical of the other Settlement Class Members' claims.

### D. Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied where the class representative(s) "(1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does

not have interests antagonistic to those of the class." *Pella,* 257 F.R.D. at 480. *See also Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

Here, Plaintiffs' interests are completely aligned with the interests of the other Settlement Class members — all allege to have been injured by Defendants' conduct. Furthermore, Plaintiffs have no interests antagonistic to the interests of the other Settlement Class members. Plaintiffs' counsel and their firms have decades of experience acting as lead class counsel in numerous consumer fraud class actions and other class actions. See Declarations of Jeffrey I. Carton, Stewart M. Weltman and Elaine A. Ryan (Exhibits 2, 3 and 4 hereto). Moreover, courts find counsel adequate where "they have invested substantial time and resources in [a] case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Wireless Data Services Sales Litigation*, 270 F.R.D. 330, 344 (N.D. Ill. 2010).

Here, proposed Class Counsel engaged in substantial and detailed pre-filing investigation, including research and review of the scientific research regarding glucosamine and chondroitin as well as the other ingredients contained in some of the Covered Products. Moreover, at their own expense, counsel for Plaintiffs, Padilla, Linares, Gonzalez, and Blanco engaged a nationally and internationally regarded expert in the field of osteoarthritis, musculoskeletal pain, and glucosamine and chondroitin, Dr. Thomas J. Schnitzer M.D., Ph.D., of the Northwestern University Feinberg School of Medicine. Declaration of Stewart M. Weltman, at ¶8. Likewise, at their own expense, counsel for Plaintiff Jennings retained Jeremiah Silbert, M.D., a renowned physician retired from Harvard Medical School who has been studying glucosamine for several decades. Declaration of Jeffrey I. Carton, at ¶12. And finally, after the Seventh Circuit reversed the earlier settlement, Class Counsel vigorously negotiated with Defendants to arrive at a

14

settlement that not only addresses the concerns expressed by the Seventh Circuit, but also provides substantial economic relief to the Class Members. Accordingly, both Plaintiffs and their counsel satisfy the adequacy requirement of Rule 23(a)(4).

### E. Requirements of Federal Rule of Civil Procedure 23(b)(3).

In addition to the four requirements of Fed. R. Civ. P. 23(a), Plaintiffs must also satisfy one of the three requirements of Rule 23(b). Here, Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3), and thus must show "that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "'Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts.'" *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Independence One Mortgage Corp.,* 234 F.R.D. 641, 644 (N.D. Ill. 2006)). The predominance requirement "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623.

Here, "Plaintiffs claim that Defendants engaged in standardized conduct that violated laws that are common [to the class], and the class and subclasses will therefore be cohesive." *In re AT&T Mobility*, 270 F.R.D. at 345 (citing *Amchem Prods.,* 521 U.S. at 623). Further, because a settlement class is sought here, the Court need not inquire whether the case, if tried, would present manageability problems. *Smith v. Sprint Communications Co., L.P.,* 37 F. 3d 612, 614 (7th Cir. 2004) (quoting *Amchem Prods.*, 521 U.S. at 591). "Predominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, Nos. 11-8029, 12-8030, 2012 WL 5476831, at *2

15

(7th Cir. Nov. 13, 2012). "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.* In this case, common questions predominate because Defendants' alleged unlawful conduct is *identical* with regard to all members of the proposed Settlement Class. Thus, the predominance requirement and the superiority requirements are satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence and Plaintiffs and the Settlement Class share a common grievance against Defendants. *In Re Mexico Money Transfer Litigation (Western Union and Valuta),* 164 F. Supp. 2d 1002, 1013 (N.D. Ill. 2000).

## THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, ADEQUATE, AND REASONABLE.

The Seventh Circuit has repeatedly recognized the overriding public interest in settling litigation. *See, e.g.*, *Freeman v. Berge*, 68 Fed. App'x 738, 741 (7th Cir. 2003). This is particularly true in class action litigation. *Isby v. Bayh*, 75 F. 3d 1191, 1196 (7th Cir. 1996). ("Federal courts naturally favor the settlement of class action litigation."); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F. 2d 884, 888-89 (1985), *cert. denied*, 48 U.S. 1004 (1986) (noting that there is a general policy favoring voluntary settlements of class action disputes); *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F. 2d 305, 312 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Adreas*, 134 F. 3d 873 (7th Cir. 1998) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Class action settlements minimize the litigation expenses of the parties and reduce the strain such litigation imposes upon already scarce judicial resources. *Armstrong*, 616 F. 2d at 313 (citing *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977)).

16

The Seventh Circuit has held:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong*, 616 F. 2d at 314 (internal citation and footnote omitted).

Thus, the central issue facing the Court at this stage is whether the proposed settlement falls within the range of what ultimately might be approved as fair, reasonable, and adequate, so as to justify providing notice to the Class and scheduling a final hearing. *Id.* The Court is not required at this juncture to make a final determination that the Settlement is fair, reasonable, and adequate, nor will any Class members' substantive rights be prejudiced by preliminary approval. "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies … and appears to fall within the range of possible approval," the Court should grant preliminary approval and direct notice and schedule a final approval hearing. MANUAL FOR COMPLEX LITIGATION, THIRD § 30.41, at 237 (1995).[6]

---

[6] The MANUAL FOR COMPLEX LITIGATION sets forth the procedures for preliminary approval of settlements:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

§ 21.632.

When deciding whether to preliminarily approve a settlement, district courts in this Circuit consider five factors: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT&T Mobility*, 270 F.R.D. at 346 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).[7]  A reviewing court "do[es] not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness," and consider the facts "in the light most favorable to the settlement." *Armstrong*, 616 F.2d at 315.

### A.     Relative Strength of Plaintiffs' Claims

The Seventh Circuit has often stated that the first factor (*i.e.*, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement) "is the most important consideration." *Isby*, 75 F.3d at 1199 (citation omitted).  Here, the Settlement Agreement strikes a compromise that affords fair recompense to class members.  The settlement permits all consumers – even those without proof of purchase – to obtain compensation for approximately 40% of their purchase price for up to 13 purchases.  The notice plan is robust, involving the payment by Defendants of $1.5 million dollars for notice and administration costs and having an anticipated reach of close to 74% of the class members.  (Declaration of Jeanne C. Finnegan, APR, Exhibit B to the Settlement Agreement, at ¶16).

---

[7] *See also* Newberg, at §11.41 (The initial presumption of fairness of a class settlement may be established by showing: (1) that the settlement has been arrived at by arm's length bargaining; (2) that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and (3) that the proponents of the settlement are counsel experienced in similar litigation.).

The Settlement Agreement also provides for meaningful and significant injunctive relief in the form of labeling changes for dozens of different products. All representations regarding the Products' ability to rebuild cartilage have been entirely and permanently eliminated in any form from the Covered Products' labels. The injunctive/labeling relief will require an industry leader in the manufacture and sale of glucosamine and chondroitin products to refrain from claiming that the products will rebuild or renew cartilage, a claim that has been used for over a decade.[8]

To be clear, Plaintiffs believe that their claims are meritorious and are confident of prevailing on the merits, but candidly acknowledge that there are significant hurdles to obtaining a judgment for the full value of the Class Members' claims. First, class certification will be hotly contested by Rexall. Although Plaintiffs believe they can overcome Rexall's arguments, Rexall will likely argue that the Class members -- who primarily purchase from retailers -- cannot be ascertained with any reasonable degree of certainty. Rexall will also argue that individualized issues preclude class certification given the many different reasons why consumers may have purchased the products, different reasons for any perceived ineffectiveness,

---

[8] Consumer protection is the touchstone of all consumer fraud laws. *See, e.g., Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267, 1277 (Ill. App. 1981) (The IFCA sections "clearly expand the consumers' rights beyond those of the common law, and provide broader consumer protection than does the common law action of fraud. There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties.") (citations omitted); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 344 (2011) (California's UCL's "purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services'" and "[i]n service of that purpose, the Legislature framed the UCL's substantive provisions in "'broad, sweeping language'") (citations omitted); *Kattar v. Demoulas*, 433 Mass. 1, 12-13, 739 N.E.2d 246, 257 (Mass. 2000) (Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights.…It mak[es] conduct unlawful which was not unlawful under the common law or any prior statute.…Thus, a cause of action under c. 93A is not dependent on traditional tort or contract law concepts for its definition.") (citations and internal quotations omitted).

different levels of satisfaction with the product, and different prices paid for the products at issue. If class certification is denied, the value of each individual plaintiff's case would be so *de minimis* that continued litigation on an individual basis would be infeasible and essentially end this litigation.

Second, on the merits, Plaintiffs' claims will be subject to a "battle of the experts." Plaintiffs have retained very qualified experts to support their claims that Rexall's representations are scientifically unsupported, but Rexall has also engaged very qualified experts, and there is always the risk that a jury could side with Rexall's experts. The efficacy of these products has been the subject of scientific and medical debate over the last decade, and while Plaintiffs believe that the weight of the scientific evidence is in their favor, as with any trial there is a risk that a jury would side with Defendants.

Given the challenges and difficulties Plaintiffs would face in protracted litigation, the payment of $9 million now (the $7.5 million Settlement Fund and the $1.5 million for costs of notice and administration) by Rexall is certainly within the range of reasonable outcomes.

**B.      Complexity and Length of Continued Litigation.**

Further litigation will require additional discovery as to the merits of the claims, including additional expert disclosures and depositions of experts. This matter is expert-intensive, because much of the proof of Rexall's liability is dependent upon medical/scientific testimony and expert testimony related to consumer purchasing habits. There will be extensive motion practice related to class certification, which will necessitate further class certification discovery, and discovery and motion practice related to class-wide damages. Summary judgment motions are likely, as is appellate practice. This is undoubtedly a complex case, and continued litigation will come at considerable expense to Plaintiffs and to Rexall, and at

significant expense of the limited resources of the Court. Here, as in *Isby,* continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time.

### C.     Stage of Proceedings and Discovery Completed.

Sufficient discovery was had to enable the Parties to engage in meaningful settlement negotiations, both for the previous settlement and this improved settlement. At the time of execution of the first Settlement Agreement in April 2013, *Linares,* after having survived two rounds of motions to dismiss, was in the midst of class and merits discovery. *Pearson*, after having survived two rounds of motions to dismiss, was also in the midst of class and merits discovery. *Cardenas* was in the midst of the class certification process with the Plaintiffs having filed their opening class certification brief and expert reports, and the Defendants having completed the depositions of Plaintiffs' experts. *Jennings* was on the eve of a pre-class certification "exemplar trial" of the merits of the individual plaintiff's claims, with expert reports, expert depositions, and all discovery completed for both sides. Discovery in both the *Cardenas* and *Jennings* cases, along with the filing of expert reports and expert depositions in those cases, had provided Plaintiffs and their counsel a fulsome record upon which to base their settlement negotiations. Clearly, the parties have engaged in sufficient discovery related to the merits (fact and expert) and to the class certification issues to present them with a very balanced and knowing view of settlement.

### D.     The Settlement Was Negotiated at Arm's-Length.

There is an initial presumption of fairness because the settlement is the product of arm's length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *In re General Motors Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55

F.3d 768, 785 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("This preliminary determination establishes an initial presumption of fairness when the court finds that:  (1)  the negotiations occurred at arm's length…. [and] (3) the proponents of the settlement are experienced in similar litigation. . . ."); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.4§§1 at 90 (2002); *Manual for Complex Litigation* (Third) § 30.42 (1995); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D.Fla. 2011).

Upon reversal of the original settlement by the Seventh Circuit, the parties took part in a mediation led by Hon. Wayne R. Andersen on January 7, 2015.  Thereafter, numerous conferences and meetings, both in person and telephonic, were conducted between counsel and the mediator before reaching a final agreement in April 2015.  Judge Andersen has submitted a declaration attesting to the hard-fought nature of the mediation and the strong adversarial positions taken by both sides.  (Declaration of Wayne R. Andersen, Exhibit 5 hereto).

* * * * *

Based upon the foregoing, Plaintiffs respectfully submit that the proposed settlement "falls within the range of what ultimately might be approved as fair, reasonable, and adequate" and that preliminary approval should be granted.

## THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED.

The proposed notice plan is fully compliant with due process in that it informs Class Members of their right to opt-out or exclude themselves from the settlement, appear through their own counsel, object to the terms of the settlement along with the form that the objection must take, the deadlines for opt-out/exclusion or objection, the date of the final approval hearing, the scope of the claims released if a Class member does not opt-out and remains in the Class, and

22

the amount of potential plaintiffs' incentive awards and Class Counsel fees and expense awards. *See* Ex. C to Settlement Agreement. *See, e.g.*, *Kaufman v. Am. Exp. Travel Related Services Co., Inc.*, 264 F.R.D. 438, 445-46 (N.D. Ill. 2009). Additionally, Class Counsel will file their application for attorneys' fees and costs three weeks (21 days) prior to the deadline for Class Members to object to the Settlement (and their application will be posted on the settlement website), thereby unquestionably satisfying Rule 23(h) and *Redman v. Radioshack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).

The proposed settlement class is comprised of approximately 15 million consumer households. *See* "Declaration of Jeanne C. Finegan, APR, Concerning Proposed Class Member Notification Process," attached as Exhibit B to the Settlement Agreement. Heffler Claims Group ("Heffler")[9] will continue as the third-party Settlement Administrator. The media part of the notice plan is based upon an analysis of print publication and the potential internet usage by consumers who may have purchased a glucosamine product. *Id.* at ¶¶21-23. Based upon Heffler's analysis of publications likely to reach the target audience, four national magazines were chosen for publication notice: *National Geographic, People Magazine, Prevention Magazine and Woman's Day*. *Id.* at ¶24. In addition to print notice, notices will be placed in the following Internet sites: Yahoo, AOL, Xaxis, MapQuest, Huffington Post, and NBC New Digest. *Id.* at ¶25. The Notice Plan also will use social media through the use of Facebook. *Id.*

This will be the second time that the Class Members have been notified of a settlement of this case. The previous notice reached approximately 76% of the Class. The notice plan being used for this settlement is similar to the previous notice plan (with which no objectors raised any

---

[9] http://www.heffler.com/services/classaction/.

issue), and is expected to reach 74% of the target audience. There can be no dispute that the proposed plan constitutes a robust means of providing notice of the new settlement.

Finally and significantly, in cases involving labeling consumer fraud classes, the identity of individual class members typically cannot readily be ascertained and publication notice is the only means of informing settlement class members of the existence of the settlement and its terms. But this is not the case here for almost one-third of the estimated Class. Approximately 4.8 million to 5.55 million class member households (or between 32% and 37% of the class member households) will receive direct communication of the notice. Finnegan Declaration, at ¶16.

In *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004), the Seventh Circuit approved a publication notice for a nationwide class that consisted of publication in one publication of national circulation and the posting of the notice on a website set up by a settlement administrator. *See also*, *e.g.*, *Kaufman,* 264 F.R.D. at 446 (Publication of notice in "a national newspaper of wide circulation, plus an online publication, constitutes sufficient notice by publication.") (citing *Misfasihi*); *Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2005) (approving notice plan consisting of publication in USA Today and an Internet campaign targeted to the demographics of the class members); *In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, 280 F.R.D. 362 (N.D. Ill. 2011) (approving of notice plan consisting of publication in *Parade*, internet advertising, the maintenance of a website containing the notice, and targeted on-line advertising and sponsored key-word search advertisements).

Here, the notice plan goes far beyond these threshold requirements. Persons capable of being readily identified and receiving direct notice will receive such notice,[10] and for those who are not capable of being identified, the plan provides for multiple publications in several national magazines, several of the largest internet sites, and the largest social media tool. Finally, the amount of money set aside for notice and settlement administration is significant, with Rexall paying an additional $1.5 million.

## CONCLUSION

Based upon the foregoing, and because the proposed settlement is fair, reasonable, and adequate and falls within the range of what might ultimately be approved, Plaintiffs respectfully request that the Court enter the preliminary approval order that accompanies this motion and memorandum.

DATED: May 14, 2015

By: /s/Stewart M. Weltman
Stewart M. Weltman
BOODELL & DOMAKSKIS, LLC
353 N. Clark Street
Suite 1800
Chicago, Illinois 60654
Telephone: 312-938-4070

---

[10] *See Mirfasihi*, 356 F. 3d at 786 (direct notice preferred where it is possible).

By:   /s/Elaine A. Ryan
Elaine A. Ryan
Patricia N. Syverson
Lindsey M. Gomez-Gray
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Rd., Suite 300
Phoenix, Arizona 85016
Telephone: 602-274-1100

Attorneys for Plaintiffs Francisco Padilla, Cecilia
Linares, Augustina Blanco, and Abel Gonzalez

By:   /s/Peter N. Freiberg
Peter N. Freiberg
Jeffrey I. Carton
DENLEA & CARTON LLP
2 Westchester Park Drive
Suite 410
White Plains, New York 10604
Telephone:   (914) 331-0100

Attorneys for Plaintiff Richard Jennings

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2015, a true and correct copy of the following document was electronically filed and served on all counsel of record in this action who are deemed to have consented to electronic service via the Court's CM/ECF system: **Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement**.

By:   /s/Peter N. Freiberg            
Peter N. Freiberg
DENLEA & CARTON LLP
2 Westchester Park Drive
Suite 410
White Plains, New York 10604
Telephone:   (914) 331-0100

27