UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No.: 11 CV 07972 |
| Plaintiffs, | CLASS ACTION |
| v. | **Judge James B. Zagel** |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida Corporation; and TARGET CORPORATION, a Minnesota Corporation, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
AND INCENTIVE AWARDS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................... ii

I.    INTRODUCTION ............................................................................... 1

II.   PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS................................ 5

The Settlement Terms ....................................................................................... 7

    A.    Class Relief ..................................................................................... 7

        1.    Monetary Relief – Claims Paid to Class Members................................. 7

        2.    Injunctive Relief............................................................................ 8

    B.    Incentive Awards to Plaintiffs/Class Representatives .............................. 9

    C.    Attorneys' Fees and Expenses .......................................................... 9

    D.    Notice and Administration Costs ....................................................... 9

III.  THE COURT SHOULD APPROVE THE REQUESTED AWARD OF
      ATTORNEYS' FEES ......................................................................... 11

    A.    Class Counsel Are Entitled To Compensation......................................... 12

    B.    The Requested Fees Are Well Within The Accepted Range Of Percentages............. 15

    C.    A Lodestar Cross-Check also Shows that the Requested Fees Are Reasonable......... 16

    D.    Class Counsel Is Entitled to an Award of Expenses ................................. 18

    E.    Incentive Awards ............................................................................ 19

IV.   CONCLUSION.................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................... 21

**TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l. Grp., Inc. v. ACE INA Holdings, Inc.*, 07 CV 2898, 2012 WL 651727
(N.D. Ill. Feb. 28, 2012) *appeal dismissed,* 710 F.3d 754 (7th Cir. 2013) .............................. 20

*Arenson v. Bd. of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974)........................................................ 18

*Banyai v. Mazur,* No. 00 Civ. 9806, 2008 WL 5110912 (S.D.N.Y. Dec. 2, 2008)....................... 12

*Boeing* Co. *v. Van Gemert,* 444 U.S. 472 (1980) ......................................................................... 12

*Chemi v. Champion Mortgage,* No. 2:05-cv-1238 (WHW), 2009 WL 1470429
(D.N.J. May 26, 2009) ................................................................................................................ 18

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) .......................................................................... 19

*DiGiacomo v. Plains All Am. Pipeline,* No. H-99-4137, 2001 WL 34633373
(S.D. Tex. Dec. 19, 2001) ........................................................................................................... 18

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994).................................... 13, 18

*Gaskill v. Gordon*, 942 F. Supp. 382 (N. D. Ill. 1996) ................................................................. 16

*Gastineau v. Wright*, 592 F.3d 747 (7th Cir. 2010) ...................................................................... 13

*George v. Kraft Foods Global, Inc.*, No. 1:08-cv-3799, 1:07-cv-1713,
2012 U.S.Dist.LEXIS 166816 (N.D. Ill. June 26, 2012) .......................................................... 16

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) ....................................... 12

*Harman v. Lyphomed*, 945 F.2d 969 (7th Cir. 1991)..................................................................... 13

*Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 U.S.Dist.LEXIS 165464
(S.D. Ind. November 20, 2012)............................................................................................ 16, 19

*Hyland v. Indicator Lites, Inc.*, 160 F.Supp. 2d 981 (N.D.Ill. 2001) ........................................... 16

*In re Cenco, Inc. Secs. Litig.*, 519 F.Supp. 322 (N.D. Ill. 1981)................................................. 18

*In re Charter Comm's., Inc. Sec. Litig.,* No. MDL 1506, 2005 WL 4045741 (ED. Mo. 2005) .... 18

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litigation*, No.09-cv-3690, MDL No. 2013,
80 F.Supp 3d 838 (N.D. Ill. February 20, 2015) ...................................................................... 13

*In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245 (N.D. Ill. 1979)................................. 18

*In re NASDAQ Market-Makers Antitrust Litig,* 187 F.RD. 465 (S.D.N.Y. 1998) ....................... 17

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) .................................................... 13, 19

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 724 F. Supp. 160
(S.D.N.Y. 1989) .......................................................................................................................... 17

*Jeffboat LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487
 (7th Cir. 2009) ......................................................................................................... 17

*Kitson v. Bank of Edwardsville*, No. 08-507-GPM, 2010 WL 331730 (S.D. Ill.  Jan. 25, 2010) . 16

*McCue v. MB Fin., Inc.*, No. 15-cv-988, 2015 U.S.Dist.LEXIS 96653 (N.D. Ill. July 23, 2015) 16

*Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010)........................................... 11

*Mills v. Electric Auto Lite Co.*, 396 U.S. 375 (1970) ...................................................................... 12

*Missouri v. Jenkins,* 491 U.S. 274 (1989) ...................................................................................... 17

*Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)...............................................3, 11, 15

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) ......................................................... 15

*Skelton v. General Motors Corp.,* 860 F.2d 250 (7th Cir. 1988).................................................... 13

*Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226 (N.D. Ill. 1993)................................. 18

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ......................................................................... 13

*Trustees v. Greenough*, 105 U.S. 527 (1881) ................................................................................. 12

*US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013).............................................................. 12

*Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988)......................................................................... 16

*Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S.Dist.LEXIS 123349
 (S.D. Ill. November 22, 2010) .......................................................................... 17, 20

## Other Authorities

1 Alba Conte, *Attorney Fee Awards* § 2.06 (2d ed.1993) .............................................................. 18

Fed. R Civ. P. 23(h)................................................................................................................. 11, 18

Richard Posner, *Economic Analysis of Law* § 21.9 (2d ed. 1984) ................................................ 12

Stuart T. Rossman & Charles Delbaum, *Consumer Class Actions* § 15.2.1 (6th ed. 2006) ......... 12

Plaintiffs Francisco Padilla, Cecilia Linares, Augustina Blanco, and Abel Gonzalez, by their counsel Bonnett, Fairbourn, Friedman & Balint, P.C., Boodell & Domanskis, LLC, Stewart M. Weltman LLC and Levin Fishbein Sedran & Berman LLC, and Richard Jennings, by his counsel Denlea & Carton LLP (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Motion for an Award of Attorneys' Fees and Expenses in the amount of thirty-three percent (33%) of the net Settlement Fund distributable to Class Members, and Incentive Awards of $5,000 for each of the five (5) Class Representatives, as part of the Final Approval of the class action settlement reached in this matter. Plaintiffs will be filing a Memorandum of Law in Support of their Motion for Final Approval of the Settlement as a whole on or before June 9, 2016, but are now submitting this Memorandum in support of their application for attorneys' fees and costs, and incentive awards, pursuant to the Court's Preliminary Approval Order [Docket Entry 238], which requires that the fee application be submitted prior to the end date for Class Members to comment on the settlement.

## I.    INTRODUCTION

NBTY, Inc. ("NBTY"), its subsidiary Rexall Sundown, Inc. ("Rexall"), and their affiliates (collectively, "Rexall" or the "Settling Defendants") manufacture, market, distribute, and sell joint health dietary supplements that contain glucosamine and/or chondroitin, as well as various other ingredients. Rexall sells these joint health dietary supplements under its own brand names, and also manufactures joint health dietary supplements sold under "private label" brand names and for other merchants such as Target and Costco (hereafter the "Covered Products").[1]

Plaintiffs are consumers of the Covered Products. They purchased the Covered Products at various times in various locations throughout the United States. They allege consumer fraud

---

[1] The full listing of the products and the applicable time periods for which Class Members may make claims and for which releases will be provided pursuant to the Settlement Agreement is set forth in Exhibit A to the Settlement Agreement.

claims under various state consumer protection statutes in the numerous lawsuits that are being resolved by the settlement before the Court. The claims arise from certain misrepresentations that have appeared over many years on the packaging and in the advertising of the Covered Products, primarily the claim that the products "renew" or "rebuild" cartilage, a medically impossible thing.

Rexall's largest selling joint health glucosamine dietary supplement is a line of products known as Osteo Bi-Flex. Rexall's Osteo Bi-Flex, the other Covered Products, and the majority of glucosamine/chondroitin products sold to consumers by the Settling Defendants have made essentially three types of joint health benefit claims: (1) that the products rebuild or renew joints or cartilage; (2) that the products maintain joints and cartilage; and (3) that the products provide some form of palliative relief either through more joint flexibility, mobility, cushioning, or comfort. Plaintiffs have alleged that all three types of joint health benefit representations are false and misleading.

Through the extensive efforts of the Hon. Wayne R. Andersen, retired United States District Court Judge, as mediator, the Parties negotiated a new settlement, for which the Court provided its preliminary approval on February 1, 2016, that provides significant economic redress to Class Members and addresses the concerns expressed by the Seventh Circuit when it reversed the approval of the previous settlement. The significant aspects of the new settlement include:

i.      The settlement is no longer an uncapped settlement with a minimum pay-out. Rather, the settlement requires a $9 million payment by Rexall: $7.5 million will be paid into a Settlement Fund from which Class Members and Class Counsel will be paid, and an additional $1.5 million will be paid by Rexall for the costs of notice and administration; and any additional

2

costs of notice may be deducted from the $7.5 million Settlement Fund only upon the recommendation of the Settlement Administrator and the mutual consent of Settlement Class Counsel and Counsel for Defendants.[2]

      ii.      There is no "clear-sailing" agreement whereby Rexall will not object to an award of attorneys' fees up to a certain amount, and Class Counsel are filing their application for fees 21 days prior to the deadline for objections by Class Members, allowing Class Members to comment on the fee application at the same time as commenting on the settlement as a whole.

      iii.      There is no separate fund for attorneys' fees, and therefore there is no "reversion" of un-awarded Class Counsel fees to Rexall. Rather, Class Counsel are petitioning the Court for an award of fees and costs from the Settlement Fund, and the monies that will actually be paid to Class Members, consistent with the Seventh Circuit's decision in this case, where the Court stated that "..the presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014).

      iv.      The claims process has been simplified, and Class Members are entitled to greater compensation. All Class Members will be entitled to $8 per bottle, up to a maximum of 13 bottles per household (*i.e.*, $104 per household), with no requirement of proof of purchase. (The earlier settlement provided two tiers of recovery based on whether a class member had proof of purchase, but that distinction has been eliminated.) The claim form has been simplified, and, as before, does not need to be notarized.

      v.      There will likely be only a small, if any, *cy pres* payment. Although the Settlement Agreement provides that left-over monies in the Settlement Fund will be paid to the

---

[2] See discussion, infra, regarding the dispute over the outlay of additional costs of notice and administration.

Orthopedic Research and Education Foundation, the simpler claim process and the increased payments to class members (including the potential *pro rata* increase in payment up to $200 per household) is anticipated to consume the entire Settlement Fund, leaving none for *cy pres*.

vi.     Rexall has agreed to *permanently* remove from its labels any statements, or statements conveying the message, that its products will fix, mend, recondition, rehabilitate, increase, develop, build, repair, rebuild, renew, regrow, add, increase, regenerate, revitalize, or rejuvenate cartilage. This differs from the previous settlement because it is a permanent prohibition. Rexall may make these claims in the future only if it becomes aware of studies or other scientific support for these claims, and is granted relief by the Court to change the labels accordingly.

vii.     The notice of the settlement has been made by direct mail and/or email to certain Class Members, along with robust publication notice being accomplished to the majority of the Class by press releases, print publication in *National Geographic*, *People Magazine*, *Prevention Magazine* and *Woman's Daily*, and advertising on several Internet websites (Yahoo!, AOL, XAXIS, MapQuest, Huffington Post, NBC New Digital, and Facebook). The earlier notice reached approximately 76% of the class members, and the notice of the new settlement will likely have a similar reach.

These modifications to the previous settlement directly address the issues raised by the Seventh Circuit. The settlement provides fair and adequate compensation to the Class and has every procedural safeguard in place to ensure that it complies with Rule 23(e), and that the award of attorneys' fees is likewise fair and reasonable and consistent with Rule 23(h).

4

## II.    PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS

This action is one of several pending federal court actions involving various joint health dietary supplements manufactured or sold by the Settling Defendants.  The first of these actions, *Cardenas, et al. v. NBTY, Inc. et al.*, No. 2:11-cv-01615-TLN-CKD (E.D. Cal), was filed on June 14, 2011 against NBTY and Rexall arising out of the manufacture and sale of their Osteo Bi-Flex line of glucosamine and chondroitin joint health dietary supplement products.  It originally sought a California-only class but was amended to seek a multi-state class.  *Jennings v. Rexall Sundown, Inc.*, No. 1:11-cv-11488-WGY (D. Mass.), was filed on August 22, 2011, also arising out of the manufacture and sale of the Osteo Bi-Flex line of glucosamine and chondroitin joint health dietary supplement products, and sought a Massachusetts-only class.  *Linares, et al. v. Costco Wholesale, Inc.*, No. 3:11-cv-0547-MMA-BGS (S.D. Cal.), was filed on November 2, 2011, arising out of Costco's sale of the Kirkland Signature Brand line of glucosamine and chondroitin joint health dietary supplement products and sought a California-only class.[3]  This case, *Pearson v. Target Corp.*, No. 1:11-cv-07972 (N.D. Ill.), was filed on October 28, 2011, arising out of Target's sale of its Up & Up line of glucosamine and chondroitin joint health dietary supplement products and sought a multi-state class.  *Blanco v. CVS Pharmacy, Inc.*, No. 5:13-cv-00406-JGB-SP (C.D. Cal.), was filed on March 4, 2013, arising out of CVS Pharmacy's sale of certain CVS-brand glucosamine chondroitin dietary supplement products and sought a California and multi-state class.  The core issues in all of the cases are similar, in that they contest the veracity of similar joint health benefit representations made about the products, all of which are covered by the Settlement Agreement.  The suits allege that representations about the

---

[3] *Padilla v. Costco Wholesale Corp.*, No. 1:11-cv-07686 (N.D. Ill.), a companion case to *Linares*, was filed on October 28, 2011 and subsequently dismissed.  After the Court dismissed the Complaint but granted leave to amend, Plaintiff elected not to amend his Complaint because settlement negotiations were nearing a final agreement.

products – including most significantly the claim that glucosamine and chondroitin will rebuild or renew cartilage – are false and misleading.

The Settlement Agreement before the Court is the second one that the Parties have reached. At the time of execution of the first Settlement Agreement in 2013, *Linares,* after having survived two rounds of motions to dismiss, was in the midst of class and merits discovery. *Pearson*, after having survived two rounds of motions to dismiss, was also in the midst of class and merits discovery. *Cardenas* was in the midst of the class certification process with the Plaintiffs having filed their opening class certification brief and expert reports, and the Defendants having completed the depositions of Plaintiffs' experts. *Jennings* was on the eve of a pre-class certification "exemplar trial" of the merits of the individual plaintiff's claims, with expert reports, expert depositions, and all discovery completed for both sides. Discovery in both the *Cardenas* and *Jennings* cases, along with the filing of expert reports and expert depositions in those cases, provided the Plaintiffs, the Settling Defendants, and their counsel a fulsome record upon which to base their settlement negotiations.

After centralizing all of the cases noted above before this Court for settlement purposes, the parties sought, and this Court granted, final approval to the previous settlement in January 2014. Objectors pursued an appeal to the Seventh Circuit. In its opinion dated November 19, 2014, the Seventh Circuit reversed the settlement and remanded this matter for further proceedings consistent with its opinion. Promptly following the Seventh Circuit's decision, Plaintiffs and Rexall proceeded to mediation before Judge Andersen, and following intensive and prolonged negotiations with Judge Andersen, reached a settlement that is memorialized in the written Settlement Agreement dated April 10, 2015, which this Court preliminarily approved on February 1, 2016.

**The Settlement Terms**

A.    **Class Relief**

1.    Monetary Relief – Claims Paid to Class Members

Each Class Member shall be entitled to seek monetary compensation.  Rexall is creating a Settlement Fund of $7.5 million, which will be used to pay cash awards to the Class Members, attorneys' fees as awarded by the Court, incentive awards to the Class Representatives as awarded to the Court, and, in addition, Rexall agreed to pay $1.5 million in notice and administration costs.  After attorneys' fees, incentive awards, and notice and administration costs in excess of $1.5 million that have been mutually agreed to by Settlement Class Counsel and Defendants' Counsel are paid from the Settlement Fund, the balance will be available to the Class as the Net Settlement Fund.  Settlement Agreement at ¶ 7.

From the Net Settlement Fund, Class Members will be entitled to receive $8 per bottle of Covered Product, up to a maximum of 13 bottles per household (*i.e.,* up to $104/household).[4]  *Id.* at ¶ 8(a).  If these payments exceed the monies available in the Net Settlement Fund, payments will be reduced *pro rata*; conversely, if there are leftover monies available in the Net Settlement Fund subsequent to calculating these payments, the remaining funds will be distributed *pro rata* to claimants, up to a maximum of $200 per household.  *Id.* at ¶8(b), (c).  Any remaining monies available in the Net Settlement Fund after the *pro rata* increase to $200 per household will be paid to the Orthopaedic Research and Education Foundation, subject to Court approval.  *Id.* at ¶8(d).    However, there will likely be only a small, if any, *cy pres* award.  In the first settlement, 30,245 claims were filed.  As of April 29, 2016, approximately 102,000 claims have been filed in

---

[4] In the previous settlement, Class Members received $5 per bottle with proof of purchase, up to a maximum 10 bottles, and $3 per bottle without proof of purchase, up to a maximum of four bottles.

connection with the current settlement. With the *pro rata* increase up to $200 per household, there will very likely be a full distribution of the Net Settlement Fund to the Class Members.

The claims process has been simplified. Class Members will not be required to submit proof of purchase, but rather will be required only to submit a very simple claim form, which can be submitted on-line or by mail and which does not require notarization. *Id.* at Ex. E (Claim Form). The claim form no longer requires class members to identify their purchases by date and product. *Id.* Class Members who filed a claim in connection with the previous settlement may, but are not required to, submit a new claim: Class Members will be entitled to compensation based upon the highest number of bottles that they claimed in their previous claim or in their new claim. *Id.* at ¶ 17(b).

       2.   <u>Injunctive Relief</u>

The settlement also requires the *permanent* removal of certain labeling claims from all of the Covered Products currently being manufactured or sold by Rexall. *Id.* at ¶9. Dozens of different products will be impacted by these label changes. The injunctive relief required by the Settlement prohibits Rexall from making any of the following statements, or statements conveying the same message, on the labels of any of the Covered Products: fixing, mending, reconditioning, rehabilitating, increasing, developing, building, repairing, rebuilding, renewing, regrowing, adding, regenerating, or rejuvenating cartilage.[5] *Id.* at ¶ 9(a).

---

[5] Subsequent to the approval of the Settlement, if Rexall becomes aware of studies or other scientific support for any of the prohibited representations, Rexall may seek relief from the Court to change the labels accordingly. Settlement Agmt. at ¶ 9(e).

### B. Incentive Awards to Plaintiffs/Class Representatives

The Settlement Agreement provides that the Court may award each of the five (5) Plaintiffs/Class Representatives an incentive award of $5,000, to be paid from the Settlement Fund. *Id.* at ¶ 11.

### C. Attorneys' Fees and Expenses

Attorneys' fees that are awarded by the Court will be paid from the Settlement Fund. *Id.* at ¶ 10. The Settlement Notice to the Class states that Plaintiffs and their counsel will petition the Court for an award of attorneys' fees and costs, not to exceed one-third (1/3) of the $7.5 million Settlement Fund. Unlike the previous settlement, there is no separate fund from which attorneys' fees are to be paid, there is no "clear-sailing" provision, and the applications for attorneys' fees are being filed prior to the date for objections, and are based upon a percentage of the Settlement Fund. Furthermore, because there is no separate fund for attorneys' fees, there is no reversion of un-awarded fees to Rexall.

### D. Notice and Administration Costs

In addition to the $7.5 million Settlement Fund, Rexall has agreed to pay an additional $1.5 million for the cost of notice and administration of the Settlement. The Settlement Fund available to the Class Members is diminished by the cost of notice and administration only if the costs of notice and administration exceed the $1.5 million that Rexall is paying separately and if such additional costs have been mutually agreed to by Settlement Class Counsel and Defendants' Counsel. (Settlement Agreement Paragraph 15).

Settlement Class Counsel were informed yesterday, May 4, 2016, that Defendants' Counsel had, without Settlement Class Counsel's agreement or consent, authorized that the Notice and Settlement Administrator incur up to $2.75 million in notice and administration costs,

or an additional $1.25 million in such costs. This was the first time that Settlement Class Counsel had been made aware of this, even though the Settlement Agreement expressly provides that any additional notice and administration costs over and above the $1.5 million to be paid by Rexall must be approved by the mutual agreement of both Settlement Class Counsel and Defendants' Counsel.[6] Immediately upon being informed of this by email from the Settlement Administrator and not by Defendants, Settlement Class Counsel lodged their objections to Defendants' with regard to their seeming unilateral decision in authorizing this notice and administration outlay. Shortly afterwards, Settlement Class Counsel discussed this with Defendants' Counsel and in a subsequent email requested, among other things, all documents relating to the authorization of these additional outlays. Defendants' Counsel has responded that Defendants will not produce any such documents.

At this point Defendants insist that these additional funds be drawn out of the $7.5 million Settlement Fund. Settlement Class Counsel intend to object to this, as this additional unilateral authorization of notice and administration costs of up to $1.275 million over the $1.5 million was not agreed to nor authorized by them. And, the failure to consult with Settlement Class Counsel in this regard, let alone obtain their agreement, is, at minimum, a material breach of the parties' agreement. If in fact this amount is deducted from the $7.5 million Settlement

---

[6] The Settlement Agreement States: "15. Settlement Administrator. The Parties agree that a third party, Heffler Claims Group, shall serve as the settlement administrator to administer the settlement and advise the Parties on a notice plan (the "Settlement Administrator"). The Settlement Administrator will work under the direction of Settlement Class Counsel and Rexall's counsel. Rexall shall pay the Settlement Administrator and any third parties providing notice for the reasonable costs associated with the individual and publication notice and administration services reflected in the Notice Plan attached as Exhibit C, not to exceed $1,500,000. Such payments to the Settlement Administrator shall be separate and apart from, and without diminishing or eroding, the Settlement Fund, **except that if the reasonable costs of notice and administration as mutually agreed upon between the Settlement Administrator, Settlement Class Counsel, and Defendants' Counsel exceed $1,500,000, such excess costs will be paid from the Settlement Fund.** "(emphasis added).

Fund (see, e.g. Paragraph 27 of the Settlement Agreement) and Settlement Class Counsel do not prevail in their efforts in this regard, the net Settlement Fund may be as low as $6,250,000.

### III.  THE COURT SHOULD APPROVE THE REQUESTED AWARD OF ATTORNEYS' FEES

In the earlier settlement, procedural objections to Class Counsels' fee applications were filed based upon *Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010).  In *Mercury*, the Ninth Circuit held that Rule 23(h) requires that class members be allowed the opportunity to object to Class Counsel's fee motion itself, not merely to the preliminary notice that such a motion will be filed.  Notwithstanding that *Mercury* is not binding upon this Court, Class Counsel are submitting this fee application well before the deadline for Class Members to comment on the settlement (May 26, 2016), as directed by the Court in its Preliminary Approval Order.  This fee application is being posted on the settlement website (www.GlucosamineSettlement.com), and the notice that has been given to the Class Members advises them that the fee application is available on-line at the settlement website, thus providing ample notice and opportunity to the Class Members to comment on the fees requested by Class Counsel.   (As noted above, Plaintiffs will be filing a full memorandum in support of the fairness, adequacy and reasonableness of the settlement on or before June 9, 2016.).

Class Counsel are petitioning the Court for an aggregate fees and expenses award of thirty-three percent (33%) of the net Settlement Fund distributable to Class Members.  The Seventh Circuit has held that the range of appropriate percent fee awards is from 30% to 50% . See, e.g., *Pearson*, 772 F.3d at 782 ("..the presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.").

11

### A. Class Counsel Are Entitled To Compensation

According to the common fund rule, "'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1545 (2013) (citing *Boeing* Co. *v. Van Gemert,* 444 U.S. 472 (1980)); se*e also Mills v. Electric Auto Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing counsel's right to compensation for obtaining *a* common benefit on behalf of the class). This rule has existed in federal courts for more than a century now. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing to *Trustees v. Greenough*, 105 U.S. 527 (1881)).

In economic terms, "[t]he attorney fee award is the compensation for the *effort* expended to benefit the class. Counsel will not undertake actions of this nature unless they can receive adequate compensation for (i) their time, (ii) the risk of not prevailing, (iii) the delay in receipt of fees, [and] (iv) the investment (money as well as time) that must be made in a case." Stuart T. Rossman & Charles Delbaum, *Consumer Class Actions §* 15.2.1 (6th ed. 2006). Indeed, the contingency fee awarded to class counsel must be greater than the fees that the same attorneys would charge their clients in non-contingency cases. As Judge Posner has explained:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The interest rate on such a loan is high because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is so much higher than that of conventional loans.

Richard Posner, *Economic Analysis of Law §* 21.9 (2d ed. 1984). Federal courts have adopted similar reasoning in approving fee awards for class counsel. *See Banyai v. Mazur,* No. 00 Civ. 9806, 2008 WL 5110912, at *4 (S.D.N.Y. Dec. 2, 2008) ("A lawyer whose compensation is contingent on services can be expected to receive more than she would receive if she were

charging an hourly rate.") (citations omitted).

In the Seventh Circuit, a district court awarding attorneys' fees may use the lodestar method or the percentage of recovery method, or some combination of the two. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994); *Harman v. Lyphomed*, 945 F.2d 969 (7th Cir. 1991). The percentage of recovery method has emerged as the favored method for calculating fees in common fund cases in the Northern District of Illinois. *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litigation*, No.09-cv-3690, MDL No. 2013, 80 F.Supp 3d 838, 844 (N.D. Ill. February 20, 2015). The case before the Court is a common fund case, since Settlement Class Counsel's fees are to be determined solely based upon the amounts of monies paid to Class Members. For this reason, Class Counsel respectfully submit that a percentage of the fund approach should be adopted by the Court in awarding fees in this matter.

A lodestar analysis provides for the base lodestar to be adjusted upward via a multiplier to reflect the benefit of the settlement to the Class as well as the contingent nature of the attorneys' undertaking based on a likelihood of success in obtaining a judgment or settlement measured at the time the attorney began work on the case. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) (citations and quotations omitted); *Skelton v. General Motors Corp.,* 860 F.2d 250, 255 (7th Cir. 1988) (citations and quotations omitted). The court's task is to do its "best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market" at the outset of the litigation when the risk of loss still existed. *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001).

In *In re Synthroid*, the Seventh Circuit held that the market rate for legal fees depends in part on the following: (1) the risk of nonpayment a firm agrees to bear, in part, (2) the quality of

its performance, in part on (3) the amount of work necessary to resolve the litigation, and in part on (4) the stakes of the case. *Id*., at 721. Consideration of these factors confirms that an aggregate attorneys' fees and expenses award thirty-three percent (33%) of the net Settlement Fund distributable to the Class Members is reasonable and appropriate.

First, Class Counsel incurred a significant risk of nonpayment by prosecuting these cases. For example, as a result of the high placebo effect for these products, there is a general perception that these products work. Thus, while Plaintiffs' counsel believe that there is substantial scientific evidence supporting their claims, this public perception of efficacy - both amongst jurists and fact finders - made these cases a very risky undertaking. At the inception of the lawsuits there was no certainty that Plaintiffs would succeed, or that the cases would settle.

Second, Class Counsel have performed excellently. They have collectively navigated numerous motions to dismiss and a motion for summary judgment, have embarked upon class certification motion practice, have retained expert witnesses, and, in the *Jennings* case, prepared for a trial upon five months' notice, completing extensive fact and expert discovery and announcing themselves "ready for trial" in a relatively short period of time. The settlement that Class Counsel have achieved is significant in terms of the funds made available to the Class; and, while Class Counsel seek no compensation for this, the Settlement also provides for injunctive relief that will permanently prohibit Rexall from making certain structural misrepresentations regarding the numerous Covered Products.

Third, Class Counsel expended a tremendous amount of work to prepare the cases and achieve a resolution. As shown in the respective Declarations of Class Counsel, Plaintiffs and their attorneys invested considerable time and expense investigating the claims, initiating the lawsuits, responding to motions, conducting discovery, preparing for trial in *Jennings*,

14

prosecuting class certification in *Cardenas*, proffering very qualified experts to support the claims, restructuring the settlement to fully address the Seventh Circuit's concerns, and otherwise vigorously prosecuting the cases on behalf of a Class of approximately 15 million consumers.

Given the great risk taken and the substantial result obtained, under either the percentage of recovery method or the lodestar method, Class Counsels' fee application is eminently reasonable and should be granted in its entirety.

**B.    The Requested Fees Are Well Within The Accepted Range Of Percentages**

Under the percentage of recovery theory, the requested fee (based upon thirty-three percent (33%) of the net distributable Settlement Fund) is well within the accepted range of percentages that are routinely approved for attorneys' fees.

Such an award comports with the Seventh Circuit's decision in this case, as the Seventh Circuit has stated that in consumer fraud class actions such as this one, "the presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 782.  Thus, Settlement Class Counsel's request is within the range of what the Seventh Circuit held in this case.

*Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014) is also instructive even though the fee here is not agreed upon as it was in *Redman*, but rather is being set by the Court.  In *Redman*, the Seventh Circuit stated that, "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) that fee to (2) the fee plus what the class members received." *Redman v. Radioshack Corp.*, 768 F.3d at 630.

In this Circuit, the range of percentage of fund awards is between 33% and 50%. *Pearson*, 772 F.3d at 782.  *See also*, ; *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N. D. Ill. 1996)

15

(awarding a 38% fee); *George v. Kraft Foods Global, Inc.*, No. 1:08-cv-3799, 1:07-cv-1713, 2012 U.S.Dist.LEXIS 166816 (N.D. Ill. June 26, 2012) (awarding fee of $3,166,166, which was 33.33% of $9.5 million settlement fund); *Kitson v. Bank of Edwardsville*, No. 08-507-GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) (33% fee award); *McCue v. MB Fin., Inc.*, No. 15-cv-988, 2015 U.S.Dist.LEXIS 96653 (N.D. Ill. July 23, 2015) (33% of settlement fund after claims administrator's fees were subtracted); and *Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2012 U.S.Dist.LEXIS 165464 (S.D. Ind. November 20, 2012) ("Sixth, the Court finds that there is support from other cases in this Circuit and nationally to support a market rate of 33.3%." (citing 12 cases within the Seventh Circuit where fees were awarded of at least 33%) (footnote 3)).

The district court has considerable discretion to determine the reasonableness of attorneys' fees because it has the greatest familiarity with the case and is in the best position to scrutinize the attorneys' work. *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988); *Hyland v. Indicator Lites, Inc.*, 160 F.Supp. 2d 981, 984 (N.D.Ill. 2001).

### C. A Lodestar Cross-Check also Shows that the Requested Fees Are Reasonable

As more fully set forth in Class Counsels' respective Declarations, the fee request is also reasonable under the lodestar method. Class Counsel invested substantial effort in bringing about the settlement on behalf of approximately 15 million consumers. As set forth more fully in Class Counsels' respective Declarations, to arrive at a base lodestar, Class Counsel multiplied the total hours by the current hourly rates of the attorneys who worked on this class-action case.

A reasonable hourly rate should be in line with the prevailing community rate charged for similar services by lawyers of reasonably comparable skill, experience and reputation. *Jeffboat LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 489 (7th Cir. 2009).

Each petitioning firm's Declaration details the calculation of hours for each attorney that worked on the case (which were compiled from contemporaneous time records maintained by each attorney) and the prevailing hourly rate charged by those attorneys. As set forth in their respective Declarations, Class Counsel respectfully submit that the number of hours expended on the litigation were reasonable and necessary, and that the hourly rates prevailing for the attorneys involved are also reasonable.[7]

Although the use of a "lodestar cross-check" has fallen into disfavor in this Circuit (see, e.g., *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S.Dist.LEXIS 123349 (S.D. Ill. November 22, 2010), Plaintiffs suggest that it serves the useful purpose of confirming that the requested fee is eminently reasonable.

Class Counsels' separate Declarations each set forth the total hours they invested in prosecuting the cases, and the hourly rates for each of the attorneys involved, arriving at a base lodestar for each firm. The total amount of the base lodestar for all firms is $3,008,034. Although the amount to be awarded based upon a percentage approach cannot be determined until the issues regarding the excess costs of notice and administration are resolved, the requested award of thirty-three percent (33%), if no deductions are made from the Settlement Fund for the excess costs of notice and administration (in other words the highest possible fee that Class Counsel could receive from a thirty-three percent (33%) award) would be $2,393.000. Thus, a thirty-three percent (33%) award, even at its highest possible level, compares favorably under the lodestar check, particularly in light of the effort undertaken by Class Counsel, the recovery achieved, and risks involved. Courts have approved multipliers of up to and beyond

---

[7] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989). *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Market-Makers Antitrust Litig*, 187 F.R.D. 465, 489, n.25 (S.D.N.Y. 1998).

four (4). *In re Cenco, Inc. Secs. Litig.*, 519 F.Supp. 322 (N.D. Ill. 1981) (multiplier of 4); *In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245 (N.D. Ill. 1979) (multipliers ranging from 1.3 to 3); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974) (multipliers of 3 and 4); *DiGiacomo v. Plains All Am. Pipeline,* No. H-99-4137, 2001 WL 34633373, at *10-11 (S.D. Tex. Dec. 19, 2001) (awarding percentage fee that resulted in multiplier of 5.3); *In re Charter Comm's., Inc. Sec. Litig.,* No. MDL 1506, 2005 WL 4045741, at *18 (ED. Mo. 2005) (approving 20% fee yielding 5.61 lodestar multiplier as "within the range of multipliers found reasonable for cross-check purposes") (citations omitted); 1 Alba Conte, *Attorney Fee Awards §* 2.06, at 39 (2d ed.1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar.").

A district court may use the lodestar method, the percentage of recovery method, or some combination of the two. *Florin*, 60 F.3d at 1247, n. 2. Here, where the percentage of recovery is well within the range permitted in this Circuit, the lodestar may be used as a "cross-check" to confirm the reasonableness of the award. *Accord Chemi v. Champion Mortgage,* No. 2:05-cv-1238 (WHW), 2009 WL 1470429, at *12 (D.N.J. May 26, 2009).

**D.    Class Counsel Is Entitled to an Award of Expenses**

Additionally, Class Counsel are entitled to an award of costs pursuant to Fed. R. Civ. P. 23(h), which provides that the court may award "reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement."  Courts regularly award reimbursement for expenses that are reasonable and necessarily incurred.  *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993).  As shown in Class Counsels' respective Declarations, Class Counsel advanced significant costs litigating these cases, including costs associated with

discovery, travel, court fees, and, perhaps most significantly, to retain expert witnesses that were instrumental in providing critical evidence addressing Rexall's claims regarding the efficacy of the products.

### E. Incentive Awards

The Settlement provides that each of the named Plaintiffs may be awarded an incentive payment of up to $5,000, to be out of the Settlement Fund. Incentive awards are justified as they encourage individuals to become named representatives. *In re Synthroid*, 264 F.3d at 722. In deciding whether an incentive award is proper, and, if so, in what amount, relevant factors include the action the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000). As shown in Class Counsels' Declarations, the named Plaintiffs were active participants in the prosecution of these cases, willingly undertook the responsibilities and burdens associated with serving as class representatives, and helped to achieve a substantial settlement for the Class Members. They are certainly deserving of the reasonable remuneration for their efforts in the amount of $5,000 each.

A $5,000 incentive award for each Plaintiff, is entirely reasonable. *See In re KFC*, 280 F.R.D. at 383 (approving as reasonable aggregate incentive award of $25,000.00, which amounted to $5,000 award to each named plaintiff); *see also Cook v. Niedert*, 142 F.3d at 1016 (affirming district court's incentive award of $25,000 to named plaintiff); *Heekin v. Anthem, Inc.*, 1:05-CV-01908-TWP, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (authorizing payment of $25,000 incentive award to named plaintiffs); *Am. Int'l. Grp., Inc. v. ACE INA Holdings, Inc.*, 07 CV 2898, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012) *appeal dismissed,* 710 F.3d 754

(7th Cir. 2013) (awarding named plaintiffs incentive awards of $25,000 each); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174, at *4 (S.D. Ill. Nov. 22, 2010) (same).

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs, the Class, and Class Counsel respectfully request that, if, as Class Counsel hopes to be the case, the Court grants final approval of the Settlement and approve the requested attorneys' fees and expenses and incentive awards.

Dated:  May 5, 2016

By:   /s/Stewart M. Weltman
Stewart M. Weltman
BOODELL & DOMANSKIS, LLC
353 Clark Street
Suite 1800
Chicago, Illinois 60654
Telephone: 312-938-4070

Elaine A. Ryan (admitted *pro hac vice*)
Patricia N. Syverson (admitted *pro hac vice*)
BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
2325 E. Camelback Rd., Suite 300
Phoenix, Arizona 85016
Telephone: 602-274-1100

*Attorneys for Plaintiffs Francisco Padilla, Cecilia Linares, Augustina Blanco, and Abel Gonzalez*

By: /s/ Peter N. Freiberg
Peter N. Freiberg (admitted *pro hac vice*)
Jeffrey I. Carton (admitted *pro hac vice*)
DENLEA & CARTON LLP
2 Westchester Park Drive
Suite 410
White Plains, New York 10604
Telephone:   (914) 331-0100

*Attorneys for Plaintiff Richard Jennings*

20

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2016 a true and correct copy of the following document was electronically filed and served on all counsel of record in this action who are deemed to have consented to electronic service via the Court's CM/ECF system: **Plaintiffs' Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses and Incentive Awards.**

/s/ Peter N. Freiberg
One of Plaintiffs' Attorneys