UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, | Case No. 11-CV-07972 |
| | CLASS ACTION |
| | Hon. John Robert Blakey |
| Plaintiffs, | |
| v. | |
| NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation | |
| Defendants. | |
| THEODORE H. FRANK, | |
| Objector/Intervenor. | |

**OBJECTOR/INTERVENOR THEODORE H. FRANK'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISGORGE SIDE PAYMENTS**

TABLE OF CONTENTS

Table of Contents.................................................................................................ii

Table of Authorities ............................................................................................ iii

Introduction .......................................................................................................... 1

Background ............................................................................................................. 1

Argument................................................................................................................ 5

    I.    Objector Blackmail is a "Serious Problem."...............................................5

    II.   This Court Should order Equitable Disgorgement of the Objector Blackmail Paid to the Sweeney Objectors.....................................................................................6

       1.   The Sweeney objectors unjustly profited from their misconduct..............................7

       2.   Objector-appellant windfall constitutes rightful class recovery and should be clawed back for equitable distribution..........................................................9

       3.   *Young v. Higbee* compels disgorgement because the Sweeney objectors purported to appeal on behalf of the class but sold out for private gain. .......................................10

       4.   Payments to objector-appellants who have accomplished nothing for the class are otherwise inequitable and bad public policy.................................................12

    III.  The Disgorged Funds Should be Equitably Distributed.................................13

Conclusion.............................................................................................................. 14

TABLE OF AUTHORITIES

## Cases

*Baxter Int'l, Inc. v. Abbott Labs.*,
    297 F.3d 544 (7th Cir. 2002) ............................................................................. 4

*Burrow v. Arce*,
    997 S.W.2d 229 (Tex. 1999) ............................................................................. 11

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 ......................................................................................................... 6

*Crawford v. Equifax Info Servs.*,
    201 F.3d 877 (7th Cir. 2000) ....................................................................... 11-12

*Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*,
    282 F.3d 984 (7th Cir. 2002) ............................................................................. 7

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ........................................................................................... 8

*Dewey v. Volkswagen AG*,
    728 F. Supp. 2d 546 (D.N.J. 2010) ................................................................. 13

*Diettrich v. Northwest Airlines, Inc.*,
    168 F.3d 961 (7th Cir. 1999) .......................................................................... 6-7

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    183 F.3d 1 (1st Cir. 1999) ................................................................................. 7

*Edelson PC v. Bandas Law Firm PC*,
    2018 WL 3496085 (N.D. Ill. Jul. 20, 2018) ...................................................... 1

*Frank v. Gaos*,
    No. 17-961 (U.S.) ............................................................................................. 14

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ........................................................................... 12

*Greisz v. Household Bank, N.A.*,
    176 F.3d 1012 (7th Cir. 1999) .................................................................. 8, 9-10

*Johnston v. Comerica Mortg. Corp.*,
83 F.3d 241 (8th Cir. 1996) ................................................................. 9

*Kovilic Constr. Co. v. Missbrenner*,
106 F.3d 768 (7th Cir. 1997) ............................................................... 6

*Murray v. GMAC Mortg. Corp.*,
434 F.3d 948 (7th Cir. 2006) ......................................................... 10, 12

*Nachsin v. AOL*,
663 F.3d 1034 (9th Cir. 2011) ............................................................ 14

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) ............................................................. 8

*Pearson v. NBTY*, ("*Pearson I*")
772 F.3d 778 (7th Cir. 2014) ........................................................... 1, 9

*Pearson v. NBTY*, ("*Pearson II*")
893 F.3d 980 (7th Cir. 2014) ................................................... 1, 4, 5-6

*In re Petrobras Secs. Litig.*,
2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) ..................................... 1

*Porter v. Warner Holding Co.*,
328 U.S. 395 (1946) ............................................................................ 6

*Primax Recoveries, Inc. v. Sevilla*,
324 F.3d 544 (7th Cir. 2003) ............................................................... 8

*Robert F. Booth Trust v. Crowley*,
687 F.3d 314 (7th Cir. 2012) ............................................................... 8

*Safeco Ins. Co. of Amer. v. American Int'l Group, Inc.*,
710 F.3d 754 (7th Cir. 2013) ............................................................... 7

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ............................................................. 6

*Sosna v. Iowa*,
419 U.S. 393 (1975) ............................................................................ 8

*In re Target Corp. Customer Data Security Breach Litig.*,
2016 WL 259676 (D. Minn. Jan. 20, 2016) ....................................... 13

*Vollmer v. Selden,*
    350 F.3d 656 (7th Cir. 2003) ................................................................................... 7

*In re Walgreen Co. Stockholder Litig.,*
    832 F.3d 718 (7th Cir. 2016) ................................................................................... 8

*Warnell v. Ford Motor Co.,*
    205 F. Supp. 2d 956 (N.D. Ill. 2002) ............................................................. 1, 7, 9

*Young v. Higbee,*
    324 U.S. 204 (1945) .................................................................................... 1, 10-12

**Rules and Statutes**

28 U.S.C. § 2042 ............................................................................................................ 14

Fed. R. Civ. Proc. 23 .................................................................................................. 5, 6

Fed. R. Civ. Proc. 23(e)(3) ....................................................................................... 5, 7

Fed. R. Civ. Proc. 23(e)(5) ................................................................................. 5, 7, 12

Advisory Committee Notes to 2003 Amendment of Rule 23(e)(4)(B) ......................... 5

Proposed Amendments to the Federal Rules of Civil Procedure, Rules 5, 23, 62, and 65.1,
    Slip Order at *11 (U.S. Apr. 26, 2018) ...................................................................... 5

**Other Authorities**

American Law Institute,
    RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51(4) (2010) ............... 9

Fitzpatrick, Brian T., *The End of Objector Blackmail?*,
    62 VAND. L. REV. 1623 (2009) ................................................................................... 5

Leary, Marie, *FJC Report on Class Action Objector Appeals in Three Circuit Courts of Appeals,*
    Federal Judicial Center (2013) .................................................................................... 5

Lopatka, John E. & D. Brooks Smith, *Class Action Professional Objectors: What to do About Them?,*
    39 FLA. ST. U. L. REV. 865 (2012) .............................................................................. 5

Manual for Complex Litig.,
    § 21.75 (4th ed. 2008) ................................................................................................ 9

Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*,
79 GEO. WASH. L. REV. 428, 447 (2011) ................................................................................................. 7

7B Wright, Miller & Cooper, *Federal Practice & Procedure*,
§ 1797.4 n.5 (3d ed. 2005) ................................................................................................................. 7

INTRODUCTION

There is no question: "selfish settlements by objectors are a serious problem." *Pearson v. Target Corp.*, 893 F.3d 980, 986 (7th Cir. 2018) ("*Pearson II*"). Thus, relying on *Pearson*'s exposition on bad-faith objectors, district courts have both imposed sanctions upon such objectors and even allowed class counsel to proceed in civil action against them. *In re Petrobras Secs. Litig.*, 2018 WL 4521211, at *4-8 (S.D.N.Y. Sept. 21, 2018) (imposing sanctions); *Edelson PC v. Bandas Law Firm PC*, 2018 WL 3496085 (N.D. Ill. Jul. 20, 2018) (denying in part motion to dismiss). Equitable disgorgement of monies paid to objectors and their counsel—the remedy Frank seeks here—is far less drastic. It merely reclaims for the class what has been unjustly appropriated by the objector-appellants and their counsel.

The fruit of an appeal challenging approval of a class settlement and fee award belongs to the entire class. One class member, or in this case, a few class members "cannot make that fruit [their] own by a simple appropriation of it." *Young v. Higbee*, 324 U.S. 204, 214 (1945). The Court possesses both inherent and rule-based authority to protect the class by requiring disgorgement. It should.

BACKGROUND

**A.      After Frank's successful appeal, the district court approves a revised settlement.**

Following final approval of the original settlement in 2014, Objector Frank appealed. The Seventh Circuit agreed with Frank's objection in several respects. The court found a disproportional distribution between recovery for the class ($865,284), *cy pres* ($1.13 million), and attorneys' fees with clear sailing and kicker ($4.5 million). *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) ("*Pearson I*"). The panel further found that administration costs should have been excluded in calculating the class benefit. *Id.* As for the settling parties, the panel found that the clear-sailing and kicker provisions reflected a "selfish" agreement, and commended Frank for "flagg[ing] fatal weaknesses in the proposed settlement." *Id.* at 787.

As a result of Frank's objection and meritorious appeal, the revised settlement was structured with a $7.5 million common fund, which provides approximately $3.1 million more for class recovery than the original agreement would have provided. Dkt. 213 at 7. Frank and three other objectors (Randy Nunez, Steven Buckley, and Patrick Sweeney (collectively the "Sweeney objectors")) filed objections to the revised settlement and fee request.[1] *See* Dkts. 256 (Nunez), 258 (Buckley), 259 (Frank), and 261 (Sweeney). On August 25, 2016 the final approval order for the revised settlement issued with plaintiffs' fee request granted in full. *See* Final Judgment and Order, Dkt. 288. On the basis of the substantial improvement to the revised settlement over the original 2014 settlement agreement, Frank sought and was awarded $180,000 in attorneys' fees. *Id.* at 9. The settlement administrator reported final, valid claims of 208,051 totaling $3,963,335. *See* Declaration of Joseph F. Mahan ("Mahan Decl."), Dkt. 344 ¶¶ 13-14.

**B.     The Sweeney objectors appeal the revised settlement.**

The Sweeney objectors filed timely notices of appeal within 30 days of the Final Judgment pursuant to Rule 4(a)(1)(A). *See* Dkts. 289 (Buckley), 293 (Nunez), and 298 (Sweeney). On October 4, 2016, Objector Frank filed notice of his cross-appeal pursuant to Rule 4(a)(3). *See* Dkt. 308. On October 17, 2016, class counsel moved for this Court to require the Sweeney objectors to jointly and severally post an appeal bond of $200,000. *See* Motion for Appeal Bond, Dkt. 313.[2] Two of the Sweeney objectors filed oppositions to the bond motion (Dkts. 317 and 324), but class counsel

---

[1] Frank objected only to the provision of his own attorneys' fee request, which would have more equitably resulted in shared attorneys' fees of no more than 33%. Dkt. 259 at 5-6. The court ultimately awarded these fees separately from the common fund. Order Awarding Attorneys' Fees, Dkt. 286. Frank elected not to appeal this decision because quibbling over a 2% discrepancy would have been a poor use of private and judicial resources.

[2] Class counsel's appeal bond motion also included Objector Frank. Motion for Appeal Bond, Dkt. 314. In response, Objector Frank served a Rule 11 letter on class counsel requesting retraction of false accusations and frivolous legal arguments in the memorandum. *See* Exhibit 3 to Objector Buckley Opp. to Bond Motion, Dkt. 317-3. On October 28, class counsel filed an Amended Memorandum, which omitted the false statements and did not seek an appeal bond from Objector Frank. *See* Amended Memorandum in Support of Motion Requiring Certain Objectors to Post an Appeal Bond ("Bond Memo."), Dkt. 323.

never noticed the bond motion for hearing. Plaintiffs condemned the "patently frivolous appeals" of the Sweeney objectors and sought the appeal bond to protect the class from rent seeking. *See* Bond Memo., Dkt. 323 at 11. Within days, all three of the Sweeney objectors settled their appeals with no benefit to the absent class.



On November 7, 2016, joint motions for voluntary dismissal were filed in the Seventh Circuit on behalf of all three objector-appellants. *See* Appeal Nos. 16-3507, 16-3519, 16-3541. Following the filing of motions to dismiss, Objector Frank voluntarily dismissed his cross-appeal without seeking or obtaining payment. *See* Appeal No. 16-3615. After mandate was issued, defendants and named plaintiffs jointly requested voluntary dismissal with prejudice in the district court, *see* Stipulation of Dismissal, Dkt. 332, which was granted on November 18, 2016, *see* Order Granting Dismissal with Prejudice, Dkt. 333.

**D.    Frank seeks intervention, accounting and disgorgement.**

On December 7, 2016, Objector Frank moved to intervene for the purpose of seeking disgorgement of payments made to the Sweeney objectors in exchange for dropping their appeals. *See* Motion to Intervene and Disgorge Side-Payments, Dkt. 334. The district court denied Frank's intervention motion, holding that the November 18 dismissal with prejudice meant that the district court was "without jurisdiction to adjudicate disputes arising out of the settlement." Order Denying Motion to Intervene, Dkt. 340. On May 19, 2017, Frank filed a Rule 60(b) motion to reopen the case so that he could pursue his motions to intervene and disgorge. Frank's Motion to Reopen Case, Dkt. 348. The district court denied Frank's motion, finding that Frank's request did not involve "exceptional circumstances" that warranted such relief. Order Denying Rule 60(b) Motion, Dkt. 350.

**E.    Frank appeals and the Seventh Circuit reverses.**

Frank appealed the denial of Frank's Rule 60(b) motion, Dkt. 351, and the Seventh Circuit reversed. *Pearson II*, 893 F.3d 980. The Court recognized that Rule 60 was a "safety valve for precisely these situations" where objectors extort side payments purely for personal gain. *Id.* at 985. "Rule 60(b)(6) relief was appropriate to ensure that no class sellout had occurred." *Id.* at 986. The Court observed that "selfish settlements by objectors are a serious problem." *Id.* at 986. "Frank must be allowed to pursue his theory pursuant to the ancillary jurisdiction preserved in the Settlement Judgment." *Id.* at 986.

The mandate was issued on July 18 2018. Dkt. 364. ██████████████

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████

---

[3] The confidentiality stipulation and protective order (Dkt. 379) compel Frank to file portions of this memorandum under seal. However, he reserves his right to move at a later time for the unsealing of redacted information that does not satisfy the standards for sealing set by this Circuit. *See generally Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002).

## ARGUMENT

### I. Objector Blackmail is a "Serious Problem."

"Objector blackmail" is when "an absent class member objects to a settlement with no intention of improving the settlement for the class. Instead, the objector files her objection, appeals, and pockets a side payment in exchange for voluntarily dismissing the appeal." *Pearson II*, 893 F.3d at 982; Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009). As *Pearson II* observes, "selfish settlements by objectors are a serious problem." *Id.* at 986 (citing John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to do About Them?*, 39 Fla. St. U. L. Rev. 865, 871–72 (2012)).

In district court, objectors are appropriately deterred from making selfish settlements by Fed. R. Civ. P. 23, which empowers district courts to discover whether objections are withdrawn for private payment. *See* Advisory Committee Notes to 2003 Amendment of Rule 23(e)(4)(B) (now codified at 23(e)(5)) ("If the objector simply abandons pursuit of the objection, the court may inquire into the circumstances."); Rule 23(e)(3) ("The parties seeking [settlement] approval must file a statement identifying any agreement made in connection with the proposal."). No comparable appellate rule exists for objector settlements. As a result, most objector appeals are filed for the sole purpose of obtaining individual settlement. *See* Marie Leary, *FJC Report on Class Action Objector Appeals in Three Circuit Courts of Appeals*, Federal Judicial Center (2013) at 11 ("In the Seventh Circuit, all of the identified class action objector appeals [filed January 1, 2008 through June 1, 2013] were voluntarily dismissed pursuant to Rule 42(b).").

Recently, however, the Supreme Court submitted to Congress amendments to Rule 23 that would require district court approval, after a hearing, of any "payment or other consideration" provided for "forgoing or withdrawing an objection" or "forgoing, dismissing, or abandoning an appeal," *see* Proposed Amendments to the Federal Rules of Civil Procedure, Rules 5, 23, 62, and 65.1, Slip Order at *11 (U.S. Apr. 26, 2018), https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf. As the Seventh Circuit observed, these amendments are designed to "prevent" objector blackmail and "may solve the

problem prospectively." *Pearson II*, 893 F.3d at 987. But only disgorgement will remedy the objector blackmail that was paid here.

II.    **This Court Should order Equitable Disgorgement of the Objector Blackmail Paid to the Sweeney Objectors.**

Disgorgement is an equitable remedy within the inherent power of the court. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 397-99 (1946) ("unless otherwise explicitly restricted by statute, District Courts may exercise all inherent equitable powers to fashion relief, including ordering the payment of money."). "The object of restitution [in the disgorgement context] . . . is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51(4) (2010). When confronted with an abuse of its processes, the court has inherent authority to remedy wrongdoing and craft an equitable remedy. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("A primary aspect of [the court's inherent] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). Here, the court should exercise its equitable discretion to disgorge profit that would otherwise result from the Sweeney objectors abuse of the class action process to extract private gain.

While the Court's authority is not unbounded, it is appropriately exercised here because disgorgement complements the current and proposed amendments to the Federal Rules of Civil Procedure. "Sanctions authorized only by the inherent power of the court are . . . available only when no direct conflict with laws or national rules of procedure would arise." *Kovilic Constr. Co. v. Missbrenner*, 106 F.3d 768, 773 (7th Cir. 1997). Because the proposed amendments to Rule 23 are designed to "prevent" objector blackmail, *Pearson II*, 893 F.3d at 987, disgorgement here accomplishes the Rules' purpose by undoing the abuse the Rules seek to prevent.

Further, disgorgement is appropriate here because it is proportional to the wrongdoing. Disgorgement perfectly "fits the crime" of bad faith settlements, because it recovers precisely what the Sweeney objectors appropriated for themselves. *See Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961, 964 (7th Cir. 1999) (when exercising inherent powers to sanction, "the punishment must fit the

crime"). The Seventh Circuit has found that district courts possess inherent authority to revert baseless attorneys' fees in order to prevent "circuity and enforce ethical conduct in litigation before it." *Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984, 986 (7th Cir. 2002); *accord Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956, 957-58 (N.D. Ill. 2002) (ordering disgorgement of fees obtained through ethical misconduct). Identical reasoning applies here: the Sweeney objectors have vexatiously multiplied proceedings, delayed class recovery, pocketed sizable sums that equitably belong to the class, and provided no benefit to the class, so their private awards should be disgorged.

### 1. The Sweeney objectors unjustly profited from their misconduct.

Courts and commentators have lamented the phenomenon of objector blackmail by professional objectors. While good-faith objectors like Frank successfully oppose class action settlements to benefit absent class members, professional objectors instead obstruct or delay settlement proceedings so as to extract attorneys' fees in exchange for the withdrawal of an objection. *See* 7B Wright, Miller & Cooper, *Federal Practice & Procedure* § 1797.4 n.5 (3d ed. 2005). The Seventh Circuit condemns such side agreement where objectors "get paid to go away" because such payments "benefit only the [objectors] at the expense of all other parties to the litigation." *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003) (calling practice "extortion" and sanctionable). Not only do objector settlements burden the judicial system with meritless appeals calculated for individual gain at the expense of other litigants, such settlements may also "jeopardize the interests of the unrepresented class members." *Safeco Ins. Co. of Amer. v. American Int'l Group, Inc.*, 710 F.3d 754, 755 (7th Cir. 2013) (dismissing appeals where no member of the class expressed opposition to voluntary dismissal).[4] When an objector-appellant agrees to drop a meritorious appeal brought in good faith,

---

[4] *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999) declined to pursue the idea that there was need for court oversight of side agreements with objectors to withdraw appeals. But *Duhaime* was superseded by Rule 23(e)(3) and (e)(5)'s respective requirements of scrutiny of side agreements and withdrawals of objections in district court. *See* Alan B. Morrison, *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 GEO. WASH. L. REV. 428, 447 (2011). Moreover, *Duhaime* was implicitly rejected by *Pearson II*, which acknowledges the right of an absent class member to investigate side-objector appeals.

the entire class is potentially worse off because the class action settlement never receives appellant scrutiny that would have protected their interests against district-court error.

Either way, such settlements constitute an abuse of the class-action system. If the settled appeals are frivolous, individual class members are receiving unearned windfall at the expense of class recovery. If the underlying objection is meritorious, the settling parties doubly disserve the class by spending rightful class recovery to prevent appropriate review of the underlying approval and/or fee award. *Cf. Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012) ("A district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review."). If it is problematic for a neutral district judge to preclude appellate review, it is surely more so for a defendant to preclude appellate scrutiny of a settlement by buying off individual class members challenging it.

Payments to individual class members necessarily cheat the class; this principle is well-understood in the context of named plaintiffs settling their individual claims. *Cf. Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) ("defendant may moot a class action through an offer of settlement only if he satisfies the demands of the class; an offer to one cannot moot the action because it is not an offer to all.") (citing *Sosna v. Iowa*, 419 U.S. 393, 399, 402 (1975)); *accord id.* at 1087; *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003); *Greisz v. Household Bank, N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 342 n.1 (1980) (Stevens, J., concurring). It is equally well-understood that class counsel should not use the class-action process to benefit themselves without benefit to absent class members. *See, e.g., In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016). Thus, the equities point to disgorging unjust enrichment that would otherwise result from settling objectors' cynical misuse of the class action process to extract private gain. The Sweeney objectors cheated the class by extorting these side deals and only disgorgement of such funds will remedy such deceit.

2.   **Objector-appellant windfall constitutes rightful class recovery and should be clawed back for equitable distribution.**

Side agreements for private pecuniary gain siphon funds that rightfully belong to the class. The Sweeney objectors may argue that the Side Agreements were separate, so such funds are not part of the settlement and don't belong to the class. Not so. The Seventh Circuit rejected this idea in *Pearson I*. There, class counsel attempted to justify the settlement's "kicker" or "reversion" clause where class counsel had negotiated fees separately from the settlement fund, which meant that any reduction in the fee award could not return to the class but would instead revert back to defendants. *Pearson I*, 772 F.3d at 786. The Seventh Circuit could find no "justification" for such a clause, reasoning that the "economically rational defendant will be indifferent to the allocation of dollars between class members and class counsel" and "car[es] only about his total liability." *Id.* at 786-87. Because "the entire settlement amount comes from the same source," all payments to settle a class action "represent a package deal." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *cf.* Manual for Complex Litig. § 21.75 (4th ed. 2008) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class."). All class action payments ultimately derive from resolution of the underlying claims. *See Pearson I*, 772 F.3d at 786. *Pearson II* likewise recognizes this fact, otherwise why allow an absent class member to investigate untoward objector side-deals?

Here, the Sweeney objectors misused appellate procedure to divert additional funds solely to themselves, but the side payments ultimately derive from the underlying action. ████████████ ████████████████████████████████████████████████████████████ The Sweeney objectors' leverage comes from the underlying release of the entire class, so benefits extracted based on such leverage ought to benefit all class members. Courts ought not reward vexatious and pointless appeals after the class has secured its award. *Cf. Greisz v. Household Bank, N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) ("Once a party has won his suit and obtained the

attorney's fees that were reasonably expended on winning, additional attorney's fees would not be reasonably incurred.").

Class members should not connive additional individual benefits for themselves, and the court should equitably disgorge ill-gotten gains to the entire class. Courts generally do not allow individual class members who have not opted out to settle on superior terms. For example, service awards may be approved to compensate named plaintiffs for their effort, but this does not imply parties can divert funds to prioritize the interests of individual class members. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (disapproving use of "the class device...to obtain leverage for one person's benefit."). This is why courts must approve incentive awards to individually-named class members, such as the $5,000 payments approved to each of the class representatives in this case. *See* Final Judgment, Dkt. 288 at 9. Such awards are appropriate, with court approval, for the time and expense named class members spend on securing the fund for the entire class. But it is inequitable for individual class members to advantage themselves over other class members in side deals without conferring the class any benefit and without judicial oversight.



Whether the underlying appeals were meritorious or not, the class does not benefit from objector blackmail, and these payments ought to be disgorged.

### 3. *Young v. Higbee* compels disgorgement because the Sweeney objectors purported to appeal on behalf of the class but sold out for private gain.

As illustrated in the Supreme Court's decision in *Young v. Higbee*, 324 U.S. 204 (1945), equities favor disgorging the ill-gotten gains of the Sweeney objectors' blackmail. *Young* involved a

proposed bankruptcy reorganization of The Higbee Company department store. 324 U.S. at 206. Two preferred shareholders (Potts and Boag) objected to the confirmation of the plan, contending that junior debt was allocated too great a share of the plan's proposed distribution. *Id.* After the district court overruled their objections and confirmed the plan, they appealed to have the confirmation set aside based upon the unfair treatment of preferred shareholders like themselves. *Id.* at 206-07. But rather than proceed on that argument, they "sold" their appeal to the junior debt holders (i.e., they settled and dismissed their appeal) for a personal payoff. *Id.* at 207. Another preferred shareholder (Young) intervened to compel an accounting by the initial appellants to disgorge the proceeds of the sale of their appeal to the other preferred shareholders. *Id.* at 208. A special master, the district court and the circuit court of appeals presumed that because Potts and Boag "had not acted as representatives of a class" there was no justification for disgorgement. *Id.*

The Supreme Court reversed and required disgorgement. Even though "Potts and Boag did not expressly specify that they appealed in the interest of the whole class of preferred stockholders" the basis of that appeal "was that every other preferred stockholder, as well as themselves, would be injured by confirmation." *Id* at 209. Their rights were "inseparable" and "[e]quity looks to the substance and not merely the form." *Id.* By appealing from a judgment that affected "a whole class of stockholders," "at the very least they owed them an obligation to act in good faith." *Id.* at 210.

Here, all of the settling objectors filed objections that exclusively concerned issues of common interest to all class members such as notice and attorneys' fees. *See* Nunez's Objection, Dkt. 256; Buckley's Objection, Dkt. 258; Sweeney's Objection, Dkt. 261. None of the settling objectors suggested that their claims were idiosyncratic to individual circumstances, but instead advanced objections with applicability to an entire class. *See id.* Indeed, like in *Young* where the appeal was "alleged to be for the benefit of [the class]," *id.* at 214, one of the Sweeney objectors' appeals expressly sought to protect the "putative class' interests," *see* Plaintiff-Intervenor Randy Nunez' Opposition to Motion Requiring Objectors to Post an Appeal Bond, Dkt. 324 at 5.

Further, to the extent that the appeals had merit, the settlements are losses to the class because "appellate correction of a district court's errors is a benefit to the class." *Crawford v. Equifax*

*Info Servs.*, 201 F.3d 877, 881 (7th Cir. 2000). More likely, the three appeals lacked merit, the settlements are losses to the class because the "the money [objectors] received in excess of their own interest as [class members] was not paid for anything they owned." *Young*, 324 U.S. at 213. The fruit of the appeal "properly belongs to all [class members]." *Id.* at 214. That the value of the appeal was exacted through settlement rather than through a litigated conclusion does not change this fact. *Id.* at 213-14. Just as Potts and Boag proceeded under the "statutory privilege of litigating for the interest of a class," so too did the settling objectors in this case. That the privilege at issue was conferred under Fed. R. Civ. P. 23(e)(5), rather than the Bankruptcy Act of 1938 makes no difference. *See Murray*, 434 F.3d at 952 (citing *Young* in support of idea the class device may not be "used to obtain leverage for one person's benefit"). "This representative responsibility is emphasized by the fact that they might have been awarded compensation for their services had they succeeded [on appeal] to the advantage of all the [absent class members]." *Young*, 324 U.S. at 213; *accord Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). Indeed, Frank was awarded fees for his good faith objection and meritorious appeal in this very case. The Sweeney objectors here are positioned identically to the objectors who sold their claims in *Young*. Because no statute curtails the district court's equitable discretion with regard to class action objections, this Court should apply *Young* and correct the Sweeney objectors' unjust enrichment by ordering disgorgement of the objector blackmail.

   4. **Payments to objector-appellants who have accomplished nothing for the class are otherwise inequitable and bad public policy.**

  Frank and his attorneys, through hundreds of hours of work over several years, won a hard-fought landmark appeal over the original settlement approval that resulted in a settlement that quadrupled actual class recovery in this case by over $3 million. For his successful objection improving class recovery, the court awarded him $180,000 in attorneys' fees, a small percentage of the improvement to the class, and one awarded on top of class counsel's fees. (This payment was substantially lower than it could have been, because Frank, as a *pro se* objector, was not entitled to seek fees for his own valuable work on the case.)

Moreover, such payments create perverse incentives. If a bad-faith objector can realize more profit per hour of work by bringing an unsuccessful objection and failing to prosecute an appeal than a good-faith objector can by bringing a successful objection and putting in the work to prosecute a successful appeal, it means that courts will be blizzarded with more bad-faith objections designed to fail than good-faith objections attempting to succeed—as this very case illustrates.

To add insult to injury, the cacophony of bad-faith objections can taint district court perceptions of meritorious good-faith objections. *E.g., In re Target Corp. Customer Data Security Breach Litig.*, 2016 WL 259676 at *1 (D. Minn. Jan. 20, 2016) (grouping CCAF client with bad-faith "professional objectors" and imposing oversized appeal bond), *reversed*, 847 F.3d 608 (8th Cir. 2017) (holding appeal bond *ultra vires* and reversing district court for failing to address CCAF's class-certification objection); *Dewey v. Volkswagen AG*, 728 F. Supp. 2d 546, 574-75 & n.19 (D.N.J. 2010) (grouping Frank with bad-faith "professional objectors" and rejecting Frank's clients' Rule 23(a)(4) objections), *reversed*, 681 F.3d 170 (3d Cir. 2012).

### III.  The Disgorged Funds Should be Equitably Distributed.

On February 20, 2017, plaintiffs filed a motion for court approval of distribution of settlement funds, seeking to distribute $3.96 million to class members. *See* Pls. Memo. in support of Motion for Court Approval of Distribution of Class Settlement Funds ("Distribution Memo"), Dkt. 343 at 1. This Court denied the Distribution Memo for the same reasons it denied Frank's Rule 60(b) motion, *i.e.*, the court concluded it was without jurisdiction to rule on the Distribution Memo. *See* Minute Order, Dkt. 347. It is Frank's understanding that the settling parties proceeded without

obtaining formal court approval and distributed the settlement funds to the class members.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Because it is not likely feasible to distribute such funds to class members, this may be one of the limited circumstances in which *cy pres* distribution would be appropriate. *See* Brief for Petitioners at 51, *Frank v. Gaos*, No. 17-961 (U.S.) (oral argument scheduled for Oct. 31, 2018).

The Settlement Agreement in this case includes a *cy pres* provision where "left over monies" from the Net Settlement Fund (*e.g.*, from uncashed checks) would be distributed to the Orthopaedic Research and Education Foundation ("Orthopaedic Foundation"). *See* Settlement Agreement, Dkt. 213-1 at 7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Court may also elect to escheat such disgorged funds to the Treasury of the United States pursuant to 28 U.S.C. § 2042. *See Nachsin v. AOL*, 663 F.3d 1034, 1041 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990)). Whether the court distributes the funds to a *cy pres* recipient or the funds escheat to the Treasury, such disbursement is more fair than condoning the unethical behavior of the Sweeney objectors. *Cf. Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex. 1999) ("main purpose" of disgorgement is not compensation, rather it is discouraging future wrongdoing).

## CONCLUSION

This Court should order disgorgement of the side payments to the objector-appellants who failed to obtain benefits for the class as a whole and order further relief as the Court deems just.

Dated: October 4, 2018.

/s/ Melissa A. Holyoak
M. Frank Bednarz, (ARDC No. 6299073)
Melissa A. Holyoak, (DC Bar No. 487759)
COMPETITIVE ENTERPRISE INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1310 L Street, NW, 7th Floor
Washington, D.C. 20005
Phone: (573) 823-5377
Email: melissaholyoak@gmail.com

*Attorneys for Theodore H. Frank*

## CERTIFICATE OF SERVICE

The undersigned certifies she electronically filed the foregoing Memorandum in Support of Motion to Disgorge via the ECF system for the Northern District of Illinois under seal, including a redacted publicly-available version of the Memo. Additionally, she caused to be served via email and overnight carrier an unredacted copy of this Memo upon the following attorneys and persons that are authorized to receive material designated as Confidential under the Confidentiality Stipulation and Protective Order, Dkt. 379:

| | |
|---|---|
| James Richard Patterson<br>Patterson Law Group, Apc<br>402 West Broadway, 29th Floor<br>San Diego, CA 92101<br>jim@pattersonlawgroup.com | Patrick S. Sweeney<br>2672 Mutchler Road<br>Madison, WI 53711<br>patrickshanesweeney@gmail.com |
| John J. Pentz<br>19 Widow Rites Lane<br>Sudbury, MA 01776<br>Jjpentz3@gmail.com | Elaine A. Ryan<br>BONNETT, FAIRBOURN, FRIEDMAN &<br>BALINT, P.C.<br>2325 E. Camelback Rd., Suite 300<br>Phoenix, Arizona 85016<br>eryan@bffb.com |
| Kara L. McCall<br>SIDLEY AUSTIN LLP<br>One South Dearborn Street<br>Chicago, IL 60603<br>kmccall@sidley.com | Peter N. Freiberg<br>DENLEA & CARTON LLP<br>2 Westchester Park Drive, Suite 410<br>White Plains, New York 10604<br>pfreiberg@denleacarton.com |
| Stewart M. Weltman<br>SIPRUT PC 17 North State Street, Suite 1600<br>Chicago, Illinois 60602 (312) 236-0000<br>sweltman@siprut.com | |

The undersigned further certifies she caused to be served via First-Class mail a copy of the redacted, publicly available version of the Memo upon the following:

| | |
|---|---|
| Peggy Thomas<br>Simone Thomas<br>2109 N.W. 12th Avenue<br>Ft. Lauderdale, FL 33311 | Melissa Rachel Pavely<br>Stein, Ray & Harris LLP<br>222 West Adams Street<br>Suite 1800<br>Chicago IL 60606 |

Dated: October 4, 2018                    /s/ Melissa A. Holyoak