UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS,<br><br>On Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation<br><br>    Defendants. | Case No. 11-CV-07972<br><br>CLASS ACTION<br><br>Hon. John Robert Blakey |
| THEODORE H. FRANK,<br><br>    Objector/Intervenor. | |

**OBJECTOR/INTERVENOR THEODORE H. FRANK'S SUR-REPLY IN SUPPORT OF MOTION TO DISGORGE SIDE PAYMENTS WITH RESPECT TO RANDY NUNEZ IN VIEW OF JAMES PATTERSON'S DECLARATION**

The Declaration of James R. Patterson (Dkt. 405) avers facts that he contends undermine Intervenor Theodore H. Frank's Motion to Disgorge Side Payments with respect to Randy Nunez. However, nothing in the Declaration contradicts Frank's argument that Nunez, like the other Sweeney objectors, "pocket[ed] a side payment in exchange for voluntarily dismissing the appeal." *Pearson v. Target Corp.*, 893 F.3d 980, 982 (7th Cir. 2018) ("*Pearson II*"). The Paterson Declaration cannot alter the plain language of Nunez's Side Agreement with defendant, which by its own terms "is intended . . . as a final expression of their agreement," and which "supersedes any and all prior promises, representations, warranties, draft agreements, agreements, understandings, and undertakings between or among the Parties." Dkt. 377, Ex. 3 at 4.

Frank does not dispute any of the facts contained in the Declaration, but only the *legal conclusions* that "resolution of Nunez's claims pending in the Nunez Action, and dismissal of the Nunez Action were material terms of the agreement." Dkt. 405 ¶ 10. The Side Agreement unambiguously compensated Nunez only for dismissing his appeal, and extrinsic evidence need not be considered. But even if the contract were ambiguous, a comparison to the Buckley Side Agreement shows that the California action provided Nunez no incremental settlement value, and Nunez circumvented Rule 23(h), which independently merits disgorgement. Nunez's Side Agreement provided no benefit to the class; disgorgement should be ordered from Nunez like the other Sweeney objectors, who leveraged the value of the underlying settlement for private pay-offs.

**I.      Nunez's settlement agreement is unambiguous as a matter of law.**

The Side Agreement between Nunez and defendants stipulates that consideration be paid in exchange for two conditions: "Objector agrees to move for dismissal of Objector's Appeal within 24 hours of execution of this Agreement" and agrees not to opt out of the underlying *Pearson* settlement. Dkt. 377, Ex. 3 at 2. The agreement does not even allude to the existence of the *Nunez* action, let alone require the dismissal of this suit. In fact, the agreement with Nunez is verbatim with the agreements reached with the other Sweeney objectors except for names, addresses, and dollar figures.

The written agreement unambiguously required Nunez only to dismiss his appeal while remaining bound by the *Pearson* settlement. As such, extrinsic parol evidence is unnecessary because no ambiguity within the Side Agreement would plausibly compel the conclusion that Nunez was paid for dismissing his action in the Southern District of California. To the extent the Patterson declaration and its exhibits suggest that either of the parties assumed a different result, this does not alter the meaning of an unambiguous written contract. "The introduction of parol evidence to establish ambiguity in a facially unambiguous, signed, dated and fully integrated contract is a practice which the Illinois Supreme Court has, to this date, neither condoned nor sanctioned." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 879 (7th Cir. 2005).

The agreement at issue here is even less ambiguous than the one in *Davis*, where the agreement did not expressly label itself as a fully integrated agreement. An integrated contract necessarily includes every material term "and parol evidence cannot be admitted to add another item to the agreement." *Id.* at 878-879. The agreement between Nunez and Defendants is emphatic that it is fully integrated. Under the heading "Entire and Integrated Agreement," it states:

> This Agreement is intended by the Parties hereto as a final expression of their agreement and is intended to be a complete and exclusive statement of the agreement and understanding of the Parties hereto with respect to the subject matters contained herein. **This Agreement supersedes any and all prior promises**, representations, warranties, draft agreements, agreements, understandings, and undertakings between or among the Parties hereto with respect to such subject matters and **there are no other or further promises, representations, warranties, agreements, understandings, or undertakings with respect to such subject matters.**

Dkt. 377, Ex. 3 at 4 (emphasis added). "[W]here parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 885 (Ill. 1999).

During the status hearing on December 18, 2017, counsel for Nunez suggested that the settlement agreement with his client could be read to require dismissal given broad generic language of the agreement to the effect that it settles "all claims." But broad generic language cannot be read

to impose additional unnamed duties on a party. *Cf. Davis*, 396 F.3d at 879. Not one word of the agreement suggests a requirement to dismiss the California action. Perhaps Nunez could argue that the requirement not to opt-out of the *Pearson* settlement necessitates the dismissal of his California action. While it is true that the *Pearson* settlement resolved Nunez's individual claims, this result was foreclosed long before Defendants struck their Side Settlement. The deadline to request exclusion from the underlying settlement was six months earlier, on May 26, 2016. Dkt. 238 at 10. While courts sometimes grant leave for class members to belatedly opt out of a settlement, Mr. Nunez was represented by competent counsel aware of the significance of requesting exclusion, so a belated effort to save his individual action would unlikely succeed. Therefore, Defendant's inclusion of a belts-and-suspenders requirement for all of the Sweeney objectors to remain bound by the settlement cannot be read to impose a separately-enforceable duty on Nunez alone.

The California action became unviable due to *res judicata* once final approval was granted in a class that Nunez failed to opt out of. That the parties expected to—and did—dismiss the California action is the unremarkable consequence of Nunez's claims being finally resolved in the *Pearson* settlement. Opposing counsel often draft stipulated filings for each other, and the fact that defendants drafted the California notice of dismissal is unremarkable, much less does it alter the Side Agreement.

Facts outside the Side Agreement have no bearing on its interpretation as a matter of law. Instead, as the Seventh Circuit condemned and Frank previously argued, "A potential benefit for the class—a better settlement—[was] leveraged for a purely personal gain—a side bargain." *Pearson II*, 893 F.3d at 982. This side bargain should be unwound for all the reasons Frank previously argued.

II. **Even if parol evidence were considered, it does not militate against disgorging fees from Nunez and his counsel.**

Even if the agreement could be read as ambiguous, extrinsic evidence shows that the entire settlement value derives from dismissal of the appeal, not the hypothetically-required dismissal of the California action. Nunez was paid exactly what fellow objector-appellant Steven Buckley was paid to dismiss his appeal. Buckley did not have a separate action against defendants, so the fact he

was paid the same price suggests no incremental settlement value for California action. This is unsurprising. The California action was entirely resolved due to *res judicata* and had no independent value given that Nunez was bound by the *Pearson* class certification. Therefore, the entire value of the payment for Nunez accrued through selfish dismissal of the appeal. This is the value that Frank seeks to disgorge.

In any event, even if Nunez *had* been paid for dismissal of his putative class action, this payment should still be disgorged. In the first place, Nunez and his counsel did no work that resulted in a common benefit, which might entitle them to attorneys' fees. The class benefit was obtained without the assistance of Nunez's counsel; in fact, Nunez narrowly objected that his counsel was *not* involved in settlement negotiations. Dkt. 256. Even assuming *arguendo* that Nunez and his counsel conferred a benefit to the class meriting compensation, Nunez improperly circumvented the Rule 23(h) fee approval process. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. . . . (1) A claim for an award must be made by motion under Rule 54(d)(2), . . . (2) A class member, or a party from whom payment is sought, may object to the motion." Fed. R. Civ. P. 23(h). This rule applies to objectors. "If the consideration involves a payment to counsel for an objector, the proper procedure is by motion under Rule 23(h) for an award of fees." Advisory Committee Notes to 2018 Amendment of Rule 23. Objectors must move under Rule 23(h), as Intervenor Frank did when he successfully requested attorneys' fees for helping provide an additional $4.1 million to class members. Dkts. 245 at 1; Dkt. 288 at 9. Rule 23(h) has governed all fee awards in class actions—including those by objectors—since 2003 and only permits fees by court order awarding after a duly-noticed "motion under Rule 54(d)(2)." Fed. R. Civ. P. 23(h)(1). As the committee notes observe, "any claim for an award of attorney fees must be sought by motion." Advisory Committee Notes to 2003 Amendment to Rule 23. This includes both awards to class counsel and to objectors' counsel. *Id.* (contemplating "an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e)").

Here, even though Nunez purported to represent a substantially overlapping (or identical) class, and even though he declined to exclude his individual claims from class-wide release, he purports to have earned attorneys' fees for his putative class action, yet he did not file any claim for such fees under Rule 23(h). Disgorgement is warranted to remedy Nunez's flouting of Rule 23(h).

**III.     Nunez' settlement provided no benefit to the class.**

At the motion hearing on December 18, 2018, Nunez's counsel suggested that his appeal could be distinguished because he was the last holdout to resolving all the appeals. Mr. Patterson declares that he was "informed by Defendants' counsel that all other objectors/appellants had agreed to resolve their respective appeals" prior to executing the Nunez settlement. Dkt. 405 ¶ 7.

But counsel provides no value by simply removing an obstacle that counsel himself created. Nunez and the other objector-appellants filed notices of appeal, which stayed distribution of the settlement funds. Nunez cannot claim to have benefitted the class simply because he agreed to drop his appeal 45 days later after receiving an individual pay-off. A recent treatise drafted by several prominent class action practitioners explains regarding the procedure a judge should undertake in investigating objector payoffs under recently-amended provisions of Rule 23:[1]

> [A] court may not consider as a benefit to the class members the time that would otherwise be spent addressing the withdrawn objection or appeal. The sole fact that the withdrawal of an objection or dismissal of an appeal will expedite distribution of the settlement funds does not justify payment to withdraw an improper objection or dismiss an improper appeal. Otherwise every improper objection would be subject to compensation on these grounds.

Duke Law Bolch Judicial Institute, GUIDELINES AND BEST PRACTICES IMPLEMENTING 2018 AMENDMENTS TO RULE 23 CLASS ACTION SETTLEMENT PROVISIONS, 25 (Aug. 2018), available online at https://judicialstudies.duke.edu/wp-content/uploads/2018/09/Class-Actions-Best-

---

[1] Going forward, Rule 23(e)(5)(B) requires objectors to obtain court approval before receiving fees for dismissing an appeal. While the Sweeney objectors' conduct in 2016 does not fall under this rule, similar considerations prompted the Seventh Circuit to remand this case and should guide the Court here. *See Pearson II*, 893 F.3d at 987 (referring to "amendment of Rule 23 designed to prevent this problem from recurring").

Practices-Final-Version.pdf. Thus, even though Nunez was the last to agree to dismiss his appeal, the broken window fallacy does not entitle him to attorneys' fees.

## CONCLUSION

Because the Nunez Side Agreement is verbatim with the other agreements and contains no ambiguity admitting parol evidence, as a matter of law, Nunez was simply compensated for dismissing his appeals. This Agreement provided no benefit to absent class members and should be disgorged.

Dated: February 6, 2019.
/s/ Melissa A. Holyoak
M. Frank Bednarz, (ARDC No. 6299073)
Melissa A. Holyoak, (DC Bar No. 487759)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW
Suite 300
Washington, DC 20006
Phone: (573) 823-5377
Email: melissa.holyoak@hlli.org

*Attorneys for Theodore H. Frank*

## CERTIFICATE OF SERVICE

The undersigned certifies she electronically filed the foregoing Sur-Reply in Support of Motion to Disgorge via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing. Additionally, she caused to be served via First-Class mail a copy of this Notice upon the following:

| | |
|---|---|
| Peggy Thomas<br>Simone Thomas<br>2109 N.W. 12th Avenue<br>Ft. Lauderdale, FL 33311 | |

Dated: February 6, 2019                              /s/ M. Frank Bednarz