**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NICK PEARSON, et al., | |
| Plaintiffs, | Case No. 11-cv-7972 |
| v. | |
| NBTY, INC., et al., | Judge John Robert Blakey |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

This case is before the Court on Objector Theodore Frank's motion seeking disgorgement of side payments Defendants made to other objectors to settle their appeals. For the reasons explained below, the Court denies Frank's motion [381], [383].

A.  Background & Procedural History

This case, filed in November of 2011, began as a putative class action on behalf of consumers who purchased glucosamine, a dietary supplement touted to improve joint health. The named Plaintiff, Nick Pearson, alleged, on behalf of the class, that Defendants, Target Corporation, NBTY, Inc., and Rexall Sundown, Inc., violated consumer protection laws by making false claims about the efficacy of the supplement. On April 15, 2013, Pearson, along with Plaintiffs in five other cases, executed a global, nationwide settlement agreement. That initial settlement established a constructive common fund of $14.2 million, only $2 million of which was guaranteed to go to class members. The settlement also secured an additional

$6.5 million to pay notice and administrative costs, attorney's fees, and litigation expenses. Judge Zagel, to whom this case was then assigned, approved the settlement in January 2014, over the objections of several class members, including Theodore Frank, but with certain modifications. As approved, the settlement required Defendants to pay, in addition to money paid on the class members' claims: $1.5 million in notice and administration costs; $30,000 in incentive awards to the six named Plaintiffs; $1.13 million to the Orthopedic Research and Education Foundation; and $1.93 million in attorneys' fees and expenses (a significant reduction from what counsel had requested). *See* [143], [144].

The objectors, including Frank, appealed, and the Seventh Circuit reversed, determining that, although Judge Zagel had improved the settlement with his modifications, he had not gone far enough. [198]. The Seventh Circuit determined that the value to the class was not, as Judge Zagel thought, $20.2 million (the *potential* payout on claims), but $865,284–the total compensation actually paid to the class members on the 30,245 claims they ultimately filed. *Id.* at pp. 4–5. Thus, the attorneys' fees represented not 9.6 percent of the aggregate value, as Judge Zagel believed, "but an outlandish 69 percent." [198] at p. 6. The Seventh Circuit also took issue with several other provisions of the settlement, including a reversion or "kicker" clause providing that, if the court were to shave the proposed fee award, the savings would revert to Defendants and not go to class members. *Id.* at p. 16. Ultimately, the Seventh Circuit concluded that this settlement reflected "a selfish

2

deal between class counsel and the defendant" that "disserve[d] the class." *Id.* at p. 18.

On remand, the parties reached a new settlement, this time with the assistance of a neutral third-party mediator. The new settlement, in direct response to concerns raised by the Seventh Circuit, established a $7.5 million settlement fund to pay class member claims, attorneys' fees and expenses, and incentive awards. On top of that, the settlement required Defendants to pay an additional $1.5 million for notice and administration costs. The parties eliminated any "kicker" clauses from their agreement; they also simplified the claims process, upping the potential compensation and eliminating any proof of purchase requirement (in fact, while the first settlement yielded 30,245 claims, the second yielded 145,329). Additionally, the injunction component of the parties' settlement was made permanent.

Despite these improvements, several class members, including Frank, Steven Buckley, Randy Nunez, and Patrick Sweeney, filed objections. None of the objectors challenged the reasonableness of the settlement. Rather Nunez objected because his attorney, who had been named interim class counsel in another case pending in California, was not involved in the negotiations that led to the new settlement. Buckley similarly raised no challenge to the terms of the settlement but objected to class counsel's fee petition, arguing that counsel should get no more than $1.5 million. Frank similarly raised no challenge to the terms of the settlement but challenged the proposed fee award and argued that any fees awarded to his

attorney should come from class counsel's award and not from the settlement fund. Sweeney asserted a canned objection and did not even bother to cut and paste his pleadings to state the correct case information.

Judge Zagel approved the settlement, over these objections, awarded $25,000 in incentive awards to five class representatives ($5,000 to each), and awarded class counsel 33% of the net settlement fund. Additionally, Judge Zagel awarded Frank's counsel attorney's fees in the amount of $180,000, to be paid from the gross settlement fund. Judge Zagel granted preliminary approval on February 1, 2016 [238] and final approval on August 25, 2016. *See* [288]. The motion for distribution filed on February 2, 2017 shows that the approved class recovery amount was $3,963,335.32. *See* [344].

Nunez, Buckley, Sweeney, and Frank filed separate notices of appeal. *See* [289], [293], [298], and [308].[1] The Seventh Circuit consolidated the appeals and set a single briefing schedule. But before briefing began, Nunez, Buckley, and Sweeney voluntarily dismissed their appeals. The day the Seventh Circuit dismissed those appeals, Frank voluntarily dismissed his appeal, which entered separately that same day. Thereafter, Plaintiffs and Defendants asked Judge Zagel to dismiss the case with prejudice, and he did, on November 18, 2016 [333].

Frank subsequently moved to intervene, seeking to disgorge any side payments made to the three objectors, Nunez, Buckley, and Sweeney. Because Judge Zagel had by then dismissed the case with prejudice, this Court, having

---

[1] Buckley's appeal, Case No. 16-3507, was docketed 9/23/16; Nunez' appeal, No. 16-3519, was docketed 9/26/16; Sweeney's appeal, No. 16-3541, was docketed 9/27/16; and Frank's appeal, No. 16-3615, was docketed 10/5/16.

4

received the case on reassignment, denied the motion on jurisdictional grounds [340].

Frank appealed, and the Seventh Circuit reversed. In doing so, the Court noted that Frank had potentially identified a case of "objector blackmail"–the phenomenon where an absent class member objects to a settlement with no intention of improving the settlement for the class, but with the sole purpose of garnering a side payment in exchange for voluntarily dismissing the appeal. In such cases, "a potential benefit for the class–a better settlement–is leveraged for a purely personal gain–a side bargain." *Pearson v. Target Corp.*, 893 F.3d 980, 982-83 (7th Cir. 2018). The Seventh Circuit determined that the circumstances –"three objectors voluntarily dismissed their appeals before appellate briefing began"–were such that this Court should have allowed Frank formally to raise his suspicion that the settling objectors acted in bad faith.

On remand, consistent with the Seventh Circuit's directives, this Court provided Frank with the opportunity to pursue his theory. The parties conducted discovery, filed motions, and argued the matter, but the record failed to confirm suspicions of blackmail or other wrongdoing. As such, the evidence does not warrant disgorgement, and this Court denies Frank's motion [381], [383].

B. <u>Discussion</u>

For the Court to order disgorgement, Frank would have to demonstrate that the objector/appellants violated some rule or statute or did something unlawful, that the settlement payments amounted to ill-gotten gains. *See Porter v. Warner*

*Holding Co.*, 328 U.S. 395, 397–99 (1946) (recognizing the appropriateness of invoking the court's equitable powers to enjoin illegal acts and practices); *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, No. 18-2847, 2019 WL 3940917, at *27 (7th Cir. Aug. 21, 2019) ("primary purpose of disgorgement orders is to deter violations of the laws by depriving violators of their ill-gotten gains"); *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1640 (2017) ("disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain'") (quoting Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment a, p. 204) (2010)). Without more, the dismissal of an appeal does not necessarily indicate objector blackmail. Litigants routinely dismiss matters for reasons other than blackmail (as Frank knows, having himself dismissed his appeal). And litigants settle disputes every day for reasons having nothing to do with the merits of their claims or defenses. The dismissals raised red flags on appeal because the Seventh Circuit thought that they came possibly at the expense of the class. *See* [366] at p. 8. But after considering the evidence and arguments on that question, this Court cannot say that is the case.

The settlement agreements executed by Defendants and the three objector/appellants show that Defendants NBTY and Rexall paid $10,000 to Patrick Sweeney, $60,000 to Steven Buckley, and $60,000 to Randy Nunez in exchange for each objector/appellant's agreement to remain part of the *Pearson* class, to dismiss his appeal, and to release all claims, including any claim for fees. *See* [377]. Initially, each of these settlements was far less than the $180,000 Frank received.

Frank suggests that the appeals were meritless, designed to leverage payments that should have gone to the class. But at the initial status hearing following the Seventh Circuit's remand, Frank conceded that he had no evidence to support his claim of objector blackmail. Moreover, his assertion remains demonstrably false with respect to at least two of the objectors. In response to Frank's motion, Buckley explained that he filed his objection and his notice of appeal challenging only counsel's fee petition–a challenge similar to that asserted by Frank. *See* [386]. Buckley represented that he did not file his objection or notice of appeal to leverage a settlement from Defendants. His attorney also submitted a declaration, [406], representing that his appellate brief was largely drafted when Defendant NBTY initiated settlement discussions. Counsel further represented that, in exchange for dismissing his appeal, Buckley received $60,000, with the vast majority ($55,000) going to his attorney to compensate him for the time he actually spent prosecuting the appeal.

Randy Nunez represented that his appeal did not challenge any term of the settlement; nor did he challenge class counsel's fee award. Rather, Nunez's sole claim on appeal argued (in good-faith and with cause) that it was improper for Defendants to settle with the named plaintiffs in Pearson's case, when Nunez's counsel had been named interim class counsel in the California case and therefore had sole authority to negotiate any potential resolution of the claims asserted in Nunez's case. *See* [405]. Nunez's counsel further represented that they opted to dismiss his appeal and the California case, rather than hold up the distribution of

7

funds to class members, ultimately dismissing both in exchange for a remedial $60,000 payment.

It is not clear why Sweeney chose to appeal or why he opted to settle. But the question is irrelevant. First, everyone agrees that the money paid to Nunez, Buckley, and Sweeney came from funds separate and apart from the settlement fund. The objectors and Defendants represent that these funds were never earmarked for the class, and there is no evidence to suggest that they would have gone to the class had they not gone to the objectors. Nothing in the settlement required Defendants to put up all the money they had; nor was there anything in the settlement to preclude Defendants from paying more in the end than they ultimately agreed to pay in the settlement agreement. Nor does the Court have a basis to find that the appeals, had the objectors pursued them rather than settle them, would have benefitted the class. Quite simply, the Court has no basis to conclude that the side settlements harmed the class in any way. If anything, class members benefitted from the side settlements, because they allowed the class settlement to become final, thereby ensuring prompt payment of class members' claims.

When asked to point to something in the record to show that the money, had it not been paid to objectors, would have gone to the class, Frank argued that *any* funds paid by the Defendants were earmarked for the class. That unfounded assertion runs contrary to the parties' settlement agreement, which set the amount to be paid to the class without regard to any objector settlements; Defendants paid

8

that amount and the class received that amount. Any amounts paid to the objectors were above and beyond what Defendants agreed to pay to the class, and nothing in the record suggests that the class would have received that money had Defendants not paid it to objectors.

Frank's assertions notwithstanding, this Court does not read the Seventh Circuit's decision to preclude all payments beyond those contemplated in a settlement agreement. Nor has the Seventh Circuit held that all side settlements necessarily remain problematic or improper. Indeed, *Safeco Insurance Company of America v. American International Group*, 710 F.3d 754, 758 (7th Cir. 2013), instructs that side settlements can, in fact, be acceptable. In *Safeco*, after describing the side settlement, the Seventh Circuit observed that the "terms of the settlement do not matter to the other members of the class, who still split $351 million among them." *Id.* at 756. Likewise, the side settlements here had no effect on the settlement fund or the class distributions. The money Defendants paid to the objectors remained separate and apart from the settlement fund; the settlement fund was firmly defined before the objectors filed their appeals; and there simply is no mechanism by which those funds would have gone to the class. As such, the settlements did not deprive any class member of his or her reasonable expectations– on the contrary, class members got exactly what they bargained for. Absent some indication that such settlements harm the class or somehow diminish the relief available to the class, this Court finds no basis to inject itself into these arms' length transactions with an unfounded order of disgorgement.

9

C.  Conclusion

For the reasons explained, the Court finds no evidence to show that the side settlements reached between Defendants and objector/appellants Nunez, Buckley, and Sweeney harmed the class or came at the expense of the class.  As a result, equitable relief such as disgorgement is neither available nor appropriate.  Accordingly, Frank's motion seeking to disgorge side payments [381], [383] is denied.

Dated:  September 23, 2019

Entered:

_____
John Robert Blakey
United States District Judge