UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK PEARSON, FRANCISCO PADILLA, CECILIA LINARES, AUGUSTINA BLANCO, ABEL GONZALEZ, and RICHARD JENNINGS, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> NBTY, INC., a Delaware corporation; and REXALL SUNDOWN, INC., a Florida corporation; TARGET CORPORATION, a Minnesota Corporation <br><br> Defendants. | Case No. 11-CV-07972 <br><br> <u>CLASS ACTION</u> <br><br> Hon. Elaine E. Bucklo |
| THEODORE H. FRANK, <br><br> Objector/Intervenor. | |

**OBJECTOR/INTERVENOR THEODORE H. FRANK'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO ADMINISTER CONSTRUCTIVE TRUST**

TABLE OF CONTENTS

**Table of Contents** .................................................................................................................... ii

**Introduction** ...............................................................................................................................1

**Background** ...............................................................................................................................2

**Argument** ...................................................................................................................................7

      I.    Objector blackmail should be clawed back from all attorneys who received it. ................7

      II.   Frank intends to seek attorneys' fees from the constructive trust. ......................................8

      III.  Preferably, the Court should order funds paid directly to a random sample of claimants through an equitable lottery. ................................................................................9

      IV.  Alternatively, the Court may order the constructive trust to a *cy pres* recipient. ................11

**Conclusion** ............................................................................................................................... 12

## INTRODUCTION

Judge Zagel granted final approval to a Settlement Agreement of the underlying litigation six years ago, on August 25, 2016. Dkt. 288. However, three sets of objectors—Steven Buckley, Randy Nunez, and Patrick Sweeney ("Buckley objectors")—appealed final approval purportedly on behalf of all class members, but instead settled for private payments totaling $130,000 paid by the settling parties. Dkts. 377 & 400. Such "selfish settlements by objectors are a serious problem." *Pearson v. Target Corp.*, 893 F.3d 980, 986 (7th Cir. 2018) ("*Pearson II*").

Objector-Intervenor Theodore H. Frank worked persistently to fix the problem, winning two appeals along the way. Frank established that the Court retains jurisdiction to investigate side-settlement with objectors, in spite of parties' stipulated dismissal. *Id.* at 987. Frank then reversed denial of his motion to disgorge money from the Buckley objectors. *Pearson v. Target Corp.*, 968 F.3d 827, 837 (7th Cir. 2020) (*Pearson III*). Following his third successful appeal in this case, the Seventh Circuit agreed Circuit Rule 36 should apply on remand, thus reassigning the case. *Id.* at 838.[1]

The Seventh Circuit decided that the funds must be disgorged from the Buckley objectors. "Money that class counsel were willing to part with to finally resolve the litigation consisted of savings that ought to have enured to the class—not to defendants, the three objectors, or their lawyers." *Id.* at 836. Only one issue remains on remand: how to best administer the "constructive trust" for class benefit. *Id.* The settlement attracted over 200,000 claimants, a number that dwarfs the $130,000 extracted by Buckley objectors, but this imbalance need not prevent supplemental class recovery.

Frank proposes that all claimants previously paid by the settlement administrator have an equal chance to receive a supplemental award of $10 to $100. This "lottery" distribution gives all class members equal probability to receive a supplemental award. Alternatively, the recovered money may be paid to the same non-profit *cy pres* recipient that already received residual funds by operation of the underlying Settlement Agreement.

---

[1] Frank first successfully appealed his objection to an inferior 2014 settlement to the underlying litigation. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014) ("*Pearson I*") (crediting Frank for having "flagged fatal weaknesses in the [original] proposed settlement.").

In either case, Frank proposes that attorneys for the Buckley objectors deposit the constructive trust into escrow with the Clerk of the United States District Court for the Northern District of Illinois. Once repaid, Frank intends to file a timely motion for attorneys' fees not to exceed one third of the recovered amount, with the remainder to be paid either to the settlement administrator or the *cy pres* recipient for the benefit of class members. In this way, the Court can execute the "remedial" purpose for the trust envisioned by the Seventh Circuit. *Id.* at 837.

The named parties to the litigation—the settling plaintiffs and defendants—do not anticipate filing further briefs in this matter. They have advised the undersigned that the only parties before the Court with an interest in the outstanding dispute are Frank and the Buckley objectors.

### BACKGROUND

**A.        After Frank's successful objection litigated in *Pearson I*, the Court approved an improved settlement in 2016.**

Theodore H. Frank objected and successfully appealed from an inferior settlement of the underlying litigation in 2014. The Seventh Circuit agreed with Frank's objection in several respects. The court found a disproportional distribution between recovery for the class ($865,284), *cy pres* ($1.13 million), and attorneys' fees with clear sailing and kicker ($4.5 million). *See Pearson I*, 772 F.3d at 781. The panel further found that administration costs should have been excluded in calculating the class benefit. *Id.* As for the settling parties, the panel found that the clear-sailing and kicker provisions reflected a "selfish" agreement, and commended Frank for "flagg[ing] fatal weaknesses in the proposed settlement." *Id.* at 787.

As a result of Frank's objection and meritorious appeal, the settling parties restructured their settlement to employ a true $7.5 million common fund, which provided approximately $3.1 million more for class recovery than the original agreement would have provided. Dkt. 213 at 7. Frank and three other objectors (Randy Nunez, Steven Buckley, and Patrick Sweeney (collectively the "Buckley objectors")) filed objections to the revised settlement and fee request. *See* Dkts. 256 (Nunez), 258

(Buckley), 259 (Frank), and 261 (Sweeney).[2] On August 25, 2016, the final approval order for the revised settlement issued with plaintiffs' fee request granted in full. *See* Final Judgment and Order, Dkt. 288. On the basis of the substantial improvement to the revised settlement over the original 2014 agreement, Frank sought and was awarded $180,000 in attorneys' fees. *Id.* at 9. The settlement administrator reported final, valid claims of 208,051 totaling $3,963,335. *See* Declaration of Joseph F. Mahan ("Mahan Decl."), Dkt. 344 ¶¶ 13-14.

B.   **The Buckley objectors settle for private payment.**

The Buckley objectors filed timely notices of appeal within 30 days of the Final Judgment pursuant to Rule 4(a)(1)(A). *See* Dkts. 289 (Buckley), 293 (Nunez), and 298 (Sweeney). Frank filed a protective cross-appeal pursuant to Rule 4(a)(3). *See* Dkt. 308. On October 17, 2016, class counsel moved for this Court to require the objectors to jointly and severally post an appeal bond of $200,000. Dkt. 313. Two of the Buckley objectors filed oppositions to the bond motion (Dkts. 317 and 324), but class counsel never noticed the bond motion for hearing. Plaintiffs condemned the "patently frivolous appeals" of the Buckley objectors and sought the appeal bond to protect the class from rent seeking. Dkt. 323 at 11.

Within days, all three Sweeney objectors settled their appeals with no benefit to the class.

On November 2, 2016, the Buckley objectors each entered into then-secret side agreements with defendants NBTY, Inc. and Rexall Sundown, Inc. *See* Confidential General Release and Settlement Agreement between Patrick Sweeney and NBTY, Inc. (November 2, 2016), Ex. A-1; Confidential General Release and Settlement Agreement between Steven Buckley and NBTY, Inc. (November 2, 2016), Ex. A-2; Confidential General Release and Settlement Agreement between

---

[2] Frank objected only to the provision of his own attorneys' fee request, which would have more equitably resulted in shared attorneys' fees of no more than 33%. Dkt. 259 at 5-6. The court ultimately awarded these fees separately from the common fund. Order Awarding Attorneys' Fees, Dkt. 286. Frank elected not to appeal this decision because quibbling over a 2% discrepancy would have been a poor use of private and judicial resources.

Randy Nunez and NBTY, Inc. (November 2, 2016), Ex. A-3 (collectively "Side Agreements").[3] Pursuant to the Side Agreements, NBTY, Inc. and Rexall Sundown agreed to pay $10,000 to objector Sweeney, $60,000 to objector Buckley and $60,000 to objector Nunez in exchange for dismissing the Buckley objectors' respective appeals. *See id.* The Buckley objectors settled their appeals for strictly personal gain: the revised class action settlement was not modified and absent class members received nothing from the Side Agreements. *Id.* These Side Agreements included confidentiality provisions prohibiting disclosure, *see id.,* and the parties did not disclose these Side Agreements to the Seventh Circuit or the district court.

On November 7, 2016, joint motions for voluntary dismissal were filed in the Seventh Circuit on behalf of all three objector-appellants. *See* Appeal Nos. 16-3507, 16-3519, 16-3541. Following the filing of motions to dismiss, Objector Frank voluntarily dismissed his cross-appeal without seeking or obtaining payment. *See* Appeal No. 16-3615. The defendants and named plaintiffs jointly requested voluntary dismissal with prejudice in the district court, which was granted on November 18. Dkt. 333.

**C.     Frank seeks intervention and an accounting of payments, which was denied and then denial reversed by the Seventh Circuit.**

On December 7, 2016, Objector Frank moved to intervene for the purpose of seeking an accounting for payments to the Buckley objectors in exchange for dropping their appeals. Dkt. 334. Judge Zagel initially set a briefing schedule on the motion (Dkt. 338), but the case was reassigned due to Judge Zagel taking senior status. Dkt. 339. Judge Blakey denied Frank's intervention motion *sua sponte* on December 15, holding that the November 18 dismissal with prejudice meant that the Court lacked "jurisdiction to adjudicate disputes arising out of the settlement." Dkt. 340.

On May 19, 2017, Frank filed a Rule 60(b) motion to reopen the case so that he could pursue his motions to intervene and disgorge. Motion to Reopen Case, Dkt. 348. The district court again

---

[3] Defendants filed their settlements with the Buckley objectors under seal as exhibits to Dkt. 377. Frank included them in his appendix on appeal, which the Seventh Circuit unsealed in *Pearson III. See Pearson v. Target Corp.*, No. 19-3095, Dkt. 23 (7th Cir. Jan. 7, 2020) (denying defendant's motion to maintain the appendix under seal and ordering Frank to file an unsealed appendix instanter). For convenience of the Court and the parties, Frank attaches the side-agreements as Exhibit A to this memorandum.

swiftly denied Frank's motion *sua sponte* by minute order, finding that Frank's request did not involve "exceptional circumstances" that warranted such relief. Dkt. 350.

Frank appealed the denial of his Rule 60(b) motion, Dkt. 351, and the Seventh Circuit reversed. *Pearson II*, 893 F.3d 980. The Court recognized that Rule 60 was a "safety valve for precisely these situations" where objectors extort side payments purely for personal gain. *Id.* at 985. "Rule 60(b)(6) relief was appropriate to ensure that no class sellout had occurred." *Id.* at 986. The Court observed that "selfish settlements by objectors are a serious problem." *Id.* at 986. "Frank must be allowed to pursue his theory pursuant to the ancillary jurisdiction preserved in the Settlement Judgment." *Id.* at 986.

Following remand, this Court ordered defendants to produce any agreements between defendants and the Buckley objectors. Minute Order, Dkt. 373. Defendants NBTY and Rexall Sundown produced and filed under seal the written Side Agreements between defendants and the Buckley objectors. *See* Side Agreements, Ex. A.

The agreements required Buckley and the other objectors to dismiss their 2016 appeals within 24 hours and to not opt-out of the settlement in exchange for payment by wire transfer as directed by each objector. *See*, *e.g.*, Ex. A-3 at 2-3. The agreements evinced no benefit to the underlying settlement nor did they suggest any claims were settled besides those appealed from this court. *Id.*

**D.      Frank seeks disgorgement, which was denied until reversed by the Seventh Circuit.**

Following the confirmation that the Buckley objectors were paid simply to dismiss their appeals, on October 4, 2018, Frank moved for an order to disgorge the funds for the benefit of class members. Dkt. 382.

Buckley, who had only objected to class counsel's attorneys' fees in his bare-bones 4-page objection to the underlying settlement (Dkt. 258), argued that his $60,000 payment should not be disgorged because class counsel didn't pay for the side-settlement. "[S]ettlement payment was made exclusively by NBTY, out of new monies it paid in order to avoid the Buckley appeal, and therefore did not derive in any way from the consideration paid in settlement of the Class's claims," and

therefore the class was not injured. Dkt. 386. The named plaintiffs filed a response to this inaccurate claim: in fact, the named plaintiffs and defendants both contributed to the pay-off of the Buckley objectors. Dkt. 400.

Nunez argued that his $60,000 payment represented consideration for settling the parallel *Nunez* class action in the Southern District of California, which was barred by release from final approval of the *Pearson* settlement. Dkt. 390; Dkt. 405 at 2. Frank observed that Nunez's settlement agreement did not mention the *Nunez* litigation, but consisted of boilerplate verbatim with the other two objectors' settlements. Dkt. 411. Moreover, Nunez's counsel had made no Rule 23(h) motion and provided no notice to the class that he was settling a class action. *Id.*

Sweeney filed no opposition to the motion to disgorge.

Judge Blakey denied the motion to disgorge, finding that the settling objectors had not "violated some rule or statute or did something unlawful, that the settlement payments amounted to ill-gotten gains." Dkt. 418 at 5. "Absent some indication that such settlements harm the class or somehow diminish the relief available to the class, this Court finds no basis to inject itself into these arms' length transactions with an unfounded order of disgorgement." *Id.* at 9.

Frank again appealed, Dkt. 419, and the Seventh Circuit again reversed. The panel disagreed with Judge Blakey's finding that the subjective good faith reported by the objectors could excuse selfish settlements that provided class members no benefit. "The objectors' conduct testifies that, whatever merit their objections might have had, the objectors themselves did not believe them or take them seriously, from the day they were filed to the day they were settled." *Pearson III*, 968 F.3d at 834. The panel rejected Buckley's factually incorrect argument that settlement could not have harmed the class because the side-payments allegedly derived solely came from defendant. "Money that class counsel were willing to part with to finally resolve the litigation consisted of savings that ought to have enured to the class—not to defendants, the three objectors, or their lawyers." *Id.* at 836. The panel also rejected Nunez's argument that this Court lacks jurisdiction over a settlement allegedly arising over litigation in California. "The problem for Nunez is that the value of the *Nunez* action at the time

it was settled was zero. … Nunez's argument that he was leveraging the class's claims to settle his own worthless case for $60,000 impairs rather than improves his position." *Id.* at 835.

The panel found that the sole "practical challenge" to disgorgement was formulating a remedy that would transfer "objectors' private appropriation of value that belonged to the class" back to the class. *Id.* at 837. The panel found that a "constructive trust" would be the correct equitable vehicle for the disgorged funds, and suggested that funds could be sent to a *cy pres* recipient like the Orthopedic Research and Education Foundation. *Id.* The Seventh Circuit thus reversed and remanded the case, adopting Frank's suggestion to apply Circuit Rule 36 to reassign the case on remand. *Id.* at 838.

## ARGUMENT

The Seventh Circuit concluded that the funds wrongfully obtained by the Buckley objectors should be disgorged. This Court need only administer the disgorged money as a "constructive trust" for the benefit of class members. *Pearson III*, 968 F.3d at 837. The Seventh Circuit suggests that recovered money can be paid to a *cy pres* beneficiary, but Frank proposes that the money first be used to compensate class members, to the extent possible, through a lottery to pay supplemental $10-$100 awards to previously-paid claimants.

### I. Objector blackmail should be clawed back from all attorneys who received it.

Preliminarily, the Court should be precise in ordering funds disgorged from the Buckley objectors. The attorneys—not the nominal objectors—should be responsible for replaying money to be held by the Clerk of Court as a constructive trust. The side-settlements between the objectors and defendants were formally written between those individuals and the defendants, but on information and belief the *attorneys* representing these objectors derived most, if not all, of the benefit. Attorney beneficiaries of these funds must repay whatever they received. This might require disgorgement from several firms to disgorge the $60,000 paid to settle with objector Nunez, who was represented by several firms. Each firm and attorney should repay the amounts they received.

To the extent that the attorneys used their respective $60,000 payments to compensate the individual objectors or cover other expenses, each attorney or firm should be liable for the entire amount *attorneys received* as a result of the Buckley objectors' November 2016 settlement agreements.

For example, it may be true that some small portion of the $60,000 settlements to Buckley and Nunez ultimately compensated the named objectors. The Court should direct the return of the entire $60,000 from the objectors' attorney(s)—not simply the portion retained as attorneys' fees. The receiving attorneys may in turn attempt to collect contributions from others, if they see fit. In any event, upon information and belief, the vast majority of each settlement was retained by attorneys, and the agreements themselves say that the amount constituted "full consideration for any attorneys' fees, interest, costs, and expenses to which [each] Objector could be entitled." *See*, *e.g.*, Ex. A-3 at 2.

Requiring repayment from all attorney recipients is practical because each of the attorneys—whether appearing *pro hac vice* or merely by signing papers in this Court, availed themselves of its jurisdiction, rules, and discipline. As officers of the Court, the attorneys should deposit their share of the awards with the Clerk of Court, which will hold the money temporarily as a constructive trust.

Objector Sweeney is a special case because he is no longer an attorney himself, and the $10,000 extracted by him may never be recovered. In 2016, Sweeney was a Wisconsin attorney acting *pro se*. Subsequently, in 2019 his license was revoked following a conviction for swearing false statements on a bankruptcy petition, misrepresentations which he used to swindle $420,000 from his law partners through fraudulently discharged loans. *In re Sweeney*, 922 N.W.2d 850, 852 (Wisc. 2019). As part of his criminal conviction, Sweeney was ordered to pay $481,970 in restitution. *Id.* On December 12, 2019, his probation was revoked, and Sweeney ordered into BOP custody for one year due to his failure to make payments on his restitution while he instead took out a loan to purchase a 2019 Mitsubishi SUV. *United States v. Sweeney*, No. 16-cv-103, Dkt. 82 (W.D. Wisc. Dec. 12, 2019). While this Court can and should order disgorgement of $10,000 from Sweeney as well, Frank believes that pursuing judgment from him would be a poor use of time.

Therefore, Frank assumes the effective constructive trust will total $120,000.

**II.    Frank intends to seek attorneys' fees from the constructive trust.**

Frank intends to apply for an award of attorneys' fees under Local Rule 54.2 of not more than one third of money recovered. Frank's counsel expended considerable time to establish the precedent that cynical self-dealing objectors' settlements may be clawed back by class members. The lodestar

value of attorney time spent one two successful appeals greatly dwarf the maximum $40,000 attorneys' fee award he might seek from the disgorged funds.

Frank will file his fee motion well within the time prescribed by Local Rule 54.2(b) once the Clerk confirms that objectors' counsel have deposited their payments with the Court.

### III. Preferably, the Court should order funds paid directly to a random sample of claimants through an equitable lottery.

The constructive trust will contain funds that belong to the entire class. Essentially the Buckley objectors illegitimately absconded with class property. "Objectors who settle their objections for amounts in excess of their shares as class members are, in essence, 'not paid for anything they owned.'" *Pearson III*, 968 F.3d at 829 (quoting *Young v. Higbee Co.*, 324 U.S. 204, 213 (1945)). The fruit of the appeal "properly belongs to all [class members]." *Pearson III*, 968 F.3d at 837.

Unfortunately, as the *Pearson III* panel observed, too many claimants exist—208,051—to make *all* of them whole. The costs of distributing 208,051 payments significantly exceeds $120,000 or $80,000 net attorneys' fees. However, class action settlements usually have the same characteristic: consumer settlements rarely pay *all* class members. For example, in this case, the settlement disbursed a net fund of nearly $4 million to compensate 208,051 *claimants*. Dkt. 344 at 6. But the class included 12 million members. Dkt. 113-1 at 8. Therefore, 99.3% of all class members received nothing from the settlement. If even 20% of the class had claimed money, it would have been infeasible to pay all of them. The vast majority of class members in most consumer class action settlements, including this one, receive nothing because they never file a claim. This routine-but-unequal distribution of funds does not run afoul Rule 23(e)(2)(D)'s requirement that a settlement "treats class members equitably relative to each other." Under this settlement, as most, every class member had equal rights to submit a claim to the fund and receive *pro rata* compensation.

By analogy, a fund of $80,000 or even a smaller amount *can* be distributed to class members by taking an unbiased random sample—a lottery—of valid claimants. A lottery treats class members are treated equitably because each had an opportunity to fila a claim. Through a lotter, each claimant

here receives proportional odds to receive an additional payment from the disgorged funds. *See Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions*, 79 GEO. WASH. L. REV. 1065 (2011).

The lottery mechanism provides more benefit to class members than diverting recovery to a third party as with a *cy pres* award because every claimant has a ticket to lottery awards, so to speak. *See* Tyler A. Young, *Jackpot! Using Lotteries to Distribute Class Action Settlement Funds*, 24 Green Bag 2d 237, 246-47 (explaining lotteries' advantages over *cy pres*), attached as Exhibit B. At least one court recognized that the potential or expected value of a lottery award provides real value to class members. *See* Order of Indicative Ruling Under Federal Rule of Civil Procedure 62.1, *In re Takata Airbag Prods. Liab. Litig.*, No. 1:15-md-02599-FAM (S.D. Fla. Jan. 27, 2020) (awarding settlement fees of $1,906,000 to the twelve objectors based on their agreement with Class Counsel to use $5 million of the settlement for a sweepstakes program, beneficial to the entire class), attached as Exhibit C.

Using a lottery mechanism, additional money can be funneled directly to class members rather than through the "next best" alternative of sending money to an uninjured third party.

Frank proposes reusing the claims previously submitted to create a fair lottery pool. Drawing from this pool, the claims administrator could send several hundred checks of $10 to $100 to randomly-selected class members. Claimants would receive essentially one "ticket" for each bottle of glucosamine they claimed, such that class members with larger claims have proportionally higher odds of receiving a supplemental award. Payments of this amount will not over-compensate or provide a "windfall" to class members. The previous distribution only awarded claimants $2.18 per bottle. Dkt. 344 at 6. Plaintiffs conservatively estimated the purchase price per bottle as $20, and originally intended that each claimant could receive up to $8 *per bottle* in the underlying settlement. Dkt. 213 at 18. Thus, even if a class member only purchased only a single bottle receives a supplemental award of $10 or $17, the settlement still will not have overpaid the claimant. In any event, *cy pres* distributions cause a much more profound windfall problem by distributing a large lump sum to a non-class member. *See* Exhibit B, 24 Green Bag 2d at 246-47. As Justice Kavanaugh explained at oral argument in *Frank v. Goas*, "at least it's someone who—who, quote, to use your analogy, paid for the lottery

ticket as opposed to giving the billion dollar award to someone who didn't buy the lottery ticket." Transcript of Oral Argument at 60, *Frank v. Gaos*, 139 S. Ct. 1041 (2019) (No. 17-961).

Counsel for Frank has reached out to the settlement administrator, now known as Kroll Settlement Administration, and will provide the court with a quote for the number of supplemental $10-$100 awards that can be sent to class members with the net $80,000 constructive trust.

**IV.     Alternatively, the Court may order the constructive trust to a *cy pres* recipient.**

Should the settlement administrator be incapable of distributing payments, as a last resort the Court should distributed the disgorged money to the *cy pres* recipient designated in the underlying 2016 Settlement Agreement. Such distribution would fulfill "the trust's purpose may instead be accomplished as nearly as possible (*cy pres*) so that it does not fail. *Pearson III*, 968 F.3d at 837. "As provided for by the *Pearson II* settlement, that would mean ordering payment to the Orthopedic Research and Education Foundation." *Id.*

The underlying Settlement Agreement in this case includes a *cy pres* provision where "left over monies" from the Net Settlement Fund (*e.g.*, from uncashed checks) would be distributed to the Orthopaedic Research and Education Foundation ("Orthopaedic Foundation"). *See* Settlement Agreement, Dkt. 213-1 at 7. Presumably, such a check has already been sent to the Orthopaedic Foundation, given that any uncashed checks expired about four years ago.[4] The Court could order a second distribution to the Orthopaedic Foundation from the net constructive trust.

Frank finds prepackaged *cy pres* settlements objectionable, but when funds cannot feasibly reach class members, *cy pres* may be appropriate as a last resort. *See* Brief for Petitioners at 51, *Frank v. Gaos*, No. 17-961 (U.S.). The Seventh Circuit recognizes that *cy pres* can be useful to prevent a

---

[4] Frank cannot discern the status of *cy pres* payments from the record. On February 20, 2017, plaintiffs filed a motion for court approval of distribution of settlement funds, seeking to distribute $3.96 million to class members. *See* Pls. Memo. in support of Motion for Court Approval of Distribution of Class Settlement Funds ("Distribution Memo"), Dkt. 343 at 1. Judge Blakey denied the Distribution Memo for the same reasons he denied Frank's Rule 60(b) motion, *i.e.*, the court concluded it was without jurisdiction. *See* Minute Order, Dkt. 347. Upon information and believe, the settling parties proceeded without obtaining formal court approval and distributed the settlement funds to the class members as specified in their agreement.

defendant from underpaying for its wrongdoing where the amount at issue, such as here, cannot be distributed feasibly to the class. *Pearson III*, 968 F.3d at 837. *See also Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 784 (7th Cir. 2004); *Pearson I*, 772 F.3d at 784.

At minimum, *cy pres* improves on the status quo. Prior to disgorgement, the only beneficiaries of Buckley objectors' side-settlements misused the judicial process to secure rents on class-wide claims. *Cf. Burrow v. Arce*, 997 S.W.2d 229, 238 (Tex. 1999) ("main purpose" of disgorgement is not compensation, rather it is discouraging future wrongdoing).

## CONCLUSION

This Court should order disgorgement of the side payments from all attorneys who received funds from the Buckley objectors' settlements. Following consideration of Frank's motion for attorneys' fees, the net constructive trust should be paid to the settlement administrator for a supplemental distribution to class member claimants by random lottery, or alternatively paid to the Orthopedic Foundation as *cy pres*.

Dated: September 15, 2022.

By: /s/ M. Frank Bednarz
M. Frank Bednarz (IL ARDC No. 6299073)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Tel: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Intervenor Theodore H. Frank*

## CERTIFICATE OF SERVICE

The undersigned certifies he electronically filed the foregoing Memorandum in Support of Motion to Administer the Constructive Trust via the ECF system for the Northern District of Illinois. Additionally, he caused this filing to be served via email upon the following attorneys:

| James Richard Patterson<br>Patterson Law Group, Apc<br>402 West Broadway, 29th Floor<br>San Diego, CA 92101<br>jim@pattersonlawgroup.com | John J. Pentz<br>19 Widow Rites Lane<br>Sudbury, MA 01776<br>Jjpentz3@gmail.com |
|---|---|

Additionally, he caused to be served via email and certified mail upon the following person at his last known contact addresses:

| Patrick S. Sweeney<br>Sweeney Legal Group<br>2672 Mutchler Rd<br>Madison WI 53711-7013 | Patrick S. Sweeney<br>6666 Odana Road, Suite 116<br>Madison, WI 53711<br>patrick@sweeneylegalgroup.com |
|---|---|

Dated: September 15, 2022          /s/ M. Frank Bednarz